## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

LAWRENCE S. EPSTEIN       )
                                  )
      Plaintiff,           )
                                  )
      v.                     )     Case Number: 1:07CV00688 (RMU)
                                  )
PETE GEREN,               )
Acting Secretary of the Army,    )
                                  )
      Defendant.        )
_____)

## NOTICE OF FILING OF ADMINISTRATIVE RECORD

The Administrative Record consisting of 256 pages and excerpts of Army Regulation 600-20, Army Command Policy and 623-105 Personnel Evaluations, are hereby filed with the Clerk of the Court this date via ECF.  Defendant respectfully informs the Court that the parties have agreed to the supplementation of the administrative record by Plaintiff in order to provide the Court with exhibits "C", and "E" thru "W" of Plaintiff's application to the ABCMR, which Defendant does not currently posses.

Respectfully submitted,

                        /s
_____
STEVEN M. RANIERI
Special Assistant United States Attorney
Civil Division
555 Fourth St., N.W.
Washington, D.C. 20530
202-353-9895

JUN 2 0 2007

# United States of America



## DEPARTMENT OF THE ARMY

| Washington, DC | 18 June 2007 |
|---|---|
| PLACE | DATE |

I HEREBY CERTIFY that the attached constitute true and complete copies of files pertaining to Lawrence S. Epstein, a former member of the United States Army. Copies of the Official Military Personnel File (OMPF) are maintained by the U.S. Army Human Resource Command, St. Louis, Missouri; and copies of the board proceedings from the Army Board for Corrections of Military Records (ABCMR) are maintained in Arlington, Virginia. The original personnel records and copies of which are currently in the official temporary custody of the Military Personnel Litigation Branch, Litigation Division, Office of the Judge Advocate General of the Army.

*Tracy A Glover*
TRACY A. GLOVER
Lieutenant Colonel, U.S. Army
Chief, Military Personnel Litigation Branch

I HEREBY CERTIFY that Lieutenant Colonel Tracy A. Glover                                    , who
signed the foregoing certificate, is the
Chief of the Military Personnel Branch, Litigation Division, Office of the Judge Advocate General of the Army        , and

that full faith and credit should be given to his certification.

IN TESTIMONY WHEREOF I, Joyce E. Morrow                                    ,

The Administrative Assistant to the Secretary of the Army,
have hereunto caused the seal of the Department of the
Army to be affixed this    18th    day of

June             2007

By *Richard O Hatch*

*Administrative Assistant.*

**RICHARD O. HATCH**
**COLONEL, U.S. ARMY**
**CHIEF, U.S. ARMY LITIGATION DIVISION**

# ADMINISTRATIVE RECORD INDEX
## EPSTEIN, Lawrence S. v. Secretary of the Army

Tab 1    (ABCMR) Memorandum of Consideration and        Pages 000001- 000067
         Record of Proceedings, dated November 18, 2003


Tab 2    Official Military Personnel, OMPF              Pages 000068 - 000256



**DEPARTMENT OF THE ARMY**
BOARD FOR CORRECTION OF MILITARY RECORDS
1941 JEFFERSON DAVIS HIGHWAY 2ND FLOOR
ARLINGTON, VA 22202-4508

November 25, 2003

SFMR-RBR

MEMORANDUM FOR U.S. ARMY REVIEW BOARDS AGENCY SUPPORT
DIVISION – ST. LOUIS (SFMR-RBR-SL), 9700 PAGE
AVENUE, ST. LOUIS, MISSOURI 63132-5200

SUBJECT: ABCMR Memorandum of Consideration
EPSTEIN, LAWRENCE S., ▮▮▮▮▮▮▮, AR2003090468

    The application submitted by the individual concerned has been denied by the Army Board for Correction of Military Records.

    Prior to closing out the case, please refer to any Note contained in the Determination portion of the Board's Memorandum of Consideration, and take such administrative action as may be contained therein.

Carl W. S. Chun
Director, Army Board for Correction
of Military Records

Enclosures

CF:
(  ) OMPF
(  ) John A. Wickham, Attorney
(  ) Analyst

Printed on Recycled Paper

I

00001




**DEPARTMENT OF THE ARMY**
BOARD FOR THE CORRECTION OF MILITARY RECORDS
1941 JEFFERSON DAVIS HIGHWAY, 2ND FLOOR
ARLINGTON VA 22202-4508

<u>MEMORANDUM OF CONSIDERATION</u>

IN THE CASE OF:     EPSTEIN, LAWRENCE S.

BOARD DATE:     18 November 2003
DOCKET NUMBER: AR2003090468

    I certify that hereinafter is recorded the record of consideration of the Army Board for Correction of Military Records in the case of the above-named individual.

| | |
|---|---|
| Mr. Carl W. S. Chun | Director |
| Mr. Jessie B. Strickland | Analyst |

The following members, a quorum, were present:

| | |
|---|---|
| Mr. John N. Slone | Chairperson |
| Mr. Mark D. Manning | Member |
| Ms. Barbara J. Ellis | Member |

    The Board, established pursuant to authority contained in 10 U.S.C. 1552, convened at the call of the Chairperson on the above date. In accordance with Army Regulation 15-185, the application and the available military records pertinent to the corrective action requested were reviewed to determine whether to authorize a formal hearing, recommend that the records be corrected without a formal hearing, or to deny the application without a formal hearing if it is determined that insufficient relevant evidence has been presented to demonstrate the existence of probable material error or injustice.

    The applicant requests correction of military records as stated in the application to the Board and as restated herein.

    The Board considered the following evidence:

    Exhibit A - Application for correction of military
        records
    Exhibit B - Military Personnel Records (including
        advisory opinion, if any)


Printed on  Recycled Paper

00002

ABCMR Memorandum of
Consideration (cont)

AR2003090488

**APPLICANT REQUESTS:** The removal of an officer evaluation report (OER) covering the period from 22 October 1990 to 5 March 1991 from his Official Military Personnel File (OMPF), reconsideration for promotion to the rank of colonel by a Standby Selection Board and if selected for promotion, that he be placed in the Retired Reserve in the rank of colonel.

**APPLICANT STATES:** In effect, that he was given an unjust rating on his OER covering the period from 22 October 1990 to 5 March 1991, because he is of the Jewish faith and he had filed an Equal Opportunity (EO) complaint against his commander because of inappropriate remarks directed at his Jewish faith, and the perception of a discriminatory work environment. He further states that shortly after his complaint was filed, accusations of disloyalty were raised including allegations he was an Israeli spy. He was issued an adverse OER, relieved of his duties and was transferred out of his unit. A subsequent Defense Investigative Service (DIS) inquiry was initiated into his possible links to the Mossad and treason against the United States during the Gulf War, which coupled with the fact that no disciplinary action was taken against his accusers, caused him to experience great anxiety. He further states that he was reluctant to file an appeal to the Board because his attorney advised him that it might attract undue attention that would cause further inquiries, loss or delay of his retirement and might jeopardize his civilian employment and security clearance. He continues by stating that he retired in 1997 and that it took 7 years for his recommendation for award of the Legion of Merit (LOM) to be approved. After the September 11th incident at the World Trade Center in which he assisted in removing victims, he was diagnosed with latent service connected Post Traumatic Stress Disorder (PTSD) by a Department of Veteran Affairs (VA) psychiatrist.

**COUNSEL CONTENDS:** In a 22-page brief, in effect, that in January 1991, the applicant filed an EO complaint against his rater and command in which an investigation substantiated that the rater/commander made inappropriate remarks and jokes concerning the applicant's religious (Jewish) dietary habits and that the working environment within the unit was one which undoubtedly left members with the impression that unequal treatment did exist in the unit. While the rater was formally admonished by his commander, within weeks of the EO complaint, accusations of disloyalty were made against the applicant as well as allegations that the applicant was a spy, a homosexual and a sexual pervert. Additionally, he received an adverse-referred OER from his rating chain and was released early from his duty assignment. He continues by stating that given the Jonathan Pollard Israeli Spy Case that was prevalent at the time, the applicant did not pursue his appeal upon advice of counsel. As a result, the applicant has suffered anxiety over the unresolved Israeli spy allegations, preserving his military career, and prospective civilian employment with Department of Defense contractors within the intelligence field and has been diagnosed with PTSD. He further states that given the substantiated EO investigation and the Army's

2

ABCMR Memorandum of
Consideration (cont)

AR2003090468

current zero tolerance policy, the rater should have been disqualified from rating
the applicant. Instead of properly resolving the issue, the senior rater (SR)
summarily relieved the applicant of his duty under the dubious guise of a "change
of duty" OER, without any due process and the OER contained attacks on the
applicant's loyalty, integrity, lack of military experience, tact and people skills and
the commander's inquiry that was conducted fell woefully short of rebutting the
EO investigation report. Additionally, he contends that the OSRB simply rubber-
stamped the statements from the rater and improperly dismissed the third party
statements submitted with his appeal.

<u>EVIDENCE OF RECORD</u>: The applicant's military records show:

He was commissioned as a United States Army Reserve (USAR) second
lieutenant on 6 June 1969 and was detailed as a military intelligence branch
officer. He was ordered to active duty on 4 December 1969 and was promoted
to the rank of first lieutenant (1LT) on 4 December 1970. He served his active
duty in Hawaii and submitted a request to be released from active duty
(REFRAD) in Hawaii.

He was honorably REFRAD in the rank of 1LT on 16 April 1973 and was
transferred to the USAR Control Group (Reinforcement) in Hawaii. He was
subsequently transferred to a Troop Program Unit in Oakland, California. He
was promoted to the rank of captain on 3 June 1975, to the rank of major on
4 June 1982 and although the record does not show a date, he was
subsequently transferred to the USAR Control Group (Individual Mobilization
Augmentee (IMA)). He was promoted to the rank of lieutenant colonel (LTC) on
3 June 1989.

On 16 May 1990, the applicant received a "Relief from Active Duty Training"
(REFRADT) OER covering the period from 19 March to 30 March 1990
(12 days), evaluating him as a special project officer (IMA) in an Army Special
Security Group. His rater (a LTC), gave him maximum ratings and his SR (a
colonel and group commander) placed him in the second block and center of
mass (COM) on his profile.

On 28 August 1990, the applicant received a REFRADT OER covering the period
from 16 July to 31 July 1990 (16 days), evaluating him as a detachment
commander (IMA) of a special security detachment at Fort McPherson, Georgia.
His rater (a LTC) gave him maximum ratings and his SR (the same SR on the
previous OER) placed him in the top block of his profile (above COM).

On 18 January 1991, the rater gave the applicant a counseling statement
regarding conduct that was not in the best interest of order, sound judgment and
good discipline. He ordered the applicant to cease and desist his behavior
immediately. He also informed the applicant that if his behavior continued, he

3

ABCMR Memorandum of
Consideration (cont)

AR2003090468

would have no recourse but to terminate his active duty, deny him access to
special intelligence and relieve him for cause.

On 4 March 1991, an informal investigation that had been directed by the SR
was completed on 4 March 1991. The applicant did not include this investigation
with his application; however, the results of the investigation are contained in an
Officer Special Review Board (OSRB) case summary, which indicates that the
investigation concluded that the applicant was not experienced in higher level
staff work, that several of his actions were inappropriate and did reflect
negatively on the command, that he became defensive and attributed his rater's
counseling as being motivated by professional jealousy and ethnic/racial
prejudice, that the rater was correct in questioning the applicant's competence
and in not trusting him with important actions, that there was no evidence that the
rater's counseling of the applicant's performance was based on anything other
than professional experience and judgment, that the rater had made
inappropriate remarks and jokes about the applicant's religious dietary habits;
however, they had first been initiated by the applicant and not the rater and were
stopped when the applicant brought it to the rater's attention, that the applicant
was not loyal to his commander (rater) and his actions were disruptive to the
command. The investigating officer noted that the applicant may have stirred
things up and violated the rater's trust and confidence by relaying the details of
private conversations back to individual soldiers. The applicant also suggested
to subordinates that he was better suited to command than was the rater. The
investigating officer also found that the rater had the trust and confidence of his
subordinates and most of the subordinates were not aware of any prejudice on
the part of the rater. He recommended that the rater be counseled concerning
his remarks and that the applicant be reassigned or released from active duty.

On 14 May 1991, the applicant's rater (a LTC) initiated a change of duty OER
(the contested report) on the applicant, covering the period from 22 October 1990
to 5 March 1991 (5 months), evaluating him as a deputy commander of a special
security command at Fort McPherson.

In part IVa, under performance evaluation and professionalism, his rater gave
him a "3" rating under "Displays sound judgment." In part IVb, under professional
ethics, the rater stated that on three occasions the applicant displayed very poor
judgement, which resulted in embarrassment to the command. He also stated
that he questioned the applicant's loyalty and integrity due to his actions and
comments on at least three occasions.

In part Vb, under performance and potential evaluation, the rater gave him a
"Usually Exceeded Requirements" rating and recommended that he be promoted
with his contemporaries. The rater's comments indicate that the applicant had
volunteered for active duty during Operation Desert Shield/Storm, that his
knowledge of computers and automated data processing (ADP) was superb and

4

ABCMR Memorandum of                                    AR2003090468
Consideration (cont)

that he is enthusiastic and aggressive. However, his lack of military experience, tact, and people skills began to manifest themselves shortly after his arrival. He further stated, in pertinent part, that in one instance, his tactless conversation caused the command extreme embarrassment, on at least three occasions he disclosed privileged information to soldiers, seriously degrading morale and esprit de corps of the soldiers and the command. These actions seriously affected his (the rater's) impression of his loyalty and integrity and that he (the applicant) had issued uncoordinated guidance to subordinate elements that resulted in confusion and unnecessary disruption. He was unable to heed the rater's counseling and guidance and improve his performance and as a result, was reassigned to another position. He went on to state that future active duty should be carefully coordinated and supervised at the O-6 level or above and stated that the applicant had excellent potential for higher level staff and promotion, given training and experience.

Meanwhile, on 1 April 1991, the SR dispatched a memorandum to the rater indicating that he had directed an investigation into a recent informal EO complaint from a member of his command. While the investigation did not confirm the existence of discriminatory practices, he cautioned the rater to avoid future remarks of an insensitive and inappropriate nature such as those made to the applicant concerning his religious dietary habits. He advised the rater that he must be especially sensitive in his choice of words and sensitive to reactions and perceptions of others about his words and actions.

On 25 and 26 August 1991, an EO investigation was conducted into the issues and allegations made by the applicant in which he alleged that he was the object of systematic discrimination by the rater, based on his ethnic heritage (Jewish), and especially his dietary habits. Additionally, he alleged that other minorities (especially blacks) and women were degraded by the rater and a Department of the Army civilian. The investigating official found no evidence of personal or institutional discrimination practices involving race or gender being practiced by the rater or the civilian; however, he did substantiate the allegations relating to the rater's negative comments concerning the applicant's dietary habits and the overall insensitivity of his verbal communication. The investigating official opined that there was no doubt in his mind that a strong personality conflict and rivalry existed between the rater and the applicant and recommended that the commander (SR) consider this when completing the applicant's OER.

On 8 October 1991, the SR (same SR in previous two reports) placed the applicant in the third block of his SR profile, below COM. The SR comments that the applicant, in his zeal to meet the numerous demands, clashed with commander over operational procedures, management of assigned personnel and basic command philosophy. The commander and the applicant were unable to resolve their differences and the applicant was reassigned to a staff duty position. The SR stated that the applicant was highly motivated and displays

5

ABCMR Memorandum of                                    AR2003090468
Consideration (cont)

high potential for assignment to positions requiring independent analysis and
action. He recommended that the applicant be promoted with his
contemporaries.

The report (OER) was considered adverse and as such was referred to the
applicant for comment by the SR. The applicant responded to the referred report
on 28 January 1992, to the effect that he had previously been rated by the same
two officers and was rated outstanding in every respect. The sole and only
variables in the intervening period was his unwillingness or inability to tolerate his
commander's anti-semitic remarks and jokes together with his overall
insensitivity. He went on to state that his disloyalty resulted in an official
investigation which substantiated the commander's conduct and found that 20%
of enlisted personnel believed that racial discrimination existed. As a result, the
commander received a written admonition concerning his remarks of an
insensitive and inappropriate nature. He further stated that the report was a
reprisal and was illegal and violated the spirit of the regulation. He requested
that a commander's inquiry be conducted and that the period of the report be
deemed non-rated.

On 5 March 1992, a commander's inquiry was completed regarding the
applicant's allegations that his OER ratings were the result of his (the applicant's)
unwillingness or inability to tolerate his rater's anti-semitic remarks, jokes and
overall insensitivity, that his rater's comments regarding "disloyalty" were the
result of a substantiated finding by an official EO investigation which
substantiated his allegations, and that the report was illegal because it was done
in reprisal for his initiation of an EO complaint. He further alleged that the rating
officials were unqualified to rate him after the EO investigation substantiated his
allegations.

The investigating officer (a colonel) found that the applicant's allegations could
not be substantiated and that the report was administratively correct. In a
16 March 1992 letter, the commanding general informed the applicant that a
commander's inquiry revealed no error, violation of regulation or wrongdoing
regarding the contested OER.

On 15 January 1993, the Army Reserve Personnel Center (ARPERCEN) notified
the applicant (20-year letter) that he had completed the required years of service
to be eligible for Retired pay at age 60 (1 April 2009).

The applicant appealed the contested OER to the OSRB in June 1993 citing
essentially the same reasons he has cited to this Board. In the process of
reviewing the applicant's appeal, the OSRB contacted the rater of the contested
report, who in discussions with the OSRB, summarized many of the incidents
that led the rater to conclude that the applicant had shown poor judgment along
with various loyalty/integrity issues. He also explained that the applicant often

00007

ABCMR Memorandum of                                    AR2003090468
Consideration (cont)

went behind his back, especially with enlisted soldiers, and discussed privileged
communications that were intended solely between the commander (rater) and
the deputy commander (applicant). He stated that he believed that the applicant
had no loyalty to anyone other than himself. That he (the applicant) continually
tried to undermine his authority and went as far as asking the rater to relinquish
command in favor of himself (applicant). The rater noted the incidents
concerning jokes about religious dietary habits and noted that they had been
initiated and carried on by the applicant. When the applicant informed him that
he felt it inappropriate, it stopped. The rater noted that a personality conflict did
exist; however, the ratings on the OER were based on performance and
qualification, not personality.

The OSRB also contacted the command USAR advisor who related that the rater
and other members of the command had contacted him regarding the applicant.
The USAR advisor stated philosophically that the rater had, throughout the entire
incident, remained fair and impartial from his perspective. He opined that the
rater tends to err on the side of the individual and does all he can to motivate
subordinates. He also stated that when asked by the rater what he should or
could do, the advisor advised him to counsel thoroughly and if that did not work,
to exercise his responsibilities through the OER system. From the advisor's
perspective, the key issues were the radically different perceptions (between
rater and applicant) of the organization and how it was being commanded, the
continuing disagreements between the two and a conflict of ideas. The OSRB
concluded after reviewing all of the available evidence that the applicant had
failed to provide clear and convincing evidence to show that the contested OER
was inaccurate or unjust or that it violated the provisions of the regulations. The
OSRB denied his appeal and a notification was dispatched to that effect on
19 August 1993.

The applicant was considered, but not selected by Reserve Component
Selection Boards during the years 1994 through 1996 for promotion to the rank of
colonel. On 27 October 1997, he was transferred to the USAR Control Group
(Retired) in the rank of LTC.

On 18 January 2002, Permanent Orders 18-1 were published by the Total Army
Personnel Command (PERSCOM) awarding the applicant the Legion of Merit
(LOM) for meritorious service during the period of 1 February 1988 to 31 January
1998. It appears based on the evidence of record that an inquiry was conducted
by the Office of the Chief of Army Reserve (OCAR), on 5 December 2001, to
ascertain the status of two lost awards recommendations pertaining to the
applicant and one other officer. The recommendations were reconstructed and
approved by the appropriate officials.

7

ABCMR Memorandum of                                    AR2003090468
Consideration (cont)

Army Regulation 623-105 establishes the policies and procedures for the OER
system. Paragraph 3-57 and 6-6 provide than an OER accepted by
Headquarters, Department of the Army, and included in the official record of an
officer, is presumed to be administratively correct, and to have been prepared by
the properly designated rating officials at the time of preparation. Requests that
an accepted OER be altered, withdrawn or replaced will not be honored. An
exception is granted only when information which was unknown or unverified
when the OER was prepared is brought to light or verified and the information is
so significant that it would have resulted in a higher or lower evaluation, had it
been known at the time the OER was prepared. Paragraph 3-24 provides that
each report will be an independent evaluation of the rated officer for a specific
rating period and will not refer to prior or subsequent reports. Each report must
stand alone.

Army Regulation 135-155 provides the policies and procedures for convening
standby advisory boards. It provides, in pertinent part, that standby boards are
formed to prevent an injustice to an officer or former officers who were eligible for
promotion but whose records contained a material error when reviewed by the
selection board. A material error is defined in that regulation as one or more
errors of such a nature that in the judgment of the reviewing official or reviewing
body, caused an individual's nonselection by a promotion board. Had such
errors been corrected at the time the individual been considered, a reasonable
chance would have resulted that the individual would have been recommended
for promotion. Headquarters will normally not determine that a material error
existed if the administrative error was immaterial, if the officer exercising
reasonable diligence, could have discovered the error or omission, or if the
officer could have taken timely corrective action by notifying officials at the
Department of the error and providing any relevant documentation.

<u>DISCUSSION:</u>  Considering all the evidence, allegations, and information
presented by the applicant, together with the evidence of record, applicable law
and regulations, it is concluded:

1.  In order to justify correction of a military record the applicant must show to the
satisfaction of the Board, or it must otherwise satisfactorily appear, that the
record is in error or unjust.  The applicant has failed to submit evidence that
would satisfy this requirement.

2.  The Board has noted the applicant's contention that the contested OER was
rendered as reprisal for an official EO investigation initiated by him that
substantiated his allegations and finds it to be without merit.

3.  The available evidence shows that the rater initiated the contested OER well
before the applicant requested an official investigation and the SR delayed
preparing his portion of the OER until such time as it had been concluded.

8

ABCMR Memorandum of                                    AR2003090468
Consideration (cont)

4. Although much time and effort was expended in investigations and commander's inquiries regarding this matter, none of the investigations substantiated his allegations of racial prejudice or discrimination on the part of the rater. While the investigations all substantiated that the rater had made inappropriate remarks regarding the applicant's dietary habits, and the rater has admitted to doing so, it has also been established that the applicant started those remarks and carried them on. As soon as the applicant notified the rater that he did not like him using those same remarks, the rater ceased doing so. While it was not appropriate for the rater to ever use any such remarks, it was equally inappropriate for the applicant to introduce such remarks into the work environment as well.

5. The evidence of record also suggests that the applicant was counseled by the rater regarding what the rater considered unacceptable conduct, months before the contested OER was initiated and it appears, based on the results of the ensuing investigations that despite having been counseled, the applicant continued in his efforts to undermine the commander's (rater's) authority. Accordingly, the rater sought to have him removed from the unit as his deputy commander.

6. Although it is unfortunate that both the applicant and the rater were of the same rank, the rater was the commander and as such, the applicant had a responsibility and obligation to obey the orders of the officers appointed over him. In the event that he felt compromised, he had an obligation to utilize his chain of command to resolve the differences rather than to try and undermine the commander's authority.

7. The applicant's contention that the only difference between the previous report he received from the same rating officials is the fact that he filed an EO complaint against the rater during the second period has been noted and appears to be without merit. The period of the two reports, as well as the scope of his duties were drastically different, as was the degree of daily contact during the period of the report. In fact, the applicant received three ratings from the SR and two from the same rater. The evidence suggests that the rating officials were open-minded and fair in their evaluations based on the circumstances of each rating period.

8. The bottom-line issue in this case is whether or not the contested report properly reflects his performance and potential during the period in question and whether or not it was rendered in accordance with the applicable regulations in effect at the time. After reviewing all of the documents submitted by the applicant and his counsel as well as the evidence of record, the evidence suggests that it is.

9. In view of the foregoing, there is no basis for granting the applicant's request.

9

ABCMR Memorandum of                                    AR2003090468
Consideration (cont)

DETERMINATION: The applicant has failed to submit sufficient relevant
evidence to demonstrate the existence of probable error or injustice.

BOARD VOTE:

_____  _____  _____  GRANT

_____  _____  _____  GRANT FORMAL HEARING

_____  _____  _____  DENY APPLICATION

Carl W. S. Chun
Director, Army Board for Correction
of Military Records

10

00011



**Department of the Army**
BOARD FOR CORRECTION OF MILITARY RECORDS
1941 JEFFERSON DAVIS HIGHWAY 2ND FLOOR
ARLINGTON, VA 22202-4508

November 25, 2003

SFMR-RBR
EPSTEIN, LAWRENCE S.
AR2003090468

LTC Lawrence S. Epstein, Retired



Dear Colonel Epstein:

I regret to inform you that the Army Board for Correction of Military Records has denied your application.

The Board considered your application under procedures established by the Secretary of the Army. I enclose a copy of the Board's Memorandum of Consideration. This memorandum explains the Board's reasons for denying your application.

This decision is final. You may request reconsideration only if you can present newly discovered relevant evidence that was not available to the Board when it denied your application.

Sincerely,

Carl W. S. Chun
Director, Army Board for Correction
of Military Records

Enclosure

PRINTED ON ✦ RECYCLED PAPER

00012

| APPLICATION FOR CORRECTION OF MILITARY RECORD UNDER THE PROVISIONS OF TITLE 10, U.S. CODE, SECTION 1552 *(Please read instructions on reverse side BEFORE completing application.)* | Form Approved OMB No. 0704-0003 Expires Sep 30, 2003 |
|---|---|

The public reporting burden for this collection of information is estimated to average 30 minutes per response, including the time for reviewing instructions, searching existing data sources, gathering and maintaining the data needed, and completing and reviewing the collection of information. Send comments regarding this burden estimate or any other aspect of this collection of information, including suggestions for reducing the burden, to Department of Defense, Washington Headquarters Services, Directorate for Information Operations and Reports (0704-0003), 1215 Jefferson Davis Highway, Suite 1204, Arlington, VA  22202-4302. Respondents should be aware that notwithstanding any other provision of law, no person shall be subject to any penalty for failing to comply with a collection of information if it does not display a currently valid OMB control number.
**PLEASE DO NOT RETURN YOUR COMPLETED FORM TO EITHER OF THE ABOVE ADDRESS.  RETURN COMPLETED FORM TO THE APPROPRIATE ADDRESS ON THE BACK OF THIS PAGE.**

**PRIVACY ACT STATEMENT**

| | |
|---|---|
| **AUTHORITY:** Title 10 US Code 1552, EO 9397. | **ROUTINE USE(S):** None. |
| **PRINCIPAL PURPOSE:** To initiate an application for correction of military record. The form is used by Board members for review of pertinent information in making a determination of relief through correction of a military record. | **DISCLOSURE: Voluntary; however, failure to provide identifying information may impede processing of this application.** The request for Social Security number is strictly to assure proper identification of the individual and appropriate records. |

**1. APPLICANT DATA**

| a. BRANCH OF SERVICE *(X one)*    X  ARMY | | NAVY | | AIR FORCE | | MARINE CORPS | COAST GUARD |
|---|---|---|---|---|---|---|---|

| b. NAME *(Last, First, Middle Initial) (Please print)* | c. PRESENT PAY GRADE | d. SERVICE NUMBER *(If applicable)* | e. SSN |
|---|---|---|---|
| EPSTEIN, LAWRENCE, S. | 0-5 | | |

| 2. TYPE OF DISCHARGE *(If by court-martial, state type of court)* HONORABLE | 3. PRESENT STATUS, IF ANY, WITH RESPECT TO THE ARMED SERVICES *(Active duty, Retired, Reserve, etc.)* RETIRED | 4. DATE OF DISCHARGE OR RELEASE FROM ACTIVE DUTY *(YYYYMMDD)* 27 OCTOBER 1997 |
|---|---|---|

| 5. ORGANIZATION AT TIME OF ALLEGED ERROR IN RECORD US ARMY SPECIAL SECURITY COMMAND, FORSCOM, FT. MCPHERSON, GA 30330 | 6. I DESIRE TO APPEAR BEFORE THE BOARD IN WASHINGTON, D.C. *(No expense to the Government) (X one)* YES    X  NO |
|---|---|

**7. COUNSEL *(If any)***

| a. NAME *(Last, First, Middle Initial)* JOHN WICKHAM, JOHN A. | b. ADDRESS *(Street, Apartment Number, City, State and ZIP Code)* |
|---|---|

**8. I REQUEST THE CORRECTION OF ERROR OR INJUSTICE:**

SEE ATTACHED SUPPLEMENTAL STATEMENT

**9. I BELIEVE THE RECORD TO BE IN ERROR OR UNJUST IN THE FOLLOWING PARTICULARS:**

SEE ATTACHED SUPPLEMENTAL STATEMENT

**10. IN SUPPORT OF THIS APPLICATION I SUBMIT AS EVIDENCE THE FOLLOWING: *(If Veterans Administration records are pertinent to your case, give Regional Office location and Claim Number.)***

SEE ATTACHED SUPPLEMENTAL STATEMENT (LEGAL BRIEF) AND EXHIBITS  A-W

**11. ALLEGED ERROR OR INJUSTICE**

| a. DATE OF DISCOVERY *(YYYYMMDD)* SEPTEMBER 1993 | b. IF MORE THAN THREE YEARS SINCE THE ALLEGED ERROR OR INJUSTICE WAS DISCOVERED, STATE WHY THE BOARD SHOULD FIND IT IN THE INTEREST OF JUSTICE TO CONSIDER THIS APPLICATION. SEE ATTACHED SUPPLEMENTAL STATEMENT WITH EXPLANATION |
|---|---|

**12. APPLICANT MUST SIGN IN ITEM 16.  IF THE RECORD IN QUESTION IS THAT OF A DECEASED OR INCOMPETENT PERSON, LEGAL PROOF OF DEATH OR INCOMPETENCY MUST ACCOMPANY APPLICATION.  IF APPLICATION IS SIGNED BY OTHER THAN APPLICANT, INDICATE RELATIONSHIP OR STATUS BY MARKING APPROPRIATE BOX.**

| SPOUSE | WIDOW | WIDOWER | NEXT OF KIN | LEGAL REPRESENTATIVE | OTHER *(Specify)* |
|---|---|---|---|---|---|

**13. I MAKE THE FOREGOING STATEMENTS, AS PART OF MY CLAIM, WITH FULL KNOWLEDGE OF THE PENALTIES INVOLVED FOR WILLFULLY MAKING A FALSE STATEMENT OR CLAIM.**  *(U.S. Code, Title 18, Sec. 287, 1001, provides that an individual shall be fined under this title or imprisoned not more than 5 years, or both.)*

| 14.a. COMPLETE CURRENT ADDRESS, INCLUDING ZIP CODE *(Applicant should forward notification of all changes of address.)* | | DOCUMENT NUMBER *(Do not write in this space.)* 109781 P 76718 AR20030904 68 |
|---|---|---|
| | b. TELEPHONE NUMBER *(Include Area Code)* | |

| 15. DATE SIGNED *(YYYYMMDD)* JANUARY 25, 2003 | 16. SIGNATURE *(Applicant must sign here.)* Lawrence S. Epstein | |
|---|---|---|

DD FORM 149, SEP 2000                        PREVIOUS EDITION IS OBSOLETE.

Reply to:
32975 St. Moritz Drive
Evergreen, CO 80439
(303) 670-3825
Fax 670-1586



John A. Wickham, Esq.
Admitted in Virginia,
District of Columbia
& Military Courts

# John A. Wickham & Associates
## Attorneys-at-Law



24 April 2003

Army Review Boards Agency
Support Division, St. Louis
ATTN: SFMR-RBR-SL
9700 Page Avenue
St. Louis, MO. 63132-5200.
(314) 592-0820

SUBJECT:    Filing of new Army BCMR application

LAWRENCE S. EPSTEIN, Soc.Sec.No. █████
(Lieutenant Colonel, 0-5, USAR, Retired)

Board:

Applicant Lawrence S. Epstein, by and through his undersigned attorney, hereby petitions the Army Board for Correction of Military Records for relief. Attached are applicant's DD Form 149, his Supplemental Statement (legal brief), with exhibits A-W. As reflected in the DD Form 149 item 15, applicant has read the Supplemental Statement and certifies to its factual accuracy to the best of his knowledge.

John A. Wickham, Esq.
Counsel for Applicant LTC Epstein (USAR Ret.)

Incl:
DD Form 149
Supplemental Statement
Exhibits A-W

SUPPLEMENTAL STATEMENT

OF

LAWRENCE S. EPSTEIN
Lieutenant Colonel (0-5)
USAR (Retired)
██████████

**Item 8:** *Requested Correction of Error or Injustice*

1.    Lawrence S. Epstein, LTC (USAR, Ret.), hereinafter "Applicant," by and through his

undersigned attorney, hereby requests that the BCMR,

   (A) set aside his Officer Evaluation Report (period 22 OCT 1990 to 5 MAR 1991);

   (B) set aside applicant's non-selections for promotion to Colonel (0-6), USAR; and order
   a special selection board to reconsider his promotion to 0-6;

   (C) in the alternative to setting aside his promotion in (B) above, order a special
   selection board to reconsider his promotion to 0-6 without the adverse OER (1990-91);

   (D) in the event the SSB recommends applicant for promotion to 0-6, retroactively
   promote applicant with retirement as an 0-6 on his original date of mandatory retirement
   of 27 OCT 1997, with credit towards retirement pay at age 60.

**Item 11b:** *Why The Board Should Find It In The Interests Of Justice To Waive the Filing*

*Deadline and Consider This Application.* [1]

SUMMARY

   Applicant is of Jewish faith and an Army intelligence officer in the HUMINT speciality

(Human Intelligence).  In 1990 he was awarded the foreign decoration of Israel's Defense Forces

Parachute Wings.  Later during the Gulf War in 1991, applicant filed an EO complaint against

his Army commander and unit, that substantiated inappropriate remarks directed at applicant's

Jewish faith and the perception of a discriminatory work environment.  Within weeks,

---

[1] 10 U.S.C. § 1552(b)(in the interests of justice, BCMR may waive the requirement that
applications be filed within tree years after discovery of the error or injustice).

1

accusations of disloyalty were raised including allegations applicant was an Israeli spy. Applicant was also issued an adverse OER, relieved of his duty, and transferred out of his unit. The spy allegations resulted in a Defense Investigative Service (DIS) inquiry into applicant's possible links to Mossad and treason against the United States during the Gulf War.[2] Although applicant's Top Secret/SCI clearance was later not revoked, the DIS investigation was not closed. When coupled with the DIS probable cause determination investigating him for treason, applicant continued to experience extreme anxiety when the Army took no disciplinary action against his accusers.

Applicant was reluctant to file an ABCMR appeal after his 1993 OSRB denial to remove his adverse OER amid the media frenzy from 1993-2000 over celebrated Israeli spy Jonathan Pollard. This included best-selling books and Israeli pressure on President Clinton for a pardon. Applicant's attorney advised him that further appeal of the adverse OER might attract media attention, prompt further DIS inquiry, lose or delay of his Army retirement, and jeopardize civilian employment that required a security clearance. After retirement from the USAR in 1997, applicant's recommendation by his command for a Legion of Merit (LOM) was delayed for several years. Applicant's civilian employment with a DoD contractor in classified work was also delayed. In 2002, applicant's LOM was awarded, and he accepted for employment with a DoD contractor in classified work. To confirm applicant's real anxiety over unresolved Israeli spy allegations, in 2002 a VA psychiatrist diagnosed him with a latent service-connected PTSD with onset in 2002 when aggravated after the September 11th Trade Center terrorism when he assisted local firefighters removing many dead victims near his home.[3]

Although applicant contacted undersigned counsel in 2002, counsel was delayed in filing this petition during his own recovery and convalescence from surgery and complications later in

---

[2] Mossad is the Israeli government's Intelligence Service.

[3] Ex. W (VA psychiatric clinic printout confirming future follow-up appointment with Dr. Kane).

2

00016

2002.  Based upon the strong merits of the underlying OER appeal, applicant's offers reasonable grounds to request the BCMR to waive the normal timeliness requirement.

<u>Reasons for Delay</u>

     1.  Applicant in 1990 was a LTC in the USAR with a primary MOS of Intelligence officer with specialties in a HUMINT and Counter-intelligence (35F, 35E, 35A).[4]  Applicant was assigned to the US Army Special Security Command (SSC), and was detachment commander of a Sensitive Compartmented Information (SCI) Facility.[5]

     2.  In 1990, applicant's USAR unit (SSC) was activated to deploy to Hurlbert Field Air Force Base, Florida, for an intelligence exercise, INTERNAL LOOK 1990.  Applicant's OER rating officials during that active duty tour, LTC Hudson and COL Cromartie, gave him the highest marks, with a top block Senior Rater's profile.[6]

     3.  During this AD duty tour at Hurlbert Filed, applicant was invited by the Army Airborne Association to later attend an Israeli Army Airborne course.  After his U.S. Army duty and on vacation and a pre-briefing at Fort Dix Reserve Intelligence Training Site, applicant competed the course and was awarded the *Israel Defense Forces Parachute Wings*.  Also attending the same course was a retired U.S. Army general and the U.S. Army Attache in Israel. Applicant later obtained authorization to wear this foreign award.[7]  Applicant is of Jewish faith.[8]

---

[4] Ex. A (ORB).

[5] Ex. B (OER 1990).

[6] Ex. B1-B2 (Sec. V.c, LTC Hudson: "Promote to Colonel. Select for senior service college. Unlimited potential for higher level command and staff."  Sec. VIIb., COL Cromartie "outstanding potential").

[7] Ex. E1-E4.

[8] Ex. A (ORB, Sec. IV).

3

00017

4. During the Gulf War in 1990-1991, applicant was activated and served in the same SSC unit as Deputy Commander, still supervised by LTC Hudson, SSC Commander, and COL Cromartie, SSC Group Commander.

5. In January 1991, applicant filed an EO complaint against LTC Hudson and his command. The EO Inquiry substantiated discriminatory remarks directed at applicant's Jewish faith in the presence of others by LTC Hudson, a personality conflict, and perception of a discriminatory work environment:

> The Inquiry substantiated that LTC Hudson made inappropriate remarks and jokes concerning LTC Epstein's religious (Jewish) dietary habits * * * That, coupled with evidence of a personality conflict and rivalry between the two officers led to the complaint. Additionally, during the same time period, the working environment within the unit was one which undoubtedly left members with the impression that unequal treatment did exist in the unit.[9]

7. LTC Hudson was later issued a formally admonished in a letter from COL Cromartie cautioning him "to avoid future remarks of an insensitive and inappropriate nature such as those to LTC Epstein. . . .You must be especially sensitive in your choice of words and sensitive to reactions and perceptions of others about your words as well as your actions." [10]

8. Within weeks of the EO complaint by applicant, and still during the Gulf War, accusations of disloyalty were made by LTC Hudson and another Army official, Mr. Coburn, SSO, including allegation that applicant was an Israeli spy, a homosexual, and sexual pervert.[11] Mr. Coburn told the DIS agent that "it was [my] personal opinion" that LTC Epstein was an Israeli spy.[12] Believing there was probable cause to consider applicant for acts of treason or espionage during war-time, the DIS inquiry went so far as to interview applicant's military

---

[9] Ex. D (EO Complaint, 18 OCT 1991, ¶¶ 2-3).

[10] Ex. C. (April 1991 Memorandum to LTC Hudson, "Subject: Human Relations/Equal Opportunity Concerns"); Ex. K at K5 ¶ 3a (OSRB noting the rater was "admonished" by Group Commander after informal EO investigation).

[11] Ex. D at 4-5.

[12] Ex. S at S6 (DIS interview); Ex. D at D5 (Coburn making same statement to EO investigator).

4

intelligence unit associate from the 1970s to discuss "past rumors" of applicant's links to Mossad or the militant Jewish Defense League.[13] Applicant's security clearance was not revoked but the DIS file was not closed.[14] Applicant's later Privacy Act (PA) requests were unsuccessful to determine the final disposition of the DIS investigation due to classified PA exemptions.[15]

       9. Applicant received an adverse referred-OER from LTC Hudson/COL Cromartic for the period OCT 1990-March 1991. The OER states that applicant was "released" early from his duty assignment "for staff duty at the FORSCOM J-2."[16]

       10. In September 1993, the OSRB denied applicant's OER appeal.[17]

       11. In September 1993 applicant decided not to pursue an ABCMR appeal of the OER after the post-Gulf War media frenzy concerning a Presidential pardon for Israeli spy Jonathan Pollard.[18] Moreover, applicant sought legal representation to pursue an ABCMR appeal from a civilian attorney, Michael Beasley (Colonel, USAR, JAGC). However, Beasley advised against an ABCMR appeal and declined to represent applicant, informing him that "the press might find out about [the spy allegations]."[19] For the same reasons, applicant was again advised not to pursue an OER appeal by Bernard Ray, LTC (USAR), President of The Reserve Officers Association (NYC, Chapter 22). Finally, applicant was aware of the "un-closed" DIS investigation. Because applicant had only 15 years of USAR service, he began to experience increasing anxiety whether his Army Intelligence career, and investment towards retirement,

---

[13] Ex. S, DIS Investigation, 24 May 1991 at S3 thru S7 (DIS interviews with Hudson, Coburn, and former USAR supervisor John McLaughlin, 1825th Military Intelligence Battalion).

[14] Ex. S at S3 (results of investigation).

[15] Ex. S at S8.

[16] Ex. B4-B5.

[17] Ex. K.

[18] Ex. P1-P2. Also see *The Wall Street Journal*, February 24, 1994, Albert Hunt, "President Clinton, Don't Free the Traitor Pollard."

[19] COL Beasley was later promoted to BG in the Judge Advocate General Corps (USAR).

5

00019

would be placed in jeopardy. Amid the Jonathan Pollard backlash within the military intelligence community, he believed an OER appeal by a Jewish intelligence officer might generate media interest under his argument that an adverse OER and spy allegations were reprisals for his EO complaint. Applicant's anxiety was underscored because of his intimate knowledge of Army SCI state secrets, HUMINT and counter-intelligence procedures acquired through a long military intelligence career.

12.  From 1994 through 2000, applicant was again reluctant to file an ABCMR appeal amid repeated media attention to Israeli spy Jonathan Pollard. This included best-selling books, national newspaper coverage, US Congressional interest, and Israeli government pressure on President Clinton for a pardon during his final term of office. Ex. U1- U10 (chronology in campaign to pardon Pollard; book published in 2000, The Hunting Horse: The Truth Behind the Jonathan Pollard Spy case, by Elliot Goldenberg, and Alan Dershowitz; news stories in the Washington Post, 23 December 2000 ("US Senator Shelby urging Clinton not to commute Pollard's sentence") and Toronto Sun, January 14, 1999 ("Pollard was No Jewish Patriot")).

13.  Although applicant in October 1997 retired from the USAR,[20] his Legion of Merit recommendation was inexplicably delayed until January 2002.[21]  His training and promotion with a civilian DoD contractor in classified work was delayed until October 2002. Ex. T (Northrop Grumman "Certification as Intelligence Work Cell Controller").

14.  There is confirmation of applicant's real anxiety from 1994 to 2002 over the unresolved Israeli spy allegations, preserving his military career, and prospective civilian employment with DoD contractors within the intelligence field. In September 2002, VA psychiatrist Jonathan Kane diagnosed applicant with a prior latent service-connected PTSD or anxiety condition from the unresolved 1991 DIS investigation into war-time spy allegations, aggravated by his unique SCI knowledge and Army HUMINT operations, the incessant news

---

[20] Ex. R-R2.

[21] Ex. R3-R4.

6

coverage into the related Jonathan Pollard spy case to commute a prison sentence, and potential loss of applicant's military retirement. Dr. Kane in September 2002 diagnosed applicant with PTSD onset, service connected, and filed a disability claim on his behalf before the VA, prescribing Zoloft for anxiety reactions pending further treatment by the VA. Applicant has a follow-up appointment with Dr. Kane on 30 May 2003.[22]

15. Dr. Kane determined the onset of the latent PTSD or anxiety disorder occurred after applicant's involvement from the trauma in the aftermath of the September 11th Trade Center terrorism when he volunteered to assist local firefighters with removing dead victims and body parts near his home in New York City.

16. Also significant is that applicant's BCMR appeal on the merits adjudicated now will receive a more fitting and just review under the enlightened "zero tolerance" EO policies published by the Army in 1999. These new policy mandates that raters mark down a member's OER or NCOER as "does not Support EO" after a substantiated EO complaint.[23] This 1999 Command EO policy elevated to a zero-tolerance test the standards created in 1994 that discriminatory behaviors include "off-color jokes" as *verbal abuse*, because such insensitivity "can have an adverse impact on unit cohesion and readiness." [24] See Dickson v. Secretary of Defense, 68 F.2d 1396, 1405, n. 19 (D.C.Cir.1995)(BCMR failed to explain why it refused to waive an untimely claim for discharge upgrade that was based upon current favorable change in service policies).

17. Lastly, applicant's BCMR delayed petition will not prejudice the Board in compiling an adequate record for review because of the well-documented exhibits attached hereto, such as

---

[22] Ex. W (VA psychiatric clinic printout confirming future follow-up appointment).

[23] AR 600-20 Army Command Policy (Aug 1990) ¶ 6-1 *EO Program*; ¶ 6-3 *EO Policy* (NCOER and OER rating officials will mark down members on EO support based upon substantiated EO complaint).

[24] DA Pam 350-20 (June 1994) ¶ 14-2 (command insensitivity impacts upon unit cohesion and readiness), ¶ 14-5 (Verbal Abuse).

7

the EO complaint, later commander's inquiry, DIS investigation, OSRB case summary, duty orders, and OERs.

18.    For purposes of excusing an untimely BCMR filing, the *interests of justice* test looks to whether it was reasonable for the applicant, in his subjective mind, to delay his filing under the particular circumstances. See generally, McFarlane v. Secretary of Air Force, 867 F.Supp 405, 411-412, n. 11 (E.D.Va. 1994)(when determining when the limitations period ended to file BCMR application, the "reasonable person standard" does not apply but turns on when applicant herself found the mistake). Dickson, 68 F.2d at n. 14 (interests of justice standard for Army BCMR in waiver determinations includes both the *reasons* for a delayed filing and *merits* review).  The merits of the case are set forth below under Items 9 and 10 .

19.    Once applicant had retired in October 1997, the OSRB no longer had jurisdiction to reconsider his case, the ABCMR being the only resort for retired officer OER appeals. AR 623-105 ¶ 6-7 (the OSRB appeal period is 5-years from date of discovery if on active duty or reserve active status).   Because applicant exhausted his OSRB remedy in September 1993 with the 3-year limitations period expiring in September 1996, the BCMR should, in the interests of justice, waive the subsequent 7-year delay under the extraordinary circumstances of this case. Ortiz v. Secretary of Defense, 41 F.3d 738 (D.C.Cir. 1994)(because exhaustion of administrative remedies is mandatory before BCMR, start of 3-year period to file BCMR application begins when lower appellate board or agency decided case, not upon discovery of error or injustice).

**Items 9 and 10**: *Factual Support/Errors and Injustice*

## SUMMARY

Both the EO and later Commander's inquiries found that applicant's rater, LTC Hudson violated Army EO policy and was unprofessional by making ethnically inappropriate remarks to applicant, and that the rater also fomented the perception of a discriminatory work environment.

8

Whether the rater's insensitivity was overt prejudice or just plain dumb, both inquiries found his behavior had been fueled by an irreconcilable personality conflict with the applicant. Instead of properly resolving the issue, the senior rater instead summarily relieved applicant without any due process under the dubious guise of a referred "change-of-duty" OER. The adverse OER contained Hudson's scathing diatribes attacking applicant's loyalty, integrity, lack of military experience, tact, and people skills.[25]

In the alternative to the lack of due process for a *de facto* relief-for-cause, AR 623-105 provides for amendment to OERs in cases where adverse ratings cannot be clearly severed or isolated from a personality conflict—here, an irreparable friction that spiraled into a substantiated EO complaint and retaliatory duty assignment. Under current *zero tolerance* EO policies, LTC Hudson's verbal abuse of applicant, followed by a substantiated EO complaint and Command letter of admonition, would presumptively disqualified the rater from rendering a fair and objective evaluation.

Before the OSRB, rater LTC Hudson admitted a personality conflict existed, but baldly claimed his adverse evaluation of applicant was based purely on performance, not personality. The OSRB recited the findings of a formal EO inquiry in October 1991 that "issues surrounding appellant's poor duty performance are not clearly documented," and that a "strong personality conflict" existed with the rater. A Commander's Inquiry in March 1992 that found no errors admitted that "incompatible personalities" between applicant and the rater led to "considerable friction and disagreements." But that Inquiry failed to meet the demands of the prior EO report to independently account for the adverse OER allegations of incompetency, particularly when Hudson contradicted himself admitting he had adopted many of applicant's "good ideas."

In sum, the Commander's Inquiry could not sever the negative OER comments from an irreconcilable personality conflict—an acrimonious relationship inflamed by admitted ethnic slurs reinforced by a dysfunctional organizational climate infected with the perception of

---

[25] Ex. B4-B5. OER at Secs. Ivb., V.c.

9

favoritism. Moreover, the Inquiry could not disguise this result when confessing that applicant was a both competent and ethical officer who was "outspoken, articulate, and held strong views of right and wrong." Aside from the OSRB's rote recitation of these inquiries' findings, the appellate Board offered no analysis for its decision—it simply parroted language lifted from various provisions of AR 623-105, then rubber-stamped a suspect Commander's Inquiry.

<u>Facts and Argument</u>

1.      Applicant in January 1991 initiated an EO complaint against LTC Hudson, his rater, that led to an informal investigation by LTC James Hemenway. The informal investigation by "command visit" from FORSCOM in March 1991 substantiated that LTC Hudson made "inappropriate remarks and jokes" concerning applicant's religious practices "but they had been first initiated by [applicant] and not the rater;" that the rater should still be counseled; that applicant was not loyal to his commander and his actions were disruptive; that applicant should be reassigned to another command based upon the "personalty conflict with the rater;" alternatively, because of applicant's inexperience and lack of rater loyalty, he should be involuntarily released from active duty.[26]

1a.     Applicant vigorously points out that a biased and anti-semitic LTC James Hemenway conducted the informal EO investigation. First, LTC Hudson told applicant during the informal visit that "Jim Hemenway is a good friend." Secondly, Hemenway never interviewed applicant, and spent only one day at the unit. Thirdly, applicant recalled that Hemenway had personally met applicant about 12 years earlier as a fellow captain at Fort Huachuca, Arizona, when Hemenway was a reserve captain and police officer nearby in Tombstone Az. Applicant recalled that when then CPT Hemenway read applicant's name tag and confirmed he was Jewish, Hemenway stated "I don't speak to Jews." Applicant's certifies the truthfulness of these facts under penalty of perjury.

_____

[26] Ex. K at K6-K7 (OSRB reciting findings of informal EO investigation).

10

00024

2.    On March 5, 1991, the *day after* the informal EO investigation was completed, applicant was relieved from his duties and reassigned to a staff job at the FORSCOM J-2. Applicant was issued an adverse referred-OER ending March 5, 1991.[27] The unit failed to follow <u>any</u> relief-for-cause due process, such as a temporary suspension of duties, the identity in the OER of the official directing the relief, any concurrence or non-concurrence of the non-relieving rating official, and a supplemental review by a General Officer to determine whether the adverse duty performance and relief were adequately supported. <u>See</u> AR 623-105 ¶ 2-18 (supplemental review of relief reports), ¶ 3-50 (relief report procedures).

3.    Regulation defines a relief for cause as an "early release of an officer from a specific duty assignment based upon a decision that the officer failed in the performance of duties." AR 623-105 ¶ 3-50a. Neither OER rating officials in this report attempt to disguise applicant's relief, admitting in their comments that he was prematurely removed from his assignment and transferred outside of the command based upon his alleged poor duty performance—*alleged* because no prior supplemental review was conducted under AR 623-105 ¶ 2-18. Most appalling is that this *de facto* relief-for-cause occurred on the pretext of an informal EO "visit" requested by the applicant.[28]

4.    LTC Hudson was later issued a formal admonishment in a letter from the senior rater, COL Cromartie, cautioning Hudson "to avoid future remarks of an insensitive and inappropriate nature such as those to LTC Epstein. . . .You must be especially sensitive in your choice of words and sensitive to reactions and perceptions of others about your words as well as your actions." [29]

5.    In April 1991, LTC Hudson was issued the letter of admonishment by COL Cromartie for insensitive remarks to applicant and for generally ignoring ethnic and racial factors within his

---

[27] Ex. B-4.

[28] Ex. K5 (OSRB noting informal EO command visit in March 1991).

[29] Ex. C. (April 1991 Memorandum to LTC Hudson, "Subject: Human Relations/Equal Opportunity Concerns"); Ex. K at K5 ¶ 3a (OSRB noting the rater was "admonished" by Group Commander after informal EO investigation).

11

command.[30]   Shortly thereafter, accusations of disloyalty were made by LTC Hudson and

another senior Army official, Mr. Coburn, USAR Unit SSO, including inflammatory allegations

that applicant was an Israeli spy, a homosexual, and sexual pervert.[31]   A later DIS investigation

into espionage allegations showed that Mr. Coburn informed a DIS agent that "it was [my]

personal opinion" that LTC Epstein was an Israeli spy.[32]   As noted earlier, the DIS inquiry went

so far as to interrogate applicant's past military intelligence unit associates officers from the

1970s into rumors of applicant's links to Mossad and Jewish Defense League.[33]

      6.    After applicant's illegal summary relief without due process, he quickly requested a

*formal* EO investigation by INSCOM.  In October 1991, the findings of this formal investigation

by MSGT Ramseur, approved by COL Nickisch, Deputy Chief of Staff, INSCOM, substantiated

Hudson's inappropriate remarks to applicant, but *reversed* the informal EO findings on duty

performance.  The formal and more extensive EO investigation concluded that

> the issues surrounding appellant's poor duty performance *are not clearly documented* . . .
> [and that] there is no doubt in my mind that a *strong personality conflict* existed between
> LTCs Hudson and Epstein * * * Mr. Coburn did use the impending clearance validation
> of LTC Epstein as an opportunity to damage his career by implying he could be a spy for
> the Israeli government [italics added]. [34]

      6a.    Applicant was later called by MSGT Ramseur saying that he had additionally found

both LTC Hudson and Mr. Coburn were anti Semitic but COL Nickisch disapproved this finding

stating the MSGT Ramseur "because in the post-Gulf War environment, this would be

embarrassing within the intelligence community." Applicant certifies to the truthfulness of these

facts under penalty of perjury.

---

[30] Ex. C.

[31] Ex. D at 4-5.

[32] Ex. S at S6 (DIS interview); Ex. D at D5 (Coburn making same statement to EO investigator).

[33] Ex. S, DIS Investigation, 24 May 1991 at S3 thru S7 (DIS interviews with Hudson, Coburn, and former USAR supervisor John McLaughlin, 1825th Military Intelligence Battalion).

[34] Ex. D6.

00026

7.   The formal EO investigator's methodology was approved by the Command, including one-on-one interviews at all levels of command of 18 of 21 personnel assigned, one telephonic interview of one reassigned officer, interviews of the Deputy J-2, FORSCOM, the Deputy Chief of Staff, Reserve Affairs, INSCOM, the FORSCOM EO officer, and review of personnel actions (military justice, awards, reenlistment). The EO investigator looked directly into whether specifically alleged poor duty performance in the OER was documented or corroborated.

8.   The EO investigator found unsubstantiated Hudson's "cease and desist" warning to applicant in January 1991 of disloyalty and dishonesty and threatened relief-for-cause OER and denial of special security clearance.   The cease and desist letter was in response to allegations that applicant had knowingly conspired to incite fellow soldiers to falsely believe discriminatory practices existed in the unit and to file complaints.[35] The EO investigator found applicant did _not_ act in bad faith to breed distrust and disloyalty but as the deputy commander, had acted upon real perceptions in the unit, the complaints by several members, and repeated targeting at himself.[36] Finally, the EO investigation appeared to assist the unit by constructively identifying various causes for perceived discrimination, such as Hudson's "overall insensitivity of verbal communication with others," while offering various solutions.

9.   The EO investigator also found unsubstantiated certain of Hudson's OER accusations that applicant performed in less than satisfactory manner, and created problems by

---

[35] Ex. D-7 (Hudson Counseling statement, 18 JAN 91, to applicant).

[36] Exhibit at D (EO Inquiry substantiated "existence of conditions which contributed directly to LTC Epstein's concerns" including Hudson's inappropriate ethnic remarks, personality conflict, and poor working environment "that undoubtedly left members with the impression that unequal treatment did exist in the unit"); Ex. D-2 (Executive Summary stating Hudson's negative comments concerning. . . LTC Epstein and overall insensitivity of his verbal communication with others was substantiated."); Ex. D-3 to D-6 (EO Findings at ¶ 4.a(2)(perceptions of three soldiers saw favoritism); ¶ 4.b(1)(stress and poor organizational climate reinforced perceptions of discriminatory practices and some soldiers did make EO complaints to LTC Esptein, as deputy commander, which "appeared on surface to have merit").

13

using poor tact and unprofessionalism.[37] The OER narrative at Part Vb., claims applicant's "lack of military experience, tact and people skills" and several incidents. But in response to applicant's proffer that he made numerous recommendations to improve the unit operations, LTC Hudson curiously admitted to the EO investigator that "he agreed that LTC Epstein had very good ideas and he adopted many of them."[38] Secondly against Hudson's accusation, the investigator independently corroborated applicant's benign version of events that he had not improperly released "raw intelligence data" during a situation in Desert Storm.[39] With respect to the OER allegations of applicant's tactless manner and unprofessionalism, the investigator found that the ensuing 18 JAN 91 cease and desist warning "does not clearly state exactly what applicant did [and] is written in a way that allows the reader to form their own opinions and could be considered subjective."[40] Finally, the investigator concluded that the issues surrounding applicant's poor duty performance "are not clearly documented," and therefore suggested the commander, SSG, "consider [this] when reviewing LTC Epstein's OER."[41]

10. The formal EO findings, approved INSCOM Deputy Chief fo Staff, are *prima facie* cause to void relief-for-cause because allegations of poor performance were not substantiated. When the rating officials took no action, applicant requested a Commander's Inquiry.[42]

11. The inquiry was a routine commander's inquiry of an OER, and was specifically not a supplemental review of a relief report under ¶ 2-18 by a general officer to determine whether

---

[37] Ex. D-4.

[38] D-5 ¶ c(3)(a).

[39] Ex. D-4 to D-5, ¶ 4.c(1), c(3)(c)(investigator's telephone interview with Mr. Lynch, FORSCOM Operations Officer [FOC] "whose account of the incident mirrors that of LTC Epstein"); see D-8 (Epstein statement of incident).

[40] EX. D-5 to D-6, ¶ 4.d(1).

[41] EX. D-5 to D-6, ¶ 4.d(1), ¶ 5.

[42] Ex. F ( 4 March 1992 request for Commander's Inquiry).

14

the March 5 1991 relief-for-cause was appropriate.   Instead, INSCOM commander MG Scanlon appointed a Colonel Hennessey to conduct a routine commander's inquiry under ¶ 5-30.[43]

12.   Applicant recalls that COL Hennessey visited applicant while attending the Army War College in Pennsylvania, stating his investigation consisted of "calling LTC Hudson and a few others."  COL Hennessey then told applicant that "I don't's think much of these inquires... they don't' mean anything... only *pro forma*... never really change anything."  COL Hennessey also told applicant "this was his last thing to do before retiring."   Applicant also certifies to the truthfulness of these facts under penalty of perjury.

13.   The COL Hennessey report is not only appalling short and filled with cursory boilerplate assertions without any support, but is internally inconsistent.   Hennessey's report repeatedly underscores the "considerable friction between" LTC Hudson and applicant.  But on the adverse OER comments, COL Hennessey offered absolutely nothing in support except to baldly assert that "specific comments in the OER were corroborated," based upon individuals with first hand knowledge of the incidents.[44]   Compare this vague statement of "individuals" with the formal EO investigation, shortly after the report was issued, stating that 19 of 21 unit members were personally interviewed, including the raters.  Hennessey does not state who these individuals are he interviewed, the nature of their testimony, offers no corroboration as to their veracity amid the retaliatory DIS spy allegations and EO complaint against the command, nor offers any analysis whatsoever.   Without more, it can be presumed that he simply interviewed the rating officials as those individuals having "first hand knowledge" of the alleged incidents.  A career-ending relief for cause OER demands more than bald assertions while the only detailed findings are curiously devoted to the dominating personality conflict and collateral EO issues.

14.   Hennessey's accompanying 2-page factual findings are conspicuous in their gross lack of detail on the primary issue of trying to substantiate poor performance.  Instead, Hennessey

---

[43] Ex. F-4.

[44] Ex. F5 ¶ 3 (summary of findings).

15

devotes the entire analysis to the various aspects of the personality conflict. The factual findings *are striking* by discussing only the insensitive remarks by LTC Hudson, the perception of prejudice, the unresolved disagreement in unit policies, that applicant had strong views of right and wrong, that he was outspoken and articulate in expressing his views and was perceived as inflexible.[45]  For example, compare Hennessey's unsupported demand to accept "corroboration" of poor performance with the EO investigator's exacting corroboration citing a telephone interview with a "Mr. Lynch, FORSCOM Operations Officer, whose account of the [adverse] incident mirrors that of LTC Epstein". As noted below, Hudson focuses on this alleged incident of applicant improperly releasing raw intelligence during his OSRB interview in 1993.[46]

15.  Hennessey also believes that the considerable friction between Hudson and applicant was the unresolved disagreements between them over operating procedures and personnel practices.  Instead of criticizing applicant, Hennessey only benignly states that applicant's perceived "inflexibility" was due to incompatible personalities forced to work in a dysfunctional "stovepipe structure" unique to the SSG in wartime, and that applicant had very strong views of right and wrong, was outspoken, articulate.  Where is support for Hudson's OER claim that applicant lacked military experience, tact, and people skills? But compare Hennessey's "unresolved disagreements" finding with the EO investigator's finding that Hudson's "agreed that LTC Epstein had very good ideas and adopted many of them."[47]  All that is left is Hennessey's "friction" from incompatible personalities forced to work in a dysfunctional work structure.  Fueling this friction, Hennessey admits that the mere "perception of prejudice" by Hudson against Epstein "is a basis for invalidating an evaluation."[48]  But Hennessey oddly claims that perceived ethnic bias is irrelevant because no actual discrimination was later found.

---

[45] Ex. at F7.

[46] Ex. K-9  ¶ 4a (rater alleging poor judgment in incident of releasing raw intelligence).

[47] D-5 ¶ c(3)(a).

[48] Ex. F-8 ¶ 2c.

16

Hennessey grossly overlooks that atmosphere of friction from incompatible personalities would likely become intolerable when contaminated even the "perception" of ethnic bias—as such, it cannot be labeled simple harmless error.

16.    Also highly problematic is that in response to applicant's reprisal claim for his EO complaint, Hennessey mixes up the OER completion date with applicant's EO complaint date. Hennessey implies that reprisal is a red herring because the OER was signed by Hudson on 14 May 1991, when applicant faxed his request for a formal EO complaint on 17 May 1991, with findings issued in October.[49]  But Hennessey fails to note that Hudson was issued the written admonishment for his EO failures on *1 April 1991*, based upon the informal EO investigation. The April 1991 letter cautioned Hudson for his inappropriate ethnic remarks to applicant <u>and</u> was otherwise "insensitive" in his choice of words and the perceptions of others.[50]

17.    Moreover, the Inquiry confessed that applicant had to be both competent and ethical as "outspoken, articulate officer who held strong views of right and wrong." [51]  But without attacking applicant's views as knowingly flawed or in poor judgment, how can Hennessey find applicant holding strong views of right and wrong but then perceive him to be "inflexible" when he failed to compromise his integrity?  In other words, was it appropriate for Hudson to demand a kind a loyalty so that officers compromise on right and wrong?  It appears Hennessey, like Hudson, was confusing blind obedience with an officer's duty to express an ethical judgment. Alternatively, this strained "perception" of inflexibility might be indicative of a underlying personality problem between the two.   At any rate, it is not enough here to just "whine" about applicant being inflexible without adequate foundation.

18.    In sum, the commander's inquiry falls woefully short to rebut the formal EO demand that "the issues surrounding appellant's poor duty performance were not clearly

---

[49] Ex. F-7 ¶ 2b.; <u>compare with</u> Ex. D ¶ 1a. (non-secure facsimile by applicant 17 May 1991).

[50] Ex. C.

[51] Ex. F-7 ¶ 1.

17

documented." Nor did COL Hennessey demonstrate how the adverse comments could be easily severed from serious personality conflict——a conflict admittedly fueled by applicant's real perception of ethnic prejudice, now deemed "verbal abuse" under EO regulation. Hennessey makes "much ado" about this prolonged disharmony of personalities but adds nothing to independently substantiate the career-ending adverse OER comments and summary relief. The Inquiry did not meet the demands of the EO report to independently account for the adverse OER comments. The presumption remains that the objective ratings were corrupted by an irreparable personality conflict tainted by a real perception of ethnic bias.

19.    The spiraling personality conflict exasperated by Hudson's ethnic verbal abuse caused the very type of destructive environment that Army EO policies try to avoid—a negative climate that "undermines teamwork, mutual respect, loyalty, and shared sacrifice." AR 600-20 at ¶ 6-1 (July 1999)(Purpose of Army EO program).

20.    Moreover, the ethnic verbal abuse of Hudson towards applicant that mocked his religious dietary habits and other ethnic practices came perilously close to criminal conduct as "provoking and reproachful speech" under Article 117, UCMJ. Davis v. United States, 34 M.J. 849, 853 (ACMR 1992), affirmed, 36 M.J. 365. The Davis court found is was not necessary under the UCMJ for provoking words to rise to a challenge to do violence, citing in support Linyear v. United States, 3 M.J. 1027 (ACMR 1977)(calling a subordinate female Marine private a "swine" in a belligerent and "smart-alecky" tone is provoking and reproachful within meaning of Art. 117). The Davis court also discussed that the historical background of Article 117 was to "prevent the first steps towards quarrels, fights or tend to exasperate or arouse anger or resentment." Davis 34 M.J. at n. 2. Here, after the EO investigation, Hudson was given a mere slap on the wrist with an administrative written reprimand. It is clear that Hudson's ethnic slurs did arouse resentment or antagonize of the applicant within Art. 117, particularly when a personality conflict already existed. In fact, it is arguable that here, it was more sinister for a unit commander to intend ethnic slurs as a pretext to incite an adversarial relationship with a deputy commander than a slur reflecting actual bias. See Ex. D-6 ¶ 4(2)(formal EO investigator

18

00032

concluding that Hudson's ethnic comments to applicant "were designed more to antagonize him rather than be anti-semitic"). [52]

21.    Consequently, the Hennessey inquiry only confirmed that incompatible personalities inflamed by the ethnic slurs and the perception of discrimination, tainted the objectivity of the ratings.   Such bitter acrimony, whether deliberately or unwittingly tainting an evaluation, is an influence having no business in the process of careful and discerning subjective OER judgments. Serious personality conflicts, just as actual racial prejudice, equally fall within the within the category of prohibited personal bias.  AR 623-106 (1998) ¶ 3-28 (evaluation must not reflect rating officials personal bias or prejudice).   See AR 623-105 ¶ 3-2, *Evaluation Principles*, (ratings must be objective, honest and fair); ¶ 6-12b.(2)(reports may be unjust as lacking objectivity if attributed to personality conflicts).

22.    On 19 August 1993, the OSRB denied applicant's OER appeal.  Ex. K to K-12 (OSRB Decision and Case Summary); K-13 to K-15 (selected OSRB exhibits).

23.    The primary flaw of the OSRB is it simply rubber-stamps the discredited self-serving statements of Hudson while mechanically parroting the language of various provisions of AR 623-105.  There is no independent analysis to reconcile the competing EO investigation and Commanders Inquiry. [53]  It appears the OSRB essentially defaulted to the cursory Commander's Inquiry of "no error."

24.    The Hennessey report shortfalls of no evidentiary support, and admitted "incompatible personality problems" fueled by ethnic slurs, were never addressed by the OSRB. It is flagrantly obvious that the OSRB failed to query Hudson about his inconsistent admissions to the EO investigator in 1991 that he "adopted" many of applicant's "good ideas" while telling

---

[52]  There is no evidence from the formal EO investigation nor Commander's Inquiry to support Hudson's self-serving excuse offered *post hoc* before the OSRB that it was applicant himself who "initiated" the exchange of the ethnic jokes.  Ex. K-10 ¶ 4a.  Certainly if this "active solicitation" argument had any merit then COL Cromartie would not have issued his letter of admonition to Hudson for "inappropriate remarks" to Epstein and overall insensitivity to other minorities in the unit, as confirmed by the formal EO findings.

[53]  Ex. K-10 to K-12 (OSRB reciting from AR 623-105 ¶¶ 9-7, 4-13, 4-14, 5-32).

19

the OSRB in 1993 that applicant "continually tried to undermine his authority" and had no loyalty to anyone.  Nor did the OSRB press Hudson as to why he believed applicant conspired behind his back with enlisted soldiers when the EO investigation found applicant acted in good faith in response to real and unremedied perceptions of prejudice in the unit.  Hudson even offered the OSRB the unsupported self-serving excuse that his ethnic slurs were "initiated" by applicant, and then stopped.  Rather, the insensitivity stopped when applicant filed an EO complaint and Hudson was issued a letter of warning.  Furthermore, the OSRB did not confront Hudson that his adverse interpretation of the "raw intelligence" incident conflicted with the EO investigation's independent corroboration of applicant's otherwise benign view by Mr. Lynch.  Nor does the OSRB confront Hudson that another alleged adverse incident involving a training film was contradicted as a contrived exaggeration by LTC Speer.[54]  So when Hudson finally admits to the OSRB that a "personality conflict existed," his rejoinder is disingenuous by glibly saying "but it was qualification and performance, not personality." [55]

    25.  The senior rater's pathetic attempt to bolster the OER is exposed by puffing up his rater that he "errs on the side of individual. . . and does all he can to motivate his subordinates."  But it was this same senior rater, COL Cromartie, who issued a written admonishment to Hudson that he was not motivating his subordinates because of insensitivity in words and actions that created "reactions and perceptions" of favoritism in the unit.[56]  It was also the EO investigation approved by INSCOM findings that Hudson made off-color jokes and other inappropriate ethnic remarks to applicant "in the presence of others," Hudson perpetuated a "work environment within the unit that undoubtedly left members with the impression that unequal treatment did exist." [57]  It does violence to the English language to say that Hudson "errs on the side of individual" and "does all he can to motivate his subordinates."

---

[54] EX. K-9 ¶ 3.h.

[55] Ex. K-10 ¶ 4.a.

[56] Ex. C (letter of counseling).

[57] Ex. D.

20

26. Finally, it is improper for the OSRB to dismiss supporting statements from officers as simply "not observed from a rater's perspective" when the evidentiary purpose of such statements offers a *witness* to certain events, as distinct from offering an evaluation of applicant's duty performance. For example, 1LT Birdwell stated that "enlisted soldiers complained in confidence to me that they believed LTC Hudson was racially and religiously biased," and that "the only vocal critic of LTC Epstein was Mr. Coburn," and that LTC Epstein cautioned her to "check with LTC Hudson before proceeding with [Epstein's] advice to avoid contradicting or embarrassing Hudson, and that every time she went to the SSC office she felt a "definite mood of anxiety" between the two, or that unlikely the senior rater could have first-hand knowledge of Epstein's performance when he was over 700 miles away," and why the senior rater allowed a "clash of personalities to go on for so long." [58]   Finally, the OSRB does not reconcile the contradictory EO findings based upon interviews of nearly all of the units' personnel.

27. From 1994 to 1997 applicant was non-selected for promotion to COL (USAR).

28. In October 1997, applicant was retired from the USAR for maximum years of service (28 years commissioned services).[59]

29. The remainder of the relevant facts were set forth above under Item 11, at pages 1-8.

---

[58] Ex. K-14 to K-15 ¶¶ 3-7 (Statement to OSRB).

[59] Ex. R.

00035

CONCLUSION

For the foregoing reasons, applicant requests that the BCMR, in the interests of justice, review this case on the merits, and grant relief as set forth above under Item 8.

Respectfully submitted,

John A. Wickham, Esq.
Counsel for Applicant

Incl:

Exhibits A-W
* Exhibit V is omitted

22

00036

# OFFICER RECORD BRIEF (DA Pam 600-8)

**NAME:** Epstein, Lawrence Steven

## SECTION I - ASSIGNMENT INFORMATION

**OVERSEAS DUTY**

## SECTION II - SECURITY DATA

ARMY CLEARANCE: Top Secret

## SECTION III - SERVICE DATA

## SECTION IV - PERSONAL/FAMILY DATA

DATE OF BIRTH

BIRTHPLACE: Brooklyn, NY

**SPECIALTIES**

HUMINT Officer
Special Security Officer
Tactical Intelli Officer
Counterintelligence Officer

## SECTION V - FOREIGN LANGUAGE

LANGUAGE: Panama

## SECTION VI - MILITARY EDUCATION

Army War College (1-250-C15)
Nat Sec Mgt Crs
SSC College Selectee
Israel Def For ADM
CGSC 1-250-C15
Mil Intel Off Adv
Area Intel Off Crs
Tactical Intel Off
Counter Intel Transition
Technical Intelligence

## SECTION VII - CIVILIAN EDUCATION

Senior Intelligence Analyst
AAR Team Observer
Student
Senior Intelligence Staff Off
Deputy Commander
Detachment Commander
Special Project Officer
Senior Project Officer
Special Security Officer
OIC Airland Battle Exer
Special Project Officer
CAA Cdr
OTDW Instructor
OTDW Cdr
Oper Mem Cdr
Phase VI Instructor
Intelligence Officer
Instructor
Area Intelligence Officer

## SECTION VIII - AWARDS AND DECORATIONS

1. TRAN
2. AAM/7OLC
4. ARCAM/7OLC
5. NDSM/w STAR
6. ASR
7. OSR

8. ARCOTR
9. AAB
10. EIF Air-
borne Wings

## SECTION X - REMARKS

CIVILIAN OCCUPATION:
College Professor/Computer and
Financial Consultant
Employer: Self Employed

Misc: Brother 814-362-4040
LTC Edward Epstein

Alternate Address:

PREVIOUS EDITIONS OF THIS FORM ARE OBSOLETE

DA FORM 4037, JUL 82

EXHIBIT A

Page 2 Continuation

# OFFICER RECORD BRIEF (DA Pam 600-8)

| COM NO | PMAD DMR | | | BRANCH OR AR | MI | COMPONENT | LTC - 890606 | | NAME | Epstein, Lawrence Steven |
|---|---|---|---|---|---|---|---|---|---|---|

| | | | | | | | SECTION IV - PERSONAL/FAMILY DATA |

## SECTION I - ASSIGNMENT INFORMATION

## SECTION II - SECURITY DATA

## SECTION III - SERVICE DATA

### SECTION V - FOREIGN LANGUAGE

### SECTION VI - MILITARY EDUCATION

### SECTION VII - CIVILIAN EDUCATION

### SECTION VIII - AWARDS AND DECORATIONS

## SECTION IX - ASSIGNMENT HISTORY

| FROM DATE | NO | UNIT NO | ORGANIZATION | STATION | LOC | COMD | TITLE | | | GRD ZP CHG |
|---|---|---|---|---|---|---|---|---|---|---|
| | | | Co C, 826th MI Bn (TA) | Bronx | NY | | Area Intelligence Officer | | | 35A |
| 7608 | | | 228th MI Det (CI) | Oakland | CA | | CI Officer | | | 35A |
| 7304 | | | HHC, 500 MI Gp | St. Louis | MO | | CI Officer | | | 35A |
| 7205 | | | 710 MI Det | Frd Island | HI | | CI Officer | | | 35A |
| 7007 | | | AD Accession DS | Honolulu | HI | | SP Agent | | | 35A |
| 6912 | | | | Ft. Meade | MD | | Student | | | 35A |

## SECTION X - REMARKS

DA FORM 4037, JUL 82       PREVIOUS EDITIONS OF THIS FORM ARE OBSOLETE       For detailed explanation of data items, see Procedure 3-1 DA Pam 6014.



SEE PRIVACY ACT STATEMENT
ON DA FORM 67-8-1

PART I — ADMINISTRATIVE DATA

| a. LAST NAME - FIRST NAME - MIDDLE INITIAL | b. SSN | c. GRADE | d. DATE OF RANK Year Month Day | e. BR | f. DESIGNATED SPECIALTIES | g. PMOS INFO | h. STA CODE |
|---|---|---|---|---|---|---|---|
| EPSTEIN, Lawrence S. | | LTC | 89 06 03 | MI | 35 | | 13587 |

| i. UNIT, ORGANIZATION, STATION, ZIP CODE OR APO, MAJOR COMMAND | j. REASON FOR SUBMISSION | k. COMD CODE |
|---|---|---|
| USAG Control Gp, ARPERCEN, St Louis, MO w/duty SSD Third US Army Ft McPherson GA 30330 (FORSCOM) | 12A  REFRAT | FC |

PART I, PERIOD COVERED / RATED OFFICER COPY

| l. PERIOD COVERED FROM Year Month Day | THRU Year Month Day | m. NO. OF MONTHS | n. NILPO CODE I/O | o. RATED OFFICER COPY (Check one and date) |
|---|---|---|---|---|
| 90 07 16 | 90 07 31 | 16 days | FS21 | 1. GIVEN TO OFFICER  ☐  2. FORWARDED TO OFFICER ☐  FORWARDING ADDRESS |

q. EXPLANATION OF NONRATED PERIODS

PART II — AUTHENTICATION (Rated officer's signature verifies PART I data and RATING OFFICIALS ONLY)

| a. NAME OF RATER (Last, First, MI) | SSN | SIGNATURE | DATE |
|---|---|---|---|
| HUDSON, Gabriel L. | | | |
| GRADE, BRANCH, ORGANIZATION, DUTY ASSIGNMENT | | | |
| LTC, AV, US Army Special Security Command FORSCOM Commander | | | |

| b. NAME OF INTERMEDIATE RATER (Last, First, MI) | SSN | SIGNATURE | DATE |
|---|---|---|---|
| GRADE, BRANCH, ORGANIZATION, DUTY ASSIGNMENT | | | |

| c. NAME OF SENIOR RATER (Last, First, MI) | SSN | SIGNATURE | DATE |
|---|---|---|---|
| CROMARTIE, George D. Jr. | | | 28 Aug 90 |
| GRADE, BRANCH, ORGANIZATION, DUTY ASSIGNMENT | | | |
| COL, MI, US Army Special Security Group Commander | | | |

| d. SIGNATURE OF RATED OFFICER | DATE | e. DATE ENTERED ON DA FORM 2-1 | f. RATED OFFICER INFO INITIALS | g. SR MPO INITIALS | h. NO. OF INCL |
|---|---|---|---|---|---|

PART III — DUTY DESCRIPTION (Rater)       b. SSI/MOS  35B

a. PRINCIPAL DUTY TITLE   Detachment Commander

c. Deploy with Third US Army to participate in Internal Look 90 and assist in operation of the exercise tactical Sensitive-Compartmented Information (SCI) Facility; serve as the Special Security Officer responsible for providing SCI support to active and reserve units; oversee the billet administration, document accountability procedures, and general office management of the Special Security Detachment (SSD); oversee the acquisition, physical security, dissemination, and eventual destruction of SCI as well as the activities associated with the Defense Courier System (DCS); administer indoctrination and reindoctrination briefings for military and civilian agencies as appropriate.

d. REFER TO PART IIIb, DA FORM 67-8-1

PART IV — PERFORMANCE EVALUATION — PROFESSIONALISM (Rater)

HIGH DEGREE    LOW DEGREE

a. PROFESSIONAL COMPETENCE (In Items 1 through 7 below, indicate the degree of agreement with the statement by drawing an "X" in one of the boxes below the statement. Any comments will be reflected in b below.)   1  2  3  4  5  6

| | | | | | |
|---|---|---|---|---|---|
| 1. Possesses capacity to acquire knowledge/grasp concepts | 1 | 8. Displays sound judgment | 1 |
| 2. Demonstrates appropriate knowledge and expertise in assigned tasks | 1 | 9. Seeks self-improvement | 1 |
| 3. Maintains appropriate level of physical fitness  Pass 9003 | 1 | 10. Is adaptable to changing situations | 1 |
| 4. Motivates, challenges and develops subordinates | 1 | 11. Sets and enforces high standards | 1 |
| 5. Performs under physical and mental stress | 1 | 12. Possesses military bearing and appearance  71/180 Yes | 1 |
| 6. Encourages candor and frankness in subordinates | 1 | 13. Supports EO/EEO | 1 |
| 7. Clear and concise in written communication | 1 | 14. Clear and concise in oral communication | 1 |

b. PROFESSIONAL ETHICS (Comment on any area where the rated officer is particularly outstanding or needs improvement)

a.1 -- rapidly adapts to changing situations
a.3 -- outstanding level of physical fitness
a.7&14 -- superb communicator
b.1&3 -- 100% to mission and command
b.6 -- beyond reproach

| 1. DEDICATION | 2. RESPONSIBILITY | 3. LOYALTY | 4. DISCIPLINE | 5. INTEGRITY | 6. MORAL COURAGE | 7. SELFLESSNESS | 8. MORAL STANDARDS |
|---|---|---|---|---|---|---|---|

49

EXHIBIT B

ARMY OFFICER EVALUATION REPORT

DA FORM 67-8
1 SEP 79      REPLACES DA FORM 67-7, 1 JAN 73, WHICH IS OBSOLETE, 1 NOV 79

**PERIOD COVERED**

**PART V — PERFORMANCE AND POTENTIAL EVALUATION** (Rater)

a. RATED OFFICER'S NAME   EPSTEIN, Lawrence S

RATED OFFICER IS ASSIGNED IN ONE OF HIS/HER DESIGNATED SPECIALTIES/MOS   [X] YES   [ ] NO

b. PERFORMANCE DURING THIS RATING PERIOD. REFER TO PART III, DA FORM 67-8 AND PART III a.b. AND c, DA FORM 67-8-1

| [X] ALWAYS EXCEEDED REQUIREMENTS | [ ] USUALLY EXCEEDED REQUIREMENTS | [ ] MET REQUIREMENTS | [ ] OFTEN FAILED REQUIREMENTS | [ ] USUALLY FAILED REQUIREMENTS |
|---|---|---|---|---|

c. COMMENT ON SPECIFIC ASPECTS OF THE PERFORMANCE. REFER TO PART III, DA FORM 67-8 AND PART III a.b. AND c, DA FORM 67-8-1. DO NOT USE FOR COMMENTS ON POTENTIAL.

LTC Epstein is a professional, enthusiastic, technically and tactically competent officer who performed his duties as an Individual Mobilization Augmentee to the Special Security Officer, Third United States Army in an outstanding manner. He performed these duties during exercise Internal Look 00. Deploying with his assigned section he was prepared for duty and contributed greatly to the employment and mission accomplishment of the Special Security Office. His superior efficiency and effectiveness coupled with his vast experience and attention to detail allowed him to rapidly come on line and provide security support. He assisted in training junior active component officers in techniques and procedures of the special security system. LTC Epstein managed the 12 hour nightshift in a tactical Sensitive Compartmented Information Facility (SCIF) flawlessly. He met or exceeded every standard for the tasks assigned him. He represented the Reserve Component, Special Security Group and this command in a very positive, professional manner.

d. THIS OFFICER'S POTENTIAL FOR PROMOTION TO THE NEXT HIGHER GRADE IS

| [ ] PROMOTE AHEAD OF CONTEMPORARIES | [v] PROMOTE WITH CONTEMPORARIES | [ ] DO NOT PROMOTE | [ ] OTHER (Explain) |
|---|---|---|---|

e. COMMENT ON POTENTIAL

Promote to colonel. Select for a senior service college. Unlimited potential for higher level command and staff positions.

**PART VI — INTERMEDIATE RATER**

b. COMMENTS

**PART VII — SENIOR RATER**

a. POTENTIAL EVALUATION (See Chapter 4, AR 273-185)

SR

USE ONLY

HI

LO

b. COMMENTS

LTC Epstein performed his duties in an outstanding manner. His leadership experience and contributions had a profound impact on the success of the Third US Army Special Security Office. He is totally ready to assume duties as a Senior intelligence officer or corps G-2 upon mobilization. His knowledge and experience in the intelligence field is significant and will be welcomed asset to any RC/AC command. Promote him to colonel, continue his military education. He has outstanding potential.

c. COMPLETED DA FORM 67-8-1 WAS RECEIVED WITH THIS REPORT AND CONSIDERED IN MY EVALUATION AND REVIEW   [X] YES   [ ] NO (Explain in b)

B-2

U.S.G.P.O.: 1987 - 181-037/50702

DEPARTMENT OF THE ARMY
U.S. ARMY RESERVE PERSONNEL CENTER
9700 PAGE BOULEVARD
ST. LOUIS, MISSOURI  63132-5200

ORDERS # M-10-500352                                    11 OCT 90

EPSTEIN LAWRENCE STEVEN    MOP-F               UIC 0231

YOU ARE ORDERED TO ACTIVE DUTY (AD) FOR THE PERIOD SHOWN.  UPON COMPLETION OF THE
PERIOD OF AD, UNLESS SOONER RELEASED OR EXTENDED BY PROPER AUTHORITY, YOU WILL RETURN
TO THE PLACE WHERE YOU ENTERED AD UNLESS OTHERWISE ORDERED BY PROPER AUTHORITY AND BE
RELEASED FROM SUCH DUTY.

REPORT TO:  HQS, FORSCOM, BLDG 200           AOC/MOS: 35F   DOR: 890603
            FT. MCPHERSON, GA 30330          MDC: 1A00      SEX: M
                                             FSBD: 690606   COMP: IMA
PERIOD:  90 DAYS                             S/C:  TOP SECRET
REPORTING DATE:    NLT 0900 22 OCT 90
ASSIGNED TO:  USA SPEC SCTY GP, ATTN: IASSG-A BLDG 8544, FT. MEADE, MD  20755
PURPOSE:  PRESIDENTIAL CALLUP

ADDITIONAL INSTRUCTIONS:  REPORT ON DATE INDICATED.  A DETERMINATION TO DELAY OR EXEMPT
YOU FROM SERVING ON ACTIVE DUTY CAN BE MADE ONLY AFTER YOU REPORT AS DIRECTED.  FAILURE
TO REPORT MAY BE CONSIDERED ABSENCE WITHOUT LEAVE AND MAY SUBJECT YOU TO UCMJ ACTION
UNDER TITLE 10 USC 886.  BRING WITH YOU: PROFESSIONAL CREDENTIALS; ALL SERVICEABLE
UNIFORMS; PROOF OF MARRIAGE; BIRTH CERTIFICATES OF CHILDREN; DOCTOR'S STATEMENT FOR
CHILDREN OVER 21 INCAPABLE OF SELF-SUPPORT; COURT ORDERS GOVERNING DEPENDENT
SUPPORT/LEGAL CUSTODY OF CHILDREN; YOUR IMMUNIZATION RECORDS; ID CARDS AND TAGS.
TRANSPORTATION OF DEPENDENTS AND HOUSEHOLD GOODS IS NOT AUTHORIZED.  FOR TRANSPORTATION
ASSISTANCE CALL ARPERCEN PMO.  LEAVE COPIES OF THIS ORDER WITH YOUR DEPENDENT/NEXT OF
KIN.  RENTAL CAR NOT AUTHORIZED.  UPON ARRIVAL RETAKE HIV TEST IF OVER 24 MOS OLD.

FOR ARMY USE
AUTH:  10 USC 673B
ACCT CLASS, PAY & ALW: 2102010/2112010 01-0110 F10I0.VKWT S99999 1198, 1199, 1250, 1210
ACCT CLASS, TVL/PD: 2102020/2112020 22-7010 P20S011.00 XBRE S23185 211A, 219A,
EPE432S.   SUBJECT TO THE AVAILABILITY OF FY 91 FUNDS
FORMAT:  162 (MODIFIED)

BY ORDER OF THE SECRETARY OF THE ARMY:

***************
*  ARPERCEN  *
*  OFFICIAL  *              - THOMAS J. KILMARTIN
***************              BRIGADIER GENERAL, USA
                            COMMANDING

DISTRIBUTION:  XX PLUS
CDR, USA SPEC SCTY GP, ATTN: IASSG-A BLDG 8544, FT. MEADE, MD  20755

B-3

00041

SEE PRIVACY ACT STATEMENT
ON DA FORM 67-8-1

For use of this form, see AR 623-105; proponent
agency is US Army Military Personnel Center.

## PART I — ADMINISTRATIVE DATA

| a. LAST NAME - FIRST NAME - MIDDLE INITIAL | b. SSN | c. GRADE | d. DATE OF RANK | | | e. BR | f. DESIGNATED SPECIALTIES | g. PMOS (RET.) | h. STA CODE |
|---|---|---|---|---|---|---|---|---|---|
| | | | Year | Month | Day | | | | |
| EPSTEIN, Lawrence S. | ▮▮▮▮ | LTC | 89 | 06 | 03 | MI | 35 | | 13567 |

| i. UNIT, ORGANIZATION, STATION, ZIP CODE OR APO, MAJOR COMMAND | j. REASON FOR SUBMISSION | k. COMD CODE |
|---|---|---|
| USAR Cont Gp ARPERCEN, St Louis, MO 63132-5200 Atch to USASSC FORSCOM, Ft McPherson, GA 30330   (FORSCOM) | 04 | Change of duty | FC |

| l. PERIOD COVERED | | | | | | m. NO. OF MONTHS | n. MILPO CODE | o. RATED OFFICER COPY (Check one and date) | p. FORWARDING ADDRESS |
|---|---|---|---|---|---|---|---|---|---|
| FROM | | | THRU | | | | | | |
| Year | Month | Day | Year | Month | Day | 5 | FS26 | 1. GIVEN TO OFFICER ☐ | |
| 90 | 10 | 22 | 91 | 03 | 05 | | | 2. FORWARDED TO OFFICER ☐ | ▮▮▮▮ |

| q. EXPLANATION OF NONRATED PERIODS |
|---|
| |

## PART II — AUTHENTICATION (Rated officer signature verifies PART I data and RATING OFFICIALS ONLY)

| a. NAME OF RATER (Last, First, MI) | SSN | SIGNATURE | |
|---|---|---|---|
| HUDSON, Gabriel L. | ▮▮▮▮ | *(signature)* | |
| GRADE, BRANCH, ORGANIZATION, DUTY ASSIGNMENT | | | DATE |
| LTC, AV, USA Special Security Command FORSCOM, Commander | | | 14 MAY 91 |

| b. NAME OF INTERMEDIATE RATER (Last, First, MI) | SSN | SIGNATURE | |
|---|---|---|---|
| | | | |
| GRADE, BRANCH, ORGANIZATION, DUTY ASSIGNMENT | | | DATE |
| | | | |

| c. NAME OF SENIOR RATER (Last, First, MI) | SSN | SIGNATURE | |
|---|---|---|---|
| CROMARTIE, George D., Jr. | ▮▮▮▮ | *(signature)* | |
| GRADE, BRANCH, ORGANIZATION, DUTY ASSIGNMENT | | | DATE |
| COL, MI, USA Special Security Group, Commander | | | 80 #91 |

| d. SIGNATURE OF RATED OFFICER | DATE | e. DATE ENTERED ON DA FORM 2-1 | f. RATED OFFICER MPO INITIALS | g. SR MPO INITIALS | h. NO. OF INCL. |
|---|---|---|---|---|---|
| *(signature)* | 15 May 91 | | | | |

## PART III — DUTY DESCRIPTION (Rater)

| a. PRINCIPAL DUTY TITLE | b. SSI/MOS |
|---|---|
| Deputy Commander | 35E |

c. REFER TO PART IIIa, DA FORM 67-8-1

As the Individual Mobilization Augmentee (IMA) assigned as Deputy Commander, Special Security Command (SSC) FORSCOM, during Operation Desert Shield/Storm. Responsible for planning, directing, and supervising operations of the SSC, a battalion level command consisting of 13 Active Duty detachments and 17 USAR Mobilization Stations. Activities include: directing daily operations of the security of SCI; administering SCI billet and access programs; coordinating SSO training; oversight of the FORSCOM SSO inspection program. Advise the SSC Commander and Hq FORSCOM regarding Reserve Component SSO issues related to Reserve forces.

## PART IV — PERFORMANCE EVALUATION — PROFESSIONALISM (Rater)

a. PROFESSIONAL COMPETENCE (In items 1 through 14 below, indicate the degree of agreement with the following statements as being descriptive of the rated officer. Any comments will be reflected in b below.)

HIGH DEGREE   LOW DEGREE
1    2    3    4    5

| | | | |  | | | |
|---|---|---|---|---|---|---|---|
| 1. Possesses capacity to acquire knowledge/grasp concepts | 1 | 8. Displays sound judgment | | | 3 | | |
| 2. Demonstrates appropriate knowledge and expertise in assigned tasks | 1 | 9. Seeks self-improvement | 1 | | | | |
| 3. Maintains appropriate level of physical fitness   9003 Pass | 1 | 10. Is adaptable to changing situations | 1 | | | | |
| 4. Motivates, challenges and develops subordinates | NA | 11. Sets and enforces high standards | 1 | | | | |
| 5. Performs under physical and mental stress | 1 | 12. Possesses military bearing and appearance   71/180 Yes | 1 | | | | |
| 6. Encourages candor and frankness in subordinates | NA | 13. Supports EO/EEO | 1 | | | | |
| 7. Clear and concise in written communication | 1 | 14. Clear and concise in oral communication | 1 | | | | |

b. PROFESSIONAL ETHICS (Comment on any area where the rated officer is particularly outstanding or needs improvement.)

1. DEDICATION
2. RESPONSIBILITY
3. LOYALTY
4. DISCIPLINE
5. INTEGRITY
6. MORAL COURAGE
7. SELFLESSNESS
8. MORAL STANDARDS

a8 - on three occasions, he displayed very poor judgment which resulted in embarrassment for this command
b3 & 5 - I questioned his loyalty and integrity due to actions and comments on at least three occasions

B-4

| DA FORM 67-8 (1 SEP 79) | REPLACES DA FORM 67-7, 1 JAN 73, WHICH IS OBSOLETE, 1 NOV 75. | US ARMY OFFICER EVALUATION REPORT |
|---|---|---|

PERIOD COVERED   901022 - 910305.

**PART V — PERFORMANCE AND POTENTIAL EVALUATION (Rater)**

a. RATED OFFICER'S NAME   EPSTEIN, Lawrence S.                SSN
RATED OFFICER IS ASSIGNED IN ONE OF HIS/HER DESIGNATED SPECIALTIES/MOS        ☐ YES   ☐ NO

b. PERFORMANCE DURING THIS RATING PERIOD. REFER TO PART III, DA FORM 67-8 AND PART III a, b, AND c, DA FORM 67-8-1

| ☐ ALWAYS EXCEEDED REQUIREMENTS | ☒ USUALLY EXCEEDED REQUIREMENTS | ☐ MET REQUIREMENTS | ☐ OFTEN FAILED REQUIREMENTS | ☐ USUALLY FAILED REQUIREMENTS |

c. COMMENT ON SPECIFIC ASPECTS OF THE PERFORMANCE. REFER TO PART III, DA FORM 67-8 AND PART III a, b, AND c, DA FORM 67-8-1, DO NOT USE FOR COMMENTS ON POTENTIAL!

LTC Larry Epstein is a USAR officer, Individual Mobilization Augmentee, assigned as the deputy commander to this command. He readily volunteered for active duty during Operation Desert Shield/Storm. His knowledge of computers and ADP equipment is superb. He is very enthusiastic and aggressive. However, his lack of military experience, tact, and people skills began to manifest themselves shortly after his arrival. His tactless conversation with the executive officer to the chief of staff caused this command extreme embarrassment. At least three times he disclosed privileged information to soldiers, seriously degrading morale and esprit de corps of the soldiers and the command. These actions seriously effected my impression of his loyalty and integrity. Further, LTC Epstein issued uncoordinated guidance to two subordinate elements resulting in confusion and unnecessary disruption. He was unable to heed my counseling and guidance and improve his performance, as a result, he was reassigned to another position in the J-2.

d. THIS OFFICER'S POTENTIAL FOR PROMOTION TO THE NEXT HIGHER GRADE IS

| ☐ PROMOTE AHEAD OF CONTEMPORARIES | ☒ PROMOTE WITH CONTEMPORARIES | ☐ DO NOT PROMOTE | ☐ OTHER (Explain below) |

e. COMMENT ON POTENTIAL

Future active duty should be carefully coordinated and supervised at 0-6 level or above. He has excellent potential for higher level staff and promotion, given training and experience.

**PART VI — INTERMEDIATE RATER**

b. COMMENTS

**PART VII — SENIOR RATER**

a. POTENTIAL EVALUATION (See Chapter 4, AR 623-105)

| SR | DA USE ONLY |

b. COMMENTS

Lieutenant Colonel Epstein volunteered for active duty to serve in DESERT SHIELD/STORM. He was assigned to assist the Commander, Special Security Command, FORSCOM in carrying out his rapidly expanding responsibilities in supporting the FORSCOM deployment effort. In his zeal to meet the numerous demands, LTC Epstein clashed with the commander over operational procedures, management of assigned personnel and basic command philosophy. The Commander and LTC Epstein were unable to resolve their differences and LTC Epstein was released for staff duty with J-2 FORSCOM. LTC Epstein is highly motivated and displays high potential for assignment to positions requiring independent analysis and action. Promote with contemporaries.

a. COMPLETED DA FORM 67-8-1 WAS RECEIVED WITH THIS REPORT AND CONSIDERED IN MY EVALUATION AND REVIEW        ☒ YES   ☐ NO (Explain in b)

B-5

★ U.S.G.P.O. 1988 - 201-424/80236

FEB 21 '91  02:01PM USA SPECIAL SECURITY GROUP

02-21-91 14:25 T-USAINSCOM    #432 P05

DEPARTMENT OF THE ARMY
U.S. ARMY RESERVE PERSONNEL CENTER
9700 PAGE BOULEVARD
ST. LOUIS, MISSOURI 63132-5200

ORDERS # M-02-600614    16 FEBRUARY 1991

EPSTEIN LAWRENCE STEVEN    MOX-6    LTC 0231

YOU ARE ORDERED TO ACTIVE DUTY IN THE GRADE OR RANK SHOWN ABOVE FOR THE PERIOD SHOWN IN
ACTIVE DUTY COMMITMENT BELOW. YOU ARE ASSIGNED AS SHOWN AND WILL PROCEED FROM YOUR
CURRENT LOCATION IN TIME TO REPORT ON THE DATE SHOW BELOW.

REPORT TO: HQ FORSCOM
           BLDG 700
           FT MCPHERSON, GA 30330
REPORTING DATE: NLT 0800 HRS 20 APR 91
ASSIGNED TO: USA SPEC SCTY GP
ACTIVE DUTY COMMITMENT:  6 MONTHS
PURPOSE: PARTIAL MOBILIZATION (PRESIDENTIAL)

ADDITIONAL INSTRUCTIONS: REPORT ON DATE INDICATED.  A DETERMINATION TO DELAY OR
EXEMPT YOU FROM SERVING ON ACTIVE DUTY CAN BE MADE ONLY AFTER YOU REPORT AS DIRECTED.
FAILURE TO REPORT MAY BE CONSIDERED ABSENCE WITHOUT LEAVE AND MAY SUBJECT YOU TO UCMJ
ACTION UNDER TITLE 10 USC 886.  BRING WITH YOU: PROFESSIONAL CREDENTIALS; ALL
SERVICEABLE UNIFORMS; PROOF OF MARRIAGE; BIRTH CERTIFICATES OF CHILDREN; DOCTOR'S
STATEMENT FOR CHILDREN OVER 21 INCAPABLE OF SELF-SUPPORT; COURT ORDERS GOVERNING
DEPENDENT SUPPORT/LEGAL CUSTODY OF CHILDREN; YOUR IMMUNIZATION RECORDS; ID CARDS AND
TAGS.  TRANSPORTATION OF DEPENDENTS AND HOUSEHOLD GOODS IS NOT AUTHORIZED.  FOR
TRANSPORTATION ASSISTANCE CALL ARPERCEN PMO.  LEAVE COPIES OF THIS ORDER WITH YOUR
DEPENDENT/NEXT OF KIN.  HEALTH PROF MUST BRING DOCS TO SPT PROF LICENSURE (CURRENT AND
UNRESTRICTED) SPEC CERT (AS APPLICABLE); A STATEMENT FROM CURRENT EMPL OR FROM HOSP
ATTESTING TO CURRENT (W/I 1 YEAR) CLINICAL COMPETENCE; A CURRICULUM VITAE/RESUME; AND
A STATEMENT OF HEALTH AND PROF STATUS TO INCL ALL PAST AND CURRENT MALPRACTICE
INVOLVEMENT.  RENTAL CAR NOT AUTHORIZED.  UPON ARRIVAL RETAKE HIV TEST IF OVER 24 MOS
OLD.  THIS CONTAINS U.S. ARMY ADVANCE EMERGENCY CRUSH TO ACTIVE DUTY WHICH WAS ISSUED
UNDER AR 140-145, PARA 5-3.  ARPERCEN FAMILY SUPPORT HOTLINE 1-800-874-8451.  THIS ORDER
AND ORD # M-10-500352 WILL NOT EXCEED 12 MONTHS.  PEND: 890608 DOR: 890603 S/G: TOP
SECRET.

FOR ARMY USE
AUTH: 10 USC 673
PERS CON RO: NA                          MDC: 1A01
ROR: SAME AS SNL                         91 EAD/OAD: SAME AS SNL
BASIC BRANCH: MI                         AOC/MOS:35F
PROF SPECIALTY: NA                       CON SPECIALTY: NONE
PPN: NA                                  SEX: M
RES GR: LTC                              COMP: USAR

ACCT CLASS, PAY & ALW:2112010/2122010 01-0110 F1010.VDSE S99999 1195 1150 1230 1210
ACCT CLASS, TVL/PD: 2112020/2112020 22-7020 P202014.00 XSAD 323185 211A, 214A, 219A,
VDSE SUBJECT TO THE AVAILIBLITY OF FY 92 FUNDS.KFS432860014*
FORMAT: 156

BY ORDER OF THE SECRETARY OF THE ARMY

*************
* ARPERCEN *        THOMAS J. KILMARTIN
* OFFICIAL *        BRIGADIER GENERAL, USA
*************        COMMANDING

DISTRIBUTION: XX PLUS
USA SPEC SCTY GP

B-6

00044

SEE PRIVACY ACT STATEMENT
ON DA FORM 62-8-1

5

**PART I - ADMINISTRATIVE DATA**

| a. LAST NAME - FIRST NAME - MIDDLE INITIAL | b. SSN | c. GRADE | d. DATE OF RANK | e. BR | f. DESIGNATED SPECIALTIES | g. PASE NO. | h. STA CODE |
|---|---|---|---|---|---|---|---|
| EPSTEIN, LAWRENCE S. | | LTC | 89 06 03 | MI | 35E | | 13567 |

| i. UNIT, ORGANIZATION, STATION, ZIP CODE OR APO, MAJOR COMMAND | j. REASON FOR SUBMISSION | k. COND CODE |
|---|---|---|
| USAR CON GP, ARPERCEN, ST LOUIS, MO 63132 w/duty HQ FORSCOM, FCJ2-IOP, FT MCPHERSON, GA 30330 | 12 REFRADT | 9C PC |

| l. PERIOD COVERED | | | | | | m. NO. OF MONTHS | n. U&LPO CODE | o. RATED OFFICER COPY (Check and date) | | p. FORWARDING ADDRESS |
|---|---|---|---|---|---|---|---|---|---|---|
| FROM | | | THRU | | | 72 days | FS26 | GIVEN TO OFFICER | | |
| Year | Month | Day | Year | Month | Day | | | X FORWARDED TO OFFICER | | |
| 91 | 03 | 05 | 91 | 05 | 17 | | | 91/05/ | | |

q. EXPLANATION OF NONRATED PERIODS

**PART II - AUTHENTICATION (Rated officer Signature verifies PART I data and Rating officials only)**

| a. NAME OF RATER (Last, First, MI) | SSN | SIGNATURE | |
|---|---|---|---|
| REICHARD, GEORGE D., III | | | |
| GRADE, BRANCH, ORGANIZATION, DUTY ASSIGNMENT | | | DATE |
| GS-13, C, PLANS & EXERCISE BR, INTEL OPS DIV, J2 HQ FORSCOM | | | 17 MAY 91 |

| b. NAME OF INTERMEDIATE RATER (Last, First, MI) | SSN | SIGNATURE | |
|---|---|---|---|
| | | | |
| GRADE, BRANCH, ORGANIZATION, DUTY ASSIGNMENT | | | DATE |

| c. NAME OF SENIOR RATER (Last, First, MI) | SSN | SIGNATURE | |
|---|---|---|---|
| CAMPBELL, JULIAN M., JR. | 229584045 | | |
| GRADE, BRANCH, ORGANIZATION, DUTY ASSIGNMENT | | | DATE |
| COL, USA, MI, C, IO DIV, J2, HQ FORSCOM | | | 17 May 91 |

| d. SIGNATURE OF RATED OFFICER | DATE | e. DATE ENTERED ON DA FORM 2-1 | f. RATED OFFICER MPO INITIALS | g. SR MPO INITIALS | h. NO. OF INCL |
|---|---|---|---|---|---|
| | 17 May 91 | | | | |

**PART III - DUTY DESCRIPTION (Rater)**

a. PRINCIPAL DUTY TITLE   SENIOR INTELLIGENCE STAFF OFFICER    b. SSI/MOS   35E

c. REFER TO PART IIIb, DA FORM 67-8-1

Responsible to perform duties as a Senior Intelligence Staff Officer
assigned to the Intelligence Operations Division, Plans and Exercise Branch,
J2 FORSCOM. Primary Action Officer responsible for the development of the
Intelligence Communication Architecture Program (INCA) Annex, within the
FORSCOM Theater Intelligence Architecture Program (TIAP). Responsible fo
the direction, research, development, organization and final production of
the INCA, as a stand alone FORSCOM document.

**PART IV - PERFORMANCE EVALUATION - PROFESSIONALISM (Rater)**

a. PROFESSIONAL COMPETENCE     (In Items 1 through 14 below, indicate the degree of agreement with the following statements as being descriptive of the rated officer. Any comments will be referred to b below.)

|  | | HIGH DEGREE | | | LOW DEGREE | | |  | |
|---|---|---|---|---|---|---|---|---|---|
|  | | 1 | 2 | 3 | 4 | 5 | | | |
| 1. Possesses capacity to acquire knowledge/grasp concepts | 1 | | | | | | 8. Displays sound judgment | | 1 |
| 2. Demonstrates appropriate knowledge and expertise in assigned tasks | 1 | | | | | | 9. Seeks self-improvement | | 1 |
| 3. Maintains appropriate level of physical fitness | PASS 9102 | | | | | | 10. Is adaptable to changing situations | | 1 |
| 4. Motivates, challenges and develops subordinates | 1 | | | | | | 11. Sets and enforces high standards | | 1 |
| 5. Performs under physical and mental stress | 1 | | | | | | 12. Possesses military bearing and appearance 71/185 YES | | 1 |
| 6. Encourages candor and frankness in subordinates | 1 | | | | | | 13. Supports EO/EEO | | 1 |
| 7. Clear and concise in written communication | 1 | | | | | | 14. Clear and concise in oral communication | | 1 |

b. PROFESSIONAL ETHICS (Comment on any area where the rated officer is below-standards, outstanding or needs improvement)

1 DEDICATION
2 RESPONSIBILITY
3 LOYALTY
4 DISCIPLINE
5 INTEGRITY
6 MORAL COURAGE
7 SELFLESSNESS
8 MORAL STANDARDS

a.1. Quickly grasped complex concepts and duties.

a.7,14. Exceptional written and oral communication skills.

b.7. Worked long hours with no mention of compensation.

DA FORM 67-8
1 SEP 79

REPLACES DA FORM 67-7, 1 JAN 73, WHICH IS OBSOLETE, 1 NOV 79.

MAY 8 9 1991

US ARMY OFFICER EVALUATION REPORT

B-7

Hennessey grossly overlooks that atmosphere of friction from incompatible personalities would likely become intolerable when contaminated even the "perception" of ethnic bias—as such, it cannot be labeled simple harmless error.

16. Also highly problematic is that in response to applicant's reprisal claim for his EO complaint, Hennessey mixes up the OER completion date with applicant's EO complaint date. Hennessey implies that reprisal is a red herring because the OER was signed by Hudson on 14 May 1991, when applicant faxed his request for a formal EO complaint on 17 May 1991, with findings issued in October.[49] But Hennessey fails to note that Hudson was issued the written admonishment for his EO failures on *1 April 1991*, based upon the informal EO investigation. The April 1991 letter cautioned Hudson for his inappropriate ethnic remarks to applicant _and_ was otherwise "insensitive" in his choice of words and the perceptions of others.[50]

17. Moreover, the Inquiry confessed that applicant had to be both competent and ethical as "outspoken, articulate officer who held strong views of right and wrong."[51] But without attacking applicant's views as knowingly flawed or in poor judgment, how can Hennessey find applicant holding strong views of right and wrong but then perceive him to be "inflexible" when he failed to compromise his integrity? In other words, was it appropriate for Hudson to demand a kind a loyalty so that officers compromise on right and wrong? It appears Hennessey, like Hudson, was confusing blind obedience with an officer's duty to express an ethical judgment. Alternatively, this strained "perception" of inflexibility might be indicative of a underlying personality problem between the two. At any rate, it is not enough here to just "whine" about applicant being inflexible without adequate foundation.

18. In sum, the commander's inquiry falls woefully short to rebut the formal EO demand that "the issues surrounding appellant's poor duty performance were not clearly

---

[49] Ex. F-7 ¶ 2b.; compare with Ex. D ¶ 1a. (non-secure facsimile by applicant 17 May 1991).

[50] Ex. C.

[51] Ex. F-7 ¶ 1.

17

00046

documented." Nor did COL Hennessey demonstrate how the adverse comments could be easily severed from serious personality conflict——a conflict admittedly fueled by applicant's real perception of ethnic prejudice, now deemed "verbal abuse" under EO regulation. Hennessey makes "much ado" about this prolonged disharmony of personalities but adds nothing to independently substantiate the career-ending adverse OER comments and summary relief. The Inquiry did not meet the demands of the EO report to independently account for the adverse OER comments. The presumption remains that the objective ratings were corrupted by an irreparable personality conflict tainted by a real perception of ethnic bias.

19.   The spiraling personality conflict exasperated by Hudson's ethnic verbal abuse caused the very type of destructive environment that Army EO policies try to avoid—a negative climate that "undermines teamwork, mutual respect, loyalty, and shared sacrifice." AR 600-20 at ¶ 6-1 (July 1999)(Purpose of Army EO program).

20.   Moreover, the ethnic verbal abuse of Hudson towards applicant that mocked his religious dietary habits and other ethnic practices came perilously close to criminal conduct as "provoking and reproachful speech" under Article 117, UCMJ. Davis v. United States, 34 M.J. 849, 853 (ACMR 1992), affirmed, 36 M.J. 365. The Davis court found is was not necessary under the UCMJ for provoking words to rise to a challenge to do violence, citing in support Linyear v. United States, 3 M.J. 1027 (ACMR 1977)(calling a subordinate female Marine private a "swine" in a belligerent and "smart-alecky" tone is provoking and reproachful within meaning of Art. 117). The Davis court also discussed that the historical background of Article 117 was to "prevent the first steps towards quarrels, fights or tend to exasperate or arouse anger or resentment." Davis 34 M.J. at n. 2. Here, after the EO investigation, Hudson was given a mere slap on the wrist with an administrative written reprimand. It is clear that Hudson's ethnic slurs did arouse resentment or antagonize of the applicant within Art. 117, particularly when a personality conflict already existed. In fact, it is arguable that here, it was more sinister for a unit commander to intend ethnic slurs as a pretext to incite an adversarial relationship with a deputy commander than a slur reflecting actual bias. See Ex. D-6 ¶ 4(2)(formal EO investigator

18

concluding that Hudson's ethnic comments to applicant "were designed more to antagonize him rather than be anti-semitic"). [52]

21.    Consequently, the Hennessey inquiry only confirmed that incompatible personalities inflamed by the ethnic slurs and the perception of discrimination, tainted the objectivity of the ratings.    Such bitter acrimony, whether deliberately or unwittingly tainting an evaluation, is an influence having no business in the process of careful and discerning subjective OER judgments. Serious personality conflicts, just as actual racial prejudice, equally fall within the within the category of prohibited personal bias. AR 623-106 (1998) ¶ 3-28 (evaluation must not reflect rating officials personal bias or prejudice).  See AR 623-105 ¶ 3-2, *Evaluation Principles,* (ratings must be objective, honest and fair); ¶ 6-12b.(2)(reports may be unjust as lacking objectivity if attributed to personality conflicts).

22.    On 19 August 1993, the OSRB denied applicant's OER appeal.  Ex. K to K-12 (OSRB Decision and Case Summary); K-13 to K-15 (selected OSRB exhibits).

23.    The primary flaw of the OSRB is it simply rubber-stamps the discredited self-serving statements of Hudson while mechanically parroting the language of various provisions of AR 623-105.  There is no independent analysis to reconcile the competing EO investigation and Commanders Inquiry. [53]  It appears the OSRB essentially defaulted to the cursory Commander's Inquiry of "no error."

24.    The Hennessey report shortfalls of no evidentiary support, and admitted "incompatible personality problems" fueled by ethnic slurs, were never addressed by the OSRB. It is flagrantly obvious that the OSRB failed to query Hudson about his inconsistent admissions to the EO investigator in 1991 that he "adopted" many of applicant's "good ideas" while telling

---

[52] There is no evidence from the formal EO investigation nor Commander's Inquiry to support Hudson's self-serving excuse offered *post hoc* before the OSRB that it was applicant himself who "initiated" the exchange of the ethnic jokes. Ex. K-10 ¶ 4a.  Certainly if this "active solicitation" argument had any merit then COL Cromartie would not have issued his letter of admonition to Hudson for "inappropriate remarks" to Epstein and overall insensitivity to other minorities in the unit, as confirmed by the formal EO findings.

[53] Ex. K-10 to K-12 (OSRB reciting from AR 623-105 ¶¶ 9-7, 4-13, 4-14, 5-32).

19

00048

the OSRB in 1993 that applicant "continually tried to undermine his authority" and had no loyalty to anyone.   Nor did the OSRB press Hudson as to why he believed applicant conspired behind his back with enlisted soldiers when the EO investigation found applicant acted in good faith in response to real and unremedied perceptions of prejudice in the unit.   Hudson even offered the OSRB the unsupported self-serving excuse that his ethnic slurs were "initiated" by applicant, and then stopped.   Rather, the insensitivity stopped when applicant filed an EO complaint and Hudson was issued a letter of warning.   Furthermore, the OSRB did not confront Hudson that his adverse interpretation of the "raw intelligence" incident conflicted with the EO investigation's independent corroboration of applicant's otherwise benign view by Mr. Lynch. Nor does the OSRB confront Hudson that another alleged adverse incident involving a training film was contradicted as a contrived exaggeration by LTC Speer.[54]  So when Hudson finally admits to the OSRB that a "personality conflict existed," his rejoinder is disingenuous by glibly saying "but it was qualification and performance, not personality." [55]

25:   The senior rater's pathetic attempt to bolster the OER is exposed by puffing up his rater that he "errs on the side of individual. . . and does all he can to motivate his subordinates." But it was this same senior rater, COL Cromartie, who issued a written admonishment to Hudson that he was not motivating his subordinates because of insensitivity in words and actions that created "reactions and perceptions" of favoritism in the unit.[56]  It was also the EO investigation approved by INSCOM findings that Hudson made off-color jokes and other inappropriate ethnic remarks to applicant "in the presence of others," Hudson perpetuated a "work environment within the unit that undoubtedly left members with the impression that unequal treatment did exist." [57]  It does violence to the English language to say that Hudson "errs on the side of individual" and "does all he can to motivate his subordinates."

---

[54] EX. K-9 ¶ 3.h.

[55] Ex. K-10 ¶ 4.a.

[56] Ex. C (letter of counseling).

[57] Ex. D.

20

00049

26. Finally, it is improper for the OSRB to dismiss supporting statements from officers as simply "not observed from a rater's perspective" when the evidentiary purpose of such statements offers a *witness* to certain events, as distinct from offering an evaluation of applicant's duty performance. For example, 1LT Birdwell stated that "enlisted soldiers complained in confidence to me that they believed LTC Hudson was racially and religiously biased," and that "the only vocal critic of LTC Epstein was Mr. Coburn," and that LTC Epstein cautioned her to "check with LTC Hudson before proceeding with [Epstein's] advice to avoid contradicting or embarrassing Hudson, and that every time she went to the SSC office she felt a "definite mood of anxiety" between the two, or that unlikely the senior rater could have first-hand knowledge of Epstein's performance when he was over 700 miles away," and why the senior rater allowed a "clash of personalities to go on for so long." [58] Finally, the OSRB does not reconcile the contradictory EO findings based upon interviews of nearly all of the units' personnel.

27. From 1994 to 1997 applicant was non-selected for promotion to COL (USAR).

28. In October 1997, applicant was retired from the USAR for maximum years of service (28 years commissioned services). [59]

29. The remainder of the relevant facts were set forth above under Item 11, at pages 1-8.

---

[58] Ex. K-14 to K-15 ¶¶ 3-7 (Statement to OSRB).

[59] Ex. R.

## CONCLUSION

For the foregoing reasons, applicant requests that the BCMR, in the interests of justice, review this case on the merits, and grant relief as set forth above under Item 8.

Respectfully submitted,

John A. Wickham, Esq.
Counsel for Applicant

Incl:

Exhibits A-W
* Exhibit V is omitted

22

00051

# OFFICER RECORD BRIEF (DA Pam 600-8)

**NAME** Epstein, Lawrence Steven

## SECTION I - ASSIGNMENT INFORMATION

| | FROM DATE | NO | GRFC NO | ORGANIZATION | STATION | STATE/CNTRY | QUAL | AIRCRAFT | DUAL |
|---|---|---|---|---|---|---|---|---|---|
| CURRENT | 930905 | 1 | W966AA | HQ Southcom SCJ2 - EC | Panama | | | | |
| NET PREV | 930905 | 1 | W411HI | HQ EUSA | Korea | | | | |
| 2ND PREV | 910914 | 10 | W2H6 | SCH USANC Sta Det | Carlisle Bks | PA | | | |
| 3RD PREV | 910005 | 724 | | HQ FORSCOM | Ft. McPherson | GA | | | |
| 4TH PREV | 910005 | | | CEASSC FORSCOM | Ft. McPherson | GA | | | |
| 5TH PREV | 901022 | 3 | | SSD Third USA FORSCOM | Ft. McPherson | GA | | | |
| 6TH PREV | 900116 | 164 | | US Army Special Scty Gp | Ft. Meade | MD | | | |
| 7TH PREV | 890115 | 164 | | USA Special Sec Gp | Ft. Richham | MD | | | |
| 8TH PREV | 8711 | 134 | W1MA | USASSO 1018t Abn Div | Ft. Campbell | KY | | | |
| 9TH PREV | 8706 | 200 | | 6th IIAAS | Ft. Huachuca | AZ | | | |
| 10TH PREV | 8612 | 194 | | US Army Sec Grp | ABS | | VA | | |
| 11TH PREV | 8609 | 244 | | 101st Abn Div | Ft. Campbell | KY | | | |
| 12TH PREV | 8506 | 204 | | 524th USAR School | Ft. Huachuca | AZ | | | |
| 13TH PREV | 8504 | 128 | | 101st Abn Div | Ft. Campbell | KY | | | |
| 14TH PREV | 8410 | 122 | | 101st Abn Div | Ft. Campbell | KY | | | |
| 15TH PREV | 8407 | 148 | | 5043rd USAR School | Sioux Falls | SD | | | |
| 16TH PREV | 8402 | 240 | | 101st Abn Div | Ft. Campbell | KY | | | |
| 17TH PREV | 8307 | 16 | | 5043rd USAR School | Sioux Falls | SD | | | |
| 18TH PREV | 8211 | 5 | | 1150 USAR School | Ft. Hamilton | NY | | | |
| 19TH PREV | 8003 | | | Co C, 339th MI Bn (RA) | Bronx | NY | | | |

## SECTION II - SECURITY DATA

SCTY CLEARANCE: Top Secret
COMP. DATE OF ACTIVITY: 910524
TYPE/DATE OF SCTY INV: SSBI

## SECTION III - SERVICE DATA

| | | | | | | | | |
|---|---|---|---|---|---|---|---|---|

## SECTION IV - PERSONAL/FAMILY DATA

DATE OF BIRTH: Brooklyn, NY
PLACE OF BIRTH
SEX: M/CAT
RELIGION: Jewish

115 Hatteras Road
Barnegat, NJ 08005

## SECTION V - FOREIGN LANGUAGE

| LANGUAGE | | READ | | LISTEN | |
|---|---|---|---|---|---|

## SECTION VI - MILITARY EDUCATION

| COURSE | | YEAR |
|---|---|---|
| Army War College (1-250-C13) | 92 | |
| Nat Sec Mgt Crs #701 | 91 | |
| SSC College Selective | 90 | |
| Intel Mgt Asst Res AMN | 90 | |
| CGSC (1-250-C3) | 86 | |
| Combat Intel Off Adv | 85 | |
| Army Intel Off Crs | 79 | |
| Mil Intel Off Adv | 80 | |
| Area Intel Crs | 79 | |
| Tactical Intel Course | 78 | |
| Combat Intel Transition | 78 | |
| Technical Intelligence | 78 | |

## SECTION VII - CIVILIAN EDUCATION

Israel Long Island University, Brooklyn College

CIVILIAN OCCUPATION:
College Professor/Computer and Financial Consultant
Employer: Self Employed
IRC Edward Epstein

## SECTION VIII - AWARDS AND DECORATIONS

| | | |
|---|---|---|

## SECTION IX - ASSIGNMENT HISTORY

| PRINCIPAL DUTY TITLE | DUTY MOS | DT | COND |
|---|---|---|---|
| Senior Intelligence Analyst | | | |
| AAR Team Observer | | | |
| Student | | | |
| Senior Intelligence Staff Off | | | |
| Deputy Detachment Commander | | | |
| Detachment Commander | | | |
| Special Project Officer | | | |
| Intelligence Evaluator | | | |
| Senior Intelligence Officer | | | |
| Special Security Officer | | | |
| Special Project Officer | | | |
| CLA Cdr | | | |
| HICAO Instructor | | | |
| OPFOR Cdr | | | |
| Oper Mss Cdr | | | |
| Phase VI Instructor | | | |
| Intelligence Officer | | | |
| Instructor | | | |
| Instructor | | | |
| Area Intelligence Officer | | | |

## SECTION X - REMARKS

Alternate Address:

EXHIBIT A

**DA FORM 4037, JUL 82** PREVIOUS EDITIONS OF THIS FORM ARE OBSOLETE

# OFFICER RECORD BRIEF (DA Pam 600-8)

| COPY NO | BRIEF DATE | | PROPONENT | | SSN |
| --- | --- | --- | --- | --- | --- |
| | 930707 | | USAR | LTC – 890606 | |

Name: Epstein, Lawrence Steven

## SECTION I - ASSIGNMENT INFORMATION

OVERSEAS DUTY

| YR MO DAY | COUNTRY | MONTHS | TCS | NUMBER OF NO. TOURS |
| --- | --- | --- | --- | --- |

SHORT
LONG
DROS
DEROS

COMD & DENOMINATION DATE
DATE SUPPLEMENTS SUPPLIED DE
SPECIALTY/BACK DATA
ADDITIONAL SKILL DATA

## SECTION II - SECURITY DATA

BODY CLEARANCE
COMPL DATE OF ACTIV INVES
TYPE/DATE OF ACTIV INVES

## SECTION V - FOREIGN LANGUAGE

| LANGUAGE | READ | LISTEN |
| --- | --- | --- |

## SECTION VI - MILITARY EDUCATION

| | FLAG | COURSE | YEAR |
| --- | --- | --- | --- |

## SECTION III - SERVICE DATA

| PEBD | CURRENT PMO | BSD CURRENT TOUR | DATE OF RANK |
| --- | --- | --- | --- |
| BASYR OF ANT | BASE YR OF | SOURCE OF ORIG APT | COUNTRY OF OT |
| | TYPE OF ORIG APT | | |
| CURRENT ANC ADMLSTON DATE | DATE OF PROJ HAND RET | EXPIRE BIRTH DATE | |

## SECTION IV - PERSONAL/FAMILY DATA

| | DATE OF BIRTH | BIRTHPLACE |
| --- | --- | --- |

RELIGION
MARITAL SERVICE

## SECTION VII - CIVILIAN EDUCATION

| INSTITUTION | DISCIPLINE | | | |
| --- | --- | --- | --- | --- |

## SECTION VIII - AWARDS AND DECORATIONS

## SECTION IX - ASSIGNMENT HISTORY

| FROM DATE | THRU DATE | UIC | UNIT NO | ORGANIZATION | STATION | UNIT TITLE | |
| --- | --- | --- | --- | --- | --- | --- | --- |
| CURRENT | | | | Co C, 826th MI Bn (EA) | Bronx | NY | Area Intelligence Officer | 35A |
| 1ST PREV | | | | | | | | |
| 2ND PREV | 77303 | | | 228th MI Det (CI) | Oakland | CA | CI Officer | 35A |
| 3RD PREV | 7608 | | | RCSAC | St. Louis | MO | CI Officer | 35A |
| 4TH PREV | 7304 | | | HHC, 500 MI Gp | Fed Island | HI | CI Officer | 35A |
| 5TH PREV | 7206 | | | 710 MI Det | Honolulu | HI | SP Agent | 35A |
| 6TH PREV | 6912 | | | AG Accession DE | Ft. Meade | MD | Student | 35A |
| 7TH PREV | | | | | | | | |
| 8TH PREV | | | | | | | | |
| 9TH PREV | | | | | | | | |
| 10TH PREV | | | | | | | | |
| 11TH PREV | | | | | | | | |
| 12TH PREV | | | | | | | | |
| 13TH PREV | | | | | | | | |
| 14TH PREV | | | | | | | | |
| 15TH PREV | | | | | | | | |

## SECTION X - REMARKS



00053

SEE PRIVACY ACT STATEMENT
ON DA FORM 67-8-1

**PART I — ADMINISTRATIVE DATA**

| a. LAST NAME - FIRST NAME - MIDDLE INITIAL | b. SSN | c. GRADE | d. DATE OF RANK | e. BR | f. DESIGNATED SPECIALTIES | g. PMOS (NFG) | h. STA CODE |
|---|---|---|---|---|---|---|---|
| EPSTEIN, Lawrence S. | ■■■■ | LTC | 89 06 03 | MI | 35 | | 13557 |

| a. UNIT, ORGANIZATION, STATION, ZIP CODE OR APO, MAJOR COMMAND | | | j. COMD CODE |
|---|---|---|---|
| USAG Control Gp., ARPERCEN, St Louis, MO w/duty SSD Third US Army Ft. McPherson GA 30330 (FORSCOM) | 12A | REFRAT | FC |

| b. PERIOD COVERED | | | | | | c. NO. OF MONTHS | d. NILPO CODE | e. RATED OFFICER COPY (Check one and date) |
|---|---|---|---|---|---|---|---|---|
| FROM | | | THRU | | | | | ☐ 1. GIVEN TO OFFICER |
| Year | Month | Day | Year | Month | Day | 16 days | FS21 | ☐ 2. FORWARDED TO OFFICER |
| 90 | 07 | 16 | 90 | 07 | 31 | | | |

f. FORWARDING ADDRESS

g. EXPLANATION OF NONRATED PERIODS

**PART II — AUTHENTICATION (Rated officer's copy — verifies PART I data and RATING OFFICIALS ONLY)**

| a. NAME OF RATER (Last, First, MI) | SSN | SIGNATURE | DATE |
|---|---|---|---|
| HUDSON Gabriel L | ■■■ | [signature] | |

GRADE, BRANCH, ORGANIZATION, DUTY ASSIGNMENT
LTC AV US Army Special Security Command FORSCOM Commander

| b. NAME OF INTERMEDIATE RATER (Last, First, MI) | SSN | SIGNATURE | DATE |
|---|---|---|---|

GRADE, BRANCH, ORGANIZATION, DUTY ASSIGNMENT

| c. NAME OF SENIOR RATER (Last, First, MI) | SSN | SIGNATURE | DATE |
|---|---|---|---|
| CROMARTIE George D. Jr. | ■■■ | [signature] George D Cromartie | 28 Aug 90 |

GRADE, BRANCH, ORGANIZATION, DUTY ASSIGNMENT
COL MI US Army Special Security Group Commander

| d. SIGNATURE OF RATED OFFICER | DATE | e. DATE ENTERED ON DA FORM 24 | f. RATED OFFICER NFO INITIALS | g. SR NFO INITIALS | h. NO. OF INCL |
|---|---|---|---|---|---|
| [signature] | | | | | |

**PART III — DUTY DESCRIPTION (Rater)**

| | b. SSI/MOS | 35B |
|---|---|---|

a. PRINCIPAL DUTY TITLE  Detachment Commander

b. REFER TO PART III, DA FORM 67-8—

Deploy with Third US Army to participate in Internal Look 90 and assist in operation of the exercise tactical Sensitive Compartmented Information (SCI) Facility; serve as the Special Security Officer responsible for providing SCI support to active and reserve units; oversee the billet administration, document accountability procedures, and general office management of the Special Security Detachment (SSD); oversee the acquisition, physical security, dissemination, and eventual destruction of SCI as well as the activities associated with the Defense Courier System (DCS); administer indoctrination and reindoctrination briefings for military and civilian agencies as appropriate.

**PART IV — PERFORMANCE EVALUATION — PROFESSIONALISM (Rater)**

HIGH DEGREE ——— LOW DEGREE
1 — 2 — 3 — 4 — 5

a. PROFESSIONAL COMPETENCE (Use items 1 below, indicate the degree of agreement with the following statements. Any comments will be referred to in Subblock c., Part IV.)

| | | | | | |
|---|---|---|---|---|---|
| 1. Possesses capacity to acquire knowledge/grasp concepts | | 1 | 8. Displays sound judgment | | 1 |
| 2. Demonstrates appropriate knowledge and expertise in assigned tasks | | 1 | 9. Seeks self-improvement | | 1 |
| 3. Maintains appropriate level of physical fitness   Pass 9003 | | 1 | 10. Is adaptable to changing situations | | 1 |
| 4. Motivates, challenges and develops subordinates | | 1 | 11. Sets and enforces high standards | | 1 |
| 5. Performs under physical and mental stress | | | 12. Possesses military bearing and appearance  71/180 Yes | | 1 |
| 6. Encourages candor and frankness in subordinates | | | 13. Supports EO/SEEO | | 1 |
| 7. Clear and concise in written communication | | | 14. Clear and concise in oral communication | | 1 |

b. PROFESSIONAL ETHICS (Comment on only area where the rated officer is particularly outstanding or needs improvement)

| | |
|---|---|
| 1. DEDICATION | a.1 rapidly adapts to changing situations |
| 2. RESPONSIBILITY | a.3 outstanding level of physical fitness |
| 3. LOYALTY | a.714 superb communicator |
| 4. DISCIPLINE | b.183 100% to mission and command |
| 5. INTEGRITY | b.8 beyond reproach |
| 6. MORAL COURAGE | |
| 7. SELFLESSNESS | |
| 8. MORAL STANDARDS | 43 |

EXHIBIT B

DA FORM 67—8
1 SEP 79    REPLACES DA FORM 67-7, 1 JAN 73, WHICH IS OBSOLETE, 1 NOV 79    ARMY OFFICER EVALUATION REPORT

PERIOD COVERED

**PART V — PERFORMANCE AND POTENTIAL EVALUATION** (Rater)

a. RATED OFFICER'S NAME  EPSTEIN, Lawrence S

RATED OFFICER IS ASSIGNED IN ONE OF HIS/HER DESIGNATED SPECIALTIES?  [X] YES  [ ] NO

b. PERFORMANCE DURING THIS RATING PERIOD. REFER TO PART III, DA FORM 67-8 AND PART III A, B, AND c, DA FORM 67-8-1

[X] ALWAYS EXCEEDED REQUIREMENTS  [ ] USUALLY EXCEEDED REQUIREMENTS  [ ] MET REQUIREMENTS  [ ] OFTEN FAILED REQUIREMENTS  [ ] USUALLY FAILED REQUIREMENTS

c. COMMENT ON SPECIFIC ASPECTS OF THE PERFORMANCE. REFER TO PART IV, DA FORM 67-8 AND PART II A, B, AND c, DA FORM 67-8-1. DO NOT USE FOR COMMENTS ON POTENTIAL.

LTC Epstein is a professional, enthusiastic, technically and tactically competent officer who performed his duties as an Individual Mobilization Augmentee to the Special Security Officer, Third United States Army in an outstanding manner. He performed these duties during exercise Internal Look 00. Deploying with his assigned section, he was prepared for duty and contributed greatly to the employment and mission accomplishment of the Special Security Office. His superior efficiency and effectiveness coupled with his vast experience and attention to detail allowed him to rapidly come on line and provide security support. He assisted in training junior active component officers in techniques and procedures of the special security system. LTC Epstein managed the 12 hour nightshift in a tactical Sensitive Compartmented Information Facility (SCIF) flawlessly. He met or exceeded every standard for the tasks assigned him. He represented the Reserve Component, Special Security Group and this command in a very positive, professional manner.

d. THIS OFFICER'S POTENTIAL FOR PROMOTION TO THE NEXT HIGHER GRADE IS

[X] PROMOTE AHEAD OF CONTEMPORARIES  [ ] PROMOTE WITH CONTEMPORARIES  [ ] DO NOT PROMOTE  [ ] OTHER (Explain in c)

e. COMMENT ON POTENTIAL

Promote to colonel. Select for a senior service college. Unlimited potential for higher level command and staff positions.

**PART VI — INTERMEDIATE RATER**

a. COMMENTS

**PART VII — SENIOR RATER**

a. POTENTIAL EVALUATION (See Chapter 4, AR 623-105)

DA USE ONLY

SR

b. COMMENTS

LTC Epstein performed his duties in an outstanding manner. His leadership experience and contributions had a profound impact on the success of the Third US Army Special Security Office. He is totally ready to assume duties as a Senior intelligence officer or corps G-2 upon mobilization. His knowledge and experience in the intelligence field is significant and will be welcomed asset to any RC/AC command. Promote him to colonel, continue his military education. He has outstanding potential.

c. A COMPLETED DA FORM 67-8-1 WAS RECEIVED WITH THIS REPORT AND CONSIDERED IN MY EVALUATION AND REVIEW  [X] YES  [ ] NO (Explain in b)

B-2

★ U.S.G.P.O. 1997 — 181-032/35703

00055

DEPARTMENT OF THE ARMY
U.S. ARMY RESERVE PERSONNEL CENTER
9700 PAGE BOULEVARD
ST. LOUIS, MISSOURI  63132-5200

ORDERS # M-10-500352                                    11 OCT 90

EPSTEIN LAWRENCE STEVEN   MOB-P                                    UIC C231
 

YOU ARE ORDERED TO ACTIVE DUTY (AD) FOR THE PERIOD SHOWN.  UPON COMPLETION OF THE
PERIOD OF AD, UNLESS SOONER RELEASED OR EXTENDED BY PROPER AUTHORITY, YOU WILL RETURN
TO THE PLACE WHERE YOU ENTERED AD UNLESS OTHERWISE ORDERED BY PROPER AUTHORITY AND BE
RELEASED FROM SUCH DUTY.

REPORT TO:  HQS, FORSCOM, BLDG 200          AOC/MOS: 35F    DOR: 890603
            FT. MCPHERSON, GA 30330         MIC: 1A00       SEX: M
                                            PEBD: 690606    COMP: IMA
PERIOD:  90 DAYS                            S/C: TOP SECRET
REPORTING DATE:  NLT 0800 22 OCT 90
ASSIGNED TO:  USA SPEC SCTY GP, ATTN: IASSG-A BLDG 8544, FT. MEADE, MD  20755
 JRPOSE:  PRESIDENTIAL CALLUP

ADDITIONAL INSTRUCTIONS:  REPORT ON DATE INDICATED.  A DETERMINATION TO DELAY OR EXEMPT
YOU FROM SERVING ON ACTIVE DUTY CAN BE MADE ONLY AFTER YOU REPORT AS DIRECTED.  FAILURE
TO REPORT MAY BE CONSIDERED ABSENCE WITHOUT LEAVE AND MAY SUBJECT YOU TO UCMJ ACTION
UNDER TITLE 10 USC 886.  BRING WITH YOU: PROFESSIONAL CREDENTIALS; ALL SERVICEABLE
UNIFORMS; PROOF OF MARRIAGE; BIRTH CERTIFICATES OF CHILDREN; DOCTOR'S STATEMENT FOR
CHILDREN OVER 21 INCAPABLE OF SELF-SUPPORT; COURT ORDERS GOVERNING DEPENDENT
SUPPORT/LEGAL CUSTODY OF CHILDREN; YOUR IMMUNIZATION RECORDS; ID CARDS AND TAGS.
TRANSPORTATION OF DEPENDENTS AND HOUSEHOLD GOODS IS NOT AUTHORIZED.  FOR TRANSPORTATION
ASSISTANCE CALL ARPERCEN PMO.  LEAVE COPIES OF THIS ORDER WITH YOUR DEPENDENT/NEXT OF
KIN.  RENTAL CAR NOT AUTHORIZED.  UPON ARRIVAL RETAKE HIV TEST IF OVER 24 MOS OLD.

FOR ARMY USE
AUTH:  10 USC 673B
ACCT CLASS, PAY & ALW: 2102010/2112010 01-0110 P1010.VKWT 899999 1198, 1199, 1250, 1210
ACCT CLASS, TVL/PD: 2102020/2112020 22-7010 P260011.00 XBRE 823185 211A, 219A,
EDS4328.  SUBJECT TO THE AVAILABILITY OF FY 91 FUNDS
FORMAT:  162 (MODIFIED)

BY ORDER OF THE SECRETARY OF THE ARMY.

**************
*  ARPERCEN  *              ~ THOMAS J. KILMARTIN
*  OFFICIAL  *                BRIGADIER GENERAL, USA
**************                COMMANDING

DISTRIBUTION:  XX PLUS
CDR, USA SPEC SCTY GP, ATTN: IASSG-A BLDG 8544, FT. MEADE, MD  20755

B-3

SEE PRIVACY ACT STATEMENT
ON DA FORM 67-8-1

**PART I – ADMINISTRATIVE DATA**

a. LAST NAME - FIRST NAME - MIDDLE INITIAL: EPSTEIN, Lawrence S.
c. GRADE: LTC
d. DATE OF RANK: Year 89 Month 06 Day 03
e. BR: MI
f. DESIGNATED SPECIALTIES: 35
h. STA CODE: 13567

i. UNIT, ORGANIZATION, STATION, ZIP CODE OR APO, MAJOR COMMAND: USAR Cont Gp ARPERCEN, St Louis, MO 63132-5200 Atch to USASSC FORSCOM, Ft McPherson, GA 30330 (FORSCOM)
j. REASON FOR SUBMISSION: 04 Change of duty
k. COMD CODE: FC

l. PERIOD COVERED: FROM Year 90 Month 10 Day 22 THRU Year 91 Month 03 Day 05
m. NO. OF MONTHS: 5
n. MILPO CODE: FS26

o. RATED OFFICER COPY: 1. GIVEN TO OFFICER / 2. FORWARDED TO OFFICER
p. FORWARDING ADDRESS:

6. EXPLANATION OF NONRATED PERIODS

**PART II – AUTHENTICATION**

a. NAME OF RATER: HUDSON, Gabriel L.
GRADE, BRANCH, ORGANIZATION, DUTY ASSIGNMENT: LTC, AV, USA Special Security Command FORSCOM, Commander
DATE: 14 MAY 91

b. NAME OF INTERMEDIATE RATER

c. NAME OF SENIOR RATER: CROMARTIE, George D., Jr.
GRADE, BRANCH, ORGANIZATION, DUTY ASSIGNMENT: COL, MI, USA Special Security Group, Commander
DATE: 8 Oct 91

d. SIGNATURE OF RATED OFFICER
DATE: 15 May 91

**PART III – DUTY DESCRIPTION**

a. PRINCIPAL DUTY TITLE: Deputy Commander
b. SSI/MOS: 35E

c. As the Individual Mobilization Augmentee (IMA) assigned as Deputy Commander, Special Security Command (SSC) FORSCOM, during Operation Desert Shield/Storm. Responsible for planning, directing, and supervising operations of the SSC, a battalion level command consisting of 13 Active Duty detachments and 17 USAR Mobilization Stations. Activities include: directing daily operations of the security of SCI; administering SCI billet and access programs; coordinating SSO training; oversight of the FORSCOM SSO inspection program. Advise the SSC Commander and Hq FORSCOM regarding Reserve Component SSO issues related to Reserve forces.

**PART IV – PERFORMANCE EVALUATION – PROFESSIONALISM**

i. PROFESSIONAL COMPETENCE

| | HIGH DEGREE 1 2 3 LOW DEGREE 4 5 |
|---|---|
| 1. Possesses capacity to acquire knowledge/grasp concepts | 1 |
| 2. Demonstrates appropriate knowledge and expertise in assigned tasks | 1 |
| 3. Maintains appropriate level of physical fitness 9003 Pass | 1 |
| 4. Motivates, challenges and develops subordinates | NA |
| 5. Performs under physical and mental stress | 1 |
| 6. Encourages candor and frankness in subordinates | NA |
| 7. Clear and concise in written communication | 1 |
| 8. Displays sound judgment | 3 |
| 9. Seeks self-improvement | 1 |
| 10. Is adaptable to changing situations | 1 |
| 11. Sets and enforces high standards | 1 |
| 12. Possesses military bearing and appearance 71/180 Yes | 1 |
| 13. Supports EO/EEO | |
| 14. Clear and concise in oral communication | 1 |

b. PROFESSIONAL ETHICS

1. DEDICATION 2. RESPONSIBILITY 3. LOYALTY 4. DISCIPLINE 5. INTEGRITY 6. MORAL COURAGE 7. SELFLESSNESS 8. MORAL STANDARDS

a8 - on three occasions, he displayed very poor judgment which resulted in embarrassment for this command
b3 & 5 - I questioned his loyalty and integrity due to actions and comments on at least three occasions

B-4

DA FORM 67-8, 1 SEP 78    REPLACES DA FORM 67-7, 1 JAN 73, WHICH IS OBSOLETE, 1 NOV 78.    US ARMY OFFICER EVALUATION REPORT

PERIOD COVERED  901022 – 910305

**PART V – PERFORMANCE AND POTENTIAL EVALUATION (Rater)**

a. RATED OFFICER'S NAME  EPSTEIN, Lawrence S.    SSN [redacted]

RATED OFFICER IS ASSIGNED IN ONE OF HIS/HER DESIGNATED SPECIALTIES/MOS    ☐ YES  ☐ NO

b. PERFORMANCE DURING THIS RATING PERIOD. REFER TO PART III, DA FORM 67–8 AND PART III a, b, AND c, DA FORM 67–8–1

| ☐ ALWAYS EXCEEDED REQUIREMENTS | ☒ USUALLY EXCEEDED REQUIREMENTS | ☐ MET REQUIREMENTS | ☐ OFTEN FAILED REQUIREMENTS | ☐ USUALLY FAILED REQUIREMENTS |

c. COMMENT ON SPECIFIC ASPECTS OF THE PERFORMANCE. REFER TO PART III, DA FORM 67–8 AND PART-III a, b, AND c, DA FORM 67–8–1. DO NOT USE FOR COMMENTS ON POTENTIAL)

LTC Larry Epstein is a USAR officer, Individual Mobilization Augmentee, assigned as the deputy commander to this command. He readily volunteered for active duty during Operation Desert Shield/Storm. His knowledge of computers and ADP equipment is superb. He is very enthusiastic and aggressive. However, his lack of military experience, tact, and people skills began to manifest themselves shortly after his arrival. His tactless conversation with the executive officer to the chief of staff caused this command extreme embarrassment. At least three times he disclosed privileged information to soldiers, seriously degrading morale and esprit de corps of the soldiers and the command. These actions seriously effected my impression of his loyalty and integrity. Further, LTC Epstein issued uncoordinated guidance to two subordinate elements resulting in confusion and unnecessary disruption. He was unable to heed my counseling and guidance and improve his performance, as a result, he was reassigned to another position in the J-2.

d. THIS OFFICER'S POTENTIAL FOR PROMOTION TO THE NEXT HIGHER GRADE IS

| ☐ PROMOTE AHEAD OF CONTEMPORARIES | ☒ PROMOTE WITH CONTEMPORARIES | ☐ DO NOT PROMOTE | ☐ OTHER (Explain below) |

e. COMMENT ON POTENTIAL

Future active duty should be carefully coordinated and supervised at O-6 level or above. He has excellent potential for higher level staff and promotion, given training and experience.

**PART VI – INTERMEDIATE RATER**

a. COMMENTS

**PART VII – SENIOR RATER**

a. POTENTIAL EVALUATION (See Chapter 4, AR 623-105)

DA USE ONLY

SR    HI

LO

A COMPLETED DA FORM 67–8–1 WAS RECEIVED WITH THIS REPORT AND CONSIDERED IN MY EVALUATION AND REVIEW    ☒ YES  ☐ NO (Explain in b)

b. COMMENTS

Lieutenant Colonel Epstein volunteered for active duty to serve in DESERT SHIELD/STORM. He was assigned to assist the Commander, Special Security Command, FORSCOM in carrying out his rapidly expanding responsibilities in supporting the FORSCOM deployment effort. In his zeal to meet the numerous demands, LTC Epstein clashed with the commander over operational procedures, management of assigned personnel and basic command philosophy. The Commander and LTC Epstein were unable to resolve their differences and LTC Epstein was released for staff duty with J-2 FORSCOM. LTC Epstein is highly motivated and displays high potential for assignment to positions requiring independent analysis and action. Promote with contemporaries.

B-5

☆ U.S.G.P.O. 1990 – 201-424/80236

FEB 21 '91 02:01PM USA SPECIAL SECURITY GROUP

02-21-91 14:25 T-USAINSCOM          #432 P06

DEPARTMENT OF THE ARMY
U.S. ARMY RESERVE PERSONNEL CENTER
9700 PAGE BOULEVARD
ST. LOUIS, MISSOURI 63132-5200

ORDERS # M-02-600614                    16 FEBRUARY 1991

KRSTYN LAWRENCE STEVEN          MOI-6          LTC 0231

YOU ARE ORDERED TO ACTIVE DUTY IN THE GRADE OF RANK SHOWN ABOVE FOR THE PERIOD SHOWN IN
ACTIVE DUTY COMMITMENT BELOW. YOU ARE ASSIGNED AS SHOWN AND WILL PROCEED FROM YOUR
CURRENT LOCATION IN TIME TO REPORT ON THE DATE SHOW BELOW.

REPORT TO: HQ FORSCON
          BLDG 200
          FT MCPHERSON, GA 30330
REPORTING DATE: NLT 0800 HRS 20 APR 91
ASSIGNED TO: USA SPEC SCTY GP
ACTIVE DUTY COMMITMENT: 6 MONTHS
PURPOSE: PARTIAL MOBILIZATION (PRESIDENTIAL)

ADDITIONAL INSTRUCTIONS: REPORT ON DATE INDICATED. A DETERMINATION TO DELAY OR
EXEMPT YOU FROM SERVING ON ACTIVE DUTY CAN BE MADE ONLY AFTER YOU REPORT AS DIRECTED.
FAILURE TO REPORT MAY BE CONSIDERED ABSENCE WITHOUT LEAVE AND MAY SUBJECT YOU TO UCMJ
ACTION UNDER TITLE 10 USC 886. BRING WITH YOU: PROFESSIONAL CREDENTIALS, ALL
SERVICEABLE UNIFORMS; PROOF OF MARRIAGE; BIRTH CERTIFICATES OF CHILDREN; DOCTOR'S
STATEMENT FOR CHILDREN OVER 21 INCAPABLE OF SELF-SUPPORT; COURT ORDERS GOVERNING
DEPENDENT SUPPORT/LEGAL CUSTODY OF CHILDREN; YOUR IMMUNIZATION RECORDS; ID CARDS AND
TAGS. TRANSPORTATION OF DEPENDENTS AND HOUSEHOLD GOODS IS NOT AUTHORIZED. FOR
TRANSPORTATION ASSISTANCE CALL ARPERCEN FMO. LEAVE COPIES OF THIS ORDER WITH YOUR
DEPENDENT/NEXT OF KIN. HEALTH PROF MUST BRING DOCS TO SPT PROF LICENSURE (CURRENT AND
UNRESTRICTED) SPEC CERT (AS APPLICABLE); A STATEMENT FROM CURRENT EMPL OR PRIV HOSP
ATTESTING TO CURRENT (W/I 1 YEAR) CLINICAL COMPETENCE; A CURRICULUM VITAE/RESUME; AND
A STATEMENT OF HEALTH AND PROF STATUS TO INCL AGE PAST AND CURRENT MALPRACTICE
INVOLVEMENT. RENTAL CAR NOT AUTHORIZED. UPON ARRIVAL RETAKE RIV THIS IS OVER 24 MOS
OLD. THIS CONFIRMS U.S. ARMY ADVANCE EMERGENCY ORDER TO ACTIVE DUTY WHICH WAS ISSUED
UNDER AR 140-143, PARA 3-3, ARPERCEN FAMILY SUPPORT HOTLINE 1-800-874-8431. THIS ORDER
AND ORD # M-10-500352 WILL NOT EXCEED 12 MONTHS. PEBD: 690605 DOR: 890603 S/G: TOP
SECRET.

FOR ARMY USE
ADTH: 10 USC 673
PERS CON RO: NA                         MDC: 1A01
MOB: SAME AS SHL                        PI EAD/OAD: SAME AS SHL
BASIC BRANCH: MI                        AOC/MOS:357
PROJ SPECIALTY: NA                      CON SPECIALTY: NONE
PFN: NA                                 SEX: M
RES GR: LTC                             COMP: USAR

ACCT CLASS, PAY & ALW:2112010/2122010 01-0110 P1010.VDSE 599999 1195 1159 1250 1210
ACCT CLAS, TVL/PD: 2112020/2112020 22-7020 P3210I4.00 ISAD S23185 211A, 214A, 219A,
VDSE SUBJECT TO THE AVAILIBILITY OF FY 92 FUNDS.EPB4323600614*
FORMAT: 156

BY ORDER OF THE SECRETARY OF THE ARMY

***********
*  ARPERCEN  *          THOMAS J. KILMARTIN
*  OFFICIAL  *          BRIGADIER GENERAL, USA
***********              COMMANDING

DISTRIBUTION: XX PLUS
USA SPEC SCTY GP

B - 6

00059

SEE PRIVACY ACT STATEMENT ON DA FORM 67-8-1

5

**PART I — ADMINISTRATIVE DATA**

a. LAST NAME - FIRST NAME - MIDDLE INITIAL

EPSTEIN, LAWRENCE S.

b. SSN

c. GRADE: LTC
d. DATE OF RANK: 89 06 03
e. PMOS: MI
f. DESIGNATED SPECIALTIES: 35E
h. STA CODE: 13567

i. UNIT, ORGANIZATION, STATION, ZIP CODE OR APO, MAJOR COMMAND
USAR CON GP, ARPERCEN, ST LOUIS, MO 63132 w/duty
HQ FORSCOM, FCJ2-IOP, FT MCPHERSON, GA 30330

j. REASON FOR SUBMISSION: 12  REFRADT

k. CMD CODE: QC
l. CMD CODE: FC

**2. PERIOD COVERED**

| FROM | | | THRU | | | m. NO. OF MONTHS | n. NMLPO CODE | 3. RATED OFFICER COPY (Check and date) |
|------|--|--|------|--|--|--|--|--|
| Year | Month | Day | Year | Month | Day | 72 days | FS26 | |
| 91 | 03 | 05 | 91 | 05 | 17 | | | a. GIVEN TO OFFICER / X b. FORWARDED TO OFFICER 910531 |

4. FORWARDING ADDRESS

5. EXPLANATION OF NONRATED PERIODS

**PART II — AUTHENTICATION (Rated officer's signature verifies PART I data and RATING OFFICIALS ONLY)**

a. NAME OF RATER (Last, First, MI)
REICHARD, GEORGE D., III

b. SSN    SIGNATURE

c. GRADE, BRANCH, ORGANIZATION, DUTY ASSIGNMENT
GS-13, C, PLANS & EXERCISE BR, INTEL OPS DIV, J2, HQ FORSCOM

DATE: 17 MAY 91

a. NAME OF INTERMEDIATE RATER (Last, First, MI)    SSN    SIGNATURE    DATE

b. GRADE, BRANCH, ORGANIZATION, DUTY ASSIGNMENT    DATE

c. NAME OF SENIOR RATER (Last, First, MI)
CAMPBELL, JULIAN M., JR.

SSN: 229584045    SIGNATURE

d. GRADE, BRANCH, ORGANIZATION, DUTY ASSIGNMENT
COL, USA, MI, C, IO DIV, J2, HQ FORSCOM

DATE: 17 May 91

e. SIGNATURE OF RATED OFFICER    DATE: 17 May 91    f. DATE ENTERED ON DA FORM 67-8    g. RATED OFFICER MPO INITIALS    h. SR MPO INITIALS    i. NO. OF INCL

**PART III — DUTY DESCRIPTION (Rater)**

a. PRINCIPAL DUTY TITLE    SENIOR INTELLIGENCE STAFF OFFICER    b. DUTY MOS: 35E

c. REFER TO PART IIIb, DA FORM 67-8-1

Responsible to perform duties as a Senior Intelligence Staff Officer
assigned to the Intelligence Operations Division, Plans and Exercise Branch,
J2 FORSCOM. Primary Action Officer responsible for the development of the
Intelligence Communication Architecture Program (INCA) Annex, within the
FORSCOM Theater Intelligence Architecture Program (TIAP). Responsible for
the direction, research, development, organization and final production of
the INCA, as a stand alone FORSCOM document.

**PART IV — PERFORMANCE EVALUATION — PROFESSIONALISM (Rater)**

a. PROFESSIONAL COMPETENCE (Use items 1 through 14 below. Indicate the degree of agreement with the following statements as being descriptive of the rated officer. Any comments will be referred to b below.)

HIGH DEGREE 1 2 3 LOW DEGREE 4 5

| | | | | | |
|--|--|--|--|--|--|
| 1. Possesses capacity to acquire knowledge/grasp concepts | 1 | | 8. Displays sound judgment | | 1 |
| 2. Demonstrates appropriate knowledge and expertise in assigned tasks | 1 | | 9. Seeks self-improvement | | 1 |
| 3. Maintains appropriate level of physical fitness  PASS 9102 | 1 | | 10. Is adaptable to changing situations | | 1 |
| 4. Motivates, challenges and develops subordinates | 1 | | 11. Sets and enforces high standards | | 1 |
| 5. Performs under physical and mental stress | 1 | | 12. Possesses military bearing and appearance  71/185  YES | | 1 |
| 6. Encourages candor and frankness in subordinates | 1 | | 13. Supports EO/EEO | | 1 |
| 7. Clear and concise in written communication | 1 | | 14. Clear and concise in oral communication | | 1 |

b. PROFESSIONAL ETHICS (Comment on any area where the rated officer is particularly outstanding or needs improvement)

1 DEDICATION
2 RESPONSIBILITY
3 LOYALTY
4 DISCIPLINE
5 INTEGRITY
6 MORAL COURAGE
7 SELFLESSNESS
8 MORAL STANDARDS

a.1.  Quickly grasped complex concepts and duties.

a.7,14.  Exceptional written and oral communication skills.

b.7.  Worked long hours with no mention of compensation.

DA FORM 67-8  REPLACES DA FORM 67-7, 1 JAN 73, WHICH IS OBSOLETE, 1 NOV 79.    US ARMY OFFICER EVALUATION REPORT

B-7

00060

PERIOD COVERED 910305-910517 | PART V – PERFORMANCE AND POTENTIAL EVALUATION (Rater)

a. RATED OFFICER'S NAME **EPSTEIN, LAWRENCE S.**

RATED OFFICER IS ASSIGNED IN ONE OF HIS/HER DESIGNATED SPECIALTIES/MOS    [X] YES    [ ] NO

b. PERFORMANCE DURING THIS RATING PERIOD. REFER TO PART III, DA FORM 67–8 AND PART III a, b, AND c, DA FORM 67–8–1

| [X] ALWAYS EXCEEDED REQUIREMENTS | [ ] USUALLY EXCEEDED REQUIREMENTS | [ ] MET REQUIREMENTS | [ ] OFTEN FAILED REQUIREMENTS | [ ] USUALLY FAILED REQUIREMENTS |

c. COMMENT ON SPECIFIC ASPECTS OF THE PERFORMANCE. REFER TO PART III, DA FORM 67–8 AND PART III a, b, AND c, DA FORM 67–8–1. DO NOT USE FOR COMMENTS ON POTENTIAL)

Lieutenant Colonel Epstein is an exceptionally efficient officer who demonstrated outstanding results in every endeavor. Presented with an exceptional challenge outside of his primary area of expertise, he easily assimilated the complex duties and responsibilities normally assigned to a signals intelligence professional. Lieutenant Colonel Epstein applied his in-depth personal knowledge of this directorate as well as numerous other military intelligence organizations, and quickly became an integral part of the Plans and Exercise Branch.

d. THIS OFFICER'S POTENTIAL FOR PROMOTION TO THE NEXT HIGHER GRADE IS

| [X] PROMOTE AHEAD OF CONTEMPORARIES | [ ] PROMOTE WITH CONTEMPORARIES | [ ] DO NOT PROMOTE | [ ] OTHER (Explain below) |

e. COMMENT ON POTENTIAL

Lieutenant Colonel Epstein has great potential. Promote and ensure he is selected for advanced military schooling and challenging assignments.

PART VI – INTERMEDIATE RATER

a. COMMENTS

PART VII – SENIOR RATER

a. POTENTIAL EVALUATION (See Chapter 5, AR 623-105)

DA USE ONLY

SR | HI
[X] |

b. COMMENTS

Lieutenant Colonel Epstein is an outstanding staff coordinator who made a major contribution through the development of an intelligence communications architecture for the J2 Directorate. His extra-curricular activities as a church lay person and a participant in the Army Public Speaking Program were indicative of his approach to life and to his job - get involved and make a contribution. Promote Lieutenant Colonel Epstein to Colonel and take full advantage of his diverse talents. He exudes executive competence.

B-8

c. COMPLETED DA FORM 67-8-1 WAS RECEIVED WITH THIS REPORT AND CONSIDERED IN MY EVALUATION AND REVIEW    [X] YES    [ ] NO (Explain in b)

U.S. GOVERNMENT PRINTING OFFICE : 1985 O – 482-95

00061



**DEPARTMENT OF THE ARMY**
UNITED STATES ARMY INTELLIGENCE AND SECURITY COMMAND
FORT BELVOIR, VIRGINIA 22060-5370

REPLY TO
ATTENTION OF

18 October 91

IAPER-EO  (600-20)

MEMORANDUM FOR COMMANDER, U. S. ARMY SPECIAL SECURITY COMMAND
FORT GEORGE G. MEADE, MARYLAND  20755-5998

SUBJECT:  EO Complaint

1.  References:

   a.  Non-Secure Facsimile, 17 May 1991, SAB

   b.  Memorandum, IAPER, 22 May 1991, SAB

   c.  Memorandum, Cdr, USASSG, 30 May 1991, SAB

2.  The Equal Opportunity (EO) Staff Office conducted an inquiry into the
allegations and concerns identified by LTC Lawrence S. Epstein 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
(Encl) and found no evidence to support his claim of discriminatory practices
against him by LTC Gabriel L. Hudson, Commander, Special Security Command,
(SSC) Headquarters FORSCOM.  The Inquiry substantiated that LTC Hudson made
inappropriate remarks and jokes concerning LTC Epstein's religious (Jewish)
dietary habits.

3.  The inquiry did establish the existence of conditions which contributed
directly to LTC Epstein's concerns.  LTC Hudson did make inappropriate remarks
and jokes concerning religious (Jewish) dietary habits in the presence of the
officer and others.  That, coupled with evidence of a personality conflict and
rivalry between the two officers, led to the complaint.  Additionally, during
the same time period, the working environment within the unit was one which
undoubtedly left members with the impression that unequal treatment did exist
in the unit.

4.  These issues are addressed in detail in the attached EO inquiry.  It is
recommended that they be reviewed closely and that appropriate actions be
taken by the commander.  POC for this action is MSG Ramseur, DSN 229-2486 or
(703) 706-2486.

Encl                                WARD B. NICKISCH
                                    Colonel, GS
                                    Deputy Chief of Staff, Personnel


**EXHIBIT  D**

IAPER-EO (600-20)
SUBJECT:  EO Complaint Special Security Command

## EXECUTIVE SUMMARY

1.  (U)  During the period 25-26 August I conducted an Equal Opportunity (EO) inquiry into issues and allegations made by LTC Lawrence S. Epstein, an Individual Mobilization Augmentee serving with the Special Security Command (SSC) FORSCOM.  Until 1 October 1991, SSC, FORSCOM was a subordinate command of the USA Special Security Group, Fort Meade MD.  He alleged he was the object of systematic discrimination by LTC Hudson, commander SSC, based on his ethnic heritage (Jewish) especially his dietary habits.  Additionally he alleges other minorities (especially blacks) and women were degraded by the commander and Mr Coburn, a DA Civilian, who is the Special Security Officer. I found no evidence of personal or institutional discrimination practices involving race or gender being practiced by LTC Hudson or Mr Coburn.  However, allegations relating to LTC Hudson, and his negative comments concerning the dietary habits of LTC Epstein and the overall insensitivity of his verbal communication with others was substaintied

2.  (U)  The EO inquiry focused on the overall command climate to include career development and utilization of minorities and women within the SSC. On Monday the 30th of August 1991 I visited the Special Security Command, located at HQ FORSCOM.  An entry briefing was conducted with LTC Hudson, the Commander.  I explained the methodology I would use in conducting the complaint inquiry and requested command support in scheduling interviews with SSC personnel.

3.  (U)  The inquiry consisted of one-on-one interviews (one telephonic) with SSC personnel at HQ FORSCOM, the Special Security Detachment, Fort Gillem and a review of personnel actions forwarded to HQ Special Security Group, Fort Meade, MD.

4.  (U)  A summary of my findings and observations follows:

   a.  OVERALL CLIMATE:

      (1)  Presently there are 17 personnel assigned to Special Security Command, FORSCOM (16 military and one civilian) and four assigned to SSD, Fort Gillem, Georgia (all military).  I interviewed 18 of the 21 personnel assigned.  I also conducted a telephonic interview with CPT Nancy Stevens,

D-2

IAPER-EO (600-20)
SUBJECT:  EO Complaint Special Security Command

also an Individual Mobilization Augmentee who lives in Texas and served with SSC, FORSCOM during this same time frame.  In addition to the aforementioned individuals I also interviewed Colonel Sweet, the Deputy J2, FORSCOM and Colonel Hemenway, Deputy Chief of Staff, Reserve Affairs, HQ INSCOM.

(2)  With the exception of three soldiers (who believed racial discrimination existed, based mainly on their own perceptions), the majority of soldiers saw no favoritism in their duties or job assignments.  Those areas where perceived problems existed, were explained to the satisfaction of all involved.

(3)  A review of the command's Military Justice Actions, Awards, Reenlistment and Personnel Actions indicated no disparity in treatment based on race, or gender.

(4)  I talked telephonically with the FORSCOM EO Officer (who was attending a conference in Texas) to see how many of SSC soldiers had visited their office concerning EO issues.  Their records indicated only LTC Epstein had visited seeking advice on an EO matter.  MAJ Berry, FORSCOM, EO Officer also informed me that he had talked with several soldiers who worked within the SSC and they had not alleged discriminatory practices by LTC Hudson, but acknowledged that a major personality conflict existed between LTC's Hudson and Epstein.

(5)  Overall the morale and attitude of the soldiers appeared healthy.  The new Chief Administration NCO, SFC Steel is working hard to build teamwork and esprit de corps.  Soldiers view him as being concerned about them.  This feeling evidently was not apparent under his predecessor.

b.  (U)  ORGANIZATIONAL CULTURE

(1)  The attitude displayed by many of the soldiers seemed to be one of"if it doesn't affect me I don't care".  This later was confirmed during my interviews with soldiers.  This attitude coupled with the long hours and stress associated with Desert Shield and Desert Storm was one of several factors which contributed to a working environment that reinforced perceptions of discriminatory practices.  Communication between soldiers and the chain of command was considered poor, especially between the last Chief Administration NCO and the soldiers.  Although technically competent and extremely efficient,

2

D-3

IAPER-EO (600-20)
SUBJECT: EO Complaint Special Security Command

soldiers indicated she lacked "people skills" and therefore little or no communication existed between her and the soldiers. LTC Hudson understood and tried to be the bridge between the two groups by allowing soldiers to come directly to him with their problems. This in-turn caused the NCOs to feel that they were no longer an important link in the chain of command. This resulted in many of them becoming complainers instead of them handling complaints of other soldiers. Some of these soldiers did make statements about their concerns to LTC Epstein. It appeared on the surface that one or two of these complaints could have had merit based upon the soldiers perceptions. However, after review they were proven to be unfounded.

(2) Another problem is the office set up. As in all modular designed offices very little privacy exist and the dividers which separate each work station give the occupants a false sense of security. This includes LTC Hudson's office which is enclosed without a door and walls which are not ceiling high. This results in every word said being overheard by other personnel in the office. During my visit I stood at one end of the office and could clearly hear every word said during normal conversation. Soldiers indicated they had overheard remarks and/or comments concerning other soldier's (officers and enlisted) duty and job performances.

(3) I believe the above assessment accurately depicts the organizational climate during the time frame and was a major factor in contributing to the overall perception of discrimination against soldiers that LTC Epstein is addressing in his complaint.

c. (U) ALLEGATIONS:

(1)  LTC Hudson charges that LTC Epstein "has performed in a less than satisfactory manner during this time period". He indicated LTC Epstein created a problem with the Chief of Staff over an EO matter in which he used poor tact and demonstrated a lack of professionalism in presenting his point. LTC Hudson question LTC Epstein's loyalty and claimed he released raw intelligence information to the J3 which created a problem at the general officer level. On 18 January 1991 LTC Hudson gave LTC Epstein a Counseling Statement (TAB A).

(2) On Friday, 27 September 1991 I met with LTC Epstein at the Army War College, in Carlisle, PA. He informed me that during his recent security clearance update, agents from the Defense Investigative Service (DIS) informed him that there were allegations of him being a homosexual, a sexual pervert,

3

D-4

IAPER-EO (600-20)
SUBJECT: EO Complaint Special Security Command

and an Israeli spy among other things. He believes much of this originates as a result of his EO Complaint (during my interview with Mr Coburn he admitted to me that he told the agent that LTC Epstein could be a spy. He would not comment on the other issues. LTC Hudson denies making any derogatory statements that would have resulted in LTC Epstein's loyalty being challenged.

(3) In reference to LTC Hudson's charges, LTC Epstein provided the following:

(a) He never was disloyal to LTC Hudson; he did everything he could to make the commander look good and the SSC a better place to work. He made numerous recommendations to improve the organization (LTC Hudson agreed that LTC Epstein had very good ideas and he adopted many of them).

(b) During December 1990 the J2 held its Christmas party. The theme and all activities were centered totally on Christian values. After the party, LTC Epstein wrote a letter to the Deputy J2, which recommended that future parties consider all members of the organization (i.e., Christian, Jewish, Moslem, etc). I talked with Colonel Sweet, the Deputy J2, and he agreed that LTC Epstein had made a valid point. He did not indicate to me that this letter had been an issue with the chief of staff.

(c) Located at TAB B is LTC Epstein's response to the release of raw intelligence data provided to the DIS. I telephonically talked with Mr William (not Terry as identified by LTC Epstein) Lynch whose account of the incident mirrors that of LTC Epstein.

d. (U) CONCLUSION:

(1) The major issue now, is LTC Epstein's pending OER and the accusations against his character as portrayed to the DIS agents. Professionally, LTC Epstein has aspirations for future promotions and indicates he has dedicated his career to that goal. His previous OER reports (TAB C) portray him as a "superb communicator, beyond reproach, rapidly adapting to changing situations and possesses the ability to grasp complex concepts and duties". I'm satisfied that the discrimination complaints against LTC Hudson and Mr Coburn are not valid. However, the issues surrounding LTC Epstein poor duty performance are not clearly documented. The Counseling Statement given by LTC Hudson does not clearly state exactly what LTC Epstein did. It is written in

4

D-5

IAPER-EO (600-20)
SUBJECT:  EO Complaint Special Security Command

a way that allows the reader to form their own opinion and could be considered
subjective in nature.

      (2)  I think LTC Hudson comments concerning LTC Epstein's religious
dietary habits were design more to antagonize him, rather than be
anti-Semitic.  This behavior was unprofessional, and in poor taste (he did
receive a counseling statement from the SSG, commander dated 1 April 1991, TAB
D).  Additionally, comments concerning the importance of having a wife and
family were the values of LTC Hudson and should not have been projected upon
others.  LTC Epstein is not married and LTC Hudson would often tell him to
find a nice Jewish girl and get married.  Both of these innuendos were viewed
as a form of prejudice and harassment by LTC Epstein.  Mr Coburn, in my
opinion did use the impending clearance validation of LTC Epstein as an
opportunity to damage his career by implying he could be a spy for the Israeli
government.

5.  There is no doubt in my mind that a strong personality conflict and
rivalry existed between LTCs Hudson and Epstein.  Suggest the commander, SSG,
consider these factors when reviewing LTC Epstein OER.

                            SAMUEL S. RAMSEUR
                            MSG, USA
                            Senior EO Advisor

D-6

SEE PRIVACY ACT STATEMENT
ON DA FORM 67-8-1

FILE QMPF   7 2 1 2 0 P M E   1997071002274
DSN

**PART I - ADMINISTRATIVE DATA**

| a. LAST NAME - FIRST NAME - MIDDLE INITIAL | b. SSN | d. GRADE | e. DATE OF RANK | f. BR | i. DESIGNATED SPECIALTIES | g. PMOS (WO) | h. STA CODE |
| EPSTEIN, LAWRENCE S. | | LTC | Year 89 / Month 06 / Day 03 | MI | 35 | | 15808 |

| i. UNIT, ORGANIZATION, STATION, ZIP CODE OR APO, MAJOR COMMAND | j. REASON FOR SUBMISSION | k. COMD CODE |
| U.S. ARMY ELEMENT, USPACOM, CAMP SMITH, HI 96861 PACOM/IMA   W093AA | 12A  REFRAT     H | JA  1 |

| l. PERIOD COVERED | | | | | m. NO. OF MONTHS | n. MILPO CODE | o. RATED OFFICER COPY (Check one and date) | p. FORWARDING ADDRESS |
| FROM | | THRU | | | | | | |
| Year 97 | Month 04 | Day 28 | Year 97 | Month 05 | Day 09 | 12 DAYS | WC-01 | 1. GIVEN TO OFFICER ☐  2. FORWARDED TO OFFICER ☒  970630 | |

q. EXPLANATION OF NONRATED PERIODS

**PART II - AUTHENTICATION** (Rated officer signature verifies PART I data and RATING OFFICIALS ONLY)

| a. NAME OF RATER (Last, First, MI) | SSN | SIGNATURE | |
| FRIESE, WILLIAM R. | | William R Friese | |
| GRADE, BRANCH, ORGANIZATION, DUTY ASSIGNMENT | | | DATE |
| COL, 06, USAF, USPACOM, Chief, Collections and Sources Division | | | 12 May 97 |

| b. NAME OF INTERMEDIATE RATER (Last, First, MI) | SSN | SIGNATURE | |
| | | | |
| GRADE, BRANCH, ORGANIZATION, DUTY ASSIGNMENT | | | DATE |
| | | | |

| c. NAME OF SENIOR RATER (Last, First, MI) | SSN | SIGNATURE | |
| RATLIFF, MIKE | | Mike Ratliff | |
| GRADE, BRANCH, ORGANIZATION, DUTY ASSIGNMENT | | | DATE |
| RADM, 07, USN, USPACOM, Director for Intelligence | | | 19 May 97 |

| d. SIGNATURE OF RATED OFFICER | DATE | e. DATE ENTERED ON DA FORM 2-1 | f. RATED OFFICER INITIALS | g. SR MPO INITIALS | h. NO. OF ENCL |
| | | | | | 0 |

**PART III - DUTY DESCRIPTION** (Rater)

a. PRINCIPAL DUTY TITLE  Counterintelligence Staff Officer        b. SSI/MOS  35E00

c. REFER TO PART IIIa, DA FORM 67-8-1

Counterintelligence (CI) Staff Officer (IMA) to USCINCPAC J232 to support the CI Branch in all CI activities. Fully immersed in the day to day operations of the Counterintelligence Branch. Responsible for researching and creating the first ever Counterintelligence command briefing. Additionally, tasked to revise the command's intelligence oversight program. Was the Senior Reserve Intelligence Officer on duty at J2 staff and acted as advisor on Reserve matters.

**PART IV - PERFORMANCE EVALUATION - PROFESSIONALISM** (Rater)

a. PROFESSIONAL COMPETENCE   (In items 1 through 14 below, indicate the degree of agreement with the following statements as being descriptive of the rated officer. Any comments will be reflected in b below.)

HIGH DEGREE ← 1  2  3  4  5 → LOW DEGREE

| | 1 | 2 | 3 | 4 | 5 | | 1 | 2 | 3 | 4 | 5 |
| 1. Possesses capacity to acquire knowledge/grasp concepts | 1 | | | | | 8. Displays sound judgement | 1 | | | | |
| 2. Demonstrates appropriate knowledge and expertise in situations | 1 | | | | | 9. Seeks self-improvement | 1 | | | | |
| 3. Maintains appropriate level of physical fitness  PASS 9703 | 1 | | | | | 10. Is adaptable to changing situations | 1 | | | | |
| 4. Motivates, challenges and develops subordinates | 1 | | | | | 11. Sets and enforces high standards | 1 | | | | |
| 5. Performs under physical and mental stress | 1 | | | | | 12. Possesses military bearing and appearance  70/185 YES | 1 | | | | |
| 6. Encourages candor and frankness in subordinates | 1 | | | | | 13. Supports EO/EEO | 1 | | | | |
| 7. Clear and concise in written communication | 1 | | | | | 14. Clear and concise in oral communication | 1 | | | | |

b. PROFESSIONAL ETHICS (Comment on any area where the rated officer is particularly outstanding or needs improvement)

1. DEDICATION
2. RESPONSIBILITY
3. LOYALTY
4. DISCIPLINE
5. INTEGRITY
6. MORAL COURAGE
7. SELFLESSNESS
8. MORAL STANDARDS

(a. 5)  Cool and calm in the most stressful situations

(a. 9)  Self-taught automation/systems expert

(a. 10)  Able to adapt quickly to varying environments

(b. 5)  Highest level of integrity

DA FORM 67-8, 1 SEP 79        REPLACES DA FORM 67-7, 1 JAN 73, WHICH IS OBSOLETE. 1 NOV 79.        US ARMY OFFICER EVALUATION REPORT

r 8 JUL 1997

00068

PERIOD COVERED   970428-970509.

**PART V – PERFORMANCE AND POTENTIAL EVALUATION (Rater)**

a. RATED OFFICER'S NAME   EPSTEIN, LAWRENCE S.    SSN [redacted]

RATED OFFICER IS ASSIGNED IN ONE OF HIS/HER DESIGNATED SPECIALTIES/MOS   [X] YES   [ ] NO

b. PERFORMANCE DURING THIS RATING PERIOD. REFER TO PART III, DA FORM 67-8 AND PART III a, b, AND c, DA FORM 67-8-1

[X] ALWAYS EXCEEDED REQUIREMENTS   [ ] USUALLY EXCEEDED REQUIREMENTS   [ ] MET REQUIREMENTS   [ ] OFTEN FAILED REQUIREMENTS   [ ] USUALLY FAILED REQUIREMENTS

c. COMMENT ON SPECIFIC ASPECTS OF THE PERFORMANCE. REFER TO PART III, DA FORM 67-8 AND PART III a, b, AND c, DA FORM 67-8-1. DO NOT USE FOR COMMENTS ON POTENTIAL.

LTC Larry Epstein has been an outstanding addition to the USCINCPAC staff. Arriving for his annual training two weeks after his previous tour, he was totally integrated with the HQ USCINCPAC staff. LTC Epstein was able to collect and collate the materials needed to create the first ever draft of a Counterintelligence Command Brief, a much needed tool for this command. Additionally, he coordinated with the HQ USCINCPAC Deputy Inspector General to revise the command's Intelligence Oversight Program. As part of this revision, he developed the schedule for FY98 inspections and staff assistant visits. Larry has also taken the time to learn the many information systems within the J2 enabling him to integrate into the staff during ADT and/or contingency situations. His experience and positive attitude have allowed him to contribute more than any previous reserve officer.

d. THIS OFFICER'S POTENTIAL FOR PROMOTION TO THE NEXT HIGHER GRADE IS

[X] PROMOTE AHEAD OF CONTEMPORARIES   [ ] PROMOTE WITH CONTEMPORARIES   [ ] DO NOT PROMOTE   [ ] OTHER (Explain below)

e. COMMENT ON POTENTIAL

LTC Epstein's potential is unlimited. He represents the best in leadership and capabilities in the IMA program. I consider him an integral part of my staff. Promote to Colonel soonest to fully exploit his talents.

**PART VI – INTERMEDIATE RATER**

a. COMMENTS

**PART VII – SENIOR RATER**

a. POTEN CMC 0231
SR ERGRES LTC
[X] X   1 EPSTEIN LAWRE
     0 SSN [redacted]
     0       SR: RADM
     0 RATLIFF MIKE
     0 [redacted]
     0 PROC [redacted]
     0 SIGN [redacted]
     0   RATINGS    1
     0   OFFICERS   1

b. COMMENTS

LTC Epstein has shown himself to be an outstanding member of the J2 staff. He excelled in the fast paced activities here at HQ USCINCPAC. His contributions have been extraordinary and will have a lasting impact on the entire staff. He should continue in this IMA position at HQ USCINCPAC J2 staff to assure his talents and intelligence background are maximized. Promote to Colonel at first opportunity. Officer unavailable for signature.

A COMPLETED DA FORM 67-8-1 WAS RECEIVED WITH THIS REPORT AND CONSIDERED IN MY EVALUATION AND REVIEW   [X] YES   [ ] NO (Explain in b)

REVIEWED BY HQDA

USAPPC V3.00

SEE PRIVACY ACT STATEMENT
ON DA FORM 67-8-1

For use of this form, see AR 623-105; proponent agency is US Army Military Personnel Center.

199707100273
FILE ONLY 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 ME

**PART I - ADMINISTRATIVE DATA**

| a. LAST NAME - FIRST NAME - MIDDLE INITIAL | b. SSN | c. GRADE | d. DATE OF RANK | e. BR | f. DESIGNATED SPECIALTIES | g. PMOS (WO) | h. STA CODE |
|---|---|---|---|---|---|---|---|
| EPSTEIN, LAWRENCE S. | | LTC | Year 89 / Month 06 / Day 03 | MI | 35C | | 15808 |

| i. UNIT, ORGANIZATION, STATION, ZIP CODE OR APO, MAJOR COMMAND | j. REASON FOR SUBMISSION | | k. COMD CODE P |
|---|---|---|---|
| U.S. ARMY ELEMENT, USPACOM, CAMP SMITH, HI 96861 PACOM/IMA   W093AA | 12A | REFRAT | JA |

| l. PERIOD COVERED | | | | | | m. NO. OF MONTHS | n. MILPO CODE | o. RATED OFFICER COPY (Check one and date) | p. FORWARDING ADDRESS |
|---|---|---|---|---|---|---|---|---|---|
| FROM | | | THRU | | | 26 DAYS | WC-01 | ☐ 1. GIVEN TO OFFICER | |
| Year 97 | Month 03 | Day 17 | Year 97 | Month 04 | Day 11 | | | ☒ 2. FORWARDED TO OFFICER 970630 | |

q. EXPLANATION OF NONRATED PERIODS

**PART II - AUTHENTICATION** (Rated officer signature verifies PART I data and RATING OFFICIALS ONLY)

| a. NAME OF RATER (Last, First, MI) | SSN | SIGNATURE | |
|---|---|---|---|
| FRIESE, WILLIAM R. | | William R Friese | |
| GRADE, BRANCH, ORGANIZATION, DUTY ASSIGNMENT | | | DATE |
| COL, 06, USAF, USPACOM, Chief, Collections and Sources Division | | | 22 Apr '97 |

| b. NAME OF INTERMEDIATE RATER (Last, First, MI) | SSN | SIGNATURE | |
|---|---|---|---|
| | | | |
| GRADE, BRANCH, ORGANIZATION, DUTY ASSIGNMENT | | | DATE |
| | | | |

| c. NAME OF SENIOR RATER (Last, First, MI) | SSN | SIGNATURE | |
|---|---|---|---|
| JACOBY, L. E. | | JSJacoby | |
| GRADE, BRANCH, ORGANIZATION, DUTY ASSIGNMENT | | | DATE |
| RADM, 07, USN, USPACOM, Director for Intelligence | | | 22 Apr 97 |

| d. SIGNATURE OF RATED OFFICER | e. DATE | f. DATE ENTERED ON DA FORM 2-1 | l. RATED OFFICER MPO INITIALS | g. BR MPO INITIALS | h. NO. OF INCL |
|---|---|---|---|---|---|
| | 22 Apr '97 | | | | 0 |

**PART III - DUTY DESCRIPTION** (Rater)

| a. PRINCIPAL DUTY TITLE  Counterintelligence Staff Officer | b. SSMOS  35E00 |
|---|---|

c. REFER TO PART IIIa, DA FORM 67-8-1

Counterintelligence(CI) Staff Officer (IMA) to USCINCPAC J232 to support the CI Branch in all CI activities. Participated in and coordinated the 1997 USPACOM CI Seminar. Activities included the use of JDISS and other computer systems and extensive coordination with other J-Staff sections and the CI community.  Responsible for administrative and logistical support for the Seminar which was attended by over 70 representatives from the USPACOM and national counterintelligence communities. Participated in preparations for a visit by an OASD combating terrorism assessment team.

**PART IV - PERFORMANCE EVALUATION - PROFESSIONALISM** (Rater)

a. PROFESSIONAL COMPETENCE  (In items 1 through 14 below, indicate the degree of agreement with the following statements as being descriptive of the rated officer. Any comments will be referred to in b below)

HIGH DEGREE ← 1  2  3  4  5 → LOW DEGREE

| | | | | |
|---|---|---|---|---|
| 1. Possesses capacity to acquire knowledge/grasp concepts | 1 | 8. Displays sound judgement | | 1 |
| 2. Demonstrates appropriate knowledge and expertise in assigned | 1 | 9. Seeks self-improvement | | 1 |
| 3. Maintains appropriate level of physical fitness  PASS 9703 | 1 | 10. Is adaptable to changing situations | | 1 |
| 4. Motivates, challenges and develops subordinates | 1 | 11. Sets and enforces high standards | | 1 |
| 5. Performs under physical and mental stress | 1 | 12. Possesses military bearing and appearance  70/186 YES | | 1 |
| 6. Encourages candor and frankness in subordinates | 1 | 13. Supports EO/EEO | | 1 |
| 7. Clear and concise in written communication | 1 | 14. Clear and concise in oral communication | | 1 |

b. PROFESSIONAL ETHICS (Comment on any area where the rated officer is particularly outstanding or needs improvement)

1. DEDICATION
2. RESPONSIBILITY
3. LOYALTY
4. DISCIPLINE
5. INTEGRITY
6. MORAL COURAGE
7. SELFLESSNESS
8. MORAL STANDARDS

a.10 Able to adapt quickly to varying environments

b.1 Completely dedicated to this organization and the Army

b.6 Does not hesitate to speak his opinion

DA FORM 67-8
1 SEP 79

REPLACES DA FORM 67-7, 1 JAN 73, WHICH IS OBSOLETE, 1 NOV 79.

US ARMY OFFICER EVALUATION REPORT
USAPPC V3.00

08 JUL 1997

MAY 29

PERIOD COVERED  970317-970411

**PART V - PERFORMANCE AND POTENTIAL EVALUATION (Rater)**

a. RATED OFFICER'S NAME  EPSTEIN, LAWRENCE S.    SSN

RATED OFFICER IS ASSIGNED IN ONE OF HIS/HER DESIGNATED SPECIALTIES/MOS  ☒ YES ☐ NO

b. PERFORMANCE DURING THIS RATING PERIOD. REFER TO PART III, DA FORM 67-8 AND PART III a, b, AND c, DA FORM 67-8-1

| ☒ ALWAYS EXCEEDED REQUIREMENTS | ☐ USUALLY EXCEEDED REQUIREMENTS | ☐ MET REQUIREMENTS | ☐ OFTEN FAILED REQUIREMENTS | ☐ USUALLY FAILED REQUIREMENTS |

c. COMMENT ON SPECIFIC ASPECTS OF THE PERFORMANCE. REFER TO PART III, DA FORM 67-8 AND PART III a, b, AND c, DA FORM 67-8-1. DO NOT USE FOR COMMENTS ON POTENTIAL)

LTC Larry Epstein significantly contributed to the J2 Directorate during his IMA tour. He arrived at the command both physically and mentally prepared to make a difference. Larry was initially tasked with the coordination of the 1997 PACOM Counterintelligence Seminar which included over 70 representatives from the theater and national counterintelligence communities. He was solely responsible for all administrative and logistical aspects of the seminar which was scheduled to begin less than two weeks after his arrival to the command. Larry immediately identified all assigned and implied tasks associated with this mission and expertly managed his time to ensure successful accomplishment of the same. His efforts resulted in the best run seminar to date as evidenced by the numerous laudatory comments of the participants. Immediately following the seminar, Larry assisted in coordinating and executing the visit of an OASD force protection assessment team. I will aggressively pursue this officer for future training opportunities with J2, USCINCPAC.

d. THIS OFFICER'S POTENTIAL FOR PROMOTION TO THE NEXT HIGHER GRADE IS

| ☒ PROMOTE AHEAD OF CONTEMPORARIES | ☐ PROMOTE WITH CONTEMPORARIES | ☐ DO NOT PROMOTE | ☐ OTHER (Explain below) |

e. COMMENT ON POTENTIAL

LTC Epstein is a highly seasoned Intelligence Officer. He has the knowledge, voluntaristic capability and expertise required to serve at the Joint level. He is a welcome addition to the staff, and his can do attitude would be an asset to any command.

**PART VI - INTERMEDIATE RATER**

a. COMMENTS

**PART VII - SENIOR RATER**

a. POTEN  CMC 0231
SR ☒ X  ERGRES LTC
O  2 EPSTEIN LAWRE
O  SSN
O          SR: RADM
O  JACOBY L E
O
O  PROC
O  SIGN
O    RATINGS    2
O    OFFICERS   2
      LO

b. COMMENTS

LTC Epstein set the example for future USAR intelligence officers assigned to the J2 Directorate. He quickly adjusted to the fast paced environment of the J2 and was able to positively impact several major events. His broad intelligence background and positive attitude will enable him to greatly contribute during future training periods with the directorate. He should be retained as a member of the senior leadership in the Army Reserve and be provided opportunities for increased responsibility to further develop his leadership abilities.

A COMPLETED DA FORM 67-8-1 WAS RECEIVED WITH THIS REPORT AND CONSIDERED IN MY EVALUATION AND REVIEW  ☒ YES ☐ NO (Explain in b)

REVIEWED BY

USAPPC V3.00

00071

FILE OMPF 6011 PRE

*SEE PRIVACY ACT STATEMENT ON DA FORM 67-8-1*

For use of this form, see AR 623-105; proponent agency is US Army Military Personnel Center.

199512060583 CQ5074

## PART I — ADMINISTRATIVE DATA

| a. LAST NAME - FIRST NAME - MIDDLE INITIAL | b. SSN | c. GRADE | d. DATE OF RANK | e. BR | f. DESIGNATED SPECIALTIES | g. PMOS(MO) | h. STA CODE |
|---|---|---|---|---|---|---|---|
| EPSTEIN, LAWRENCE S. | | LTC | Year Month Day 89 06 03 | MI | 35F | | PQ179 |

| i. UNIT, ORGANIZATION, STATION, ZIP CODE OR APO, MAJOR COMMAND | j. REASON FOR SUBMISSION | k. COMP CODE |
|---|---|---|
| USAR CON GRP (IMA), ST. LOUIS, MO W/DY HQ USSOUTHCOM QUARRY HEIGHTS, PM APO, AA 34003 (DJ600A) WO96AA | 12A  REFRAT | H JA |

| l. PERIOD COVERED | | | | | | m. NO. OF MONTHS | n. MILPO CODE | o. RATED OFFICER COPY (Check one and date) | p. FORWARDING ADDRESS |
|---|---|---|---|---|---|---|---|---|---|
| FROM | | | THRU | | | | | 1. GIVEN TO OFFICER | |
| Year 95 | Month 09 | Day 10 | Year 95 | Month 09 | Day 22 | 13 days | 8001 | X 2. FORWARDED TO OFFICER 95/117 | |

q. EXPLANATION OF NONRATED PERIODS

## PART II — AUTHENTICATION (Rated officer signature verifies PART I data and RATING OFFICIALS ONLY)

| a. NAME OF RATER (Last, First, MI) | SSN | SIGNATURE | |
|---|---|---|---|
| KNUDSEN, STEPHEN A. | | *Stephen A. Knudsen* | |
| GRADE, BRANCH, ORGANIZATION, DUTY ASSIGNMENT COL, MI, HQ USSOUTHCOM, SCJ2, DEPUTY DIRECTOR FOR OPERATIONS | | | DATE 95/117 |

| b. NAME OF INTERMEDIATE RATER (Last, First, MI) | SSN | SIGNATURE | |
|---|---|---|---|
| | | | |
| GRADE, BRANCH, ORGANIZATION, DUTY ASSIGNMENT | | | DATE |

| c. NAME OF SENIOR RATER (Last, First, MI) | SSN | SIGNATURE | |
|---|---|---|---|
| HUBBARD, ROBERT L. | | *Robert L. Hubbard* | |
| GRADE, BRANCH, ORGANIZATION, DUTY ASSIGNMENT CAPT, USN, O6, HQ USSOUTHCOM, SCJ2, VICE DIRECTOR OF INTELLIGENCE | | | DATE 95/117 |

| d. SIGNATURE OF RATED OFFICER | DATE | e. DATE ENTERED ON DA FORM 2-1 | f. RATED OFFICER MPO INITIALS | g. SR-MPO INITIALS | h. NO. OF INCL |
|---|---|---|---|---|---|
| | | | | | |

## PART III — DUTY DESCRIPTION (Rater)

| a. PRINCIPAL DUTY TITLE  Senior Reserve Intelligence Officer | b. SSI/MOS  35F00 |
|---|---|

c. REFER TO PART IIIb, DA FORM 67-8-1  Senior Reserve Intelligence Officer for Exercise Fuertes Defensas 95 (FD95), a Joint Chief of Staff directed training exercise. Responsible for coordinating the flow of intelligence to all SouthCom components as well as deployed units of the XVIII Airborne Corps and 10th Mountain Division. Chief of the J2 exercise production cell consisting of 43 personnel of all services. Primary action officer for coordination and dissemination of intelligence during FD95 in direct support of CinC SouthCom.

## PART IV — PERFORMANCE EVALUATION - PROFESSIONALISM (Rater)

a. PROFESSIONAL COMPETENCE

*Do items 1 through 14 below, indicate the degree of agreement with the following statements on being descriptive of the rated officer. Any comments will be reflected in b below.*

HIGH DEGREE 1 2 3   LOW DEGREE 4 5

| | | | |
|---|---|---|---|
| 1. Possesses capacity to acquire knowledge/grasp concepts | 1 | 8. Displays sound judgment | 1 |
| 2. Demonstrates appropriate knowledge and expertise in assigned tasks | 1 | 9. Seeks self-improvement | 1 |
| 3. Maintains appropriate level of physical fitness  PASS  9503 | 1 | 10. Is adaptable to changing situations | 1 |
| 4. Motivates, challenges and develops subordinates | 1 | 11. Sets and enforces high standards | 1 |
| 5. Performs under physical and mental stress | 1 | 12. Possesses military bearing and appearance  71/185  YES | 1 |
| 6. Encourages candor and frankness in subordinates | 1 | 13. Supports EO/EEO | 1 |
| 7. Clear and concise in written communication | 1 | 14. Clear and concise in oral communication | 1 |

b. PROFESSIONAL ETHICS (Comment on any area where the rated officer is particularly outstanding or needs improvement)

1. DEDICATION
2. RESPONSIBILITY
3. LOYALTY
4. DISCIPLINE
5. INTEGRITY
6. MORAL COURAGE
7. SELFLESSNESS
8. MORAL STANDARDS

b.1  Dedication and motivation were exemplary.

b.2  Exceptionally demonstrated responsible work ethics.

b.8  Moral standards are above reproach.

NOV 2 7 1995

| DA FORM 67-8 1 SEP 79 | REPLACES DA FORM 67-7, 1 JAN 73, WHICH IS OBSOLETE, 1 NOV 78. | US ARMY OFFICER EVALUATION REPORT |
|---|---|---|

00072

PERIOD COVERED 950910 - 950922

## PART V - PERFORMANCE AND POTENTIAL EVALUATION (Rater)

**b. RATED OFFICER'S NAME** EPSTEIN, LAWRENCE S.    **SSN** ████████

RATED OFFICER IS ASSIGNED IN ONE OF HIS/HER DESIGNATED SPECIALTIES/MOS    [X] YES    [ ] NO

**b. PERFORMANCE DURING THIS RATING PERIOD. REFER TO PART III, DA FORM 67-8 AND PART III b, c, AND d, DA FORM 67-8-1**

| [X] ALWAYS EXCEEDED REQUIREMENTS | [ ] USUALLY EXCEEDED REQUIREMENTS | [ ] MET REQUIREMENTS | [ ] OFTEN FAILED REQUIREMENTS | [ ] USUALLY FAILED REQUIREMENTS |
|---|---|---|---|---|

**c. COMMENT ON SPECIFIC ASPECTS OF THE PERFORMANCE. REFER TO PART III, DA FORM 67-8 AND PART III b, c, AND d, DA FORM 67-8-1. DO NOT USE FOR COMMENTS ON POTENTIAL)**

Lieutenant Colonel Epstein's performance during Exercise FD95 was outstanding. In his third tour with J2 SouthCom, he was able to bring past training opportunities to the J2 and to this command. Immediately, he took control of the intelligence production cell, coordinating all aspects of intelligence and working in total concert with the J2 staff. Because of his leadership, the operation of the cell was smooth and effective. Lieutenant Colonel Epstein was able to produce outstanding results with personnel assembled from the XVIII Airborne Corps, 10th Mountain Division, as well as service members from the Army, Navy, and Marine Corps. His understanding of communications and signals intelligence coupled with his vast experience, produced outstanding operational intelligence support to a training audience of 1,600 service members. Lieutenant Colonel Epstein is an outstanding officer whose contribution was invaluable.

**d. THIS OFFICER'S POTENTIAL FOR PROMOTION TO THE NEXT HIGHER GRADE IS**

| [X] PROMOTE AHEAD OF CONTEMPORARIES | [ ] PROMOTE WITH CONTEMPORARIES | [ ] DO NOT PROMOTE | [ ] OTHER (Explain below) |
|---|---|---|---|

**e. COMMENT ON POTENTIAL** Unlimited potential. Assign to challenging positions and responsiblities.

## PART VI - INTERMEDIATE RATER

**a. COMMENTS**

## PART VII - SENIOR RATER

**a. POTE**

CMC 0231 BB C

SR ERGRES LTC

[X] 1 EPSTEIN LAWRE
0 SSN ████████
0    SR: CAPT
0 HUBBARD ROBER
0
0 PROC ████
0 SIGN ████
0 RATINGS    1
0 OFFICERS    1
LO

**b. COMMENTS**

Lieutenant Colonel Larry Epstein came to this exercise fully prepared to perform his role as a Senior Intelligence Officer in a most outstanding manner. He is an officer who will take on the tough challenges. He is always welcome at J2 SouthCom and should be utilized in a Senior position in the Army Reserve. With confidence in his abilities, I strongly recommend that he be promoted to Colonel for Military Intelligence in the Reserve. Officer unavailable for signature due to PCS.

A COMPLETED DA FORM 67-8-1 WAS RECEIVED WITH THIS REPORT AND CONSIDERED IN MY EVALUATION AND REVIEW    [X] YES    [ ] NO (Explain in b)

1998-261-871/02692

00073

FOR OFW 5221 PRE  1.9950 8040195    C9597

SEE PRIVACY ACT STATEMENT
ON DA FORM 67-8-1

For use of this form, see AR § 23-105; the proponent
agency is US Army Military Personnel Center.

## PART I – ADMINISTRATIVE DATA

| a. LAST NAME - FIRST NAME - MIDDLE INITIAL | b. SSN | c. GRADE | d. DATE OF RANK | | | e. BR | f. DESIGNATED SPECIALTIES | g. PMOS(NO) | h. BTA CODE |
|---|---|---|---|---|---|---|---|---|---|
| | | | Year | Month | Day | | | | |
| EPSTEIN, LAWRENCE S. | | LTC | 89 | 06 | 03 | MI | 35F | | GE897 |

| i. UNIT, ORGANIZATION, STATION, ZIP CODE OR APO, MAJOR COMMAND | j. REASON FOR SUBMISSION | k. COMD CODE |
|---|---|---|
| USAR CON GP(IMA), ST LOUIS, MO W/DY HQ US EUROPEAN COMMMAND,(USEUCOM), APO AE 09128    WØ96AA | 12A  REFRAT  H | JA E |

| l. PERIOD COVERED | | | | | | m. NO.OF MONTHS | n. MILPO CODE | o. RATED OFFICER COPY (Check one and date) | p. FORWARDING ADDRESS |
|---|---|---|---|---|---|---|---|---|---|
| FROM | | | THRU | | | | | | |
| Year | Month | Day | Year | Month | Day | 1 | EU50 | [x] 1. GIVEN TO OFFICER    950602 | |
| 95 | 05 | 08 | 95 | 06 | 02 | | | [ ] 2. FORWARDED TO OFFICER | |

q. EXPLANATION OF NONRATED PERIODS

## PART II – AUTHENTICATION (Rated officer signature verifies PART I data and RATING OFFICIALS ONLY)

| a. NAME OF RATER (Last, First, MI) | SSN | SIGNATURE | |
|---|---|---|---|
| VIKSTROM, CARL E. | | Carl E. Vik... | |
| GRADE, BRANCH, ORGANIZATION, DUTY ASSIGNMENT | | | DATE |
| LTC,MI,EUCOM J2 Plans, Chief, CIAP Section | | | 2-Jun95 |

| b. NAME OF INTERMEDIATE RATER (Last, First, MI) | SSN | SIGNATURE | |
|---|---|---|---|
| | | | |
| GRADE, BRANCH, ORGANIZATION, DUTY ASSIGNMENT | | | DATE |
| | | | |

| c. NAME OF SENIOR RATER (Last, First, MI) | SSN | SIGNATURE | |
|---|---|---|---|
| NORRIS, DONALD G. | | [ ] Donald G Norris | |
| GRADE, BRANCH, ORGANIZATION, DUTY ASSIGNMENT | | | DATE |
| GS-15, EUCOM J2, Chief, Plans Branch | | | 2 Jun95 |

| d. SIGNATURE OF RATED OFFICER | DATE | e. DATE ENTERED ON DA FORM 2-1 | f. RATED OFFICER MPO INITIALS | g. SR MPO INITIALS | h. NO. OF INCL |
|---|---|---|---|---|---|
| Lawr. Epstein | 2 Jun95 | | | | |

## PART III – DUTY DESCRIPTION (Rater)

a. PRINCIPAL DUTY TITLE  Command Intelligence Architecture Officer    b. SSI/MOS 35

c. REFER TO PART IIIb, DA FORM 67-8-1  Integrates seamlessly into the J2 USEUCOM Command Intelligence Architecture/Plans (CIAP) section as Senior Level Intelligence Staff Officer. Coordinates the USACOM Staff-to-Staff exchange, a semi-annual conference between the Commander in Chief Europe(CINCEUR)and his staff with Commander in Chief U.S. Atlantic Command (CINCUSACOM) and his staff.  Serves as deputy Section Chief during Section Chief's absence. Coordinates J2 staff actions concerning long-range intelligence plans. Performs liaison with Senior Intelligence Officers and Directors of Intelligence of Unified Commands.  Reviews Command Intelligence Architecture documents and drafts and aids in coordinating USEUCOM review.

## PART IV – PERFORMANCE EVALUATION – PROFESSIONALISM (Rater)

a. PROFESSIONAL COMPETENCE

(In Items 1 through 14 below, indicate the degree of agreement with the following statements as being descriptive of the rated officer. Any comments will be reflected in b below.)

HIGH DEGREE 1 2 3  LOW DEGREE 4 5

| | | | | |
|---|---|---|---|---|
| 1. Possesses capacity to acquire knowledge/grasp concepts | 1 | 8. Displays sound judgment | | 1 |
| 2. Demonstrates appropriate knowledge and expertise in assigned tasks | 1 | 9. Seeks self-improvement | | 1 |
| 3. Maintains appropriate level of physical fitness PASS  9503 | 1 | 10. Is adaptable to changing situations | | 1 |
| 4. Motivates, challenges and develops subordinates | 1 | 11. Sets and enforces high standards | | 1 |
| 5. Performs under physical and mental stress | 1 | 12. Possesses military bearing and appearance  75/185  YES | | 1 |
| 6. Encourages candor and frankness in subordinates | 1 | 13. Supports EO/EEO | | 1 |
| 7. Clear and concise in written communication | 1 | 14. Clear and concise in oral communication | | 1 |

b. PROFESSIONAL ETHICS (Comment on any area where the rated officer is particularly outstanding or needs improvement)

1. DEDICATION
2. RESPONSIBILITY
3. LOYALTY
4. DISCIPLINE
5. INTEGRITY
6. MORAL COURAGE
7. SELFLESSNESS
8. MORAL STANDARDS

a.2.10. Adapted to the requirements of this Theater
a.7.14. Outstanding communicative skills
b. 1-8 Totally dedicated to the mission, sets example, beyond reproach

AUG 0 1 1995

DA FORM 67-8
1 SEP 78

REPLACES DA FORM 67-7, 1 JAN 73, WHICH IS OBSOLETE, 1 NOV 79.

US ARMY OFFICER EVALUATION REPORT

PERIOD COVERED 950508-950602

**PART V – PERFORMANCE AND POTENTIAL EVALUATION (Rater)**

a. RATED OFFICER'S NAME  EPSTEIN, LAWRENCE S.                    SSN ▓▓▓▓▓▓

RATED OFFICER IS ASSIGNED IN ONE OF HIS/HER DESIGNATED SPECIALTIES/MOS     [Y] YES    [ ] NO

b. PERFORMANCE DURING THIS RATING PERIOD. REFER TO PART III b, DA FORM 67-8 AND PART II a, b, AND c, DA FORM 67-8-1

| [X] ALWAYS EXCEEDED REQUIREMENTS | [ ] USUALLY EXCEEDED REQUIREMENTS | [ ] MET REQUIREMENTS | [ ] OFTEN FAILED REQUIREMENTS | [ ] USUALLY FAILED REQUIREMENTS |
|---|---|---|---|---|

c. COMMENT ON SPECIFIC ASPECTS OF THE PERFORMANCE. REFER TO PART III, DA FORM 67-8 AND PART II a, b, AND c, DA FORM 67-8-1. DO NOT USE FOR COMMENTS ON POTENTIAL!

        LTC Epstein's performance as the Intelligence Architecture Officer, J2 Plans
Branch during his four week ADT has been exceptional.  His quick, natural ability to
understand, assimilate and then critically review and evaluate highly complex intelligence
coordination has earned him the reputation of being someone essential to our senior level
intelligence coordination and review process. In coordinating J2 participation in the USACOM
staff-to-staff exchange, LTC Epstein insured the most effective participation of the J2 and
DDI (Deputy Director of Intelligence). He was responsible for reviewing the major documents
of the Command Intelligence Architecture program to insure a smooth production process
involving both military contractors and J2 Plans. In providing Army Reserve Support advice to
HQ USEUCOM and the U.S. Army Element, LTC Epstein automated support for routine
documents such as Officer Record Briefs (ORB'S) and Officer Efficiency Reports (OER'S).
Before his tour of duty these actions were done manually, taking up incredible amounts of
time.  His tact, personable nature and firm determination allowed for meaningful coordination
with high-level contracting agents, senior USEUCOM staff members and Directorate
representatives.  His "can-do" attitude was reflected in every task assigned and
accomplished during this short time.  LTC Epstein is welcome to return to USEUCOM.

d. THIS OFFICER'S POTENTIAL FOR PROMOTION TO THE NEXT HIGHER GRADE IS

| [X] PROMOTE AHEAD OF CONTEMPORARIES | [ ] PROMOTE WITH CONTEMPORARIES | [ ] DO NOT PROMOTE | [ ] OTHER (Explain below) |
|---|---|---|---|

e. COMMENT ON POTENTIAL

LTC Epstein has unlimited potential to serve at the highest levels of service, Promote now.

**PART VI – INTERMEDIATE RATER**

a. COMMENTS

**PART VII – SENIOR RATER**

a. POTE...  CMC 0231 BB C
SR        ERGRES LTC
[X]   X    1   EPSTEIN LAWRE
          O   SSN ▓▓▓▓
          O          SR≡ GS15
          O   NORRIS DONALD
          O
          O   PROC ▓▓▓▓
          O   SIGN ▓▓▓▓
          O   RATINGS      1
          O   OFFICERS     1

A COMPLETED DA FORM 67-8-1 WAS RECEIVED WITH
THIS REPORT AND CONSIDERED IN MY EVALUATION
AND REVIEW
    [X] YES    [ ] NO (Explain in b)

b. COMMENTS  LTC Epstein's performance has been one of consummate ability.
Intelligent and hard working, he is that Reserve Officer of
rare caliber who comes to his tours of duty dedicated to
professionalism and mission accomplishment. His work with
review of contractor documents and coordination of the ACOM
staff-to-staff exchange was equal to that expected his active
duty counterparts. His superb abilities to coordinate, network
and get organizatns and people to talk together to streamline
operations as part of their day-to-day activities, as well as
his expert knowledge of automated systems capabilities within
large organizations are singularly distinctive. Select
immediately for colonel and assign to positions of high-level
responsibility in order to take advantage of his knowledge and
leadership capabilities.

L 99411150297

Q9407

*SEE PRIVACY ACT STATEMENT ON DA FORM 67-8-1*

*For use of this form, see AR 623-105; proponent agency is US Army Military Personnel Center.*

**PART I — ADMINISTRATIVE DATA**

| a. LAST NAME - FIRST NAME - MIDDLE INITIAL | b. SSN | c. GRADE | d. DATE OF RANK | | | e. BR | f. DESIGNATED SPECIALTIES | g. PMOS (MO) | h. STA CODE |
|---|---|---|---|---|---|---|---|---|---|
| EPSTEIN, LAWRENCE S. | | LTC | Year 89 | Month 06 | Day 03 | MI | 35F | | PQ179 |

| i. UNIT, ORGANIZATION, STATION, ZIP CODE OR APO, MAJOR COMMAND | j. REASON FOR SUBMISSION | k. CBMD CODE |
|---|---|---|
| USAR CON GP (IMA), ST LOUIS, MO W/DY HQ, USSOUTHCOM QUARRY HEIGHTS, PANAMA, APO AA 34003 (DJ600A)   W G 96AA | 12A    REFRAT | H |

| l. PERIOD COVERED | | | | | | m. NO. OF MONTHS | n. MILPO CODE | o. RATED OFFICER COPY (Check one and date) | p. FORWARDING ADDRESS |
|---|---|---|---|---|---|---|---|---|---|
| FROM | | | THRU | | | 13 days | SOO1 | ☐ 1. GIVEN TO OFFICER | |
| Year 94 | Month 08 | Day 01 | Year 94 | Month 08 | Day 13 | | | ☒ 2. FORWARDED TO OFFICER  941021 | |

q. EXPLANATION OF NONRATED PERIODS

**PART II — AUTHENTICATION** *(Rated officer signature verifies PART I data and RATING OFFICIALS ONLY)*

| a. NAME OF RATER *(Last, First, MI)* | SSN | SIGNATURE |
|---|---|---|
| DAVIS, DANIEL J. | | *Daniel J Davis* |

| GRADE, BRANCH, ORGANIZATION, DUTY ASSIGNMENT | DATE |
|---|---|
| LTC, USA, HQ, USSOUTHCOM, SCJ5-PM, CHIEF POL MIL DIV | 940823 |

| b. NAME OF INTERMEDIATE RATER *(Last, First, MI)* | SSN | SIGNATURE |
|---|---|---|
| | | |

| GRADE, BRANCH, ORGANIZATION, DUTY ASSIGNMENT | DATE |
|---|---|
| | |

| c. NAME OF SENIOR RATER *(Last, First, MI)* | SSN | SIGNATURE |
|---|---|---|
| MERZ, MICHAEL P. | | *Michael P Merz* |

| GRADE, BRANCH, ORGANIZATION, DUTY ASSIGNMENT | DATE |
|---|---|
| COL, USA, HQ, USSOUTHCOM, SCJ5, DEPUTY DIRECTOR | 940906 |

| d. SIGNATURE OF RATED OFFICER | DATE | e. DATE ENTERED ON DA FORM 2-1 | f. RATED OFFICER MPO INITIALS | g. SR/MO INITIALS | h. NO. OF INCL |
|---|---|---|---|---|---|
| | | | | | |

**PART III — DUTY DESCRIPTION** *(Rater)*

a. PRINCIPAL DUTY TITLE  **Political-Military Staff Officer**       b. SSI/MOS **35F**

c. REFER TO PART III, DA FORM 67-8-1   Provided a back-up relief for permanent party Pol-Mil staff officer for two countries, Panama and Nicaragua, in the SOUTHCOM AOR and coordinated actions with other SOUTHCOM staff. Additionally, prepared fact sheet summaries on topics of interest and a variety of correspondence related to Pol-Mil activities in support of the CINC U.S. SOUTHCOM. Played significant role in coordinating directorates support of President-elect of Panama's visit to USSOUTHCOM.

**PART IV — PERFORMANCE EVALUATION — PROFESSIONALISM** *(Rater)*

a. PROFESSIONAL COMPETENCE  *(In items 1 through 14 below, indicate the degree of agreement with the following statements as being descriptive of the rated officer. Any comments will be reflected in b below.)*

| | HIGH DEGREE | | LOW DEGREE | | |
|---|---|---|---|---|---|
| | 1 | 2 | 3 | 4 | 5 |

| | | | | | |
|---|---|---|---|---|---|
| 1. Possesses capacity to acquire knowledge/grasp concepts | 1 | 8. Displays sound judgment | | | 1 |
| 2. Demonstrates appropriate knowledge and expertise in assigned tasks | 1 | 9. Seeks self-improvement | | | 1 |
| 3. Maintains appropriate level of physical fitness   Pass   08/94 | 1 | 10. Is adaptable to changing situations | | | 1 |
| 4. Motivates, challenges and develops subordinates | 1 | 11. Sets and enforces high standards | | | 1 |
| 5. Performs under physical and mental stress | 1 | 12. Possesses military bearing and appearance   71/175   Yes | | | 1 |
| 6. Encourages candor and frankness in subordinates | 1 | 13. Supports EO/EEO | | | 1 |
| 7. Clear and concise in written communication | 1 | 14. Clear and concise in oral communication | | | 1 |

b. PROFESSIONAL ETHICS *(Comment on any area where the rated officer is particularly outstanding or needs improvement)*

| 1. DEDICATION 2. RESPONSIBILITY 3. LOYALTY 4. DISCIPLINE 5. INTEGRITY 6. MORAL COURAGE 7. SELFLESSNESS 8. MORAL STANDARDS | a. 1.2.  Hit the ground running and produced quality work a. 7.14.  Outstanding communicative skills b. 1-8.  Set example, beyond reproach |
|---|---|

DA FORM 67-8 (1 SEP 79)       REPLACES DA FORM 67-7, 1 JAN 75, WHICH IS OBSOLETE, 1 NOV 75.       US ARMY OFFICER EVALUATION REPORT

PERIOD COVERED 940801- 940813

**PART V — PERFORMANCE AND POTENTIAL EVALUATION** *(Rater)*

a. RATED OFFICER'S NAME  EPSTEIN, LAWRENCE S.    SSN

RATED OFFICER IS ASSIGNED IN ONE OF HIS/HER DESIGNATED SPECIALTIES/MOS    [X] YES    [ ] NO

b. PERFORMANCE DURING THIS RATING PERIOD. REFER TO PART III, DA FORM 67-8 AND PART III a, b, AND c, DA FORM 67-8-1

| [X] ALWAYS EXCEEDED REQUIREMENTS | [ ] USUALLY EXCEEDED REQUIREMENTS | [ ] MET REQUIREMENTS | [ ] OFTEN FAILED REQUIREMENTS | [ ] USUALLY FAILED REQUIREMENTS |
|---|---|---|---|---|

c. COMMENT ON SPECIFIC ASPECTS OF THE PERFORMANCE. REFER TO PART III, DA FORM 67-8 AND PART III a, b, AND c, DA FORM 67-8-1. DO NOT USE FOR COMMENTS ON POTENTIAL.

Outstanding contribution in a very short period.  LTC Epstein performed all duties and responsibilities of the political military desk officer for Panama and Nicaragua in a superb manner.  Larry quickly and smoothly grasped the key issues and regional concerns for the assigned countries.  He knowledgeably and effectively analyzed the available information and provided timely, and candied perspectives on the political, military, and economic issues effectively USSOUTHCOM.  Specifically, LTC Epstein took the lead in coordinating the J5 participation in the command orientation visit for Panama's President-elect visit.  Larry was a valued and productive addition to J5.  He is a quality officer on par with full time officer and I would gladly accept on a full-time basis.

d. THIS OFFICER'S POTENTIAL FOR PROMOTION TO THE NEXT HIGHER GRADE IS

| [X] PROMOTE AHEAD OF CONTEMPORARIES | [ ] PROMOTE WITH CONTEMPORARIES | [ ] DO NOT PROMOTE | [ ] OTHER *(Explain below)* |
|---|---|---|---|

e. COMMENT ON POTENTIAL    Great potential.  Promote now.  Assign to high level positions of greater responsibility.

**PART VI — INTERMEDIATE RATER**

a. COMMENTS

**PART VII — SENIOR RATER**

a. POTE

SR
[X]

| | CMC 0231 BB C |
|---|---|
| | ERGRES LTC |
| X | 1 EPSTEIN LAWRE |
| | I SSN : |
| O | SR: COL |
| O | MERZ MICHAEL |
| O | |
| O | |
| O | |
| O | RATED    2 |

A COMPLETED DA FORM 67-8-1 WAS RECEIVED WITH THIS REPORT AND CONSIDERED IN MY EVALUATION AND REVIEW    [X] YES    [ ] NO *(Explain in b)*

b. COMMENTS    LTC Epstein's performance has been outstanding.  He has demonstrated initiative and drive coupled with an exceptional grasp of the complex politico-military issues of Latin America.  His professional bearing, dedication to service and support for mission made him an invaluable asset.  LTC Epstein takes on the hard jobs and can readily work under the intense pressure of short notice requirements.  As the CINC's staff officer for Panama and Nicaragua he was the focal point for the planning and coordination of important initiatives.  LTC Epstein presents his arguments with clarity and conviction.  Recommend he be selected for promotion to Colonel and assignment to positions of greater responsibility.
Reserve Officer had departed duty station at the time this evaluation was finalized. Soldier not available for signature.

SEE PRIVACY ACT STATEMENT
ON DA FORM 67-8-1

For use of this form, see AR 623-105; the proponent
agency is US Army Military Personnel Center.

4

## PART I — ADMINISTRATIVE DATA

| a. LAST NAME - FIRST NAME - MIDDLE INITIAL | b. SSN | c. GRADE | d. DATE OF RANK | | | e. BR | f. DESIGNATED SPECIALTIES | g. PMOS (MO) | h. STA CODE |
|---|---|---|---|---|---|---|---|---|---|
| | | | Year | Month | Day | | | | |
| EPSTEIN, LAWRENCE S. | | LTC | 89 | 06 | 03 | MI | 35 | | PQ179 |

| i. UNIT, ORGANIZATION, STATION, ZIP CODE OR APO, MAJOR COMMAND | j. REASON FOR SUBMISSION | k. CMD CODE |
|---|---|---|
| USAR CON GP (IMA), ST LOUIS, MO W/DY HQ, USSOUTHCOM QUARRY HEIGHTS, PANAMA, APO AA 34003-5000 (DJ600A) | 12A REFRAT | JA |

WD36 00

| l. PERIOD COVERED | | | | | | m. NO. OF MONTHS | n. MILPO CODE | o. RATED OFFICER COPY (Check one and date) | p. FORWARDING ADDRESS |
|---|---|---|---|---|---|---|---|---|---|
| FROM | | | THRU | | | | | | |
| Year | Month | Day | Year | Month | Day | 18 Days | S001 | 1. GIVEN TO OFFICER | Lawrence Steven Epstein |
| 93 | 09 | 05 | 93 | 09 | 22 | | | ☒ 2. FORWARDED TO OFFICER 940316 | |

q. EXPLANATION OF NONRATED PERIODS

## PART II — AUTHENTICATION (Rated officer signature verifies PART I data and RATING OFFICIALS ONLY)

| a. NAME OF RATER (Last, First, MI) | SSN | SIGNATURE |
|---|---|---|
| MOORE, RICHARD P. | | Richard P Moore |
| GRADE, BRANCH, ORGANIZATION, DUTY ASSIGNMENT | | DATE |
| COL, O6, USAF, MI, HQ USSOUTHCOM, DEPUTY DIRECTOR FOR INTELLIGENCE | | 940315 |

| b. NAME OF INTERMEDIATE RATER (Last, First, MI) | SSN | SIGNATURE |
|---|---|---|
| | | |
| GRADE, BRANCH, ORGANIZATION, DUTY ASSIGNMENT | | DATE |
| | | |

| c. NAME OF SENIOR RATER (Last, First, MI) | SSN | SIGNATURE |
|---|---|---|
| WILKINS, F.S. | | F.S. Wilkins |
| GRADE, BRANCH, ORGANIZATION, DUTY ASSIGNMENT | | DATE |
| CAPT, O6, USN, HQ USSOUTHCOM, VICE DIRECTOR OF INTELLIGENCE | | 940315 |

| d. SIGNATURE OF RATED OFFICER | DATE | e. DATE ENTERED ON DA FORM 2-1 | f. RATED OFFICER MPO INITIALS | g. SR MPO INITIALS | h. NO. OF INCL |
|---|---|---|---|---|---|
| | | | | | 1 |

## PART III — DUTY DESCRIPTION (Rater)

| a. PRINCIPAL DUTY TITLE   INTELLIGENCE ANALYST | b. SSI/MOS 35E00EA |
|---|---|

c. REFER TO PART III b, DA FORM 67-8-1. Serves as a joint staff officer in the Joint Intelligence Center of the United States Southern Command. Performs research and analysis of Signals Intelligence, Imagery Intelligence, and Human Resources Intelligence collected at the theater and national level. Prepares all-source intelligence assessments, studies, appraisals, and estimates for oral and written presentation to the Commander in Chief, the subordinate Service Component and Joint Task Force Commanders, and the United States Southern Command Staff. Coordinates Theater intelligence analysis and production with the Defense Intelligence Agency, National Security Agency, Central Intelligence Agency, and Department of State.

## PART IV — PERFORMANCE EVALUATION — PROFESSIONALISM (Rater)

a. PROFESSIONAL COMPETENCE (In Items 1 through 14 below, indicate the degree of agreement with the following statements as being descriptive of the rated officer. Any comments will be reflected in b below.)

HIGH DEGREE   1   2   3   4   5   LOW DEGREE

| | | | | |
|---|---|---|---|---|
| 1. Possesses capacity to acquire knowledge/grasp concepts | 1 | 8. Displays sound judgment | | 1 |
| 2. Demonstrates appropriate knowledge and expertise in assigned tasks | 1 | 9. Seeks self-improvement | | 1 |
| 3. Maintains appropriate level of physical fitness   PASS 9303 | 1 | 10. Is adaptable to changing situations | | 1 |
| 4. Motivates, challenges and develops subordinates | 1 | 11. Sets and enforces high standards | | 1 |
| 5. Performs under physical and mental stress | 1 | 12. Possesses military bearing and appearance   71/187   YES | | 1 |
| 6. Encourages candor and frankness in subordinates | 1 | 13. Supports EO/EEO | | 1 |
| 7. Clear and concise in written communication | 1 | 14. Clear and concise in oral communication | | 1 |

b. PROFESSIONAL ETHICS (Comment on any area where the rated officer is particularly outstanding or needs improvement)

1. DEDICATION
2. RESPONSIBILITY
3. LOYALTY
4. DISCIPLINE
5. INTEGRITY
6. MORAL COURAGE
7. SELFLESSNESS
8. MORAL STANDARDS

a.2.  LTC Epstein demonstrated extraordinary technical expertise in intelligence research and analysis.

a.5.  Performed magnificently under heavy stress.

b.1.  LTC Epstein worked with total dedication to accomplish the mission, including nights and weekends.

DA FORM 67-8   REPLACES DA FORM 67-7, 1 JAN 73, WHICH IS OBSOLETE, 1 NOV 73.   US ARMY OFFICER EVALUATION REPORT
1 SEP 79

PERIOD COVERED 930905-930922

**PART V — PERFORMANCE AND POTENTIAL EVALUATION (Rater)**

a. RATED OFFICER'S NAME  EPSTEIN, LAWRENCE S.

RATED OFFICER IS ASSIGNED IN ONE OF HIS/HER DESIGNATED SPECIALTIES/MOS   ☒ YES   ☐ NO   SSN _____

b. PERFORMANCE DURING THIS RATING PERIOD. REFER TO PART III, DA FORM 67-8 AND PART III a, b, AND c, DA FORM 67-8-1

☒ ALWAYS EXCEEDED REQUIREMENTS   ☐ USUALLY EXCEEDED REQUIREMENTS   ☐ MET REQUIREMENTS   ☐ OFTEN FAILED REQUIREMENTS   ☐ USUALLY FAILED REQUIREMENTS

c. COMMENT ON SPECIFIC ASPECTS OF THE PERFORMANCE. REFER TO PART III, DA FORM 67-8 AND PART III a, b, AND c, DA FORM 67-8-1. DO NOT USE FOR COMMENTS ON POTENTIAL!

Lieutenant Colonel Epstein's performance during this active duty tour was outstanding. He made a significant contribution to the updating of a detailed intelligence assessment of the 1994 Panama elections. He researched, coordinated, and updated a critical assessment which will provide essential background information to the Commander in Chief to support his informed decision making on treaty implementation and force protection issues in Panama through the end of the decade. LTC Epstein's strong intelligence analytical expertise was evident in the quality of his work. He demonstrated the ability to smoothly coordinate his analytical effort with other intelligence organizations and the Department of State, thus ensuring that diverse viewpoints would be presented to the Commander in Chief, where appropriate. LTC Epstein is an intelligent, physically fit, and motivated officer who was able to make a meaningful contribution to the Unified Command from the first day.

d. THIS OFFICER'S POTENTIAL FOR PROMOTION TO THE NEXT HIGHER GRADE IS

☒ PROMOTE AHEAD OF CONTEMPORARIES   ☐ PROMOTE WITH CONTEMPORARIES   ☐ DO NOT PROMOTE   ☐ OTHER (Explain below)

e. COMMENT ON POTENTIAL

LTC Epstein has unlimited potential. Select for promotion to Colonel. Assign to key intelligence positions at the theater or national level.

**PART VI — INTERMEDIATE RATER**

a. COMMENTS

**PART VII — SENIOR RATER**

a. POTENTIAL EVALUATION (Compare this officer with all others of the same grade whom you have senior rated in this rating scheme)

| SR | | |
|---|---|---|
| | CMC U231 BB C | |
| | ERGRES LTC | |
| | 1 EPSTEIN LAHRE | |
| ☒ X | 5 SSN▮▮▮ | |
| | 0 | SR: CAPT |
| | 0 WILKINS FRANK | |
| | 0 | |
| | 0 | |
| | 0 | |
| | 0 | |
| | 0 RATED 6 | |

b. COMMENTS

LTC Epstein's performance exceeded all expectations. He is bright, articulate, and extremely effective. His research and analysis of complex political questions pertaining to the 1994 Panama elections was superb, and enabled us to update a previously completed assessment for the Commander in Chief. This is a top quality officer. Promote to Colonel and assign to positions of increased responsibility in the Army Reserve. Officer unavailable for signature.

A COMPLETED DA FORM 67-8-1 WAS RECEIVED WITH THIS REPORT AND CONSIDERED IN MY EVALUATION AND REVIEW   ☒ YES   ☐ NO (Explain in b)

1988- 281-871/02582

SEE PRIVACY ACT STATEMENT
ON DA FORM 67-8-1

FILE OMPF 3110 PREP 1993033102981

**PART I — ADMINISTRATIVE DATA**

| a. LAST NAME - FIRST NAME - MIDDLE INITIAL | b. SSN | c. GRADE | d. DATE OF RANK | | | e. BR | f. DESIGNATED SPECIALTIES | g. PMOS(WO) | h. STA CODE |
|---|---|---|---|---|---|---|---|---|---|
| EPSTEIN, LAWRENCE S. | | LTC | Year 89 | Month 06 | Day 06 | MI | 35 | | KS976 |

| i. UNIT, ORGANIZATION, STATION, ZIP CODE OR APO, MAJOR COMMAND | | j. REASON FOR SUBMISSION | | k. COMP CODE |
|---|---|---|---|---|
| USAR CON GP (IMA)   WAIII<br>ARPERCEN STL, MO 63132 ATCHD TO HQ EUSA, APO AP 9 | | 12A | REFRADT   H | P8 1 |

| l. PERIOD COVERED  25 DY ADT | | | | | m. NO. OF MONTHS | n. MILPO CODE | o. RATED OFFICER COPY (Check one and date) | p. FORWARDING ADDRESS |
|---|---|---|---|---|---|---|---|---|
| FROM Year 93 | Month 02 | Day 26 | THRU Year 93 | Month 03 Day 22 | 1 | | 1. GIVEN TO OFFICER ☐<br>☒ 2. FORWARDED TO OFFICER  2 3 MAR 1993 | |

q. EXPLANATION OF NONRATED PERIODS

**PART II — AUTHENTICATION** (Rated officer signature verifies PART I data and RATING OFFICIALS ONLY)

| a. NAME OF RATER (Last, First, MI) | SSN | SIGNATURE | |
|---|---|---|---|
| HIGH, ROGER G. | | Roger High | DATE 2 2 MAR 1993 |
| GRADE, BRANCH, ORGANIZATION, DUTY ASSIGNMENT<br>LTC, FA, ROK-US, CFC, CFCD-ED-BSC, | | | |

| b. NAME OF INTERMEDIATE RATER (Last, First, MI) | SSN | SIGNATURE | |
|---|---|---|---|
| | | | DATE |
| GRADE, BRANCH, ORGANIZATION, DUTY ASSIGNMENT | | | |

| c. NAME OF SENIOR RATER (Last, First, MI) | SSN | SIGNATURE | |
|---|---|---|---|
| MORENO, ANTHONY A. | | | DATE 2 2 MAR 1993 |
| GRADE, BRANCH, ORGANIZATION, DUTY ASSIGNMENT<br>COL, IN, CFC, CFCD-ED-BSC, CH, OBS TEAM | | | |

| d. SIGNATURE OF RATED OFFICER<br>Lawrence S Epstein | DATE 2 1 MAR 1993 | e. DATE ENTERED ON DA FORM 2-1 | f. RATED OFFICER MPO INITIALS | g. SR MPO INITIALS | h. NO. OF INCL |
|---|---|---|---|---|---|

**PART III — DUTY DESCRIPTION** (Rater)

| a. PRINCIPAL DUTY TITLE  AAR OPERATIONS TEAM OBSERVER | b. SSI/MOS  35A |
|---|---|

c. REFER TO PART IIIc, DA FORM 67-8-1

DESIGNED FIELD ARMY INTELLIGENCE OBSERVER STAFF OFFICER ASSIGNED TO HEADQUARTERS, COMBINED FORCES COMMAND, KOREA DURING CFC EXERCISE TEAM SPIRIT '93. RESPONSIBILITIES INCLUDE: INITIATING OBSERVER REPORTS ON STAFF ACTIONS, INFORMATION FLOW, AND THE DECISION MAKING PROCESS IAW THE TEAM SPIRIT '93 COLLECTION MANAGEMENT PLAN, PRIORITY COLLECTION REQUIREMENT, OPORDS, FRAGOS, AND OVERLAYS. MAKE SPECIFIC RECOMMENDATIONS ON OBSERVATIONS AS IS APPROPRIATE. PROVIDE INPUT AND SUPPORT FOR PREPARATION OF CINC LEVEL AFTER ACTIONS REPORT.

**PART IV — PERFORMANCE EVALUATION — PROFESSIONALISM** (Rater)

a. PROFESSIONAL COMPETENCE  (In items 1 through 14 below, indicate the degree of agreement with the following statements as being descriptive of the rated officer. Any comments will be reflected in b below.)

HIGH DEGREE — LOW DEGREE  1 2 3 4 5

| | | |
|---|---|---|
| 1. Possesses capacity to acquire knowledge/grasp concepts | 1 | 8. Displays sound judgment | 1 |
| 2. Demonstrates appropriate knowledge and expertise in assigned tasks | 1 | 9. Seeks self-improvement | 1 |
| 3. Maintains appropriate level of physical fitness  PASS    9303 | 1 | 10. Is adaptable to changing situations | 1 |
| 4. Motivates, challenges and develops subordinates | 1 | 11. Sets and enforces high standards | 1 |
| 5. Performs under physical and mental stress | 1 | 12. Possesses military bearing and appearance   71/187   YES | 1 |
| 6. Encourages candor and frankness in subordinates | 1 | 13. Supports EO/EEO | 1 |
| 7. Clear and concise in written communication | 1 | 14. Clear and concise in oral communication | 1 |

b. PROFESSIONAL ETHICS (Comment on any areas where the rated officer is particularly outstanding or needs improvement)

1. DEDICATION
2. RESPONSIBILITY
3. LOYALTY
4. DISCIPLINE
5. INTEGRITY
6. MORAL COURAGE
7. SELFLESSNESS
8. MORAL STANDARDS

a. (1) AS A RECENT GRADUATE OF THE U.S. ARMY WAR COLLEGE, HE SET THE STANDARD FOR OTHERS.

b. (5) SOUGHT OUT BY JUNIOR OFFICERS FOR CAREER ADVISE AND COUNSEL.

MAR 30 1993

DA FORM 67-8
1 SEP 78

REPLACES DA FORM 67-7, 1 JAN 73, WHICH IS OBSOLETE, 1 NOV 78.

US ARMY OFFICER EVALUATION REPORT

00080

PERIOD COVERED 930226~930322

**PART V – PERFORMANCE AND POTENTIAL EVALUATION** *(Rater)*

a. RATED OFFICER'S NAME  EPSTEIN, LAWRENCE S.    SSN ████████

RATED OFFICER IS ASSIGNED IN ONE OF HIS/HER DESIGNATED SPECIALTIES/MOS    [X] YES    [ ] NO

b. PERFORMANCE DURING THIS RATING PERIOD. REFER TO PART III, DA FORM 67-8 AND PART III a, b, AND c, DA FORM 67-8-1

| [X] ALWAYS EXCEEDED REQUIREMENTS | [ ] USUALLY EXCEEDED REQUIREMENTS | [ ] MET REQUIREMENTS | [ ] OFTEN FAILED REQUIREMENTS | [ ] USUALLY FAILED REQUIREMENTS |
|---|---|---|---|---|

c. COMMENT ON SPECIFIC ASPECTS OF THE PERFORMANCE. REFER TO PART III, DA FORM 67-8 AND PART III a, b, AND c, DA FORM 67-8-1. DO NOT USE FOR COMMENTS ON POTENTIAL)

LTC EPSTEIN PERFORMED HIS DUTIES AS INTELLIGENCE OBSERVER AFTER ACTION REVIEW OPERATIONS TEAM FOR EXERCISE TEAM SPIRIT '93 IN AN OUTSTANDING MANNER.  HE OBSERVED THE THIRD REPUBLIC OF KOREA ARMY (TROKA), REVIEWING THEIR PROCEDURES FOR RECEIVING, PROCESSING, AND DISSEMINATING INTELLIGENCE INFORMATION AND THEN PROMPTLY REPORTED HIS OBSERVATIONS TO THE EXERCISE ANALYSIS BRANCH.  HE FREELY GAVE HIS ADVICE AND ASSISTANCE TO ALL IN NEED WHENEVER HE DETECTED OPERATIONAL INEFFECTIVENESS.  LTC EPSTEIN COORDINATED WITH CIVILIAN SUBJECT MATTER EXPERTS IN THE EXERCISE BRANCH WITH THE OBJECTIVE OF KEEPING THE INFORMATIONAL FLOW RUNNING SMOOTHLY. HIS ABILITY TO INTEGRATE WITH THE REPUBLIC OF KOREA STAFF AT THE JOINT LEVEL EASED THE TASK OF PERFORMING THE ASSIGNED MISSIONS.

d. THIS OFFICER'S POTENTIAL FOR PROMOTION TO THE NEXT HIGHER GRADE IS

| [X] PROMOTE AHEAD OF CONTEMPORARIES | [ ] PROMOTE WITH CONTEMPORARIES | [ ] DO NOT PROMOTE | [ ] OTHER *(Explain below)* |
|---|---|---|---|

e. COMMENT ON POTENTIAL

LTC EPSTEIN SHOULD BE SELECTED FOR A POSITION AT THE JOINT OR DOD LEVEL.

**PART VI – INTERMEDIATE RATER**

a. COMMENTS

**PART VII – SENIOR RATER**

a. POTEN CMC U231 BB C

SR  ERBGRES LTC

[X]  B EPSTEIN LAHRE
14 SSN ████████
Q      SR: COL
Q  MORENO ANTHON
0
0
0
0
0      RATED  22

A COMPLETED DA FORM 67-8-1 WAS RECEIVED WITH THIS REPORT AND CONSIDERED IN MY EVALUATION AND REVIEW    [X] YES    [ ] NO *(Explain in b)*

b. COMMENTS

LTC EPSTEIN IS A VERY TALENTED OFFICER WHOSE PERFORMANCE DURING TEAM SPIRIT '93 WAS OUTSTANDING.  LTC EPSTEIN DEMONSTRATES EFFECTIVE SKILLS IN COORDINATING OPERATIONS AT THE OPERATIONAL LEVEL OF WAR.  HE IS VERY MOTIVATED, ARTICULATE AND WILLINGLY SEEKS RESPONSIBILITY.  LTC EPSTEIN SHOULD BE CONSIDERED FOR A POSITION COMMENSURATE WITH HIS MILITARY EDUCATION.  PROMOTE TO COLONEL.

1988 - 281-671/00582

2422 J.C. M-91

6  15-005-52

SEE PRIVACY ACT STATEMENT
ON DA FORM 67-8-1

FOR USE OF 1198 PRE

5

**PART I — ADMINISTRATIVE DATA**

| a. LAST NAME - FIRST NAME - MIDDLE INITIAL | b. SSN | c. GRADE | d. DATE OF RANK | e. BR | f. DESIGNATED SPECIALTIES | g. PMOS / SPECIALTY | h. STA CODE |
|---|---|---|---|---|---|---|---|
| EPSTEIN, LAWRENCE S. | | LTC | 89 06 03 | MI | 35E | | 13567 |

| i. UNIT, ORGANIZATION, STATION, ZIP CODE OR APO, MAJOR COMMAND | j. REASON FOR ELIMINATION | | k. COMD CODE |
|---|---|---|---|
| USAR CON GP, ARPERCEN, ST LOUIS, MO 63132 w/duty HQ FORSCOM FCJ2-IOP, FT MCPHERSON, GA 30330 | 12 REFRADT | 9C FC/ | |

| l. PERIOD COVERED | | | | | | m. NO. OF MONTHS | n. NO. OF NR PE CODE | o. RATED OFFICER COPY (Check one and date) |
|---|---|---|---|---|---|---|---|---|
| FROM | | | THRU | | | | | |
| Year | Month | Day | Year | Month | Day | | | ☐ 1. GIVEN TO OFFICER |
| 91 | 03 | 05 | 91 | 05 | 17 | 72 days | PS26 | ☒ 2. FORWARDED TO OFFICER  910531 |

p. FORWARDING ADDRESS

q. EXPLANATION OF NONRATED PERIODS

**PART II — AUTHENTICATION** *(Rated officer signature verifies PART I data and RATING OFFICIALS ONLY)*

| a. NAME OF RATER (Last, First, MI) | SSN | SIGNATURE | |
|---|---|---|---|
| REICHARD, GEORGE D., III | | | |
| GRADE, BRANCH, ORGANIZATION, DUTY ASSIGNMENT | | | DATE |
| GS-13, C, PLANS & EXERCISE BR, INTEL OPS DIV, J2, HQ FORSCOM | | | 17 MAY 91 |

| b. NAME OF INTERMEDIATE RATER (Last, First, MI) | SSN | SIGNATURE | |
|---|---|---|---|
| | | | |
| GRADE, BRANCH, ORGANIZATION, DUTY ASSIGNMENT | | | DATE |

| c. NAME OF SENIOR RATER (Last, First, MI) | SSN | SIGNATURE | DATE |
|---|---|---|---|
| CAMPBELL, JULIAN M., JR. | | | 17 May 91 |
| GRADE, BRANCH, ORGANIZATION, DUTY ASSIGNMENT | | | |
| COL, USA, MI, C, IO DIV, J2, HQ FORSCOM | | | |

| d. SIGNATURE OF RATED OFFICER | e. DATE | f. DAY ENTERED ON DA FORM 3B | g. RATED OFFICER MPO INITIALS | h. SR MPO INITIALS | i. NO. OF INCL |
|---|---|---|---|---|---|
| | 17 May 91 | | | | |

**PART III — DUTY DESCRIPTION** *(Rater)*

| a. PRINCIPAL DUTY TITLE | b. DA/MOS |
|---|---|
| SENIOR INTELLIGENCE STAFF OFFICER | 35E |

c. REFER TO PART III, DA FORM 67-8-1

Responsible to perform duties as a Senior Intelligence Staff Officer assigned to the Intelligence Operations Division, Plans and Exercise Branch, J2 FORSCOM. Primary Action Officer responsible for the development of the Intelligence Communication Architecture Program (INCA) Annex, within the FORSCOM Theater Intelligence Architecture Program (TIAP). Responsible for the direction, research, development, organization and final production of the INCA, as a stand alone FORSCOM document.

**PART IV — PERFORMANCE EVALUATION — PROFESSIONALISM** *(Rater)*

| a. PROFESSIONAL COMPETENCE | the items 1 through 14 below, indicate the degree of agreement with the following statements or being descriptive of the rated officer. Any comments will be referred to in below. | HIGH DEGREE | | LOW DEGREE | |
|---|---|---|---|---|---|
| | | 1 | 2 3 4 | 5 |
| 1. Possesses capacity to acquire knowledge/grasp concepts | 1 | 8. Displays sound judgment | 1 |
| 2. Demonstrates appropriate knowledge and expertise in assigned tasks | 1 | 9. Seeks self-improvement | 1 |
| 3. Maintains appropriate level of physical fitness  PASS  9102 | 1 | 10. Is adaptable to changing situations | 1 |
| 4. Motivates, challenges and develops subordinates | 1 | 11. Sets and enforces high standards | 1 |
| 5. Performs under physical and mental stress | 1 | 12. Possesses military bearing and appearance  71/185  YES | 1 |
| 6. Encourages candor and frankness in subordinates | 1 | 13. Supports EO/EEO | 1 |
| 7. Clear and concise in written communication | 1 | 14. Clear and concise in oral communication | 1 |

| b. PROFESSIONAL ETHICS *(Comment on any area where the rated officer is particularly outstanding or needs improvement)* | |
|---|---|
| 1. EDUCATION  2. RESPONSIBILITY  3. LOYALTY  4. DISCIPLINE  5. INTEGRITY  6. MORAL COURAGE  7. SELFLESSNESS  8. MORAL STANDARDS | a.1.  Quickly grasped complex concepts and duties.  a.7,14.  Exceptional written and oral communication skills.  b.7.  Worked long hours with no mention of compensation. |

JUL 20 1991

JUN 07 1991

MAY 28 1991

| DA FORM 67-8 1 DEC 79 | REPLACES DA FORM 67-7, 1 JAN 73, WHICH IS OBSOLETE, 1 NOV 75. | US ARMY OFFICER EVALUATION REPORT |

2422 J.C. 11-04-91

PERIOD COVERED   910305-910517

**PART V — PERFORMANCE AND POTENTIAL EVALUATION (Rater)**

a. RATED OFFICER'S NAME  EPSTEIN, LAWRENCE S.

RATED OFFICER IS ASSIGNED SOME OF HIS/HER DESIGNATED SPECIALTIES?   [X] YES   [ ] NO

b. PERFORMANCE DURING THIS RATING PERIOD. REFER TO PART III, DA FORM 67-8 AND PART IN c, D, AND e, DA FORM 67-8-1

[X] ALWAYS EXCEEDED REQUIREMENTS   [ ] USUALLY EXCEEDED REQUIREMENTS   [ ] MET REQUIREMENTS   [ ] OFTEN FAILED REQUIREMENTS   [ ] USUALLY FAILED REQUIREMENTS

c. COMMENT ON SPECIFIC ASPECTS OF THE PERFORMANCE. REFER TO PART III, DA FORM 67-8 AND PART III c, D, AND e, DA FORM 67-8-1. DO NOT USE FOR COMMENTS ON POTENTIAL!

Lieutenant Colonel Epstein is an exceptionally efficient officer who demonstrated outstanding results in every endeavor. Presented with an exceptional challenge outside of his primary area of expertise; he easily assimilated the complex duties and responsibilities normally assigned to a signals intelligence professional. Lieutenant Colonel Epstein applied his in-depth personal knowledge of this directorate as well as numerous other military intelligence organizations, and quickly became an integral part of the Plans and Exercise Branch.

d. THIS OFFICER'S POTENTIAL FOR PROMOTION TO THE NEXT HIGHER GRADE IS

[X] PROMOTE AHEAD OF CONTEMPORARIES   [ ] PROMOTE WITH CONTEMPORARIES   [ ] DO NOT PROMOTE   [ ] OTHER (Explain below)

e. COMMENT ON POTENTIAL

Lieutenant Colonel Epstein has great potential. Promote and ensure he is selected for advanced military schooling and challenging assignments.

**PART VI — INTERMEDIATE RATER**

a. COMMENTS

**PART VII — SENIOR RATER**

a. POTENTIAL EVALUATION (See Chapter 4, AR 623-205)

| SR | | |
|---|---|---|
| | CMC 231 | |
| | RO: LTG | 0 |
| | EPSTE | 0 |
| X | | 1 |
| | SR: COL | 0 |
| | CAMPB | 0 |
| | PDTE 910716 | 0 |
| | RDTE C'9105 | 0 |
| | 101 851203 | 0 |
| | RATED 1 | 0 |

a. COMPLETED DA FORM 67-8-1 WAS RECEIVED WITH THIS REPORT AND CONSIDERED IN MY EVALUATION AND REVIEW
[X] YES   [ ] NO (Explain in b.)

b. COMMENTS

Lieutenant Colonel Epstein is an outstanding staff coordinator who made a major contribution through the development of an intelligence communications architecture for the J2 Directorate. His extra-curricular activities as a church lay person and a participant in the Army Public Speaking Program were indicative of his approach to life and to his job — get involved and make a contribution. Promote Lieutenant Colonel Epstein to Colonel and take full advantage of his diverse talents. He exudes executive competence.

U.S. GOVERNMENT PRINTING OFFICE : 1985 O - 482-951

FILE CMFP 3027 PREO
-199209230691    2

SEE PRIVACY ACT STATEMENT
ON DA FORM 67–8–1
For use of this form, see AR 623-105; proponent
agency is US Army Military Personnel Center.

**PART I — ADMINISTRATIVE DATA**

| a. LAST NAME - FIRST NAME - MIDDLE INITIAL | b. SSN | c. GRADE | d. DATE OF RANK Year Month Day | e. BR | f. DESIGNATED SPECIALTIES | g. PMOS (MO) | h. STA CODE |
|---|---|---|---|---|---|---|---|
| EPSTEIN, Lawrence S. | | LTC | 89 06 03 | MI | 35 | | 13567 |

| i. UNIT, ORGANIZATION, STATION, ZIP CODE OR APO, MAJOR COMMAND | j. REASON FOR SUBMISSION | k. COMD CODE |
|---|---|---|
| USAR Cont Gp ARPERCEN, St Louis, MO 63132-5200 Atch to USASSC FORSCOM, Ft McPherson, GA 30330 W3YBAA FORSCOM | 04 Change of duty | FC1 |

| l. PERIOD COVERED | | | | | | m. NO. OF MONTHS | n. MILPO CODE | o. RATED OFFICER COPY (Check one date) | p. FORWARDING ADDRESS |
|---|---|---|---|---|---|---|---|---|---|
| FROM | | | THRU | | | | | ☐ 1. GIVEN TO OFFICER | |
| Year | Month | Day | Year | Month | Day | | | ☐ 2. FORWARDED TO OFFICER | |
| 90 | 10 | 22 | 91 | 03 | 05 | 5 | FS26 | | |

q. EXPLANATION OF NONRATED PERIODS

**PART II — AUTHENTICATION** (Rated officer signature verifies PART I data and RATING OFFICIALS ONLY)

| a. NAME OF RATER (Last, First, MI) | SSN | SIGNATURE | |
|---|---|---|---|
| HUDSON, Gabriel L. | | | |

| GRADE, BRANCH, ORGANIZATION, DUTY ASSIGNMENT | DATE |
|---|---|
| LTC, AV, USA Special Security Command FORSCOM, Commander | 14 MAY 91 |

| b. NAME OF INTERMEDIATE RATER (Last, First, MI) | SSN | SIGNATURE | |
|---|---|---|---|
| | | | |

GRADE, BRANCH, ORGANIZATION, DUTY ASSIGNMENT    DATE

| c. NAME OF SENIOR RATER (Last, First, MI) | SSN | SIGNATURE | |
|---|---|---|---|
| CROMARTIE, George D., Jr. | | George D Cromartie | |

| GRADE, BRANCH, ORGANIZATION, DUTY ASSIGNMENT | DATE |
|---|---|
| COL, MI, USA Special Security Group, Commander | 8 Oct 91 |

| d. SIGNATURE OF RATED OFFICER | DATE | e. DATE ENTERED ON DA FORM 21 | f. RATED OFFICER MPO INITIALS | g. BR MPO INITIALS | h. NO. OF INCL |
|---|---|---|---|---|---|
| | 15 May 91 | | | | 2 |

**PART III — DUTY DESCRIPTION** (Rater)

| a. PRINCIPAL DUTY TITLE | b. SSI/MOS |
|---|---|
| Deputy Commander | 35E |

f. REFER TO PART IIIb, DA FORM 67–8–1    As the Individual Mobilization Augmentee (IMA) assigned as Deputy Commander, Special Security Command (SSC) FORSCOM, during Operation Desert Shield/Storm. Responsible for planning, directing, and supervising operations of the SSC, a battalion level command consisting of 13 Active Duty detachments and 17 USAR Mobilization Stations. Activities include: directing daily operations of the security of SCI; administering SCI billet and access programs; coordinating SSO training; oversight of the FORSCOM SSO inspection program. Advise the SSC Commander and Hq FORSCOM regarding Reserve Component SSO issues related to Reserve forces.

**PART IV — PERFORMANCE EVALUATION — PROFESSIONALISM** (Rater)

a. PROFESSIONAL COMPETENCE (In items 1 through 14 below, indicate the degree of agreement with the following statements as being descriptive of the rated officer. Any comments will be reflected in b below.)

HIGH DEGREE ... LOW DEGREE
1 2 3 4 5

| | | | | |
|---|---|---|---|---|
| 1. Possesses capacity to acquire knowledge/grasp concepts | 1 | 8. Displays sound judgment | | 3 |
| 2. Demonstrates appropriate knowledge and expertise in assigned tasks | 1 | 9. Seeks self-improvement | | 1 |
| 3. Maintains appropriate level of physical fitness | 9003 Pass | 1 | 10. Is adaptable to changing situations | 1 |
| 4. Motivates, challenges and develops subordinates | NA | 11. Sets and enforces high standards | | 1 |
| 5. Performs under physical and mental stress | 1 | 12. Possesses military bearing and appearance | 71/180 Yes | 1 |
| 6. Encourages candor and frankness in subordinates | NA | 13. Supports EO/EEO | | 1 |
| 7. Clear and concise in written communication | 1 | 14. Clear and concise in oral communication | | 1 |

b. PROFESSIONAL ETHICS (Comment on any area where the rated officer is particularly outstanding or needs improvement)

1. DEDICATION
2. RESPONSIBILITY
3. LOYALTY
4. DISCIPLINE
5. INTEGRITY
6. MORAL COURAGE
7. SELFLESSNESS
8. MORAL STANDARDS

a8 – on three occasions, he displayed very poor judgment which resulted in embarrassment for this command
b3 & 5 – I questioned his loyalty and integrity due to actions and comments on at least three occasions

| DA FORM 67–8 1 SEP 79 | REPLACES DA FORM 67–7, 1 JAN 73, WHICH IS OBSOLETE, 1 NOV 79. | US ARMY OFFICER EVALUATION REPORT |
|---|---|---|

PERIOD COVERED  901022 – 910305

## PART V – PERFORMANCE AND POTENTIAL EVALUATION *(Rater)*

**a. RATED OFFICER'S NAME**  EPSTEIN, Lawrence S.          SSN ▇▇▇▇▇▇▇

RATED OFFICER IS ASSIGNED IN ONE OF HIS/HER DESIGNATED SPECIALTIES/MOS  ☐ YES  ☐ NO

**b. PERFORMANCE DURING THIS RATING PERIOD. REFER TO PART III, DA FORM 67–8 AND PART III a, b, AND c, DA FORM 67–8–1**

| ☐ ALWAYS EXCEEDED REQUIREMENTS | ☒ USUALLY EXCEEDED REQUIREMENTS | ☐ MET REQUIREMENTS | ☐ OFTEN FAILED REQUIREMENTS | ☐ USUALLY FAILED REQUIREMENTS |

**c. COMMENT ON SPECIFIC ASPECTS OF THE PERFORMANCE, REFER TO PART III, DA FORM 67–8 AND PART III a, b, AND c, DA FORM 67–8–1. DO NOT USE FOR COMMENTS ON POTENTIAL)**

LTC Larry Epstein is a USAR officer, Individual Mobilization Augmentee, assigned as the deputy commander to this command. He readily volunteered for active duty during Operation Desert Shield/Storm. His knowledge of computers and ADP equipment is superb. He is very enthusiastic and aggressive. However, his lack of military experience, tact, and people skills began to manifest themselves shortly after his arrival. His tactless conversation with the executive officer to the chief of staff caused this command extreme embarrassment. At least three times he disclosed privileged information to soldiers, seriously degrading morale and esprit de corps of the soldiers and the command. These actions seriously effected my impression of his loyalty and integrity. Further, LTC Epstein issued uncoordinated guidance to two subordinate elements resulting in confusion and unnecessary disruption. He was unable to heed my counseling and guidance and improve his performance, as a result, he was reassigned to another position in the J-2.

**d. THIS OFFICER'S POTENTIAL FOR PROMOTION TO THE NEXT HIGHER GRADE IS**

| ☐ PROMOTE AHEAD OF CONTEMPORARIES | ☒ PROMOTE WITH CONTEMPORARIES | ☐ DO NOT PROMOTE | ☐ OTHER *(Explain below)* |

**e. COMMENT ON POTENTIAL**

Future active duty should be carefully coordinated and supervised at O-6 level or above. He has excellent potential for higher level staff and promotion, given training and experience.

## PART VI – INTERMEDIATE RATER

**a. COMMENTS**

## PART VII – SENIOR RATER

**a. POTEN**

CMC 0231
SR  ERGRES LTC
5 EPSTEIN LAWRE
11 SSN ▇▇▇▇
☒  X  1          SR: COL
0  CROMA
0
0  ▇▇▇▇▇
0
0  ▇▇▇▇▇
RATED  17

A COMPLETED DA FORM 67–8–1 WAS RECEIVED WITH THIS REPORT AND CONSIDERED IN MY EVALUATION AND REVIEW  ☒ YES  ☐ NO *(Explain in b)*

**b. COMMENTS**

Lieutenant Colonel Epstein volunteered for active duty to serve in DESERT SHIELD/STORM. He was assigned to assist the Commander, Special Security Command, FORSCOM in carrying out his rapidly expanding responsibilities in supporting the FORSCOM deployment effort. In his zeal to meet the numerous demands, LTC Epstein clashed with the commander over operational procedures, management of assigned personnel and basic command philosophy. The Commander and LTC Epstein were unable to resolve their differences and LTC Epstein was released for staff duty with J-2 FORSCOM. LTC Epstein is highly motivated and displays high potential for assignment to positions requiring independent analysis and action. Promote with contemporaries.

☆ U.S.G.P.O.: 1988 – 201–424/80235

00085

150.05-22

NLF 5 FEB 91

SEE PRIVACY ACT STATEMENT
ON DA FORM 67-8-1

For use of this form, see AR 623-105, proponent agency is US Army Military Personnel Center

FICE OMPF　02616 RE0　5

**PART I — ADMINISTRATIVE DATA**

| a. LAST NAME - FIRST NAME - MIDDLE INITIAL | b. SSN | c. GRADE | d. DATE OF RANK | | | e. BR | f. DESIGNATED SPECIALTIES | g. PMOS SPEC | h. ETS CODE |
| | | | Year | Month | Day | | | | |
| EPSTEIN, Lawrence S. | | LTC | 89 | 08 | 03 | MI | 35 | | 13587 |

| i. UNIT, ORGANIZATION, STATION, ZIP CODE OR APO, MAJOR COMMAND | j. REASON FOR SUBMISSION |
| USAG Control Gp, ARPERCEN, St Louis, MO w/duty SSD Third US Army  Ft McPherson, GA 30330 (FORSCOM) | 12A　REFRAD |

| k. PERIOD COVERED | | | | | | l. NO. OF MONTHS | m. NO. OF MONTHS | n. MILPO CODE | o. RATED OFFICER COPY (Check one and date) | p. FORWARDING ADDRESS |
| FROM | | | THRU | | | | | | | |
| Year | Month | Day | Year | Month | Day | | | | 1. GIVEN TO OFFICER | |
| 90 | 07 | 16 | 90 | 07 | 31 | 15 days | | FS21 | 2. FORWARDED TO OFFICER | |

q. EXPLANATION OF NONRATED PERIODS

**PART II — AUTHENTICATION** (Rated officer signature verifies PART I data and RATING OFFICIALS ONLY)

| a. NAME OF RATER (Last, First, MI) | SSN | SIGNATURE | |
| HUDSON, Gabriel L. | | | |
| GRADE, BRANCH, ORGANIZATION, DUTY ASSIGNMENT | | | DATE |
| LTC  AV  US Army Special Security Command FORSCOM, Commander | | | |

| b. NAME OF INTERMEDIATE RATER (Last, First, MI) | SSN | SIGNATURE | |
| | | | |
| GRADE, BRANCH, ORGANIZATION, DUTY ASSIGNMENT | | | DATE |

| c. NAME OF SENIOR RATER (Last, First, MI) | SSN | SIGNATURE | |
| CROMARTIE, George D., Jr. | | | |
| GRADE, BRANCH, ORGANIZATION, DUTY ASSIGNMENT | | | DATE |
| COL  MI  US Army Special Security Group, Commander | | | 28 Aug 90 |

| d. SIGNATURE OF RATED OFFICER | DATE | e. DATE ENTERED ON DA FORM 2-1 | f. RATER OFFICIAL SRID INITIALS | g. SR MPO INITIALS | RINED. OF INC? |
| | | | | | |

**PART III — DUTY DESCRIPTION** (Rater)

| a. PRINCIPAL DUTY TITLE | b. SSI |
| Detachment Commander | 35B |

c. REFER TO PART IIIe, DA FORM 67-8-1

d. Deploy with Third US Army to participate in Internal Look '90 and assist in operation of the exercise tactical Sensitive Compartmented Information (SCI) Facility; serve as the Special Security Officer responsible for providing SCI support to active and reserve units; oversee the billet administration, document accountability procedures, and general office management of the Special Security Detachment (SSD); oversee the acquisition, physical security, dissemination, and eventual destruction of SCI as well as the activities associated with the Defense Courier System (DCS); administer indoctrination and reindoctrination briefings for military and civilian agencies as appropriate.

**PART IV — PERFORMANCE EVALUATION - PROFESSIONALISM** (Rater)

| a. PROFESSIONAL COMPETENCE | | HIGH DEGREE | | | LOW DEGREE | |
| 1. Possesses capacity to acquire knowledge/grasp concepts | | | | | | |
| 2. Demonstrates appropriate knowledge and expertise in assigned tasks | | 9. Displays sound judgment | | | | |
| 3. Maintains appropriate level of physical fitness  Pass 9003 | | 10. Seeks self-improvement | | | | |
| 4. Motivates, challenges and develops subordinates | | 11. Is adaptable to changing situations | | | | |
| 5. Performs under physical and mental stress | | 12. Sets and enforces high standards | | | | |
| 6. Encourages candor and frankness in subordinates | | 13. Possesses military bearing and appearance  172 180 Yes | | | | |
| 7. Clear and concise in writing communications | | 14. Explains GO/ERO | | | | |
| 8. Clear and concise in oral communications | | | | | | |

b. PROFESSIONAL ETHICS (Comment on any area where the rated officer is particularly outstanding or needs improvement)

| 1. DEDICATION | a.1 — rapidly adapts to changing situations. |
| 2. RESPONSIBILITY | a.3 — outstanding level of physical fitness. |
| 3. LOYALTY | a.7&14 — superb communicator |
| 4. DISCIPLINE | b.13 — 100% to mission and command |
| 5. INTEGRITY | b.9 — beyond reproach |
| 6. MORAL COURAGE | |
| 7. SELFLESSNESS | |
| 8. MORAL STANDARDS | |

DA FORM 67-8

REPLACES DA FORM 67-7, 1 JAN 73 WHICH IS OBSOLETE, 1 NOV 80

US ARMY OFFICER EVALUATION REPORT

1 0 OCT 1990

0 5 SEP 1990

00086

PERIOD COVERED 980714-980711

PART V – PERFORMANCE AND POTENTIAL EVALUATION (Rater)

a. RATED OFFICER'S NAME   EPSTEIN, Lawrence S.   SSN

RATED OFFICER IS ASSIGNED IN ONE OF HIS/HER DESIGNATED SPECIALTIES/MOS   ☒ YES   ☐ NO

b. PERFORMANCE DURING THIS RATING PERIOD. REFER TO PART III, DA FORM 67-8 AND PART III a, b, AND c, DA FORM 67-8-1

☒ ALWAYS EXCEEDED REQUIREMENTS   ☐ USUALLY EXCEEDED REQUIREMENTS   ☐ MET REQUIREMENTS   ☐ OFTEN FAILED REQUIREMENTS   ☐ USUALLY FAILED REQUIREMENTS

c. COMMENT ON SPECIFIC ASPECTS OF THE PERFORMANCE, REFER TO PART III, DA FORM 67-8 AND PART III a, b, AND c, DA FORM 67-8-1. DO NOT USE FOR COMMENT ON POTENTIAL

LTC Epstein is a professional, enthusiastic, technically and tactically competent officer who performed his duties as an Individual Mobilization Augmentee to the Special Security Officer, Third United States Army in an outstanding manner. He performed these duties during exercise Internal Look 90. Deploying with his assigned section, he was prepared for duty and contributed greatly to the employment and mission accomplishment of the Special Security Office. His superior efficiency and effectiveness coupled with his vast experience and attention to detail allowed him to rapidly come on line and provide security support. He assisted in training junior active security officers in techniques and procedures of the special security system. LTC Epstein managed the 12 hour nightshift in a tactical Sensitive Compartmented Information Facility (SCIF) flawlessly. He met or exceeded every standard for the tasks assigned him. He represented the Reserve Component, Special Security Group and this command in a very positive, professional manner.

d. THIS OFFICER'S POTENTIAL FOR PROMOTION TO THE NEXT HIGHER GRADE IS

☒ PROMOTE AHEAD OF CONTEMPORARIES   ☐ PROMOTE WITH CONTEMPORARIES   ☐ DO NOT PROMOTE   ☐ OTHER (Explain below)

e. COMMENT ON POTENTIAL

Promote to colonel. Select for a senior service college. Unlimited potential for higher level command and staff positions.

PART VI – INTERMEDIATE RATER

a. COMMENTS

PART VII – SENIOR RATER

a. POTENTIAL EVALUATION (See Chapter 4, AR 623-105)

SR   CMC 231
RO: LTC
     EPSTE [redacted]
SR: COL
     CRUMA [redacted]
POTE: 900913
IO1 851203
RATED: 8

b. COMMENTS

LTC Epstein performed his duties in an outstanding manner. His leadership experience and contributions had a profound impact on the success of the Third US Army Special Security Office. He is totally ready to assume duties as a senior intelligence officer or corps G-2 upon mobilization. His knowledge and experience in the intelligence field is significant and will be welcomed asset to any RC/AC command. Promote him to colonel, continue his military education. He has outstanding potential.

c. COMPLETED DA FORM 67-8-1 WAS RECEIVED WITH THIS REPORT AND CONSIDERED IN MY EVALUATION AND REVIEW   ☒ YES   ☐ NO (Explain in b)

2430 MI 190/HC

15-005-22    FULL ONE  U235 PRE    5

SEE PRIVACY ACT STATEMENT
ON DA FORM 67-8-1

ADMINISTRATIVE DATA

a. LAST NAME - FIRST NAME - MIDDLE INITIAL

EPSTEIN, LAWRENCE S.

LTC  89 06 03  MI  35F

f. UNIT, ORGANIZATION, STATION, ZIP CODE OR APO, MAJOR COMMAND

Security Group, Ft. Meade, MD  US AS, PERCEN, St.
Louis, MO  63132

IZA  REFRAT

g. PERIOD COVERED

| FROM | | | THRU | | | h. NO. OF MONTHS |
|---|---|---|---|---|---|---|
| Year | Month | Day | Year | Month | Day | |
| 90 | 03 | 19 | 90 | 03 | 30 | 12dys |

YBSG

X 2. FORWARDED TO OFFICER

k. EXPLANATION OF NONRATED PERIODS

PART II - AUTHENTICATION

a. NAME OF RATER (Last, First, MI)

GRAY, GARY O.                                        Gary O. Gray

GRADE, BRANCH, ORGANIZATION, DUTY ASSIGNMENT         DATE  7 May 90

LTC, MI, US Army Special Security Group, Deputy Commander

b. NAME OF INTERMEDIATE RATER (Last, First, MI)

GRADE, BRANCH, ORGANIZATION, DUTY ASSIGNMENT

c. NAME OF SENIOR RATER (Last, First, MI)

CROMARTIE, GEORGE D., JR.                            George D. Cromartie

GRADE, BRANCH, ORGANIZATION, DUTY ASSIGNMENT         DATE  16 May 90

COL, MI, US Army Special Security Group, Commander

e. SIGNATURE OF RATED OFFICER        DATE 30 June 90

PART III - DUTY DESCRIPTION

a. PRINCIPAL DUTY TITLE  Special Project Officer          b. BRANCH  35F

c. REFER TO PART IIIb, DA FORM 67-8-1

Special Project Officer for a Brigade level MSC of the U.S. Army Intelligence and Security
Command, charged with executing the Army's portion of the Defense Special Security System.
Group consists of six battalion level commands with 72 detachments supporting 47,000 Special
Intelligence consumers, 350 general officers, and 15 US Ambassadors located in CONUS and nine
foreign countries.  Responsible to the Deputy Commander for the development of the Army
Policy concerning special access programs within Army sensitive compartmented facilities, and
development of an Army wide policy concerning the delegation of proper authority for combat
commanders.

PART IV - PERFORMANCE EVALUATION - PROFESSIONALISM (Rater)

a. PROFESSIONAL COMPETENCE                                              HIGH DEGREE    LOW DEGREE

| | | | | |
|---|---|---|---|---|
| 1. Possesses capacity to acquire knowledge/grasp concepts | 1 | 8. Displays sound judgment | | 1 |
| 2. Demonstrates appropriate knowledge and expertise in assigned tasks | 1 | 9. Seeks self-improvement | | 1 |
| 3. Maintains appropriate level of physical fitness 9003 PASS | | 10. Is adaptable to changing situations | | 1 |
| 4. Motivates, challenges and develops subordinates | | 11. Sets and enforces high standards | | 1 |
| 5. Performs under physical and mental stress | | 12. Possesses military bearing and appearance 71/180 YES | | |
| 6. Encourages candor and frankness in subordinates | | 13. Supports EO/EEO | | 1 |
| 7. Clear and concise in written communication | | 14. Clear and concise in oral communication | | 1 |

b. PROFESSIONAL ETHICS (Comment on any area where the rated officer is particularly outstanding or needs improvement)

1. DEDICATION
2. RESPONSIBILITY
3. LOYALTY
4. DISCIPLINE
5. INTEGRITY
6. MORAL COURAGE
7. SELFLESSNESS
8. MORAL STANDARDS

a.1.  Quickly grasps complicated issues/concepts
a.7, 14.  Writes and speaks extremely well
b.5,8.  Integrity, moral standards above reproach

3 0 MAY 1990

1 4 SEP 1990        27 JUL 1990

DA FORM 67-8        REPLACES DA FORM 67-7, 1 JAN 73, WHICH IS OBSOLETE, 1 NOV 75.        US OFFICER EVALUATION REPORT

00088

PERIOD COVERED 900319 - 900330

**PART V - PERFORMANCE AND POTENTIAL EVALUATION (Rater)**

a. RATED OFFICER'S NAME  EPSTEIN, LAWRENCE S.

RATED OFFICER IS ASSIGNED IN ONE OF HIS/HER DESIGNATED SPECIALTIES?  ☐ YES  ☐ NO

b. PERFORMANCE DURING THIS RATING PERIOD. (REFER TO PART IV, DA FORM 67-8 AND PART II a, b, AND c, DA FORM 67-8-1.)

☒ ALWAYS EXCEEDED REQUIREMENTS  ☐ USUALLY EXCEEDED REQUIREMENTS  ☐ MET REQUIREMENTS  ☐ OFTEN FAILED REQUIREMENTS  ☐ USUALLY FAILED REQUIREMENTS

c. COMMENT ON SPECIFIC ASPECTS OF THE PERFORMANCE, REFER TO PART IV, DA FORM 67-8 AND PART II a, b, AND c, DA FORM 67-8-1. DO NOT USE FOR COMMENTS ON POTENTIAL.

LTC Epstein's performance during this IMA assignment was superb. He undertook two major Army Special Intelligence security policy actions and quickly completed the research, and the internal staffing of both, complete with written proposals for DA Staff review. He further applied his experience in special intelligence security operations in assisting in the formulation of a new draft Army regulation for future use by Army Special Security officers as well as the Army's 47,000 Special Intelligence consumers around the world. LTC Epstein is a motivated, articulate officer who seeks responsibility. He always offered practical and innovative solutions to complex problems and could always be counted upon for solid advice and direct, professional action. He is the kind of IMA the Army needs. He contributes with solid performance regardless of the task or the environment and sets a clear example of professional excellence worthy of emulation.

d. THIS OFFICER'S POTENTIAL FOR PROMOTION TO THE NEXT HIGHER GRADE IS

☒ PROMOTE AHEAD OF CONTEMPORARIES  ☐ PROMOTE WITH CONTEMPORARIES  ☐ DO NOT PROMOTE  ☐ OTHER (Please Explain)

e. COMMENT ON POTENTIAL

Select for positions of increased responsibility at the Joint and DoD levels. Would make an excellent Commander. Select for Senior Service College attendance at earliest opportunity.

**PART VI - INTERMEDIATE RATER**

a. COMMENTS

**PART VII - SENIOR RATER**

a. POTENTIAL EVALUATION (See Chapter 4, AR 623-105)

| SR | | |
|---|---|---|
| CMG 231 | | |
| ROU LTC | | 1 |
| EPSTE... | | 3* |
| SR: COU | | 0 |
| CROMA | | 0 |
| | | 0 |
| POTE 900821 | | 0 |
| RDTE C 9005 | | 0 |
| 101 851203 | | 0 |
| RATED 4 | | 0 |

b. COMMENTS

LTC Epstein is an outstanding officer whose performance during this AT was outstanding. His unusual initiative enabled him to develop two complex policy actions dealing with special intelligence security and to make significant progress toward their resolution. His assistance in the rewriting of Army policy for SSO operations was extremely valuable, especially in the area of support to reserve components. LTC Epstein is an articulate, hard working, no nonsense professional who makes sound recommendations, based on logical analysis. He is very enthusiastic, seeks responsibility, and gets results. Highly recommended for command positions and selection for Senior Service schooling. Promote to Colonel.

c. A COMPLETED DA FORM 67-8-1 WAS RECEIVED WITH THIS REPORT AND CONSIDERED IN MY EVALUATION AND REVIEW

☐ YES  ☐ NO (Explain in b)

2450 5/7/10 H.C.

15005-22

SEE PRIVACY ACT STATEMENT
ON DA FORM 67-4-1

5

**PART I – ADMINISTRATIVE DATA**

| 1. LAST NAME, FIRST NAME, MIDDLE INITIAL | 2. SSN | 3. GRADE | 4. DATE OF RANK | 5. DA | 6. DESIGNATED SPECIALTIES | 7. PMOS /MOS | 8. STA CODE |
|---|---|---|---|---|---|---|---|
| EPSTEIN, LAWRENCE S. | | O-4 | 82 06 04 | MI | 36B/35F | |

| 1. UNIT, ORGANIZATION, STATION, ZIP CODE OR APO, MAJOR COMMAND | | 10. REASON FOR SUBMISSION | | 9. ORG CODE |
|---|---|---|---|---|
| JECG-J2 Fort Richardson, AK 99505 USA SPECIAL SECURITY GROUP, ARLINGTON, VA 22212 | | 12A. REPEAT | 9C | 1 |

| 11. PERIOD COVERED FROM | | | THRU | | | 12. NO. OF MONTHS | 13. NON-RATED CODES | 14. RATED OFFICER COPY (Check one box and date) | 15. FORWARDING ADDRESS |
|---|---|---|---|---|---|---|---|---|---|
| Year | Month | Day | Year | Month | Day | | | [ ] A. GIVEN TO OFFICER | |
| 89 | 01 | 15 | 89 | 02 | 02 | 1 | | [ ] B. FORWARDED TO OFFICER | |

16. EXPLANATION OF NONRATED PERIODS

**PART II – AUTHENTICATION** (Rated officer's signature verifies Part I data and RATING OFFICIALS ONLY)

| 1. NAME OF RATER (Last, First, MI) | SSN | SIGNATURE | |
|---|---|---|---|
| DEMPSEY, WILLIAM R. | | *William R. Dempsey* | DATE |
| GRADE, BRANCH, ORGANIZATION, DUTY ASSIGNMENT | | | 2 FEB 89 |
| GM14, HQ FORSCOM, J2, C, TNG & EXERCISE DIVISION | | | |

| 2. NAME OF INTERMEDIATE RATER (Last, First, MI) | SSN | SIGNATURE | DATE |
|---|---|---|---|
| | | | |
| GRADE, BRANCH, ORGANIZATION, DUTY ASSIGNMENT | | | DATE |
| | | | |

| 3. NAME OF SENIOR RATER (Last, First, MI) | SSN | SIGNATURE | DATE |
|---|---|---|---|
| KENT, CHARLES E. | | *Charles E. Kent* | 2 FEB 89 |
| GRADE, BRANCH, ORGANIZATION, DUTY ASSIGNMENT | | | |
| COL, MI, HQ FORSCOM, DEPUTY J2 | | | |

| 4. SIGNATURE OF RATED OFFICER | DATE | 5. DATE ENTERED ON DA FORM 21 | 6. RATER OFFICER | 7. SR INTG INITIALS | 8. NO. OF ENCL |
|---|---|---|---|---|---|
| *Lawrence Epstein* | 2 Feb 89 | | | | |

**PART III – DUTY DESCRIPTION** (Rater)

| 1. PRINCIPAL DUTY TITLE | 2. SI/MOS |
|---|---|
| SENIOR INTELLIGENCE EVALUATOR | 36B00 |

3. REFER TO PART IIIb, DA FORM 67-8-1

Assigned as Senior Intelligence Evaluator under the J2, Joint Exercise Control Group (JECG), Exercise BRIM FROST 89 (BF89) from 15 January to 2 February 1989. Responsible for evaluating the capabilities of Joint Task Force-Alaska (JTF-AK), J2 to gather and disseminate information, to provide Human (HUMINT), Signal (SIGINT), and Electronic (ELINT) intelligence support to deployed forces, and to exchange intelligence products with local, state, and national agencies.

**PART IV – PERFORMANCE EVALUATION – PROFESSIONALISM** (Rater)

a. PROFESSIONAL COMPETENCE

|  | HIGH DEGREE | | LOW DEGREE |
|---|---|---|---|
|  | 1  2 | 3 | 4  5 |
| 1. Possesses capacity to acquire knowledge/grasp concepts | | | 1 |
| 2. Demonstrates appropriate knowledge and expertise in assigned tasks | | | 1 |
| 3. Maintains appropriate level of physical fitness   8811 PASS | | | 1 |
| 4. Motivates, challenges and develops subordinates | | | 1 |
| 5. Performs under physical and mental stress | | | 1 |
| 6. Encourages candor and frankness in subordinates | | | 1 |
| 7. Clear and concise in written communications | | | 1 |
| 8. Displays sound judgment | | | 1 |
| 9. Seeks self improvement | | | 1 |
| 10. Is adaptable to changing situations | | | 1 |
| 11. Sets and enforces high standards | | | 1 |
| 12. Possesses military bearing and appearance   71/180 YES | | | 1 |
| 13. Supports EO/EEO | | | 1 |
| 14. Clear and concise in oral communications | | | 1 |

b. PROFESSIONAL ETHICS (Comment on any area where the rated officer's performance is outstanding or deficient or needs improvement)

1. DEDICATION
2. RESPONSIBILITY
3. LOYALTY
4. DISCIPLINE
5. INTEGRITY
6. MORAL COURAGE
7. SELFLESSNESS
8. MORAL STANDARD

b1. Officer takes responsibility to teach as well as to lead, using his training and experience to guide younger officers and soldiers in the intelligence system.

b2. Aggressively seeks responsibility.

1 0 FEB

11 FEB

DA FORM 67-8    REPLACES DA FORM 67-7, 1 JAN 73 WHICH WILL BE USED    OFFICER EVALUATION REPORT

A TRUE COPY PREPARED (6 JAN 90) AUTHORIZED ONLY FOR A. PERSON'S OFFICIAL MILITARY PERSONNEL FILE. OFFICER REC. BR

2430 STM.O H.C.

PERIOD COVERED  890115-890202

PART V - PERFORMANCE AND POTENTIAL EVALUATION (Rater)

RATED OFFICER'S NAME  LAWRENCE S. EPSTEIN

RATED OFFICER IS ASSIGNED IN ONE OF HIS/HER DESIGNATED SPECIALTIES, SSI?  ☒ YES  ☐ NO

PERFORMANCE DURING THIS RATING PERIOD. REFER TO PART IV, DA FORM 67-8 AND PART III, IV, V, AND VI, DA FORM 67-8-1

☐ ALWAYS EXCEEDED REQUIREMENTS  ☐ USUALLY EXCEEDED REQUIREMENTS  ☒ MET REQUIREMENTS  ☐ OFTEN FAILED REQUIREMENTS  ☐ USUALLY FAILED REQUIREMENTS

COMMENT ON SPECIFIC ASPECTS OF THE PERFORMANCE. REFER TO PART III, DA FORM 67-8 AND PART IV, DA FORM 67-8-1. DO NOT USE FOR COMMENTS (RATER/RATED)

Major Epstein performed his duties as Senior Intelligence Evaluator for exercise BRIM FROST 89 in an outstanding manner. He represented the J2, Joint Exercise Control Group at both Joint Task Force-Alaska J2 and the 6th Infantry Division (Light), reviewing their procedures for receiving, processing and disseminating intelligence information. He offered his advice and guidance to inexperienced staff personnel whenever he observed weaknesses or inefficiencies in procedure, and he managed to do so in ways that earned the gratitude and respect of Joint Task Force-Alaska and 6th Division intelligence staffs. Major Epstein provided daily reports on his observations to the J2, Joint Exercise Control Group, submitted written reports to the Joint Universal Lessons Learned System, and helped to guide the efforts of other intelligence evaluators of less rank and experience. Major Epstein's performance throughout was thoroughly professional.

THIS OFFICER'S POTENTIAL FOR PROMOTION TO THE NEXT HIGHER GRADE IS:

☒ PROMOTE AHEAD OF CONTEMPORARIES  ☐ PROMOTE WITH CONTEMPORARIES  ☐ DO NOT PROMOTE  ☐ OTHER (EXPLAIN IN B)

COMMENT ON POTENTIAL

Major Epstein is a highly educated individual with extensive professional intelligence training and excellent potential for higher responsibilities in his field. He should be promoted and considered for resident attendance at the Army War College.

PART VI - INTERMEDIATE RATER

COMMENTS

PART VII - SENIOR RATER

POTENTIAL EVALUATION (See Chapter 4, 67-8-1)

SR  CMC 231
RO: MAJ
EPSTE

SR:  COL
KERT

POTE  500223
ROTE  8902
CI  851203-
RATED  11

COMPLETE THIS REPORT AND CONSIDERED IN MY EVALUATION AND REVIEW  ☒ YES  ☐ NO

Outstanding performance as Senior Intelligence Evaluator during Joint Readiness Exercise BRIM FROST 89. He superbly managed the evaluation of all intelligence collection disciplines by monitoring the flow of intelligence information to Joint Task Force-Alaska (JTF-AK). Additionally he supervised the review, validation and approval of all imagery intelligence supporting the Exercise Master Scenario Events List, earning special recognition from the J2 JTF-AK. His conscientious management of intelligence messages and his imaginative responses to player units contributed to an accurate simulation of the battlefield intelligence process. Extremely intelligent and highly competent Intelligence Officer who ranks with the best. Maj Epstein was a real asset to the organization. He will perform well at the Joint Staff level. Promote and send to the War College.

00091

*H.24/23.11-55-81 9-11*

*15005-22*

SEE PRIVACY ACT STATEMENT
ON DA FORM 67-8-1

**THE OMPF**
**FILE OMPF . 732 1PRE0**    5

**PART I – ADMINISTRATIVE DATA**

| a. LAST NAME - FIRST NAME - MIDDLE INITIAL | | | b. SSN | c. GRADE | d. DATE OF RANK | e. BR | f. DESIGNATED SPECIALTIES | g. PMOS | h. ETS CODE |
|---|---|---|---|---|---|---|---|---|---|
| EPSTEIN, Lawrence S. | | | | MAJ | 82 06 04 | MI | 36B | |

i. UNIT, ORGANIZATION, STATION, ZIP CODE OR APO, MAJOR COMMAND
ARPERCEN, 9700 Page Blvd, St. Louis, MO 63132-5200
6ITAAS, Ft Huachuca, AZ 85613-0569

| j. REASON FOR SUBMISSION | | k. COMD CODE |
|---|---|---|
| 12A  REFRAUT | | 9C (6) |

| l. PERIOD COVERED | | | | m. NO. OF MONTHS | n. MILPO CODE | o. RATED OFFICER COPY (Check one and date) | p. FORWARDING ADDRESS |
|---|---|---|---|---|---|---|---|
| FROM | | THRU | | 20 dys | | 1. GIVEN TO OFFICER | |
| Year | Month | Day | Year | Month | Day | | X. FORWARDED TO OFFICER | |
| 87 | 06 | 28 | 87 | 07 | 17 | | 21 Jul 1987 | |

q. EXPLANATION OF NONRATED PERIODS

**PART II – AUTHENTICATION** (Rated officer Signature verifies PART I data and RATING OFFICIALS ONLY)

a. NAME OF RATER (Last, First, MI)
WEST, Stephan A.

| | SSN | SIGNATURE | |
|---|---|---|---|

GRADE, BRANCH, ORGANIZATION, DUTY ASSIGNMENT
LTC, MI, 6ITAAS, Ft Huachuca, AZ  Course Manager

| DATE |
|---|
| 17 July 87 |

b. NAME OF INTERMEDIATE RATER (Last, First, MI)

| | SSN | SIGNATURE | DATE |
|---|---|---|---|

GRADE, BRANCH, ORGANIZATION, DUTY ASSIGNMENT

c. NAME OF SENIOR RATER (Last, First, MI)
COMBEST, Ronald E.

| | SSN | SIGNATURE | |
|---|---|---|---|

GRADE, BRANCH, ORGANIZATION, DUTY ASSIGNMENT
COL, MI, 6ITAAS, Ft Huachuca, AZ  Commandant

| DATE |
|---|
| 17 Jul 87 |

| d. SIGNATURE OF RATED OFFICER | DATE 14 July 87 | e. DATE ENTERED ON DA FORM 2-1 | f. RATED OFFICER MPO INITIALS | g. SR/MPO INITIALS | h. NO. OF INCLS |
|---|---|---|---|---|---|

**PART III – DUTY DESCRIPTION** (Rater)

c. PRINCIPAL DUTY TITLE  OIC Airland Battle Exercise (ALBEX)    b. SSI/MOS  35F

c. REFER TO PART IIIc, DA FORM 67-8-1

Manage, formulate and prepare exercise materials for the MI Officer Advanced Course (MIOAC),
Air Land Battle Exercise (ALBEX). Manage and provide training opportunities for students to
apply tactical and strategic intelligence procedures and techniques with emphasis on the
Combat Electronic Warfare Intelligence (CEWI) mission, functions, assets and tasking proce-
dures. Manage and supervise the planning, organization, review and update of tactical and
strategic intelligence incidents, reports, and lesson and references. Rehearse and wargame
the exercise scenario. Serve as officer-in-charge of the ALBEX, Division Commander, monitor
student progress and write evaluations as required. Supervise all ALBEX controllers.

**PART IV – PERFORMANCE EVALUATION – PROFESSIONALISM** (Rater)

a. PROFESSIONAL COMPETENCE  (In items 1 through 7 below, indicate the degree of agreement with the following statements or being derivative of the rated officer. Any comments will be referring to in b below.)

HIGH DEGREE   LOW DEGREE
1  2  3  4  5

| | 1 | | | |
|---|---|---|---|---|
| 1. Possesses capacity to acquire knowledge/grasp concepts | 1 | 8. Displays sound judgment | 1 |
| 2. Demonstrates appropriate knowledge and expertise in assigned tasks | 1 | 9. Seeks self-improvement | 1 |
| 3. Maintains appropriate level of physical fitness | 1 | 10. Is adaptable to changing situations | 1 |
| 4. Motivates, challenges and develops subordinates | 1 | 11. Sets and enforces high standards | 1 |
| 5. Performs under physical and mental stress | 1 | 12. Possesses military bearing and appearance  71/180 YES | 1 |
| 6. Encourages candor and frankness in subordinates | 1 | 13. Supports EQUEEO | 1 |
| 7. Clear and concise in written communication | 1 | 14. Clear and concise in oral communication | 1 |

b. PROFESSIONAL ETHICS (Comment on any way where the rated officer is particularly understanding or needs improvement)

1. DEDICATION
2. RESPONSIBILITY
3. LOYALTY
4. DISCIPLINE
5. INTEGRITY
6. MORAL COURAGE
7. SELFLESSNESS
8. MORAL STAND-ARDS

a.1. – As a confident experienced field grade officer, shared information with
both subordinates & students which thoroughly enhanced the learning experience.
a.2. Exemplary demonstration of initiative, energy, and perseverance to acquire
knowledge and successfully stage the ALBEX. a.3. Exempt from APFT requirements
IAW Ft. Huachuca requirement to acclimate to altitude and climate for 30 days
prior to testing. a.4. Created an environment where students & subordinates we-
re continually challenged to perform on their optimum level. b.1. Uniquely com-
mendable devotion to duty, the 6ITAAS mission, and the graduation of qualified
MI officers. b.3. Resolute in his devotion to mission and the US Army.

DA FORM 67-8
1 SEP 78    REPLACES DA FORM 67-7, 1 JAN 73, WHICH IS OBSOLETE NOV 78.    US ARMY OFFICER EVALUATION REPORT

00092

H-2422 (150-81 GH)

PERIOD COVERED 870628-870717

PART V – PERFORMANCE AND POTENTIAL EVALUATION (Rate)

a. RATED OFFICER'S NAME  EPSTEIN, Lawrence S.

RATED OFFICER IS ASSIGNED IN ONE OF HIS/HER DESIGNATED SPECIALTIES/MOS   [X] YES   [ ] NO

b. PERFORMANCE DURING THIS RATING PERIOD. REFER TO PART III, DA FORM 67-8 AND PART III-I, II, AND III, DA FORM 67-8-1

| [X] ALWAYS EXCEEDED REQUIREMENTS | [ ] USUALLY EXCEEDED REQUIREMENTS | [ ] MET REQUIREMENTS | [ ] OFTEN FAILED REQUIREMENTS | [ ] USUALLY FAILED REQUIREMENTS |

c. COMMENT ON SPECIFIC ASPECTS OF THE PERFORMANCE. REFER TO PART IV, DA FORM 67-8 AND PART IV a, b, AND c, DA FORM 67-8-1. DO NOT USE FOR COMMENTS ON POTENTIAL)

MAJ Epstein as the ALBEX Team Chief, coordinated all of his responsibilities with profession-
alism, determination and competence. He is aggressive and devoted to duty and needs of the
U.S. Army. He strives to perfect his activities and demands high performance from subordinates
He perceives the need to produce qualified MI officers who can function as competent staff to
line line commanders. His drive for this goal is unswerving and is reflected in the intensity
and resolve which is an inspiration to peers and subordinates.

d. THIS OFFICER'S POTENTIAL FOR PROMOTION TO THE NEXT HIGHER GRADE IS

| [X] PROMOTE AHEAD OF CONTEMPORARIES | [ ] PROMOTE WITH CONTEMPORARIES | [ ] DO NOT PROMOTE | [ ] OTHER (Explain below) |

e. COMMENT ON POTENTIAL

MAJ Epstein should be considered for command of a Military Intelligence unit or a division/
corps staff position.

PART VI – INTERMEDIATE RATER

a. COMMENTS

PART VII – SENIOR RATER

a. POTENTIAL EVALUATION (See Chapter 4, AR 623-105)

| SR | CMC 232 | | b. COMMENTS |
|---|---|---|---|
| [X] RO: MAJ | | 002 | MAJ Epstein is resourceful, resolute, and aggressive. He seized |
| EPSTE | | 013 | his assignment as the ALBEX Team Chief to demonstrate the full |
| | | 010 | capabilities to superiors. Working with the smallest ratio of |
| SR: COL | | 000 | faculty to students since program inception, students were chal- |
| COMBE | | 000 | lenged and the ALBEX was conducted in the highest standards of |
| | | | the U.S. Army. General Walker (DSCINT/FORSCOM) visited the ex- |
| DATE 870923 | | 000 | ercise and commented very favorably on its conduct. |
| | | 000 | |
| 101 851203 | | 000 | |
| RATED 025 | | 000 | |

A COMPLETED DA FORM 67-8-1 WAS RECEIVED WITH THIS REPORT AND CONSIDERED IN MY EVALUATION AND REVIEW    [X] YES   [ ] NO (Explain in b.)

U.S. GOVERNMENT PRINTING OFFICE : 1985 O – 489-156

00093

#75  5/8/87 RW

15005-22

SEE PRIVACY ACT STATEMENT
ON DA FORM 67-8-1

FILL OMPE 7126 PREO

5

**PART I — ADMINISTRATIVE DATA**

| a. LAST NAME - FIRST NAME - MIDDLE INITIAL | b. GRADE | c. DATE OF RANK | d. SSN | f. REASON FOR SUBMISSION |
|---|---|---|---|---|
| EPSTEIN, LAWRENCE D. | MAJ | 82 07 25 | MI 56B | |

Year Month Day   51030

c. UNIT, ORGANIZATION, STATION, ZIP CODE or APO, MAJOR COMMAND: US Army Special
Security Group, AHS, Arlington, VA. 22212  ARPERCEN  12A  REFRADT  9C  AS-1

| m. NO. OF MONTHS | n. NELPO CODE | o. RATED OFFICER COPY (Check one and date) | p. FORWARDING ADDRESS |
|---|---|---|---|
| 19 days | ASO1 | ☐ 1. GIVEN TO OFFICER ☐ 2. FORWARDED TO OFFICER | |

i. PERIOD COVERED
FROM  Year 86  Month 12  Day 01
THRU  Year 86  Month 12  Day 19

e. EXPLANATION OF NONRATED PERIODS

**PART II — AUTHENTICATION** (Rated officer signature verifies PART I data and RATED OFFICIALS ONLY)

a. NAME OF RATER (Last, First, MI): MCCARTHY, STEPHEN F.
SIGNATURE
GRADE, BRANCH, ORGANIZATION, DUTY ASSIGNMENT: MAJ, MI, US Army Special Security Group, Adjutant
DATE  12 Jan 87

b. NAME OF INTERMEDIATE RATER (Last, First, MI):
SIGNATURE
GRADE, BRANCH, ORGANIZATION, DUTY ASSIGNMENT
DATE

c. NAME OF SENIOR RATER (Last, First, MI): WATERMAN, ARLEIGH D.
SIGNATURE
GRADE, BRANCH, ORGANIZATION, DUTY ASSIGNMENT: COL, MI, US Army Special Security Group, Commander
DATE  27 Jan 87

d. SIGNATURE OF RATED OFFICER
DATE  19 Dec 86

e. DATE ENTERED ON F. RATED OFFICER DA FORM 2-1 MPO INITIALS

g. SR MPO INITIALS  h. NO. OF INCL

**PART III — DUTY DESCRIPTION** (Rater)

a. PRINCIPAL DUTY TITLE: Special Project Officer
a. SSI/MOS: 36B

b. REFER TO PART IIb, DA FORM 67-8-1

Special Project Officer of a command designated MI Group consisting of 7 Battalion
Level subordinate commands and 82 detachments deployed worldwide to provide Sensitive
Compartmented Information (SCI) support to various Joint and Army Commands and US
Diplomatic Missions. Organized and implemented the Individual Mobilization Program
responsible for training and supporting 217 personnel key to the organization of the
wartime and emergency mobilization mission of USASSG.

**PART IV — PERFORMANCE EVALUATION — PROFESSIONALISM** (Rater)

a. PROFESSIONAL COMPETENCE (In Items 1 through 14 below, indicate the degree of agreement with the following statements or below description of the rated officer. Any comments will be reflected in b below.)

| | HIGH DEGREE | | LOW DEGREE |
|---|---|---|---|
| | 1  2 | 3 | 4  5 |
| 1. Possesses capacity to acquire knowledge/grasp concepts | | | 1 |
| 2. Demonstrates appropriate knowledge and expertise in assigned tasks | | | 1 |
| 3. Maintains appropriate level of physical fitness  PASS 8603 | | | 1 |
| 4. Motivates, challenges and develops subordinates | | | 1 |
| 5. Performs under physical and mental stress | | | 1 |
| 6. Encourages candor and frankness in subordinates | | | 1 |
| 7. Clear and concise in written communication | | | 1 |
| 8. Displays sound judgment | | | 1 |
| 9. Seeks self-improvement | | | 1 |
| 10. Is adaptable to changing situations | | | 1 |
| 11. Sets/had enforces high standards | | | 1 |
| 12. Possesses military bearing and appearance  71/186  YES | | | |
| 13. Supports EO/EEO | | | 1 |
| 14. Clear and concise in oral communications | | | 1 |

b. PROFESSIONAL ETHICS (Comment in any area where the rated officer is particularly problem-free or needs improvement.)

1. DEDICATION
2. RESPONSIBILITY
3. LOYALTY
4. DISCIPLINE
5. INTEGRITY
6. MORAL COURAGE
7. SELF-LESSNESS
8. MORAL STANDARDS

a.1.  Quickly grasped the missions and needs of the organization.
      Initiated effective solutions and sound recommendations.
a.7&14.  Articulate in both oral and written communications.
b.1&3.  Highest sense of loyalty and duty; totally mission oriented.

DA FORM 67-8  REPLACES DA FORM 67-7, 1 JAN 73, WHICH IS OBSOLETE, 1 NOV 79,  US ARMY OFFICER EVALUATION REPORT
0 7 MAY 1987

0 3 FEB 1987

00094

#75  5/d/87 RSW

PERIOD COVERED 851201 - 861219

**PART V — PERFORMANCE AND POTENTIAL EVALUATION (Rater)**

a. RATED OFFICER'S NAME  EPSTEIN, Lawrence D.

RATED OFFICER IS ASSIGNED IS ONE OF HIS/HER DESIGNATED SPECIALTIES/MOS

b. PERFORMANCE DURING THIS RATING PERIOD. REFER TO PART III, DA FORM 67—8 AND PART IN A, B, AND d, DA FORM 67—8—1

| ALWAYS EXCEEDED REQUIREMENTS | USUALLY EXCEEDED REQUIREMENTS | MET MOST REQUIREMENTS | OFTEN FAILED REQUIREMENTS | USUALLY FAILED REQUIREMENTS |

c. COMMENT ON SPECIFIC ASPECTS OF THE PERFORMANCE. REFER TO PART III, DA FORM 67—8 AND PART IN A, B, AND c, DA FORM 67—8—1. DO NOT USE FOR COMMENTS ON POTENTIAL

MAJ Epstein's duty performance was the most outstanding of any IMA I have worked with or supervised during my 15 years of service. Working from very general guidance, MAJ Epstein did a complete assessment of the IMA program of this organization, identified problem areas and provided effective solutions. During a 3 week period, he completed a comprehensive SOP for the management of IMA personnel, established training priori- ties and scheduling of IMA's for FY 87 and initiated an information bulletin for IMA's assigned to this organization. His thorough understanding of the systemic IMA program. His knowledge and effectiveness were quickly recognized by other members of the staff and resulted in his quick acceptance as a fully contributing member of this command. I cannot think of a higher accolade for any IMA. Candid and articulate, he gets the job done quickly and effectively. A true professional and significant asset to this organization.

d. THIS OFFICER'S POTENTIAL FOR PROMOTION TO THE NEXT HIGHER GRADE IS

| X | PROMOTE AHEAD OF CONTEMPORARIES | | PROMOTE WITH CONTEMPORARIES | | DO NOT PROMOTE | | OTHER (Explain below) |

e. COMMENT ON POTENTIAL

Will serve with distinction as a LTC. Assignments should be closely monitored to take full advantage of his significant knowledge and management abilities at MACOM or Army level.

**PART VI — INTERMEDIATE RATER**

a. COMMENTS

**PART VII — SENIOR RATER**

a. POTENTIAL EVALUATION (See Chapter 4, AR 623-105)

| | DA |
|---|---|
| CMC 232 | |
| X RO: MAJ | 023* |
| EPSTE | 003 |
| | 000 |
| SR: COL | 000 |
| WATER | 000 |
| DATE 870505 | 000 |
| | 000 |
| | 000 |
| RATED 026 | 000 |

A COMPLETE THIS REPORT AND CONSIDERED IN MY EVALUATION AND REVIEW

| X | YES | | NO (Explain in b) |

b. COMMENTS  The first IMA officer in over 2 years to be awarded a decoration by this command for excellence. MAJ Epstein is a thoroughly professional, goal oriented per- former who achieves results. During his tour he quickly gained the confidence of myself and my staff. His quick grasp of the mission requirements and his positive actions and recommendations have and will tangibly improve our IMA program. His knowledge of Automation Data Pro- cessing equipment and application proved invaluable in planning our new automation system within the headquarters. His assignments should be carefully monitored to take full advantage of his many and multifaceted talents. Promote to O-5 ahead of contemporaries. Send to Senior Service School as soon as possible. Assign to the most challeng- ing and toughest duties - he will excel.

* U.S. GOVERNMENT PRINTING OFFICE 1986—442-622/67099

00095

963  3-5-86  MD

1500522

SEE PRIVACY ACT STATEMENT
ON DA FORM 67-8-1

**PART I — ADMINISTRATIVE DATA**

a. LAST NAME - FIRST NAME - MIDDLE INITIAL

EPSTEIN, LAWRENCE S.

MAJ 82 06 04 MI 36    21128

USAR CON CO HO "C" ST LOUIS MO 63132-3200
G2, 101ABNDIV(AASLT) FT CAMPBELL, KY 42223-5000

REASON FOR SUBMISSION
12A1  REFRADT    AC FC1

PERIOD COVERED

| | FROM | | THRU | | | NO. OF MONTHS | NON-RATED CODE | RATED OFFICER COPY (Check one and date) | FORWARDING ADDRESS |
| Year | Month | Day | Year | Month | Day | | | | |
| 85 | 09 | 22 | 85 | 10 | 05 | 1 | FS24 | 1. GIVEN TO OFFICER / X 2. FORWARDED TO OFFICER  22 OCT 85 | |

EXPLANATION OF NONRATED PERIODS

**PART II — AUTHENTICATION** (Rated officer signature verifies PART I data and RATING OFFICIALS ON I-7)

b. NAME OF RATER (Last, First, MI)

SWEET, W.A.                          SIGNATURE  WA Sweet

GRADE, BRANCH, ORGANIZATION, DUTY ASSIGNMENT

LTC, MI, HHC 101ST ABN DIV (AASLT)          G2    DATE  15 Oct 85

c. NAME OF INTERMEDIATE RATER (Last, First, MI)          SIGNATURE

GRADE, BRANCH, ORGANIZATION, DUTY ASSIGNMENT          DATE

d. NAME OF SENIOR RATER (Last, First, MI)

MOORE, W. BRUCE                      SIGNATURE  Bruce Moore

GRADE, BRANCH, ORGANIZATION, DUTY ASSIGNMENT

COL, IN, HHC 101st ABN DIV (AASLT) FTCKY    CofS    DATE  18 Oct 85

e. SIGNATURE OF RATED OFFICER  Lawrence S Epstein    DATE 7 Oct 85  f. DATE ENTERED ON DA FORM 2-1    g. RATED OFFICER INITIALS    h. NO. OF INCL  0

**PART III — DUTY DESCRIPTION** (Rater)

a. PRINCIPAL DUTY TITLE

Project Officer                          b. SSI/MOS  35A00

c. REFER TO PART IIIc, DA FORM 67-8-1

d.                       Served as OPFOR Commander in division level command post exercise. Responsible for tactical operation of land, sea and air forces including all combined arms assets in an extended combat simulation. Responsible for the organization and training of subordinate commanders of all opposing force units in both OPFOR doctrine and conduct of the simulation. Responsible for overall supervision of twelve officers and two noncommissioned officers acting as opposing force players.

**PART IV — PERFORMANCE EVALUATION — PROFESSIONALISM** (Rater)

a. PROFESSIONAL COMPETENCE (In items 1 through 14 below, indicate the degree of agreement with the following statements by being descriptive of the rated officer. Any comments will be referenced to c below.)

HIGH DEGREE          LOW DEGREE
1  2  3  4  5

| | | | |
|---|---|---|---|
| 1. Possesses capacity to acquire knowledge/grasp concepts | 1 | 8. Displays sound judgment | 1 |
| 2. Demonstrates appropriate knowledge and expertise in assigned tasks | 1 | 9. Seeks self-improvement | 1 |
| 3. Maintains appropriate level of physical fitness  PASS 8510 | 1 | 10. Is adaptable to changing situations | 1 |
| 4. Motivates, challenges and develops subordinates | 1 | 11. Sets and enforces high standards | 1 |
| 5. Performs under physical and mental stress | 1 | 12. Possesses military bearing and appearance  73/201 YES | 1 |
| 6. Encourages candor and frankness in subordinates | 1 | 13. Supports EO/EEO | 1 |
| 7. Clear and concise in written communication | 1 | 14. Clear and concise in oral communication | 1 |

b. PROFESSIONAL ETHICS (Comment on any area where the rated officer is particularly outstanding or needs improvement)

1. DEDICATION
2. RESPONSIBILITY
3. LOYALTY
4. DISCIPLINE
5. INTEGRITY
6. MORAL COURAGE
7. SELFLESSNESS
8. MORAL STANDARDS

a1. One of the most intelligent officers I have ever encountered.
a6. A very strong trait.
b1. Absolutely dedicated.
b5. An officer of unquestionable integrity.

DA FORM 67—8  1 SEP 79          REPLACES DA FORM 67-7, 1 JAN 73, WHICH IS OBSOLETE, 1 NOV 79.          US ARMY OFFICER EVALUATION REPORT

FEB 24 1986

NOV 5 1985

00096



963   3-5-86   MD

PERIOD COVERED: 850922-851005

PART V — PERFORMANCE AND POTENTIAL EVALUATION (Rater)

a. RATED OFFICER'S NAME  EPSTEIN, LAWRENCE S.

RATED OFFICER IS ASSIGNED IN ONE OF HIS/HER DESIGNATED SPECIALTIES/MOS  [X] YES  [ ] NO  SSN

b. PERFORMANCE DURING THIS RATING PERIOD. REFER TO PART III, DA FORM 67-8 AND PART III a, b, AND c, DA FORM 67-8-1

| [X] ALWAYS EXCEEDED REQUIREMENTS | [ ] USUALLY EXCEEDED REQUIREMENTS | [ ] MET REQUIREMENTS | [ ] OFTEN FAILED REQUIREMENTS | [ ] USUALLY FAILED REQUIREMENTS |

c. COMMENT ON SPECIFIC ASPECTS OF THE PERFORMANCE. REFER TO PART IV, DA FORM 67-8 AND PART III a, b, AND c, DA FORM 67-8-1. DO NOT USE FOR COMMENTS ON POTENTIAL.

MAJ Epstein made himself absolutely indispensable in his role as opposing forces commander. He took all possible steps to insure that opposing forces operations were realistic and fully in accord with appropriate doctrine. He was especially outstanding in his knowledge of the capabilities and limitations of enemy equipment, often acting as an expert resource for the exercise directors. MAJ Epstein quickly took complete charge of the administration aspects of OPFOR support, assuming responsibility for supervision of the reserve component and active duty personnel assigned to the OPFOR section. His performance in this additional capacity was first-rate and was an invaluable aid to the division personnel who otherwise would have been tasked with these additional duties. MAJ Epstein epitomizes the very best of the reserve components and would be welcome to serve in this division at any time in peace or war. His overall performance was so superior that the intelligence staff of this division intends to make his participation a part of all future exercises of this nature.

d. THIS OFFICER'S POTENTIAL FOR PROMOTION TO THE NEXT HIGHER GRADE IS:

| [X] PROMOTE AHEAD OF CONTEMPORARIES | [ ] PROMOTE WITH CONTEMPORARIES | [ ] DO NOT PROMOTE | [ ] OTHER (Explain below) |

e. COMMENT ON POTENTIAL

MAJ Epstein has clearly demonstrated his potential for both staff and command at all levels and should be scheduled for advanced military education at the earliest opportunity. Recommend he be scheduled for air assault training at once.

PART VI — INTERMEDIATE RATER

a. COMMENTS

PART VII — SENIOR RATER

a. POTENTIAL EVALUATION (See Chapter 4, AR 623-105) | b. COMMENTS

| SR | CMC 232 | |
| RO: MAJ | | 000 |
| [X] EPSTE | | 003* |
| | 022 | |
| SR: COL | | 000 |
| MOORE | | 000 |

MAJ Epstein's performance was outstanding in all respects and fully the equal of his regular army contemporaries. His tactical expertise and intelligence professionalism added immeasurably to the success of this exercise and were in no small part responsible for its very successful outcome. He demonstrated the full spectrum of military skills and abilities expected of not only an intelligence officer but of a combined arms commander. He acted as a resource for all personnel involved in this exercise and was a most welcome addition to the staff officers of the division.

| DATE 851211 | | 000 |
| | | 000 |
| 101 851203 | | 000 |
| RATED 025 | | 000 |

c. COMPLETED DA FORM 67-8-1 WAS RECEIVED WITH THIS REPORT AND CONSIDERED IN MY EVALUATION AND REVIEW  [X] YES  [ ] NO (Explain in b)

*U.S. G.P.O. 1982-368-371

00097

HL221 9-1285 AB

FILE OMPF 522 1 PAE-E 15005-22

**SEE PRIVACY ACT STATEMENT ON DA FORM 67-8-1**

**PART I — ADMINISTRATIVE DATA**

| a. LAST NAME - FIRST NAME - MIDDLE INITIAL | b. SSN | c. GRADE | d. DATE OF RANK | e. SR | g. DESIGNATED PMOS/PMOS | h. ETA CODE |
|---|---|---|---|---|---|---|
| EPSTEIN, LAWRENCE S. | | MAJ | 82 06 04 | MI | 36 | 21128 |

| i. UNIT, ORGANIZATION, STATION, ZIP CODE OR APO, MAJOR COMMAND | | j. REASON FOR SUBMISSION | k. COMD CODE |
|---|---|---|---|
| USAR CON GP (AE) ST LOUIS MO 63132-5200 | | 124J Refradt | 9C FC |
| G2 Ft Campbell KY 42223-5000 FORSCOM | | | |

| PERIOD COVERED | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| FROM | | | THRU | | | No. OF | RATED | | |
| Year 85 | Month 04 | Day 01 | Year 85 | Month 04 | Day 12 | FY24 | | | |

Explanation for nonrated periods · GIVEN TO OFFICER · FORWARDED TO OFFICER 10 Jun 85 · FORWARDING ADDRESS

**PART II — AUTHENTICATION**

| a. NAME OF RATER | | SIGNATURE | |
|---|---|---|---|
| SWEET, W. A. | | W R Sweet | |
| GRADE, BRANCH, ORGANIZATION, DUTY ASSIGNMENT | | | DATE |
| LTC, HHC 101st ABN DIV (AASLT) FTCKY 42223-5000 ACofS G2 | | | 13 Apr 85 |

| b. NAME OF INTERMEDIATE RATER | | SIGNATURE | |
|---|---|---|---|
| | | | DATE |
| GRADE, BRANCH, ORGANIZATION, DUTY ASSIGNMENT | | | |

| c. NAME OF SENIOR RATER | | SIGNATURE | |
|---|---|---|---|
| BOLT, WILLIAM J. | | Will J Bolt | |
| GRADE, BRANCH, ORGANIZATION, DUTY ASSIGNMENT | | | DATE |
| COL, HHC 101st ABN DIV (AASLT) FTCKY 42223-5000 CofS G3 | | | 15 Apr 85 |

| d. SIGNATURE OF RATED OFFICER | DATE | e. DATE ENTERED ON DA FORM 2-1 | f. RATED OFFICER SPD INITIALS | g. SR MPO INITIALS | h. NO. OF ENCL |
|---|---|---|---|---|---|
| Lawrence Epstein | 6 Apr 85 | | | | 0 |

**PART III — DUTY DESCRIPTION**

| a. REFER TO PART III, DA FORM 67-8-1 | b. PMOS 36A00 |
|---|---|

c. PRINCIPAL DUTY TITLE
Opposing Forces CDR

d. SIGNIFICANT DUTIES AND RESPONSIBILITIES
Served as Opposing Forces Commander in a division level CPX, exercising an actual contingency plan during Eagle Talon IV. As OPFOR Commander he was responsible for the operations of four motorized rifle divisions, an airborne division and an air assault brigade opposing the 101st Airborne Division and other US elements. His specific duties included the realistic maneuver of these units and all of their doctrinaire assets (including Frontal Aviation) so as to accomplish the exercise, test and evaluation of US units, systems and procedures. In addition he was expected to act as an intelligence trainer, instructing exercise personnel on OPFOR capabilities and limitations.

**PART IV — PERFORMANCE EVALUATION — PROFESSIONALISM**

a. PROFESSIONAL COMPETENCE

| | | HIGH DEGREE | | LOW DEGREE | |
|---|---|---|---|---|---|
| | | 1 | 2 | 3 | 4 |
| 1. Possesses capacity to acquire knowledge/grasp concepts | 8. Displays sound judgment | | | | |
| 2. Demonstrates appropriate knowledge and expertise in assigned tasks | 9. Seeks self improvement | | | | |
| 3. Maintains appropriate level of physical fitness PASS 85 04 | 10. Is adaptable to changing situations | | | | |
| 4. Motivates, challenges and develops subordinates | 11. Sets and enforces high standards | | | | |
| 5. Performs under physical and mental stress | 12. Possesses military bearing and appearance 71/178 YES | | | | |
| 6. Encourages candor and frankness in subordinates | 13. Supports EO/EEO | | | | |
| 7. Clear and concise in written communication | 14. Clear and concise in oral communication | | | | |

b. PROFESSIONAL ETHICS

1. DEDICATION
2. RESPONSIBILITY
3. LOYALTY
4. DISCIPLINE
5. INTEGRITY
6. MORAL COURAGE
7. SELFLESSNESS
8. MORAL EVANG- APDS

a. 2. Displayed a wide and thorough professional knowledge of intelligence operations.
a. 10. Clearly demonstrated a superior ability to master new and constantly changing situations.
b. 1. A completely dedicated officer.
b. 4. Set the example in self-discipline for his subordinates.

AUG 1 1985

DA FORM 67-8

US ARMY OFFICER EVALUATION REPORT

AUG 19 1985

00098



#L?1 9-17-85 AB

C4

PERSON COVERED: EDWARD JOSEPH

PART III - PERFORMANCE AND POTENTIAL EVALUATION

RATED OFFICER'S NAME: EPSTEIN, AMBROCK J.

**PERFORMANCE DURING THIS RATING PERIOD.**

During this two week period MAJ Epstein performed extraordinarily well, supervising, training and leading a staff of eighteen officers to simulate in a most realistic and effective manner, the operations of an OPFOR Combined Arms Army with all it supporting assets and services. Because of MAJ Epstein's thoroughgoing expertise and leadership ability he was able to quickly produce a disciplined, efficient force which met all its training goals and was to a large degree responsible for the success of the exercise. His dedication and professional ability were absolutely undisputed and earned him the respect of not only his own staff and subordinates but that of ARFOR players as well.

**THIS OFFICER'S POTENTIAL FOR PROMOTION TO THE NEXT HIGHER GRADE IS**

Clearly capable of superior performance at division and corps staff levels. Should be given command as soon as possible and groomed for increasingly responsible positions. Qualified for attendance at senior service schools.

**PART IV - INTERMEDIATE RATER**

**PART VII - SENIOR RATER**

CMC 232
AOI: MAU
EPSTF
SR COMM
ROB
DATE: 850808
AOI: 850710
RATED 004

MAJ Epstein's performance while on active duty was outstanding in all respects and set the standard for all other reserve personnel. He showed both leadership and technical expertise of the finest quality. His presence was of enormous benefit in the conduct of the CPX and the professional training of intelligence personnel. He is an officer of vast potential and would be welcome as a part of this division and a member of my staff at any time and without reservation. He is a credit to the United States Army and the Individual Ready Reserve.

U.S. GOVERNMENT PRINTING OFFICE : 1983

00099

#234 5-23-85 AB

15.005.22

FILE OMPF

FILE OMPF 504.7 PAE

SEE PRIVACY ACT STATEMENT ON DA FORM 67-8-1

01

## PART I — ADMINISTRATIVE DATA

| a. LAST NAME — FIRST NAME — MIDDLE INITIAL | | b. SSN | c. GRADE | d. DATE OF RANK | e. DESIGNATED SPECIALTIES | f. RACE/NON ETH CODE |
|---|---|---|---|---|---|---|
| EPSTEIN, LAWRENCE S. | | | MAJ | 82 06 04 | MI 36 | 71128 |

| g. UNIT, ORGANIZATION, STATION, ZIP CODE OR APO, MAJOR COMMAND | h. REASON FOR SUBMISSION | i. COMD CODE |
|---|---|---|
| USAR CON GP (REF) St Louis MO 63132 | 12A I Refradt | FC |
| G2–Ft Campbell KY 42223-5000  FORSCOM | | 9 C |

| j. PERIOD COVERED 2days | k. NO. OF MONTHS | l. NO. RO | m. RATED OFFICER COPY (Check one and date) | n. FORWARDING ADDRESS |
|---|---|---|---|---|
| FROM / THRU | | | WHEN TO OFFICER / FORWARDING TO OFFICER | |
| Year Month Day / Year Month Day | 3 | FS2A | 10 Jan 85 | |
| 84 10 29 / 84 11 09 | | | | |

o. EXPLANATION OF NONRATED PERIODS

## PART II — AUTHENTICATION (Rated officer signature verifies PART I data and RATER OFFICIALS ONLY)

| a. NAME OF RATER (Last, First, MI) | SIGNATURE | |
|---|---|---|
| SHEET, W. A | W A Sheet | |
| GRADE, BRANCH, ORGANIZATION, DUTY ASSIGNMENT | | DATE |
| LTC, MI, HHC 101st Abn Div (AASLT) Ft Campbell KY 42223-5000  ACofS, G2/DSEC | 6 Dec 84 |

| b. NAME OF INTERMEDIATE RATER (Last, First, MI) | | |
|---|---|---|
| GRADE, BRANCH, ORGANIZATION, DUTY ASSIGNMENT | | DATE |

| c. NAME OF SENIOR RATER (Last, First, MI) | SIGNATURE | |
|---|---|---|
| CUNNINGHAM, FRANK III | Frank Cunningham | |
| GRADE, BRANCH, ORGANIZATION, DUTY ASSIGNMENT | | DATE |
| COL, CO AD, Eagle Support Bde, FtCKY 42223-5000  BDE CDR | 8 Dec 84 |

| d. SIGNATURE OF RATED OFFICER | e. DATE | f. DATE ENTERED ON DA FORM 67-8 | g. RATED OFFICER COPY | h. SR NCO INITIALS | i. NO. OF ENC |
|---|---|---|---|---|---|
| Lawrence Epstein | 9/Jan 85 | | W-7 | | 0 |

## PART III — DUTY DESCRIPTION

| a. PRINCIPAL DUTY TITLE | b. SSI/ASI |
|---|---|
| Operational Maneuver Gp Cdr | 36A00 |

c. REFER TO PART III, DA FORM 67-8-1

Served as OPFOR commander during EAGLE TALON III, an exercise testing actual 101st Abn Div (AASLT) contingency plans. Responsibilities included employment of simulated Soviet forces according to sound doctrine, coordinating all tactical maneuvers with lateral, subordinate and higher echelon opposing forces controllers. Trained less experienced OPFOR participants in OPFOR tactics and helped trained 101st officers in OPFOR tactics and countermeasures.

## PART IV — PERFORMANCE EVALUATION – PROFESSIONALISM (Rater)

| a. PROFESSIONAL COMPETENCE (By items 1 through 14 below, indicate the degree of agreement with the following statement as below) | HIGH DEGREE | | LOW DEGREE | |
|---|---|---|---|---|
| | 1 | 2 | 3 | 4 |
| 1. Possesses capacity to acquire knowledge/grasp concepts | 1 | | | |
| 2. Demonstrates appropriate knowledge and expertise in assigned tasks | 1 | | | |
| 3. Maintains appropriate level of physical fitness  PASS 8410 | 1 | | | |
| 4. Motivates, challenges and develops subordinates | 1 | | | |
| 5. Performs under physical and mental stress | 1 | | | |
| 6. Encourages candor and frankness in subordinates | 1 | | | |
| 7. Clear and concise in written communication | 1 | | | |
| 8. Displays sound judgment | 1 | | | |
| 9. Seeks self improvement | 1 | | | |
| 10. Is adaptable to changing situations | 1 | | | |
| 11. Sets and enforces high standards | 1 | | | |
| 12. Possesses military bearing and appearance  71/178  YES | 1 | | | |
| 13. Supports EO/EEO | 1 | | | |
| 14. Clear and concise in oral communication | 1 | | | |

b. PROFESSIONAL ETHICS (Comment on any areas where the rated officer is particularly outstanding or needs improvement)

1. DEDICATION
2. RESPONSIBILITY
3. LOYALTY
4. DISCIPLINE
5. INTEGRITY
6. MORAL COURAGE
7. SELFLESSNESS
8. MORAL STANDARDS

a.2.  Clearly an acknowledged expert in OPFOR operations and tactics.
a.4.  Consistently challenges and motivates all who work with and for him.
a.10.  Demonstrated abundant capacity to adapt to fluid tactical situations and changing administrative requirements.
b.1.  Completely dedicated to the provision of realistic, professional training.
b.6.  Consistently exhibits moral courage in the seeking and accepting of responsibilities.

DA FORM 67-8    REPLACES DA FORM 67-7, 1 JAN 73, WHICH IS OBSOLETE, 1 NOV 73    US ARMY OFFICER EVALUATION REPORT

MAR 18 1985

JAN 1 8 1985



*1230   11-27-84   90*

B13 3

**FILE OMPF 4248 PAE-E**

SEE PRIVACY ACT STATEMENT
ON DA FORM 67-8-1    1500522

**PART I — ADMINISTRATIVE DATA**

| 1. LAST NAME - FIRST NAME - MIDDLE INITIAL | | | | | | |
|---|---|---|---|---|---|---|
| EPSTEIN, LAWRENCE S. | | MAJ | 82 | 06 | 04 | 35A |

ATCH, 5043d USAR School    asgn: ARPERCEN
6600 W. Russell, Sioux Falls SD 57104

REFRAT   9A

| PERIOD COVERED | | | | |
|---|---|---|---|---|
| FROM | | THRU | | |
| 84 | 07 01 | 84 | 07 20 | 20 days |

GIVEN TO OFFICER 20 Jul 1984

4. EXPLANATION OF NONRATED PERIOD

**PART II — AUTHENTICATION**

NAME OF RATER
JAMES, LANGLEY B.    SIGNATURE *Langley B. James*

MAJ, MI, 5043d USAR School, Assistant Phase VI Coordinator    20 July 84

NAME OF INTERMEDIATE RATER

NAME OF SENIOR RATER
BALLENGER, WILLIAM A.    SIGNATURE *William A. Ballenger*

COL, AR, 5043d USAR School, Commandant    30 Jul 1984

SIGNATURE OF RATED OFFICER    DATE    11 Jul 84   20 Jul 84

**PART III — DUTY DESCRIPTION**

5. PRINCIPAL DUTY TITLE    Phase VI Instructor    35A54

6. REFER TO PART IIIb, DA FORM 67-8-1    Teaches the Military Intelligence Officer Advanced Course (MIOAC) designed to prepare active Army, Reserve and National Guard officers for command or staff positions, with specific emphasis on service unique to the MI branch including duty with combat electronic warfare and intelligence units, (CEWI), G2, and S2 staff positions. Responsibilities include: (1) effectively teaching the prescribed MI branch program of instruction (POI) to insure comprehensive student acquisition of skills and knowledge; (2) preparation of training aids; (3) organization of lessons; (4) use of sound methods of instruction. Uses lecture, conference, and demonstration teaching, group training exercises as well as individual instruction. Evaluates student proficiency.

**PART IV — PERFORMANCE EVALUATION - PROFESSIONALISM**

a. PROFESSIONAL COMPETENCE

| | HIGH DEGREE | | | | | LOW DEGREE |
|---|---|---|---|---|---|---|
| 1. Possesses capacity to acquire knowledge/grasp concepts | 1 | | | | | |
| 2. Demonstrates appropriate knowledge and expertise in assigned tasks | 1 | | | | | |
| 3. Maintains appropriate level of physical fitness | 1 | | | | | |
| 4. Motivates, challenges and develops subordinates | 1 | | | | | |
| 5. Performs under physical and mental stress | 1 | | | | | |
| 6. Encourages candor and frankness in subordinates | 1 | | | | | |
| 7. Clear and concise in written communication | 1 | | | | | |
| 8. Displays sound judgment | | | | | | 1 |
| 9. Seeks self improvement | | | | | | 1 |
| 10. Is adaptable to changing situations | | | | | | 1 |
| 11. Sets and enforces high standards | | | | | | 1 |
| 12. Possesses military bearing and appearance | 71/177 YES | | | | | 1 |
| 13. Supports EEO/EEO | | | | | | 1 |
| 14. Clear and concise in oral communication | | | | | | 1 |

b. PROFESSIONAL ETHICS

| 1. DEDICATION | Para b (1), (2), (5) |
|---|---|
| 2. RESPONSIBILITY | MAJ Epstein demonstrated dedication and responsibility on a sustained |
| 3. LOYALTY | basis throughout the preparation and execution of the INTEL AIR/LAND |
| 4. DISCIPLINE | Battle Exercise by his unstinting professional efforts with the students |
| 5. INTEGRITY | and his outstanding organization of the floor controller team. |
| 6. MORAL COURAGE | |
| 7. SELFLESSNESS | APFT not administered because of Ft. Huachuca 30-day minimum |
| 8. MORAL STANDARDS | acclimatization requirement. |

AUG 6 1984

DA FORM 67-8

#1230   11-27-84   90

B-14

**PERIOD COVERED:** 840701-840720

PART V — PERFORMANCE AND POTENTIAL EVALUATION (Rater)

**RATED OFFICER'S NAME:** Lawrence S. Epstein

RATED OFFICER IS ASSIGNED IN ONE OF HIS/HER DESIGNATED SPECIALTIES/MOS: [ ] YES  [ ] NO

**COMMENT ON SPECIFIC ASPECTS OF THE PERFORMANCE:**
MAJ Epstein discharged all his assigned duties during the INTEL AIR/LAND Battle Exercise (ALBE) phase of MIOAC in a most outstanding manner. For example, his organization and motivation of his floor controller team and his contributions to all aspects of the ALBEX were outstanding. He presented a most outstanding briefing to all the students on their mission and responsibilities as players in the ALBEX. The briefing was logical, thoroughly researched, comprehensive and presented with poise, intelligence and authority. Subsequently, MAJ Epstein performed his duties as chief floor controller in a highly conscientious and dedicated manner, much to the benefit of the student players. His careful, detailed, and responsive work with the students greatly enriched the whole ALBEX experience for them. Additionally, MAJ Epstein performed student evaluations during the ALBEX efficiently and comprehensively. He reflected excellence on both himself and the USAR School. MAJ Epstein's performance was always exemplary and thoroughly professional.

**THIS OFFICER'S POTENTIAL:**
[X] PROMOTE AHEAD OF CONTEMPORARIES

This officer has demonstrated the professional skills and personality appropriate for future assignment as a battalion commander and for duty as a staff officer at brigade or division level. MAJ Epstein should also be considered for senior (MIOC) schooling ahead of his contemporaries.

PART VI — INTERMEDIATE RATER

**COMMENTS:**

PART VII — SENIOR RATER

**POTENTIAL EVALUATION:**

| SR | | |
|---|---|---|
| RO: MAJ | 000 | |
| EPSTE | 001* | |
| | 001. | |
| SR: COL | 000 | |
| BALLE | 000 | |
| DATE 840829 | 000 | |
| | 000 | |
| RATED 002 | 000 | |

**COMMENTS:** MAJ Epstein is a very knowledgeable instructor who also has the selflessness and integrity required to work with students and subordinates in such a manner that they perform to the very best of their abilities. Clearly, he had prepared and organized himself and his floor controller team in an outstanding manner. During the ALBEX he demonstrated an exemplary loyalty to the needs and questions of the students, tempered with the appropriate discipline, so that each student was given the best opportunity possible to learn from the exercise experience. MAJ Epstein is a highly dedicated officer and is a tremendous asset to the USAR program.

00103

*94   1  7-19-84    JP

15005-22  FILE OMPF 4177 PAE-E

B11   3

SEE PRIVACY ACT STATEMENT ON DA FORM 67-8-1

**PART I — ADMINISTRATIVE DATA**

| a. LAST NAME - FIRST NAME - MIDDLE INITIAL | b. SSN | c. GRADE | d. DATE OF RANK | e. PMOS | f. DESIGNATED PMOS/SQI | g. ETA CODE |
|---|---|---|---|---|---|---|
| EPSTEIN, LAWRENCE S. | | MAJ | 82 06 01 MI | 36 | | 21128 |

UNIT, ORGANIZATION, STATION, ZIP CODE OR APO, MAJOR COMMAND
USAR GCN CF Inst... G2 Ft Campbell Ky 42223   FORSCOM

| | REASON FOR SUBMISSION | | i. CODE |
|---|---|---|---|
| | 12A | REFRADT | 9 C | FC/ |

| j. PERIOD COVERED 14days | | k. NO. OF MONTHS | l. NO. OF DAYS | m. RATED OFFICER COPY (Check one and date) | n. FORWARDING ADDRESS |
|---|---|---|---|---|---|

| FROM | | THRU | | | FS24 |
|---|---|---|---|---|---|
| Year | Month | Day | Year | Month | Day |
| 84 | 02 | 06 | 84 | 02 | 19 |

X GIVEN TO OFFICER
□ FORWARDED TO OFFICER  21 May 84

4. EXPLANATION OF NONRATED PERIODS

**PART II — AUTHENTICATION** (Rated officer signature verifies PART I data and RATING OFFICIALS ONLY)

| a. NAME OF RATER (Last, First, MI) | SSN | SIGNATURE | DATE |
|---|---|---|---|
| McNEIL, JAMES W. | | James W. McNeil | |

GRADE, BRANCH, ORGANIZATION, DUTY ASSIGNMENT
MAJ(P) MI HHC 101STABNDIV (AASLT)   Dep G2   1Mar84

| b. NAME OF INTERMEDIATE RATER (Last, First, MI) | SSN | SIGNATURE | DATE |
|---|---|---|---|

GRADE, BRANCH, ORGANIZATION, DUTY ASSIGNMENT

| c. NAME OF SENIOR RATER (Last, First, MI) | SSN | SIGNATURE | DATE |
|---|---|---|---|
| WASSOM, HERBERT M. | | HM Wassom | 5Mar84 |

GRADE, BRANCH, ORGANIZATION, DUTY ASSIGNMENT
COL FA HHC 101st Airborne Division (Air Assault)   CofS

| d. SIGNATURE OF RATED OFFICER | DATE | e. RATE ENTERED ON DA FORM 94 | f. RATED OFFICER INFO IN PART IV | g. DA 982 INITIALS | h. NO. OF ENCL |
|---|---|---|---|---|---|
| Lawrence S Epstein | 12 Mar 84 | | | JP | 0 |

**PART III — DUTY DESCRIPTION** (Rater)

| a. PRINCIPAL DUTY TITLE | b. SSI/MOS |
|---|---|
| Intel Staff Off | 35A00 |

c. REFER TO PART IIIb, DA FORM 67-8-1
Served as an opposing forces commander in the exercise of an actual contingency plan during GOLDEN VICTORY III. Specific responsibilities included the employment of assigned forces according to sound doctrine, scripting intelligence reports to establish maneuvers within which those forces would be deployed, and coordinating all tactical Also functioned as an intelligence trainer to all exercise participants in the areas of threat doctrine and tactics, and opposing forces weapons capabilities, limitations and employment.

**PART IV — PERFORMANCE EVALUATION — PROFESSIONALISM** (Rater)

| a. PROFESSIONAL COMPETENCE (In items 1 through 14 below, indicate the degree of agreement with the following statement or best description of the rated officer. Any comments will be reflected in b below.) | | HIGH DEGREE | | | LOW DEGREE | |
|---|---|---|---|---|---|---|
| | | 1 | 2 | 3 | 4 | 5 |
| 1. Possesses capacity to acquire knowledge/grasp concepts | 1 | 8. Displays sound judgment | | | | |
| 2. Demonstrates appropriate knowledge and expertise in assigned tasks | 1 | 9. Seeks self-improvement | | | | 1 |
| 3. Maintains appropriate level of physical fitness PASS 8402 | 1 | 10. Is adaptable to changing situations | | | | 1 |
| 4. Motivates, challenges and develops subordinates | 1 | 11. Sets and enforces high standards | | | | 1 |
| 5. Performs under physical and mental stress | 1 | 12. Possesses military bearing and appearance 71/176 YES | | | | 1 |
| 6. Encourages candor and frankness in subordinates | 1 | 13. Supports EO/EEO | | | | 1 |
| 7. Clear and concise in written communication | 1 | 14. Clear and concise in oral communication | | | | 1 |

b. PROFESSIONAL ETHICS (Comment on any area where the rated officer is particularly outstanding or needs improvement)

| | |
|---|---|
| 1. DEDICATION 2. RESPONSIBILITY 3. LOYALTY 4. DISCIPLINE 5. INTEGRITY 6. MORAL COURAGE 7. SELFLESSNESS 8. MORAL STANDARDS | a.1.  Far beyond his contemporaries; masters new subjects with ease. a.4.  Dedicated to development of subordinates; personally trained seven personnel in First Battle rules and artillery or aviation tactics and doctrine. a.10.  Flexibility is his forte; exceptional ability to organize resources toward mission accomplishment. b.1.2.  A true professional. |

MAR 29 1984

| DA FORM 67-8 1 SEP 79 | REPLACES DA FORM 67-7, 7 JUN 74, WHICH IS OBSOLETE, 1 NOV 74 | US ARMY OFFICER EVALUATION REPORT |
|---|---|---|

JUN 2 0 1984

00104

#94   7-17-84   JA

B12

**PERIOD COVERED** 840206 - 840219

PART V — PERFORMANCE AND POTENTIAL EVALUATION (Rater)

a. RATED OFFICER'S NAME  EPSTEIN, LAWRENCE S.

b. RATED OFFICER AS ASSIGNED IN ONE OF HIS/HER DESIGNATED SPECIALTIES/MOS?  ☑ YES ☐ NO

c. PERFORMANCE DURING THIS RATING PERIOD. REFER TO PART III, DA FORM 67-8 AND PART III, E, AND c, DA FORM 67-8-1

☑ ALWAYS EXCEEDED REQUIREMENTS  ☐ USUALLY EXCEEDED REQUIREMENTS  ☐ MET REQUIREMENTS  ☐ OFTEN FAILED REQUIREMENTS  ☐ USUALLY FAILED REQUIREMENTS

d. COMMENT ON SPECIFIC ASPECTS OF THE PERFORMANCE. REFER TO PART III, DA FORM 67-8 AND PART III, E, AND d, DA FORM 67-8-1. DO NOT USE FOR COMMENTS ON POTENTIAL

During this two week assignment as an intell staff officer, MAJ Epstein served as an augmentee to the Office of the ACofS, G2/DSEC, 101st Airborne Division (AASLT). In that capacity, he worked as an artillery commander and as commander of tactical aviation within a 24 man opposing forces (OPFOR) cell established to drive a First Battle-based, 24th Infantry Division command post exercise. He personally trained seven subordinate personnel in the employment and integration of artillery and aviation assets in support of three OPFOR division commanders. He consistently demonstrated keen professionalism, exemplary military bearing, absolute commitment to the success of the OPFOR cell's mission and a broad knowledge of OPFOR tactics and doctrine. MAJ Epstein established a realistic threat scenario against which the 24 Infantry Division's command and control mechanism could be fully tested. Through careful integration of available OPFOR artillery and tactical air resources into the scheme of maneuver, he trained all exercise participants in the doctrinal composition and disposition of enemy forces, and challenged the 24th Infantry Division to fight in multiple directions. The efforts of the entire OPFOR cell were lauded by the Commander, 24th Infantry Division, as the best, most realistic and professional he had ever witnessed. MAJ Epstein's personal initiatives were most instrumental in this success.

e. THIS OFFICER'S POTENTIAL FOR PROMOTION TO THE NEXT HIGHER GRADE IS

☑ PROMOTE AHEAD OF CONTEMPORARIES  ☐ PROMOTE WITH CONTEMPORARIES  ☐ DO NOT PROMOTE  ☐ OTHER (Explain below)

f. COMMENT ON POTENTIAL
Continued utilization as an OPFOR commander in First Battle exercises would ensure excellent training for regular Army officers. Would make an excellent staff officer at Division/Corps echelons. Select for command ahead of contemporaries.

PART VI — INTERMEDIATE RATER

a. COMMENTS

PART VII — SENIOR RATER

a. POTENTIAL EVALUATION (See Chapter 4, AR 623-105)

| SR | | DA |
|---|---|---|
| X | RO: MAJ | .000 |
| | EPSTE | .000 |
| | SR: COL | .000 |
| | WASSO | .000 |
| | DATE: 840623 | .000 |
| | | .000 |
| | 101 840401 | .000 |
| | RATED: 004 | .000 |

b. COMMENTS
MAJ Epstein's performance was outstanding in every respect. His ability was demonstrated by his performance during a CPX involving elements of two Divisions. As an OPFOR commander, he quickly became the focal point around whom the other members functioned. He worked closely with all Division Staff Sections which resulted in improved staff coordination and mission accomplishment. He faced varied tasks and assignments to include briefing senior officers and directing operations, accomplishing all of them in an outstanding manner. I highly recommend his future assignments be closely monitored for responsible positions and early promotion.

c. COMPL. THIS REPORT AND CONSIDERED IN MY EVALUATION AND REVIEW  ☑ YES  ☐ NO (Explain below)

☆ U.S. G.P.O. 1982-366-171

P1

2432 12/3/92 "C

A-7

PART I - ADMINISTRATIVE DATA

EPSTEIN, Lawrence F.                    CPT  75 00 03  MI  38X3  36B

339th MI CO, 555 E. 238th St., Bronx NY 10470              Annual  UIC:WWJGA    1A

AT/ADT 30.                    820715

51 02 31 82 01 MI  12.

**PART II - AUTHENTICATION**

DUCHNOWSKI, Lawrence                                      2 MAR 82

CPT MI USAR Platoon Leader    339 MI CO

ROSWELL, Kenneth R.                      339th MI CO      7 Feb 82

MAJ MI USAR Commanding Officer                7 Feb 82   7 Feb 82

**PART III - UNIT DESCRIPTION**                              36B

Platoon Leader

As 3rd Plt leader in this MI collection company, CPT Epstein has perform
ed in an exemplary manner. This plt continues to be the most effective and
ready to react to mobilization. This is evidenced by the number of plt mem
bers chosen to participate in an CONUS exercise with the active
component. Officer completed the Area Studies Officer Course and is
unit Alcohol and Drug Control Officer, an important SMEDA function. He
maintains a high state of physical fitness and is committed to support of
the army EEO program. He is always available to aid subordinates.

**PART IV - PERFORMANCE EVALUATION - PROFESSIONALISM**

In a unit with a changing training emphasis, this officer
serves as an example to others by his dedication and
loyalty to the Army Reserve Program (part4A1, Part4B3&4)

24 FEB 1982

2433  12/3.92   H C

A-8

PERIOD COVERED  810305 thru 820210

RATED OFFICER'S NAME  EPSTEIN, Lawrence S.

PART V - PERFORMANCE AND POTENTIAL EVALUATION

| ALWAYS EXCEEDED REQUIREMENTS | USUALLY EXCEEDED REQUIREMENTS | MET REQUIREMENTS | OFTEN FAILED REQUIREMENTS | USUALLY FAILED REQUIREMENTS |
|---|---|---|---|---|
| X | | | | |

This officer uses his knowledge and experience to the best advantage
as regards this unit's mission. His concern for the individuals
under his supervision has resulted in successful motivation of his
platoon personnel. He is highly capable and would be an asset in a
staff or planning assignment.

attended 48 of 48 drills

| PROMOTE AHEAD OF CONTEMPORARIES | PROMOTE WITH CONTEMPORARIES | DO NOT PROMOTE | OTHER (explain below) |
|---|---|---|---|
| X | | | |

CPT Epstein continues to perform in an outstanding manner. He was
senior officer at s-unit AT in absence of the CO due to this unit's
split AT schedule and he ably completed the mission and administrative
tasks.

PART VII - INTERMEDIATE RATER

PART VIII - SENIOR RATER

| X | | CPT Epstein's performance of his duties and supervision of his subordinates has been commendable in every repect. |

#75-8-31-79 U. W.

FILE COPY 9131 RMP-E

COPY

POSTED

**EPSTEIN, Lawrence Steven**    CPT    75 08 03    NA

Co G 826 MI Bn, (FA) 555 E 238th St Bx, NY 10470  (76 TNG DIV)    1A

| YEAR | MONTH | DAY | YEAR | MONTH | DAY | | | | |
|------|-------|-----|------|-------|-----|---|---|---|---|
| 78 | 02 | 01 | 79 | 01 | 31 | | Annual | | 2 Freq Obs |

d. Principal Duty Title  Platoon Leader    9666/9668    NA

a. RATER

| | | YES | NEEDS IMPROVEMENT |
|---|---|---|---|
| 1. Has this officer demonstrated moral and character strength? | | X | |
| 2. Did this officer demonstrate technical competence appropriate to his grade and branch? | | X | |
| 3. Did this officer state, as appropriate, his honest opinions and convictions? (Not a "yes man") | | X | |
| 4. Did this officer seek responsibility? | | X | |
| 5. Did this officer willingly accept full accountability for his actions and the actions of his subordinates? | | X | |
| 6. Is this officer emotionally stable under stress? | | X | |
| 7. Is this officer's judgment reliable? | | X | |
| 8. Did this officer maintain effective two-way communications with juniors, seniors, and peers? | | X | |
| 9. Did this officer demonstrate concern for the best interests of his subordinates? | | X | |
| 10. Did this officer contribute to the personal and professional development of his subordinates? | | X | |
| 11. Did this officer subordinate his personal interests and welfare to those of his organization and subordinates? | | X | |
| 12. Did this officer's personal conduct set the proper example for his subordinates? | | X | |
| 13. Was this officer innovative in his approach to his duties and responsibilities? | | X | |
| 14. Did this officer demonstrate a breadth of perspective and depth of understanding beyond the limit of his specific responsibilities? | | X | |
| 15. Did this officer keep himself physically fit? | | X | |
| 16. Did this officer fulfill his responsibilities concerning the Army's Equal Opportunity Program? | | X | |

DA FORM 67-7    US ARMY OFFICER EVALUATION REPORT

00108

#75-8-31-79.O.W

RATED OFFICER'S LAST NAME AND SSN **EPSTEIN** | 78 02 01 - 79 01 31 | PART IV - PERIOD COVERED (Read paragraph 5-4a, AR 623-105)

**a. RATER** (Complete each question in the space provided.)

1. What did this officer do best?

Platoon leader in MI Company

2. In what capacity or assignment do you believe this officer would make the greatest contribution to the Army?

MI Detachment, Commander or Staff Officer

**b. RATER AND INDORSER**    If I had full responsibility and authority, I would (place score in applicable box):

| | Promote this officer immediately | Promote this officer in the next higher grade ahead of his contemporaries | Promote this officer with his contemporaries | Promote this officer to the next higher grade behind his contemporaries | Not promote this officer |
|---|---|---|---|---|---|
| SCORE | 30 | 29 - 24 | 23 - 8 | 7 - 2 | 1 - 0 |
| RATER | | | | | |
| INDORSER | | | | | |

* You are required to also SPECIFY examples of Illustrations in Part VII to support this rating.

PART VI - COMMENTS (Read paragraph 4-5b, AR 623-105)

**a. RATER** Narrative evaluation is mandatory.

CPT Epstein demonstrates outstanding professional competency in the performance of his duties. This officer is hard working. He has the ability to handle any problem. The personnel under this officer's control have rated in a higher level of training than might have been possible under someone else's direction. He was Honor Graduate of the Tatical Intelligence Transition Course and completed Phase IA and II of MIQAC this year. During AT 1978 CPT Epstein was in charge of a large portion of the tatical phases of training

During the period covered by this report, CPT Epstein attended 50 of 50 regularly scheduled drills.

**b. INDORSER** Narrative evaluation is mandatory unless the provisions of paragraphs 3-12 and 4-4a, AR 623-105 apply.

This officer is extremely effective in the training and operations level. CPT Epstein is a young but mature individual. He is extremely effective in this units ETO program. CPT Epstein has committed many extra hours to bring the training level of his platoon to the highest possible level. He is one of this company's leading motivators.

PART VIII - REPORT SCORES | PART IX - AUTHENTICATION (Read paragraph 3-2, AR 623-105) | a. DATE (Less, First, MI)

| PART | RATER | INDORSER | a. SIGNATURE OF RATER | |
|---|---|---|---|---|
| V | 68* | 68* | MAJ MI USAR Co C, 826 MI Bn Platoon Leader | FITZGERALD, Edmund G Jr | DATE 79 01 31 |
| VI | 28 | 29 | b. SIGNATURE | MONAHAN, Patrick J | DATE |
| Sum | 96 | 97 | MAJ MI USAR Co C, 826 MI Bn Operations Officer | | DATE 79 01 31 |
| REPORT SCORE | 193 | | c. SIGNATURE OF REVIEWER | MCLAUGHLIN John P | DATE 79 01 31 |

LTC MI USAR Co C, 826 MI Bn Commander

00109

Kathy dslay 8/29/79 #76

25 SEP 1978

15-005-32

*For use of this form, see AR 623-105; proponent agency is US Army Military Personnel Center.*

Flle OMPF PMD-

**CODED**    **CODED**

PART I — PERSONAL AREA (Read paragraph 3-2a AR 623-105)

a. LAST NAME — FIRST NAME — MIDDLE INITIAL

EPSTEIN, Lawrence Steven

CPT  75 06 05  NY

b. UNIT, ORGANIZATION, STATION AND MAJOR COMMAND

Co C, 826 MI Bn (FA)555 E 238 st Bronx NY 10470 (76 TNG DIV)

PART II — TEMPORARY PERIOD AND DUTY DATA (Read paragraph 3-3b, AR 623-105)

| Period Covered | | | | | |
|---|---|---|---|---|---|
| FROM | | | THRU | | |
| YEAR | MONTH | DAY | YEAR | MONTH | DAY |
| 77 | 02 | 01 | 78 | 01 | 31 |

RATED DUTY DAYS
NON-RATED DUTY DAYS

Reason for Submitting Report
ANNUAL

Report Based On
RATED 2 Freq Obsn
INDORSER 2 Freq Obsn

PART III — DESCRIPTION OF DUTIES (Read paragraph 4-3a, AR 623-105)

a. Principal Duty Title  PLATOON LEADER

b. Duty MOS  9666/9668  Auth Grade  Maj

PART IV — PROFESSIONAL ATTRIBUTES (Read paragraph 4-3a, AR 623-105)

| | YES | THRESH IMPROVEMENT | |
|---|---|---|---|
| a. RATES  Complete each question. Explain "No" and "Needs Improvement" responses in Part VI b and, if necessary, Part VII. | | JOINT | PRIOR |
| 1. Has this officer demonstrated moral and character strength? | X | | |
| 2. Did this officer demonstrate technical competence appropriate to his grade and branch? | X | | |
| 3. Did this officer state, as appropriate, his honest opinions and convictions? (Not a "yes-man") | X | | |
| 4. Did this officer seek responsibility? | X | | |
| 5. Did this officer willingly accept full accountability for his actions and the actions of his subordinates? | X | | |
| 6. Is this officer emotionally stable under stress? | X | | |
| 7. Is this officer's judgment reliable? | X | | |
| 8. Did this officer maintain effective two-way communication with juniors, seniors, and peers? | X | | |
| 9. Did this officer demonstrate concern for the best interests of his subordinates? | X | | |
| 10. Did this officer contribute to the personal and professional development of his subordinates? | X | | |
| 11. Did this officer subordinate his personal interests and welfare to those of his organization and subordinates? | X | | |
| 12. Did this officer's personal conduct set the proper example for his subordinates? | X | | |
| 13. Was this officer innovative in his approach to his duties and responsibilities? | X | | |
| 14. Did this officer demonstrate a breadth of perspective and depth of understanding beyond the limit of his specific responsibilities? | X | | |
| 15. Did this officer keep himself physically fit? | X | | |
| 16. Did this officer fulfill his responsibilities concerning the Army's Equal Opportunity Program? | X | | |

b. RATER  Explanation(s)  Comment(s)

c. INDORSER  Remarks on above questions, if desired.  Comment(s)

PART V — PERFORMANCE AND POTENTIAL EVALUATION (Read paragraph 4-3f, AR 623-105)

RATER AND INDORSER  In my judgment, this officer's performance of duty was (place score in applicable box):

| SCORE | Outstanding 70-68 | Superior 67-62 | Excellent 56-34 | Effective 31-15 | Marginal 14-4 | Inadequate 3-0 |
|---|---|---|---|---|---|---|
| RATER | | 65 | | | | |
| INDORSER | | 67 | | | | |

* You are required to cite SPECIFIC examples or illustrations in Part VII to support this rating.

DA 1 JAN 67  67-7  REPLACES DA FORM 67-6, 1 JAN 68, WHICH IS OBSOLETE

US ARMY OFFICER EVALUATION REPORT

Kathy Gay 8/29/79 #76

**RATED OFFICER'S LAST NAME, SSN, AND PERIOD OF REPORT** EPSTEIN

a. RATER (Complete each question in the space provided.)

b. What did the officer best? **PLATOON LEADER**

Bb

c. In what capacity or assignment do you believe this officer would make the greatest contribution to the Army?

**Staff officer of a higher echelon MI Unit.**

d. RATER AND INDORSER    If I had full responsibility and authority, I would (place score in applicable box):

| | Promote this officer immediately | Promote this officer to the next higher grade ahead of his contemporaries | Promote this officer with his contemporaries | Promote this officer in the next higher grade well behind his contemporaries | Not promote this officer |
|---|---|---|---|---|---|
| RATER | 30 | 29-24 | 23-8 | 7-2 | 1-0 |
| | | **29** | | | |
| INDORSER | | **29** | | | |

a. RATER Narrative

Captain Epstein is a fully qualified Military Intelligence Officer. During the period covered by this report, he advanced his military education by attending Phase IV MIOAC at Ft Huachuca, AR and attended Tech and Tel course at Ft Bragg, NC. Captain Epstein has consistently proven himself to be an outstandingly versatile officer who has always optimistically carried out all assignments. A fine officer who should be encouraged to continue his career in the USAR.

During the period covered, CPT Epstein attended 50 of 50 regularly scheduled training assemblies.

b. INDORSER Narrative

This officer has proven himself to be knowledgeable in all facets of military intelligence operations. He has always exhibited leadership in the training of his platoon and has always shown a keen desire to helph the unit and the reserve program. A fine officer, CPT Epstein has advanced in civilian and military education and is currently a candidate for Masters of Fine Arts At City University of New York.

PART IV — REPORT SCORES

| PART | RATES | INDORSES | | TYPED NAME (Last, First, MI) | DATE |
|---|---|---|---|---|---|
| V | 65 | 62 | CPT MI USAR, 826 MI Bn, OPERATIONS OFFICER | WOODWORTH Michael | 780909 |
| VI | 65 | 29 | MAJ MI USAR, 826 MI Bn PLATOON LEADER | FITZGERALD Edmund | 780909 |
| Sum | 188 | 96 | | | |
| REPORT SCORE | 190 | | LTC MI USAR, 826 MI Bn, COMMANDER | MC LAUGHLIN, John P | 780909 |

1. With Indorser (V+VI)

2. Without Indorser (2V.a)

| a. DATE | b. RATED OFFICER COPY (Check) | c. INDORSEMENT AUTHORITY (Rated Officer) | d. DATE RECEIVED |
|---|---|---|---|
| 780909 | 1. Given to officer / 2. Forwarded to officer / 3. Forwarded to indorser / 4. Forwarded to indorsee | | 1. Given to officer / 2. Forwarded to officer / 3. Returned to MPO |

00111

#75   17 Nov 78   SC

16 JUN 1977

For use of this form, see AR 623-105, proponent agency is US Army Military Personnel Center.

**PART I — PERSONAL DATA** (Read paragraph 3-2a AR 623-105)

EPSTEIN,    LAWRENCE S.

UIC: SGWAAA

228th MI Det. (CI) Oakland CA 94626, 124th ARCOM, Sixth US Army, PSF CA 94129

**PART II — REPORTING PERIOD AND DUTY DATA** (Read paragraph 3-3b, AR 623-105)

| YEAR | MONTH | DAY | | | | |
|------|-------|-----|---|---|---|---|
| 76 | 08 | 04 | 77 | 03 | 06 | |

AT/ADT 22 days

Change in Duty

**PART III — DESCRIPTION OF DUTIES** (Read paragraph 4-3d, AR 623-105)

CI Resource Coordination Officer

Responsible for planning unit training and coordination with higher, lower, and adjacent units. Coordinates consolidation, analysis, and dissemination of intelligence reports.

**PART IV — PROFESSIONAL ATTRIBUTES** (Read paragraph 4-3e, AR 623-105)

| | | YES | NEEDS IMPROVEMENT | NO |
|---|---|---|---|---|
| 1. Has this officer demonstrated moral and character strength? | | | | |
| 2. Did this officer demonstrate technical competence appropriate to his grade and branch? | | | | |
| 3. Did this officer state, as appropriate, his honest opinions and convictions? | | | | |
| 4. Did this officer seek responsibility? | | | | |
| 5. Did this officer willingly accept full accountability for his actions and the actions of his subordinates? | | | | |
| 6. Is this officer emotionally stable under stress? | | | | |
| 7. Is this officer's judgment reliable? | | | | |
| 8. Did this officer maintain effective two-way communication with juniors, seniors, and peers? | | | | |
| 9. Did this officer demonstrate concern for the best interests of his subordinates? | | | | |
| 10. Did this officer contribute to the personal and professional development of his subordinates? | | | | |
| 11. Did this officer subordinate his personal interests and welfare to those of his organization and subordinates? | | | | |
| 12. Did this officer's personal conduct set the proper example for his subordinates? | | | | |
| 13. Was this officer innovative in his approach to his duties and responsibilities? | | | | |
| 14. Did this officer demonstrate a breadth of perspective and depth of understanding beyond the limit of his specific responsibilities? | | | | |
| 15. Did this officer keep himself physically fit? | | | | |
| 16. Did this officer fulfill his responsibilities concerning the Army's Equal Opportunity Program? | | | | |

**PART V — DEMONSTRATED PERFORMANCE OF PRESENT DUTY** (Read paragraph 4-3f, AR 623-105)

| SCORE | Outstanding 70 - 68 | Superior 67 - 57 | Excellent 56 - 36 | Effective 35 - 15 | Marginal 14 - 4 | Inadequate 3 - 0 |
|-------|---------------------|------------------|-------------------|-------------------|-----------------|------------------|
| RATER | | | | | | |
| INDORSER | | | | | | |

DA FORM 67-7, 1 JAN 73    REPLACES DA FORM 67-6, 1 JAN 68, WHICH IS OBSOLETE.

US ARMY OFFICER EVALUATION REPORT.

00112

#75.  14 Nov 78  SE

RATED OFFICER'S LAST NAME AND SSN    **EPSTEIN**

**PART VI — POTENTIAL**    [Read paragraph 6-2g, AR 623-105]

B-2

a. RATES [Complete each question in the space provided.]

1. What did the officer do best?

**Recruiting and Training Officer.**

2. In what capacity or assignment do you believe this officer would make the greatest contribution to the Army?

**MI Detachment, Commander or   ff Officer**

b. RATER AND INDORSER    If I had full responsibility and authority, I would (place score in applicable box):

| | Promote this officer immediately | Promote this officer to the next higher grade ahead of his contemporaries | Promote this officer with his contemporaries | Promote this officer to the next higher grade behind his contemporaries | Not promote this officer |
|---|---|---|---|---|---|
| SCORE | 30 | 29 – 24 | 23 – 8 | 7 – 2 | 1 – 0 |
| RATER | | | | | |
| INDORSER | | | | | |

* You are required to cite SPECIFIC examples or illustrations in Part VII to support this rating.

**PART VII — COMMENTS**    [Read paragraph 6-3, AR 623-105]

a. RATER    Narrative evaluation is mandatory.    Scheduled assemblies 16.  Assemblies attended 16.
CPT Epstein has demonstrated outstanding professional competency as a counter-intelligence officer.  He has contributed to this unit's success through motivation and leadership of agent personnel, recruiting new unit members, and attending retention school.  CPT Epstein committed many extra hours in support and organization of this unit.  As this units Training Officer CPT Epstein performed in a superior manner and was instrumental in establishing comprehensive individual training records, and developing a mission oriented unit training program.  CPT Epstein is recommended for advance military schooling and military intelligence command and staff assignments.

b. INDORSER    Narrative evaluation is mandatory unless the provisions of paragraphs 2-7b and 6-1g, AR 623-105 apply.
CPT Epstein is one of the hardest working, most dedicated and professional officers I have supervised in more than 16 years of service.  He is a mature, conscientious, intelligent and well educated young officer who willingly accomplishes any assigned task in an exemplary manner.  His value to the Army and to the Reserve Components will be even more enhanced by early attendance of the military intelligence officers advance course (on ADT if possible).  He is especially effective in the training/operations area.

**PART VII-A — REPORT SCORES**

**PART IX — AUTHENTICATION**    [Read paragraph 3-2b, AR 623-105]

| PART | RATER | INDORSER |
|---|---|---|
| V | 68 | 68 |
| VI | 28 | 29 |
| Sum | 96 | 97 |

a. SIGNATURE OF RATER    TYPED NAME (Last, First, MI)    SSN
**EKER, GIRGIL J.**    DATE 770304

GRADE, BRANCH, ORGANIZATION, DUTY ASSIGNMENT
CPT, MI, USAR, 228th MI (CI), Operations Officer/XO

b. SIGNATURE OF INDORSER    TYPED NAME (Last, First, MI)    SSN
**PIERCE, DANNY L.**    DATE 770304

GRADE, BRANCH, ORGANIZATION, DUTY ASSIGNMENT
LTC, MI, USAR, 228th MI Det (CI), Detachment Commander

REPORT SCORE    c. REVIEWER    MY REVIEW  ☑ INDICATES NO FURTHER ACTION  ☐ RESULTS OR ACTIONS STATED ON INCLOSURE(S)

SIGNATURE OF REVIEWER    TYPED NAME (Last, First, MI)    SSN
**HARPAINTER, ROBERT E.**    DATE 770304

1. With INDORSER (a+b)
2. Without INDORSER (2 × a)

GRADE, BRANCH, ORGANIZATION, DUTY ASSIGNMENT
COL, MP, USAR, Hq 221st MP Bde, Deputy Commander/Chief of Staff

**PART X — PERSONNEL OFFICER**    [Read paragraph 2-24, AR 623-105]

| d. DATE ENTERED ON DA FORM 66  770304 | e. RATED OFFICER'S COPY (Check one and date)  ☐ 1. Given to officer  ☒ 2. Forwarded to officer  770304  ☐ 3. Forwarded to indorser  ☐ 4. Forwarded to reviewer | f. FORWARDING ADDRESS (Rated Officer). | g. DATE RECEIVED    ☐ 1. Given to officer  ☐ 2. Forwarded to officer  ☒ 3. Returned to MPO |
|---|---|---|---|

00113

#75    14 Nov 78    SE

A.13

For use of this form, see AR 623–105;
the proponent agency is The Adjutant General's Office

PART I — PERSONAL DATA (Read paragraph 3-3a, AR 623–105)

a. LAST NAME — FIRST NAME — MIDDLE INITIAL ... N, Lawrence S.    70 12 04 MI MI NA

f. UNIT, ORGANIZATION, STATION AND MAJOR COMMAND

Hawaii CI Detachment, 500th MI Group  USARPAC, APO San Francisco  96558

PART II — REPORTING PERIOD AND DUTY BASIS (Read paragraph 3-3b, AR 623–105)

| a. Period Covered | | | | b. Reason for Submitting Report | | c. Report Based On |
|---|---|---|---|---|---|---|
| YEAR | MONTH | DAY | | | | |
| From 72 | 11 | 21 | | Change of rater | RATER R (daily; rcd & rept) |
| Thru 73 | 08 | 20 | | | ENDORSER 5 daily; rcd & rept |

d. EXPLANATION OF NONRATED DUTY DAYS AND/OR OTHER DATA (As Required)

PART III — DESCRIPTION OF DUTIES (Read paragraph 4-3b, AR 623–105)

a. Principal Duty Title  Team Chief, Honolulu Field Office    b. Duty MOS    c. Auth Grade

d. Special Career Program Position Designation  NA    e. Description

Supervises two Counterintelligence Special Agents engaged in conducting counterintelligence investigations; conducts interviews and records checks necessary to fulfill investigative requirements; prepares Agent Reports and reviews subordinates' Agent Reports for completeness and accuracy.

PART IV — PROFESSIONAL ATTRIBUTES (Read paragraph 4-3c, AR 623–105)

| a. RATER — Complete each question. Explain "No" and "Needs improvement" responses in Part IV b and, if necessary, Part VII. | | YES | NO |
|---|---|---|---|
| 1. Has this officer demonstrated moral and character strength? | 1 | X | |
| 2. Did this officer demonstrate technical competence appropriate to his grade and branch? | 2 | X | |
| 3. Did this officer state, as appropriate, his honest opinions and convictions? (Not a "yes man") | 3 | X | |
| 4. Did this officer seek responsibility? | 4 | X | |
| 5. Did this officer willingly accept full accountability for his actions and the actions of his subordinates? | 5 | X | |
| 6. Is this officer emotionally stable under stress? | 6 | X | |
| 7. Is this officer's judgment reliable? | 7 | X | |
| 8. Did this officer maintain effective two-way communication with juniors, seniors, and peers? | 8 | X | |
| 9. Did this officer demonstrate concern for the best interests of his subordinates? | 9 | X | |
| 10. Did this officer contribute to the personal and professional development of his subordinates? | 10 | X | |
| 11. Did this officer subordinate his personal interests and welfare to those of his organization and subordinates? | 11 | X | |
| 12. Did this officer's personal conduct set the proper example for his subordinates? | 12 | X | |
| 13. Was this officer innovative in his approach to his duties? | 13 | X | |
| 14. Did this officer demonstrate a breadth of perspective and depth of understanding beyond the limit of his specific responsibilities? | 14 | X | |
| 15. Did this officer keep himself physically fit? | 15 | X | |
| 16. Did this officer fulfill his responsibilities concerning the Army Equal Opportunity Program? | 16 | X | |

a. RATER  Explanation (Continued)  7

Lt Epstein did not personally set consistently high standards of personal appearance and required excessive guidance in this regard.

CPT FEB 76

r. ENDORSER  Remarks as above questions, if desired  Question(s)  9, 10, 11, 12
1LT Epstein's overall performance in regard to his subordinates was unduly influenced by his own predilection to self-interest.

RESERVE COMPONENTS SELECTION BOARD
SI BY AUG 75

PART V — DEMONSTRATED PERFORMANCE OF PRESENT DUTY (Read paragraph 4-3f, AR 623–105)

RATER AND ENDORSER  In my judgment, this officer's performance of duty was (place score in applicable box):

| | Outstanding 70—64 | Superior 63—37 | Excellent 36—16 | Effective 15—15 | Marginal 14—4 | Inadequate 3—0 |
|---|---|---|---|---|---|---|
| SCORE | | | | | | |
| RATER | | | | | | |
| INDORSER | | | | | | |

* You are required to cite SPECIFIC examples of Excellence in Part VII to support this rating.

DA FORM 67-7    REPLACES DA FORM 67-6, 1 JAN 68, WHICH IS OBSOLETE    US ARMY OFFICER EVALUATION REPORT

FIRST YEAR

#75    14 Nov 78    SG

RATED OFFICER'S LAST NAME AND INIT: **EPSTEIN,**

PART VI — POTENTIAL (Read paragraph 4-3g, AR 623-105)

A-14

**c. RATER** (Complete each question in the space provided.)

**1. What did this officer do best?**

Conducted counterintelligence investigations.

**2. In what capacity or assignment do you believe this officer would make the greatest contribution to the Army?**

Intelligence staff officer at Division level or lower.

**3. RATER AND INDORSER.** If I had full responsibility and authority, I would (place score in applicable box):

| Promote this officer immediately | Promote this officer to the next higher grade ahead of his contemporaries | Promote this officer with his contemporaries | Promote this officer to the next higher grade behind his contemporaries | Not promote this officer |
|---|---|---|---|---|
| 30 | 29—24 | 23—8 | 7—2 | 1—0 |

RATER

INDORSER

* You are required to cite SPECIFIC examples or illustrations in Part VII to support this rating.

PART VII — COMMENTS (Read paragraph 4-3h, AR 623-105)

**a. RATER** Narrative evaluation to remedy ...

ILT Epstein consistently sought new and challenging assignments to further his knowledge of counterintelligence operations. His complete dedication and loyalty were strong attributes which his contemporaries would do well to emulate. He accomplished all duties in an excellent manner and was particularly effective in his operational liaison efforts. During his off-duty time, ILT Epstein was an active member of the Big Brothers of Hawaii, Incorporated, which assists fatherless juveniles, and continued to further his education through LaSalle Extension courses.

**b. INDORSER** Narrative (evaluation is mandatory unless the provisions of paragraphs 2-3b and 4-4c, AR 623-105 apply). ILT Epstein is an intelligent, articulate officer who possesses significant potential. While he invariably responded to all challenges in a commendable manner, the general impression was that he did not truly extend himself. Admittedly, in a period of retrenchment with a changing mission, those challenges were not sufficient to fully tax his capabilities; however, he appears to be one who could have done more. The full scope of his potential was more evident in that which he did for himself rather than that which he did for the unit and the US Army. Given the proper conditions, it is felt that he could have performed in a superior manner, but that was not specifically demonstrated.

PART VIII — REPORT SCORES

PART IX — AUTHENTICATION (Read paragraph 2-8, AR 623-105)

| PART | RATER | INDORSER | | | |
|---|---|---|---|---|---|
| V | 40 | 30 | a. SIGNATURE OF RATER *Larry L. Branham* | TYPED NAME (Last, First, MI) BRANHAM, Larry L. | SSN |
| | | | GRADE, BRANCH, ORGANIZATION, DUTY ASSIGNMENT CPT, MI, Hawaii CI Det, APO SF 96558, Operations Officer | | DATE 25 FEB 93 |
| VI | 15 | | b. SIGNATURE OF INDORSER *Harry Tear* | TYPED NAME (Last, First, MI) TEAR, Harry R., Jr | SSN |
| Sum | 55 | 42 | GRADE, BRANCH, ORGANIZATION, DUTY ASSIGNMENT LTC, MI, Hawaii CI Det, APO SF 96558, Commander | | DATE 26 Feb 73 |
| REPORT SCORE | 97 | | c. REVIEWER MY REVIEW ☒ INDICATES NO FURTHER ACTION ☐ RESULTS IN ACTIONS STATED ON INCLOSURES *Alfred W. Bagot* | TYPED NAME (Last, First, MI) BAGOT, Alfred W. | SSN |
| 1. With INDORSER (v+b) 2. Without INDORSER (2f, a) | | | GRADE, BRANCH, ORGANIZATION, DUTY ASSIGNMENT COL, MI, HQ, 500th MI Gp, Commanding | | DATE 26 Apr 73 |

PART X — PERSONNEL OFFICER (Read paragraph 2-3i, AR 623-105)

| UNIT | | | |
|---|---|---|---|
| a. DATE ENTERED ON DA FORM 66 730339 APO INITIALS 131 | b. RATED OFFICER COPY (Check one and date): ☒ 1. Given to officer ☐ 2. Forwarded to officer 730426 ☐ 3. Forwarded to indorser ☐ 4. Forwarded to reviewer | c. FORWARDING ADDRESS (Rated Officer) | d. RATED OFFICER COPY: ☐ 1. Given to officer ☐ 2. Forwarded to officer ☐ 3. Returned to MPO e. DATE RECEIVED |

EPSTEIN
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

**DEPARTMENT OF THE ARMY**
U.S. TOTAL ARMY PERSONNEL COMMAND
ALEXANDRIA VA
22332-0471

18 January 2002

PERMANENT ORDERS 18-1

EPSTEIN, LAWRENCE ████████ Lieutenant Colonel, U.S. Southern Command

Announcement is made of the following award:

Award: Legion of Merit
Date(s) or period of service: 1 February 1988 to 31 January 1998
Authority: AR 600-8-22, Paragraphs 3-10
Reason: For meritorious service
Format: 320

This Permanent Order supersedes any previously issued order that may have been published announcing this award.

BY ORDER OF THE SECRETARY OF THE ARMY:

*fp, njilent & log, CW3*

DEBORAH W. IVORY
LTC, AG
Chief, Military Awards Branch

DISTRIBUTION:
HQDA PERSCOM, (TAPC-PDO-PA) (1)
AR-PERSCOM (1)
UNIT (1)
Individual (3)

Printed on Recycled Paper

00116



**DEPART ENT OF THE ARMY**
U.S. TOTAL ARMY PERSONNEL COMMAND
9700 PAGE AVENUE
ST. LOUIS MO 63132-5200



REPLY TO
ATTENTION OF

IR       TAPC-MSL-N                                                    16 SEP 96

MEMORANDUM FOR



EPSTEIN LAWRENCE S                      CMC 231

SUBJECT: Notification of Promotion Status

1.   A Reserve Selection Board convened at Headquarters, Department of the Army considered you for promotion to the grade of colonel under the provision of AR 135-155. Unfortunately, the board did not recommend you for promotion; however, your nonselection does not constitute a passover for promotion.

2.   The board was composed of senior officers of demonstrated judgment, at least one half of whom were Reserve officers, who did not limit their deliberations to any specific items but reviewed and evaluated your military record. Under criteria established for the board, selections for promotion to the grade of colonel are on a best qualified basis. Competition is extremely keen and while an officer may be fully qualified for selection, he may not be one of the few selected for promotion. Selection boards are not permitted to divulge the reasons for their selection or nonselection.

3.   You will be considered again by a new board with officers who meet the criteria for the next zone provided you are in an active and promotable status. The new board will evaluate your official Department of the Army file, to include any additions since the last consideration. This board will judge your military record as compared with the records of the officers in the new zone of consideration.

BY ORDER OF THE SECRETARY OF THE ARMY:

JAMES E. TRIMBLE
LTC, GS
Chief, Office of Promotions,
Reserve Components

DISTRIBUTION FL 2006    10
(1) INDIV ▮▮▮▮▮▮▮▮▮ LTC
(1) OMPF

TAPC-SL-FL 2006, Sep 95 (Prior editions are obsolete.)

00117





**DEPARTMENT OF THE ARMY**
U.S. TOTAL ARMY PERSONNEL COMMAND
9700 PAGE AVENUE
ST. LOUIS MO 63132-5200

REPLY TO
ATTENTION OF

16 OCT 95

IR

TAPC-MSL-N

MEMORANDUM FOR                                    CMC 231


SUBJECT: Notification of Promotion Status

1.   A Reserve Selection Board convened at Headquarters, Department of the Army considered you for promotion to the grade of colonel under the provision of AR 135-155. Unfortunately, the board did not recommend you for promotion; however, your nonselection does not constitute a passover for promotion.

2.   The board was composed of senior officers of demonstrated judgment, at least one half of whom were Reserve officers, who did not limit their deliberations to any specific items but reviewed and evaluated your military record. Under criteria established for the board, selections for promotion to the grade of colonel are on a best qualified basis. Competition is extremely keen and while an officer may be fully qualified for selection, he may not be one of the few selected for promotion. Selection boards are not permitted to divulge the reasons for their selection or nonselection.

3.   You will be considered again by a new board with officers who meet the criteria for the next zone provided you are in an active and promotable status. The new board will evaluate your official Department of the Army file, to include any additions since the last consideration. This board will judge your military record as compared with the records of the officers in the new zone of consideration.

BY ORDER OF THE SECRETARY OF THE ARMY:

JAMES E. TRIMBLE
LTC, GS
Chief, Office of Promotions,
Reserve Components

DISTRIBUTION FL 2006    10
  (1) INDIV              LTC
  (1) OMPF

TAPC-SL-FL 2006, Sep 95 (Prior editions are obsolete.)

001

| 1. IN REPLY, REFER TO | | Department of the Army |
|---|---|---|
| ARPC-SFS-I (600-8-22)<br>Epstein, Lawrence S. | | Office Chief Army Reserve<br>U. S. Army Reserve Personnel Center<br>**AUTHORIZATION FOR ISSUANCE OF AWARDS**<br>For use of this form, see AR 672-5-1; the proponent agency is ODCSPER |

| 2. TO: | Commander<br>U.S. Army Support Activity<br>Philadelphia, PA 19101-3460 | 3. DATE<br>12 Oct 95 |
|---|---|---|

### 4. CODE NUMBERS FOR AWARDS

| | | | | | |
|---|---|---|---|---|---|
| 1. Medal of Honor | 17. Joint Service Achievement Medal | 33. Medal for Humane Action | 49. Expert Field Medical Badge |
| 2. Distinguished Service Cross | 18. Army Achievement Medal | 34. National Defense Service Medal | 50. Letter "V" Device |
| 3. Defense Distinguished Service Medal | 19. POW Medal | 35. Korean Service Medal | 51. Bronze Oak Leaf Cluster |
| 4. Distinguished Service Medal | 20. Good Conduct Medal | 36. Antarctica Service Medal | 52. Bronze Service Star |
| 5. Silver Star | 21. Presidential Unit Emblem | 37. Armed Forces Expeditionary Medal | 53. Bronze Arrowhead |
| 6. Defense Superior Service Medal | 22. Meritorious Unit Emblem | 38. Vietnam Service Medal | 54. French Fourragere |
| 7. Legion of Merit | 23. Joint Meritorious Unit Emblem | 39. Humanitarian Service Medal | 55. Belgian Fourragere |
| 8. Distinguished Flying Cross | 24. Valorous Unit Emblem | 40. Armed Forces Reserve Medal | 56. Netherlands Orange Lanyard |
| 9. Soldier's Medal | 25. Army Superior Unit Emblem | 41. Army Reserve Components Achievement Medal | 57. Philippine Defense Ribbon |
| 10. Bronze Star Medal | 26. Women's Army Corps Service Medal | 42. NCO Professional Development Ribbon | 58. Philippine Liberation Ribbon |
| 11. Purple Heart | 27. American Defense Service Medal | 43. Army Service Ribbon | 59. Philippine Independence Ribbon |
| 12. Defense Meritorious Service Medal | 28. American Campaign Medal | 44. Overseas Service Ribbon | 60. United Nations Service Medal |
| 13. Meritorious Service Medal | 29. Asiatic-Pacific Campaign Medal | 45. Army Reserve Components Overseas Training Ribbon | 61. Republic of Vietnam Campaign Ribbon w/Device (1960) |
| 14. Air Medal | 30. European-African-Middle Eastern Campaign Medal | 46. Combat Infantryman Badge | 62. Honorable Service Lapel Button WWII |
| 15. Joint Service Commendation Medal | 31. WW II Victory Medal | 47. Expert Infantryman Badge | 63. |
| 16. Army Commendation Medal | 32. Army of Occupation Medal | 48. Combat Medical Badge | 64. |

The Secretary of the Army directs that the following awards be engraved according to current regulations and issued to address shown below.
(Engraving is be as indicated in classification or below.)

| 5. AWARD CODE | 6. SERVICE STARS | | 7. OAK LEAF CLUSTER | | 8. ARROW HEAD | 9. CLASP | 10. DEVICE | 11. GOLD STAR LAPEL BUTTON | | |
|---|---|---|---|---|---|---|---|---|---|---|
| | BRONZE | SILVER | BRONZE | SILVER | | | | A. ENGRAVE | B. ISSUE | C. TYPE |
| 45 | Numeral 4 Only | | | | | | | | ☐ COST<br>☐ GRATUITOUSLY | ☐ CLUTCH<br>☐ PIN |

12. REMARKS

Numeral 4 for Period of Service:
8 May 95-4 Jun 95

U.S. ARMY SUPPORT ACTIVITY
Philadelphia, PA 19101-3460

OFFICIAL BUSINESS

LTC Lawrence S. Epstein

JOAN C. LEVY
Chief, Inquiries/Awards Branch
Soldier and Family Support
Division

**DA FORM 1577, AUG 90**                                      EDITION OF 1 NOV 75 IS OBSOLETE

4

00119



FILE OMPF 6 011 PRE

**DEPARTMENT OF DEFENSE**
UNITED STATES SOUTHERN COMMAND
QUARRY HEIGHTS, PANAMA



REPLY TO
ATTENTION OF



SCJ2                                                                    5 October 1995

MEMORANDUM FOR EPSTEIN, Lawrence S., LTC, ███████, 950910 thru 950922

SUBJECT: Supplementary OER Review as Required by AR 623-105, paragraph 3-13

1. As required by AR 623-105, an additional review of the referenced OER was made by me using paragraph 3-14 as the principal source of guidance.

2. The OER is complete and correct as written and requires no further comment from me.

ROBERT A. HARDING
COL(P), USA
Director of Intelligence

Incl 1

| 1. IN REPLY, REFER TO | | Department of the Army |
| --- | --- | --- |
| ARPC-SFS-I (600-8-22) Epstein, Lawrence S. | | Office Chief Army Reserve U. S. Army Reserve Personnel Center AUTHORIZATION FOR ISSUANCE OF AWARDS For use of this form, see AR 672-5-1; the proponent agency is ODCSPER |

| 2. TO: | Commander U.S. Army Support Activity Philadelphia, PA 19101-3460 | 4. DATE 27 Sep 95 |
| --- | --- | --- |

### 4. CODE NUMBERS FOR AWARDS

| 1 | Medal of Honor | 17 | Joint Service Achievement Medal | 33 | Medal for Humane Action | 49 | Expert Field Medical Badge |
| --- | --- | --- | --- | --- | --- | --- | --- |
| 2 | Distinguished Service Cross | 18 | Army Achievement Medal | 34 | National Defense Service Medal | 50 | Letter "V" Device |
| 3 | Defense Distinguished Service Medal | 19 | POW Medal | 35 | Korean Service Medal | 51 | Bronze Oak Leaf Cluster |
| 4 | Distinguished Service Medal | 20 | Good Conduct Medal | 36 | Antarctica Service Medal | 52 | Bronze Service Star |
| 5 | Silver Star | 21 | Presidential Unit Emblem | 37 | Armed Forces Expeditionary Medal | 53 | Bronze Arrowhead |
| 6 | Defense Superior Service Medal | 22 | Meritorious Unit Emblem | 38 | Vietnam Service Medal | 54 | French Fourragere |
| 7 | Legion of Merit | 23 | Joint Meritorious Unit Emblem | 39 | Humanitarian Service Medal | 55 | Belgian Fourragere |
| 8 | Distinguished Flying Cross | 24 | Valorous Unit Emblem | 40 | Armed Forces Reserve Medal | 56 | Netherlands Orange Lanyard |
| 9 | Soldier's Medal | 25 | Army Superior Unit Emblem | 41 | Noncommissioned Officer Professional Development Ribbon | 57 | Philippine Defense Ribbon |
| 10 | Bronze Star Medal | 26 | Woman's Army Corps Service Medal | 42 | NCO Professional Development Ribbon | 58 | Philippines Liberation Ribbon |
| 11 | Purple Heart | 27 | American Defense Service Medal | 43 | Army Service Ribbon | 59 | Philippine Independence Ribbon |
| 12 | Defense Meritorious Service Medal | 28 | American Campaign Medal | 44 | Overseas Service Ribbon | 60 | United Nations Service Medal |
| 13 | Meritorious Service Medal | 29 | Asiatic-Pacific Campaign Medal | 45 | Army Reserve Components Overseas Training Ribbon | 61 | Republic of Vietnam Campaign Ribbon w/Device (1960) |
| 14 | Air Medal | 30 | European-African-Middle Eastern Campaign Medal | 46 | Combat Infantryman Badge | 62 | Honorable Service Lapel Button WWII |
| 15 | Joint Service Commendation Medal | 31 | WW II Victory Medal | 47 | Expert Infantryman Badge | 63 | |
| 16 | Army Commendation Medal | 32 | Army of Occupation Medal | 48 | Combat Medical Badge | 64 | |

The Secretary of the Army directs that the following awards be engraved according to current regulations and issued to address shown below. (Engraving to be as indicated in classification or below.)

| 5. AWARD CODE | 6. SERVICE STARS | | 7. OAK LEAF CLUSTER | | 8. ARROW HEAD | 9. CLASP | 10. "V" DEVICE | 11. GOLD STAR LAPEL BUTTON | | |
| --- | --- | --- | --- | --- | --- | --- | --- | --- | --- | --- |
| | BRONZE | SILVER | BRONZE | SILVER | | | | A. ENGRAVE | B. ISSUE | C. TYPE |
| 41 | | | | | | | | | ☐ COST | ☐ CLUTCH |
| | | | | | | | | | ☐ GRATUITOUSLY | ☐ PIN |
| | | | | | | | | 12. REMARKS | | |
| | | | | | | | | Period of Service: 6 Jun 85-5 Jun 89 | | |

U.S. ARMY SUPPORT ACTIVITY
Philadelphia, PA 19101-3460

OFFICIAL BUSINESS

LTC Lawrence S. Epstein

JOAN C. LEVY
Chief, Inquiries/Awards Branch
Soldier and Family Support
Division

DA FORM 1577, AUG 90     EDITION OF 1 NOV 75 IS OBSOLETE     4

00121

DEPARTMENT OF THE ARMY
U. S. ARMY RESERVE PERSONNEL CENTER
9700 PAGE BOULEVARD
ST. LOUIS, MO 63132-5200

ARPC-ZCP-0158-D                                    29 MAR 95
ORDERS  T-03-510746


EPSTEIN LAWRENCE STEVEN          ZCP-0158       116 38 4328 LTC MI 35F
                                                USAR CONTROL GROUP (IMA)

███████████████████


YOU ARE ORDERED TO ACTIVE DUTY FOR TRAINING (ADT) FOR THE PERIOD SHOWN.
UPON COMPLETION OF THE PERIOD OF ADT, UNLESS SOONER RELEASED OR EXTENDED
BY PROPER AUTHORITY, YOU WILL RETURN TO THE PLACE WHERE YOU ENTERED ADT
AND BE RELEASED FROM SUCH DUTY.

PERIOD:  26 DAYS PLUS ALLOWABLE TRAVEL TIME
REPORT TO: HQ EUCOM DET INTEL J2 PATCH BARRACKS
  STUTTGART GERMANY APO AE 09128
REPORTING DATE: RPT BETWEEN 0730 & 0800 HRS 08 MAY 95
ATTACHED TO: WONJ USA RCPAC AG RESERVE ST LOUIS MO 63132
PURPOSE: OPERATIONAL TNG


ADDITIONAL INSTRUCTIONS: YOU ARE ATCHD FOR ADMIN SPT TO INCLUDE ADMIN OF UCMJ.
  ID CARD & ID TAGS RQD TO BE ON PERSON WHILE ON GOVT ORDERS. BREAK IN TVL
  TIME TO/FR HOR NOT AUTH. CALL ARPERCEN POC WHILE ON TOUR OR IF UNABLE TO
  COMPLY WITH THIS ORDER. REIMBURSEMENT FOR TRAVEL LIMITED TO GOVT RATE. USE
  OF GOVT QTRS WOULD ADVERSELY EFFECT THE MISSION (JFTR U4155). USE OF GOVT
  MESS WOULD ADVERSELY EFFECT THE MISSION (JFTR U4155). RENTAL CAR AUTH NTE
  $40 P/DAY. SUBMISSION OF CLAIM FOR PAY MUST BE SUBMITTED OR MAILED NLT 5
  DAYS AFTER COMPLETION OF TOUR. OER RQD PER AR 623-105 OR AER RQD PER AR
  623-1, FWD TO CDR ARPERCEN ATTN: ARPC-PRE-O. A CERTIFICATE OF PERFORMANCE
  (ARPC FORM 3924) MUST BE SUBMITTED AT THE COMPLETION OF DUTY TO THE PAY
  PROCESSING OFFICE. FOR QUESTIONS OR ISSUES RELATED TO THIS ORDER CALL
  ARPC-ZDC-F, 1-800-648-8929. HIV CLEARED. HIV TEST RQD W/IN 48 HRS OF RPT FOR
  DY. RESULTS MUST BE FORWARDED TO ARPERCEN ARPC-SFS-H W/ I 28 DAYS. APRT RQD
  IAW AR 350-15. JOGGING SHOES & PT CLOTHING RQD FOR PHYSICAL TNG & APRT. FWD
  RESULTS IAW AR 140-1 PARA 3-3C. PAY PROCESSING BY ARPERCEN RESERVE PAY
  OFFICE. ADVANCE IF AUTHORIZED WILL BE CHARGED TO $23185.

FOR ARMY USE: AUTH: 10 USC 672(D)& 683(A)(1) ADT W
ACCT CLAS: 2152070  22-7010 P4L12.10000 EPS43285107480/(R8FTED)(EST ONLY)
(1198- $4376)(1199-  $727)(1210-    )(1250-  $334)(219C- $1070)(211C- $3645)
(2219-    )(2231-    )(2232-    )(25CZ-    )(25CL-    )(214C- $1200)
(25CM-    )(4110-    )(4140-    )(218C-    )S23185
PPN:    COMP: USAR   PEBD: 08 JUN 68   SEX: M   SCTY CL: TS W/SENSITIVE INFO
DOR: 03 JUN 89   SITE: 190427  TYTR: 60B
HOR: SAME AS SNL


FORMAT: 260

*************                JOHN W. FROST
*  ARPERCEN  *               COL, AR
*  OFFICIAL  *               COMMANDING
*************
DISTRIBUTION: 1A    PACKET: 6C
  1 WONJ USA RCPAC AG RESERVE ST LOUIS MO 63132
  1 WO86 USA ELM HQ USSOUTHCO QUARRY HT PM 34003



**DEPARTMENT OF THE ARMY**
U.S. TOTAL ARMY PERSONNEL COMMAND
9700 PAGE AVENUE
ST. LOUIS, MO 63132-5200



REPLY TO
ATTENTION OF

IR

14 OCT 94

TAPC-MSL-N

MEMORANDUM FOR

EPSTEIN LAWRENCE S            CMC 231

SUBJECT: Notification of Promotion Status

1.    A Reserve Selection Board convened at Headquarters, Department of the Army considered you for promotion to the grade of colonel under the provision of AR 135-155. Unfortunately, the board did not recommend your promotion; however, your nonselection does not constitute a passover for promotion.

2.    The board was composed of senior officers of demonstrated judgment, at least one half of whom were Reserve officers, who did not limit their deliberations to any specific items but reviewed and evaluated your military record. Under criteria established for the board, selections for promotion to the grade of colonel are on a best qualified basis. Competition is extremely keen and while an officer may be fully qualified for selection, he may not be one of the few selected for promotion. Selection boards are not permitted to divulge the reasons for their selection or nonselection.

3.    You will be considered again by a new board with officers who meet the criteria for the next zone provided you are in an active and promotable status. The new board will evaluate your official Department of the Army file, to include any additions since the last consideration. This board will judge your military record as compared with the records of the officers in the new zone of consideration.

BY ORDER OF THE SECRETARY OF THE ARMY:

JAMES E. TRIMBLE
LTC, GS
Chief, Office of Promotions,
Reserve Components

DISTRIBUTION FL 2006    09
(1) INDIV            LTC
(1) OMPF

TAPC-SL-FL 2006, Mar 94 (Prior editions are obsolete.)

00123



FILE OMPF 4126 RE
**DEPARTMENT OF DEFENSE**
UNITED STATES SOUTHERN COMMAND
QUARRY HEIGHTS, PANAMA



REPLY TO
ATTENTION OF

SCJ2

MEMORANDUM FOR Lawrence Epstein, LTC,  930905-930922

SUBJECT: Supplementary OER Review as Required by AR 623-105, paragraph 3-13.

1. As required by AR 623-105, an additional review of the referenced OER was made by me using paragraph 3-14 as the principal source of guidance.

2. The OER is complete and correct as written and requires no further comment from me.

Stephen A. Knudsen
Col, USA
Deputy Director for Operations

00124




# DEPARTMENT OF THE ARMY
### U.S. TOTAL ARMY PERSONNEL COMMAND
### 9700 PAGE BOULEVARD
### ST. LOUIS, MO 63132-6200

REPLY TO
ATTENTION OF

IR

01 OCT 93

TAPC-MSL-N

MEMORANDUM FOR

EPSTEIN LAWRENCE S          CMC 231

SUBJECT: Notification of Promotion Status

1.    A Reserve Selection Board convened at Headquarters, Department of the Army considered you for promotion to the grade of colonel under the provision of AR 135-155. Unfortunately, the board did not recommend your promotion; however, your nonselection does not constitute a passover for promotion.

2.    The board was composed of senior officers of demonstrated judgment, at least one half of whom were Reserve officers, who did not limit their deliberations to any specific items but reviewed and evaluated your military record. Under criteria established for the board, selections for promotion to the grade of colonel are on a best qualified basis. Competition is extremely keen and while an officer may be fully qualified for selection, he may not be one of the few selected for promotion. Selection boards are not permitted to divulge the reasons for their selection or nonselection.

3.    You will be considered again by a new board with officers who meet the criteria for the next zone provided you are in an active and promotable status. The new board will evaluate your official Department of the Army file, to include any additions since the last consideration. This board will judge your military record as compared with the records of the officers in the new zone of consideration.

BY ORDER OF THE SECRETARY OF THE ARMY:

LLOYD LETCHER, JR.
LTC, GS
Chief, Office of Promotions,
Reserve Components

DISTRIBUTION FL 2006    09
(1) INDIV          LTC
(1) OMPF

TAPC-SL-FL 2006, Sep 91  (Prior editions are obsolete.)

00125

(PLEASE READ INSTRUCTIONS ON REVERSE SIDE BEFORE COMPLETING AND SUBMITTING THIS FORM).

# SERVICEMEN'S GROUP LIFE INSURANCE ELECTION AND CERTIFICATE

**IMPORTANT** – This form is for use by ACTIVE DUTY AND RESERVE MEMBERS. This form does not apply to and cannot be used for any other Government Life Insurance.

| USE THIS FORM FOR ▶ | 1. ELECTING, REDUCING OR REFUSING INSURANCE | 2. STATING TO WHOM AND HOW INSURANCE SHOULD BE PAID |
|---|---|---|
| | (Do not make erasures, corrections or changes; complete a new form) | |

LAST NAME - FIRST NAME - MIDDLE NAME: **EPSTEIN, Lawrence Steven**   RANK, TITLE OR GRADE: **LT COL  05**   SERVICE OR SOCIAL SECURITY NO. ▓▓▓

BRANCH OF SERVICE (Do not abbreviate): **U.S. Army Reserve**   CURRENT DUTY LOCATION: **IRR  USARPERCEN.**

## 1. AMOUNT OF INSURANCE

By law, you are automatically insured for $100,000. An additional $100,000 of coverage is available for you to select and would provide you with a maximum coverage of $200,000. Should you wish to be covered for the full $200,000 of insurance please initial the appropriate line below. If you want to elect an alternate amount of insurance please fill in the amount desired on the "Amount of insurance" line and initial it. The following amounts are available: $190,000, $180,000, $170,000, $160,000, $150,000, $140,000, $130,000, $120,000, $110,000, $100,000, $90,000, $80,000, $70,000, $60,000, $50,000, $40,000, $30,000, $20,000, $10,000. If you do not want any insurance write in your own handwriting "I want no insurance". Reduced or refused insurance can be restored only by written request with proof of good health and compliance with other requirements.

_LSE_ (Initial)   $200,000       _____ (Initial)   $ _____ (Amount of insurance) (Print Clearly)       BE SURE TO COMPLETE PART 2

## 2. BENEFICIARY(IES) AND PAYMENT TO BENEFICIARY(IES) (Read instructions below and on reverse)

a. Name the primary and contingent beneficiaries below. There are no restrictions on the number of principal and contingent beneficiaries you may name. In some family situations, such as if you are a step-child or step-parent, or if you were abandoned by a parent or adopted, or if you are separated from your spouse, you will, by naming specific beneficiaries, include or exclude certain persons, as you desire.

b. A named beneficiary will not be changed automatically by any event occurring after you complete this form (e.g., divorce, annulment). To change a beneficiary you must complete a new SGLV 8286.

c. A last will and testament, a power of attorney, or any other document will not and cannot change or cancel any beneficiary on this form. You must complete a new SGLV 8286 to change a beneficiary.

d. If you want to name a minor child or minor children as beneficiaries, it is very important that you read the instructions on the reverse side of this form.

### I DESIGNATE THE FOLLOWING BENEFICIARIES TO RECEIVE PAYMENT OF MY INSURANCE PROCEEDS AS SHOWN BELOW:

| COMPLETE NAME AND ADDRESS OF BENEFICIARY (If married woman, give her own first and middle name(s) for ex. Mary Lisa Smith, not Mrs. John Smith) | SOCIAL SECURITY # (if known, See I.D. on back). | RELATIONSHIP TO INSURED | SHARES TO BE PAID TO EACH BENEFICIARY (See I.B. on back). | PAYMENTS OPTIONS TO BENEFICIARY 36 PMTS/LUMP SUM (See I.I. on back) |
|---|---|---|---|---|
| **PRINCIPAL (First)** | | | | |
| 1. Shirley Weiss Epstein  280 Park Ave So. NY NY 10010 | | mother | 100% | 36 |
| 2. | | | | |
| **CONTINGENT (Second - If principal beneficiary(ies) dies before me or both completion of installment payments to the principal beneficiary(ies))** | | | | |
| 1. Edward Philip Epstein  10 Sleepy Hollow Road Bridport VT 16701 | | | 100% | 36 |
| 2. | | | | |

**NOTE:** If more than one principal beneficiary is named, the share of any such beneficiary who dies before me shall be distributed equally among the surviving principal beneficiaries (For another option, see I.C. on the back). If there is no surviving principal beneficiary the proceeds shall be distributed equally to the surviving contingent beneficiaries. This Designation of Beneficiary shall be void if none of the designated beneficiaries is living at my death. If after completion of this form my insurance is increased, this beneficiary designation shall apply to the full amount in force unless a new designation is made.

I HAVE READ AND UNDERSTAND THE INSTRUCTIONS ON THE FRONT AND REVERSE OF THIS FORM. I UNDERSTAND THAT THIS FORM CANCELS ANY PRIOR BENEFICIARY OR PAYMENT INSTRUCTIONS. I UNDERSTAND THAT IF I HAVE LEGAL QUESTIONS ABOUT THIS FORM I MAY CONSULT WITH A MILITARY ATTORNEY AT NO EXPENSE TO ME.

I UNDERSTAND that I cannot have combined SGLI and VGLI coverages at the same time for more than $200,000.

| SIGN HERE IN INK | _[signature]_ (Signature of member) (Do not print) | DATE COMPLETED: **7 July 93** |
|---|---|---|
| WITNESSED AND RECEIVED BY: _Dennis M Carey_ | RANK, TITLE OR GRADE: **CPT  MI**   ORGANIZATION: **RTS-I (NE)** | DATE RECEIVED: **7 JUL 93** |

**SGLV - 8286,** NOV 1992       SUPERSEDES SGVL 8286, SEPT 1991, WHICH WILL NOT BE USED.       MEMBER'S OFFICIAL PERSONNEL FILE 1

00126



# Citation

## TO ACCOMPANY THE AWARD OF THE

# Joint Service Achievement Medal

### TO
### LIEUTENANT COLONEL LAWRENCE S. EPSTEIN
### UNITED STATES ARMY RESERVE

LIEUTENANT COLONEL LAWRENCE S. EPSTEIN, UNITED STATES ARMY RESERVE, DISTINGUISHED HIMSELF THROUGH OUTSTANDING ACHIEVEMENT FROM 15 APRIL 1993 TO 27 MAY 1993 WHILE ASSIGNED AS INDIVIDUAL MOBILIZATION AUGMENTEE, CONTRACT MANAGEMENT DIVISION, DEFENSE CONTRACT MANAGEMENT AREA OPERATIONS NEW YORK FOR HIS ROLE IN THE 1993 SMALL BUSINESS CONFERENCE HOSTED BY AREA OPERATIONS-NEW YORK. LT COL EPSTEIN HANDLED ALL OF THE LOGISTICAL TASKS TO HOST ALMOST 100 LOCAL BUSINESS PRESIDENTS AND CHIEF EXECUTIVE OFFICERS FOR THE DAY LONG CONFERENCE. LT COL EPSTEIN'S EFFORTS INCLUDED DEVELOPING AND SENDING INVITATIONS, SECURING ADEQUATE CONFERENCE SPACE, ORGANIZING A LUNCHEON, SETTING UP AND TESTING PRESENTATION AND AUDIO SYSTEMS, AND HANDLING ALL PAYMENT PROCEDURES WITH THE ABSOLUTE MINIMUM COST TO THE GOVERNMENT. BY ENSURING A POSITIVE MEETING AND WORKING ENVIRONMENT, LT COL EPSTEIN FACILITATED A MEANS FOR CURRENT AND POTENTIAL DEPARTMENT OF DEFENSE CONTRACTORS TO LEARN MORE ABOUT IDENTIFYING, BIDDING, AND SECURING CONTRACTS AS WELL AS ENABLING THEM TO MEET LARGER BUSINESSES WITH WHOM THEY CAN POSSIBLY OBTAIN SUB-CONTRACT WORK IN THIS TIME OF DECREASING AVAILABLE CONTRACT DOLLARS. ITS SUCCESS WAS IN VERY LARGE PART DUE TO THE DEDICATION AND HARD WORK OF LT COL EPSTEIN. THE DISTINCTIVE ACCOMPLISHMENTS OF LT COL EPSTEIN REFLECT CREDIT UPON HIMSELF, THE UNITED STATES ARMY RESERVE, AND THE DEPARTMENT OF DEFENSE.



PRINT POOR QUALITY



# THE UNITED STATES OF AMERICA

### TO ALL WHO SHALL SEE THESE PRESENTS, GREETING:

#### THIS IS TO CERTIFY THAT
#### THE SECRETARY OF DEFENSE
#### HAS AWARDED

## THE JOINT SERVICE ACHIEVEMENT MEDAL

### TO

LIEUTENANT COLONEL LAWRENCE S. EPSTEIN, UNITED STATES ARMY RESERVE

### FOR

#### MERITORIOUS SERVICE
#### FOR THE ARMED FORCES OF THE UNITED STATES

GIVEN UNDER MY HAND IN THE CITY OF WASHINGTON
THIS    28TH    DAY OF    MAY    1995

DCMAO NEW YORK
COMMANDER OR OFFICER



HARRY D. GATANAS
COLONEL, USA
COMMANDER

00128

2422 = 2/10/95 MC

G4

**Department of the Army**
Office Chief Army Reserve
U.S. Army Reserve Personnel Center

1. IN REPLY, REFER TO
DARP-PAT-I Epstein, Lawrence S.
SSN

AUTHORIZATION FOR ISSUANCE OF AWARDS

2. TO.
Commander
U.S. Army Support Activity
Philadelphia, PA 19101-3460

4. DATE
12 April 1993

## 4. CODE NUMBERS FOR AWARDS

| # | Award | # | Award | # | Award | # | Award |
|---|-------|---|-------|---|-------|---|-------|
| 1 | Medal of Honor | 17 | Joint Service Achievement Medal | 33 | Medal for Humane Action | 49 | Expert Field Medical Badge |
| 2 | Distinguished Service Cross | 18 | Army Achievement Medal | 34 | National Defense Service Medal | 50 | Letter "V" Device |
| 3 | Defense Distinguished Service Medal | 19 | POW Medal | 35 | Korean Service Medal | 51 | Bronze Oak Leaf Cluster |
| 4 | Distinguished Service Medal | 20 | Good Conduct Medal | 36 | Antarctica Service Medal | 52 | Bronze Service Star |
| 5 | Silver Star | 21 | Presidential Unit Emblem | 37 | Armed Forces Expeditionary Medal | 53 | Bronze Arrowhead |
| 6 | Defense Superior Service Medal | 22 | Meritorious Unit Emblem | 38 | Vietnam Service Medal | 54 | French Fourragere |
| 7 | Legion of Merit | 23 | Joint Meritorious Unit Emblem | 39 | Humanitarian Service Medal | 55 | Belgian Fourragere |
| 8 | Distinguished Flying Cross | 24 | Valorous Unit Emblem | 40 | Armed Forces Reserve Medal | 56 | Netherlands Orange Lanyard |
| 9 | Soldier's Medal | 25 | Army Superior Unit Emblem | 41 | Army Reserve Components Achievement Medal | 57 | Philippine Defense Ribbon |
| 10 | Bronze Star Medal | 26 | Woman's Army Corps Service Medal | 42 | NCO Professional Development Ribbon | 58 | Philippine Liberation Ribbon |
| 11 | Purple Heart | 27 | American Defense Service Medal | 43 | Army Service Ribbon | 59 | Philippine Independence Ribbon |
| 12 | Defense Meritorious Service Medal | 28 | American Campaign Medal | 44 | Overseas Service Ribbon | 60 | United Nations Service Medal |
| 13 | Meritorious Service Medal | 29 | Asiatic-Pacific Campaign Medal | 45 | Army Reserve Components Overseas Training Ribbon | 61 | Republic of Vietnam Campaign Ribbon w/Device (1960) |
| 14 | Air Medal | 30 | European-African-Middle Eastern Campaign Medal | 46 | Combat Infantryman Badge | 62 | Honorable Service Lapel Button WWII |
| 15 | Joint Service Commendation Medal | 31 | WW II Victory Medal | 47 | Expert Infantryman Badge | 63 | |
| 16 | Army Commendation Medal | 32 | Army of Occupation Medal | 48 | Combat Medical Badge | 64 | |

The Secretary of the Army directs that the following awards be engraved according to current regulations and issued to address shown below.
(Engraving to be as indicated in classification or below.)

| 5. AWARD CODE | 6. SERVICE STARS | | 7. OAK LEAF CLUSTER | | 8. ARROW HEAD | 9. CLASP | 10. "V" DEVICE |
|---|---|---|---|---|---|---|---|
| | BRONZE | SILVER | BRONZE | SILVER | | | |
| 45 | | | | | | | |

11. GOLD STAR LAPEL BUTTON

A. ENGRAVE

B. ISSUE  ☐ COST   ☐ GRATUITOUSLY

C. TYPE  ☐ CLUTCH  ☐ PIN

12. REMARKS

For completion of ADT in Korea
2 Mar 93 - 22 Mar 93

U.S. ARMY SUPPORT ACTIVITY
Philadelphia, PA 19101-3460

OFFICIAL BUSINESS

LTC Lawrence S. Epstein

JOAN C. LEVY
Chief, Inquiries/Awards Branch
Soldier Support Division

DA FORM 1577, AUG 90

*(PLEASE READ INSTRUCTIONS ON REVERSE SIDE BEFORE COMPLETING AND SUBMITTING THIS FORM).*

# SERVICEMEN'S GROUP LIFE INSURANCE ELECTION AND CERTIFICATE

**IMPORTANT** – This form is for use by ACTIVE DUTY AND RESERVE MEMBERS. This form does not apply to and cannot be used for any other Government Life Insurance.

| USE THIS FORM FOR ▶ | 1. ELECTING, REDUCING OR REFUSING INSURANCE | 2. STATING TO WHOM AND HOW INSURANCE SHOULD BE PAID |
|---|---|---|
| | *(Do not make erasures, corrections or changes; complete a new form)* | |

| LAST NAME - FIRST NAME - MIDDLE NAME | | RANK, TITLE OR GRADE | SERVICE OR SOCIAL SECURITY NO. |
|---|---|---|---|
| EPSTEIN LAWRENCE STEVEN | | LTC/O-3 | |
| BRANCH OF SERVICE (Do not abbreviate) | CURRENT DUTY LOCATION | | |
| UNITED STATES ARMY RESERVE | USAFAC FT SILL OK 73503 | | |

## 1. AMOUNT OF INSURANCE

By law, you are automatically insured for $100,000. An additional $100,000 of coverage is available for you to select and would provide you with a maximum coverage of $200,000. Should you wish to be covered for the full $200,000 of insurance please initial the appropriate line below. If you want to elect an alternate amount of insurance please fill in the amount desired on the "Amount of Insurance" line and initial it. The following amounts are available: $190,000, $180,000, $170,000, $160,000, $150,000, $140,000, $130,000, $120,000, $110,000, $100,000, $90,000, $80,000, $70,000, $60,000, $50,000, $40,000, $30,000, $20,000, $10,000. If you do not want any insurance write in your own handwriting "I want no insurance". Reduced or refused insurance can be restored only by written request with proof of good health and compliance with other requirements.

*(Initial)* $200,000    _____    $ _____    *(Amount of Insurance) (Print Clearly)*    [BE SURE TO COMPLETE PART 2 ▼]

## 2. BENEFICIARY(IES) AND PAYMENT TO BENEFICIARY(IES) *(Read Instructions below and on reverse)*

a. Name the primary and contingent beneficiaries below. There are no restrictions on the number of principal and contingent beneficiaries you may name. In some family situations, such as if you are a step-child or step-parent, or if you were abandoned by a parent or adopted, or if you are separated from your spouse, you will, by naming specific beneficiaries, include or exclude certain persons, as you desire.

b. A named beneficiary will not be changed automatically by any event occurring after you complete this form (e.g., divorce, annulment). To change a beneficiary you must complete a new SGLV 8286.

c. A last will and testament, a power of attorney, or any other document will not and cannot change or cancel any beneficiary on this form. You must complete a new SGLV 8286 to change a beneficiary.

d. If you want to name a minor child or minor children as beneficiaries, it is very important that you read the instructions on the reverse side of this form.

### I DESIGNATE THE FOLLOWING BENEFICIARIES TO RECEIVE PAYMENT OF MY INSURANCE PROCEEDS AS SHOWN BELOW:

| COMPLETE NAME AND ADDRESS OF BENEFICIARY (If married woman, give her own first and middle names) for ex, Mary Lisa Smith, not Mrs. John Smith. | SOCIAL SECURITY # (If known, See 1.D. on back) | RELATIONSHIP TO INSURED | SHARES TO BE PAID TO EACH BENEFICIARY (See 1.B. on back) | PAYMENTS OPTIONS TO BENEFICIARY 36 PMTS/LUMP SUM (See 1.I. on back) |
|---|---|---|---|---|
| **PRINCIPAL (First)** | | | | |
| 1. *Shirley W. Epstein* | | mother | 1/1 | 36 |
| 2. | | | | |
| **CONTINGENT (Second - if principal beneficiary(ies) dies before me or before completion of installment payments to the principal beneficiary(ies))** | | | | |
| 1. *Edward P. Epstein* | | brother | 1/1 | 36 |
| 2. | | | | |

**NOTE:** If more than one principal beneficiary is named, the share of any such beneficiary who dies before me shall be distributed equally among the surviving principal beneficiaries (For another option, see 1.C. on the back). If there is no surviving principal beneficiary the proceeds shall be distributed equally to the surviving contingent beneficiaries. This Designation of beneficiary shall be void if none of the designated beneficiaries is living at my death. If after completion of this form my insurance is increased, this beneficiary designation shall apply to the full amount in force unless a new designation is made.

I HAVE READ AND UNDERSTAND THE INSTRUCTIONS ON THE FRONT AND REVERSE OF THIS FORM. I UNDERSTAND THAT THIS FORM CANCELS ANY PRIOR BENEFICIARY OR PAYMENT INSTRUCTIONS. I UNDERSTAND THAT IF I HAVE LEGAL QUESTIONS ABOUT THIS FORM I MAY CONSULT WITH A MILITARY ATTORNEY AT NO EXPENSE TO ME.

I UNDERSTAND that I cannot have combined SGLI and VGLI coverages at the same time for more than $200,000.

| SIGN HERE IN INK ▶ | *(Signature of member (Do not print)* | | DATE COMPLETED 27 Feb 93 |
|---|---|---|---|
| WITNESSED AND RECEIVED by: | | | |
| JAMES KELVIN JACKSON | RANK, TITLE OR GRADE SPC/E-4 | ORGANIZATION B BTRY PSB | DATE RECEIVED 930227 |

SGLV - 8286, NOV 1992    SUPERSEDES SGLV 8286, SEPT 1991 WHICH WILL NOT BE USED    MEMBER'S OFFICIAL PERSONNEL FILE 1



## PERIODS OF COVERAGE

This insurance is in effect throughout the period of full-time active duty or active duty for training. Coverage is also in effect on a full-time basis for reservists who are assigned to a unit or position in which they may be required to perform active duty or active duty for training and each year will be scheduled to perform at least 12 periods of inactive duty training that is creditable for retirement purposes under Chapter 67 of Title 10. Coverage continues for 120 days following separation or release.

## INSTRUCTIONS TO MEMBER

### 1. GENERAL

A. Make certain you complete all the appropriate item(s).

B. There are no restrictions on the beneficiaries you may name. **If you name more than one beneficiary use fractions such as ½ or ¼ to indicate the share of the proceeds to be paid to each beneficiary. The total of all shares must equal 1.** In some family situations, such as if you are a step-child or step-parent or were abandoned by a parent or are separated from your wife, etc., you may, by naming beneficiaries, specifically include or exclude certain persons as you desire. Should the number of your principal beneficiaries exceed 2, please list them on a separate sheet and attach it to SGLV-8286. Do not list your principal beneficiaries in the contingent beneficiary blocks.

C. If you do not want the share of a deceased principal beneficiary to be distributed in the manner indicated on the front of the form (e.g., you want the children of a deceased principal beneficiary to get that beneficiary's share), you must so indicate. For assistance on proper wording please consult a military attorney.

D. **DO NOT DELAY COMPLETING THIS DESIGNATION** if you do not have a beneficiary's Social Security Number handy. Your designation is still valid even if you do not know the Social Security Number, so submit this designation right away. Having the beneficiary's Social Security Number will help us locate the beneficiary.

E. All entries, except the signature and those requested to be in your own handwriting, should be typed or printed in ink.

F. A change of beneficiary may be made by the insured at any time without the knowledge or consent of the beneficiary, and this right cannot be waived or restricted. Completing this form will cancel any prior beneficiary or payment instructions.

G. This form may not be changed by correcting entries. To change designated beneficiaries, you must complete a new SGLV 8286 to show the names of the new beneficiaries in Part 2.

H. No designation or change of beneficiary will be valid unless it is received in writing over your signature by your Uniformed Service before your death.

I. In case of your death the beneficiary can elect to receive the insurance in a single payment of the face value or in 36 equal monthly installments. If you so desire you can limit a beneficiary to receiving the insurance in 36 monthly installments by inserting "36" in the block labelled "Payment Options" on the front of this form.

### 2. NAMING MINORS AS BENEFICIARIES

A. You may name minor children as beneficiaries.

B. If you name a minor child(ren) as beneficiary(ies), payment of the proceeds will be paid only to the court-appointed guardian of the child(ren). The guardian will usually, but not always, be the surviving parent, if any, of the child(ren).

C. You can establish a trust for the benefit of the child(ren) and name the trust as the beneficiary. A trust names a trustee (anyone you choose) to be legally responsible for administering the insurance proceeds for the child(ren). Please consult a military lawyer for assistance.

### 3. PAYMENTS TO BENEFICIARY

A. Claims should be submitted to the Office of Servicemen's Group Life Insurance, 213 Washington Street, Newark, NJ 07102.

### 4. PROVISIONS OF THE LAW FOR PAYMENT OF INSURANCE

If the beneficiaries named on this form do not survive you, or if you do not name a beneficiary, or if you direct the proceeds to a trust that is not properly established, or if you direct the proceeds to be paid "By Law", then the proceeds will be paid under the provisions of the law to your survivor(s) in the following order:

1. Widow or widower; if none, it is payable to
2. Child or children in equal shares with the share of any deceased child distributed among the descendants of that child; if none, it is payable to
3. Parent(s) in equal shares; if none, it is payable to
4. A duly appointed executor or administrator of the insured's estate; if none, to
5. Other next of kin.

**NOTE:** If you want a specific person to receive your insurance, then you must name the person in Part 2, otherwise, it will be paid as provided above.

**Make certain all three copies of this form are completed and signed.**

| | 1. NAME (Last, First, Middle) | | | 2a. SSN | | 2b. Initial of no rank (use only one ESM) | 3a. SVC | 3b. REPORTING UNIT CODE DUTY STATION |
|---|---|---|---|---|---|---|---|---|
| DO NOT FOLD, STAPLE, OR MUTILATE | EPSTEIN LAWRENCE STEVEN | | | | | | A | NA |
| | 4. Spouse's Name/Address | | | | | | | |
| | SINGLE | | | | | | | |
| | 5. Children's Name/Relationship/ DOB/Address | | | | | | | |
| | NONE | | | | | | | |

| 6. Father's Name/Address | | | | |
|---|---|---|---|---|
| 7. Mother's Name/Address | EUGENE EPSTEIN/ADDRESS UNKNOWN | | | |
| | SHIRLEY W (WEISS) EPSTEIN/ | | | |
| 8. Person Who Knows Area You Best In Health | NONE | | | NA |
| 9. Beneficiary(ies) For Unpaid Pay And Allowances Name and Percentage | SHIRLEY W EPSTEIN/SEE ITEM 7/MOTHER | | | |
| 10. Beneficiary(ies) For Death Gratuity Name/Percentage | SHIRLEY W EPSTEIN/SEE ITEM 7/MOTHER | | | |
| 11. Allotment Designation/Percentage If Missing Subject To Recovered Circumstances | NONE | | | |
| 12. Insurance SGLI and other Insurance Company/Policy No.'s | a. Total Coverage Desired Govt Unit | | | b. Insurance Company/Policy Numbers |
| | ☒ Maximum ☐ Other (Amount) _____ ☐ No | | | NONE |
| 13. CONTINUATION/REMARKS | NONE | | | |

| 14. SIGNATURE OF SERVICE MEMBER (Include Rank/Component) | 15. SIGNATURE OF WITNESS (Include Rank/Component) | 16. DATE SIGNED |
|---|---|---|
| *[signature]* Lcos | *[signature]* SPC/E-4 | 27 Feb 93 |

### INSTRUCTIONS TO SERVICEMEMBER

This extremely important form is to be used by you to show the names and addresses of your spouse, children, parents, and any other person(s) you would like notified if you become a casualty, and, to designate beneficiaries for certain benefits if you die. IT IS YOUR RESPONSIBILITY to keep your Record of Emergency Data up to date to show your desires as to beneficiaries to receive certain death payments, and to show changes in your family or other dependents listed; for example, as a result of marriage, civil court action, death, or address change. Regarding your designation in item 11, allotment if missing (if used by your Service), please read the following statement carefully, and sign on the line provided:

I fully understand that, if I am captured, missing, or interned, my designation of allotments to dependents from my pay and allowances serves only as a guide to the Secretary of my Service. The Secretary may alter my designated allotment in the best interests of myself, my dependents, or the United States Government.

*[signature]* SIGNED

00132

DEPARTMENT OF THE ARMY
U. S. ARMY RESERVE PERSONNEL CENTER
9700 PAGE BOULEVARD
ST. LOUIS, MO 63132-5200

DARP-OPD-0231-C                                                12 JAN 93
ORDERS  T-01-300828

EPSTEIN LAWRENCE STEVEN             OPD-0231            ████████ LTC MI 35F
████████████████████                                   CONTROL GP (IND MOB AUG)

YOU ARE ORDERED TO ACTIVE DUTY TRAINING (ADT) FOR THE PERIOD SHOWN.
UPON COMPLETION OF THE PERIOD OF ADT, UNLESS SOONER RELEASED OR EXTENDED
BY PROPER AUTHORITY, YOU WILL RETURN TO THE PLACE WHERE YOU ENTERED ADT
AND BE RELEASED FROM SUCH DUTY.

PERIOD:  25 DAYS PLUS ALLOWABLE TRAVEL TIME
REPORT TO: FT SILL BLDG 4449
    FT SILL OK 73503 5100
REPORTING DATE: RPT BETWEEN 0730 & 0800 HRS 26 FEB 93
    ON OR ABOUT 02 MAR 93 INDIVIDUAL WILL PROCEED TO:
    HQ EUSA SEOUL KOREA PP
ATTACHED TO: 0381 AG HHD     REPL BN (P 805 WEST HARTFORD AVEN PONCA CITY OK 746
PURPOSE: TEAM SPIRIT 93

ADDITIONAL INSTRUCTIONS: YOU ARE ATCHD FOR ADMIN SPT TO INCLUDE ADMIN OF UCMJ.
ID CARD & DOG TAGS RQD TO BE ON PERSON WHILE ON GOVT ORDERS. BREAK IN TVL TIME
TO/FR HOR NOT AUTH. CALL ARPERCEN POC ON THE LAST DAY OF DUTY OR IF UNABLE TO
COMPLY WITH THIS ORDER. REIMBURSEMENT FOR TRAVEL LIMITED TO GOVT RATE. HIV
TEST RQD W/IN 48 HRS OF RPT FOR DY. RESULTS MUST BE FORWARDED TO ARPERCEN DARP-
PAT-H W/IN 29 DAYS. APRT RQD IAW AR 350-15. JOGGING SHOES & PT CLOTHING RQD FOR
PHYSICAL TNG & APRT. FWD RESULTS IAW AR 140-1 PARA 3-3C. VEHICLE RENTAL NOT
AUTH. CONTACT ARPERCEN MIL INTELLIGENCE POC AT 800-325-4988 UPON ARRIVAL AT
TNG SITE. SUBMISSION OF CLAIM FOR PAY MUST BE SUBMITTED OR MAILED NLT 5 DAYS
AFTER COMPLETION OF TOUR. OER RQD PER AR 623-105 OR AER RQD PER AR 623-1, FWD
TO CDR ARPERCEN ATTN: DARP-PRE-O. SM TO BRING ADEQUATE BDUS FOR EXERCISE
DURATION. LINE #139 / POC: MR TURNER, FKJ3-ED-RSC, 723-7322. PAYMENT BY FT
SILL F&AO. ADVANCE IF AUTHORIZED, WILL BE CHARGED TO 534031.

FOR ARMY USE: AUTH:10 USC 672(D)& 603(A)(1) ADT W
ACCT CLAS: 2132070  22-7010 P4K12.10000 EPS43283008280/(RSCNEB)(EST ONLY)(1198-
    $4019)(1199-  $668)(1210-         )(1250-  $307)(219C-   $50)(211C-         )(2219-
    )(2231-         )(2232-         )(2572-         )(257L-         )(214C-  $420)(257M-
    )(4110-         )(4130-         )(4140-         )823185
PPN:         COMP: USAR    PEBD: 06 JUN 69    SEX: M  SCTY CL: TS W/SENSITIVE INFO
DOR: 03 JUN 89   SITE: A00322  TYTR: 842 2TSC: A00008   3TSC:
HOR: SAME AS SNL

FORMAT 260

***********
* ARPERCEN *                                      JOHN W. FROST
* OFFICIAL *                                      COL  AR
***********                                       ACTING COMMANDER
DISTRIBUTION: 1A
  1 0381 AG HHD     REPL BN (P 805 WEST HARTFORD AVEN PONCA CITY OK 74604 3617
  1 CDR FT CLAYTON QUARRY HEIGHTS APO AA 34003
PACKET 6A

*(PLEASE READ INSTRUCTIONS ON THE REVERSE SIDE BEFORE COMPLETING AND SUBMITTING THIS FORM)*

# SERVICEMEN'S GROUP LIFE INSURANCE ELECTION AND CERTIFICATE

*IMPORTANT — This form is for use by ACTIVE DUTY AND RESERVE MEMBERS. This form does not apply to and cannot be used for any other Government Life Insurance.*

| USE THIS ► FORM FOR | 1. REDUCING OR REFUSING INSURANCE | 2. STATING TO WHOM AND HOW INSURANCE SHOULD BE PAID |
|---|---|---|
| | *(Do not make erasures, corrections or changes. Complete a new form)* | |

| LAST NAME - FIRST NAME - MIDDLE NAME | RANK, TITLE OR GRADE | SERVICE OR SOCIAL SECURITY NO. |
|---|---|---|
| EPSTEIN Lawrence Steven | LTC    O5 | ▉▉▉▉▉ |

| BRANCH OF SERVICE *(Do not abbreviate)* | CURRENT DUTY LOCATION |
|---|---|
| Army Reserve | IRR |

## 1. REDUCING OR REFUSING INSURANCE

By law you are automatically insured for $100,000. If you do not want $100,000 insurance write in your own handwriting "I want only $90,000, $80,000, $70,000, $60,000, $50,000, $40,000, $30,000, $20,000, $10,000 insurance," or "I want no insurance" as you prefer. Reduced or refused insurance can be restored only by written request with proof of good health and compliance with other requirements.

**BE SURE TO COMPLETE PART 2**

## 2. BENEFICIARY(IES) AND PAYMENT TO BENEFICIARY(IES) *(Read Instructions C and D on reverse)*

**IMPORTANT — You must write in the spaces below:**
(1) The names and other information for persons you want to receive your insurance, or
(2) "By Law" in your own handwriting if you wish the law to apply *(as explained on reverse)*

Insurance is paid in a lump sum or 36 equal monthly installments at the option of the beneficiary(ies). If you insert "36" under "Payments to Beneficiary," payment will be made only in 36 equal monthly installments.

**I DESIGNATE THE FOLLOWING BENEFICIARIES TO RECEIVE PAYMENT OF MY INSURANCE PROCEEDS AS SHOWN BELOW:**

| COMPLETE NAME AND ADDRESS OF EACH BENEFICIARY *(If married woman, give her own first and middle names) for example, Mary Lisa Smith, not Mrs. John Smith* | RELATION-SHIP TO INSURED | SHARES TO BE PAID TO EACH BENEFICIARY *(Use fractions such as 1/2, 2/3, 3/4, or "ALL")* | PAYMENTS TO BENEFICIARY *(insert "36" if only monthly payments desired. See D on reverse)* |
|---|---|---|---|
| PRINCIPAL *(First)* Shirley Weiss Epstein | Mother | All | 36 |
| CONTINGENT *(Second - If principal beneficiary dies before me or before completion of installment payments to the principal beneficiary)* Edward P. Epstein | Brother | All | 36 |

**NOTE:** If more than one principal beneficiary is named, the share of any such beneficiary who dies before me shall be distributed equally among the surviving principal beneficiaries. If there is no surviving principal beneficiary the proceeds shall be distributed equally to the surviving contingent beneficiaries. This Designation of Beneficiary shall be void if none of the designated beneficiaries is living at my death. If after completion of this form my insurance is increased, this beneficiary designation shall apply to the full amount in force unless a new designation is made.

I UNDERSTAND that this form cancels any prior beneficiary or payment instructions and that unless I have named the beneficiary(ies) above, my insurance will be paid under the "Provisions of the Law" as explained on the reverse of this form.

I UNDERSTAND that I cannot have combined SGLI and VGLI coverage at the same time for more than $100,000.

| SIGN HERE IN INK ► *(Signature of member, do not print)* | DATE COMPLETED 20 NOV 92 |
|---|---|

| WITNESSED AND RECEIVED BY: | RANK, TITLE OR GRADE | ORGANIZATION | DATE RECEIVED |
|---|---|---|---|
| | | | |

**SGLV - 8286,** SEP 1991    SUPERSEDES SGLV 8286, FEB 1990, WHICH WILL NOT BE USED.    MEMBER'S OFFICIAL PERSONNEL FILE 1

AFKA-ZI-PAAG-PA  (600-33a)                              1 2 AUG 1992

Commander, U.S. Army Garrison, Fort George G. Meade, Fort George G. Meade,
  Maryland  20755-5073
"Reviewed for completeness.  In Line of Duty."
Approved.

BY AUTHORITY OF THE SECRETARY OF THE ARMY:

MARK B. CARRINGTON
MAJ / AG
Assistant Director for
  Military Personnel/AG

00135

ANF

## STATEMENT OF MEDICAL EXAMINATION AND DUTY STATUS
For use of this form, see AR 600-8-1; the proponent agency is MILPERCEN

| THRU: (Include ZIP Code) | TO: (Include ZIP Code) | FROM: (Include ZIP Code) |
|---|---|---|
| COMMANDER STUDENT DETACHEMNT (CL OF 92 USAWC CARLISLE, PA 17013 | COMMANDER ATTN: AFKA-21-PAAG-PA FORT GEORGE G MEADE, MD 20755-5073 | COMMANDER DUNHAM US ARMY HLTH CLINIC CARLISLE BARRACKS, PA 17013-5003 |

| 1. NAME OF INDIVIDUAL EXAMINED (Last, First, and Middle Initial) | 2. SSN | 3. GRADE |
|---|---|---|
| EPSTEIN  LAWRENCE  S. | | O-5 |

| 4. ORGANIZATION AND STATION | 5. | ACCIDENT INFORMATION | |
|---|---|---|---|
| Student Detachment (Class of 1992) US Army War College, Carlisle, PA 17013 | a. DATE | b. PLACE (City and State) | |

### SECTION I - TO BE COMPLETED BY ATTENDING PHYSICIAN OR HOSPITAL PATIENT ADMINISTRATOR

**6. INDIVIDUAL WAS** ☒ DUY PATIENT  ☐ ADMITTED  ☐ DEAD ON ARRIVAL

**7. NAME OF HOSPITAL OR TREATMENT FACILITY** DBHC Carlisle Bks    ☐ CIVILIAN  ☒ MILITARY

**8. HOUR AND DATE ADMITTED**

**9. HOUR AND DATE EXAMINED** 1530 hrs    11 Jun 92

**10. NATURE AND EXTENT OF** ☐ INJURY ☒ DISEASE ☐ RESULTING IN DEATH (Explain)
Chronic Sinusitis

**11. MEDICAL OPINION  a. INDIVIDUAL** ☐ WAS ☒ WAS NOT UNDER THE INFLUENCE OF ☒ ALCOHOL ☒ DRUGS (Specify)

**b. INDIVIDUAL** ☒ WAS ☐ WAS NOT MENTALLY SOUND (Attach Psychiatric evaluation if appropriate).

**c. INJURY** ☐ IS ☒ IS NOT LIKELY TO RESULT IN A CLAIM AGAINST THE GOVERNMENT FOR FUTURE MEDICAL CARE.

**d. INJURY** ☒ WAS ☐ WAS NOT INCURRED IN LINE OF DUTY. *BASIS FOR OPINION:* Records & reports.

**12. THE FOLLOWING DISABILITY MAY RESULT** ☐ TEMPORARY ☒ PERMANENT PARTIAL ☐ PERMANENT TOTAL

**13. BLOOD ALCOHOL TEST MADE** ☐ YES ☐ NO

**14. NO. OF MG ALCOHOL/100 ML BLOOD**

**15. DETAILS OF ACCIDENT OR HISTORY OF DISEASE (how, where, when)**
CA has AD while on duty FORSCOM ATLANTA GA. Recurrent episodes sinusitis. Seen 10 Jun 92 where recurrent sinus surgy.

| 16. DATE 11 Jun 92 | 17. TYPED OR PRINTED NAME OF ATTENDING PHYSICIAN OR PATIENT ADMINISTRATOR FREDERICK A. THALER PA-C | 18. SIGNATURE *[signature]* |
|---|---|---|

### SECTION II - TO BE COMPLETED BY UNIT COMMANDER OR UNIT ADVISER

**19. DUTY STATUS** ☒ PRESENT FOR DUTY ☐ ABSENT WITHOUT AUTHORITY ☐ ABSENT WITH AUTHORITY ☐ ON PASS ☐ ON LEAVE

**20. HOUR AND DATE OF ABSENCE** a. FROM    b. TO

**21. ABSENCE WITHOUT AUTHORITY MATERIALLY INTERFERED WITH THE PERFORMANCE OF MILITARY DUTY (Explain in Item 30 type on duty mission, hours of duty, and how it did or did not interfere with performance)** ☐ YES ☐ NO

**22a. INDIVIDUAL WAS ON** ☒ ACTIVE DUTY ☐ ACTIVE DUTY FOR TRAINING ☐ INACTIVE DUTY TRAINING

**22b. HOUR AND DATE TRAINING** a. BEGAN    b. ENDED

**23. RESERVIST DIED OF INJURIES RECEIVED PROCEEDING** ☐ DIRECTLY TO TRAINING ☐ DIRECTLY FROM TRAINING

**24. MODE OF TRANSPORTATION** **25. HOUR BEGINNING TRAVEL** **26. DISTANCE INVOLVED** **28. NORMAL TIME FOR TRAVEL**

**28. DUTY STATUS AT TIME OF DEATH IF DIFFERENT FROM TIME OF INJURY OR CONTRACTION OF DISEASE** ☐ PRESENT FOR DUTY ☐ ABSENT WITH AUTHORITY ☐ ABSENT WITHOUT AUTHORITY

**30. DETAILS OF ACCIDENT - REMARKS (If additional space is needed, continue on reverse) (Attach inclosures as necessary)**
See Item 15.

| 31. FORMAL LINE OF DUTY INVESTIGATION REQUIRED ☐ YES ☒ NO | 32. INJURY IS CONSIDERED TO HAVE BEEN INCURRED IN LINE OF DUTY (Not applicable on death) ☒ YES ☐ NO | |
|---|---|---|
| 33. DATE Jun 92 | 34. TYPE NAME AND GRADE OF UNIT COMMANDER OR UNIT ADVISER L.A. MYERS, SGM | 35. SIGNATURE *[signature]* |

**DA FORM 2173 OCT 72**    REPLACES DA FORM 2173, 1 JUNE 56, WHICH IS OBSOLETE.    GPO : 1987 O 184-062 (60655)

00136

| CAUTION: NOT TO BE USED FOR IDENTIFICATION PURPOSES | THIS IS AN IMPORTANT RECORD. SAFEGUARD IT. | ANY ALTERATIONS IN SHADED AREAS RENDER FORM VOID |
| --- | --- | --- |

# CERTIFICATE OF RELEASE OR DISCHARGE FROM ACTIVE DUTY

| 1. NAME (Last, First, Middle) EPSTEIN, LAWRENCE STEVEN | 2. DEPARTMENT, COMPONENT AND BRANCH ARMY/USAR/MI | 3. SOCIAL SECURITY NO. |
| --- | --- | --- |

| 4.a. GRADE, RATE OR RANK LTC | 4.b. PAY GRADE O-5 | 5. DATE OF BIRTH (YYMMDD) | 6. RESERVE OBLIG. TERM. DATE Year 00 Month 00 Day 00 |
| --- | --- | --- | --- |

| 7.a. PLACE OF ENTRY INTO ACTIVE DUTY Madison Square, NY | 7.b. HOME OF RECORD AT TIME OF ENTRY (City and state, or complete address if known) |
| --- | --- |

| 8.a. LAST DUTY ASSIGNMENT AND MAJOR COMMAND US Army War College Student Det (DCSDPS) SF | 8.b. STATION WHERE SEPARATED Carlisle Barracks, PA |
| --- | --- |

| 9. COMMAND TO WHICH TRANSFERRED USAR Con Gp(IMA) ARPERCEN 9700 Page Blvd, St Louis, MO 63132 | 10. SGLI COVERAGE ☐ None Amount: $ 100,000 |
| --- | --- |

| 11. PRIMARY SPECIALTY (List number, title and years and months in specialty. List additional specialty numbers and titles involving periods of one or more years.) 36B  Area Intelligence Officer– 15yrs, 10 mos //35E  Counter Intelligence Officer//NOTHING FOLLOWS// | 12. RECORD OF SERVICE | Year(s) | Month(s) | Day(s) |
| --- | --- | --- | --- | --- |
| | a. Date Entered AD This Period | 91 | 07 | 14 |
| | b. Separation Date This Period | 92 | 06 | 15 |
| | c. Net Active Service This Period | 00 | 11 | 02 |
| | d. Total Prior Active Service | 03 | 11 | 19 |
| | e. Total Prior Inactive Service | 18 | 01 | 19 |
| | f. Foreign Service | 00 | 00 | 00 |
| | g. Sea Service | 00 | 00 | 00 |
| | h. Effective Date of Pay Grade | 89 | 06 | 03 |

| 13. DECORATIONS, MEDALS, BADGES, CITATIONS AND CAMPAIGN RIBBONS AWARDED OR AUTHORIZED (All periods of service) |
| --- |
| Army Commendation Medal(2d Award)//Army Achievement Medal//National Defense Service Medal(w/ Bronze Star)//Army Reserve Component Achievement Medal(3d Award)//Armed Forces Reserve Medal// Overseas Service Ribbon/Air Assault Badge//Sharpshooter Badge Rifle, M-16//"Con't in Block 18" |

| 14. MILITARY EDUCATION (Course title, number of weeks, and month and year completed) |
| --- |
| US Army War College–40 wks(Jun 92)//NOTHING FOLLOWS// |

| 15.a. MEMBER CONTRIBUTED TO POST-VIETNAM ERA VETERANS' EDUCATIONAL ASSISTANCE PROGRAM | Yes | No X | 15.b. HIGH SCHOOL GRADUATE OR EQUIVALENT | Yes | No X | 16. DAYS ACCRUED LEAVE PAID 19 |
| --- | --- | --- | --- | --- | --- | --- |

| 17. MEMBER WAS PROVIDED COMPLETE DENTAL EXAMINATION AND ALL APPROPRIATE DENTAL SERVICES AND TREATMENT WITHIN 90 DAYS PRIOR TO SEPARATION | X Yes | ☐ No |
| --- | --- | --- |

| 18. REMARKS |
| --- |
| Block 12d above does not account for annual and/or weekend training this soldier may have accomplished prior to date entered in Block 12a//DD Form 215 may be issued to correct any information//"Con't Block 13:  Israel Defense Forces Parachute Badge//The information contained herein is subject to computer matching within the Department of Defense or with any other affected Federal or Non-Federal agency for verification purposes and to determine eligibility for, and/or continued compliance with, the requirements of a Federal benefit program//NOTHING FOLLOWS// |

| 19.a. MAILING ADDRESS AFTER SEPARATION (Include Zip Code) | 19.b. NEAREST RELATIVE (Name and address - include Zip Code) LTC Edward Epstein, D.P.M. |
| --- | --- |

| 20. MEMBER REQUESTS COPY 6 BE SENT TO  NY  DIR. OF VET AFFAIRS X Yes ☐ No | 22. OFFICIAL AUTHORIZED TO SIGN (Typed name, grade, title and signature) |
| --- | --- |
| 21. SIGNATURE OF MEMBER BEING SEPARATED | L.M. DEIHL, GS-11, Chief, MPD |

## SPECIAL ADDITIONAL INFORMATION (For use by authorized agencies only)

| 23. TYPE OF SEPARATION Release From Active Duty Training | 24. CHARACTER OF SERVICE (Include upgrades) Honorable |
| --- | --- |

| 25. SEPARATION AUTHORITY  Self Terminating Orders ARPERCEN T05114030 dtd 15 May 91 USAWC Jun 92 | 26. SEPARATION CODE NA | 27. REENTRY CODE NA |
| --- | --- | --- |

| 28. NARRATIVE REASON FOR SEPARATION Completion of Period of Active Duty Training |
| --- |

| 29. DATES OF TIME LOST DURING THIS PERIOD None | 30. MEMBER REQUESTS COPY 4 Initials |
| --- | --- |

| DD Form 214, NOV 88 | Previous editions are obsolete. | SERVICE - 2 |
| --- | --- | --- |

00137

FILE OMPF 3013PREO
USAR active duty for training

 *1992091000157*

| SENIOR SERVICE COLLEGE ACADEMIC EVALUATION REPORT | DATE |
|---|---|
| For use of this form, see AR 623-1; the proponent agency is MILPERCEN. | 8 Jun 92 |

| 1. LAST NAME · FIRST NAME · MIDDLE INITIAL | 2. SSN | 3. GRADE | 4. BR | 5. COMPONENT |
|---|---|---|---|---|
| EPSTEIN, Lawrence S. | | LTC | MI | USAR |

| 6. COURSE TITLE | 7. NAME OF SCHOOL | 8. SPECIALTY |
|---|---|---|
| USAWC (I-250-C15) 92 | US Army War College | *35 A — |

| 9. PERIOD OF REPORT (Year, month, day) | | 10. DURATION OF COURSE (Year, month, day) | |
|---|---|---|---|
| From: 91 07 15   Thru: 92 06 15  [X] | | From: 91 08 05   Thru: 92 06 08 | |

| 11. EXPLANATION OF NONRATED PERIODS | 12. DID STUDENT SUCCESSFULLY COMPLETE THE COURSE? |
|---|---|
| | [X] YES   [ ] NO  (If No, explain reason in ITEM 16) |

13. COURSE OBJECTIVE AND DESCRIPTION:    The ten-month course of instruction provides advanced professional education for senior military officers and their counterparts in other federal agencies and foreign armies. Instruction focuses on strategic studies, war-fighting, national security policy, and the planning and execution of strategic and operational warfare. Instructional methods include lectures, seminar presentations and discussions, planning exercises and war games, and individual research.

The curriculum taken by all students includes: (1) examination, within an ethical framework, of the nature of leadership in a strategic environment; (2) U.S. national security policy, national military strategy, and the process and principles of their formulation; (3) examining the military requirements compared to achievable capabilities to support national military strategy and the functions of planning, programming, and budgeting systems; (4) translating national military strategy into near and mid-term programs and plans, with attention to joint and combined forces, doctrine, planning, decisionmaking, and warfighting and campaign planning; (5) examined principal characteristics and U.S. policy toward one of six regions of the world; and, (6) development and application of national and theater strategies through simulations, exercises and studies across the operational continuum.

The Advanced Course Program and optional courses provide students with a series of choices so they may pursue selected topics in considerable depth.

| 14. ADVANCED COURSE, RESEARCH AND SPECIAL PROGRAMS | | | |
|---|---|---|---|
| a. ADVANCED COURSE TITLE (Field of Study) | CREDIT | AUDIT | CLASSROOM HOURS |
| (1) Regional Strategic Appraisal:  Sub-Saharan Africa | X | | 27 |
| (2) Jt Land, Aerospace, & Sea Simulation (JLASS):  NE Asia Wargame | X | | 27 |
| (3) Intelligence & Campaigning:  Case Studies in Surprise & | | | |
| (4)   Deception | X | | 27 |
| (5) The Army's Partners:  Air Force, Navy & Marine Corps Forces | X | | 27 |
| (6) Roles & Missions of the U.S. Air Force | X | | 27 |
| (7) Fitness of the Army | X | | 27 |
| (8) | | | |

b. RESEARCH PROJECTS
LTC Epstein designed and produced an oral history project on the relationship of the military and media during Desert Shield/Storm. He made an extraordinary contribution to the holdings of the Military History Institute by depositing over 300 pages of completed transcripts for use by future researchers. The final product has been requested for review by offices of the Secretary of Defense and Headquarters, Department of the Army and was selected as a winner in the Army War College Writing Awards Program.

15. DESCRIBE THE PARTICULAR ABILITIES THAT WOULD MAKE CERTAIN FUTURE ASSIGNMENTS APPROPRIATE
LTC Epstein has shown himself to be a highly qualified and experienced Military Intelligence professional, capable of serving at the Joint Operational level. He was able to represent the U.S. Army Reserve (USAR) and act as a bridge between Active and Reserve Component seminar members. He is well qualified to serve in any Intelligence position. His abilities indicate that he can contribute best in senior positions in the USAR and should be placed in a high-level Individual Mobilization Augmentee (IMA) or Troop Unit position.

NOTE:  General officer & brigade command potential and academic ranking are omitted.

DA FORM 1059-2
1 NOV 77

SEP 03

2422 - 1-17-95

USAR active duty training?

V114

**STUDENT'S NAME**

EPSTEIN, Lawrence S.

**STUDENT'S SSN**

18. COMMENTS    (This item identifies the student's academic accomplishments.)

Cdr, U.S. Army Res Pers Cen, 9700 Page Blvd, St. Louis, MO  63132-5260

a.  Examined and studied strategic military leadership focusing on ethics, values, strategic vision, and the management of change.  Identified personal abilities, skills, and values through self-assessment instruments, gave an oral presentation on strategic leadership competencies of a prominent historical figure, and wrote a philosophy of command for a strategic leadership position.

b.  Analyzed the relationship between national security policy, strategy, and war.  In a course paper, explored an important strategic concept or issue for the United States in the 1990s.  In a small-group setting, observed the United Nations and local government during a field trip to New York City.  Participated in case studies and exercises involving the development of national military strategy.

c.  Analyzed the development, resourcing, and management of force capabilities to support CINC requirements; wrote a paper concerning the management of change.

d.  Studied joint organizations and doctrine; the National Military Strategy; its translation into global and regional guidance, and apportionment of forces in the Joint Strategic Capabilities Plan (JSCP); the JOPES, a process for developing theater and supporting plans; the CINCs' theater planning process for the development of theater strategies and theater war and contingency plans.

e.  Examined U.S. interests and policies from a global geopolitical perspective, focusing on the use of national power, strategy development, campaign planning, and warfighting.  Analyzed U.S. global priorities and regional interests, developed concepts and objectives at the national and theater level, analyzed relationships among U.S. alliances and military operations, examined the use of military power across the operational continuum, and participated in case studies of selected campaigns. Studies augmented by small-group observations in a field trip to Washington, D.C. Presented critiques of U.S. policy, strategy, and military planning.  Participated in political-military simulations involving potential U.S. strategic objectives.

f.  LTC Epstein achieved the U.S. Army War College academic standards for written presentations, oral presentations, preparation, and participation.

g.  LTC Epstein volunteered to be a student sponsor for the International Fellow from Burkina Faso.  His sponsorship ensured that the International Fellow gained the maximum benefits from his seminar membership by integrating him in all the seminar's academic, social, and athletic activities.

h.  LTC Epstein participated in the Joint Land, Aerospace, and Sea Simulation (JLASS 92) Exercise as the J2 working effectively at the strategic and operational levels of war.

i.  LTC Epstein was selected as a winner in the U.S. Army War College Oral History Writing Awards Program for 1992.

PASS 9204   71/185

17. AUTHENTICATION

a. TYPED NAME, GRADE, BRANCH, SSN AND TITLE OF PREPARING OFFICER

ROBERT B. TINSMAN, Colonel, AD

Faculty Adviser

SIGNATURE

b. TYPED NAME, GRADE, BRANCH, SSN AND TITLE OF REVIEWING OFFICER

WILLIAM A. STOFFT, Major General, USA

Commandant

SIGNATURE

a. FORWARDING ADDRESS (Reled Student)

19. MILITARY PERSONNEL OFFICER

b. DISTRIBUTION    MILPO TD 04

☐ 1. COPY FORWARDED TO STUDENT'S OFFICIAL RECORD

☑ 2. COPY FORWARDED TO STUDENT

USAR active duty training

**SERVICE MEMBER'S STATEMENT CONCERNING COMPENSATION FROM THE VETERANS ADMINISTRATION**

For use of this form, see AR 635-10; the proponent agency is MILPERCEN.

| DATE |
|------|
| 29 April 92 |

**1. PLACE OF SEPARATION** (Hospital or other separation activity)

**2.**

**INSTRUCTIONS FOR PERSONNEL BEING SEPARATED**

a. Each member being processed for separation from active military service for any reason who has undergone prolonged hospitalization, or suffered from wounds, injury or disease while in service, is advised to apply for compensation from the Veterans Administration by completing VA Form 21-526e. Each member who had a physical defect when entering the service which the member feels was aggravated by military service should file VA Form 21-526e. You are further advised that, if you do not apply for compensation from the Veterans Administration by completing VA Form 21-526e at the time of separation, you may do so at any time thereafter, that, if you do intend to file, it is advisable to do so before you leave the service as at that time your medical records are more easily obtainable and action by the Veterans Administration on your claim will be expedited thereby; and that filing VA Form 21-526e will in no way delay your separation.

b. Each member being discharged or released from active duty who has served at least 180 days and who was not provided a complete dental examination and all appropriate dental services and treatment within 90 days prior to discharge or release may apply for Veterans Outpatient Dental Treatment. Application must be made within 90 days of discharge or release from active duty.

c. When you have read the above paragraphs, check the items in 3.a. and 3.b. below, then complete items 4 and 5.

**3.**

I am being processed for separation from the Army and have been advised that:

a. I am entitled to file an application for compensation from the Veterans Administration.

I ☐ HAVE  ☐ HAVE NOT FILED APPLICATION FOR SUCH COMPENSATION ON VA FORM 21-526e.
☒ I UNDERSTAND THAT I MAY FILE AFTER I SEPARATE FROM THE ARMY.

b. ☐ IF ELIGIBLE UNDER 2B ABOVE, I MAY MAKE APPLICATION TO THE VA FOR VETERANS OUTPATIENT DENTAL TREATMENT. THIS APPLICATION MUST BE MADE WITHIN 90 DAYS OF DISCHARGE OR RELEASE FROM ACTIVE DUTY.

**4. NAME, GRADE, AND SSN** (Addressograph plate may be used)

Epstein, Lawrence S

**5. SIGNATURE OF MEMBER BEING SEPARATED**

**NOTE:** When application is filed for compensation on VA Form 21-526e, check documents listed below that have been sent to the Veterans Administration. Appropriate VA Office and address will be shown.

TO:

☐ VA FORM 21-526e (Application for Compensation or Pension from VA)

☐ A REPRODUCED COPY NO. 3 DD FORM 214 (Certificate of release or discharge from active duty)

HEALTH RECORDS INCLUDING THE FOLLOWING:

☐ SF 88 (Report of Medical Examination) — ☐ AT ENTRY      ☐ AT SEPARATION
☐ SF 93 (Report of Medical History) — ☐ AT ENTRY
☐ SF 600 (Health Record—Chronological Record of Medical Care)
☐ SF 603 (Health Record—Dental)

☐ Other (Specify)

ACTION HAS BEEN TAKEN TO TRACE THE MISSING RECORDS NOT CHECKED ABOVE — ☐ YES    ☐ NO
(State reason if action has not been taken)

**PREPARATION AND DISTRIBUTION**

Prepare in ORIGINAL only if a claim is not filed and place ORIGINAL in DA Form 201.
Prepare in DUPLICATE when a claim is filed or in all cases of physical disability separation.
Forward DUPLICATE copy with Health Records.

DA FORM 664
APR 82

EDITION OF 1 JUL 79 IS OBSOLETE.

☆ U.S.G.P.O.: 1989 — 201-424/80701

00140

CAUTION: NOT TO BE USED FOR
IDENTIFICATION PURPOSES

1. NAME (Last, First, Middle)
EPSTEIN LAWRENCE STEVEN

2. DEPARTMENT, COMPONENT AND BRANCH
ARMY/USAR/MI

3. SOCIAL SECURITY NO. (Also, Service Number if applicable)

ANY ALTERATIONS IN SHADED AREAS RENDER FORM VOID

4. MAILING ADDRESS (Include ZIP Code)

5. ORIGINAL DD FORM 214 IS CORRECTED AS INDICATED BELOW

| ITEM NO. | CORRECTED TO READ |
| --- | --- |

THIS IS TO CERTIFY THAT DD FORM 214 WAS CORRECTED 22 OCT 1991
CTRL GP (TNG) ARPERCEN 9700 PAGE BLVD ST LOUIS MO 63132-5200

9.
11
12C
18B03

ITEM 12D ABOVE DOES NOT ACCOUNT FOR ACTIVE DUTY FOR TRAINING THIS SOLDIER MAY
HAVE PRIOR TO DATE ENTERED IN ITEM 12A.//ORDERED TO ACTIVE DUTY IN SUPPORT OF
OPERATION DESERT SHIELD/STORM IAW 10 USC 673.//INDIVIDUAL COMPLETED PERIOD
FOR WHICH ORDERED TO ACTIVE DUTY FOR PURPOSE OF POST-SERVICE BENEFITS AND
ENTITLEMENTS.//SUBJECT TO ACTIVE DUTY RECALL AND/OR ANNUAL SCREENING.//
NOTHING FOLLOWS

/////// NOTHING FOLLOWS ////////////////////////////////////////////

6. DATE

26 MAR 1992

7. TYPED NAME, GRADE, TITLE AND SIGNATURE OF OFFICIAL AUTHORIZED TO SIGN:
JUDITH L. TILT, MAJ, AG, OIC IN A PADTE
MSG, NCOIC

DD FORM 215
1 JUL 79

S/N 0102-LF-000-2150

PREVIOUS EDITIONS
OF THIS FORM ARE
OBSOLETE.

CORRECTION TO DD FORM 214, CERTIFICATE OF RELEASE OR
DISCHARGE FROM ACTIVE DUTY

SERVICE-2

00141



FILE QMPF 3027 PREO

**DEPARTMENT OF THE ARMY**
UNITED STATES ARMY WAR COLLEGE
CARLISLE BARRACKS, PENNSYLVANIA 17013-5050



REPLY TO
ATTENTION OF

Box 106

28 JAN 92

COMMANDER:  U.S. Army Intelligence and Security Command
Fort Belvoir VA 22060-5370

THRU:  COMMANDER
U.S. Army Special Security Group
Fort George G. Meade, MD 20755-5998

SUBJECT: Referred Officer Evaluation Report and Request for
Commander's Inquiry

1.  On 10 January 1992 the attached OER dated 14 May 1991, was referred to me by Commander, Special Security Group and its receipt is acknowledged. (encl 1)

2.  On 28 August 1990 the same two officers rated me outstanding in every aspect. (encl 2)

3.  The sole and only variables in the intervening period were my unwillingness or inability to tolerate my commander's anti-Semitic remarks and jokes together with his overall insensitivity. My "disloyalty" resulted in an official investigation (encl 3) which in pertinent part states, "allegations relating to LTC Hudson, and his negative comments concerning LTC Epstein and the overall insensitivity of his (LTC Hudson's) verbal communications with others was substantiated" (Para 1, Page 2 of 14) and that about 20% of the enlisted personnel believed racial discrimination existed. (Para 3 Page 3 of 14)  In addition, as a result of my concern for fair and equal treatment within the command, LTC Hudson reviewed a written admonition concerning his remarks of an insensitive and inappropriate nature. (encl 4)

4.  This retaliatory report is illegal as a reprisal (see USC Section 2302 b[8] and [9]), unjust (see Para 5-30 b [1][a] AR 623-105), and violates the requirements of fairness and objectivity which are inherent in the letter and spirit of AR 623-105.  Therefore, pursuant to Paragraph 3-15, AR 623-105, I respectfully request that you conduct such further Commander's inquiry as is appropriate pursuant to paragraph 5-30, AR 623-105, and that the short period involved be designated as unrated.

LAWRENCE S. EPSTEIN
LTC  MI
USAR

Encl 2

00142

FILE QMPF3027 PREO



**DEPARTMENT OF THE ARMY**
HEADQUARTERS, US ARMY SPECIAL SECURITY GROUP
FORT GEORGE G. MEADE, MARYLAND 20755-5998

REPLY TO
ATTENTION OF:

IASSG-ZA                                                    11 December 1991

MEMORANDUM FOR LTC Lawrence S. EPSTEIN, ▮▮▮▮▮▮▮

SUBJECT: Referral of Officer Evaluation Report

1. References:

    a. Officer Evaluation Report (OER), LTC Epstein, for period 901022 to 910305. (Encl 1)

    b. Memorandum from LTC Epstein to Cdr, USASSG, dated 28 Oct 91. (Encl 2)

    c. 18 Oct 91 Memorandum, INSCOM IAPER-EO, subject: EO Complaint.

    d. Army Regulation 623-105, Officer Evaluation and Reporting System.

2. References (a) through (c) were forwarded to LTC Hudson for review in accordance with reference (d). LTC Hudson elected to make no changes to reference (a).

3. I have completed further review of all references. I have concluded that, based on the information provided, the senior rater portion of reference (a) should remain as written.

4. Para 5-28, reference (d) requires senior raters to refer completed reports to rated officers for acknowledgement and comment before sending to HQDA. Reference (b) provides your comments to the original report and, since the report has not been changed, can be included as a part of the report if you so desire. However, Para 5-28b states that "comments must be factual, concise, and limited to matters directly related to the evaluation on the OER; ... Extraneous or voluminous material ... and enclosures or attachments are not normally in the rated officer's best interest".

5. Request you notify this Headquarters of your preference for further processing of reference (a). If you desire that reference (b) in its entirety, be included with reference (a), we will accomplish that action upon written notification by you. If you wish to revise reference (b), provide us with your modified response. As a minimum, the response must include the acknowledgement statement shown at Enclosure 3.

6. Request your response NLT 15 Jan 91. Address any questions to me or LTC Langenfeld, DSN 923-5563/(301) 667-5563.

3 Encls                                    GEORGE D. CROMARTIE, JR.         16
                                           Colonel, MI
                                           Commanding

Encl 1

1477

## CERTIFICATE OF CLEARANCE AND/OR SECURITY DETERMINATION
For use of this form, see AR 604-5, AR 604-10, AR 601-270, and AR 690-1; the proponent agency is
Office of Assistant Chief of Staff for Intelligence.

### PART I - BASIC INFORMATION

| | |
|---|---|
| FROM: *(Originating Headquarters) (Include ZIP Code)* | DOSSIER NUMBER |
| USA CENTRAL PERSONNEL SECURITY CLEARANCE FACILITY (CCF) FORT GEORGE G. MEADE, MARYLAND 20755-5250 | not used |

| LAST NAME - FIRST NAME - MIDDLE NAME | MILITARY OR CIVILIAN GRADE | SOCIAL SECURITY ACCOUNT NUMBER |
|---|---|---|
| EPSTEIN LAWRENCE STEVEN | ACTIVE DUTY OFFICER | ████████ |

| DATE OF BIRTH *(Day, Month, Year)* | PLACE OF BIRTH *(City, County, State, Country)* | CIVILIAN JOB TITLE *(if any)* |
|---|---|---|
| 01 APR 49 | NEW YORK USA | not used |

### PART II - SECURITY CLEARANCE

| DATE INVESTIGATION COMPLETED *(Day, Month, Year)* | TYPE OF INVESTIGATION CONDUCTED | AGENCY OR COMMAND WHICH CONDUCTED INVESTIGATION |
|---|---|---|
| 24 MAY 91 | PERIODIC REINVESTIGATION OR SBI | not used |

| HIGHEST CLASSIFICATION OF INFORMATION TO WHICH ACCESS IS AUTHORIZED *(Top Secret, Secret, Confidential)* | DATE INTERIM CLEARANCE GRANTED *(Day, Month, Year)* | DATE FINAL CLEARANCE GRANTED *(Day, Month, Year)* |
|---|---|---|
| ***TOP SECRET*** ***************** | | 01 OCT 91 |

### PART III - REMARKS

THIS CERTIFICATE SUPERSEDES ALL PREVIOUSLY ISSUED CLEARANCE CERTIFICATES
DESTROY ALL PREVIOUS COPIES
THIS TOP SECRET CLEARANCE BECOMES INVALID 5 YEARS FROM DATE OF
INVESTIGATION AND IS ADMINISTRATIVELY DOWNGRADED TO SECRET ON THAT DATE
UNLESS A PR HAS BEEN SUBMITTED TO DIS.

DOSSIER REVIEW REQUIRED FOR CRITICAL NUCLEAR DUTY

COMMANDANT
US ARMY WAR COLLEGE
ATTN: PERSONNEL SCTY BRANCH
CARLISLE BARRACKS, PA 17013-5000

W2HSAA

### PART IV - PREPARING OFFICIAL

| ORGANIZATION | PLACE | DATE |
|---|---|---|
| USA CCF - (723A) | FORT MEADE, MD 20755-5250 | 01 OCT 91 |

| TYPED NAME, GRADE AND SOCIAL SECURITY ACCOUNT NUMBER | SIGNATURE |
|---|---|
| ROBERT J. FULLERTON, COL, ████████ | /S/ ROBERT J. FULLERTON, COL |

DISTRIBUTION

☒ Military Personnel Records Jacket *(DA Form 201)* or Civilian Official Personnel Folder
☐ Official Military Personnel Folder
☐ U.S. Army Investigative Records Repository
☐ Other *(Specify)*

**DA FORM 873** 1 DEC 69        REPLACES EDITION OF 1 MAR 63, WHICH IS OBSOLETE.

00144

2433 12/3569

B-10

DEPARTMENT OF THE ARMY
OFFICE OF THE ADJUTANT GENERAL
RESERVE COMPONENTS PERSONNEL AND ADMINISTRATION CENTER
ST. LOUIS, MISSOURI 63132

IN REPLY
REFER TO:

SUBJECT: Statement of Retirement Points                    1 SEP 81

REASON FOR ISSUANCE:    ANNUAL

EPSTEIN LAWRENCE STEVEN                         CPT

YCC: M10    UIC: VJGAAO (1)
UNIT NO BR DESIGNATION
0339 MI CO (COLLECTION)

Official records show that you have earned the retirement points during the period from    06 JUN 80    to    05 JUN 81

Points shown below are a recapitulation of retirement credits as received by the Center from outside agencies. If there are errors or omissions, please return this statement with your request for correction. Include copies of pay vouchers, record of attendance, correspondence course completions.    SUBMIT REQUESTS THROUGH UNIT COMMANDER

| TYPE | POINTS | DATES | TYPE | POINTS | DATES |
|------|--------|-------|------|--------|-------|
|      |        | DATA SOURCE: DA FORM 3593 |      |        |       |
|      |        | ARMY RESERVE |      |        |       |
|      |        | RETIREMENT CREDIT CARD |      |        |       |
|      |        |       |      |        |       |
|      |        | REPORTING UIC: VJG AAO |      |        |       |
|      |        |       |      |        |       |
|      |        | FURNISHED IN LIEU OF DA FORM 1383 |      |        |       |
|      |        |       |      |        |       |
|      |        | PERIOD OF SERVICE QUALIFYING FOR RETIREMENT PURPOSES |      |        |       |
|      |        |       |      |        |       |
|      | PRE-DUTY 035 | EXT COURSE 003 | ACTIVE DUTY 016 | MEMBERSHIP 015 | TOTAL 071 | CREDITABLE FOR RET PURPOSES |

Fifteen points are granted for membership. A minimum of 50 points constitutes a qualifying year for retirement purposes. Although all points are shown, the law provides that no more than 365 points (366 in a leap year) may be credited. The law also provides that the combined total points that may be credited for Reserve Duty plus Extension Courses plus Membership may not exceed 60. This maximum of 60 is proportionately reduced for periods less than a full year.

DISTRIBUTION    RO1 UNIT (INDIVIDUAL)
RC2 UNIT (MPF)
R05 OMPF    (1R)

National Defense University

Washington, D.C.
United States of America



Be it known that

Lieutenant Colonel Lawrence S. Epstein, USAR

has completed the

National Security Management Course

and in testimony whereof is awarded this

Diploma

26 August 1991

Vice Admiral, U.S. Navy
President
National Defense University

00146

*[PLEASE READ INSTRUCTIONS ON THE REVERSE SIDE BEFORE COMPLETING AND SUBMITTING THIS FORM]*

## SERVICEMEN'S GROUP LIFE INSURANCE ELECTION

**IMPORTANT** – This form is for use by ACTIVE DUTY AND RESERVE MEMBERS. This form does not apply to and cannot be used for any other Government Life Insurance.

| USE THIS FORM FOR ▶ | 1. REDUCING OR REFUSING INSURANCE | 2. STATING TO WHOM AND HOW INSURANCE SHOULD BE PAID |
|---|---|---|
| | *(Do not make erasures, corrections or changes. Complete a new form)* | |

| LAST NAME – FIRST NAME – MIDDLE NAME | RANK, TITLE OR GRADE | SERVICE OR SOCIAL SECURITY NO. |
|---|---|---|
| ESTEIN LAWRENCE STEVEN | LTC | ▮▮▮▮▮▮▮ |

| BRANCH OF SERVICE (Do not abbreviate) | CURRENT DUTY LOCATION |
|---|---|
| UNITED STATES ARMY | USAWC STUDENT DETACHMENT CARLISLE BARRACKS, PA 17013 |

### 1. REDUCING OR REFUSING INSURANCE

By law you are automatically insured for $35,000. If you do not want $35,000 insurance write below in your own handwriting "I want only $30,000, $25,000, $20,000, $15,000, $10,000 or $5,000 insurance," or "I want no insurance" as you prefer. Reduced or refused insurance can be restored only by written request with proof of good health and compliance with other requirements.

*BE SURE TO COMPLETE PART 2*

### 2. BENEFICIARY(IES) AND PAYMENT TO BENEFICIARY(IES) (Read Instructions C and D on reverse)

**IMPORTANT** — You must write in the spaces below:
(1) The names and other information for persons you want to receive your insurance, or
(2) "By Law" in your own handwriting if you wish the law to apply (as explained on reverse)

Insurance is paid in a lump sum or 36 equal monthly installments at the option of the beneficiary(ies). If you insert "36" under "Payments to Beneficiary," payment will be made only in 36 equal monthly installments.

**I DESIGNATE THE FOLLOWING BENEFICIARIES TO RECEIVE PAYMENT OF MY INSURANCE PROCEEDS AS SHOWN BELOW:**

| COMPLETE NAME AND ADDRESS OF EACH BENEFICIARY *(If married woman, give her own first and middle names and husband's last name)* | RELATION-SHIP TO INSURED | SHARES TO BE PAID TO EACH BENEFICIARY *(Use fractions such as 1/2, 2/3, 3/4, or "ALL")* | PAYMENTS TO BENEFICIARY *(Insert "36" if only monthly payments desired. See D on reverse)* |
|---|---|---|---|
| **PRINCIPAL (First)** Shirley W Epstein ▮▮▮▮▮▮ | mother | All | 36 |
| **CONTINGENT** *(Second – If principal beneficiary dies before me or before completion of installment payments to the principal beneficiary)* Edward P Epstein ▮▮▮▮▮▮ | Brother | All | 36 |

**NOTE:** If more than one principal beneficiary is named, the share of any such beneficiary who dies before me shall be distributed equally among the surviving principal beneficiaries. If there is no surviving principal beneficiary the proceeds shall be distributed equally to the surviving contingent beneficiaries. This Designation of Beneficiary shall be void if none of the designated beneficiaries is living at my death. If after completion of this form my insurance is increased, this beneficiary designation shall apply to the full amount in force unless a new designation is made.

**I UNDERSTAND** that this form cancels any prior beneficiary or payment instructions and that unless I have named the beneficiary(ies) above, my insurance will be paid under the "Provisions of the Law" as explained on the reverse of this form.

**I UNDERSTAND** that I cannot have combined SGLI and VGLI coverage at the same time for more than $35,000.

| SIGN HERE IN INK ▶ *(Signature of insured) (Do not print)* | DATE COMPLETED 11 Jul 91 |
|---|---|

| WITNESSED AND RECEIVED BY: | RANK, TITLE OR GRADE 6S4 | ORGANIZATION MPD | DATE RECEIVED 910715 |
|---|---|---|---|

| VA FORM OCT 1981 **29-8286** | SUPERSEDES VA FORM 29-8286, JUL 1974, WHICH WILL NOT BE USED. | | MEMBER'S OFFICIAL PERSONNEL FILE 1 |

## IMPORTANT - READ CAREFULLY

### PROVISIONS OF THE LAW FOR PAYMENT OF INSURANCE

If you do not name a beneficiary to receive the proceeds of your insurance, it will be paid under the provisions of the law, to your survivor(s) in the following order:

1. Widow or widower; if none, it is payable to
2. Child or children in equal shares with the share of any deceased child distributed among the descendants of that child; if none, it is payable to
3. Parent(s) in equal shares; if none, it is payable to
4. A duly appointed executor or administrator of the insured's estate, and if none to
5. Other next of kin.

NOTE: If you want a specific person to receive your insurance, then you must name the person in Part 2, otherwise, it will be paid as provided above.

### INSTRUCTIONS TO MEMBER

**GENERAL**

A. Make certain you complete all the appropriate item(s).

B. All entries, except the signature and those requested to be in your handwriting, should be typed or printed in ink.

C. DESIGNATION OF BENEFICIARY

Completing this form will cancel any prior beneficiary or payment instructions. You should name a beneficiary or write "By Law" in Part 2. (See "IMPORTANT" on front.)

There are no restrictions on the beneficiaries you may name. In some family situations such as if you are a step-child or step-parent or were abandoned by a parent or are separated from your wife, etc., you may by naming beneficiaries specifically include or exclude certain persons as you desire.

1. A change of beneficiary may be made by the insured at any time without the knowledge or consent of the beneficiary, and this right cannot be waived or restricted.

2. A Designation of Beneficiary may not be changed by correcting entries on earlier designations. If a change of a prior designation of beneficiary is desired, a new VA Form 29-8286 should be completed to show the name(s) of the new beneficiary(ies) in Part 2.

3. No designation or change of beneficiary will be valid unless it is received in writing over your signature, by your Uniformed Service, before your death.

D. PAYMENTS TO BENEFICIARY

In case of your death the beneficiary can elect to receive the insurance in a single payment of the face value or in 36 equal monthly installments. If you so desire you can limit a beneficiary to receiving the insurance in 36 equal monthly installments by inserting "36" in the space provided on the front of the form.

E. Make certain all three copies of this form are completed and signed.

### DIRECTIONS TO UNIFORMED SERVICES

- Make sure the name(s) of a beneficiary(ies) or the designation "By Law" appears in Part 2.

- The personnel or other responsible activity should explain to the member the need for naming beneficiaries in family situations such as those referred to under C above. Also if a member is designating a beneficiary other than would be normal under his family circumstances, see "Unusual Beneficiary Designations" Servicemen's Group Life Insurance Handbook, VA Handbook 29-75-1.

- This form must be signed and dated, below the signature of the member, by an authorized representative of the Uniformed Service.

- This form, properly executed, is authority to a payroll office to reduce the deductions for insurance purposes or not to make such deductions, if the amount of insurance is changed or canceled.

- Disposition of copies:

  Copy 1 - Must be promptly filed in the official personnel file of the member.

  Copy 2 - To Member. This copy for informational purposes only.

  Copy 3 - FOR THE UNIFORMED SERVICES AND RESERVES USE - DO NOT SEND TO THE OFFICE OF SERVICEMEN'S GROUP LIFE INSURANCE OR TO THE VETERANS ADMINISTRATION.

| | |
|---|---|
| 1a. Soldier's Name/Address | EPSTEIN LAWRENCE STEPHEN |
| | SINGLE |
| | NONE |
| 6. Father's Name/Address | EUGENE EPSTEIN/ADDRESS UNKNOWN |
| 8. Mother's Name/Address | SHIRLEY W(WEISS)EPSTEIN/280 PARK AVE SOUTH NY NY   10010 |
| | EUGEN EPSTEIN/FATHER/SEE ITEM EDWARD P EPSTEIN/BRO/SEE ITEM #9 |
| | EDWARD P EPSTEIN/BRO/1 APR 1944/10 SLEEPY HOLLOW BRADFORD PA16701/100% |
| | EDWARD P EPSTEIN/BR/1 APR 1944/10 SLEEPY HOLLOW BRADFORD PA 16701/100% |
| | EDWARD P EPSTEIN/BR/1 APR 1944/10 SLEEPY HOLLOW BRADFORD PA 16701/100% |
| | NONE STATED |

DR: EDWARD P EPSTEIN/BROTHER/SEE ITEM #9/REF ITEM #8a: SEE ITEM #6

| 14. SIGNATURE OF SERVICE MEMBER | 15. SIGNATURE OF WITNESS | 16. DATE SIGNED |
|---|---|---|
| *[signature]* | *[signature]* BUB0 654 | 910715 |

**INSTRUCTIONS TO SERVICEMEMBER**    This extremely important form is to be used by you to show the names and addresses of your spouse, children, parents, and any other person(s) you would like notified if you become a casualty, and, to designate beneficiaries for certain benefits if you die. IT IS YOUR RESPONSIBILITY to keep your Record of Emergency Data up to date to show your desires as to beneficiaries to receive certain death payments, and to show changes in your family or other dependents listed; for example, as a result of marriage, civil court action, death, or address change. Regarding your designation in item 11, allotment if missing (if used by your Service), please read the following statement carefully, and sign on the line provided:

I fully understand that, if I am captured, missing, or interned, my designation of allotments to dependents from my pay and allowances serves only as a guide to the Secretary of my Service. The Secretary may alter my designated allotment in the best interests of myself, my dependents, or the United States Government.

*[signature]*
SIGNED

CAUTION: NOT TO BE USED FOR
IDENTIFICATION PURPOSES

 

THIS IS AN IMPORTANT RECORD.
SAFEGUARD IT.

ANY ALTERATIONS IN SHADED
AREAS RENDER FORM VOID

## CERTIFICATE OF RELEASE OR DISCHARGE FROM ACTIVE DUTY

| 1. NAME (Last, First, Middle) | 2. DEPARTMENT, COMPONENT AND BRANCH | 3. SOCIAL SECURITY NO. |
|---|---|---|
| EPSTEIN, LAWRENCE STEVEN | ARMY/USAR/MI | |

| 4.a. GRADE, RATE OR RANK | 4.b. PAY GRADE | 5. DATE OF BIRTH (YYMMDD) | 6. RESERVE OBLIG. TERM. DATE |
|---|---|---|---|
| LTC | O-5 | Year 00  Month 00  Day 00 | Year 00  Month 00  Day 00 |

| 7.a. PLACE OF ENTRY INTO ACTIVE DUTY | 7.b. HOME OF RECORD AT TIME OF ENTRY (City and state, or complete address if known) |
|---|---|
| FORT MCPHERSON, GA 30330-5000 | |

| 8.a. LAST DUTY ASSIGNMENT AND MAJOR COMMAND | 8.b. STATION WHERE SEPARATED |
|---|---|
| HQ, FORSCOM, FORT MCPHERSON   FC | FORT MCPHERSON, GA 30330-5000 |

| 9. COMMAND TO WHICH TRANSFERRED USAR CONTROL GROUP (IMA), 9700 PAGE BLVD, ST. LOUIS, MO  63132 | 10. SGLI COVERAGE | None |
|---|---|---|
| | Amount: $  10000 | |

| 11. PRIMARY SPECIALTY (List number, title and years and months in specialty. List additional specialty numbers and titles involving periods of one or more years.) | 12. RECORD OF SERVICE | Year(s) | Month(s) | Day(s) |
|---|---|---|---|---|
| 36600-AREA INTELLIGENCE OFFICER, 14 YRS, 9 MOS//36B00-SPECIAL SECURITY OFFICER, 4 YRS, 5 MOS//NOTHING FOLLOWS | a. Date Entered AD This Period | 90 | 10 | 22 |
| | b. Separation Date This Period | 91 | 05 | 27 |
| | c. Net Active Service This Period | 00 | 07 | 06 |
| | d. Total Prior Active Service | 03 | 04 | 13 |
| | e. Total Prior Inactive Service | 17 | 04 | 04 |
| | f. Foreign Service | 00 | 00 | 00 |
| | g. Sea Service | 00 | 00 | 00 |
| | h. Effective Date of Pay Grade | 89 | 08 | 03 |

| 13. DECORATIONS, MEDALS, BADGES, CITATIONS AND CAMPAIGN RIBBONS AWARDED OR AUTHORIZED (All periods of service) |
|---|
| NATIONAL DEFENSE SERVICE MEDAL-2/ARMY RESERVE COMPONENTS ACHIEVEMENT MEDAL-3//ARMED FORCES RESERVE MEDAL//OVERSEAS SERVICE RIBBON//RIFLE M16 SHARP-SHOOTER QUAL BADGE//AIR ASSUALT BADGE//ARMY ACHIEVEMENT   SEE ITEM 18 |

| 14. MILITARY EDUCATION (Course title, number of weeks, and month and year completed) |
|---|
| NONE//NOTHING FOLLOWS |

| 15.a. MEMBER CONTRIBUTED TO POST-VIETNAM ERA VETERANS' EDUCATIONAL ASSISTANCE PROGRAM | Yes | No | 15.b. HIGH SCHOOL GRADUATE OR EQUIVALENT | Yes | No | 16. DAYS ACCRUED LEAVE PAID |
|---|---|---|---|---|---|---|
| | | X | | X | | NA |

| 17. MEMBER WAS PROVIDED COMPLETE DENTAL EXAMINATION AND ALL APPROPRIATE DENTAL SERVICES AND TREATMENT WITHIN 90 DAYS PRIOR TO SEPARATION | Yes | No |
|---|---|---|

| 18. REMARKS ITEM 13 CONT - MEDAL-2//ARMY COMMENDATION MEDAL//DD FORM 215 WILL BE ISSUED BY ARPERCEN TO PROVIDE MISSING INFORMATION//"ORDERED TO ACTIVE DUTY IN SUPPORT OF OPERATION DESERT SHIELD/STORM IAW 10 USC 673B."//"INDIVIDUAL COMPLETED PERIOD FOR WHICH ORDERED TO ACTIVE DUTY FOR PURPOSE OF POST-SER-VICE BENEFITS AND ENTITLEMENTS."//NOTHING FOLLOWS |
|---|

| 19.a. MAILING ADDRESS AFTER SEPARATION (Include Zip Code) | 19.b. NEAREST RELATIVE (Name and address - Include Zip Code) |
|---|---|
| | EDWARD P. EPSTEIN, |

| 20. MEMBER REQUESTS COPY 6 | CNT | DK OF VET AFFAIRS | X | NO | 22. OFFICIAL AUTHORIZED TO SIGN (Typed name, grade, title and signature) |
|---|---|---|---|---|---|
| 21. SIGNATURE OF MEMBER BEING SEPARATED | | | | | RAFAEL G. CHAVEZ, MAJ, AG, ADJ GEN |

| SPECIAL ADDITIONAL INFORMATION (For use by authorized agencies only) |
|---|

| 23. TYPE OF SEPARATION | 24. CHARACTER OF SERVICE (Include upgrades) |
|---|---|
| RELEASED FROM ACTIVE DUTY | HONORABLE |

| 25. SEPARATION AUTHORITY | 26. SEPARATION CODE | 27. REENTRY CODE |
|---|---|---|
| AR 635-100, CHAP 3, SEC XI | LBK | NA |

| 28. NARRATIVE REASON FOR SEPARATION |
|---|
| EXPIRATION TERM OF SERVICE |

| 29. DATES OF TIME LOST DURING THIS PERIOD | 30. MEMBER REQUESTS COPY 4 |
|---|---|
| NONE | Initials |

DD Form 214, NOV 88        Previous editions are obsolete.        SERVICE - 2

 

DEPARTMENT OF THE ARMY
HEADQUARTERS FORT MCPHERSON
FORT MCPHERSON, GEORGIA  30330-5000

ORDERS 138-221                                          18 MAY 1991

FOLLOWING ORDER IS AMENDED AS INDICATED.

SO MUCH OF:  ORDERS 137-211, THIS HEADQUARTERS, DATED 17 MAY 1991
PERTAINING TO:  THE SEPARATION OF:
EPSTEIN LAWRENCE STEVEN            ▮▮▮▮▮▮▮        LTC
HQ FORCES COMMAND                 (W3YBAA)
AS READS:  ASSIGNED TO:  USA SPEC SCTY GP, ATTN:  IASSG-A, BLDG 8544,
FORT MEADE, MD  20755
HOW CHANGED:  IS AMENDED TO READ:  ASSIGNED TO:  USAR CONTROL GROUP
(IMA), ARPERCEN, 9700 PAGE BLVD, ST. LOUIS, MO  63132
FORMAT:  700

FOR THE COMMANDER:                    ***************
                                      **OFFICIAL FT**
                                      *MCPHERSON, GA*
                                      ***************
DISTRIBUTION:                         RAFAEL G. CHAVEZ
MPD, RECORDS (1)                      MAJ, AG
MPD, TRANSITION POINT (1)             ADJUTANT GENERAL
FAO, MILITARY PAY (1)
CDR, FT MCPHERSON, ATTN: AFZK-PA-FAS, FT MCPHERSON, GA 30330-5000 (1)
LTC  EPSTEIN LAWRENCE STEVEN  (10)
USA SPEC SCTY GP, ATTN:  IASSG-A, BLDG 8544, FORT MEADE, MD 20755 (1)
CDR, HQ FORCES COMMAND, FORT MCPHERSON, GA  30330-5000  (1)

DEPARTMENT OF THE ARMY
HEADQUARTERS FORT MCPHERSON
FORT MCPHERSON, GEORGIA  30330-5000

ORDERS 137-211                                        17 MAY 1991

EPSTEIN LAWRENCE STEVEN          ████████    LTC
HQ FORCES COMMAND (W3YBAA) FORT MCPHERSON, GA  30330-5000

YOU ARE RELEASED FROM ACTIVE DUTY, NOT BY REASON OF PHYSICAL
DISABILITY, AND ASSIGNED AS INDICATED ON DATE IMMEDIATELY FOLLOWING
RELEASE FROM ACTIVE DUTY.  ANY TEMPORARY APPOINTMENTS HELD ARE
TERMINATED ON YOUR EFFECTIVE DATE OF RELEASE FROM ACTIVE DUTY.

EFFECTIVE DATE OF RELEASE FROM ACTIVE DUTY:  27 MAY 1991
ASSIGNED TO:  USA SPEC SCTY GP, ATTN:  IASSG-A, BLDG 8544, FORT
MEADE, MD 20755
TERMINAL DATE OF RESERVE OBLIGATION:  NOT APPLICABLE
ADDITIONAL INSTRUCTIONS:
(A)  YOU ARE REQUIRED TO CLEAR INSTALLATION PRIOR TO DEPARTURE.
(B)  OUTPROCESSING PROCEDURES WILL BE COORDINATED BETWEEN SOLDIER AND
TRANSITION POINT.
(C)  YOUR TERMINAL LEAVE WILL COMMENCE ON 18 MAY 91 AND CONCLUDE ON
27 MAY 91.

FOR ARMY USE
HOR:  WARETOWN, NJ
PL EAD OR OAD:  FORT MCPHERSON, GA
MDC:  7801
COMP:  USAR
PEBD:  NOT APPLICABLE
FORMAT:  523

FOR THE COMMANDER:                    ****************
                                      **OFFICIAL FT**
                                      *MCPHERSON, GA*
                                      ****************
DISTRIBUTION:                         RAFAEL G. CHAVEZ
MPD, TRANSITION POINT (1)             MAJ, AG
MPO, TACC (1)                         ADJUTANT GENERAL
FAO, MILITARY PAY (1)
DIR, FTSMC, ATTN:  DARP-AR, PO BOX 46906, ST LOUIS, MO 63146-5200 (2)
CDR, ARPERCEN, ATTN:  DARP-PPR-PMP, 9700 PAGE BLVD, ST LOUIS, MO
63132-5200 (1)
CDR, ARPERCEN, ATTN:  DARP-ARP-OT, 9700 PAGE BLVD, ST LOUIS, MO
63132-5200 (1)
CDR, HQ FORSCOM, ATTN:  FCJ1-FSR, FT MCPHERSON, GA 30330-6000 (2)
CDR, HHC 3D US ARMY, ATTN:  AFRD-HHC, FT GILLEM, GA  30050-5000 (2)
CDR, USA SPEC SCTY GP, ATTN:  IASSG-A, BLDG 8544, FORT MEADE, MD
20755  (2)
LTC   EPSTEIN LAWRENCE STEVEN        (10)

00152

DEPARTMENT OF THE ARMY
U. S. ARMY RESERVE PERSONNEL CENTER
9700 PAGE BOULEVARD
ST. LOUIS, MO 63132-5200

DARP-OPD-0231                                                15 MAY 91
ORDERS  T-05-114030

EPSTEIN LAWRENCE STEVEN            OPD-0231         LTC MI 35F
                                                   INDIVIDUAL MOBILIZATION AUG

YOU ARE ORDERED TO ACTIVE DUTY FOR TRAINING (ADT) FOR THE PERIOD SHOWN.
UPON COMPLETION OF THE PERIOD OF ADT, UNLESS SOONER RELEASED OR EXTENDED
BY PROPER AUTHORITY, YOU WILL RETURN TO THE PLACE WHERE YOU ENTERED ADT.

PERIOD: 337 DAYS PLUS ALLOWABLE TRAVEL TIME
REPORT TO: USAWC ADM DIV RM B21 ROOT HALL BLDG 122
  CARLISLE BARRACKS PA 17013
REPORTING DATE: RPT NLT 1200 HRS 15 JUL 91
ATTACHED TO: USAWC ATTN: AWCE CARLISLE BARRACKS PA 17013
PURPOSE: ARMY WAR COLL

ADDITIONAL INSTRUCTIONS: YOU ARE ATCHD FOR ADMIN SPT TO INCLUDE ADMIN OF UCMJ.
PANOGRAPHIC DENTAL X-RAY OR SF 603 RQD, IF NOT PREVIOUSLY PROVIDED. ID CARD & -
DOG TAGS RQD TO BE ON PERSON WHILE ON GOVT ORDERS. BREAK IN TVL TIME TO/FR HOR
NOT AUTH.  CALL ARPERCEN POC ON THE LAST DAY OF DUTY OR IF UNABLE TO COMPLY WI-
TH THIS ORDER. REIMBURSEMENT FOR TRAVEL LIMITED TO GOVT RATE. HIV CLEARED. APR-
T RQD IAW AR 350-15. JOGGING SHOES & PT CLOTHING RQD FOR PHYSICAL TNG & APRT. -
FWD RESULTS IAW AR 140-1 PARA 3-5B. UPON ARRIVAL RPT TO BILLETING OFC. VEHICLE
RENTAL NOT AUTH.  PCS MOVEMENT OF DEPNS & HHG AUTH. NO PER DIEM AT DY STA. POV -
AUTH. REPORTING PRIOR TO PRESCRIBED DATE NOT AUTH. RPT NLT 1200 HRS, 29 JUL 91-
. INPROCESS 1 AUG 91. PAYMENT BY CARLISLE BARRACKS F&AO. ADVANCE IF AUTHORIZED-
, WILL BE CHARGED TO S36004.

FOR ARMY USE: AUTH:10 USC 672(D)& 683(A)(1) ADT W
ACCT CLAS: 2112070  22-7010 P4K11.10000 EPS4328114030*/(CXCG) (EST ONLY)(1198-
  $11157)(1199- $21722)(1210-        )(1250-  $853)(219C-  $210)(211C-        )(2219-
  $150)(2231- $3250)(2232-        )(2572-        )(257L-        )(257M-        )S23185
ACCT CLAS: 2122070  22-7010 P4K11.10000 EPS4328114030*/(R8HNCE)(EST ONLY)(1198-
  $40483)(1199- $7101)(1210-        )(1250- $2790)(219C-        )(211C-        )(2219-
  $150)(2231- $3250)(2232-        )(2572-        )(257L-        )(257M-        )S23185
PPN:      COMP: USAR    PEBD: 06 JUN 69   SEX: M  SCTY CL: SECRET
DOR: 03 JUN 89 SITE: 200393   TYTR: X04 2TSC:        STSC:
HOR: SAME AS SNL
FORMAT 261

***********               THOMAS J. KILMARTIN
* ARPERCEN *              BRIGADIER GENERAL, USA
* OFFICIAL *              COMMANDING
***********
DISTRIBUTION: 1A
  1 USAWC ATTN: AWCE CARLISLE BARRACKS PA 17013
PACKET 6A

00153

IN REPLY REFER TO
**DARP-PAT-I Epstein, Lawrence S.**
**SSN** ▓▓▓▓▓▓▓

Department of the Army
Office Chief Army Reserve
U.S. Army Reserve Personnel Center
St. Louis, Missouri  63132
AUTHORIZATION FOR ISSUANCE OF AWARDS

| TO: | Commander US Army Support Activity Philadelphia, PA        19101 | DATE 8 April 1991 |
|---|---|---|

### CODE NUMBERS FOR AWARDS

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 1 | MEDAL OF HONOR | 14 | PURPLE HEART | 27 | NATIONAL DEFENSE SERVICE MEDAL | 40 | SERVICE STAR |
| 2 | DISTINGUISHED SERVICE CROSS | 15 | GOOD CONDUCT MEDAL | 28 | KOREAN SERVICE MEDAL | 41 | BRONZE ARROWHEAD |
| 3 | DEFENSE DISTINGUISHED SERVICE MEDAL | 16 | PRESIDENTIAL UNIT EMBLEM | 29 | ANTARTICA SERVICE MEDAL | 42 | FRENCH FOURRAGERE |
| 4 | DISTINGUISHED SERVICE MEDAL | 17 | MERITORIOUS UNIT EMBLEM | 30 | ARMED FORCES EXPEDITIONARY MEDAL | 43 | BELGIAN FOURRAGERE |
| 5 | SILVER STAR | 18 | VALOROUS UNIT EMBLEM | 31 | VIETNAM SERVICE MEDAL | 44 | NETHERLANDS ORANGE LANYARD |
| 6 | LEGION OF MERIT | 19 | WOMEN'S ARMY CORPS SERVICE MEDAL | 32 | ARMED FORCES RESERVE MEDAL | 45 | PHILIPPINE DEFENSE RIBBON |
| 7 | DISTINGUISHED FLYING CROSS | 20 | AMERICAN DEFENSE SERVICE MEDAL | 33 | ARMY RESERVE COMPONENTS ACHIEVEMENT MEDAL | 46 | PHILIPPINE LIBERATION RIBBON |
| 8 | SOLDIER'S MEDAL | 21 | AMERICAN CAMPAIGN MEDAL | 34 | COMBAT INFANTRYMAN BADGE | 47 | PHILIPPINE INDEPENDENCE RIBBON |
| 9 | BRONZE STAR MEDAL | 22 | ASIATIC-PACIFIC CAMPAIGN MEDAL | 35 | EXPERT INFANTRYMAN BADGE | 48 | UNITED NATIONS SERVICE MEDAL |
| 10 | MERITORIOUS SERVICE MEDAL | 23 | EUROPEAN-AFRICAN-MIDDLE EASTERN CAMPAIGN MEDAL | 36 | COMBAT MEDICAL BADGE | 49 | REPUBLIC OF VIETNAM CAMPAIGN RIBBON W/DEVICE (1960) |
| 11 | AIR MEDAL | 24 | WW II VICTORY MEDAL | 37 | EXPERT FIELD MEDICAL BADGE | 50 | |
| 12 | JOINT SERVICE COMMENDATION MEDAL | 25 | ARMY OF OCCUPATION MEDAL | 38 | LETTER "V" DEVICE | 51 | |
| 13 | ARMY COMMENDATION MEDAL | 26 | MEDAL FOR HUMANE ACTION | 39 | OAK LEAF CLUSTER | | |

The Secretary of the Army directs that the following awards be engraved according to current regulations and issued to address shown below. (Engraving to be as indicated in classification or below.)

| AWARD CODE | STARS | | OAK LEAF CLUSTER | | ARROW-HEAD | CLASP | GOLD STAR LAPEL BUTTON | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|
| | BRONZE | SILVER | BRONZE | SILVER | | | ENGRAVE | ISSUE ☐ COST ☐ GRATUITOUSLY | | TYPE ☐ CLUTCH ☐ PIN | |
| **33** | | | | | | | REMARKS | | | | |
| | | | | | | | **Period of qualifying service:** **6 Jun 85 - 5 Jun 89** | | | | |
| | | | | | | | | | | | |
| | | | | | | | | | | | |
| | | | | | | | | | | | |
| | | | | | | | | | | | |
| | | | | | | | | | | | |
| | | | | | | | | | | | |
| | | | | | | | | | | | |
| | | | | | | | | | | | |
| | | | | | | | | | | | |

Commander
USASSC FORSCOM
Bldg. 200, Room 076
Ft. McPherson, GA  30330

*[signature]*
**JOAN C. LEVY**
Chief, Inquiries/Awards Branch
Soldier Support Division

DA FORM 1577
1 NOV 75

REPLACES EDITION OF 1 JUL 69, WHICH WILL BE USED.

3

00154




**DEPARTMENT OF THE ARMY**
HEADQUARTERS FORCES COMMAND
FORT MCPHERSON, GEORGIA 30330-6000

REPLY TO
ATTENTION OF

FCPA-SLS                                                    4 April 1991

MEMORANDUM THRU BG S.A. Gray, FORSCOM Directorate of
                Intelligence, J2, Fort McPherson,
                GA 30330-6000

FOR LTC Lawrence Epstein, FORSCOM Directorate of Intelligence,
        J2, Fort McPherson, GA 30330-6000

SUBJECT: Memorandum of Appreciation

1. Thank you for the many presentations you have made on behalf
of the FORSCOM Speakers Bureau in the past four months.

2. Rosa-Marie Sacco, coordinator of the Speakers Bureau, has
shared with me the enthusiasm with which you accept an
assignment and the many phone calls she has received from
"satisfied customers" who speak in glowing phrases of your
abilities as a speaker.

3. I appreciate your willingness to tell the Army story and to
go the extra mile for Forces Command.


ANDREW S. DULINA III
Colonel, USA
Director of Public Affairs

00155



**DEPARTMENT OF THE ARMY**
U.S. ARMY RESERVE PERSONNEL CENTER
9700 PAGE BOULEVARD
ST. LOUIS, MO 63132-5200



REPLY TO
ATTENTION OF

DARP-PAT-I (672-5-1)                                     1 4 MAR 1991

MEMORANDUM FOR Commander, USASSC FORSCOM, Bldg. 200, Room 076, Fort McPherson,
GA  30330

SUBJECT:  Army Reserve Components Achievement Medal (ARCAM); Epstein,
Lawrence S., LTC, ███████

1.  To be eligible for award of the ARCAM, an individual must have completed
four consecutive years of qualifying service on or after 3 March 1972, as a
member of an Army Reserve unit, Army National Guard unit, or as an Individual
Mobilization Augmentee.  A qualifying year of service is one in which a
Reserve soldier earns a minimum of 50 retirement points during his/her
retirement year.

2.  Available information indicates LTC Epstein did not accrue a minimum of 50
retirement points for retirement year ending 5 June 1987; therefore, he is
ineligible for award of the ARCAM.  However, if you are able to submit
documentation which shows LTC Epstein accumulated at least 50 retirement
points for that retirement year, further consideration will be given to your
request.  Such documentation should be forwarded to this Center, ATTN:
DARP-PAT-I.

FOR THE COMMANDER:

1 Encl
DA Fm 638

JOAN C. LEVY
Chief, Inquiries/Awards Branch
Soldier Support Division

``MANAGEMENT FOR MOBILIZATION``

00156

FEB 21 '91  02:0?M USA SPECIAL SECURITY GROUP                    P.9/11

02-21-91  14:25  T-USAINSCOM              #432 F06

DEPARTMENT OF THE ARMY
U.S. ARMY RESERVE PERSONNEL CENTER
9700 PAGE BOULEVARD
ST. LOUIS, MISSOURI 63132-5200

ORDERS # M-02-600414                                    Copy for
                                        16 FEBRUARY 1991    Jesg S+L

EPSTEIN LAWRENCE STEVEN          MOI-S    1163843ZB LTC 0231

YOU ARE ORDERED TO ACTIVE DUTY IN THE GRADE OF RANK SHOWN ABOVE FOR THE PERIOD SHOWN IN
ACTIVE DUTY COMMITMENT BELOW. YOU ARE ASSIGNED AS SHOWN ABOVE AND WILL PROCEED FROM YOUR
CURRENT LOCATION IN TIME TO REPORT ON THE DATE SHOW BELOW.

REPORT TO: HQ FORSCOM
           BLDG 200
           FT MCPHERSON, GA 30330
REPORTING DATE: NLT 0800 HRS 20 APR 91
ASSIGNED TO: USA SPEC SCTY GP
ACTIVE DUTY COMMITMENT: 6 MONTHS
PURPOSE: PARTIAL MOBILIZATION (PRESIDENTIAL)

ADDITIONAL INSTRUCTIONS: REPORT ON DATE INDICATED. A DETERMINATION TO DELAY OR
EXEMPT YOU FROM SERVING ON ACTIVE DUTY CAN BE MADE ONLY AFTER YOU REPORT AS DIRECTED.
FAILURE TO REPORT MAY BE CONSIDERED ABSENCE WITHOUT LEAVE AND MAY SUBJECT YOU TO UCMJ
ACTION UNDER TITLE 10 USC 886. BRING WITH YOU: PROFESSIONAL CREDENTIALS; ALL
SERVICEABLE UNIFORMS; PROOF OF MARRIAGE; BIRTH CERTIFICATES OF CHILDREN; DOCTOR'S
STATEMENT FOR CHILDREN OVER 21 INCAPABLE OF SELF-SUPPORT; COURT ORDERS GOVERNING
DEPENDENT SUPPORT/LEGAL CUSTODY OF CHILDREN; YOUR IMMUNIZATION RECORDS; ID CARDS AND
TAGS. TRANSPORTATION OF DEPENDENTS AND HOUSEHOLD GOODS IS NOT AUTHORIZED. FOR
TRANSPORTATION ASSISTANCE CALL ARPERCEN PWD. LEAVE COPIES OF THIS ORDER WITH YOUR
DEPENDENT/NEXT OF KIN. HEALTH PROF MUST BRING DOCS TO SPT PROF LICENSURE (CURRENT AND
UNRESTRICTED); SPEC CERT (AS APPLICABLE); A STATEMENT FROM CURRENT EMPL OR PRIV HOSP
ATTESTING TO CURRENT (WI 1 YEAR) CLINICAL COMPETENCE; A CURRICULUM VITAE/RESUME; AND
A STATEMENT OF HEALTH AND PROF STATUS TO INCL ALL PAST AND CURRENT MALPRACTICE
INVOLVEMENT. RENTAL CAR NOT AUTHORIZED. UPON ARRIVAL RETAKE HIV TEST IF OVER 24 MOS
OLD. THIS CONFIRMS U.S. ARMY ADVANCE EMERGENCY ORDER TO ACTIVE DUTY WHICH WAS ISSUED
UNDER AR 140-145, PARA 5-3. ARPERCEN FAMILY SUPPORT HOTLINE 1-800-874-3451. THIS ORDER
AND ORD # M-10-500352 WILL NOT EXCEED 12 MONTHS. PEBD: 690606 DOR: 890603 S/G: TOP
SECRET.

FOR ARMY USE
AUTH: 10 USC 673
PERS CON NO: NA
HOR: SAME AS SNL                          MDC: 1AO1
BASIC BRANCH: MI                          P1 ZAD/OAD: SAME AS SNL
PROJ SPECIALTY: NA                        AOC/MOS:135F
PPN: NA                                   CON SPECIALTY: NONE
RES GR: LTC                               SEX: M
                                          COMP: USAR

ACCT CLASS, PAY & ALW:2112010/2122010 01-0110 F1010.VDSE 599999 1198 1199 1250 1210
ACCT CLAS, TVL/PD: 2112020/21 12020 22-7020 P222014.00 X6AD 523185 211A, 214A, 219A,
VDSE SUBJECT TO THE AVAILIBLITY OF FY 92 FUNDS.EPS43286006.4W
FORMAT: 156

BY ORDER OF THE SECRETARY OF THE ARMY

*****************
*  ARPERCEN  *                     THOMAS J. KILMARTIN
*  OFFICIAL  *                     BRIGADIER GENERAL, USA
*****************                  COMMANDING

DISTRIBUTION: XX PLUS
USA SPEC SCTY GP

ARPERCEN. ATTN: DARP-MOTS  SFC Goldrick

**DEPARTMENT OF THE ARMY**
U.S. ARMY RESERVE PERSONNEL CENTER
9700 PAGE BOULEVARD
ST. LOUIS, MO 63132-5200

IN REPLY
REFER TO:      DARP-PAR-PAC

SUBJECT: Chronological Statement of Retirement Points

15 FEB 91

DARP-PAR-PAC
EPSTEIN LAWRENCE STEVEN

FURNISHED IN LIEU OF DA FORM 1383

Points shown below are a recapitulation of retirement credits as received by this Center. If there are errors or omissions please return this statement with your request for correction. Include copies of pay vouchers, record of attendance, correspondence course completions. Read the information on reverse side.

REVISED STATEMENT

REASON FOR ISSUANCE

SOCIAL SECURITY NUMBER

DATE OF BIRTH

CURRENT GRADE

LTC

HIGH PAY GRD

| 1. BEGINNING DATE YR. MO. DAY | 2. ENDING DATE YR. MO. DAY | 3. MILITARY PERSONNEL CLASS | 4. STATUS OR COMPONENT | 5. INACTIVE DUTY POINTS | 6. EXTENSION COURSE POINTS | 7. MEMBERSHIP POINTS | 8. ACTIVE DUTY POINTS | 9. QUALIFYING FOR RETIREMENT YRS. MOS. DAYS | 10. TOTAL POINTS CREDITABLE |
|---|---|---|---|---|---|---|---|---|---|
| 89 06 06 | 90 06 05 | COM | USAR | 35 | 9 | 15 | 13 | 01 00 00 | 0072 |
| 88 06 06 | 89 06 05 | COM | USAR | 38 | 1 | 15 | 21 | 01 00 00 | 0075 |
| 87 06 06 | 88 06 05 | COM | USAR | 34 | | 15 | 34 | 01 00 00 | 0083 |
| 86 06 06 | 87 06 05 | COM | USAR | 20 | 5 | 15 | 10 | 01 00 00 | 0050 |
| 85 06 06 | 86 06 05 | COM | USAR | 32 | | 15 | 79 | 01 00 00 | 0126 |
| 84 06 06 | 85 06 05 | COM | USAR | | 111 | 15 | 48 | 01 00 00 | 0108 |
| 83 06 06 | 84 06 05 | COM | USAR | 7 | 44 | 15 | 41 | 01 00 00 | 0101 |
| 82 06 06 | 83 06 05 | COM | USAR | 45 | | 15 | 19 | 01 00 00 | 0079 |
| 81 06 06 | 82 06 05 | COM | USAR | 50 | | 15 | 17 | 01 00 00 | 0077 |
| 80 06 06 | 81 06 05 | COM | USAR | 35 | 3 | 15 | 18 | 01 00 00 | 0071 |
| 79 06 06 | 80 06 05 | COM | USAR | 60 | 19 | 15 | 41 | 01 00 00 | 0101 |
| 78 06 06 | 79 06 05 | COM | USAR | 52 | | 15 | 27 | 01 00 00 | 0087 |
| 77 06 06 | 78 06 05 | COM | USAR | 44 | | 15 | 27 | 01 00 00 | 0086 |
| 76 06 06 | 77 06 05 | COM | USAR | 42 | | 15 | 28 | 01 00 00 | 0085 |
| 75 06 06 | 76 06 05 | COM | USAR | | | 15 | | 00 00 00 | 0015 |
| 74 06 06 | 75 06 05 | COM | USAR | | | 15 | | 00 00 00 | 0015 |
| 73 06 06 | 74 06 05 | COM | USAR | | | 15 | | 00 00 00 | 0017 |
| 72 06 06 | 73 06 05 | COM | USAR | | 2 | 15 | | 00 00 00 | 0017 |
| 71 06 06 | 72 06 05 | COM | USAR | | | 15 | 315 | 01 00 00 | 0330 |
| 70 06 06 | 71 06 05 | COM | USAR | | | 15 | 366 | 01 00 00 | 0366 |
| 69 06 06 | 70 06 05 | COM | USAR | | | 15 | 365 | 01 00 00 | 0365 |
| | | | | | | 15 | 184 | 01 00 00 | 0199 |

READ AREAS
REVERSE SIDE

| | | | | TOTAL | 18 00 00 | 2508 |
|---|---|---|---|---|---|---|

TOTAL SERVICE (QUALIFYING AND NONQUALIFYING) FOR LONGEVITY PAY PURPOSES

21 08 09

ARP Form 249, 1 Sep 87        Replaces DARP Form 249, 1 Mar 89, which may be used.

1

00158

FEB 1 9 1991

| | | |
|---|---|---|
| **ARMY RESERVE**<br>**RECORD OF INDIVIDUAL PERFORMANCE OF RESERVE DUTY TRAINING**<br>For use of this form, see AR 140-185; the proponent agency is RCPAC. | **1. DATE**<br>4 Feb 91 | |
| **2. FROM: (Reporting Agency) (Include ZIP Code)**<br>RTS(I), P.O. Box 8, Ft. Dix, NJ 08640-0008 | **3. RETIREMENT YEAR ENDING DATE** | |

**4. TO: (Custodian of reservists' field 201 file.) (Include ZIP Code)**

Commander
ARPERCEN (ATTN: DARP-PAR-PDT)
9700 Page Blvd.
St. Louis, MO 63132-5200

| **5. LAST NAME - FIRST NAME - MIDDLE INITIAL** | **6. GRADE** | **7. SOCIAL SECURITY NO.** | **8. BRANCH** |
|---|---|---|---|
| EPSTEIN, Lawrence | LTC/05 | | MI |

**9. INDIVIDUAL'S ASSIGNED ORGANIZATION (If different from office of addressee)**
IMA HQs, USASSG, Arlington Hall Station, Arlington, VA

**10. THE ABOVE NAMED RESERVIST PERFORMED** ☐ EQUIVALENT ☐ APPROPRIATE ☐ SUITABLE ☐ OTHER
(Check applicable box) DUTIES, TRAINING OR INSTRUCTION ON THE DATES AND FOR THE HOURS INDICATED AS AUTHORIZED BY
(Cite authorization):

| **a. DATE** | | | **HOURS**<br>b | **RETIREMENT POINTS**<br>c | **NATURE OF DUTIES, TRAINING OR INSTRUCTION**<br>d |
|---|---|---|---|---|---|
| **DAY** | **MONTH** | **YEAR** | | | |
| 23 | Jun | 90 | 8 | N2 | D-Service Member performed Military Intelligence training and operational guidance for RTS(I). |
| 07 | Jul | 90 | 8 | N2 | |
| 13 | Jul | 90 | 8 | N2 | |
| 09 | Aug | 90 | 8 | N2 | |
| 16 | Aug | 90 | 8 | N2 | |
| 26 | Aug | 90 | 8 | N2 | |
| 21 | Sep | 90 | 8 | N2 | |
| 10 | Oct | 90 | 8 | N2 | |
| 12 | Oct | 90 | 8 | N2 | |

*****************************************NOTHING FOLLOWS*********************************************

| **11. TYPED NAME, GRADE AND POSITION OF OFFICER HAVING KNOWLEDGE OF DUTIES PERFORMED**<br>HELGE KORSNES, MAJ, MI<br>OPERATIONS OFFICER | **12. SIGNATURE OF OFFICER (Item 11)** |
|---|---|

**13. FOR CUSTODIAN OF INDIVIDUAL RESERVIST'S RECORDS**

| ☐ REPORTED TO SERVICING DATA PROCESSING UNIT. | **PAY DATA** ☐ EXTRACTED | ☐ NOT APPLICABLE |
|---|---|---|

**DA FORM 1 FEB 78 1380**    PREVIOUS EDITIONS OF THIS FORM ARE OBSOLETE.

## INSTRUCTIONS

1. WHEN PREPARED. Prepare DA Form 1380 by the last day of each month, to cover the following:

   a. Nonunit Reserve training, other than Army Extension Courses

   b. Equivalent duty or other appropriate duty performed by reservists assigned to USAR units, other than such training performed with the unit of assignment.

2. BY WHOM PREPARED.

   a. For training projects - by the chief of the proponent agency for the project.

   b. For attendance at professional or trade convention meetings - by the designated military representative at the meeting.

   c. For training in an attached status - by the commanding officer of the unit of attachment.

   d. For training attachments with another service - the reservist will complete all items except the signature and then obtain the signature of the duly authorized official of the unit of attachment.

   e. For all other Reserve training - as directed by the area commander

3. INSTRUCTIONS FOR COMPLETION

   a. Items 1 through 3, 5 through 9, and 11 through 13, self-explanatory.

   b. Item 4 (TO:). Enter the complete designation and address of the office maintaining the reservist's records.

   c. Item 10. Check the appropriate block to indicate type of duty performed. Cite the documentary authority for the training reported. When the form covers more than one period of duty or training of variable types, leave blank the entry pertaining to type of duties and enter the information in Column "d" following the description of the duties, training or instruction performed.

      (1) Column a. Enter day, month, and year on which duty, training, or instruction was performed. Omit when work on an assigned training project covers more than one month.

      (2) Column b. Enter the total number of hours covered by the form. For assigned training projects, see AR 140-1.

      (3) Column c. Enter the number of retirement point credits earned. One point will be credited for each period of at least 2 hours of authorized training or instruction performed during one day. For assigned training projects, see AR 140-1.

      (4) Column d. Enter a brief description of the duties, training, or instruction performed. If duty involved work on an assigned project over an extended period, also enter the inclusive dates of the period.

   d. Item 12. The responsible officer will sign copies forwarded to the custodian of the reservist's field 201 file.

4. DISPOSITION. For nonunit members forward original and duplicate to CDR, RCPAC, ATTN: AGUZ-TAD. Retain one copy for file  For unit members forward original and duplicate to unit of assignment. Retain one copy for file

P.4/9

JAN 15 '91 03:00PM USA SPECIAL SECURITY GROUP
01-15-91 09:03 T-USAINSCOM                    #784 P07

DEPARTMENT OF THE ARMY
U.S. ARMY RESERVE PERSONNEL CENTER
9700 PAGE BOULEVARD
ST. LOUIS, MO 63132-5200

10 JAN 91

ORDERS M-10-500352A01

EPSTEIN LAWRENCE STEVEN          MOI          [REDACTED] LTC 0251

PRINT POOR QUALITY

FOLLOWING ORDER IS AMENDED AS INDICATED

SO MUCH OF: ORDERS NUMBER M-10-500352 THIS CENTER, DATED 11 OCT 90

PERTAINING TO: ABOVE NAMED INDIVIDUAL

AS READS: PERIOD: 90 DAYS

NOW CHANGED: IATR: PERIOD: 180 DAYS

AUTHORITY: VOCG

*****************
*  ARPERCEN  *
*  OFFICIAL  *
*****************

THOMAS J. KILMARTIN
BRIGADIER GENERAL, USA
COMMANDING

DISTRIBUTION: XX PLUS
CDR, USA SPEC SCTY GP, ATTN: IASEG-A BLDG 8544, FT MEADE, MD 20755

00161

RECOMMENDATION FOR AWARD

| TO: | FROM: |
|---|---|
| Cdr, USASSG<br>ATTN: IASSG-o<br>Ft Meade, MD  20755-5998 | Cdr, USASSG FORSCOM<br>Bldg 200, Room 076<br>Ft McPherson, GA  30330 |

**PART I - PERSONAL DATA**

| 1 LAST NAME-FIRST NAME-MIDDLE NAME | 2 SSN | 3 GRADE | 4 BRANCH PMOS SN |
|---|---|---|---|
| EPSTEIN, Lawrence S. | ██████████ | LTC | MI |

5 ORGANIZATION AND STATION
USA Special Security Group, Ft Meade, MD  20755-5998

PRINT POOR QUALITY

6 RECOMMENDED AWARD *(Include Dev Leaf Cluster)*   7 POSTHUMOUS AWARD   ☐ YES   ☒ NO
Army RC Achievement Medal

8 DATE AND PLACE OF DEATH

9 SUGGESTED DATE OF PRESENTATION

10 NAME, RELATIONSHIP AND ADDRESS OF NOK

11 WAS SPECIFIC AWARD MADE?   ☐ YES   ☐ NO

**PART II - RECOMMENDATION FOR AWARD FOR ACHIEVEMENT OR SERVICE**

| 12 INCLUSIVE DATES FOR WHICH RECOMMENDED | 13 INCLUSIVE DATES OF ASSIGNMENT TO UNIT SHOWN IN ITEM 5 STATE REASON FOR EAD DATE "Retire PCS, etc. |
|---|---|
| 26 Nov 85 - Present | 26 Nov 85 - Present |

14 ALL PREVIOUS AWARDS TO INDIVIDUAL *(Do not include interim award)*

**PART III - RECOMMENDATION FOR AWARD FOR HEROISM**

12 INCLUDE THE FOLLOWING INFORMATION ABOUT EYEWITNESSES ON A SEPARATE SHEET OF 8 x 10½" BOND PAPER: a. Full name, b. SSN, c. Grade, d. Unit  STATE REASONS IF EYEWITNESS STATEMENTS ARE NOT ATTACHED.

14                        CONDITIONS UNDER WHICH ACT WAS PERFORMED

| a. LOCATION | b. TIME | c. DATE |
|---|---|---|
| | | |

d. UNIT MORALE, CASUALTIES, AND MISSION DURING TIME AND DATE(S) OF ACT(S)

**PART IV - PROPOSED CITATION**

15. DESCRIBE THE INDIVIDUAL'S PERFORMANCE IN THE SPACE PROVIDED BELOW, DO NOT USE A CONTINUATION SHEET EXCEPT FOR HEROISM AWARDS AND AWARD OF THE DISTINGUISHED SERVICE MEDAL.

For exemplary performance of duty, efficiency and fidelity while serving as a mobilization member of Special Security Command, Forces Command from 26 November 1985 to the present.  LTC Epstein sought responsibility and challenge during his Individual Mobilization Augmentee assignment.  His knowledge of the Special Security System ensured that he quickly got to the heart of the special projects he was assigned and presented complete, insightful and workable solutions.  LTC Epstein's contributions to the total Army reflect great credit on him, his organization and the United States Army.

**PART V - OTHER INSTRUCTIONS AND AUTHENTICATION**

| 16. LIST ATTACHMENTS *(authorized for heroism and DSM awards only)*. See Chapter 2, AR 672-5-1 for preparation. | 17. RELATED POSITION OF PERSON INITIATING RECOMMENDATION TO PERSON BEING RECOMMENDED<br>Commander |
|---|---|
| | 18. TYPED NAME, GRADE, BRANCH AND TITLE OF PERSON INITIATING RECOMMENDATION |
| 19. IF APPROVED, FORWARD AWARD TO:<br>Cdr, USASSG FORSCOM<br>Bldg 200, Room 076<br>Ft McPherson, GA  30330 | GABRIEL L. HUDSON, LTC, AV, Cdr |
| | 20. SIGNATURE            21. DATE |
| | *[signature]*      26 Dec 90 |

DA FORM 638  AUG 73
EDITION OF 1 JUN 69 IS OBSOLETE.

DEPARTMENT OF THE ARMY
U.S. ARMY RESERVE PERSONNEL CENTER
9700 PAGE BOULEVARD
ST. LOUIS, MISSOURI  63132-5200

ORDERS # M-10-500352                                    11 OCT 90

EPSTEIN LAWRENCE STEVEN      MOP-P                      LTC 0231

YOU ARE ORDERED TO ACTIVE DUTY (AD) FOR THE PERIOD SHOWN.  UPON COMPLETION OF THE
PERIOD OF AD, UNLESS SOONER RELEASED OR EXTENDED BY PROPER AUTHORITY, YOU WILL RETURN
TO THE PLACE WHERE YOU ENTERED AD UNLESS OTHERWISE ORDERED BY PROPER AUTHORITY AND BE
RELEASED FROM SUCH DUTY.

REPORT TO:  HQS, FORSCOM, BLDG 200          AOC/MOS: 35F    DOR:  890603
            FT. MCPHERSON, GA  30330         MDC: 1AQ0      SEX: M
                                             PEBD: 690606   COMP: IMA
PERIOD:  90 DAYS                             S/C:  TOP SECRET
REPORTING DATE:   NLT 0800 22 OCT 90
ASSIGNED TO:  USA SPEC SCTY GP, ATTN:  IASSG-A BLDG 8544, FT. MEADE, MD 20755
PURPOSE:  PRESIDENTIAL CALLUP

ADDITIONAL INSTRUCTIONS:  REPORT ON DATE INDICATED.  A DETERMINATION TO DELAY OR EXEMPT
YOU FROM SERVING ON ACTIVE DUTY CAN BE MADE ONLY AFTER YOU REPORT AS DIRECTED.  FAILURE
TO REPORT MAY BE CONSIDERED ABSENCE WITHOUT LEAVE AND MAY SUBJECT YOU TO UCMJ ACTION
UNDER TITLE 10 USC 886.  BRING WITH YOU: PROFESSIONAL CREDENTIALS; ALL SERVICEABLE
UNIFORMS; PROOF OF MARRIAGE; BIRTH CERTIFICATES OF CHILDERN; DOCTOR'S STATEMENT FOR
CHILDERN OVER 21 INCAPABLE OF SELF-SUPPORT; COURT ORDERS GOVERNING DEPENDENT
SUPPORT/LEGAL CUSTODY OF CHILDERN; YOUR IMMIZATION RECORDS; ID CARDS AND TAGS.
TRANSPORTATION OF DEPENDENTS AND HOUSEHOLD GOODS IS NOT AUTHORIZED.  FOR TRANSPORTATION
ASSISTANCE CALL ARPERCEN PMO.  LEAVE COPIES OF THIS  ORDER WITH YOUR DEPENDENT/NEXT OF
KIN.  RENTAL CAR NOT AUTHORIZED.  UPON ARRIVAL RETAKE HIV TEST IF OVER 24 MOS OLD.

FOR ARMY USE
AUTH:  10 USC 673B
ACCT CLASS, PAY & ALW: 2102010/2112010 01-0110 P1010.VKWT S99999 1198, 1199, 1250, 1210
ACCT CLASS, TVL/PD: 2102020/2112020 22-7010 P200011.00 XBRE S23185 211A, 219A,
EP9432B.  SUBJECT TO THE AVAILABILITY OF FY 91 FUNDS
FORMAT:  162 (MODIFIED)

BY ORDER OF THE SECRETARY OF THE ARMY:

*****************
*  ARPERCEN  *                      THOMAS J. KILMARTIN
*  OFFICIAL  *                      BRIGADIER GENERAL, USA
*****************                   COMMANDING

DISTRIBUTION:  XX PLUS
CDR, USA SPEC SCTY GP, ATTN: IASSG-A BLDG 8544, FT. MEADE, MD  20755

DEPARTMENT OF THE ARMY
U. S. ARMY RESERVE PERSONNEL CENTER
9700 PAGE BOULEVARD
ST. LOUIS, MO 63132-5200

DARP-OPD-0231-A
ORDERS  T-02-003326                                          06 FEB 90

EPSTEIN LAWRENCE STEVEN              OPD-0231          ████████LTC MI 35F
                                                      INDIVIDUAL MOBILIZATION AUG

YOU ARE ORDERED TO ANNUAL TRAINING (AT) FOR THE PERIOD SHOWN.
UPON COMPLETION OF THE PERIOD OF AT, UNLESS SOONER RELEASED OR EXTENDED
BY PROPER AUTHORITY, YOU WILL RETURN TO THE PLACE WHERE YOU ENTERED AT
AND BE RELEASED FROM SUCH DUTY.

PERIOD:  12 DAYS PLUS ALLOWABLE TRAVEL TIME
REPORT TO: USA SPEC SCTY GP ATTN: IASSG-A BLDG A
   FT MEADE MD 20755 0000
REPORTING DATE: 19 MAR 90
ATTACHED TO: USA SPEC SECTY GRP ATTN: IASSG-A BLDG A ARLINGTON VA 22212 0000
PURPOSE: IMA AT

ADDITIONAL INSTRUCTIONS: HIV TEST RQD W/IN 48 HRS OF RPT FOR DY. RESULTS MUST
BE FORWARDED TO ARPERCEN  DARP-ZSG W/I 29 DAYS. SOLDIER OVER 40 YRS OLD, MEDIC-
ALLY SCREENED & CLEARED FOR PHYSICAL TNG/TESTING. VEHICLE RENTAL NOT AUTH. OER
RQD PER AR 623-105 OR AER RQD PER AR 623-1, FWD TO CDR ARPERCEN ATTN: DARP-PRE-
-O.  PAYMENT BY FT MEADE F&AD. ADVANCE IF AUTHORIZED, WILL BE CHARGED TO S1804-
3.

FOR ARMY USE: AUTH:10 USC 270 (A)(2) AT NTE 30 DY
ACCT CLAS: 2102070  22-7010 P3C11.10000 EPS43280033260/(XXAC) (EST ONLY)(1198-
 $1726)(1199-  $296)(1210-      )(1250-      )(1132)(219C-  $210)(211C- $1352)(2219-
      )(2231-      )(2232-       )(2572-      )(257L-      )(257M-      )S23185
PPN:     COMP: USAR  PEBD: 06 JUN 69   SEX: M  SCTY CL: TOP SECRET W/SENSITIV
DOR: 03 JUN 89 SITE: W1J1AA  TYTR: 500 2TSC:       3TSC:
HOR: SAME AS SNL
FORMAT 260

***********
* ARPERCEN *                              THOMAS J. KILMARTIN
* OFFICIAL *                              BRIGADIER GENERAL, USA
***********                               COMMANDING
DISTRIBUTION: 1A
  1 USA SPEC SECTY GRP ATTN: IASSG-A BLDG A ARLINGTON VA 22212 0000
PACKET 6A

REPRODUCED AT GOVERNMENT EXPENSE

JP



# DEPARTMENT OF THE ARMY
### U.S. TOTAL ARMY PERSONNEL COMMAND
9700 PAGE BOULEVARD
ST. LOUIS, MO 63132-5200



REPLY TO
ATTENTION OF
TAPC-MSL-N

3 MAY 89

MEMORANDUM FOR


EPSTEIN, LAWRENCE S.

A-3 JUN 89
B-NONE

███████

LTC MI USAR
███████

SUBJECT: Promotion as a Reserve Commissioned Officer of the Army Under Title 10 of United States Code (AR 135-155)


1.    By direction of the President, you are promoted as a Reserve commissioned officer of the Army effective on the date shown after A above to the grade in the branch shown. This promotion is contingent on your being medically qualified for retention on the A date above.

2.    Time in grade for promotion to the next grade will be computed from the effective date of this promotion, unless there is a date shown after B above, in which case it will be computed from that date.

3.    No acceptance or oath of office is required. Your promotion will be effective as shown after A above.

BY ORDER OF THE SECRETARY OF THE ARMY:


DANIEL B. COOLEY
LTC, GS
Chief, Office of Promotions,
Reserve Components


DISTRIBUTION FL 2080
(1)    OFFICER CONCERNED
(1)    OMPF
(1)    MPRJ
(1)    CMIF


TAPC-SL-FL 2080, Apr 89 (Prior editions are obsolete.)

00165



# DEPARTMENT OF THE ARMY

THIS IS TO CERTIFY THAT THE SECRETARY OF THE ARMY HAS AWARDED

## THE ARMY ACHIEVEMENT MEDAL

(First Oak Leaf Cluster)

TO

MAJOR LAWRENCE STEVEN EPSTEIN
UNITED STATES ARMY

FOR outstanding achievement while assigned as an Individual Mobilization Augmentee, (IMA) HQ, US Army Special Security Group from 1 December 1986 to 19 December 1986. Major Epstein completely reorganized the IMA management program for the Special Security Group. His efforts included establishment of a comprehensive SOP, automation of recurring reports and requirements, scheduling of all IMA training for FY 87 and preparation of an IMA information bulletin. These major accomplishments during a short training period are indicative of Major Epstein's technical competence and professionalism. Major Epstein's outstanding performance brings great credit on himself, this organization and the United States Army Reserve.

GIVEN UNDER MY HAND IN THE CITY OF WASHINGTON
THIS    18th    DAY OF   December    19 86

ARLEIGH D. WATERMAN, Colonel, MI,
Commanding

00166



66

DEPARTMENT OF THE ARMY
Headquarters, US Army Special Security Group
Arlington, Virginia 22212-5000

PERMANENT ORDERS 136-18

18 December 1986

EPSTEIN, Lawrence S., ████████, MAJ, United States Army Reserve, CONUS, Group, Maryland

Announcement is made of the following award:

Award:  Army Achievement Medal (1st OLC)
Date or period of service:  1 December 1986 to 19 December 1986
Authority:  Paragraph 2-18, AR 672-5-1
Reason:  Meritorious achievement
Format:  320

FOR THE COMMANDER:

STEPHEN F. MCCARTHY
MAJ, AGC
Adjutant

DISTRIBUTION:
IASSG-A (1)
MAJ EPSTEIN (2)
USAR (1)
Cdr, RCPAC, ATTN: AGUS-ODP-MI, 9700 Page Street
St. Louis, MO 63132 (1)
201 file (1)

00167



# DEPARTMENT OF THE ARMY

THIS IS TO CERTIFY THAT THE SECRETARY OF THE ARMY HAS AWARDED

## THE ARMY COMMENDATION MEDAL

TO   MAJOR LAWRENCE EPSTEIN, ███████████, UNITED STATES ARMY RESERVE

FOR   OUTSTANDING SERVICE WHILE ASSIGNED AS AN INSTRUCTOR FOR PHASE VI OF THE
MILITARY INTELLIGENCE OFFICER ADVANCED COURSE WITH THE 6224TH UNITED
STATES ARMY RESERVE SCHOOL, PHOENIX, ARIZONA, FOR THE PERIOD 7 JULY 1985
TO 19 JULY 1985.  DURING THE COURSE OF INSTRUCTION, MAJOR EPSTEIN SET THE
EXAMPLE FOR HIS FELLOW INSTRUCTORS BY COMPLETING MANY HOURS AT RESEARCH
AND PREPARATION TO ENSURE THAT THE BEST POSSIBLE INSTRUCTION WAS PROVIDED
TO THE STUDENTS.  HIS DEVOTION TO DUTY AND OUTSTANDING PERFORMANCES REFLECT
GREAT CREDIT UPON HIMSELF AND THE UNITED STATES ARMY RESERVE.

GIVEN UNDER MY HAND IN THE CITY OF WASHINGTON
THIS   19TH   DAY OF   JULY   19 85

PAUL J. CROWDER, JR.
COLONEL, JA, USAR
COMMANDANT

DA FORM 4980-R4, APR 84

00168

3423 - 2/10/75 MC

DEPARTMENT OF THE ARMY
HQ, 6224th USAR School
6201 E. Oak Street
Phoenix, Arizona 85008

PERMANENT ORDERS: 7-2

18 July 1985

1. EPSTEIN, LAWRENCE ██████ MAJ USAR CON GP RE
Date(s) or period of service: From 07 July 1985 to 19 July 1985

2. JORDAN, DONALD R. ██████ SSG 6211th USA Garrison Presidio, San
Francisco, California 94129 (W8NFAAA)
Date(s) or period of service: From 23 June 1985 to 19 July 1985

3. ADAMS, JAMES R. ██████ MAJ 360th CA BDE, Columbia, South
Carolina 29206
Date(s) or period of service: From 03 July 1985 to 19 July 1985

4. PISANE, RANDOLPH ██████ MAJ 78th Div MTC USAR Center Ft. Dix,
New Jersey 08640
Date(s): From 30 June 1985 to 19 July 1985

5. JAMES, LANGLEY B. ██████ MAJ 2070th USAR School, Ft. Belvoir,
Virginia 22060 (W826AA)
Date(s): From 30 June 1985 to 16 July 1985

6. WEST, STEPHAN A. ██████ MAJ 6220th USAR School Patton USAR
Center Bell, California 90201 (806AAA) Dates: 30 Jun 85 - 20 Jul 85

Announcement is made of the following award.

Award: Army Commendation Medal
Date(s) or period of service: As indicated
Authority: Para. 2-20, AR 672-5-1
Reason: For meritorious service
Format: 320

DISTRIBUTION:
1-Ea indiv conc
1-Orders file
1-Field 201 file
1-63rd ARCOM

PAUL J. CROWDER JR.
COL, JA, USAR
Commandant

00169

#97 8-21-86. Ac*

(CED)

## 101st Airborne Division (Air Assault)
### The Air Assault School

**Certificate of Training**

This is to certify that

**MAJOR LAWRENCE EPSTEIN**

has risen to the challenge and successfully completed the combat assault, rappelling, and rigging and slingloading phases of The Air Assault School, thereby earning this certification and the distinctive right and honor to wear the air assault badge as a symbol of achievement.

Given under my hand at Fort Campbell, Ky.

this ___ day of ___ JUNE ___ 1985

_James C. Riesgo_

Commandant

IE-90051

H03 11-7-85 AB

(500S-1~

**FILE COPY**

## SERVICE SCHOOL ACADEMIC EVALUATION REPORT

| | | 85 05 24 |
|---|---|---|

EPSTEIN, LAWRENCE S. — MAJ — MI

COMMAND AND GENERAL STAFF OFFICER COURSE (1-250-C3) — US ARMY COMMAND AND GENERAL STAFF COLLEGE — AA

From N/A Thru N/A — 82 10 01 Thru 85 05 24

N/A

STUDENT COMPLETED THE COMMAND AND GENERAL STAFF OFFICER COURSE, (1-250-C3). STUDENT WAS PRESENTED WITH A DIPLOMA WHICH ATTESTS TO BEING A GRADUATE OF THE COMMAND AND GENERAL STAFF COLLEGE.

ITEM 14: C & D: INFORMATION OMITTED BECAUSE OF INSUFFICIENT OPPORTUNITY FOR INDIVIDUAL OBSERVATION.

JOSEPH A. STEVE, JR., LTC, AIR DEFENSE
DIR., EXT. TNG. MGT.

STEWART R. KIDD, COL, ARMOR
SECRETARY

**DISTRIBUTION**
STUDENT
UNIT CDR (PHB NODES only)
STUDENT'S OFFICIAL MILITARY RECORDS

OCT JUN 18 1985

00171



G10

DEPARTMENT OF THE ARMY
5043D US Army Reserve School
1800 West Russell Street
Sioux Falls, South Dakota 57104

PERMANENT ORDERS 4-5

1 September 1984

EPSTEIN, LAWRENCE B.                    MAJ  USAR COM GP, St. Louis, MO

Announcement is made of the follwing award.

Award:  The Army Achievement Medal
Date(s) of period of service:  1 July 1984 to 20 July 1984
Authority:  By the direction of the Secretary of the Army under provisions
            of para 2-18.1, AR 672-5-1
Reason:  For outstanding service
Format:  320


                                    William A Ballenger
                                    WILLIAM A. BALLENGER
                                    COL, AR, USAR
                                    Commandant

DISTRIBUTION:
2-Indiv
1-MPRJ
2-Unit file

98C

14

00172

2422 - 2/18/95 MC

69



# DEPARTMENT OF THE ARMY

THIS IS TO CERTIFY THAT THE SECRETARY OF THE ARMY HAS AWARDED

## THE ARMY ACHIEVEMENT MEDAL

TO                MAJOR LAWRENCE S. EPSTEIN

FOR EXCEPTIONALLY MERITORIOUS SERVICE DURING THE PERIOD 1 JULY TO 20 JULY 1984 WHILE SERVING AS A PHASE VI INSTRUCTOR FOR THE MILITARY INTELLIGENCE OFFICER ADVANCED COURSE, ATTACHED TO THE 5043D UNITED STATES ARMY RESERVE SCHOOL. IN HIS ASSIGNMENT AS ASSISTANT COORDINATOR FOR THE AIR LAND BATTLE EXERCISE (ALBEX), MAJOR EPSTEIN DISPLAYED OUTSTANDING PROFESSIONAL ABILITY, CONSCIENTIOUSNESS, SOUND JUDGMENT AND INITIATIVE. HIS EXCEPTIONAL TALENT FOR SUPERVISION, COORDINATION AND ISSUE ADVICE CONTRIBUTED MATERIALLY TO THE SUCCESS OF THE ALBEX. HIS CONSTANT REINFORCEMENT AND INSTRUCTION PROVIDED TO STUDENTS, PLUS HIS ABILITY TO RESOLVE COMPLEX PROBLEMS WAS EVIDENCED IN THE SUCCESS ACHIEVED BY THE STUDENT PLAYERS DURING TRAINING.

GIVEN UNDER MY HAND IN THE CITY OF WASHINGTON
THIS     1ST     DAY OF  SEPTEMBER  1984



_Willie A. Ballenger_
WILLIAM A. BALLENGER, COL, USAR
Commandant

_John O. Marsh Jr._
SECRETARY OF THE ARMY

00173

# 74 9/14/84 DC

G7

FOR OFFICIAL USE ONLY
PRIVACY ACT DATA

DEPARTMENT OF THE ARMY
U.S. ARMY COMMAND AND GENERAL STAFF COLLEGE
ATTN: ATZLSW-ETM
FORT LEAVENWORTH, KANSAS 66027

USE THIS NUMBER
ON ALL CORRESPONDENCE
TO THIS SCHOOL

| S.S.A.N. | YR. | MO. | DAY |
|---|---|---|---|

SUBJECT:   CERTIFICATE OF 50 PERCENT COMPLETION 1150 AR NI

1. THE OFFICER WHOSE NAME APPEARS BELOW HAS SATISFACTORILY COMPLETED 50 PERCENT OF THE COMMAND AND GENERAL STAFF OFFICER COURSE (1-250-C3).

2. THIS NOTICE WILL BECOME PART OF THE INDIVIDUAL'S MILITARY PERSONNEL RECORDS (MPRJ AND ORPFI IAW AR 640-10 AND NGR 640-100.

3. FOR RESERVE COMPONENT OFFICERS, THIS 50% CERTIFICATE IS INVALID FOR PROMOTION PURPOSES THREE YEARS AFTER THE DATE SHOWN ABOVE.

4. UNDER PROVISIONS OF AR 140-10 AND NGR 600-100, RESERVE COMPONENT OFFICERS PROMOTED TO LIEUTENANT COLONEL UTILIZING THE CERTIFICATE AND WHO FAIL TO GRADUATE FROM THE CGSO COURSE PRIOR TO THE THIRD ANNIVERSARY OF THEIR PROMOTION ARE SUBJECT TO REMOVAL FROM ACTIVE STATUS.

MAJ EPSTEIN, LAWRENCE S            OPM-P
                                   Co 11A
                                   N Bay
                          11204    13 Jul 84

ROBERT J. HANDLY, JR.
MAJ, AV
REGISTRAR

CGSC Form 129
1 Mar 80 (Rev)

1 MAR 79 (Rev) EDITION WILL BE USED UNTIL EXHAUSTED.

2 0 AUG 1984

MPRJ COPY

P1

00174



DEPARTMENT OF THE ARMY
HEADQUARTERS, FIRST UNITED STATES ARMY
FORT GEORGE G. MEADE, MARYLAND 20755

ORDERS  147-6    AFKA-PA-BU(P)                          10 August 1983

TRANSFERS AMONG RESERVE COMPONENTS, CONTROL GROUPS, OR UNITS

EPSTEIN, LAWRENCE S. ▇▇▇▇▇▇ MAJ  1669 59th St, Brooklyn, NY 11204

You are reassigned in the reserve as indicated below.

**Relieved From:** 1150th USAR School (8ZMAA0) Ft Hamilton USARC, Brooklyn, NY  11252 (7)

**Reason:** Voluntary
**Assigned To:** USAR Control Group (REINF) RCPAC, 9700 Page Blvd., St. Louis MO
              63132
**Effective Date:** 22 July 1983
**Additional Instructions:** OER will be completed & distributed IAW para 7-9b(2),
              AR 623-105.



FOR ARMY USE
Auth:  AR 140-10
Asgd to Mgt Dsg:  36B
Basic Br: MI
Con Br:  NA
Con Specialty:  NA
Proj Specialty:  NA
Format:  450

FOR THE COMMANDER:



DISTRIBUTION:
Indiv (2)
AFKA-PA-ROM (2)
AFKA-PA-A (Lib Rec Cy)(1)
AFKA-PA-BC (1) JP
Losing Unit (3)
201 File (2)
MDSARC (2) 77th
Gaining Unit (2)
RCPAC, AGUZ-OPM-C (MAJ Foulk)(1)

JOHN J. FOX
Unit Support Branch
Reserve Personnel Support Division
DCSPER



# DEPARTMENT OF THE ARMY
### OFFICE OF THE ADJUTANT GENERAL
U.S. ARMY RESERVE COMPONENTS PERSONNEL AND ADMINISTRATION CENTER
ST. LOUIS, MO 63132

REPLY TO
ATTENTION OF:

AGUZ-OFM-CO                                                           30 DEC 82
ORDERS  C-12-928328


LAWRENCE S EPSTEIN    OFM-CO 232                    ████████ MAJ MI 36A
████████████████                                   REINFORCEMENT
                                                   RCPAC(0NJAAA)


YOU ARE REASSIGNED IN THE RESERVES AS INDICATED BELOW:

RELIEVED FROM: USAR CONTROL GROUP REINFORCEMENT  (0NJAAA)

REASON: VOLUNTARY

ASSIGNED TO: 1150TH USAR SCH    8ZMAAA
EFFECTIVE DATE: 08 NOV 82                             VOCG:  08 NOV 82
ADDITIONAL INSTRUCTIONS:  SEC CL: TOP SECRET.  PEBD: 06 DEC 69.  RYE:  05 DEC

FOR ARMY USE
AUTH: AR 140-10
ASGD TO MGT DSG: NA    BASIC BR: NA    CON BR: NA    CON SPEC: NA    PROJ SPEC: NA
FORMAT: 450


  * * * * * * *
  * TAG, RCPAC *              RONALD W. ZELTMAN
  * OFFICIAL   *              BRIGADIER GENERAL, USA
  * * * * * * *              COMMANDING


DISTR: G3 PLUS: 1 CDR, 1A, AFKA-PA-RC


SHIPPED RCPAC
DATED
DD FORM 93 REMOVED
* * MAY ***


4-      .CDR,1150TH USAR SCH
        .FT HAMILTON USARC
        .BROOKLYN NY 11252                              8ZMAAA



**DEPARTMENT OF THE ARMY**
HEADQUARTERS, FIRST UNITED STATES ARMY
FORT GEORGE G. MEADE, MARYLAND 20755

AFKA-PA-ROA

22 SEP 1982

SUBJECT: Promotion as a Reserve Commissioned Officer of the Army
(AR 135-155)

A:  25 Jul 82

THRU:   Commander
        77th US Army Reserve Command

B:  4 Jun 82

TO:     Major Lawrence S. Epstein
        ▮▮▮▮▮▮▮ MI, USAR
        339th Military Intelligence Company
        555 East 238th Street
        Bronx, NY  10470

1.  By direction of the President you are promoted as a Reserve
of the Army, effective on the date shown after A above, to the
grade in the branch and component shown above.

2.  Time in grade for promotion to the next higher grade will be
computed from the effective date of this promotion unless there
is a date shown after B above, in which case it will be computed
from that date.

3.  No acceptance or oath of office is required.  Unless you
expressly decline this promotion within 60 days, your promotion
will be effective as shown after A above.

FOR THE COMMANDER:

                                    L. M. DOBINSKI
                                    Chief, Officer Branch
                                    Deputy Chief of Staff
                                    Personnel and Administration

Copies furnished:
RCPAC
201 file
AFKA-PA-PS-PC

00177

DEPARTMENT OF THE ARMY
HEADQUARTERS, FIRST UNITED STATES ARMY
FORT GEORGE G. MEADE, MARYLAND 20755

ORDERS  179-15    AFKA-PA-BP-RU (P)                13 September 1982

TRANSFERS AMONG RESERVE COMPONENTS, CONTROL GROUPS, OR UNITS

You are reassigned in the reserve as indicated below.

EPSTEIN, LAWRENCE S. ███████████ MAJ ████████████████████

Relieved from: 339th MI Co (VJGAAO) 555 E. 238th St, Bronx, NY 10470  (7)
Reason: No vacancy due to promotion
Assigned to: USAR Control Group (REINF) RCPAC, St. Louis, MO  63132
Effective date: 26 July 1982
Additional instructions: OER will be completed & distributed IAW para 7-9b(2), AR 623-105.


FOR ARMY USE
Auth:  AR 140-10
Asgd to mgt dsg: 36A
Basic br: MI
Con br:  NA
Con specialty:  NA
Proj specialty:  NA

HEUSEL, CHARLES D. ███████████ CPT ████████████████████

Relieved from: 318th Trans Agency (SXOAAO) 168-10 Goethals Ave, Jamaica, NY 11432  (7)
Reason: Voluntary
Assigned to: USAR Control Group (REINF) RCPAC, St. Louis, MO  63132
Effective date: 30 July 1982
Additional instructions: OER will be completed & distributed IAW para 7-9b(2), AR 623-105.


FOR ARMY USE
Auth:  AR 140-10
Asgd to mgt dsg: 91A00
Basic br: OD
Con br:  NA
Con specialty:  NA
Proj specialty:  NA

ROSWELL, KENNETH E. ███████████ MAJ ████████████████████

Relieved from: 339th MI Co (VJGAAO) 555 E. 238th St, Bronx, NY 10470  (7)
Reason: Voluntary
Assigned to: USAR Control Group (REINF) RCPAC, St. Louis, MO  63132
Effective date: 7 June 1982
Additional instructions: OER will be completed & distributed IAW para 7-9b(2), AR 623-105.


FOR ARMY USE
Auth:  AR 140-10
Asgd to mgt dsg: 35A00
Basic br: MI
Con br:  NA
Con specialty:  NA
Proj specialty:  NA

Orders 179-15   AFKA-PA-RP-RU(P)   HQ, FIRST US ARMY   13 September 1982   CONT

ROUNTREE, SUSAN M. ▬▬▬▬▬ CPT ▬▬▬▬▬▬▬▬

Relieved from: 338th Gen Hosp (SCPAAO) 9400 Porter Road, Niagara Falls, NY 14304 (7)
Reason: Employment interferes with attendance
Assigned to: USAR Control Group (REINF) RCPAC, St. Louis, MO  63132
Effective date: 21 July 1982
Additional instructions: OER will be completed & distributed IAW para 7-9b(2), AR 623-105.


FOR ARMY USE
Auth: AR 140-10
Asgd to mgt dsg: 66H9D
Basic br: ANC
Con br: NA
Con specialty: NA
Proj specialty: NA

SMYTH, JOHN P. ▬▬▬▬▬ MAJ  1199 California Rd, Eastchester, NY 10709


Relieved from: 339th MI Co (VJCAAO) 555 E. 238th St, Bronx, NY 10470  (7)
Reason: No vacancy due to promotion
Assigned to: USAR Control Group (REINF) RCPAC, St. Louis, MO  63132
Effective date: 17 September 1982
Additional instructions: OER will be completed & distributed IAW para 7-9b(2), AR 623-105.


FOR ARMY USE
Auth: AR 140-10
Asgd to mgt dsg: 36A
Basic br: MI
Con br: NA
Con specialty: NA
Proj specialty: NA
Format: 450

FOR THE COMMANDER:



DISTRIBUTION:
Indiv (2)
AFKA-PA-RP-ROM (2)                    JOHN J. FOX
AFKA-PA-RP-RU (2)                     Unit Support Branch
AFKA-PA-PS-A(Lib Rec Cy)(1)          Reserve Personnel Division, DCSPA
AFKA-PA- PS-PC (1) JP
Losing Unit (3)
201 File (2)
MUSARC (1) 77th
Gaining Unit (2)
CDR, RCPAC, AGUZ-OPM-C (MAJ Foulk)(1)



**DEPARTMENT OF THE ARMY**
OFFICE OF THE ADJUTANT GENERAL
U.S. ARMY RESERVE COMPONENTS PERSONNEL AND ADMINISTRATION CENTER
ST. LOUIS, MO 63132

REPLY TO
ATTENTION OF:

AGUZ-PAP-N

25 MAY 82

SUBJECT: Selection for Promotion

EPSTEIN LAWRENCE S.

A-820604
U IC-
ARCOM UIC-17

1. A Department of the Army Reserve Components Selection Board convened at this Center considered you for promotion under the provisions of AR 135-155. I am pleased to inform you that you have been selected for promotion to the next higher grade.

2. Your projected promotion eligibility date (PPED) is shown after A above. Completion of the required service, favorable security screening and physical fitness are required for the promotion to be effected. To remain assigned to a Troop Program Unit, a position vacancy must exist at the time of your PPED. If a position vacancy is not available you may either decline the promotion or accept it upon transfer to a USAR Control Group.

3. You will be notified by separate correspondence from the Army headquarters to which you are assigned of further actions required on your part.

4. For your information, the minimum military educational requirements for Reserve of the Army officer promotion are listed on the reverse side of this letter.

BY ORDER OF THE SECRETARY OF THE ARMY:

*C. F. Briggs*
Adjutant General

DISTRIBUTION FL 2019   01
(1) INDIV 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 CPT
(2) CONUSA 17/ARCOM-GOCOM

AGUZ FL   2019-R
1 May 82
Replaces AGUZ FL 285-2  1 May 77

00180

## PERSONAL IN NATURE

☐ **ENROLLMENT NOTICE** — You are, now enrolled in the Army Correspondence Course Program of The Army Institute for Professional Development. If enrolled in a course or multiple subcourses, you must complete _____ credit hours per enrollment year. (USAR school students must complete one course phase per enrollment year.) If enrolled in one subcourse, you must complete it within 12 months. If you do not meet these requirements, you may be terminated. Should you not be able to meet the requirements by your enrollment (year) ending date, you may submit written justification for a waiver provided  you are enrolled in a phase, course, or multiple subcourses. Waivers are not granted to students enrolled in one subcourse.   Subcourse materials are being shipped separately.   If SQJT or classified subcourses are included in your enrollment, response sheets for those subcourses must be returned to your SQJT supervisor for mailing to the SQJT/classified control number _____ of _____ (supervisor only) _____ has been assigned to the SQJT classified supervisor.  DO NOT RETURN EXAMINATION BOOKLET OR OTHER STUDY M_____ _____ has been completed.

☐ **PHASE COMPLETION NOTICE** — Phase _____

☐☐☐☐☐ **TERMINATION OF ENROLLMENT** — The reason is _____

☐ **RETIREMENT POINT CREDIT NOTICE** — _____ credit hours have been earned upon _____

☐ **EXEMPTION(S) NOTICE** — You have been exempted from the subcourse(s) listed below.

☐ **UNAVAILABILITY OF SUBCOURSE(S) NOTICE** — Your application cannot be processed. Requested subcourse(s) is/are unavailable. Please submit DA Form 145 for different subcourse(s), or after 90 days resubmit original application.

☐ **RE-EXAM DEFICIENCY NOTICE** — Your second response for _____ was unsatisfactory, and this subcourse will automatically be reissued in six months or upon revision. However, if enrolled in one subcourse, your enrollment has been terminated. If enrolled in a course or multiple subcourses, your enrollment is not affected.

☐ **SSN CORRECTION NOTICE** — Your SSN has been corrected. A new response sheet has been produced for each new subcourse not graded. Subject only new response sheet(s)  are being shipped separately.

☐ **CORRESPONDENCE SUBCOURSE(S) COMPLETION NOTICE** — This is to certify that you have completed subcourse(s) listed below.

☐ **REISSUE OF FAILED SUBCOURSE NOTICE** — Subcourse _____ has been reissued and is being mailed separately.

☒ **WAIVER NOTICE** — You have been granted a waiver of your _____
Your new EYE date is _____

☐ **CORRESPONDENCE COURSE COMPLETION NOTICE** — Course _____ **R3L INTEL OFF ADVANCE E COURSE** has been successfully completed.

☐ **80 DAY WARNING NOTICE** — Students in the Army Correspondence Course Program of The Army Institute for Professional Development are required to complete a minimum number of credit hours per enrollment year.
As of the date indicated below, only _____ of the _____ credit hours required have been completed by the enrolled student. Request this student be counseled and advised that if the required hours cannot be met, a waiver should be requested 30 days prior to EYE date to prevent termination of enrollment.

☐ If there is not enough space to list all subcourses, they will be continued on a separate notice.

NAME **EPSTEIN LAWRENCE S.**    SSN _____    SCH **371**    PCN TBP-001    GROUP _____    RANK = **CPT**
Enrollment Year Ending Date (EYE) **04/12/83**    Retirement Year Ending Date (RYE) **03/12/82**    Current Date **05/04/82**    EFA*CH = **MI**
ATSC FORM 157, (1 AUG 78)

00181

11/23/ 10-8-82 B.K.

# SERVICE SCHOOL ACADEMIC EVALUATION REPORT
For use of this form, see AR 623-1; the proponent agency is MILPERCEN

PCN TOP-065    05 APR 82

| 1. LAST NAME—FIRST NAME—MIDDLE INITIAL | 2. SSN | 3. GRADE | 4. BRANCH | 5. SPECIALTY/MOSC | 6. COMPONENT |
|---|---|---|---|---|---|
| EPSTEIN LAWRENCE S | | CPT | MI | | 07 |

6. COURSE TITLE
MIL INTEL OFF ADVANCED COURSE

7. NAME OF SCHOOL
THE ARMY INSTITUTE FOR PROFESSIONAL DEVELOPMENT - 301

9. TYPE OF REPORT
[ ] RESIDENT
[X] NON-RESIDENT

10. PERIOD OF REPORT (Year, Month, Day)
From:        Thru:

11. DURATION OF COURSE (Year, Month, Day)
[X] From: 08 MAR 81 Thru: 05 APR 82

12. EXPLANATION OF NON-RATED PERIODS

## 13. PERFORMANCE SUMMARY

a. [ ] EXCEEDED COURSE STANDARDS
(Limited to 20% of class enrollment)

b. [X] ACHIEVED COURSE STANDARDS

c. [ ] MARGINALLY ACHIEVED COURSE STANDARDS

d. [ ] FAILED TO ACHIEVE COURSE STANDARDS

*Rating must be supported by comments in Item 16.

## 14. DEMONSTRATED ABILITIES

a. WRITTEN COMMUNICATION
[ ] NOT EVALUATED  [ ] UNSAT  [ ] SAT  [ ] SUPERIOR

b. ORAL COMMUNICATION
[ ] NOT EVALUATED  [ ] UNSAT  [ ] SAT  [ ] SUPERIOR

c. LEADERSHIP SKILLS
[X] NOT EVALUATED  [ ] UNSAT  [ ] SAT  [ ] SUPERIOR

d. CONTRIBUTED TO GROUP WORK
[X] NOT EVALUATED  [ ] UNSAT  [ ] SAT  [ ] SUPERIOR

e. EVALUATION OF STUDENTS RESEARCH ABILITY
[X] NOT EVALUATED  [ ] UNSAT  [ ] SAT  [ ] SUPERIOR

(SUPERIOR/UNSAT rating must be supported by comments in Item 16)

## 15. HAS THE STUDENT DEMONSTRATED THE ACADEMIC POTENTIAL FOR SELECTION TO HIGHER LEVEL SCHOOLING/TRAINING?
[X] YES  [ ] NO  [ ] N/A  (A "NO" response must be explained in Item 16)

16. COMMENTS  (This item is intended to obtain a word picture of each student that will accurately and completely portray academic performance, intellectual qualities, and communication skills and abilities. The narrative should also discuss broader aspects of the student's potential leadership capabilities, moral and overall professional qualities. In particular, comments should be made if the student failed to respond to recommendations for improving academic or personal affairs.)

STUDENT HAS COMPLETED AND BEEN GIVEN A DIPLOMA WHICH ATTESTS TO THE
SERVICE MEMBER BEING A GRADUATE OF THE NONRESIDENT COURSE INDICATED ABOVE

ITEM 8:  COMPONENT: 02=ACTIVE DUTY OFFICER, 03=ACTIVE DUTY ENLISTED, 07=USAR
OFFICER, 08=NGUS OFFICER, 09=USAR ENLISTED AND 11=NGUS ENLISTED.

ITEM 13:  EVALUATED ON A PASS/FAIL BASIS.
ITEM 14:  A, B, C, D, E:  INFORMATION OMITTED BECAUSE OF INSUFFICIENT
OPPORTUNITY FOR INDIVIDUAL OBSERVATION.

## 17. AUTHENTICATION

a. TYPED NAME, GRADE, BRANCH AND TITLE OF PREPARING OFFICER
MARGARET S. BURTON, CHIEF, STUDENT SERVICES DIVISION

SIGNATURE

b. TYPED NAME, GRADE, BRANCH AND TITLE OF REVIEWING OFFICER
JAMES C. SHEPARD, LTC ARMOR, DIRECTOR

SIGNATURE

## 18. MILITARY PERSONNEL OFFICER

a. FORWARDING ADDRESS (Rated Student)

1669 59TH ST

BROOKLYN    NY 11204

b. DISTRIBUTION
[X] STUDENT
[X] STUDENTS OFFICIAL MILITARY RECORDS
[X] UNIT CDR (P/B NCOES only)

28 APR

DA Form 1059 (TRADOC)

NCOPA Code Number 0000

Source of Supply: HQ TRADOC

00182

1/31 10-9-82 B.K.

*Epstein*
*68*

ATIC-IPD-SS

1 March 1982

SUBJECT: Course Completion Verification

CPT Lawrence S. Epstein

Records at this Institute indicate that CPT Lawrence S. Epstein, 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, has completed all requirements of the Military Intelligence Officer Advanced Course, as of 1 March 1982. Final exemptions and grades have been submitted. An official certificate of course completion will be issued on the date the records are processed through the computer, and a diploma will be awarded.

MARGARET S. BURTON
Chief, Student Services Division
Institute for Professional Development

CF:
CDR (RCPAC)
AGUZ-PAP-82-E
9700 Page Blvd.
St. Louis, MO 63132



*p.1*
*C+D*

00183

ARMY RESERV**TS** AND ADDRESS VERIFICATION
*(Complete and return within 15 days after receipt)*
For use of this form, see AR 135-133; the proponent agency is TAGO/RCPAC

| | DATE |
|---|---|
| | 26 FEB 82 |

**DATA REQUIRED BY THE PRIVACY ACT OF 1974**

**AUTHORITY:** 10 USC 275.

**PRINCIPAL PURPOSE(S):** Pertinent information concerning changes in a reservist's marital status, civilian education level, etc.

**ROUTINE USES:** to keep his Master Personnel File up to date. The form also serves as a means for a reservist to retract his Ready Reserve status. Information is used to update the Reservist's Personnel Record to determine availability for mobilization. Information is also used when reservist requests a review of his Reserve status, to determine his eligibility for release from the Ready Reserve.

**DISCLOSURE:** The execution of this form is mandatory for the reservist. Should he fail to keep the military advised of changes in his status, it could act to the detriment of the reservist in the event of mobilization.

**BEFORE COMPLETING THIS FORM READ INSTRUCTIONS ON REVERSE SIDE**

| DATA ITEM | INFORMATION NOW ON FILE | PRINT CHANGES OR CORRECTIONS |
|---|---|---|
| 1. | EPSTEIN LAWRENCE STEVEN | |
| 2. GRADE/BRANCH *(Officer)* | CPT MI | |
| 3. PRIMARY MOS/SSI | 36A | |
| 4. MARITAL STATUS & NO. OF DEPENDENTS | SINGLE-0 | |
| 5. CIVILIAN EDUCATION LEVEL | OTHER PROF DEGREE | |
| 6a. PRESENT EMPLOYER | 000000 | a. FEDERAL EMPLOYEE CIVILIAN JOB SERIES AND GRADE |
| City College/City Univ | b. DESCRIPTION OF DUTIES | |
| b. JOB TITLE | Instructional | |
| Professor of Speech + Theatre | College/University Level | c. SERVICE COMPUTATION DATE *(Federal Government)* |

**7. REQUEST FOR REVIEW OF RESERVE STATUS**

I believe I am eligible for, and request transfer to the Standby Reserve for the reason checked at subparagraph a, b, or c below; or, if I have checked subparagraph d below, I believe I am eligible for and request discharge. I am attaching documentary evidence in accordance with the instructions on the reverse side of this questionnaire.

a. ☐ Employed in a key position with the Federal Government, State, Local Government or Defense Supporting Agency.

b. ☐ Preparing for the ministry or religious obligation to perform missionary work.

c. ☐ My entry on extended active duty would create an extreme community hardship.

d. ☐ My entry on extended active duty would create an extreme personal hardship.

**8. CERTIFICATE OF PHYSICAL CONDITION**

☒ I CERTIFY TO THE BEST OF MY KNOWLEDGE AND BELIEF I HAVE NO MEDICAL CONDITION OR PHYSICAL DEFECT THAT WOULD PREVENT MY PERFORMANCE OF ACTIVE MILITARY SERVICE EXCEPT AS FOLLOWS:

*(SEE INSTRUCTIONS ON REVERSE)*

**9. UNDERSTANDING OF SERVICE OBLIGATION**

I UNDERSTAND THAT I WILL BE CONSIDERED IMMEDIATELY AVAILABLE FOR ANY ACTIVE DUTY TO WHICH I MAY BE ORDERED IN ACCORDANCE WITH THE LAW UNTIL SUCH TIME AS I HAVE COMPLETED MY READY RESERVE SERVICE OBLIGATION OR AGREEMENT UNLESS I AM DETERMINED ELIGIBLE FOR TRANSFER TO THE STANDBY RESERVE FOR ONE OF THE REASONS SHOWN IN ITEM 7 OR FOUND NOT TO BE PHYSICALLY QUALIFIED FOR ACTIVE MILITARY SERVICE.

| 10. SIGNATURE OF RESERVIST | 11. DATE |
|---|---|
| | |

**DA FORM 3725** JUN 81    EDITION OF AUG 78 IS OBSOLETE.

00184

11-3/ 10-8-82 B.K.

69



# Department of the Army
# United States Army Intelligence

### and

### Security Command

XEROX COPY FILMED
IN LIEU OF ORIGINAL

This is to certify that CPT Lawrence S. Epstein satisfactorily completed the

INSCOM Area Studies Officer Course        on        the 18th day of September 1981

and in testimony thereof is awarded this diploma.

Given at Fort George G. Meade, Maryland

THOMAS C. MIDDLETON, JR., LTC, MI
CDR, 841st MI, USA OPS GP
IA 8401 Form 2182, 1 Feb 76

THOMAS J. FLYNN
BRIGADIER GENERAL, USA
DEPUTY COMMANDER, INTELLIGENCE

ARMY RESERVE
# RECORD OF INDIVIDUAL PERFORMANCE OF RESERVE DUTY TRAINING
For use of this form, see AR 140-185; the proponent agency is RCPAC.

**1. DATE**
01 Sep 81

**2. FROM: (Reporting Agency) (Include ZIP Code)**
CDR., 339th MI Co., 555 E. 238th St., Bronx, NY 10470

**3. RETIREMENT YEAR ENDING DATE**

**4. TO: (Custodian of reservists' field 201 file.) (Include ZIP Code)**
Commander
339th MI Co.
555 E. 238th St.
Bronx, NY 10470

**5. LAST NAME - FIRST NAME - MIDDLE INITIAL**
EPSTEIN, LAWRENCE S.

**6. GRADE**
CPT

**7. SOCIAL SECURITY NO.**
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

**8. BRANCH**
MI

**9. INDIVIDUAL'S ASSIGNED ORGANIZATION (if different from office of addressee)**
Same

**10. THE ABOVE NAMED RESERVIST PERFORMED** ☐ EQUIVALENT ☐ APPROPRIATE ☐ SUITABLE ☒ OTHER
(Check applicable box) DUTIES, TRAINING OR INSTRUCTION ON THE DATES AND FOR THE HOURS INDICATED AS AUTHORIZED BY
(Cite authorization) **TODO (15 Aug 81) & EST Request**

| a. DATE | | | HOURS b | RETIREMENT POINTS | NATURE OF DUTIES, TRAINING OR INSTRUCTION |
|---|---|---|---|---|---|
| DAY | MONTH | YEAR | | | |
| 29 | Aug | 81 | 8 | 1-2 | Perf Admin Duties at Muller USAR Center |
| 30 | Aug | 81 | 8 | 2-2 | /nothing follows/ |

**11. TYPED NAME, GRADE AND POSITION OF OFFICER HAVING KNOWLEDGE OF DUTIES PERFORMED**
KENNETH E. ROSWELL
MAJ, Commanding

**12. SIGNATURE OF OFFICER (Item 11)**

**13. FOR CUSTODIAN OF INDIVIDUAL RESERVIST'S RECORDS**
☐ REPORTED TO SERVICING DATA PROCESSING UNIT.

| PAY DATA | ☐ EXTRACTED | ☐ NOT APPLICABLE |
|---|---|---|

**DA FORM 1380** (1 Feb 78)
PREVIOUS EDITIONS OF THIS FORM ARE OBSOLETE.

00186

DEPARTMENT OF THE ARMY
HEADQUARTERS, 77TH UNITED STATES ARMY RESERVE COMMAND
FORT TOTTEN FLUSHING, NEW YORK 11359

ORDERS 190-35

LAWRENCE EPSTEIN

21 August 1981

███████████ CPT
339 MI Co (WVJGAO)
555 E. 238th Street
Bronx, New York 10472

YOU ARE ORDERED TO ACTIVE DUTY FOR TRAINING (ADT) FOR THE PERIOD INDICATED PLUS ALLOWABLE TRAVEL TIME. UPON COMPLETION OF THE PERIOD OF ADT, UNLESS SOONER RELIEVED OR EXTENDED BY PROPER AUTHORITY, YOU WILL RETURN TO THE PLACE WHERE YOU ENTERED ADT AND BE RELIEVED FROM SUCH DUTY.

PERIOD: 2 DAY(S) PLUS ALLOWABLE TRAVEL TIME, MOS AUTH TVL: 1 DAY(S)

REPORT TO: Ft Meade, MD 20755

REPORTING DATE: 14 Sep 1981     NOT LATER THAN 0800 HOURS

ATTACHED TO: NA

PURPOSE: REFRESHER & PROFICIENCY (MOS Tug)

ADDITIONAL INSTRUCTIONS: (A) WHEN TRAINING DIRECTED BY THIS ORDER IS NOT PERFORMED OR COMPLETED, YOU WILL PROMPTLY INFORM YOUR COMMANDER WHO WILL, THROUGH CHANNELS, NOTIFY COMMANDER, 77TH ARCOM, ATTN: AFKA-ACA-RM FT TOTTEN, NY 11359 WITHIN FIVE DAYS OF THE REPORTING DATE INDICATED.
(B) YOU ARE NOT AUTHORIZED TO PROCEED FOR PAY OR PER DIEM PURPOSES PRIOR TO 0600 HOURS. YOU WILL COMPLETE RETURN TRAVEL BY 2400 HOURS.
(C) MODE OF TRAVEL AUTHORIZED: Individual
(D) MARRIED RESERVISTS MUST BRING MARRIAGE LICENSE AND PROOF OF DEPENDENTS TO TRAINING SITE FOR PAY PURPOSES.
(E) IF GOVT MESS/QUARTERS IS NOT AVAILABLE, PAYMENT OF BAS IS AUTHORIZED.
(F) DUTY STATION XXX IS NOT WITHIN COMMUTING DISTANCE. TRAVEL AND PER DIEM PAYABLE IAW, VOL 1, JTR.
(G) TRANSPORT OF GOVT WEAPONS/AMMUNITION IS AUTHORIZED ONLY WHEN PURPOSE OF ADT IS MARKSMANSHIP.
(H) DESIGNATED COMMISSARY/PX AGENT: UNKNOWN

FOR ARMY USE:
AUTHORITY: ORDERED TO SPECIAL ADT (10 USC 672(d))
ENTITLEMENT

| | APPROPRIATION | | EST COST | | PERFORMANCE DATA |
|---|---|---|---|---|---|
| PAY | 2112070 76-2046 | P3241.2-1199 | S36018 | $ 224.00 | MOS: 3 |
| COLA | 2112070 76-2046 | P3241.2-1210 | S36018 | $ NA | PART: 1 |
| FICA | 2112070 76-2046 | P3241.2-1250 | S36018 | $ 12.00 | UIC: K86K |
| PER DIEM | 2112070 76-2046 | P3241.2-2119 | S36018 | $ 48.00 | APC: ZC CF |
| TVL (INDIV) | 2112070 76-2046 | P3241.2-2199 | S36023 | $ 80.00 | |
| | | EST TOTAL COST: | | $ 364.00 | CTL#:77C- 11038 |

PPM: NA

COMP: USAR

FORMAT: 260

FOR THE COMMANDER:

SEX: M

Scty Clnc: TS

PEBD: 6 June 69

[signature]
CPT, USAR
Asst Adj Gen

DISTRIBUTION:
4- INDIVIDUAL INDICATED ON ORDER
5- CDR, UNIT OF ASSIGNEMENT
4- CDR, FT INDIANTOWN GAP, ATTN: AFZQ-CM-FA, ANNVILLE, PA 17003
1- AFKA-ACA-OI
1- AFKA-ACA-RM
2- AFFA-ACA-PA- AG
1- CDR, CONTROL HQ, 353d CA Cmd

00187

DEPARTMENT OF THE ARMY
339TH MILITARY INTELLIGENCE COMPANY
555 EAST 238TH STREET
BRONX, NEW YORK 10470

ANNEX E (Personnel Authorized Individual Travel) to orders 145-11, HQ, 77th USARCOM
dated 24 June 1981

Period of Training: 12 - 25 July 1981
Training Site: Ft Meade, MD 20755

| NAME/GRADE/SSN | WE | PEBD | HOME ADDRESS | COMM/PX Agent |
|---|---|---|---|---|
| ALBANO, Robert J. SSG | M-1 | 710726 | | Wife: Ann |
| BUCK, Henry W. WO1 | M-3 | 670521 | | Wife: Maureen |
| CLABBY, Joseph V. SSG | S-0 | 720409 | | None |
| EPSTEIN, Lawrence S. CPT | S-1 | 691204 | | None |
| GEST, Richard W. SSG | M-6 | 590622 | | Wife: Wilma |
| GEYSEN, Frank T. Jr WO1 | M-0 | 690220 | | Wife: Nancy |
| GOONAN, Joseph SSG | M-4 | 701202 | | Wife: Eleanor |
| HOWE, James W. Jr SFC | M-0 | 640701 | | Wife: Dorothy |
| KLIVANS, Gary S. SSG | S-0 | 710522 | | None |
| MURPHY, Brian D. SSG | M-1 | 710518 | | Wife: Mildred |
| PASSERO, Charles F. CW2 | M-2 | 530414 | | Wife: Rosemarie |
| SCARINZI, John WO1 | M-3 | 690904 | | Wife: Loretta |
| WAGNER, Harry J. SSG | M-0 | 700630 | | Wife: Unknown |
| WHOLEAN, William J. WO1 | M-0 | 600726 | | Wife: Jacqueline |

00188

ANNEX E (Personnel Authorized Individual Travel) to orders 145-11, HQ 77th
USARCOM dated 24 June 1981

KENNETH E. ROSWELL
MAJ, MI-USAR
Commanding

DISTRIBUTION:
5 - Finance
3 - Indiv Conc
1 - 201 Files
3 - Unit Files
1 - Comm/PX Agent

DEPARTMENT OF THE ARMY
HEADQUARTERS, 77TH UNITED STATES ARMY RESERVE COMMAND
FORT TOTTEN FLUSHING, NEW YORK 11359

ORDERS  145-11
339TH MI CO   (WVJGAA)                                    24 June 1981
555 EAST 238TH STREET, BRONX, NEW YORK   10470

THE UNITED STATES ARMY RESERVE UNIT SHOWN, AND ITS MEMBERS ARE ORDERED TO ANNUAL TRAINING FOR THE PERIOD INDICATED
AND WILL PROCEED FROM HOME STATION TO DUTY STATION SHOWN. UPON COMPLETION OF ANNUAL TRAINING, RETURN TO HOME
STATION AND REVERT TO INACTIVE STATUS.

AUTHORITY: 1A CIR 135-8-81   29 SEP 80

DUTY STATION: Ft Meade, MD  20755

PERIOD:   12-25 July 1981

PERSONNEL
  MAIN DUTY: ANNEX A
  ADVANCE PARTY: ANNEX B
  GOVERNMENT CONVOY PERSONNEL TRAVEL:   ANNEX C
  REAR DETACHMENT:  ANNEX D
  PERSONNEL AUTHORIZED INDIVIDUAL TRAVEL:   ANNEX E
  PERSONNEL EXCUSED FROM ANNUAL TRAINING:   ANNEX F
  PERSONNEL AUTHORIZED CHANGE IN DATES OF ANNUAL TRAINING:   ANNEX G

MOVEMENT DATA:   THIS IS A GROUP TRAVEL ORDER UNLESS MODIFIED IN THE ADDITIONAL INSTRUCTIONS.  THE PERIOD SHOWN
INCLUDES AUTHORIZED TRAVEL TIME; HOWEVER, WHEN TRAVEL CANNOT BE COMPLETED BY 1300 HOURS ON THE FIRST DAY OF
SCHEDULED AT, ADDITIONAL DAYS BEYOND THE NORMAL 14 ARE AUTHORIZED.  IN NO CASE, INCLUDING CONVOY TRAVEL, WILL THE
TOTAL PERIOD EXCEED 17 DAYS.        Individual

ADDITIONAL INSTRUCTIONS: SEE REVERSE SIDE

ACCOUNTING CLASSIFICATION:
OFFICER

| ENTITLEMENT | APPROPRIATION | EST COST | PERFORMANCE DATA |
|---|---|---|---|
| PAY | 2112070 76-2046 P3211. 1-1199 S36018 | $  4375.00 | MOS:   84 |
| COLA | 2112070 76-2046 P3211. 1-1210 S36018 | $   NA | PART:   6 |
| FICA | 2112070 76-2046 P3211. 1-1250 S36018 | $   228.00 | UUC:   K86K |
| PER DIEM | 2112070 76-2046 P3211. 1-2119 S36018 | $   NA | APC:  ZCAA |
| TRAVEL (GROUP) | 2112070 76-2046 P3211. 1-2122 S36018 | $   NA | |
| TRAVEL (INDIV) | 2112070 76-2046 P3211. 1-2199S36018 | $   162.00 | |
| | EST TOTAL COST | $   4603.00 | CTLR: 77C-8225 |

ENLISTED

| ENTITLEMENT | APPROPRIATION | EST COST | PERFORMANCE DATA |
|---|---|---|---|
| PAY | 2112070 76-2046 P3212. 1 -1199 S36018 | $   3504.00 | MOS:   9B |
| COLA | 2112070 76-2046 P3212. 1 -1210 S36018 | $   NA | PART:   7 |
| FICA | 2112070 76-2046 P3212. 1 -1250 S36018 | $   180.00 | UUC:   K86K |
| PER DIEM | 2112070 76-2046 P3212. 1 -2119 S36018 | $   NA | APC:   ZC BA |
| TRAVEL (GROUP) | 2112070 76-2046 P3212. 1 -2122 S36018 | $   NA | |
| TRAVEL (INDIV) | 2112070 76-2046 P3212. 1 -2199S36018 | $   189.00 | |
| | EST TOTAL COST | $   3873.00 | CTLR: 77C- 8225 |

ORDERS  145-11                                            24 June 1981

ADDITIONAL INSTRUCTIONS:  IF GOVERNMENT MESS IS NOT AVAILABLE, PAYMENT OF BAS IS AUTHORIZED.
COMMANDERS WILL PREPARE AND AUTHENTICATE ROSTERS TO BE ATTACHED AS ANNEXES AS SHOWN UNDER
PERSONNEL AND MADE PART OF THIS ORDER AS APPROPRIATE.  ROSTERS WILL SPECIFY THE APPROPRIATE
TRAVEL DATES AND ANNUAL TRAINING DATES AND WILL LIST MEMBERS BY RANK GIVING THE FOLLOWING
INFORMATION ON EACH INDIVIDUAL: GRADE, NAME, SSN, HOME ADDRESS,PEBD, WITHHOLDING, COMMISSARY/PX
AGENT.  ANNEXES WILL BE IDENTFIED AS SHOWN UNDER "PERSONNEL" LEAD LINE.  ONE COPY OF ALL ROSTERS
ISSUED FOR PAYMENT AS A PART OF THIS ORDER WILL BE FORWARDED TO COMMANDER, 77TH ARCOM, ATTN:
AFKA-ACA-RM, FORT TOTTEN, NY  11359.  THREE(3) COPIES OF THIS ORDER WITH ALL ANNEXES WILL BE
SUBMITTED WITH THE UNIT PAYROLL TO THE FINANCE OFFICER, FORT INDIANTOWN GAP,ATTN: AFZQ-ACA-FA,
ANNVILLE, PA  17003.  UNITS TRAINING AT FEDERAL SITES ARE ATTACHED TO THAT SITE FOR THE ADMI-
NISTRATION OF MILITARY OF JUSTICE.

FORMAT:  250

FOR THE COMMANDER:



MORRIS GOLDMAN
CW4, USA
Asst AG Gen


DISTRIBUTION:
4- FORT INDIANTOWN GAP, ATTN: AFZQ-ACA-FA, ANNVILLE,  PA   17003
2- AFKA-ACA-OI
2- AFKA-ACA-RM
10- AFKA-ACA-LG
2- AFKA-ACA-PA-AG
1- CDR, CONTROL HQ, 353d CA Cmd
90 CDR, ASGD UNIT, 339th MI Co

DEPARTMENT OF THE ARMY
33⬤ MILITARY INTELLIGENCE COMPANY
555 EAST 238TH STREET
BRONX, NEW YORK 10470

10 March 1981

SUBJECT: Award of the Army Reserve Components Achievement Medal with Bronze OLC

1.  Pursuant to the authority contained in Department of the Army General Orders No. 30 dated 29 Jun 71, Paragraph 4-32 and 6-4 AR 672-5-1. The following listed individual is awarded the Army Reserve Components Achievement Medal with the Bronze Oak Leaf Cluster:

| NAME | GRADE | SSN | DATES |
|------|-------|-----|-------|
| EPSTEIN, Lawrence S. | CAPT | ▮▮▮▮▮ | 10 Mar 77- 9 Mar 81 |

KENNETH E. ROSWELL
MAJ      MI-USAR
COMMANDING

Distribution:
3 Individual concerned
✓1 MPRJ
1 Unit File

00192

ARMY RESERVE
## RECORD OF INDIVIDUAL PERFORMANCE OF RESERVE DUTY TRAINING
For use of this form, see AR 140-185; the proponent agency is RCPAC.

| | |
|---|---|
| **2. FROM** (Reporting Agency) (Include ZIP Code) | **1. DATE** 14 Jan 81 |
| Cdr 339th MI Co 555 E 238th Street, Bronx, NY 10470 | **3. RETIREMENT YEAR ENDING DATE** |

**4. TO:** (Custodian of reservists' field 201 files.) (Include ZIP Code)

Commander
339th MI Co
555 E 238th St
Bronx, NY 10470

| | | | |
|---|---|---|---|
| **5. LAST NAME - FIRST NAME - MIDDLE INITIAL** BESTEIN, Lawrence, S | **6. GRADE** CPT | **7. SOCIAL SECURITY NO.** ▉▉▉▉▉▉ | **8. BRANCH** MI |

**9. INDIVIDUAL'S ASSIGNED ORGANIZATION** (if different from office of addressee)
Same

**10. THE ABOVE NAMED RESERVIST PERFORMED** (Check applicable box) ☐ EQUIVALENT ☐ APPROPRIATE ☐ SUITABLE ☒ OTHER **DUTIES, TRAINING OR INSTRUCTION ON THE DATES AND FOR THE HOURS INDICATED AS AUTHORIZED BY** (Cite authorization): VSO8 1 Jan 81 and RST request

| DATE | | | HOURS | RETIREMENT POINTS | NATURE OF DUTIES, TRAINING OR INSTRUCTION |
|---|---|---|---|---|---|
| DAY | MONTH | YEAR | b | c | |
| 12 | Jan | 81 | 8 | P2 | Performed training at Ft Meade, MD |
| 13 | Jan | 81 | 8 | P2 | "    "    "    " |
| 14 | Jan | 81 | 4 | P1 | "    "    "    " |
| ///////// | ////// | ////// | ////// | ////// | /////////NOTHING FOLLOWS///////////////////////////////// |

*Posted 3593*

**11. TYPED NAME, GRADE AND POSITION OF OFFICER HAVING KNOWLEDGE OF DUTIES PERFORMED**
KENNETH E. ROSWELL, MAJ
COMMANDING

**12. SIGNATURE OF OFFICER** (Item 11)

**13. FOR CUSTODIAN OF INDIVIDUAL RESERVIST'S RECORDS**

☐ REPORTED TO SERVICING DATA PROCESSING UNIT.

| PAY DATA | ☐ EXTRACTED | ☐ NOT APPLICABLE |
|---|---|---|

**DA FORM 1380** FEB 75
PREVIOUS EDITIONS OF THIS FORM ARE OBSOLETE.

00193

DEPARTMENT OF THE ARMY
HEADQUARTERS 76TH DIVISION (TRAINING)
700 South Quaker Lane
West Hartford, Connecticut 06110

ORDERS 131-1

21 October 1980

1.  Personnel listed at Inclosure 1.

You are reasssigned in the reserve as indicated below.

Relieved from:  Co C, 826th Military Intelligence Bn (FA)(WQ2FCO) SGT
Joseph E. Muller USAR Center, 555 East 238th Street,
Bronx, NY 10470

Reason:  Reassignment between troop program units
Assigned to:  339th Military Intelligence Company (Collection)(WVJGAA)
SGT Joseph E. Muller USAR Center, 555 East 238th Street,
Bronx, NY 10470

Effective date:  VOCG 16 September 1980 (Perm Order 37-1 , HQ, 1A,
8 Apr 80)
Additional instructions:  None

FOR ARMY USE:
Auth: Para 1-2a(1) (a), 1A Suppl 1, to AR 140-10, and VO Mr. Ruggles 1A,
1 Oct 80
Asgd to mgt dsg:  NA
Basic Br:  NA
Con br:  NA
Con specialty: NA
Proj specialty:  NA
Format:  450

FOR THE COMMANDER:

1 Incl
as

JOHN J. KELEHER
MAJ, AGC, USAR
Adjutant General

DISTRIBUTION:
O
10 – Co C, 826th MI BN (FA), SGT Joseph E Muller USAR Center, 555 East
238th Street, Bronx, NY 10470
10 – 339th Military Intelligence Company (Collection) SGT Joseph E. Muller,
USAR Center, 555 East 238th Street, Bronx, NY 10470
5 – 77th US Army Reserve Command, Ft Totten USARC, Flushing, NY 11359

Inclosure 1 to Orders 131-1 dated 21 October 1980

339th MI Co (Collection)     (WVJGAA)

| Name | Rank | |
|---|---|---|
| FITZGERALD EDMUND G. | MAJ | |
| ROSWELL KENNETH E | MAJ | DO |
| SPETTS GERALD R | MAJ | DO |
| BIVONA ERNEST F | CPT | DO |
| CONNELLY MAURICE H. | CPT | DO |
| DONNELLY ROBERT J | CPT | DO |
| DUCHOWSKI LAWRENCE | CPT | DO |
| ~~PASTERN LAWRENCE S~~ | CPT | DO |
| KESSLER GEORGE H | CPT | DO |
| RAINO QUENTIN T | CPT | DO |
| SHALVEY EDWARD P | CPT | DO |
| SMART THOMAS H | CPT | DO |
| SMYTH JOHN P | CPT | DO |
| STEWART DAVID P | CPT | DO |
| MALONEY JOHN C | 1LT | DO |
| KOESNES KELGE | 2LT | DO |
| MALEC RICHARD A | 2LT | DO |
| MERRITT LAWRENCE C | 2LT | DO |
| PERALES JORGE R | 2LT | DO |
| DIXON ARTHUR S | CW4 | DO |

ARMY RESERVE

# RECORD OF INDIVIDUAL PERFORMANCE OF RESERVE DUTY TRAINING
For use of this form, see AR 140-185; the proponent agency is RCPAC.

| 1. DATE |
|---|
| 17 Oct 80 |

2. FROM: (Reporting Agency) (Include ZIP Code)

Cdr, 339th MI Co, 555 E 238th St Bronx, NY 10470

3. RETIREMENT YEAR ENDING DATE

5 Jun

4. TO: (Custodian of reservists' field 201 files.) (Include ZIP Code)

Commander
339th MI Co.
555 E 238th St
Bronx, NY 10470

| 5. LAST NAME - FIRST NAME - MIDDLE INITIAL. | 6. GRADE | 7. SOCIAL SECURITY NO. | 8. BRANCH |
|---|---|---|---|
| EPSTEIN, Lawrence S. | CPT | ██████████ | |

9. INDIVIDUAL'S ASSIGNED ORGANIZATION (If different from office of addressee)

Same

10. THE ABOVE NAMED RESERVIST PERFORMED (Check applicable box) DUTIES, TRAINING OR INSTRUCTION ON THE DATES AND FOR THE HOURS INDICATED AS AUTHORIZED BY (Cite authorization):

☐ EQUIVALENT ☐ APPROPRIATE ☐ SUITABLE ☒ OTHER

VOCO 13 Sep 80 and EST request

| a. DATE | | | b. HOURS | RETIREMENT POINTS | c. NATURE OF DUTIES, TRAINING OR INSTRUCTION |
|---|---|---|---|---|---|
| DAY | MONTH | YEAR | | | |
| 14 | Oct | 80 | 8 | P-2 | Performed training at Ft Meade, MD |
| 15 | Oct | 80 | 8 | P-2 | |
| 16 | Oct | 80 | 8 | P-2 | " " " " |
| 17 | Oct | 80 | 8 | P-2 | " " " " |

//////////////////////////NOTHING FOLLOWS////////////////////////////////////////

*Posted 3593*

| 11. TYPED NAME, GRADE AND POSITION OF OFFICER HAVING KNOWLEDGE OF DUTIES PERFORMED | 12. SIGNATURE OF OFFICER (Item 11) |
|---|---|
| KENNETH E. ROSWELL, MAJ Commanding | |

13. FOR CUSTODIAN OF INDIVIDUAL RESERVIST'S RECORDS

☐ REPORTED TO SERVICING DATA PROCESSING UNIT.

PAY DATA ☐ EXTRACTED ☐ NOT APPLICABLE

DA FORM 1380 1 FEB 71

PREVIOUS EDITIONS OF THIS FORM ARE OBSOLETE.

00196



# DEPARTMENT OF THE ARMY

# CERTIFICATE OF TRAINING

## This is to certify that

CPT LAWRENCE S. EPSTEIN

## has successfully completed

PHASE I, AREA INTELLIGENCE COURSE DURING THE
PERIOD 20 THRU 31 AUGUST 1973.



LASZLO J. BOESZE
MAJ, MI
COMMANDING

Given at FORT GEORGE G. MEADE, MD

BY THE 641ST MI DETACHMENT



00197

2435  12/30/92        C

A-6

**SERVICE SCHOOL ACADEMIC EVALUATION REPORT**
For use of this form, see AR 623-1; the proponent agency is MILPERCEN.

| | | DATE |
|---|---|---|
| | | 3 Aug 79 |

**1. LAST NAME - FIRST NAME - MIDDLE INITIAL**
EPSTEIN, LAWRENCE

**2. SSN** | **3. GRADE** CPT | **4. BR** | **5. SPECIALTY/MOSC**

**2. COURSE TITLE**
TISO

**9. NAME OF SCHOOL**
FIRST USA AREA INTELLIGENCE SCHOOL

**10. COMP**

**7. TYPE OF REPORT**
☐ RESIDENT
☐ NONRESIDENT

**10. PERIOD OF REPORT (Year, month, day)**
From: 790723   Thru: 79____

**11. DURATION OF COURSE (Year, month, day)**
From: 790723   Thru: 790803

**12. EXPLANATION OF NONRATED**

**13. PERFORMANCE SUMMARY**

a. ☐ EXCEEDED COURSE STANDARDS (Limited to 20% of class members)

b. ☑ ACHIEVED COURSE STANDARDS

c. ☐ MARGINALLY ACHIEVED COURSE STANDARDS

d. ☐ FAILED TO ACHIEVE COURSE STANDARDS

*Rating must be supported by comments in ITEM 16*

**14. DEMONSTRATED ABILITIES**

a. WRITTEN COMMUNICATION
☑ NOT EVALUATED  ☐ UNSAT  ☐ SAT  ☐ SUPERIOR

b. ORAL COMMUNICATION
☐ NOT EVALUATED  ☐ UNSAT  ☑ SAT  ☐ SUPERIOR

c. LEADERSHIP SKILLS
☑ NOT EVALUATED  ☐ UNSAT  ☑ SAT  ☐ SUPERIOR

d. CONTRIBUTION TO GROUP WORK
☐ NOT EVALUATED  ☐ UNSAT  ☑ SAT  ☐ SUPERIOR

e. EVALUATION OF STUDENT'S RESEARCH ABILITY
☑ NOT EVALUATED  ☐ UNSAT  ☐ SAT  ☐ SUPERIOR
*(SUPERIOR/UNSAT rating must be supported by comments in ITEM 16)*

**15. HAS THE STUDENT DEMONSTRATED THE ACADEMIC POTENTIAL FOR SELECTION TO HIGHER LEVEL SCHOOLING/TRAINING?**
☑ YES  ☐ NO  ☐ N/A  *response must be supported by comments in ITEM 16*

**16. COMMENTS**

Individual demonstrates initiative and professionalism daily in class.  In addition to being attentive, receptive, and motivated, individual displayed a cooperative spirit to insure the ____ ___ of the course.

**17. AUTHENTICATION**

a. NAME, GRADE, BRANCH, AND TITLE OF PREPARING OFFICER
JAMES D. HENDRIX
LTC, AR, USAR, SENIOR INSTRUCTOR

SIGNATURE

b. TYPED NAME, GRADE, BRANCH, AND TITLE OF REVIEWING OFFICER
CHARLES W. PENNEY
COL, IN, USA, DIRECTOR OF INSTRUCTION

SIGNATURE

**18. MILITARY PERSONNEL OFFICER**

a. FORWARDING ADDRESS (Rated student)

b. DISTRIBUTION
☐ STUDENT   ☐ UNIT CDR (SVS INCOMP only)
☐ STUDENT'S OFFICIAL MILITARY RECORDS

**DA FORM 1059**
1 NOV 77

EDITION OF 1 JUL 73 IS OBSOLETE.
FB Overprint 75-R, 1 Jul 79

P1

00198



# DEPARTMENT OF THE ARMY

# CERTIFICATE OF TRAINING

## This is to certify that

CPT LAWRENCE EPSTEIN

## has successfully completed

TACTICAL INTELLIGENCE STAFF OFFICER COURSE, PHASE I

Co C, 826th MI Bn(PA)
555 East 238th St
Bronx, NY 10470

Given at FIRST US ARMY AREA INTELLIGENCE SCHOOL
FORT BRAGG, NORTH CAROLINA 28307

3 AUGUST 1979

Edward J. Machno

EDWARD J. MACHNO
COL, MI
COMMANDANT

FB Overprint 2-1-R, 1 Jul 79    *U.S. GOVERNMENT PRINTING OFFICE: 1978—221-362/801

DA FORM 80, 1 OCT 78    EDITION OF 1 JUL 74 WILL BE USED.

00199



Kathy Gray 8/29/79 #76

# RESERVE DUTY TRAINING

FILE OMPF PMPE 76+400

13 SEP 1978

## SERVICE SCHOOL ACADEMIC EVALUATION REPORT
For use of this form, use AR 623-1; the proponent agency is MILPERCEN.

**DATE** 4 August 1978

| 1. LAST NAME - FIRST NAME - MIDDLE INITIAL | 2. SSN | 3. GRADE | 4. BR | 5. SPECIALTY/MOSC |
|---|---|---|---|---|
| EPSTEIN, Lawrence S. | | CPT | MI | 36AG |

| 6. COURSE TITLE | 7. NAME OF SCHOOL | 8. COMP |
|---|---|---|
| TACTICAL COUNTERINTELLIGENCE TRANSITION | 6th US Army ITAAS | USAR |

| 9. TYPE OF REPORT | 10. PERIOD OF REPORT (Year, month, day) | 11. DURATION OF COURSE (Year, month, day) |
|---|---|---|
| ☒ RESIDENT | From: 780723  Thru: 770804 | From: 780723  Thru: 780804 |
| ☐ NONRESIDENT | 12. EXPLANATION OF NONRATED PERIODS  N/A | |

### 13. PERFORMANCE SUMMARY

a. ☒ EXCEEDED COURSE STANDARDS
(Limited to 20% of class enrollment)

b. ☐ ACHIEVED COURSE STANDARDS

c. ☐ MARGINALLY ACHIEVED COURSE STANDARDS

d. ☐ FAILED TO ACHIEVE COURSE STANDARDS

*Rating must be supported by comments in ITEM 16.

### 14. DEMONSTRATED ABILITIES

a. WRITTEN COMMUNICATION
☐ NOT EVALUATED  ☐ UNSAT  ☐ SAT  ☒ SUPERIOR

b. ORAL COMMUNICATION
☐ NOT EVALUATED  ☐ UNSAT  ☐ SAT  ☒ SUPERIOR

c. LEADERSHIP SKILLS
☐ NOT EVALUATED  ☐ UNSAT  ☒ SAT  ☒ SUPERIOR

d. CONTRIBUTION TO GROUP WORK
☐ NOT EVALUATED  ☐ UNSAT  ☐ SAT  ☒ SUPERIOR

e. EVALUATION OF STUDENT'S RESEARCH ABILITY
☒ NOT EVALUATED  ☐ UNSAT  ☐ SAT  ☐ SUPERIOR
(SUPERIOR/UNSAT rating must be supported by comments in ITEM 16)

### 15. HAS THE STUDENT DEMONSTRATED THE ACADEMIC POTENTIAL FOR SELECTION TO HIGHER LEVEL SCHOOLING/TRAINING?
☐ YES  ☐ NO  ☒ N/A  (A "NO" response must be supported by comments in ITEM 16)

### 16. COMMENTS (This item is intended to obtain a word picture of each student that will accurately and completely portray academic performance, intellectual qualities, and communication skills and abilities. The narrative should also discuss broader aspects of the student's potential, leadership capabilities, moral and overall professional qualities. In particular, comments should be made if the student failed to respond to recommendations for improving academic or personal efforts)

CPT Epstein was an honor graduate of this course. He is a fine student and an active and helpful participant in all class activities. He served as a leader of one of the working groups, and as such supervised the activities of several junior personnel, resulting in outstanding group performance. He mastered a large amount of complex and unfamiliar material in a very short time. He should be an asset to his unit and to the Army Reserve program.

### 17. AUTHENTICATION

a. TYPED NAME, GRADE, BRANCH, AND TITLE OF PREPARING OFFICER
DENNIS J. MAHONEY, CPT, MI, USAR
Faculty Advisor

SIGNATURE

b. TYPED NAME, GRADE, BRANCH, AND TITLE OF REVIEWING OFFICER
JOHN M. PAZLAR, MAJ, AG USAR
Director of Instruction

SIGNATURE

### 18. MILITARY PERSONNEL OFFICER

a. FORWARDING ADDRESS (Rated student)

b. DISTRIBUTION
☐ STUDENT  ☐ UNIT CDR (P/B NCOES only)
☐ STUDENTS OFFICIAL MILITARY RECORDS

DA FORM 1059
1 NOV 77

RESERVE DUTY TRAINING

# DEPARTMENT OF THE ARMY



*Certificate of Training*

*This is to certify that*

CPT Lawrence S. Epstein

Honor Graduate

*has successfully completed*

Tactical Counterintelligence Transition

SIXTH UNITED STATES ARMY INTELLIGENCE TRAINING ARMY AREA SCHOOL
FORT MAC ARTHUR, CALIFORNIA, from 23 July to 4 August 1978.

*Given at*

Donald L. Richardson
DONALD L. RICHARDSON
COL, MI USAR
Commandant

DA FORM 87, 1 JUL 74 REPLACES DA FORM 87, 1 SEP 54, WHICH IS OBSOLETE
☆GPO—1976—665-420/1052



00203

**READY RESERVE AGREEMENT**
(Officer or Warrant Officers)

For use of this form, see AR 135-133; the proponent agency is The Adjutant General's Office.

DATE
97.11.12

You are approaching the end of your statutory Ready Reserve service obligation or contractual agreement. PLEASE COMPLETE AND RETURN THIS FORM WITHIN 15 DAYS FROM DATE OF RECEIPT SO THAT TIMELY PERSONNEL ACTION CAN BE TAKEN BASED ON YOUR DECISION. If an IBM card is also enclosed, please return it with the completed form.

Epstein Lawrence Steven

PRINT CHANGES OR CORRECTIONS

1. You are eligible to remain in the Ready Reserve for a period of not less than one year commencing or until eligible for mandatory removal from the active Reserve. If you desire to continue service in the Ready Reserve, complete the entry in Item 2 and also enter your signature and the date in Item 2. If you do not desire to remain in the Ready Reserve, complete and sign and enter date in Item 3 below.

**2. CERTIFICATE OF AGREEMENT TO REMAIN IN THE READY RESERVE**

I agree to be a member of the Ready Reserve until *Mandatory Removal* (Enter first or later anniversary of the date printed in Item 1, or the words "Mandatory Removal").

I certify that as a member of The Ready Reserve I am and will remain immediately available for any active duty, including active duty for training, to which I may be ordered in accordance with law.

If a unit member, I agree to serve as a member of unit until above date unless I am sooner reassigned by appropriate authority in accordance with Army Regulations.

I understand that if I am a nonobligated member of the Individual Ready Reserve (IRR) that I will be removed from an active status if:

a.    I refuse to accept assignment to a USAR unit or mobilization designation assignment if offered, provided such offered assignment is in accordance with assignment policies and standards or

b.    I have 5 years of continuous assignment to the IRR without assignment to a USAR unit or mobilization designation position, or attachment to a USAR unit, and I am notified that an appropriate assignment, or attachment is reasonably available.

I further certify that I understand that I will not be released from this agreement upon my own application unless all of the three following conditions have been met:

a.    There has been a substantial change in my status or circumstances;

b.    I have requested, prior to the date of an alert or notice of mobilization or date of orders to active duty, either (1) transfer to the Standby Reserve, (2) transfer to the Retired Reserve, or (3) discharge from the armed force of which I am a member; and

c.    That request has been approved.

To the best of my knowledge and belief I have no medical condition or physical defect that would prevent my performance of active military service.

SIGNATURE (Do not sign here if you sign Item 3)

*Lawrence S. Epstein*

DATE
12 Nov 77

**3. CERTIFICATE OF DECLINATION TO REMAIN IN THE READY RESERVE**

I decline to remain in the Ready Reserve. MEMBERS MUST PLACE A CHECK MARK IN ONE OF THE BOXES BELOW.

**OBLIGORS:** These are members who have not completed their 6 year statutory obligation.

☐ a.    Transfer to Standby.

☐ b.    To be discharged, when eligible.

**NONOBLIGORS:** These are members who have no statutory service obligation.

☐ a.    To be placed on the Inactive Status List of the Standby Reserve for three years. I understand that I will not be eligible to participate in the Reserve training program for retirement credits or promotion purposes, and that I may apply for reinstatement in the active Reserve after one year.

☐ b.    To be transferred to the Retired Reserve, if eligible, otherwise, to be discharged.

☐ c.    To be discharged.

SIGNATURE (Do not sign here if you sign in Item 2)

DATE

DA FORM 3725, 1 APR 74

EDITION OF 1 JUL 71, IS OBSOLETE.

00204

# DEPARTMENT OF THE ARMY

*Certificate of Training*

*This is to certify that*

CPT LAWRENCE S. EPSTEIN,

*has successfully completed*



MILITARY INTELLIGENCE OFFICERS ADVANCED COURSE (RESIDENT – NONRESIDENT)
PHASE IV

*Given at*

US ARMY INTELLIGENCE
CENTER and SCHOOL
Fort Huachuca, Arizona
19 June 1977 – 1 July 1977

IRA J. HUNT
LTC, IN
Chief, TMD

EVERETT E. DAHL
COL, QM, USAR
6833d USAR School
Commandant

GPO—1975-585-432/1082

FORM 87, 1 JUL 74 REPLACES DA FORM 87, 1 SEP 54, WHICH IS OBSOLETE.

00205



2435 12/28/92        C

DEPARTMENT OF THE ARMY
OFFICE OF THE ADJUTANT GENERAL
RESERVE COMPONENTS PERSONNEL AND ADMINISTRATION CENTER
ST. LOUIS, MISSOURI 63132

B-6

IN REPLY
REFER TO: AGUZ-FHT-CCR
SUBJECT: Statement of Retirement Points

23 MAR 77

REASON FOR ISSUANCE:        TRANSFERRED TO USAR UNIT

EPSTEIN LAWRENCE S



IN LIEU OF DA FORM 1593

Official records show that you have earned the following points during the period from    06 JUN 76        05 AUG 76
Points shown below are a recapitulation of retirement credits as received by this Center from outside agencies. If there are errors or omissions, please return this statement with your request for correction. Include copies of pay vouchers, record of attendance, correspondence course completions.

| TYPE | POINTS | DATES | TYPE | POINTS | DATES |
|------|--------|-------|------|--------|-------|
|      |        | NO TRANSACTIONS ON MASTER FILE FOR THIS PERIOD |      |        |       |

| RES-DUTY | EXT.COURSE | ACTIVE DUTY | MEMBERSHIP | TOTAL | CREDITABLE FOR RET. PURPOSES |
|----------|-----------|-------------|------------|-------|------------------------------|
| Points   000 | 000 | 000 | 002 | 002 | NOT QUALIFIED |

For retention in an active status, all members with over 20 qualifying years of service must earn 50 points; officers with less than 20 qualifying years must earn 27 points; enlisted members with less than 20 qualifying years must earn 20 points. Fifteen points are granted for membership and are included in the 50, 27, and 20 point requirement. A minimum of 50 points constitutes a qualifying year for retirement purposes. Not more than 60 points will be credited for Inactive Duty Training including those points awarded for membership and extension courses. If the period covered is less than a year, the maximum IDT points credited will be the proportionate part of 60.

DISTRIBUTION: NR1 ARMY AREA        C1
              NR2 ARMY AREA
              NR3 OMPF SGWAAA     6A

AGUZ Form 118. - 1 Feb 76    Replaces AGUZ Form 115, 1 Oct 74, which is obsolete.

00207



#75    14 Nov 78    SE

A-12



**DEPARTMENT OF THE ARMY**
OFFICE OF THE ADJUTANT GENERAL
RESERVE COMPONENTS PERSONNEL AND ADMINISTRATION CENTER
ST. LOUIS, MO 63132

IN REPLY REFER TO:

17 NOV 1976

AGUZ-PAD-RR-Eps    Lawrence S.

SUBJECT:  Waiver for Retention in the U. S. Army Reserve

CPT Lawrence S. Epstein

1.   Your application for waiver of unsatisfactory participation for the retirement year ending _____ 5 June 1976 _____ has been approved.

2.   This waiver for failure to earn the minimum 27 retirement points will affect your status in the Army Reserve for the following reasons:

   a.  A waiver may be granted only once during any 3-year period.  Accordingly, you must accrue a minimum of 27 points during each retirement year for a minimum of 2 years.

   b.  If you fail to accrue the minimum points, you cannot be retained in an active status and removal will be mandatory under law.

3.   It is your responsibility to take positive action to maintain your Active Reserve stat   The minimum participation requirement and methods of participation are outlined for your information.

   a.  For officers with less than 20 years Reserve service creditable for retired pay purposes, a minimum of 27 points for each retirement year is required for retention in an active status.  The 27 points include 15 points awarded gratuitously for membership in an active status, leaving 12 points which must be earned by participation in Reserve training.

   b.  Some of the means of participation are:

      (1)  Assignment to a USAR troop program or Army National Guard unit.

      (2)  Assign   as a mobilization designee.

AGUZ FL   789
1 Aug 76

Prior editions are obsolete.

#75   14 Nov 78   SC

A-13

(3)  Attachment to a reinforcement training unit or USAR troop program un'

(4)  Attendance at USAR schools.

(5)  Attachment to a Reserve Component or Active Army unit for performance of short periods of active duty training.

(    Satisfactory completion of Armed Forces correspondence courses.

4.  The importance of satisfactory participation after a waiver has been granted cannot be over-emphasized.  If you wish additional guidance in regards to your participation in the active Reserve, you are encouraged to write to this Center, Attention:  Guidance Branch, Personnel Management and Training Division.

FOR THE COMMANDER:

S. V. WAILES
MAJ, GS
Chief, Removal and Transfer Branch
Personnel Actions Division

#75    14 Nov 78    SG

A-11

**DEPARTMENT OF THE ARMY**
**OFFICE OF THE ADJUTANT GENERAL**
**RESERVE COMPONENTS PERSONNEL AND ADMINISTRATION CENTER**
ST. LOUIS, MISSOURI 63132

IN REPLY    AGUZ-PMT-CCR
REFER TO:                                                              29 AUG 76
SUBJECT: Statement of Retirement Points

ANNUAL STATEMENT

REASON FOR ISSUANCE:

EPSTEIN LAWRENCE S
        CPT USAR
                                        FURNISHED IN LIEU OF DA FORM 1383

                                    06 JUN 75        05 JUN 76

Official records show that you have earned the following points during the period from

Points shown below are a recapitulation of retirement credits as received by this Center from outside
agencies. If there are errors or omissions, please return this statement with your request for correction.
Include copies of pay vouchers, record of attendance, correspondence course completions.

| TYPE | POINTS | DATES | TYPE | POINTS | DATES |
|------|--------|-------|------|--------|-------|
| | | NO TRANSACTIONS ON MASTER FILE FOR THIS PERIOD | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |

| | RES-DUTY | EXT COURSE | ACTIVE DUTY | MEMBERSHIP | TOTAL | CREDITABLE FOR RET. PURPOSES |
|--------|----------|------------|-------------|------------|-------|------------------------------|
| POINTS: | 000 | 000 | 000 | 015 | 015 | NOT QUALIFIED |

For retention in an active status, all members with over 20 qualifying years of service must earn 50 points;
officers with less than 20 qualifying years must earn 27 points; enlisted members with less than 20 qualify-
ing years must earn 20 points. Fifteen points are granted for membership and are included in the 50, 27, and
20 point requirement. A minimum of 50 points constitutes a qualifying year for retirement purposes. Not more
than 60 points will be credited for Inactive Duty Training including those points awarded for membership and
extension courses. If the period covered is less than a year, the maximum IDT points credited will be the
proportionate part of 60.

DISTRIBUTION: NR1 RESERVIST    82
              NR2 MPRJ
              NR3 OMPF

LEGEND: TYPE OF RESERVE DUTY   A-1 Command, Staff & Administrative
Duties   A-4 Presentation of Instruction   A-5 Preparation of
Instruction Material   A-6 Recruiting Duty   A-8 Training
Projects   A-4 Performance of Medical Duties   B-8 Attendance
at Reserve Training Assemblies and all other Inactivity Training
B-1 Extension Courses   C-3 Active Duty or Active Duty for
Training

AGUZ Form 115 - 1 Feb 76    Replaces AGUZ Form 115, 1 Oct 74, which is obsolete.

1



**DEPARTMENT OF THE ARMY**
OFFICE OF THE ADJUTANT GENERAL
U.S. ARMY RESERVE COMPONENTS PERSONNEL AND ADMINISTRATION CENTER
ST. LOUIS, MISSOURI 63132

IN REPLY REFER TO
AGUZ-PD-PN

1 5 JUN 1976

SUBJECT:  Promotion as a Reserve Commissioned Officer of the Army under
Title 10 of the United States Code (AR 135-155)

CPT EPSTEIN LAWRENCE S                          A.        3 JUN 75
                              HI-USAR            B.        NONE

1. By direction of the President, you are promoted as a Reserve
commissioned officer of the Army effective on the date shown after A
above to the grade in the branch and component shown in address above.

2. Time in grade for promotion to the next higher grade will be computed
from the effective date of this promotion, unless there is a date shown
after B above, in which case it will be computed from that date.

3. No acceptance or oath of office is required. Unless you expressly
decline this promotion within 60 days, your promotion will be effective
as shown after A above.

ROBERT S. YOUNG
Brigadier General, USA
Commanding

DISTRIBUTION:
1 - Officer concerned
1 - OMPF
1 - MPRJ

AGUZ FL
1 Aug 75    267

Prior editions are obsolete

00212

DEPARTMENT OF THE ARMY
HEADQUARTERS, U. S. ARMY ADVISOR GROUP (USAR) HAWAII
APO SAN FRANCISCO 96558

SPECIAL ORDERS                                      8 August 1974
NUMBER        69
EXTRACT

## COMPONENT OF ALL PERSONNEL IS USAR

1.  TC 274.  Following reserve assignment action directed.

EPSTEIN, LAWRENCE S. ▓▓▓▓▓▓▓ 1LT  9666, USAR Con Gp (Reinf)
    Hawaii (4972)(W88U01), Ft DeRussy, Hawaii 96815 MI; Current mailing
    address: ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

Authority: App C, AR 140-1
Relieved from:  USAR Con Gp (Reinf) Hawaii (4972)(W88U01), Ft DeRussy,
                Hawaii  96815
Reason:  Change of address
Assigned to:  USAR Con Gp (Reinf), St Louis, MO  63132
Effective date:  8 August 1974
Special Instructions:  NA

UNDERWOOD, CHARLES C., JR. ▓▓▓▓▓▓▓ 1LT  1542  Inf; Current mailing
    address: ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

Authority:  Paragraph 2-18, AR 140-10
Relieved from:  NA
Reason:  Initial appointment as USAR officer
Assigned to:  USAR Control Group (Reinf) Hawaii (4972)(W88U01), Ft
             DeRussy, HI 96815
Effective date:  18 July 1974
   VOCDR date cfm:  18 July 1974
Special Instructions:  NA

LAWRENCE, RICHARD E. ▓▓▓▓▓▓▓▓▓▓ CPT  1981, USAR Con Gp (Reinf)
    Hawaii (4972)(W88U01), Ft DeRussy, Hawaii  96815  Inf; Current mailing
    address: ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

Authority:  Para 4-3b(3), AR 140-10
Relieved from:  USAR Con Gp (Reinf) Hawaii (4972)(W88U01), Ft DeRussy,
                HI  96815
Reason:  Individual's request
Assigned to:  USAR Con Gp (Standby), St Louis, MO  63132
Effective date:  8 August 1974
Special Instructions:  NA

FOR THE COMMANDER:

                                  JOSEPH A. HALLORAN
                                  1LT, AGC
                                  Adjutant

00213

Para 1, SO 69, HQ USAAGAR, Hawaii, APO SF 96558, dtd 8 Aug 74

DISTRIBUTION:
 2 - Cdr, RCPAC, St Louis, MO 63132
28 - RCAR-A
    22 - RCAR-AO
     3 - MR clk
     1 - Orders clk
     1 - Ref file
     1 - Rec file
___
30

#75    14 Nov 78 > SC

F-13

Approval Exception to SF 180

**VETERANS ADMINISTRATION**
# REQUEST FOR INFORMATION

| 1A. ADDRESS CODE | | 1B. TYPE OF CLAIM |
|---|---|---|
| 11 | | ORIG. DISAB. |

| 2. SEPARATION FORMS ON FILE | 3. DATA REQUESTED |
|---|---|
| ☒ YES  ☐ NO | ☐ SERVICE  ☒ MEDICAL  ☐ DENTAL  ☐ OTHER |

**4. BRANCH OF SERVICE**
☒ ARMY  ☐ NAVY  ☐ AIR FORCE  ☐ MARINE CORPS  ☐ COAST GUARD  ☐ NATIONAL GUARD (Army)  ☐ NATIONAL GUARD (Air)  ☐ OTHER (Specify)

| 5A. NAME AND ADDRESS OF VA REQUESTING OFFICE | 5B. ORIGINATING UNIT | 6. CLAIM NO. |
|---|---|---|
| FROM  VA Regional Office  P. O. Box 3198  Honolulu, HI  96801 | 359/21 | C- 28 176 158 |
| | | 7. INSURANCE NO. |

| 8. LAST NAME — FIRST NAME — MIDDLE INITIAL (Under which served) | 9A. ACL SERVICE NO. | 9B. SOCIAL SECURITY NO. |
|---|---|---|
| EPSTEIN, LAWRENCE STEVEN | | |

| 10. DATE OF BIRTH | 11. PLACE OF BIRTH | 12. DATE OF DEATH |
|---|---|---|
| 4-1-49 | Brooklyn, New. | |

| 13. DATE ENTERED ACTIVE DUTY | 14. DATE SEPARATED FROM ACTIVE DUTY | 15. CHARACTER OF SEPARATION OR DISCHARGE | 16. LAST GRADE, RATE OR RANK, AND ORGANIZATION |
|---|---|---|---|
| A: 12-4-69 | 4-16-73 | Honorable | 1Lt,0-2,HSC 500th MI |
| B: | | | Gp (FL-MEG999 6) |
| C: | | | |

| 17. ALLEGED DISEASE OR INJURY | 18. DATES OF TREATMENT | 19. PLACE OF TREATMENT | 20. TYPE (Check) |
|---|---|---|---|
| | | | HOSPITAL | OP |
| A. Allergy | May 1971;Apr 1973 | US FMB,Honolulu,HI | | |
| B. Fibroma,right jaw | Nov 1971 | Tripler Army Med Ctr,HI | | |
| C. Septoplasty | 5-25-71 | | | |

**21. ADDITIONAL INFORMATION REQUESTED**
D. Rhlatter's Disease    July 1968

PLEASE FURNISH ALL AVAILABLE SERVICE MEDICAL RECORDS.

**22A. SUBSEQUENT RESERVE OR RETIRED STATUS**
☐ NONE  ☒ RESERVE OBLIGATION (Complete Item 22B)  ☐ RETIRED (Complete Item 22C)  ☐ UNKNOWN

| 22B. OBLIGATION TERMINAL DATE | 22C. RETIRED STATUS | | | |
|---|---|---|---|---|
| 6-5-75 | ☐ IN PAY STATUS  ☐ NONPAY STATUS | ☐ TEMPORARY DISABILITY RETIRED LIST | ☐ RETIRED-STATUS UNKNOWN | |

| 23. DATE | 24. SIGNATURE AND TITLE OF VA OFFICIAL |
|---|---|
| 5-16-73 | V Kim  /V. KIM, Acting Adjudiction Officer |

**ENDORSEMENT — VERIFICATION BY SERVICE DEPARTMENT (Check applicable Box(es))**
☒ AVAILABLE REQUESTED RECORDS FORWARDED    ☐ ITEMS 8 & 9, AND 13 THROUGH 16 VERIFIED CORRECT    ☐ ITEMS 8 & 9, AND 13 THROUGH 15 VERIFIED CORRECT, EXCEPT:

No additional medical record found on file.

¶ medical only
** may be physical

| NO. OF ENCLOSURES | ORIG. | COPY | NO. ENCLS. (Cont.) | ORIG. | COPY | | DATE | SIGNATURE AND TITLE |
|---|---|---|---|---|---|---|---|---|
| HEALTH RECORDS | ✔ | ✔ | CLINICAL RECORDS | | | SERVICE INFORMATION | 8 JUN 1973 | |
| PHYSICAL EXAMINATIONS AT ENTRANCE | | | X-RAYS | | | | DATE | SIGNATURE AND TITLE |
| PHYSICAL EXAMINATIONS AT SEPARATION | | | DENTAL RECORDS | | | MEDICAL RECORDS | | Butler |
| | | | MEDICAL RECORDS | ✔ | ✔ | | | |
| | | | OTHER RECORDS | | | | | |

VA FORM AUG 1971  07-3101    *EXISTING STOCKS OF VA FORM 07-3101, JUL. 1970, WILL BE USED.

2

00215



#75    14 Nov 78.    SC

A-9

#75    14 Nov 78    SG

THIS IS AN IMPORTANT RECORD
SAFEGUARD IT.

A-7

| PERSONAL DATA | | | | |
|---|---|---|---|---|
| 1. LAST NAME-FIRST NAME-MIDDLE NAME | | 2. SERVICE NUMBER | 3. SOCIAL SECURITY NUMBER | |
| KOZYRIN LAWRENCE STEVEN | | | | |
| 4. DEPARTMENT, COMPONENT AND BRANCH OR CLASS | | 5a. GRADE, RATE OR RANK | 5b. PAY GRADE | 6. DATE OF RANK |
| ARMY USAR MI | | 1LT | O-2 | 04 Dec 78 |
| 7. U.S. CITIZEN ☒ YES ☐ NO | 8. PLACE OF BIRTH (City and State or Country) Brooklyn, New York | | | DAY MONTH YEAR |

| SELECTIVE SERVICE DATA | | | |
|---|---|---|---|
| 10a. SELECTIVE SERVICE NUMBER | 10b. SELECTIVE SERVICE LOCAL BOARD NUMBER, CITY, COUNTY, STATE AND ZIP CODE | | DATE INDUCTED |
| 50 36 49 106 | 176 Brooklyn, New York | | DAY MONTH YEAR NA |

| TRANSFERS OR DISCHARGE | | | |
|---|---|---|---|
| 11a. TYPE OF TRANSFER OR DISCHARGE | | 11. STATION OR INSTALLATION AT WHICH EFFECTED | |
| Relieved from Active Duty NA | | Schofield Barracks Oahu Hawaii 05 0979 | |
| b. REASON AND AUTHORITY | | | 11c. EFFECTIVE DATE 16 Apr 75 |
| See XIV Ch 3 AR 635-100 (SPN 601) | | | |
| 12. LAST DUTY ASSIGNMENT AND MAJOR COMMAND | 13a. CHARACTER OF SERVICE | | |
| MIC 500th MI Gp (PI-NBU999 6) | HONORABLE 1 | | b. TYPE OF CERTIFICATE ISSUED None |
| 14. DISTRICT, AREA COMMAND OR CORPS TO WHICH RESERVIST TRANSFERRED | | | 1E. REENLISTMENT CODE NA |
| USAR Control Group (Reinforcement) Hawaii | | | |

| SERVICE DATA | | | | | | | |
|---|---|---|---|---|---|---|---|
| 16. TERMINAL DATE OF RESERVE/UNTAS OBLIGATION DAY MONTH YEAR 05 Jun 75 | 17. SOURCE OF ENTRY ☐ ENLISTED (First Enlistment) ☐ ENLISTED (Prior Service) ☐ REENLISTED ☐ OTHER NA | | | 18. TERM OF SERVICE (Years) NA | 19. DATE OF ENTRY DAY MONTH YEAR 04 Dec 69 | | |
| 19. PRIOR REGULAR ENLISTMENTS NA | 19. GRADE, RATE OR RANK AT TIME OF ENTRY INTO CURRENT ACTIVE SVC NA | | 20. PLACE OF ENTRY INTO CURRENT ACTIVE SERVICE (City and State) Fort Knox, Kentucky | | | | |
| 21. HOME OF RECORD AT TIME OF ENTRY INTO ACTIVE SERVICE (Street, RFD, City, County, State and ZIP Code) RD#1 Kintnersville, Pennsylvania 18330 | | 22. | STATEMENT OF SERVICE | YEARS | MONTHS | DAYS | |
| | | CREDITABLE FOR BASIC PAY PURPOSES | (1) NET SERVICE THIS PERIOD | 05 | 04 | 13 | |
| | | | (2) OTHER SERVICE | 00 | 05 | 28 | |
| 23. SPECIALTY NUMBER & TITLE 9666 CI Officer | A. RELATED CIVILIAN OCCUPATION AND D.O.T. NUMBER NA | | (3) TOTAL (Line (1) plus Line (2)) | 05 | 10 | 11 | |
| | | b. TOTAL ACTIVE SERVICE | | 05 | 04 | 13 | |
| | | c. FOREIGN AND/OR SEA SERVICE Hawaii | | 02 | 04 | 24 | |

| 24. DECORATIONS, MEDALS, BADGES, COMMENDATIONS, CITATIONS AND CAMPAIGN RIBBONS AWARDED OR AUTHORIZED |
|---|
| National Defense Service Medal |

| 25. EDUCATION AND TRAINING COMPLETED |
|---|
| USA Armor School – AOB#11 |
| USAINTS – Intel Reach Off Crs |
| Pratt Institute – Mil Science |
| Long Island Univ – Speech-Theatre, BA |

| VA AND SGLI SERVICE DATA | | | | | |
|---|---|---|---|---|---|
| 26a. NON-PAY PERIODS TIME LOST (Preceding Two Years) None | b. DAYS ACCRUED LEAVE PAID 60 | 27a. INSURANCE IN FORCE (SGLI or USGLI) ☐ YES ☒ NO | b. AMOUNT OF ALLOTMENT NA | c. MONTH ALLOTMENT DISCONTINUED | |
| | 28. VA CLAIM NUMBER c. NA | 29. SERVICEMEN'S GROUP LIFE INSURANCE COVERAGE ☐ $15,000 ☐ $10,000 ☐ $5,000 ☒ NONE | | | |

| REMARKS | 30. REMARKS |
|---|---|
| | College – 4 Yrs, BA |
| | Blood Group – "A neg" |

| AUTHENTICATION | | |
|---|---|---|
| 31. PERMANENT ADDRESS FOR MAILING PURPOSES AFTER TRANSFER OR DISCHARGE | | 32. SIGNATURE OF PERSON BEING TRANSFERRED OR DISCHARGED |
| 33. TYPED NAME, GRADE AND TITLE OF AUTHORIZING OFFICER DENNIS B. SHIRLEY CPT, AGC Commanding | | 34. SIGNATURE OF OFFICER AUTHORIZED TO SIGN |

DD FORM 214
1 JUL 69

PREVIOUS EDITION OF THIS FORM IS TO BE USED.

ARMED FORCES OF THE UNITED STATES
REPORT OF TRANSFER OR DISCHARGE

#75    14 Nov 78    SG

HOO4    A-8

DEPARTMENT OF THE ARMY
HEADQUARTERS, U. S. ARMY PERSONNEL CENTER, HAWAII
APO San Francisco  96557

SPECIAL ORDERS                                        16 April 1973
NUMBER    73
EXTRACT

6.  TC 316.  Following individual RELIEVED FROM ACTIVE DUTY as indicated
not by reason of physical disability, and ASSIGNED as shown on date
immediately following relief from active duty.  All temporary appointments
held are terminated on ▉▉ effective date of release.

EPSTEIN  LAWRENCE S. ▉▉▉▉▉▉  1LT  966  USATRFSTA USAPERSCEN,
Hawaii (02 CDR 9) APO San Francisco 96557  MI

ADMINISTRATIVE ACCOUNTING DATA
Auth:  By Direction of the President - Sec XIV ch 3 AR 635-100
HOR:  RD#1 Kintnersville Penn. 18430
Mail adrs: ▉▉▉▉▉▉▉
Pl EAD or OAD:  Ft Knox KY 40121
Last perm dy s:    HHC 500th MI Gp APO 96545
SPN:  681
PCS MDC:  7PO3
Eff date (REFRAD):  16 Apr 73

FOR THE INDIVIDUAL
Reserve grade, basic branch  component:  First Lieutenant, Military
                                          Intelligence, United States
                                          Army Reserve.
Assigned to:  United States Army Reserve Control Group Reinforcement
              Hawaii (4965) (W89VAA) Fort DeRussy, Hawaii 96815
Effective Date of Reserve Assignment:  17 April 1973
UHFS Act obligation:  6 years
Special Instruction  (a)  Comply with the following numbered items of
                          Department of the Army Supplemental Instructions
                          (Appendix B, AR 518-10):  14,31,32,33,35,39,58,85.
                     (b)  Individual is entitled to transoceanic travel
                          from Hawaii to continental United States within
                          one (1) year following date of separation per
                          paragraph M4157-6 Joint Travel Regulations.

FOR THE COMMAND

                                          Alan M. Ihada
                                          ALAN M. IHADA
                                          2LT, SC
                                          Adjutant

DISTRIBUTION
A.                                    1 - HODA (DAPO-EP-MI) WASH DC 20315
25 - Indiv 1.                         1 - USATRFSTA this Center
5. - Pay & Alw Sec                    2 - CINCUSARPAC ATTN: GPOP-RS APO 96558
1 - Ea Ref Rec                        3 - USAAGAR HI APO SF 96558

#75    14 Nov 78    SC

HQ04    A-8

DEPARTMENT OF THE ARMY
HEADQUARTERS, U. S. ARMY PERSONNEL CENTER, HAWAII
APO San Francisco 96557

SPECIAL ORDERS                                          16 April 1973
NUMBER      73
EXTRACT

6.   TC 316.   Following individual RELIEVED FROM ACTIVE DUTY as indicated
not by reason of physical disability, and ASSIGNED as shown on date
immediately following relief from active duty.   All temporary appointments
held are terminated on    r effective date of release.

EPSTEIN  LAWRENCE S.                  1LT  966  USATRFSTA USAPERSCEN,
Hawaii (02-ODF 9) APO San Francisco 96557 MI

ADMINISTRATIVE ACCOUNTING DATA
Auth:   By Direction of the President - Sec XXV ch 3 AR 635-100
HOR:   RD#1 Kintnersville Penn. 18430
Mail adrs:  563 Kapahulu Ave Honolulu Hawaii 96815
Pl EAD or OAD:  Ft Knox KY 40121
Last perm dy s   HHC 500th MI Gp APO 96545
SPN: 681
POS MOC: 7F03
Eff date (REFRAD): 16 Apr 73

FOR THE INDIVIDUAL
Reserve grade, basic branch  component: First Lieutenant, Military
                                        Intelligence, United States
                                        Army Reserve.
Assigned to:  United States Army Reserve Control Group Reinforcement
              Hawaii (4965) (W89VAA) Fort DeRussy, Hawaii 96815
Effective Date of Reserve Assignment:  17 April 1973
UMTS Act obliga   n: 6 years
Special Instruction:    (a)  Comply with the following numbered items of
                        Department of the Army Supplemental Instructions
                        (Appendix B, AR 518-10): 14,31,32,33,35,39,58,85.
                        (b)  Individual is entitled to transoceanic travel
                        from Hawaii to continental United States within
                        one (1) year following date of separation per
                        paragraph N4157-6 Joint Travel Regulations.

FOR THE COMMAND

                                        Alan M. Imada
                                        ALAN M. IMADA
                                        2LT, SC
                                        Adjutant

DISTRIBUTION
A
25 - Indiv ii                   1 - HQDA (DAPO-EP-MI) WASH DC 20315
5 - Pay & Alw Sec               1 - USATRFSTA this Center
1 - Ea Ref Rec                  2 - CINCUSARPAC ATTN: GPOP-RS APO 96558
                                3 - USAAGAR HI APO SF 96558

00219

#75   14 Nov 78   SG

F-14

# DISPOSITION FORM

For use of this form, see AR 340-15; the proponent agency is The Adjutant General's Office.

222

| REFERENCE OR OFFICE SYMBOL | SUBJECT |
|---|---|
| DAPC-OPD-MI-PER, Epstein Lawrence S., ▮▮▮▮▮ | Release from Active Duty |

| TO DAAG-PSS-S | FROM DAPC-OPD-MI | DATE 22 January 1973  CMT 1 LTC Himmel/dp/31136 |
|---|---|---|

1. Refrad is approved to be effective as soon as administratively feasible.

2. Date of entry on active duty: 4 Dec 1969.

3. Service obligation: Vol indef effective 4 Dec 7.

4. Justification: Officer submitted refrad request thru channels to TAG in Oct 72. No record of receipt at OPD. Officer's personnel office was instructed on 9 Jan 73. to submit duplicate ASAP. Officer has completed all active duty service obligations except 6 months of current overseas tour (Hawaii).

FOR THE COMMANDER:

DANIEL L. HIMMEL
LTC, MI
Mil Intel Br, OPD

DA FORM 2496

GPO: 1971—441-899

DMIG-HI EPSTEIN, Lawrence S. (3 Oct 72) 1st Ind
SUBJECT:  Request for Release from Active Duty

DA, Hawaii Counterintelligence Detachment, APO 96558          4 Oct 72

TO:  Commander, 500th Military Intelligence Group, APO 96558

Recommend approval.


1 Incl
nc                                       CHARLES E. SCHWARZ
                                         LTC, MI
                                         Commanding

DMIG-SP EPSTEIN, Lawrence S. (3Oct72)  2nd Ind
SUBJECT:  Request for Release from Active Duty

HHC, 500th Military Intelligence Group, APO San Francisco 96558
10 Oct 72

TO:  Headquarters, Department of the Army, ATTN:  DAAG-PSR-O,
Washington, D.C.  20314

1.  Recommend approval.

2.  This action is not in contravention of AR 600-31.

FOR THE COMMANDER:



                                         K. L. LEIDALL
                                         CW2, USA
                                         Asst Adjutant

2.



DEPARTMENT OF THE ARMY
Hawaii Counterintelligence Detachment
APO SAN FRANCISCO 96558

IN REPLY REFER TO

DMIG-HI                                              3 October 1972

SUBJECT:  Request for Release from Active Duty


THRU:  Commander
       Hawaii Counterintelligence Detachment
       APO 96558

       Commander
       500th Military Intelligence Group
       ATTN: DMIG-SP
       APO 96558

TO:    HQDA (DAAG-PSR-O)
       Washington, D.C. 20314


1.  UP Section XX of AR 635-100 request I be voluntarily released from
active duty as soon as practical.

2.  I understand that this request for release from active duty is not
subject to withdrawal on my part, and that based on this request, I
may automatically be separated from the Army without further action
on my part.

3.  I request an exception to paragraph 3-75a(2)(a) of AR 635-100.


1 Incl                              LAWRENCE S. EPSTEIN
Medical Examination                 1LT,

00222

#75    14 Nov 78    SG

G.10

DEPARTMENT OF THE ARMY
710th MI Detachment
APO San Francisco 96330

IAMIG-MI                                                    5 June 1972

SUBJECT:  Letter of Commendation

1LT Lawrence S. Epstein

1.  The attached letter was sent to me in recognition of the exemplary
assistance you provided at the Damien Memorial High School.  I forward
it on to you with both pride and pleasure, knowing that your contribution
was instrumental in the success of the speech program.

2.  The voluntary and dedicated manner in which you have contributed both
your time and talents to the civilian community has been exceptionally
commendable in every respect.  Not only have your services fulfilled a
variety of needs among the young, the handicapped, and the underprivileged,
but have contributed most significantly toward binding the soldier and
the civilian in a closer and more meaningful relationship.

1 Incl                                    CHARLES K. SCHMARI
as                                        LTC, MI
                                          Commanding

Copies furnished:
CO, 500th MI Group (IARMB-SA)
HQDA (DAPO-OPD-MI)
HQDA (DAAG-PER-O)



17

18 JAN 1973    FILED 24

00223







DEPARTMENT OF THE A~
~ARTER~ 500TH MILITARY INTELLIG~ ~OUP
APO SAN FRANCISCO 96558

DHIG–SP                                               3 May 1972

SUBJECT:  Promotion as a Reserve Commissioned Officer of the Army under
          Title 10 of the United States Code (Para    AR 135-155)

THRU: Commanding Officer                        3 June 71
      710th MI Detachment                  A 1 January 1972 *
      APO San Francisco 96558

TO:  1LT Lawrence S. Epstein, ▓▓▓▓▓  MI          B
     710th MI Detachment
     APO San Francisco 96558

1.  By direction of the President you are promoted as a Reserve commis-
sioned officer of the Army, effective on the date shown after A above,
to the grade in the branch and component shown in address above.

2.  Time in grade for promotion to the next higher grade will be computed
from the effective date of this promotion, unless there is a date shown
after B above, in which case it will be computed from that date.

3.  No acceptance or oath of office is required.  Unless you expressly
decline this promotion within 60 days, your promotion will be effective
as shown after A above.  You may decline this promotion by completing
the attached indorsement, and returning it with this letter through
channels to this office.

4.  If you are serving on active duty in a commissioned grade lower than
that to which promoted, effective with this promotion, you are deemed
to have accepted a temporary appointment in the grade in which serving.
You may elect to be relieved from active duty and receive your promotion
after separation from service, provided you do not have an uncompleted
period of required active duty under law or regulations, in which event
you will complete the attached indorsement, and return it with this
letter through channels to this office.

1 Incl                          ALFRED W. BACOT
Indorsement                     COL, MI
                                Commanding

                                                *10 USC 3389
                                                1LT USAR
                                                3 June 1971

STBY AUG 75

00225

#75    14 Nov 78    56

G-12

BHHQ-CS (20 May 71)   2d Ind
SUBJECT:  Letter of Appreciation for Investigative Assistance

HQ, 710th Military Intelligence Detachment, APO San Francisco  96558,
9 June 1971

TO:  1LT Lawrence S. Epstein, MI, ████████  710th MI Det, APO  96558

1.  Your personal contribution to the success of this operation was
professionally outstanding in every respect, and totally deserving of
the laudatory comments incorporated in the preceding correspondence.

2.  I can only add my congratulations to the commendations already ex-
pressed by higher headquarters, and my very personal appreciation for
the dedicated manner in which your individual assignment was accom-
plished.

1 Incl                                     CHARLES E. SCHWARZ
nc                                         LTC, MI
                                           Commanding

Copies furnished:
CO, 500th MI Group
(DMIC-AP) w Incl
Chief, Pers Operations
(OPOMI) w Incl
✓ TMI
(ABPF-O) w Incl

00226

#75    14 Nov 78    56

G.13



**DEPARTMENT OF THE ARMY**
710TH MILITARY INTELLIGENCE DETACHMENT
APO SAN FRANCISCO 96558

IN REPLY REFER TO

DMIG-CS                                                           31 December 1970

SUBJECT: Letter of Appreciation

1LT Lawrence S. Epstein, MI, ████████
710th, MI Detachment
APO 96558

1. Upon the occasion of my departure, I wish to express my warmest thanks and sincere appreciation for the outstanding support and unfailing loyalty you have extended to me throughout my tenure as Commander, 710th Military Intelligence Detachment.

2. Your performance of duty has been truly outstanding. You have demonstrated professional ability, tact, maturity and discretion; qualities which have contributed immeasurably to the outstanding record of achievement enjoyed by this Detachment.

3. It has been a distinct privilege for me, as well as a great pleasure, to serve with you and enjoy the wholehearted cooperation and support you have given me, and which I am confident my successor will continue to enjoy. My best wishes to you in all your future endeavors.

CLAUDE L. GODWIN
LTC, MI
Commanding

Copies furnished:
CG, 500th MI Group
(DMIG-AP)
C, Pers Operations, HQ DA
(OPDMI)
TAG, HQ DA
(AGPF-O)

00227

 

DEPARTMENT OF THE ARMY
HEADQUARTERS, 500TH MILITARY INTELLIGENCE GROUP
APO San Francisco 96558

OFFICIAL ORDERS
NUMBER    164                                          4 December 1970

1. TC 42C.  By direction of the President, following individual PROMOTED/
ADVANCED and COMMISSIONED in the Army of the United States.

EPSTEIN, LAWRENCE S. ▮▮▮▮▮▮    2LT 9666 MI   710th MI Det (WBWJAA) APO 96558

Authority: 10 USC 3442 and 3447
Grade (from – to):  2LT – 1LT
Appointed by:  NA
Effective date:  4 Dec 70
Date of rank:  4 Dec 70

FOR THE COMMANDER:

OFFICIAL:                                KENNETH E. KESTER
                                         MAJ, MI
                                         Adjutant

W. B. JAMES III
CW2, USA
Asst Adjutant

PRINT POOR QUALITY

DISTRIBUTION:
5–Indiv
1–MPRJ
3–FDRE
5–MPS
1–MR Clk
5–710th MID APO 96558
1–Admin

SPECIAL DISTRIBUTION:
1–TAGO, ATTN: AGRZ–PD, Wash DC 20315
1–TAGO, ATTN: AGPF–P, Wash DC 20315
1–Director, OPD, OPO, ATTN:  OPO–MI, Wash DC 20315

00228

#75    14 Nov 78    SG

A-6

IMPORTANT: THE PREPARATION OF AN EFFICIENCY REPORT IS A SERIOUS RESPONSIBILITY. EACH INDIVIDUAL WILL TAKE THE SAME PAINSTAKING CARE IN THE PREP-ARATION OF THE REPORT AS HE WOULD EXPECT THE SUBORDINATES THAT HE WOULD EXPECT HIS RATING OFFICER TO TAKE IN THE PREPARATION OF HIS OWN REPORT. ALL ENTRIES WILL BE TRUE AND IMPARTIAL. READ CAREFULLY REFERENCED PARAGRAPH IN AR 623-105 BEFORE ATTEMPTING TO FILL OUT ANY ITEM.

**PART I- PERSONAL DATA** (Read paragraph 3-2a, AR 623-105)

| A. LAST NAME - FIRST NAME - MIDDLE INITIAL | A. SERVICE NUMBER | B. SSAN | B. GRADE | B. DATE OF RANK | BASIC | BRANCH | DETAIL |
|---|---|---|---|---|---|---|---|
| EPSTEIN, Lawrence S | | | 2LT | 4 Dec 69 | MI | | |

| B. UNIT, ORGANIZATION, STATION, AND MAJOR COMMAND |
|---|
| 710th Military Intelligence Detachment, APO San Francisco 96558    USARPAC |

**PART II- REPORTING PERIOD AND DUTY DATA** (Read paragraph 3-2b, AR 623-105)

| A. PERIOD COVERED | | | | | | B. REASON FOR SUBMITTING REPORT (Check) | | C. REPORT BASED ON (Check) | | RATER | INDORSER |
|---|---|---|---|---|---|---|---|---|---|---|---|
| FROM | | | TO | | | ANNUAL | | DAILY CONTACT | | X | X |
| DAY | MONTH | YEAR | DAY | MONTH | YEAR | X CHANGE OF RATER | | FREQUENT OBSERVATION | | | |
| 10 | Jul | 70 | 12 | Oct | 70 | PCS RATED OFFICER | | INFREQUENT OBSERVATION | | | |
| DUTY DAYS | | | OTHER DATE | | | CHANGE OF DUTY FOR RATED OFFICER | | RECORDS AND REPORTS | | X | X |
| 83 | | | 10 | | | OTHER (Specify) | | OTHER (Specify) | | | |

**PART III- AUTHENTICATION** (Read paragraph 3-2c, AR 623-105)

| A. SIGNATURE OF RATER | TYPED NAME, GRADE, BRANCH, SERVICE NUMBER, ORGANIZATION AND DUTY ASSIGNMENT | DATE |
|---|---|---|
| *Larry L Grantham* | LARRY L. GRANTHAM, CPT, MI, 710th MI Det, Honolulu Fld Ofc Commander | 20 Oct 70 |
| B. SIGNATURE OF INDORSER | TYPED NAME, GRADE, BRANCH, SERVICE NUMBER, ORGANIZATION AND DUTY ASSIGNMENT | DATE |
| *Allen S Eddy* | ALLEN S. EDDY, MAJ, MI, 710th MI Det, Operations Officer | 21 OCT 70 |

| C. REVIEWER (Read chapter 5, AR 623-105) | REVIEW ✗ INDICATES NO FURTHER ACTION □ RESULTS IN ACTION STATED ON INCLOSURES | | |
|---|---|---|---|
| SIGNATURE OF REVIEWER | TYPED NAME, GRADE, BRANCH, SERVICE NUMBER ORGANIZATION, AND DUTY | DATE | |
| *Claude L Godwin* | CLAUDE L. GODWIN, LTC, MI, 710th MI Det, Commanding | 21 OCT 70 | |
| D. THIS REPORT HAS ___ INCLOSURES (Insert number if appropriate) | DATE ENTERED ON DA FORM 66  23 Oct 70 | PERSONNEL OFFICER'S INITIALS  WB | |

TO COMPLETE PARTS IV, V, VI, VIII, IX, X, AND XI, EVALUATE THE RATED OFFICER IN COMPARISON WITH OTHER OFFICERS OF THE SAME GRADE, SIMILAR EXPERIENCE, MILITARY SCHOOLING, AND TIME IN GRADE. ITEMS DESIGNATED BY ASTERISK REQUIRE EXPLANATION IN PART XI.

**PART IV- PERSONAL QUALITIES** (Read paragraph 4-2a, AR 623-105)

| | DEGREE | | TOP* | SECOND | MIDDLE | FOURTH | BOTTOM* | NOT OBSERVED |
|---|---|---|---|---|---|---|---|---|
| RATER | INDORSER | | 1 | 2 | 3 | 4 | 5 | N/O |
| 1 | 1 | a. ADAPTABILITY (Adjusts to new or changing situations) | | | | | | |
| 1 | 2 | b. AMBITION (Seeks out and commands, within bounds of military propriety, additional and more important responsibilities) | | | | | | |
| 2 | 2 | c. APPEARANCE (Possesses military bearing and is neat, smart, and well-groomed) | | | | | | |
| 1 | 1 | d. COOPERATION (Works in harmony with others as a team member) | | | | | | |
| 1 | 1 | e. DECISIVENESS (Ability to reach conclusions promptly and decide a definite course of action) | | | | | | |
| 2 | 1 | f. DEPENDABILITY (Consistently accomplishes desired actions with minimum supervision) | | | | | | |
| 1 | 1 | g. ENTHUSIASM (Motivates others by his keen interest and personal participation) | | | | | | |
| 1 | 1 | h. FORCE (Executes actions vigorously) | | | | | | |
| 1 | 2 | i. INGENUITY (Locates ability in devising means to solve problems) | | | | | | |
| 2 | 1 | j. INITIATIVE (Takes necessary and appropriate action on his own) | | | | | | |
| 1 | 1 | k. INTEGRITY (Adherence to principles of honesty and moral courage) | | | | | | |
| 1 | 2 | l. INTELLIGENCE (Acquires knowledge and grasps concepts readily) | | | | | | |
| 2 | 2 | m. JUDGMENT (Thinks logically and makes practical decisions) | | | | | | |
| 1 | 1 | n. LOYALTY (Faithful and willing support to superiors and subordinates) | | | | | | |
| 1 | 1 | o. MORAL COURAGE (Intellectual honesty; willingness to stand up and be counted) | | | | | | |
| 1 | 1 | p. NON-DUTY CONDUCT (Keeps his personal affairs in order) | | | | | | |
| 1 | 1 | q. SELF-DISCIPLINE (Conduct pursuant to accordance with the highest standards) | | | | | | |
| 1 | 1 | r. SELF-IMPROVEMENT (Types action to improve himself) | | | | | | |
| 1 | 1 | s. SELFLESSNESS (Subordinates his personal welfare to that of the organization) | | | | | | |
| 1 | 1 | t. SOCIABILITY (Participates freely and easily in social and community activities) | | | | | | |
| 1 | 1 | u. STAMINA (Performs successfully under physical and mental stress) | | | | | | |
| 2 | 1 | v. TACT (Says or does what is appropriate without giving unnecessary offense) | | | | | | |
| 1 | 1 | w. TENACITY (The will to persevere in face of obstacles) | | | | | | |
| 1 | 1 | x. UNDERSTANDING (Appreciation for the needs and viewpoint of others) | | | | | | |

DA FORM 67-6 1 JAN 68    REPLACES DA FORM 67-6, 1 AUG 67, WHICH IS OBSOLETE.

**U.S. ARMY OFFICER EFFICIENCY REPORT**
For use of this form, see AR 623-105; the proponent agency is The Adjutant General's Office.

00229

#15    14 Nov 78    SG

A 6

**RATED OFFICERS NAME, GRADE, SERVICE NUMBER AND SSAN** — EPSTEIN, Lawrence S., 2LT

**PART V - DUTY ASSIGNMENT FOR RATED PERIOD** (Read paragraph 4-3a, AR 623-105)

| a. PRINCIPAL DUTY | b. DUTY MOS | c. AUTH GRADE |
|---|---|---|
| | 9666 | 1LT |

Team Chief, Honolulu Field Office. Reviews newly assigned personnel security cases to determine locality of leads; conducts interviews and records checks necessary to fulfill the requirements of investigations. Prepares Agent Reports containing results of investigative efforts.

**d. MAJOR ADDITIONAL DUTIES** None.

**PART VI - PERFORMANCE OF DUTY FACTORS** (Read paragraph 4-3b, AR 623-105)

| RATER | INDORSER | DEGREE | TOP 1 | SECOND 2 | MIDDLE 3 | FOURTH 4 | BOTTOM 5 | NOT OBSERVED N/O |
|---|---|---|---|---|---|---|---|---|
| 2 | 2 | a. DISPLAYS A PROFESSIONAL KNOWLEDGE OF ASSIGNED DUTIES | | | | | | |
| 1 | 1 | b. MANAGES RESOURCES EFFICIENTLY AND ECONOMICALLY. | | | | | | |
| 1 | 1 | c. ESTABLISHES AND ACHIEVES HIGH STANDARDS OF PERFORMANCE | | | | | | |
| 1 | 1 | d. FULFILLS HIS RESPONSIBILITIES IN THE DEVELOPMENT OF SUBORDINATES | | | | | | |
| 1 | 1 | e. PLANS BEYOND THE IMMEDIATE REQUIREMENTS OF ASSIGNED DUTIES | | | | | | |
| 1 | 1 | f. DELEGATES AUTHORITY AS APPROPRIATE | | | | | | |
| 1 | 1 | g. EXERCISES PROPER DEGREE OF SUPERVISION | | | | | | |
| 1 | 1 | h. COMMANDS CONFIDENCE AND RESPECT | | | | | | |
| 1 | 1 | i. ACCEPTS FULL RESPONSIBILITY FOR HIS ACTIONS | | | | | | |
| 1 | 1 | j. WILLINGLY ACCEPTS AND ACTS UPON SUGGESTIONS AND CONSTRUCTIVE CRITICISM | | | | | | |
| 1 | 1 | k. EXPRESSES HIMSELF CLEARLY AND CONCISELY ORALLY | | | | | | |
| 1 | 2 | l. EXPRESSES HIMSELF CLEARLY AND CONCISELY IN WRITING | | | | | | |
| 1 | 1 | m. MAINTAINS AN APPROPRIATE LEVEL OF PHYSICAL FITNESS | | | | | | |
| 1 | 1 | n. HAS CONCERN FOR THE WELFARE OF SUBORDINATES | | | | | | |

**PART VII - DEMONSTRATED PERFORMANCE OF PRESENT DUTY** (Read paragraph 4-3d, AR 623-105)

| RATER | INDORSER | |
|---|---|---|
| | | PERFORMS THIS DUTY BETTER THAN ANY OTHER OFFICER I KNOW* |
| | | PERFORMANCE OF THIS DUTY EQUALED BY VERY FEW OFFICERS |
| X | X | PERFORMS THIS DUTY BETTER THAN MOST OFFICERS |
| | | PERFORMS THIS DUTY AS WELL AS MOST OFFICERS |
| | | PERFORMANCE OF THIS DUTY MEETS MINIMUM STANDARDS |
| | | PERFORMS THIS DUTY IN AN UNSATISFACTORY MANNER* |

**PART VIII - PROMOTION POTENTIAL** (Read paragraph 4-3h, AR 623-105)

| R | IN | |
|---|---|---|
| X | X | PROMOTE AHEAD OF CONTEMPORARIES (EXHIBITS CHARACTERISTICS WHICH WOULD BRING HIM TO THE HIGHEST POSITIONS IN THE ARMY) |
| | | PROMOTE ALONG WITH CONTEMPORARIES |
| | | DO NOT PROMOTE AT THIS TIME* |
| | | DO NOT PROMOTE (ELIMINATE)* |

**PART IX - SCHOOLING POTENTIAL** (Read paragraph 4-3i, AR 623-105)

| | | |
|---|---|---|
| | | HIGHEST MILITARY SCHOOL COMPLETED |
| | | SENIOR SERVICE COLLEGE (LEAD CONTEMPORARIES) |
| | | SENIOR SERVICE COLLEGE (WITH CONTEMPORARIES) |
| | | C&GSC OR EQUIVALENT AHEAD OF CONTEMPORARIES |
| | | C&GSC OR EQUIVALENT WITH CONTEMPORARIES |
| | | NOT RECOMMENDED FOR FURTHER SCHOOLING NOW* |
| | | NOT APPLICABLE |

**PART X - ASSIGNMENT POTENTIAL** (Read paragraph 4-3j, AR 623-105)

| RATER | OTHER (Specify below) — Advanced Course |
|---|---|
| INDORSER | Advanced Course |

| | | | | 1 | 2 | 3 |
|---|---|---|---|---|---|---|
| 2 | 2 | POTENTIAL FOR HIGHER LEVEL COMMAND | | | | |
| 1 | 1 | POTENTIAL FOR HIGHER LEVEL STAFF | | | | |

**PART XI - COMMENTS** (Read paragraph 4-3k, AR 623-105)

a. RATER 2LT Epstein performed his duties as chief of a counterintelligence team in a superior manner. He accomplished all assigned tasks in a quick, precise manner with little supervision. Although new to the Army, and specifically to counterintelligence, he continuously sought to reinforce the techniques and procedures he had previously learned at the Intelligence School. His concern for others, coupled with his hard work and devotion to duty earned for him the admiration and respect of both his supervisors and subordinates. Lt Epstein maintains a high level of physical fitness and would be qualified for duty in a combat area.

b. INDORSER  [ ] (If unable to evaluate this officer for the following reason) 2LT Epstein performed his duties as a counterintelligence agent and team chief, in a superior manner. He performed all duties expeditiously and efficiently with a minimum of supervision. He responded well to constructive criticism and strove to improve his weaknesses in conduct of interviews and report writing. Because of his lack of experience in the counterintelligence field he recognized the need for extra effort, and continually displayed it. Lt Epstein is physically fit and capable of serving in a combat zone.

**PART XII - OVER-ALL VALUE TO THE SERVICE** (Read paragraph 4-3l, AR 623-105)

a. OFFICERS OF THIS GRADE PERFORMING SIMILAR FUNCTIONS I CURRENTLY RATE OR INDORSE

| | TOTAL | PLACEMENT OF OFFICERS (Enter '*' in appropriate group) | | | | | RANKING WITHIN OVER-ALL GROUP |
|---|---|---|---|---|---|---|---|
| | | BOTTOM 5TH | FOURTH | MIDDLE | SECOND | TOP | |
| RATER | 3 | | | | *2 | | |
| INDORSER | 3 | | | | *2 | | |

b. RANKING OF THIS OFFICER IN COMPARISON WITH ALL ARMY OFFICERS OF THIS GRADE AND BRANCH I KNOW WELL ENOUGH TO RATE

| RATER | 0 | 10 | 20 | 30 | 40 | 50 | 60 | 70 | 80 | 90 | 100 | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| % | | | | | | | | | | | | 91% |
| INDORSER | | | | | | | | | | | | 97% |

00230

#75    14 Nov 78    SC

A 7

IMPORTANT: THE PREPARATION OF AN EFFICIENCY REPORT IS A SERIOUS RESPONSIBILITY. EACH INDIVIDUAL WILL TAKE THE SAME PAINSTAKING CARE IN THE PREP-
ARATION OF THE REPORT FOR HIS SUBORDINATES THAT HE WOULD EXPECT HIS RATING OFFICER TO TAKE IN THE PREPARATION OF HIS OWN REPORT. ALL ENTRIES
WILL BE TRUE AND IMPARTIAL. READ CAREFULLY REFERENCED PARAGRAPH IN AR 623-105 BEFORE ATTEMPTING TO FILL OUT ANY ITEM.

**PART I - PERSONAL DATA** (Read paragraph 3-2a, AR 623-105)

| a. LAST NAME - FIRST NAME - MIDDLE INITIAL | b. SERVICE NUMBER | c. YEAR | d. GRADE | e. DATE OF RANK | BASIC. | DETAIL | BRANCH |
|---|---|---|---|---|---|---|---|
| EPSTEIN, Lawrence S. | | | 1LT | 4Dec70 | | | MI |

a. UNIT, ORGANIZATION, STATION, AND MAJOR COMMAND
710th MI Det, 500th Military Intelligence Group, APO San Francisco 96558 USARPAC

**PART II - REPORTING PERIOD AND DUTY DATA** (Read paragraph 3-2b, AR 623-105)

| a. PERIOD COVERED | | | | | | b. REASON FOR SUBMITTING REPORT (Check) | c. REPORT BASED ON (Check) | RATER | INDORSER |
|---|---|---|---|---|---|---|---|---|---|
| **FROM** | | | **TO** | | | X ANNUAL | DAILY CONTACT | | |
| DAY | MONTH | YEAR | DAY | MONTH | YEAR | CHANGE OF RATER | FREQUENT OBSERVATION | | |
| 13 | Oct | 70 | 12 | Oct | 71 | FOR RATED OFFICER | INFREQUENT OBSERVATION | | |
| DUTY DAYS | | | OTHER DAYS | | | CHANGE OF DUTY FOR RATED OFFICER | RECORDS AND REPORTS | | |
| 348 | | | 17 | | | OTHER (Specify) | OTHER (Specify) | | |

**PART III - AUTHENTICATION** (Read paragraph 3-2c, AR 623-105)

| a. SIGNATURE OF RATER | TYPED NAME, GRADE, BRANCH, SERVICE NUMBER, ORGANIZATION AND DUTY ASSIGNMENT | DATE |
|---|---|---|
| *Larry L. Grantham* | LARRY L. GRANTHAM, CPT, MI, 710th MI Det, OIC Han Field Office | 12 Oct 71 |
| b. SIGNATURE OF INDORSER | RICHARD P. YEAGER, CPT, MI, 710th MI Det, Operations Officer | 13 Oct 71 |
| c. REVIEWER (Read chapter 5, AR 623-105) | REVIEW [X] INDICATES NO FURTHER ACTION  [ ] RESULTS IN ACTION STATED OR INCLOSURES | |
| SIGNATURE OF REVIEWER | CHARLES E. SCHWARZ, LTC, MI, 710th MI Det, Commanding | 13 Oct 71 |

d. THIS REPORT HAS  0  INCLOSURES. (Enter "0" if appropriate)   DATE ENTERED ON DA FORM 66   14 October 1971   PERSONNEL OFFICER'S INITIALS

TO COMPLETE PARTS IV, VII, VIII, IX, X, AND XI, EVALUATE THE RATED OFFICER IN COMPARISON WITH OTHER OFFICERS OF THE SAME GRADE,
SIMILAR EXPERIENCE, MILITARY SCHOOLING, AND TIME IN GRADE. ITEMS DESIGNATED BY ASTERISK REQUIRE EXPLANATION IN PART XI.

**PART IV - PERSONAL QUALITIES** (Read paragraph 3-2d, AR 623-105)

| DEGREE | | TOP | SECOND | MIDDLE | FOURTH | BOTTOM* | NOT OBSERVED |
|---|---|---|---|---|---|---|---|
| RATER | INDORSER | 1 | 2 | 3 | 4 | 5 | N/O |
| 1 | 1 | a. ADAPTABILITY (Adjusts to new or changing situations) | | | | | |
| 1 | 1 | b. AMBITION (Seeks and welcomes, within bounds of military propriety, additional and more important responsibilities) | | | | | |
| 1 | 1 | c. APPEARANCE (Possesses military bearing that is neat, erect, and well-groomed) | | | | | |
| 2 | 1 | d. COOPERATION (Works in harmony with others as a team member) | | | | | |
| 1 | 1 | e. DECISIVENESS (Ability to reach conclusions promptly and decide a definite course of action) | | | | | |
| 1 | 1 | f. DEPENDABILITY (Consistently accomplishes desired actions with minimum supervision) | | | | | |
| 1 | 1 | g. ENTHUSIASM (Generates effort by his keen interest and personal participation) | | | | | |
| 1 | 1 | h. FORCE (Executes actions vigorously) | | | | | |
| 1 | 1 | i. INGENUITY (Creative ability in devising means to solve problems) | | | | | |
| 1 | 1 | j. INITIATIVE (Takes necessary and appropriate action on his own) | | | | | |
| 1 | 1 | k. INTEGRITY (Adherence to principles of honesty and moral courage) | | | | | |
| 1 | 1 | l. INTELLIGENCE (Acquires knowledge and grasps concepts readily) | | | | | |
| 2 | 2 | m. JUDGMENT (Thinks logically and makes practical decisions) | | | | | |
| 1 | 1 | n. LOYALTY (Faithful and willing support to superiors and subordinates) | | | | | |
| 1 | 1 | o. MORAL COURAGE (Intellectual honesty, willingness to stand up and be counted) | | | | | |
| 1 | 1 | p. NON-DUTY CONDUCT (Keeps his personal affairs in order) | | | | | |
| 1 | 1 | q. SELF-DISCIPLINE (Conducts himself in accordance with the highest standards) | | | | | |
| 1 | 1 | r. SELF-IMPROVEMENT (Takes action to improve himself) | | | | | |
| 1 | 1 | s. SELFLESSNESS (Subordinates his personal welfare to that of the organization) | | | | | |
| 1 | 1 | t. SOCIABILITY (Participates freely and easily in social and community activities) | | | | | |
| 1 | 1 | u. STAMINA (Performs on-demanding tasks. Sustained physical and mental stress) | | | | | |
| 2 | 2 | v. TACT (Deals with others to appropriate without giving unnecessary offense) | | | | | |
| 1 | 1 | w. VERACITY (The will to persevere in face of obstacles) | | | | | |
| 2 | 1 | x. UNDERSTANDING (Appreciates the demands and viewpoint of others) | | | | | |

DA FORM 67-6   REPLACES DA FORM ID-8, 1 AUG 68, WHICH IS OBSOLETE.

**U.S. ARMY OFFICER EFFICIENCY REPORT**
For use of this form, see AR 623-105; the proponent
agency is the Adjutant General's Office.

00231

#75   14 Nov 78   SC

A-8

RATED OFFICERS NAME, GRADE
SERVICE NUMBER AND GRADE   EPSTEIN, Lawrence S.   1LT

**PART V - DUTY ASSIGNMENT FOR RATED PERIOD** (Read paragraph 4-31, AR 623-105)

a. PRINCIPAL DUTY    b. DUTY MOS  9666    c. AUTH GRADE  1LT

Special Agent in charge of written inquiries and selected credit checks; conducts in-
terviews and records checks necessary to fulfill the requirements of investigations;
prepares agent reports; Detachment Range Officer.

d. MAJOR ADDITIONAL DUTIES

**PART VI - PERFORMANCE OF DUTY FACTORS** (Read paragraph 4-31, AR 623-105)

| DEGREE | | TOP | SECOND | MIDDLE | FOURTH | BOTTOM | NOT OBSERVED |
|---|---|---|---|---|---|---|---|
| RATER | INDORSER | 1 | 2 | 3 | 4 | 5 | N/O |
| a. DISPLAYS A PROFESSIONAL KNOWLEDGE OF ASSIGNED DUTIES | | 2 | 2 | | | | |
| b. MANAGES RESOURCES EFFICIENTLY AND ECONOMICALLY | | 1 | 1 | | | | |
| c. ESTABLISHES AND ACHIEVES HIGH STANDARDS OF PERFORMANCE | | 1 | 1 | | | | |
| d. FULFILLS HIS RESPONSIBILITIES IN THE DEVELOPMENT OF SUBORDINATES | | 2 | 2 | | | | |
| e. PLANS BEYOND THE IMMEDIATE REQUIREMENTS OF ASSIGNED DUTIES | | 1 | 2 | | | | |
| f. DELEGATES AUTHORITY AS APPROPRIATE | | 1 | 1 | | | | |
| g. EXERCISES PROPER DEGREE OF SUPERVISION | | 1 | 1 | | | | |
| h. COMMANDS CONFIDENCE AND RESPECT | | 1 | 1 | | | | |
| i. ACCEPTS FULL RESPONSIBILITY FOR HIS ACTIONS | | 1 | 1 | | | | |
| j. WILLINGLY ACCEPTS AND ACTS UPON SUGGESTIONS AND CONSTRUCTIVE CRITICISM | | 1 | 1 | | | | |
| k. EXPRESSES HIMSELF CLEARLY AND CONCISELY ORALLY | | 1 | 1 | | | | |
| l. EXPRESSES HIMSELF CLEARLY AND CONCISELY IN WRITING | | 2 | 2 | | | | |
| m. MAINTAINS AN APPROPRIATE LEVEL OF PHYSICAL FITNESS | | 1 | 1 | | | | |
| n. HAS CONCERN FOR THE WELFARE OF SUBORDINATES | | 1 | 1 | | | | |

**PART VII - DEMONSTRATED PERFORMANCE OF PRESENT DUTY** (Read paragraph 4-34, AR 623-105)

| RATER | INDORSER | |
|---|---|---|
| | | PERFORMS THIS DUTY BETTER THAN ANY OTHER OFFICER I KNOW |
| X | X | PERFORMANCE OF THIS DUTY EQUALS BY VERY FEW OFFICERS |
| | | PERFORMS THIS DUTY BETTER THAN MOST OFFICERS |
| | | PERFORMS THIS DUTY AS WELL AS MOST OFFICERS |
| | | PERFORMANCE OF THIS DUTY MEETS MINIMUM STANDARDS |
| | | PERFORMS THIS DUTY IN AN UNSATISFACTORY MANNER |

**PART VIII - PROMOTION POTENTIAL** (Read paragraph 4-35, AR 623-105)

| | | |
|---|---|---|
| X | X | PROMOTE AHEAD OF CONTEMPORARIES (EXHIBITS CHARACTERISTICS WHICH SHOULD BRING HIM TO THE HIGHEST POSITIONS IN THE ARMY) |
| | | PROMOTE ALONG WITH CONTEMPORARIES |
| | | DO NOT PROMOTE AT THIS TIME |
| | | DO NOT PROMOTE THIS OFFICER |

**PART IX - SCHOOLING POTENTIAL** (Read paragraph 4-36, AR 623-105)

Basic

| | |
|---|---|
| | HIGHEST MILITARY SCHOOL COMPLETED |
| | SENIOR SERVICE COLLEGE AHEAD OF CONTEMPORARIES |
| | SENIOR SERVICE COLLEGE WITH CONTEMPORARIES |
| | CGSC OR EQUIVALENT AHEAD OF CONTEMPORARIES |
| | CGSC OR EQUIVALENT WITH CONTEMPORARIES |
| | NOT RECOMMENDED FOR FURTHER SCHOOLING |
| | NOT APPLICABLE |
| X | OTHER (Specify below) |

RATER  ADVANCED COURSE

INDORSER

**PART X - ASSIGNMENT POTENTIAL** (Read paragraph 4-38, AR 623-105)

| | | 1 | 2 | 3 | 4 | 5 | N/O |
|---|---|---|---|---|---|---|---|
| | 2 | 2 | | | | | |  POTENTIAL FOR HIGHER LEVEL COMMAND |
| | 1 | 1 | | | | | |  POTENTIAL FOR HIGHER LEVEL STAFF |

**PART XI - COMMENTS** (Read paragraph 4-39, AR 623-105)

a. RATER  1LT Epstein performed all assigned duties as Special Agent in charge of written
inquiries in a superior manner. His personal initiative and desire to overcome all
obstacles enabled him to complete the majority of all written inquiry investigations
within the established suspense dates, thus reducing the number of TDY trips to a
minimum. He frequently and willingly expended many extra hours to complete the in-
vestigations via telephone when answers to the written inquiries were not returned.
In addition to his duties involving written inquiries, he accomplished all credit
checks at the Credit Bureau, Hawaiian Lender's Exchange and Telecheck Hawaii, main-
taining excellent rapport and liaison.

b. INDORSER  ☐ I AM UNABLE TO EVALUATE THIS OFFICER FOR THE FOLLOWING REASON:  1LT Epstein accomplished his duties in
an exceptional manner throughout his assignment to the Honolulu Field Office, 710th MI
Det. His outgoing manner has proved invaluable in establishing the rapport needed in
his many contacts in both the military and civilian communities. He responded well to
constructive criticism and continually labored to improve the efficiency of the finish-
ed product. 1LT Epstein has demonstrated his leadership capabilities in a highly
effective manner, and would perform well in any assignment.

**PART XII - OVER-ALL VALUE TO THE SERVICE** (Read paragraph 4-31, AR 623-105)

a. OFFICERS OF THIS GRADE PERFORMING SIMILAR FUNCTIONS I CURRENTLY RATE OR INDORSE

| | | TOTAL | BOTTOM 5TH | FOURTH | MIDDLE | SECOND | TOP | RANK WITH OVER-ALL GROUP |
|---|---|---|---|---|---|---|---|---|
| | RATED | 6 | | | | 3* | 3 | |
| | INDORSER | 9 | | | | 3* | 4 | |

b. RANKING OF THIS OFFICER (N COMPARISON WITH ALL ARMY OFFICERS OF THIS GRADE AND BRANCH I KNOW WELL ENOUGH TO RATE    93

| RATER | % | 0 | 10 | 20 | 30 | 40 | 50 | 60 | 70 | 80 | 90 | 100 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| INDORSER | | | | | | | | | | | | 94 |

00232

#75    14 Nov 78    SG

A-9

**IMPORTANT: THE PREPARATION OF AN EFFICIENCY REPORT IS A SERIOUS RESPONSIBILITY. EACH INDIVIDUAL WILL TAKE THE SAME PAINSTAKING CARE IN THE PREPARATION OF THE REPORT FOR HIS SUBORDINATES THAT HE WOULD EXPECT HIS RATING OFFICER TO TAKE IN THE PREPARATION OF HIS OWN REPORT. ALL ENTRIES WILL BE TRUE AND IMPARTIAL. READ CAREFULLY REFERENCED PARAGRAPH IN AR 623-105 BEFORE ATTEMPTING TO FILL OUT ANY ITEM.**

PART I – PERSONAL DATA (Read paragraph 3-2a, AR 623-105)

a. LAST NAME – FIRST NAME – MIDDLE INITIAL
EPSTEIN, Lawrence S.

d. UNIT, ORGANIZATION, STATION, AND MAJOR COMMAND
Hawaii CI Det, 500th Military Intelligence Group, APO San Francisco 96558 USARPAC

e. GRADE: 1LT    f. DATE OF RANK: 4Dec70    BRANCH: MI

PART II – REPORTING PERIOD AND DUTY DAYS (Read paragraph 3-2b, AR 623-105)

| PERIOD COVERED | | | | | | REASON FOR SUBMITTING REPORT (Check) | REPORT BASED ON (Check) | RATER | INDORSER |
|---|---|---|---|---|---|---|---|---|---|
| FROM | | | TO | | | | | | |
| DAY 13 | MONTH Oct | YEAR 71 | DAY 4 | MONTH Jul | YEAR 72 | ANNUAL | DAILY CONTACT | X | |
| | | | | | | CHANGE OF RATER X | FREQUENT OBSERVATION | | X |
| DUTY DAYS | | OTHER DAYS | | | | PCS RATED OFFICER | INFREQUENT OBSERVATION | | |
| | | | | | | CHANGE OF DUTY FOR RATED OFFICER X | RECORDS AND REPORTS | X | X |
| | | | | | | OTHER (Specify) | OTHER (Specify) | | |

PART III – AUTHENTICATION (Read paragraph 3-2c, AR 623-105)

a. SIGNATURE OF RATER
TYPED NAME, GRADE, BRANCH, SERVICE NUMBER, ORGANIZATION AND DUTY ASSIGNMENT
LARRY L. GRANTHAM, CPT, MI,
Hawaii CI Det, OIC, Hon Field Office    DATE 13Jul72

b. SIGNATURE OF INDORSER
TYPED NAME, GRADE, BRANCH, SERVICE NUMBER, ORGANIZATION AND DUTY ASSIGNMENT
CHARLES E. SCHWARZ, LTC, MI,
Hawaii CI Det, Commanding    DATE 18Jul72

c. REVIEWER (Read chapter 5, AR 623-105)    MY REVIEW ☒ INDICATES NO FURTHER ACTION  ☐ RESULTS IN ACTION STATED IN PART XI

SIGNATURE OF REVIEWER
TYPED NAME, GRADE, BRANCH, SERVICE NUMBER, ORGANIZATION, AND DUTY
WILLIAM R. EKLY, COL, MI,
HQ, 500th MI Group, Deputy Commander    DATE 19Jul72

d. THIS REPORT HAS   0   INCLOSURES (Insert "NO" if appropriate)
DATE ENTERED ON DA FORM 66    19Jul72    PERSONNEL OFFICER'S INITIALS

TO COMPLETE PARTS IV, VI, VII, VIII, IX, X, AND XI, EVALUATE THE RATED OFFICER IN COMPARISON WITH OTHER OFFICERS OF THE SAME GRADE, SIMILAR EXPERIENCE, MILITARY SCHOOLING, AND TIME IN GRADE. ITEMS DESIGNATED BY ASTERISK REQUIRE EXPLANATION IN PART XI.

PART IV – PERSONAL QUALITIES (Read paragraph 6-3a, AR 623-105)

| DEGREE | | TOP | SECOND | MIDDLE | FOURTH | BOTTOM | NOT OBSERVED |
|---|---|---|---|---|---|---|---|
| RATER | INDORSER | 1 | 2 | 3 | 4 | 5 | N/O |
| 1 | 1 | a. ADAPTABILITY (Adjusts to new or changed situations) | | | | | |
| 1 | 1 | b. AMBITION (Seeks and welcomes, within bounds of military propriety, additional and more important responsibilities) | | | | | |
| 2 | 1 | c. APPEARANCE (Possesses military bearing and a neat, smart, and well-groomed) | | | | | |
| 1 | 1 | d. COOPERATION (Works in harmony with others as a team member) | | | | | |
| 1 | 1 | e. DECISIVENESS (Ability to reach conclusions promptly and decide a definite course of action) | | | | | |
| 1 | 1 | f. DEPENDABILITY (Consistently accomplishes desired actions with minimum supervision) | | | | | |
| 1 | 1 | g. ENTHUSIASM (Motivates others by his keen interest and personal participation) | | | | | |
| 1 | 1 | h. FORCE (Executes actions vigorously) | | | | | |
| 2 | 1 | i. INGENUITY (Creative ability in devising means to solve problems) | | | | | |
| 1 | 1 | j. INITIATIVE (Takes necessary and appropriate action on his own) | | | | | |
| 1 | 1 | k. INTEGRITY (Adherence to principles of honesty and moral courage) | | | | | |
| 1 | 1 | l. INTELLIGENCE (Acquires knowledge and grasps concepts readily) | | | | | |
| 2 | 2 | m. JUDGMENT (Thinks logically and makes practical decisions) | | | | | |
| 1 | 1 | n. LOYALTY (Faithful and willing support to superiors and subordinates) | | | | | |
| 1 | 1 | o. MORAL COURAGE (Intellectual honesty, willingness to stand up and be counted) | | | | | |
| 1 | 1 | p. NON-DUTY CONDUCT (Keeps his personal affairs in order) | | | | | |
| 1 | 1 | q. SELF-DISCIPLINE (Conducts himself in accordance with the highest standards) | | | | | |
| 1 | 1 | r. SELF-IMPROVEMENT (Takes action to improve himself) | | | | | |
| 1 | 1 | s. SELF-BUSINESS (Subordinates his personal welfare to that of the organization) | | | | | |
| 1 | 1 | t. SOCIABILITY (Participates freely and easily in social and community activities) | | | | | |
| 1 | 1 | u. STAMINA (Remains mentally and physically alert under protracted physical and mental strain) | | | | | |
| 2 | 1 | v. TACT (Says or does what is appropriate without giving unnecessary offense) | | | | | |
| 1 | 1 | w. TENACITY (The will to persevere in face of obstacles) | | | | | |
| 2 | 1 | x. UNDERSTANDING (Appreciation for the needs and viewpoints of others) | | | | | |

DA FORM 67-6    REPLACES DA FORM 67-5, 1 AUG 61, WHICH IS OBSOLETE.    18 Jan 72
U.S. ARMY OFFICER EFFICIENCY REPORT
For use of this form, see AR 623-105; the proponent agency is The Adjutant General's Office.

00233



#75  14 Nov 78.   SG

A-10

**RATED OFFICER'S NAME, GRADE, SERVICE NUMBER AND STAR**   EPSTEIN, Lawrence S., 1LT.

**PART V - DUTY ASSIGNMENT FOR RATED PERIOD** *(Read paragraph 4-24, AR 623-105)*

b. DUTY MOS 9666    c. ADTN GRADE  1LT

a. PRINCIPAL DUTY

Supervises three counterintelligence agents in the conduct of personnel security investigations; conducts interviews and records checks necessary to fulfill the requirements of investigations; prepares Agent Reports and reviews his subordinates' Agent Reports for completeness and accuracy.

d. MAJOR ADDITIONAL DUTIES   Detachment Range Officer

**PART VI - PERFORMANCE OF DUTY FACTORS** *(Read paragraph 4-25, AR 623-105)*

| DEGREE | | TOP 1 | INDORSER 2 | MIDDLE 3 | FOURTH 4 | BOTTOM 5 | NOT OBSERVED N/O |
|---|---|---|---|---|---|---|---|
| RATER | INDORSER | | | | | | |
| 2 | 2 | a. DISPLAYS A PROFESSIONAL KNOWLEDGE OF ASSIGNED DUTIES | | | | | |
| 1 | 2 | b. MANAGES RESOURCES EFFICIENTLY AND ECONOMICALLY | | | | | |
| 1 | 1 | c. ESTABLISHES AND ACHIEVES HIGH STANDARDS OF PERFORMANCE | | | | | |
| 1 | 1 | d. FULFILLS HIS RESPONSIBILITIES IN THE DEVELOPMENT OF SUBORDINATES | | | | | |
| 1 | 1 | e. PLANS BEYOND THE IMMEDIATE REQUIREMENTS OF ASSIGNED DUTIES | | | | | |
| 1 | 1 | f. DELEGATES AUTHORITY AS APPROPRIATE | | | | | |
| 1 | 1 | g. EXERCISES PROPER DEGREE OF SUPERVISION | | | | | |
| 1 | 1 | h. COMMANDS CONFIDENCE AND RESPECT | | | | | |
| 1 | 1 | i. ACCEPTS FULL RESPONSIBILITY FOR HIS ACTIONS | | | | | |
| 1 | 1 | j. WILLINGLY ACCEPTS AND ACTS UPON SUGGESTIONS AND CONSTRUCTIVE CRITICISM | | | | | |
| 1 | 1 | k. EXPRESSES HIMSELF CLEARLY AND CONCISELY ORALLY | | | | | |
| 2 | 2 | l. EXPRESSES HIMSELF CLEARLY AND CONCISELY IN WRITING | | | | | |
| 1 | 1 | m. MAINTAINS AN APPROPRIATE LEVEL OF PHYSICAL FITNESS | | | | | |
| 1 | 1 | n. HAS CONCERN FOR THE WELFARE OF SUBORDINATES | | | | | |

**PART VII - DEMONSTRATED PERFORMANCE OF PRESENT DUTY** *(Read paragraph 4-26, AR 623-105)*

| RATER | INDORSER | | | |
|---|---|---|---|---|
| | | PERFORMS THIS DUTY BETTER THAN ANY OTHER OFFICER I KNOW | | |
| | | PERFORMANCE OF THIS DUTY EQUALED BY VERY FEW OFFICERS | | |
| X | X | PERFORMS THIS DUTY BETTER THAN MOST OFFICERS | | |
| | | PERFORMS THIS DUTY AS WELL AS MOST OFFICERS | | |
| | | PERFORMANCE OF THIS DUTY MEETS MINIMUM STANDARDS | | |
| | | PERFORMS THIS DUTY IN AN UNSATISFACTORY MANNER | | |

**PART VIII - PROMOTION POTENTIAL** *(Read paragraph 4-30, AR 623-105)*

| R | I | |
|---|---|---|
| X | | PROMOTE AHEAD OF CONTEMPORARIES (EXHIBITS CHARACTERISTICS WHICH SHOULD BRING HIM TO THE HIGHEST POSITIONS IN THE ARMY) |
| X | X | PROMOTE ALONG WITH CONTEMPORARIES |
| | | DO NOT PROMOTE AT THIS TIME |
| | | DO NOT PROMOTE THIS OFFICER |

**PART IX - SCHOOLING POTENTIAL** *(Read paragraph 4-31, AR 623-105)*

Basic   HIGHEST MILITARY SCHOOL COMPLETED

| R | I | |
|---|---|---|
| | | JUNIOR SERVICE COLLEGE AHEAD OF CONTEMPORARIES |
| | | SENIOR SERVICE COLLEGE WITH CONTEMPORARIES |
| | | JSC OR EQUIVALENT AHEAD OF CONTEMPORARIES |
| | | JSC OR EQUIVALENT WITH CONTEMPORARIES |
| | | NOT RECOMMENDED FOR FURTHER SCHOOLING |
| | | NOT APPLICABLE |
| X | X | OTHER *(Specify below)* |

RATER   Advanced Course
INDORSER  Advanced Course

**PART X - ASSIGNMENT POTENTIAL** *(Read paragraph 4-29, AR 623-105)*

| | 1 | 2 | 3 | 4 | 5 | N/O |
|---|---|---|---|---|---|---|
| R | | | | | | |
| 2 | 2 | POTENTIAL FOR HIGHER LEVEL COMMAND | | | | |
| 1 | 1 | POTENTIAL FOR HIGHER LEVEL STAFF | | | | |

**PART XI - COMMENTS** *(Read paragraph 4-31, AR 623-105)*

a. RATER  1LT Epstein discharged his duties in an excellent manner, frequently working beyond normal duty hours to insure all reports were completed prior to established suspense dates. He was always eager to accept new and challenging assignments, and was receptive to any guidance offered in the accomplishment of them. His outgoing manner and ability to establish common grounds with a variety of people enabled 1LT Epstein to initiate and maintain outstanding operational liaison contacts, both in the military and civilian communities. The determination and perseverance he displayed in performing both routine and sensitive tasks were indicative of his constant desire to excel. 1LT Epstein was commendably effective in the EOT Program.

b. INDORSER [ ] I AM UNABLE TO EVALUATE THIS OFFICER FOR THE FOLLOWING REASON:  This officer has evidenced an ever-increasing degree of maturity and responsibility during this rated period. His performance of duty has been marked by a strong desire to effectively produce and to widen his range of operational exposure. His aggressive manner, exceptional variety of personal talents, and his multitude of cultivated contacts have enhanced his value as a field operative. His contributions to the civilian community, in terms of both dedicated time and talent, have been especially commendable, and have reflected in a most exemplary manner on the military in Hawaii. He is commendably effective in EOT Program.

**PART XII - OVERALL VALUE TO THE SERVICE** *(Read paragraph 4-32, AR 623-105)*

| a. OFFICERS OF THIS GRADE PERFORMING SIMILAR FUNCTIONS CURRENTLY RATED OR INDORSED | | TOTAL | PLACEMENT OF OFFICERS *(Enter * in appropriate group)* | | | | | MARKING OUT OF OVERALL GROUP |
|---|---|---|---|---|---|---|---|---|
| | | | BOTTOM 5TH | FOURTH | MIDDLE | SECOND | TOP | |
| RATER | | 4 | | | | 2★ | 2 | |
| INDORSER | | 4 | | | | 2★ | 2 | |

b. RANKING OF THIS OFFICER IN COMPARISON WITH ALL ARMY OFFICERS OF THIS GRADE AND BRANCH I KNOW WELL ENOUGH TO RATE   91

| RATER | % | 0 | 10 | 20 | 30 | 40 | 50 | 60 | 70 | 80 | 90 | 100 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| INDORSER | | | | | | | | | | | | 93 |

00234

#75   14 Nov 78   58

A-11

**IMPORTANT:** THE PREPARATION OF AN EFFICIENCY REPORT IS A SERIOUS RESPONSIBILITY. EACH INDIVIDUAL WILL TAKE THE SAME PAINSTAKING CARE IN THE PREPARATION OF THE REPORT FOR HIS SUBORDINATES THAT HE WOULD EXPECT HIS SENIOR OFFICER TO TAKE IN THE PREPARATION OF HIS OWN REPORT. ALL ENTRIES WILL BE TRUE AND IMPARTIAL. READ CAREFULLY REFERENCED PARAGRAPH IN AR 623-105 BEFORE ATTEMPTING TO FILL OUT ANY ITEM.

**PART I - PERSONAL DATA (Read paragraph 3-3a, AR 623-105)**

| A. LAST NAME - FIRST NAME - MIDDLE INITIAL | B. SERVICE NUMBER | C. STAR | H. GRADE | J. DATE OF RANK BASIC | DETAIL BRANCH |
|---|---|---|---|---|---|
| EPSTEIN, LAWRENCE S. | | | 1Lt | 4Dec70 | MI |

E. UNIT, ORGANIZATION, STATION, AND MAJOR COMMAND: HI CI Det, 500th MI Gp USARPAC-Hawaii, Attached USARHAW
Chaplain's Office, Schofield Barracks, Hawaii USARPAC

**PART II - REPORTING PERIOD AND DUTY DATA (Read paragraph 3-3b, AR 623-105)**

| A. PERIOD COVERED | | | | | | B. REASON FOR SUBMITTING REPORT (Check) | C. REPORT BASED ON (Check) | RATER | INDORSER |
|---|---|---|---|---|---|---|---|---|---|
| FROM | | | TO | | | ANNUAL | DAILY CONTACT | | |
| DAY | MONTH | YEAR | DAY | MONTH | YEAR | CHANGE OF RATER | FREQUENT OBSERVATION | | |
| 5 | Jul | 72 | 20 | Nov | 72 | PCS RATED OFFICER | INFREQUENT OBSERVATION | | |
| DUTY DAYS | OTHER DAYS | | | | | CHANGE OF DUTY OF RATED OFFICER XX | RECORDS AND REPORTS | | |
| 134 | 5 | | | | | OTHER (Specify) | OTHER (Specify) | | |

**PART III - AUTHENTICATION (Read paragraph 3-3c, AR 623-105)**

| A. SIGNATURE OF RATER | TYPED NAME, GRADE, BRANCH, SERVICE NUMBER, ORGANIZATION, AND DUTY ASSIGNMENT | DATE |
|---|---|---|
| | JOHN S. ROSENBLATT, Lt. Ch. USNR Jewish Chaplain Comm. | 27 June 1973 |
| | TYPED NAME, GRADE, BRANCH, SERVICE NUMBER, ORGANIZATION, AND DUTY ASSIGNMENT ROY V. PETERS, LTC, Ch, USA Staff Chaplain, HQ USASCH | 29 Jun 1973 |
| G. REVIEWER (Read chapter 3, AR 623-105) MY REVIEW ☐ INDICATES NO FURTHER ACTION ☐ RESULTS IN ACTION STATED ON INCLOSURES | TYPED NAME, GRADE, BRANCH, SERVICE NUMBER, ORGANIZATION, AND DUTY ASSIGNMENT | DATE |
| SIGNATURE OF REVIEWER | H. H. ANDERSON JR. LTC, MI 500th MIGp, DC For Support | 13Jul73 |
| L. THIS REPORT HAS 0 INCLOSURES. (Insert "0" if appropriate) | DATE ENTERED ON DA FORM 66 | PERSONNEL OFFICER'S INITIALS |

TO COMPLETE PARTS IV, VI, VII, VIII, IX, X, AND XI, EVALUATE THE RATED OFFICER IN COMPARISON WITH OTHER OFFICERS OF THE SAME GRADE, SIMILAR EXPERIENCE, MILITARY SCHOOLING, AND TIME IN GRADE. ITEMS DESIGNATED BY ASTERISK REQUIRE EXPLANATION IN PART XI.

**PART IV - PERSONAL QUALITIES (Read paragraph 3-3d, AR 623-105)**

| RATER | INDORSER | | TOP 1 | SECOND 2 | MIDDLE 3 | FOURTH 4 | BOTTOM 5 | NOT OBSERVED N/O |
|---|---|---|---|---|---|---|---|---|
| 1 | | a. ADAPTABILITY (Adjusts to new or changing situations) | | | | | | |
| 1 | | b. AMBITION (Seeks and welcomes, within bounds of military propriety, additional and more important responsibilities) | | | | | | |
| 1 | | c. APPEARANCE (Possesses military bearing and is neat, smart, and well-groomed) | | | | | | |
| 4 | | d. COOPERATION (Works in harmony with others as a team member) | | | | | | |
| 1 | | e. DECISIVENESS (Ability to reach conclusions promptly and decide a definite course of action) | | | | | | |
| 3 | | f. DEPENDABILITY (Consistently accomplishes desired actions with minimum supervision) | | | | | | |
| 2 | | g. ENTHUSIASM (Maintains ardent by his keen interest and genuine participation) | | | | | | |
| 2 | | h. FORCE (Exercises actions vigorously) | | | | | | |
| 2 | | i. INGENUITY (Creative ability in devising means to solve problems) | | | | | | |
| 3 | | j. INITIATIVE (Takes necessary and appropriate action on his own) | | | | | | |
| 1 | | k. INTEGRITY (Adherence to principles of honesty and moral courage) | | | | | | |
| 2 | | l. INTELLIGENCE (Acquires knowledge and grasps concepts readily) | | | | | | |
| 2 | | m. JUDGMENT (Thinks logically and makes practical decisions) | | | | | | |
| 4 | | n. LOYALTY (Faithful and willing support to superiors and subordinates) | | | | | | |
| 1 | | o. MORAL COURAGE (Unaffected honesty, willingness to stand up and be counted) | | | | | | |
| 1 | | p. NON-DUTY CONDUCT (Keeps his personal affairs in order) | | | | | | |
| 2 | | q. SELF-DISCIPLINE (Conducts himself in accordance with the highest standards) | | | | | | |
| 2 | | r. SELF-IMPROVEMENT (Takes action to improve himself) | | | | | | |
| 4 | | s. SELFLESSNESS (Subordinates his personal welfare to that of the organization) | | | | | | |
| 1 | | t. SOCIABILITY (Participates freely and easily in social and community activities) | | | | | | |
| 1 | | u. STAMINA (Performs successfully under periods of physical and mental stress) | | | | | | |
| 3 | | v. TACT (Says or does what is appropriate without giving unnecessary offense) | | | | | | |
| 2 | | w. TENACITY (The will to persevere in face of obstacles) | | | | | | |
| 2 | | x. UNDERSTANDING (Appreciation for the needs and viewpoints of others) | | | | | | |

DA FORM 67-6 1 JAN 68    REPLACES DA FORM 67-5, 1 AUG 63, WHICH IS OBSOLETE.    U.S. ARMY OFFICER EFFICIENCY REPORT (AR 623)

#75    14 Nov 78    5C

A-12

**RATED OFFICER'S NAME, GRADE, SERVICE NUMBER AND TERM** EPSTEIN, LAWRENCE S., 1LT

**PART V - DUTY ASSIGNMENT FOR RATED PERIOD** (Read paragraph 4-2b, AR 623-105)

**a. PRINCIPAL DUTY**  **b. DUTY MOS** 0009  **c. AUTH GRADE** 1LT

Chaplains assistance for the Army Community in Hawaii, as part of the tri-service Jewish Community.

**b. MAJOR ADDITIONAL DUTIES**

**PART VI - PERFORMANCE OF DUTY FACTORS** (Read paragraph 4-3b, AR 623-105)

| DEGREE | | TOP | SECOND | MIDDLE | FOURTH | BOTTOM | NOT OBSERVED |
|---|---|---|---|---|---|---|---|
| RATER | INDORSER | 1 | 2 | 3 | 4 | 5 | N/O |
| 3 | | a. DISPLAYS A PROFESSIONAL KNOWLEDGE OF ASSIGNED DUTIES | | | | | |
| N/O | | b. RESOURCES EFFICIENTLY AND ECONOMICALLY | | | | | |
| 3 | | c. ESTABLISHES AND ACHIEVES HIGH STANDARDS OF PERFORMANCE | | | | | |
| N/O | | d. FULFILLS HIS RESPONSIBILITIES IN THE DEVELOPMENT OF SUBORDINATES | | | | | |
| 3 | | e. PLANS BEYOND THE IMMEDIATE REQUIREMENTS OF ASSIGNED DUTIES | | | | | |
| N/O | | f. DELEGATES AUTHORITY AS APPROPRIATE | | | | | |
| N/O | | g. EXERCISES PROPER DEGREE OF SUPERVISION | | | | | |
| 3 | | h. COMMANDS CONFIDENCE AND RESPECT | | | | | |
| 2 | | i. ACCEPTS FULL RESPONSIBILITY FOR HIS ACTIONS | | | | | |
| 3 | | j. WILLINGLY ACCEPTS AND ACTS UPON SUGGESTIONS AND CONSTRUCTIVE CRITICISM | | | | | |
| 1 | | k. EXPRESSES HIMSELF CLEARLY AND CONCISELY ORALLY | | | | | |
| 3 | | l. EXPRESSES HIMSELF CLEARLY AND CONCISELY IN WRITING | | | | | |
| 1 | | m. MAINTAINS AN APPROPRIATE LEVEL OF PHYSICAL FITNESS | | | | | |
| N/O | | n. CONCERN FOR THE WELFARE OF SUBORDINATES | | | | | |

**PART VII - DEMONSTRATED PERFORMANCE OF PRESENT DUTY** (Read paragraph 4-3b, AR 623-105)

| RATER | INDORSER | |
|---|---|---|
| | | PERFORMS THIS DUTY BETTER THAN ANY OTHER OFFICER I KNOW |
| | | PERFORMANCE OF THIS DUTY EQUALED BY VERY FEW OFFICERS |
| | | PERFORMS THIS DUTY BETTER THAN MOST OFFICERS |
| | | PERFORMS THIS DUTY AS WELL AS MOST OFFICERS |
| X | | PERFORMANCE OF THIS DUTY MEETS MINIMUM STANDARDS |
| | | PERFORMS THIS DUTY IN AN UNSATISFACTORY MANNER |

**PART VIII - PROMOTION POTENTIAL** (Read paragraph 4-3b, AR 623-105)

| | |
|---|---|
| | PROMOTE AHEAD OF CONTEMPORARIES (EXHIBITS CHARACTERISTICS WHICH SHOULD BRING HIM TO THE HIGHEST POSITIONS IN THE ARMY) |
| X | PROMOTE ALONG WITH CONTEMPORARIES |
| | DO NOT PROMOTE AT THIS TIME |
| | DO NOT PROMOTE THIS OFFICER |

**PART IX - SCHOOLING POTENTIAL** (Read paragraph 4-3b, AR 623-105)

Basic

| | |
|---|---|
| | HIGHEST MILITARY SCHOOL COMPLETED |
| | SENIOR SERVICE COLLEGE AHEAD OF CONTEMPORARIES |
| | SENIOR SERVICE COLLEGE WITH CONTEMPORARIES |
| | C&GS OR EQUIVALENT AHEAD OF CONTEMPORARIES |
| | C&GS OR EQUIVALENT WITH CONTEMPORARIES |
| | NOT RECOMMENDED FOR FURTHER SCHOOLING AT THIS TIME |
| | NOT APPLICABLE |
| X | OTHER (Specify below) Advance Course |

**PART X - ASSIGNMENT POTENTIAL** (Read paragraph 4-3b, AR 623-105)

| RATER | | | | | | N/O |
|---|---|---|---|---|---|---|
| 1 | 2 | 3 | 4 | 5 | | |
| | | | | | | POTENTIAL FOR HIGHER LEVEL |
| 3 | | | | | | POTENTIAL FOR HIGHER LEVEL STAFF |

**PART XI - COMMENTS** (Read paragraph 4-3b, AR 623-105)

**a. RATER**

Lt Epstein served as the Army Chaplain's assistant in a Tri-service community. He subordinated his job requirements to his personal interests and functioned below average in any cooperative elements of his job. I do not believe he attempted to do as well as he might and should not be utilized in this capacity. (Recommending his promotion along with contemporaries as he only worked in our office 4 1/2 months in a position he had no p... r experience nor training in and wish not to judge him solely by this experience.)

**b. INDORSER** [X] I AM UNABLE TO EVALUATE THIS OFFICER FOR THE FOLLOWING REASON:

I have never seen this officer before. However I am well acquainted with the rater and do w... concur with his judgement.

**PART XII - OVER-ALL VALUE TO THE SERVICE** (Read paragraph 4-3b, AR 623-105)

| a. OFFICERS OF THIS GRADE PERFORMING SIMILAR FUNCTIONS I CURRENTLY RATE OR INDORSE | | TOTAL | PLACEMENT OF OFFICERS (Enter * in appropriate Group) | | | | | RANKING WITHIN OVER-ALL GROUP |
|---|---|---|---|---|---|---|---|---|
| | | | BOTTOM 5TH | FOURTH | MIDDLE | SECOND | TOP | |
| | RATER | 1 | | | | | | |
| | INDORSER | | | | | | | |

**b. RANKING OF THIS OFFICER IN COMPARISON WITH ALL ARMY OFFICERS OF THIS GRADE AND BRANCH I KNOW WELL ENOUGH TO RATE**

| RATER | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| 5 | 8 | 10 | 20 | 30 | 40 | 50 | 60% | 70 | 80 | 90 | 100 |
| INDORSER | | | | | | | | | |

# U. S. Army Intelligence School

## Fort Holabird, Maryland

*This is to certify that*

**SECOND LIEUTENANT LAWRENCE E. RESSETT**

has successfully completed the

COURSE

**TRIPLE I SERVICE RESEARCH OFFICER APPRENTICAN**

from ——— 30 MARCH 19 70. to ——— 10 JULY 19 70.

RECORDED:

Albert C. Ferguson, LTC, ADA
SECRETARY

Charles W. Allen, Colonel, MI
COMMANDANT

INVALID UNLESS
USAINTS SEAL
IS AFFIXED

USAINTS Form 174-4A
Rev 1 Jul 69

#75   14 Nov 78   SG

## ACADEMIC REPORT

DATE **1 Jul 70**

For use of this form, see AR 623-105; the proponent agency is The Adjutant General's Office.

### PART I — (FOR ARMY OFFICER STUDENTS ATTENDING SERVICE SCHOOLS)

TO: (For other than active Army officers, see para 4, AR 623-105)
The Adjutant General
ATTN: AGPF-RP
Department of the Army
Washington D.C. 20315

FROM (Include ZIP Code)
Commandant
U S Army Intelligence School
Fort Holabird, Baltimore, Md. 21219

| 1. LAST NAME – FIRST NAME – MIDDLE INITIAL | 2. GRADE | 3. SERVICE NUMBER | 4. SOCIAL SECURITY ACCOUNT NUMBER | 5. BRANCH | | 6. COMPONENT |
|---|---|---|---|---|---|---|
| Epstein, Lawrence S. | 21T | | | BASIC MI | DETAIL | |

7. NAME OR TITLE OF COURSE
**Intelligence Research Officer/ Technician Course   (70-E-8)**

| 8. DURATION OF COURSE | | 9. PERIOD OF REPORT | |
|---|---|---|---|
| FROM 30 Mar 70 | TO 14 Jul 70 | FROM 16 Mar 70 | TO 14 Jul 70 |

10. DID OFFICER SUCCESSFULLY COMPLETE THE COURSE? (If "No", give reason — illness, academic deficiency, disciplinary, etc.) (Include supplementary details under item 17 if necessary)
☒ YES   ☐ NO

11. NUMBER OF STUDENTS GRADUATED   **51**

A. CHECK APPROPRIATE BLOCK:
☐ DISTINGUISHED GRADUATE (Top Graduate)
☐ HONOR GRADUATE (Second, Third, Fourth, or Fifth Highest Graduate)
☐ COMMANDANT'S LIST (Upper 20% of class)
☒ NONE OF THE ABOVE

12. SPECIAL APTITUDES

13. DO YOU RECOMMEND OFFICER AS A POTENTIAL INSTRUCTOR FOR THE SCHOOL? (If "Yes", specify academic Department)
☐ YES   ☒ NO

14. EXPRESSES HIMSELF CLEARLY AND CONCISELY ORALLY
☐ ABOVE AVERAGE   ☒ AVERAGE   ☐ BELOW AVERAGE

15. EXPRESSES HIMSELF CLEARLY AND CONCISELY IN WRITING
☐ ABOVE AVERAGE   ☒ AVERAGE   ☐ BELOW AVERAGE

16. QUALITY OF STUDENT'S PARTICIPATION DURING INSTRUCTIONAL DISCUSSION
☐ ABOVE AVERAGE   ☒ AVERAGE   ☐ BELOW AVERAGE

17. COMMENTS

Lt Epstein demonstrated that he was a conscientious worker. He grasped
the principles of counterintelligence operations and he has the
potential to develop into an effective counterintelligence officer.
Lt Epstein is recommended for further military schooling.

| DATE **22 Jul 70.** | TYPED NAME AND TITLE **LTC ALBERT C. FERGUSON** Secretary | SIGNATURE |
|---|---|---|

DA FORM 1059
1 MAR 66

REPLACES DA FORM 099-1 JAN 66, WHICH IS OBSOLETE.

A4

00238

#75    14 Nov 78    SC

A 3

## ACADEMIC REPORT

For use of this form, see AR 623-104; the proponent agency is The Adjutant General's Office.

**DATE** 2 3 MAR 1970

### PART I — (FOR ARMY OFFICER STUDENTS ATTENDING SERVICE SCHOOLS)

| TO: (For other than active Army officers, see page 4, AR 623-104) | FROM (Include ZIP Code) |
|---|---|
| The Adjutant General<br>ATTN: AGPREP<br>Department of the Army<br>Washington, D.C. 20315 | Commandant<br>US Army Armor School<br>Fort Knox, Kentucky 40121 |

| 1. LAST NAME — FIRST NAME — MIDDLE INITIAL | 2. GRADE | 3. SERVICE NUMBER | 4. SOCIAL SECURITY ACCOUNT NUMBER | 5. BRANCH | | 6. COMPONENT |
|---|---|---|---|---|---|---|
| Epstein, Lawrence S. | 2LT | N/A | | BASIC<br>MI | DETAIL<br>N/A | USAR |

| 7. NAME OR TITLE OF COURSE | | 8. DURATION OF COURSE | | 9. PERIOD OF REPORT | |
|---|---|---|---|---|---|
| ARMOR OFFICER BASIC | | FROM<br>10 Dec 69 | TO<br>26 Feb 70 | FROM<br>4 Dec 69 | TO<br>25 Feb 70 |

**10. DID OFFICER SUCCESSFULLY COMPLETE THE COURSE ?** (If "No", give reason — illness, academic deficiency, disciplinary, etc.)
(Include supplementary details under Item 17 if necessary)

☒ YES    ☐ NO

**11a. NUMBER OF STUDENTS GRADUATED** 126

**b. CHECK APPROPRIATE BLOCK:**
☐ DISTINGUISHED GRADUATE (Top Graduate)
☐ HONOR GRADUATE (Second, Third, Fourth, or Fifth Highest Graduate)
☐ COMMANDANT'S LIST (Upper 20% of class)
☒ NONE OF THE ABOVE

**12. SPECIAL APTITUDES** Not sufficient observation

**13. DO YOU RECOMMEND OFFICER AS A POTENTIAL INSTRUCTOR FOR THE SCHOOL ?** (If "Yes", specify academic Department)

☐ YES    ☐ NO    Not sufficient observation

**14. EXPRESSES HIMSELF CLEARLY AND CONCISELY ORALLY**
☐ ABOVE AVERAGE    ☒ AVERAGE    ☐ BELOW AVERAGE

**15. EXPRESSES HIMSELF CLEARLY AND CONCISELY IN WRITING**
☐ ABOVE AVERAGE    ☒ AVERAGE    ☐ BELOW AVERAGE

**16. QUALITY OF STUDENT'S PARTICIPATION DURING INSTRUCTIONAL DISCUSSION**
☐ ABOVE AVERAGE    ☒ AVERAGE    ☐ BELOW AVERAGE

**17. COMMENTS:**

1. Officer is suitable for further military schooling.

2. Insufficient observation to determine qualification for high command and general staff duty.

3. The following additional information is submitted:

| DEPARTMENT/BRANCH | PHASE SCORE |
|---|---|
| Automotive | 88.71 |
| Command and Staff | 76.45 |
| Communication | 78.80 |
| General Subjects | 77.66 |
| Weapons | 83.76 |
| Military Stakes | Prorated |

4. Total hours of Internal Defense and Internal Development Training - 6.

5. Total hours of instruction directly related to Internal Defense and Internal Development Training - 60.6.

6. Performance in leadership positions during Armor FTX (16 hrs) and/or Armored Cavalry Platoon Reconnaissance and Security Operations (16 hrs) _Satisfactory_

| DATE<br>2 3 MAR 1970 | TYPED NAME AND TITLE<br>MARGUERITE M WALKER ILT WAC<br>Chief, Academic Records Branch | SIGNATURE<br>*Marguerite M. Walker* |
|---|---|---|

DA FORM 1059    MAR 66    REPLACES DA FORM 1309, JAN 65, WHICH IS OBSOLETE.

00239

# The United States Army

## Armor School



FORGE THE THUNDERBOLT

## To all who shall see these presents greeting

**Be it known** that _Second Lieutenant Lawrence S Epstein_

_having completed_

the Armor Officer Basic Course at

## US ARMY ARMOR SCHOOL

_and having achieved the prescribed grade has been declared a_

## GRADUATE

**In testimony Whereof,** and by authority vested in us We do confer upon him this

## DIPLOMA

_Given at Fort Knox, Kentucky this_ 26th _day of_ February 1970

Brigadier General, US Army
Assistant Commandant

Major General, US Army
Commandant

ATTEST:

Lieutenant Colonel, Armor
Secretary

00240

#75   14 Nov 78   SC

Standard Form 88
(Rev June 1956)
Bureau of the Budget
Circular A-32 (Rev.)

## REPORT OF MEDICAL EXAMINATION

| 1. LAST NAME—FIRST NAME—MIDDLE NAME | 2. GRADE AND COMPONENT OR POSITION | 3. IDENTIFICATION NO. |
|---|---|---|
| EPSTEIN LAWRENCE STEVEN | 2LT USAR | |

| 4. HOME ADDRESS (Number, street or RFD, city or town, zone and State) | 5. PURPOSE OF EXAMINATION | 6. DATE OF EXAMINATION |
|---|---|---|
| | Entrance Active Duty | 8 Dec 69 |

| 7. SEX | 8. RACE | 9. TOTAL YEARS GOVERNMENT SERVICE | 10. AGENCY | 11. ORGANIZATION UNIT |
|---|---|---|---|---|
| Male | Caucasian | MILITARY 0  CIVILIAN 0 | Army | AOB 11  Co C 1st Bn Sch Bde |

| 12. DATE OF BIRTH | 13. PLACE OF BIRTH | 14. NAME, RELATIONSHIP, AND ADDRESS OF NEXT OF KIN |
|---|---|---|
| | New York, USA | Cpt Ed. Epstein  Brother |

| 15. EXAMINING FACILITY OR EXAMINER, AND ADDRESS | 16. OTHER |
|---|---|
| CES  FT KNOX KY | |

17. RATING OR SPECIALTY

TIME IN THIS CAPACITY (Total)          LAST SIX MONTHS

### CLINICAL EVALUATION

(Check each item in appropriate column—enter "NE" if not evaluated.)

| ITEM | | NORMAL | ABNORMAL |
|---|---|---|---|
| 18. | HEAD, FACE, NECK, AND SCALP | | |
| 19. | NOSE | | |
| 20. | SINUSES | | |
| 21. | MOUTH AND THROAT | | |
| 22. | EARS—GENERAL (Int & ext. canals) (Auditory acuity under items 70 and 71) | | |
| 23. | DRUMS (Perforation) | | |
| 24. | EYES—GENERAL (Visual acuity and refraction under items 68, 69 and 67) | | |
| 25. | OPHTHALMOSCOPIC | | |
| 26. | PUPILS (Equality and reaction) | | |
| 27. | OCULAR MOTILITY (Associated parallel movements, nystagmus) | | |
| 28. | LUNGS AND CHEST (Include breasts) | | |
| 29. | HEART (Thrust, size, rhythm, sounds) | | |
| 30. | VASCULAR SYSTEM (Varicosities, etc.) | | |
| 31. | ABDOMEN AND VISCERA (Include hernia) | | |
| 32. | ANUS AND RECTUM (Hemorrhoids, fistulae) (Prostate, if indicated) | | |
| 33. | ENDOCRINE SYSTEM | | |
| 34. | G-U SYSTEM | | |
| 35. | UPPER EXTREMITIES (Strength, range of motion) | | |
| 36. | FEET | | |
| 37. | LOWER EXTREMITIES (Except feet) | | |
| 38. | SPINE, OTHER MUSCULOSKELETAL | | |
| 39. | IDENTIFYING BODY MARKS, SCARS, TATTOOS | | |
| 40. | SKIN, LYMPHATICS | | |
| 41. | NEUROLOGIC (Equilibrium tests under item 72) | | |
| 42. | PSYCHIATRIC (Specify any personality deviation) | | |
| 43. | PELVIC (Females only) (Check how done) | | |
| | ☐ VAGINAL   ☐ RECTAL | | |

NOTES: (Describe every abnormality in detail. Enter pertinent item number before each comment. Continue in item 73 and use additional sheets if necessary.)

4th finger @ hand 1 in scar
3 of finger @ hand 1/2 in scar

(Continue in item 73)

| 44. DENTAL (Place appropriate symbols above or below number of upper and lower teeth, respectively.) | REMARKS AND ADDITIONAL DENTAL DEFECTS AND DISEASES |
|---|---|
| O—Restorable teeth  /—Nonrestorable teeth   X—Missing teeth   XXX—Replaced by dentures   16 X-ray—Fixed bridge, brackets to Y—Include abutments | |

RIGHT  1  2  3  4  5  6  7  8  9  10  11  12  13  14  15  16  LEFT
       32 31 30 29 28 27 26 25 24 23 22 21 20 19 18 17

### LABORATORY FINDINGS

8 DEC 1969

| 45. URINALYSIS: A. SPECIFIC GRAVITY | | 46. CHEST X-RAY (Place, date, film number and result) WN-Ess Neg |
|---|---|---|
| B. ALBUMIN  X  Neg | D. MICROSCOPIC | IAH, Fl, Kotusl, |
| C. SUGAR  X  Neg | | |
| 47. SEROLOGY (Specify test used and result)  Flocculation  Neg | 48. EKG | 49. BLOOD TYPE AND RH FACTOR | 50. OTHER TESTS  NONE |

#75    14 Nov 78    SC

G-6

## MEASUREMENTS AND OTHER FINDINGS

| 51. HEIGHT | 52. WEIGHT | 53. COLOR HAIR | 54. COLOR EYES | 55. Build: (Check one) | SLENDER | MEDIUM | HEAVY | OBESE | 56. TEMPERATURE |
|---|---|---|---|---|---|---|---|---|---|
| 71 | 155 | Brn | Blue | | | ✓ | | | |

**57. BLOOD PRESSURE (Arm at heart level)** — **PULSE (Arm at heart level)**

| A. SITTING | SYS. 118 DIAS. 86 | B. RECUMBENT SYS. DIAS. | C. STANDING (3 min.) SYS. DIAS. | A. SITTING 78 | B. AFTER EXERCISE | C. 2 MIN. AFTER | D. RECUMBENT | E. AFTER STANDING 3 MIN. |
|---|---|---|---|---|---|---|---|---|

**58. DISTANT VISION** — **60. REFRACTION** — **DEAR VISION**

| RIGHT 20/ 400+ | CORR. TO 20/ 20 | BY | S. | CX | | 7-10 | CORR. TO 7-1 | BY |
| LEFT 20/ 400+ | CORR. TO 20/ 20 | BY | S. | CX | | 7-10 | CORR. TO 7-1 | BY |

**61. HETEROPHORIA (Specify distance)**

| ES° | EX° | R.H. | L.H. | PRISM DIV. | PRISM CONV. | PC | PD |
|---|---|---|---|---|---|---|---|

| 63. ACCOMMODATION | | 64. COLOR VISION (Test used and result) Normal - Abt | 65. DEPTH PERCEPTION (Test used and score) | UNCORRECTED |
| RIGHT | LEFT | 62. NIGHT VISION (Test used and score)       ASA | | CORRECTED |
| 66. FIELD OF VISION | | | 67. RED LENS TEST | 68. INTRAOCULAR TENSION |

| 70. HEARING | | 71. AUDIOMETER | | 72. PSYCHOLOGICAL AND PSYCHOMOTOR (Test used and score) |
|---|---|---|---|---|

| | | | 250 512 | 500 1024 | 1000 2048 | 2000 2896 | 3000 4096 | 4000 8144 | 6000 8196 | |
| RIGHT WV | /15  SV | /15 | 5 | 0 | 8 | 5 | 5 | | | |
| LEFT WV | /15  SV | /15 | 0 | 5 | 8 | 5 | 5 | | | |

**73. NOTES (Continued) AND SIGNIFICANT OR INTERVAL HISTORY**

1) Allergic to PCN

(Use additional sheets if necessary)

**74. SUMMARY OF DEFECTS AND DIAGNOSES (List diagnoses with item numbers)**

V-scars on hands

**75. RECOMMENDATIONS—FURTHER SPECIALIST EXAMINATIONS INDICATED (Specify)**

| 76. | A. PHYSICAL PROFILE |
|---|---|
| | P | U | L | H | E | S |

**77. EXAMINEE (Check)**
A. ☑ IS QUALIFIED FOR **RETENTION**
B. ☐ IS NOT QUALIFIED FOR

B. PHYSICAL CATEGORY

**78. IF NOT QUALIFIED, LIST DISQUALIFYING DEFECTS BY ITEM NUMBER**

| A | B | C | E |
|---|---|---|---|

**79. TYPED OR PRINTED NAME OF PHYSICIAN**
Dr Chicatello MC

**SIGNATURE** P. D. Chicatello MC

**80. TYPED OR PRINTED NAME OF PHYSICIAN**

**SIGNATURE**

**81. TYPED OR PRINTED NAME OF DENTIST OR PHYSICIAN (Indicate which)**

**SIGNATURE**

**82. TYPED OR PRINTED NAME OF REVIEWING OFFICER OR APPROVING AUTHORITY**

**SIGNATURE**

NUMBER OF ATTACHED SHEETS

* U.S. GOVERNMENT PRINTING OFFICE

#75    14 Nov 78  /  SC

H-4

# DEPARTMENT OF THE ARMY
## HEADQUARTERS, FIRST UNITED STATES ARMY
### FORT GEORGE G. MEADE, MARYLAND. 20755

Ao E 11.

ANAAG-CM
LETTER ORDERS A-10-3717                                    9 October 1969

SUBJECT: Active Duty Orders

Individual Concerned

TC 141. Effective upon your acceptance of appointment in the Army
Reserve, and by order of the Secretary of the Army, you are ordered to
ACTIVE DUTY (AD) for period indicated (ADC) under the provisions of
Title 10, USC Section 672(d). Security Clearance: SECRET. When appli-
cable, PRAP AR 55-28 or AR 55-46 as appropriate, and AR 612-35. You
will proceed to TDY station in sufficient time to report on date specified.
On the EDCSA, you are relieved (rel) from your present reserve unit or
Control Group. Travel directed is necessary in the military service (TDN).
Travel by privately owned conveyance is authorized (TPA). Travel by
military aircraft is authorized (TBMAA). Permanent Change of Station
(PCS). Initial assignment to the ACTIVE DUTY ACCESSION DETACHMENT,
Headquarters First US Army is for the purpose of strength accountability
only. Travel of individual, dependents and shipment of household goods
to station of initial assignment are not authorized.

TDY ENROUTE TO:  USA Armor School, Fort Knox, Kentucky 40121.

Reporting date (TDY): Between 0800 and 1700 hours ___5 Dec 69___.
Period (TDY): Approx ___9___ weeks.
Course:  Armor Officer Basic
Class number:  11(2-17-C20)QS-01B
Acct Classification:  (TDY) 2102020 32-28 P2110-210 899-999 (Unif Alws)
                      2102010 01-110 P1010 899-999.
ASSIGNED TO:  Active Duty Accession Detachment, Hq First US Army and
              reassigned as directed below.
Permanent change of station (MDC):  WZOO
Active duty commitment (ADC): OBV ___2___ years.
Effective date of change strength accountability (EDCSA):  3 Dec 69
Availability date: NA                          PCS (MDC):  1200
Leave date ___NA___
Effective date of change strength accountability (EDCSA):  7 Feb 70
SPECIAL INSTRUCTIONS:  Individual must have executed oath of office (DA
Form 71) prior to reporting date (TDY) cited and prior to commencing
travel. Medical examination will be accomplished at the first duty
station as required by para 10d(1), AR 140-120. Effective upon entry
on active duty officer is appointed in the AUS grade equal to his USAR
grade and such AUS appointment is considered to have been accepted ef-
fective the date of entry on active duty. Estimated AUS date of rank:
___3 Dec 69___. Pursuant to a DOD directive, you will not be
authorized to enter into a rental or lease agreement for an apartment
or trailer court facility in certain designated or to be designated areas
without first consulting the housing office serving the installation or
agency to which you are TDY or assigned. You will contact or com-
municate with, either personally or through an agent, the housing

00243

#75    14 Nov 78    SC

A-5

<u>LETTER ORDERS A- 10-3717</u>    Hq First US Army    9 Oct 69    CONTINUED
<u>SPECIAL INSTRUCTIONS</u> (con't): referral officer, or such individual designated
by the commander of the installation or agency to which you are TDY or assigned,
who will provide you current information concer        apartment or trailer court
facilities which you may not lease or rent because of unfavorable racial segrega-
tion practices.. Top secret required. Resp comdr will comply with AR 604-5.
If officers have not had a favorable NAC within 9 months of call to AD, request
one be initiated.

EPSTEIN, LAWRENCE S. ▮▮▮▮▮ 2LT MI USAR Pratt Inst
REASSIGNED TO: Co D, USAINTS, Fort Holabird, Maryland 21219 for crs & class
                number to be detm in excess of 20 wks
Home of Record:  c/o Mr. & Mrs. J. Weiss,▮▮▮▮▮▮▮▮▮▮
Current Location:        Same as HOR
Allocation: STU
Procurement Program Number: S-2          MOS 1690
                                         (4-year ROTC Prog Grad)

FROEHLICH, CHARLES R. ▮▮▮▮▮ 2LT MI USAR Univ of Cincinnati
REASSIGNED TO: Co D, USAINTS, Fort Holabird, Maryland 21219 for crs & class
                number to be detm in excess of 20 wks
Home of Record: ▮▮▮▮▮▮▮▮▮▮
Current Location:        Same as HOR
Allocation:▮ STU
Procurement Program Number: S-2          MOS 1690
                                         (4-yc  ROTC Prog Grad)

GALBRAITH, LAWRENCE J. ▮▮▮▮▮ 2LT MI USAR Drexel Inst
REASSIGNED TO: Co D, USAINTS, Fort Holabird, Maryland 21219 for crs & class
                number to be detm in excess of 20 wks
Home of Record:▮▮▮▮▮▮▮▮▮▮
Current Location:        Same as HOR
Allocation: STU
Procurement Program Number: S-2          MOS 1690
                                         (4-year ROTC Prog Grad)

FOR THE COMMANDER:

                                    ANDREW L. LY
                                    CPT AGC
                                    Asst AG

<u>DISTRIBUTION:</u>
40 - Indiv Indic (certified Mail)
 5 - Each orgn of reassignment
       (For MR and other Admin purposes)
 5 - Comdr, USA Armor School, Fort
       Knox, Kentucky 40121

 2 - PMS, college or univ indic
 7 - AD Accession Det (AHAAG-CM)
 2 - AHAAG-PD; 2 - AHAAG-DLO
 2 - AHAAG-CD (Delay Control Gp)
10 - AHAAG-CM; 2 - AHAAG-MD
 2 - Post Locator, Fort Knox, Kentucky 40121

<u>SPECIAL DISTRIBUTION:</u>
 2 - DA, Dir OPD, OPO:    MI
 2 - TA.  ATTN: AGRZ-SMAN

00244

#75    14 Nov 78    SG



DEPARTMENT OF THE ARMY
US ARMY ROTC INSTRUCTOR GROUP
PRATT INSTITUTE
BROOKLYN, NEW YORK 11205

UNIT ORDERS
NUMBER   19                                    9 June 1969

TC 4:   By order of the Secretary of the Army you are DISCHARGED on date
indicated.

AXELRUD, ABRAHAM  ER11508626 (SSAN: ████████  ) Pvt E1 ████████
Relieved from:  First US Army Control Group (ROTC) Ft George G. Meade, Md.
                20755
Type discharge:  Honorable - Department of Defense Form 256A
Reason (discharge):  Acceptance of/appointment as a Commissioned Officer
                     in the US Army Reserve
Authority (discharge):  Paragraph 3-12a, AR 135-178
Date discharge:  5 June 1969
Selective Service Number:
Component:  Army Reserve (Ready)

BENTLEY, DAVID LAMBERT  ER11508627 (SSAN: ████████ ) Pvt E1   4 Colonia
Avenue, Latham, NY 12110
Relieved from:  First US Army Control Group (ROTC) Ft George G. Meade, Md.
                20755
Type discharge:  Honorable - Department of Defense Form 256A
Reason (discharge):  Acceptance of appointment as a Commissioned Officer
                     in the US Army Reserve
Authority (discharge):  Paragraph 3-12a, AR 135-178
Date discharge:  5 June 1969
Selective Service Number:
Component:  Army Reserve (Ready)

BRAUN, DAVID WAYNE  ER11508631 (SSAN: ████████ ) Pvt E1 ████████
Relieved from:  First US Army Control Group (ROTC) Ft George G. Meade, Md.
                20755
Type discharge:  Honorable - Department of Defense Form 256A
Reason (discharge):  Acceptance of appointment as a Commissioned Officer
                     in the US Army Reserve
Authority (discharge):  Paragraph 3-12a, AR 135-178
Date discharge:  5 June 1969
Selective Service Number:
Component:  Army Reserve (Ready)

CLARKE, JR. LENARD RERERVINE  ER11491844 (SSAN: ████████ ) PVT E1
Relieved from:  First US Army Control Group (ROTC) Ft George G. Meade, Md.
                20755
Type discharge:  Honorable - Department of Defense Form 256A
Reason (discharge):  Acceptance of appointment as a Commissioned Officer
                     in the US Army Reserve
Authority (discharge):  Paragraph 3-12a, AR 135-178
Date discharge:  5 June 1969
Selective Service Number:
Component:  Army Reserve (Ready)

EPSTEIN, LAWRENCE STEVEN  ER11508618 (SSAN: ████████ ) Pvt E1 ████████
Relieved from:  First US Army Control Group (ROTC) Ft George G. Meade, Md.
                20755
Type discharge:  Honorable - Department of Defense Form 256A
Reason (discharge):  Acceptance of appointment as a Commissioned Officer
                     in the US Army Reserve
Authority (discharge):  Paragraph 3-12a, AR 135-178
Date discharge:  5 June 1969
Selective Service Number:
Component:  Army Reserve (Ready)

BEST AVAILABLE DOCUMENT

00245



#75    14 Nov 78    SC

G-8

UNIT ORDERS NO. 19, ROTC Instr Gp, Pratt Inst, 9 June 1969 (cont)

MARSH, KENNETH EMMETT E211491803 (SSAN: ███████  Pvt E1 ███████

Relieved from: First US Army Control Group (ROTC) Ft George G. Meade, Md.
20755
Type discharge: Honorable — Department of Defense Form 256A
Reason (discharge): Acceptance of appointment as a Commissioned Officer
in the US Army Reserve
Authority (discharge): Paragraph 3-12a, AR 135-178
Date discharge: 5 June 1969
Selective Service Number: 30 27  270
Component: Army Reserve (Ready)

MASH, ELBY MICHAEL E211508647 (SSAN: ███████  Pvt E1 ███████

Relieved from: First US Army Control Group (ROTC) Ft George G. Meade, Md.
20755
Type discharge: Honorable — Department of Defense Form 256A
Reason (discharge): Acceptance of appoint.  as a Commissioned Officer
in the US Army Reserve
Authority (discharge): Paragraph 3-12a, AR 135-178
Date discharge: 5 June 1969
Selective Service Number: 50  18.
Component: Army Reserve (Ready)

PRICE, CYRIL ARTHUR E211508650 (SSAN: ███████  Pvt E1 ███████

Relieved from: First US Army Control Group (ROTC) Ft George G. Meade, Md.
20755
Type discharge: Honorable — Department of Defense Form 256A
Reason (discharge): Acceptance of appointment as a Commissioned Officer
in the US Army Reserve
Authority (discharge): Paragraph 3-12a, AR 135-178
Date discharge: 5 June 1969
Selective Service Number: 50 46  439
Component: Army Reserve (Ready)

SCHOLL, LOUIS E211511122 (SSAN: ███████  Pvt E1 ███████

Relieved from: First US Army Control Group (ROTC) Ft George G. Meade, Md.
20755
Type discharge: Honorable — Department of Defense Form 256A
Reason (discharge): Acceptance of appoint  as a Commissioned Officer
in the US Army Reserve
Authority (discharge): Paragraph 3-12a, AR 135-178
Date discharge: 5 June 1969
Selective Service Number: 30 6 45
Component: Army Reserve (Ready)

STAMO, ANTHONY JOSEPH E211508655 (SSAN: ███████  Pvt E1 ███████

Relieved from: First US Army Control Group (ROTC) Ft George G. Meade, Md.
20755
Type discharge: Honorable — Department of Defense Form 256A
Reason (discharge): Acceptance of appointment as a Commissioned Officer
in the US Army Reserve
Authority (discharge): Paragraph  A, AR 1  78
Date discharge: 5 June 1969
Selective Service Number: 30 7 38 482
Component: Army Reserve (Ready)

DISTRIBUTION:
1 ea Indiv Conc
2 ea Indiv 201-file
1 ea Selective Svc Board Conc
1 ea Records Center
1 ABMAG-CH
2 File

ROBERT S. MILLER
MAJ, Inf
Act g Commander

BEST AVAILABLE DOCUMENT

00246

#75   14 Nov 78   SG

A-2



**DEPARTMENT OF THE ARMY**
HEADQUARTERS, FIRST UNITED STATES ARMY
FORT GEORGE G. MEADE, MARYLAND  20755

AHAAG-CD                                                6 June 1969

SUBJECT: Appointment as a Reserve Commissioned Officer of the Army under
Title 10, United States Code, Sections 591, 593, 2104, 2106,
and 2107

THRU:    PMS
         Pratt Institute                       Branch of service
                                               to which assigned: MI

TO:      Second Lieutenant Lawrence Steven Epstein,

1.  The Secretary of the Army has directed that you be informed that by
direction of the President you are appointed a Reserve commissioned officer
of the United States Army, effective on your acceptance, in the grade and
with service number shown in address above.

2.  This appointment is for an indefinite term.

3.  You are requested to execute and return promptly the inclosed DA Form 71
(Oath of Office—Military Personnel).  Your execution and return of the oath
of office constitutes your acceptance of appointment.  No other evidence
of acceptance is required.  Prompt action is requested since regulations
require cancellation of this tender of appointment if not accepted when
designated by the Professor of Military Science.

4.  Upon receipt of the properly executed oath of office a commission
(DD Form 1A) will be presented to you.  You are assigned to the branch
of the Army Reserve shown above.

5.  After acceptance of this appointment, any change in your permanent
home address of more than 30 days duration will be reported by you to the
custodian of your military personnel records.  Include your full name and
service number in any correspondence concerning your military status.

FOR THE COMMANDER:

1 Incl                                      S. F. TOMASEK
DA Form 71                                  CPT, AGC
                                            Asst AG
Copies furnished:
  TAG, ATTN:
  TAG, ATTN: OCSPER
  CO, USAAC
  PMS, indicated
  Field 201 file              Date of acceptance _____ 6 June 1969
  1A File

AHAAG-CD, FL 9
(13-68)

00247

#75    14 Nov 78    SC

G-10

THIS PAGE NOT TO BE COMPLETED BY APPLICANT

**RECOMMENDATION FOR APPOINTMENT OF ROTC GRADUATE AS A RESERVE COMMISSIONED OFFICER OF THE ARMY (AR 145-300)**

FROM: (Name and Address of Institution)
PRATT INSTITUTE
BROOKLYN, NY 11205

TO: (Appropriate Major Commander)
Commanding General, First US Army
Ft George G. Meade, Md. 20755

**PART I (TO BE COMPLETED BY PMS ONLY)**

a. APPLICANT WILL HAVE SUCCESSFULLY COMPLETED AT THIS INSTITUTION THE PRESCRIBED COURSE FOR THE UNIT ON
6 June 1969
(Date)

b. APPLICANT [X] HAS COMPLETED SUCCESSFULLY THE REQUIRED CAMP TRAINING, OR APPLICANT [ ] HAS NOT ATTENDED THE REQUIRED CAMP TRAINING.

c. [X] APPLICANT WILL HAVE ATTAINED A BACCALAUREATE UPON SUCCESSFUL COMPLETION OF ROTC COURSE; OR
[ ] APPLICANT WILL BE OR HAS BEEN GRANTED WAIVER OF REQUIREMENT OF A BACCALAUREATE.

d. I CONSIDER APPLICANT PHYSICALLY, MENTALLY, MORALLY, AND PROFESSIONALLY QUALIFIED FOR APPOINTMENT AS A RESERVE COMMISSIONED OFFICER OF THE ARMY AND RECOMMEND HIS APPOINTMENT.

DATE: 4 Nov 68

BRANCH FOR ASSIGNMENT: Artillery

SIGNATURE AND GRADE (PMS): *Donald R. Miller*

**PART II (TO BE COMPLETED BY PRESIDENT OR DEAN OF INSTITUTION)**

I CONSIDER APPLICANT PROFESSIONALLY QUALIFIED AND RECOMMEND HIS APPOINTMENT AS A RESERVE COMMISSIONED OFFICER OF THE ARMY.

DATE: 8 Nov 68

TYPED NAME AND TITLE:
LOUIS D. SASS, V.P. ACAD AFF
FOR
JAMES B. DONOVAN, PRES.

SIGNATURE: *Louis D. Sass*

**1ST INDORSEMENT**

TO: Commanding General, First US Army
Ft George G. Meade, Md. 20755

DATE: 10 November 1968

1. I have known this applicant for 13 months. He has served under me for 13 months. His principal duty is student.

2. I [X] do [ ] do not recommend the applicant.

3. Remarks (Include your opinion as to his ability and value to the service)
Cadet is capable of developing into an outstanding officer with further training.

INCLOSURES: 6 Incl

SIGNATURE: *Donald R. Miller*

ORGANIZATION
US ARMY ROTC INSTRUCTOR GROUP, SE DIV
PRATT INSTITUTE, BROOKLYN, NY 11205

TYPED NAME AND GRADE OR TITLE:
DONAL R. MILLER
LTC, Arty
PMS

**2D INDORSEMENT**

TO:

DATE:

1. I have known this applicant for ____ months. He has served under me for ____ months. 2. I [ ] do [ ] do not recommend the applicant. 3. Remarks (Include your opinion as to his ability and value to the service)

INCLOSURES:

SIGNATURE:

ORGANIZATION:

TYPED NAME AND GRADE OR TITLE:

#75   14 Nov 78   SE

G-11

**27.**

**a. TRAINING**

**APPLICANTS FOR MEDICAL AND DENTAL CORPS ONLY**

| LEVEL | TYPE | NAME AND LOCATION OF HOSPITAL | MONTH AND YEAR | |
|---|---|---|---|---|
| | | | FROM | TO |
| INTERNSHIP | | | | |
| RESIDENCY TNG | | | | |
| SPECIALTY TNG | | | | |

**b.**

| | SPECIALTY BOARDS | DATES OF CERTIFICATION |
|---|---|---|
| | | |

**c. PLACE IN WHICH CURRENTLY LICENSED**

**28.**    **APPLICANTS FOR ARMY NURSE CORPS AND ARMY MEDICAL SPECIALIST CORPS ONLY**

**a. NAME OF NURSING OR ACCREDITED PROFESSIONAL SCHOOL    b. LOCATION**

**b. DATES OF ATTENDANCE    c. STATE AND NUMBER OF CURRENT REGISTRATION    d. STATE AND DATE (Day, month and year) OF INITIAL REGISTRATION**

**c.    POSTGRADUATE COURSES (Include courses at general hospitals, service schools, and short courses)**

| SUBJECT OR COURSE | NAME AND LOCATION OF SCHOOL OR HOSPITAL | SEMESTER CREDITS EARNED | DATES OF ATTENDANCE |
|---|---|---|---|
| | | | |
| | | | |

**29. HAVE YOU BEEN EMPLOYED BY THE US ARMY AS A DIETITIAN, OCCUPATIONAL OR PHYSICAL THERAPIST? (If yes, give dates)**
☐ YES   ☒ NO

**30.**    **ARMY ROTC (To be completed by prospective ROTC graduates applying for appointment in USAR or RA)**

**a.    SUCCESSFULLY COMPLETED AROTC PROGRAM AS FOLLOWS**

| COURSE | FROM (Month and Year) | TO (Month and Year) | | CAMP TRAINING | |
|---|---|---|---|---|---|
| (1) BASIC | **Basic Camp**<br>**18 June 1967** | **29 July 1967**<br>**Ft Benning, Ga.** | CAMP<br>**ICMR** | LOCATION<br>**Annville, Pa.** | |
| (2) ADVANCED | **September 1967** | **June 1969** | FROM (Day, month, year)<br>**15 June 1968** | TO (Day, month, year)<br>**29 July 1968** | |

**b.**    **ARMY ROTC FLIGHT TRAINING PROGRAM**

| (1) PRESENTLY ENROLLED | (2) SUCCESSFULLY COMPLETED (If yes, complete following) | (a) NUMBER HOURS FLYING TIME COMPLETED |
|---|---|---|
| ☐ YES   ☐ NO | ☐ YES   ☐ NO | (b) INCLUSIVE DATES OF TRAINING |
| | | (c) FAA PILOT'S LICENSE RECEIVED  ☐ YES  ☐ NO |

**c. ENLISTED MEMBERS OF THE ARMY RESERVE INDICATE CURRENT STATUS IN ITEM 18 AND COMPLETE THE FOLLOWING AS APPLICABLE.**

(1) CURRENT ENLISTMENT IN ARMY RESERVE EXPIRES _____ OR (2) TRANSFERRED TO ARMY RESERVE ON _____ (Date) AS A ☐ 5-YR ☐ 6-YR OBLIGOR (AR 135-230) UNDER THE PROVISIONS OF THE UNIVERSAL MILITARY TRAINING AND SERVICE ACT, AS AMENDED.

**31.**

**a. NAME AND ADDRESS OF EMPLOYER**    **MAIN CIVILIAN EMPLOYMENT**    **b. JOB TITLE**

**Associated Muscisians of NY**
**261 W. 52d St NY, NY 10019**

**Musician Sideman**

| | c. TOTAL EXPERIENCE | |
|---|---|---|
| | FROM (Month and year) | TO (Month and year) |
| | **April 1965** | **Present** |

**d. PRINCIPAL DUTIES (Describe briefly)**
**Musician, excee**

**32. REMARKS (Experience, proficiencies and special abilities not shown elsewhere in this application. If additional space is required attach additional sheet)**
**SSAN:**
**Speech Honor Society - Vice Pres.**

**33.**
THE INFORMATION CONTAINED HEREIN IS TRUE TO THE BEST OF MY KNOWLEDGE AND BELIEF.

DATE **15 Oct 68**    SIGNATURE OF APPLICANT  *Lawrence Steven Epstein*

#75 : 14 Nov 78    SE

G-12

| 17. ARE YOU NOW, OR HAVE YOU EVER BEEN A CONSCIENTIOUS OBJECTOR? | ☐ YES | ☒ NO |
|---|---|---|

**18.** ACTIVE MILITARY SERVICE (Indicate tour with each service separately)

| | ORGANIZATION (US Armed Forces, USCG, Coast and Geodetic Survey, US Public Health Service) | BRANCH OF SVC | SERVICE NUMBER | HIGHEST GRADE AND COMPONENT | DATES (Day, Month and Year) FROM | TO |
|---|---|---|---|---|---|---|
| ENLISTED | N/A | | | | | |
| WARRANT OFFICER | N/A | | | | | |
| COMMISSIONED | N/A | | | | | |

| CURRENT ACTIVE DUTY TOUR TERMINATES | | DATE OF LAST AUS PROMOTION | |
|---|---|---|---|

**19.** RESERVE OR NATIONAL GUARD SERVICE (Not on active duty)

| | ORGANIZATION (US Armed Forces, USCG, Coast and Geodetic Survey, US Public Health Service) | BRANCH OF SVC | SERVICE NUMBER | HIGHEST GRADE AND COMPONENT | DATES (Day, Month and Year) FROM | TO |
|---|---|---|---|---|---|---|
| ENLISTED | USAR (Advanced ROTC) | | ER 11508638 | E-1 | Sep 67 | Present |
| WARRANT OFFICER | | | | | | |
| COMMISSIONED | | | | | | |

**20.** SOURCE OF CURRENT COMMISSION (If applicable)

USCG: ☐ OCS  ☐ DIRECT APPOINTMENT    N/A

USAR: ☐ ROTC  ☐ OCS  ☐ DIRECT APPOINTMENT

**21.** AWARDS (Do not list theater or service medals)

| 22. HAVE YOU EVER APPLIED AND NOT BEEN SELECTED FOR ROTC? ☐ YES ☒ NO; OCS ☐ YES ☒ NO | | | | | |
|---|---|---|---|---|---|
| APPOINTMENT IN RESERVE COMPONENT | YES | NO | APPOINTMENT IN REGULAR ARMY | YES | NO |
| AS A WARRANT OFFICER | | ☒ | AS A WARRANT OFFICER | | ☒ |
| AS A COMMISSIONED OFFICER | | ☒ | AS A COMMISSIONED OFFICER | | ☒ |
| IF ANSWER IS "YES" EXPLAIN FULLY | | | | | |

**23.** ARE YOU NOW OR HAVE YOU EVER BEEN IN THE MILITARY SERVICE OF OR BEEN EMPLOYED BY A FOREIGN GOVERNMENT? (If yes, give dates, country and type of service or employment)
☐ YES  ☒ NO

**24.** HAVE YOU EVER BEEN RECLASSIFIED, DISCHARGED OR ASKED TO RESIGN, FURLOUGHED (other than regular furlough or leave) OR PLACED ON INACTIVE STATUS WHILE SERVING IN THE US ARMED FORCES OR IN ANY POSITION OF PRIVATE OR GOVERNMENT EMPLOYMENT? (If yes, state circumstances. If necessary, continue under Remarks or attach separate sheet)
☐ YES  ☒ NO

**25.**

APPLICANTS FOR JUDGE ADVOCATE GENERAL'S CORPS ONLY

BARS OF WHICH YOU ARE A MEMBER (Specify dates)

**26.** APPLICANTS FOR CHAPLAINS BRANCH ONLY

RELIGIOUS DENOMINATION BY WHICH YOU WILL BE INDORSED.

2

00250

#75    14 Nov 78    SC

C-13

## APPLICATION FOR APPOINTMENT
(AR 140-100 and AR 601-100)

| TYPE OF APPOINT    FOR WHICH APPLICATION IS SUBMITTED | GOVERNING REGULATION OR CIRCULAR (Specify applicable sections) |
|---|---|
| | AR 145-100 |
| COMMISSIONED OFFICER - REGULAR ARMY | GRADE FOR WHICH APPLYING (Reserve appointments only) |
| X    COMMISSIONED OFFICER - ARMY RESERVE | Second Lieutenant |
| WARRANT OFFICER - REGULAR ARMY | |
| WARRANT OFFICER - ARMY RESERVE | APPLICANTS FOR REGULAR ARMY NSC AND WARRANT OFFICER. |
| OFFICER CANDIDATE SCHOOL | LIST CHOICE BY MOS CODE AND TITLE. |

BRANCH:  PREFERENCES (Commission Only)

| | MOS CODE | MOS TITLE |
|---|---|---|

REGULAR ARMY: Enter 1st, 2d, 3d choice, in branches other than CA or SS.
OFFICER CANDIDATES: Enter ONLY 1st and 2d choice.
RESERVE: b. If applying for a specific vacancy enter ONLY branch of vacant position. Others may indicate more than one choice. b. ROTC graduates - To be checked only by applicants for assignment to AIS.

| 2 | AGC | |
| 1 | AIS | |
| | AMSC | |
| | ANC | |
| 3 | ARMOR | |
| | ARTY | |

05279130

## PERSONAL DATA

| 1. LAST NAME - FIRST NAME - MIDDLE NAME (Explain variations from birth certificate in Item 33) | 3. GRADE | 4. SERVICE NUMBER 5. SELECTIVE SERVICE NUMBER |
|---|---|---|
| EPSTEIN, Lawrence Steven | Cadet | |

| 6. BRANCH (MOS if R/O) 7. TOTAL YEARS MARITAL ACTIVE SERVICE STATUS | 8. NUMBER OF DEPENDENTS UNDER 18 YEARS OF AGE (Fresh applicants only) | 9. DATE OF BIRTH |
|---|---|---|
| Single | | |

| 10. PLACE OF BIRTH (City, County, and State) | 11. COMPLETE MILITARY ADDRESS (If presently on active duty) |
|---|---|
| Brooklyn, Kings, NY | |

| 12. PERMANENT ADDRESS | |
|---|---|
| | TELEPHONE NUMBER   N/A |

| 13. US CITIZEN | b. NATIVE | b. IF NATURALIZED CERTIFICATE NUMBER | c. IF DERIVED, APPLICANT'S CERTIFICATE NUMBER | d. DATE, PLACE AND COURT |
|---|---|---|---|---|
| ☒ YES ☐ NO | ☐ YES ☐ NO | | | |

## 13. CIVILIAN EDUCATION (See Items 35 through 38 for additional requirements for professional personnel)

| a. HIGH SCHOOL GRADUATE | b. NAME AND LOCATION OF HIGH SCHOOL |
|---|---|
| ☒ YES ☐ NO | New Utrecht HS Brooklyn, NY |

| c. NAME AND LOCATION OF COLLEGE OR UNIVERSITY (Include USMA, USNA and USAFA) | DEGREE | SEMESTER CREDITS EARNED | YEARS ATTENDED | GRADUATED OR WILL GRADUATE | | | MAJOR SUBJECTS |
|---|---|---|---|---|---|---|---|
| | | | | DAY | MONTH | YEAR | |
| Long Island University, Brooklyn, NY | BA | 96 | 3 | 9 | 10 | 69 | Speech Poli-Sci |

| 14. SPECIAL EDUCATIONAL HONORS, SCHOLARSHIPS, ETC. | 15. (IF YOU HAVE EVER BEEN EXPELLED FROM SCHOOL, OR PLACED ON PROBATION, EITHER FOR ACADEMIC OR DISCIPLINARY REASONS, EXPLAIN) |
|---|---|
| N/A | NO |

## 16. SERVICE SCHOOLS ATTENDED

| NAME OF SCHOOL | COURSE | DATES (Month and Year) | | COMPLETED | | IF NOT COMPLETED, GIVE REASON |
|---|---|---|---|---|---|---|
| | | FROM | TO | YES | NO | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |

| 17. FOREIGN LANGUAGES AND DEGREE OF PROFICIENCY |
|---|
| None |

18. HAVE YOU EVER UNDER EITHER MILITARY OR CIVILIAN LAW BEEN INDICTED OR SUMMONED IN TO COURT AS A DEFENDANT IN A CRIMINAL PROCEEDING (including any proceedings involving juvenile offenses and any court-martial) REGARDLESS OF THE RESULT OF TRIAL, OR CONVICTED, FINED, IMPRISONED, PLACED ON PROBATION, PAROLED OR PARDONED OR HAVE YOU EVER BEEN ORDERED TO DEPOSIT BAIL OR COLLATERAL FOR THE VIOLATION OF ANY LAW, POLICE REGULATION OR ORDINANCE (Exclude traffic violations involving a fine or forfeiture of $30 or less. ALSO, exclude action taken under Article 15 or 104 or Article 15, UCMJ.)  ☐ YES ☒ NO. IF SO, LIST THE DATE, THE NATURE OF EACH ALLEGED OFFENSE OR VIOLATION, THE NAME AND LOCATION OF THE COURT OR PLACE OF HEARING, AND THE PENALTY IMPOSED OR OTHER DISPOSITION OF EACH CASE AND FURNISH COPY OF COURT ACTION OR DETAILED STATEMENT IN AFFIDAVIT FORM AS TO THE OUTCOME OF EACH CASE.

**DA FORM 61** MAR 66    PREVIOUS EDITIONS OF THIS FORM ARE OBSOLETE.

00251

#75    14 Nov 78    SE

PRATT                                ROTC.    A 3

## OATH OF OFFICE - MILITARY PERSONNEL
### (AR 135-100)

INDICATE THE APPOINTMENT FOR WHICH OATH IS BEING EXECUTED BY PLACING AN "X" IN APPROPRIATE BOX. REGULAR ARMY COMMISSIONED OFFICERS WILL ALSO SPECIFY THE BRANCH OF APPOINTMENT WHEN APPOINTED IN A SPECIAL BRANCH.
*(See Instructions Below)*

| COMMISSIONED OFFICERS | WARRANT OFFICERS |
|---|---|
| ☐ REGULAR ARMY _____ (Branch, when so appointed) | ☐ REGULAR ARMY |
| ☐ ARMY OF THE UNITED STATES, WITHOUT COMPONENT | ☐ ARMY OF THE UNITED STATES, WITHOUT COMPONENT |
| ☒ RESERVE COMMISSIONED OFFICER | ☐ RESERVE WARRANT OFFICER |

I, **Lawrence Steven Epstein**
(First Name - Middle Name - Last Name)                         (Service Number)

having been appointed an officer in the Army of the United States, as indicated above in the grade of **Second Lieutenant** do solemnly swear (or affirm) that I will support and defend the Constitution of the United States against all enemies, foreign and domestic, that I will bear true faith and allegiance to the same; that I take this obligation freely, without any mental reservation or purpose of evasion; and that I will well and faithfully discharge the duties of the office upon which I am about to enter; SO HELP ME GOD.

**DD Form 1A (Commission)**
issued **6 June 1969**
(date)                                            *Lawrence Steve Epstein*
                                                 (Signature - full name no abbreviations)

SWORN TO AND SUBSCRIBED BEFORE ME AT **PRATT INSTITUTE, BROOKLYN, NY**

THIS **SIXTH** DAY OF **JUNE**, 19 **69**

**LTC, AT, PROFESSOR OF MILITARY SCIENCE**
(Grade, component, or office of official administering oath)                         (Signature)

## INSTRUCTIONS

This form will be executed upon acceptance of appointment as an officer in the Army of the United States at top of form. Immediately upon receipt of notice of appointment, the appointee will, in case of acceptance of the appointment, return to the agency from which received, the oath of office (on this form) properly filled in, subscribed and entered. In case of non-acceptance, the notice of appointment will be returned to the agency from which received, (by letter) indicating the fact of non-acceptance.

### FOR THE EXECUTION OF THE OATH OF OFFICE

1. Whenever any person is elected or appointed to an office of honor or trust under the Government of the United States, he is required before entering upon the duties of his office, to take and subscribe the oath prescribed by Section 1757, Revised Statutes, (5 U.S.C. 16, M.L. 1949, Section 118).

2. 10 U.S.C. 3394 eliminates the necessity of executing oath on promotion of officers.

3. The oath of office may be taken before any commissioned officer of any component of any Armed Force, whether or not on active duty (10 U.S.C. 1031), or before any warrant officer serving on active duty as an adjutant,

assistant adjutant, acting adjutant, or personnel adjutant in any of the Armed Forces (See UCMJ, Article 136; 10 U.S.C. 936). A warrant officer administering the oath of office will show his title in the block to the left of his signature.

4. Oath of office may also be taken before any civil officer who is authorized by the laws of the United States or by the local municipal law to administer oaths; and if so administered by a civil official, the oath must bear the official seal of the person administering the oath, or if a seal is not used by the official, the official's capacity to administer oaths must be certified to under seal by a clerk of court or other proper local official.

**DA FORM 71** 1 AUG 59                         PREVIOUS EDITIONS OF THIS FORM ARE OBSOLETE.                  * U.S. GOVERNMENT PRINTING OFFICE : 1959 O—515160

00252

# PERSONNEL QUALIFICATION RECORD — PART II

## SECTION I – IDENTIFICATION DATA

1. NAME: EPSTEIN LAWRENCE STEVEN
2. SSN:

## SECTION II – CLASSIFICATION AND ASSIGNMENT DATA

### MOS EVALUATION SCORES

| MOSC | YR & MO | SCORE | YR & MO | SCORE | YR & MO | SCORE | □ CONT |
|------|---------|-------|---------|-------|---------|-------|--------|

4. ASSIGNMENT CONSIDERATIONS

### 5. OVERSEA SERVICE

| FROM | THRU | AREA AND COUNTRY | NO | TYPE | RTC | DEPN ARR OS | □ CONT |
|------|------|------------------|-----|------|-----|-------------|--------|

## SECTION II – CLASSIFICATION AND ASSIGNMENT DATA (Continued)

### 6. MILITARY OCCUPATIONAL SPECIALTIES

| | MOSC | TITLE | | DATE | □ CONT |
|--|------|-------|--|------|--------|
| 6. | 9205/0 | | | 700710 | |
| (P) | 36A0 | CI Officer | | | |
| (b) | 36B00 | AREA INTEL OFF | | | |

### 7. AVIATION ASI & GUNNERY QUALIFICATION  □ CONT

| AIRCRAFT | INSTR PILOT | GUNNERY SYSTEM | |
|----------|-------------|----------------|--|
| F/W  R/W | F/W | R/W | INSTR |

### 9. AWARDS, DECORATIONS & CAMPAIGNS  □ CONT

NDSM/ARCAM/AFRM/ARCAM w/OGC (810310)
OSR/

### 11. AMERICAN BOARD CERTIFICATION & LICENSES OR CERTIFICATES HELD  □ CONT

RIFLE M16: SES QUAL BAD 800517

### 8. APTITUDE AREA SCORES  □ CONT

| AREA | SCORE | AREA | SCORE |
|------|-------|------|-------|
| | | | 700716 |

### 10. OTHER TESTS  □ CONT

| TEST | SCORE | DATE |
|------|-------|------|
| DATE | | |
| PLACE | | |
| MDB- | | |
| OCT | | |
| DLAT | 1 | 700113 |
| OQI-1 | 22 | |
| FAST- | | |
| OB | | |
| WOCB | | |

### 12. LANGUAGE PROFICIENCY

| | DATE |
|--|------|
| DA FORM 330 SUBMITTED | |

DA FORM 2-1  1 JAN 73

00253

## SECTION VII – CURRENT AND PREVIOUS ASSIGNMENTS
### RECORD OF ASSIGNMENTS

| EFFECTIVE DATE | DUTY MOSC | PRINCIPAL DUTY | ORGANIZATION AND STATION OR OVERSEA COUNTRY | NON-RATED DAYS NR YR/MO | NON-RATED DAYS SP YR/MO | TYPE REPORT |
|---|---|---|---|---|---|---|
| 690606 | | Com MI-USAR (Sr ROTC) | | | | |
| | | RES 690606-691203 2LT MI, AD 691204-730416 Special Agent AD mos 1LT MI; RES 730417-770304 CI Agent 47 mos CPT MI | | | | |
| 770305 | 36B00 | MI Area Intel Off (USAR-Ready) | Co C 826th MI Bn Bronx NY | | | 67-7 |
| 780305 | 36B00 | MI Area Intel Off (USAR-Ready) | Co C 826th MI Bn Bronx NY | | | 67-7 |
| 790305 | 36B00 | MI Area Intel Off (USAR-Ready) | Co C 826th MI Bn Bronx NY | | | 67-7 |
| 800305 | 36B00 | MI Area Intel Off (USAR-Ready) | Co C 826th MI Bn Bronx NY | | | 67-7 |
| 800916 | 36B00 | MI Area Intel Off (USAR-Ready)(Unit Redesig) | 339th MI Co Bronx NY | | | - - |
| 810305 | 36B00 | MI Area Intel Off (USAR-Ready) | 339th MI Co Bronx NY | | | 67-7 |
| 820305 | 36B00 | MI Area Intel Off (USAR-Ready) | 339th MI Co Bronx NY | | | 67-8 |

## SECTION II – CLASSIFICATION AND ASSIGNMENT DATA (Continued)

### 13 PILOT RATINGS

| ORIGINAL | DATE | CURRENT | DATE | CONT |
|---|---|---|---|---|

### 14 FLYING STATUS

### INSTRUMENT CERTIFICATION

### 15 INTERNSHIPS, RESIDENCIES AND FELLOWSHIPS

| HOSPITAL | TYPE OR SERVICE | MONTHS | YEAR | CONT |
|---|---|---|---|---|

### 16 HOSPITAL/TEACHING APPOINTMENTS AND PRIVATE PRACTICE

| FROM | THRU | INSTITUTION/LOCATION | TYPE | DURAT | CONT |
|---|---|---|---|---|---|

### 17. CIVILIAN EDUCATION AND MILITARY SCHOOLS

| SCHOOL | MAJOR/COURSE/MOSC | DURAT | COMP | TYPE | YEAR | CONT |
|---|---|---|---|---|---|---|
| New Utrecht HS | General | 4 Yrs | Dipl | | 1965 | |
| Long Island Univ | Speech-Theater | 4 Yrs | BA | | 1969 | |
| Pratt Institute | Mil Science | 2 Yrs | Yes | | 1969 | |
| USA Armor Sch | AOB #11(1203) | 9 wks | Yes | | 1970 | |
| USATCS | IntelReschOff | 15 wks | Yes | | 1970 | |
| LaSalle Univ (Ext) | Club Mgmt | 2 Yrs | Yes | | 1976 | |
| 1AATS | Tech Intel | 2 wks | Yes | | 1977 | |
| 6AATS | MIOAC Ph IV | 2 wks | Yes | | 1977 | |
| 6AATS | Tac CI Trans | 2 wks | Yes | | 1978 | |
| 1AATS | TISO Ph I | 2 wks | Yes | | 1979 | |
| 1AATS | Area Intel Phi | 2 wks | Yes | | 1979 | |
| Brooklyn Coll | Fine Arts | 2 Yrs | MFA | | 1979 | |
| TRSCOM | AreaStudOfGrs | 16wks | Yes | | 1981 | |

## SECTION III – SERVICE, TRAINING AND OTHER DATES

### 18. APPOINTMENTS AND REDUCTIONS

| GRADE | COMP | EFFECTIVE DATE | DATE OF ELIG/RANK |
|---|---|---|---|
| 2LT | USAR | 690606 | |
| 2LT | RCS | 691204 | |
| 1LT | ATS | 701204 | |
| 1LT | USAR | 710603 | |
| CPT | USAR | 750603 | |

### 19 SPECIALIZED TRAINING

| SUBJECT | DATE | CONT |
|---|---|---|
| ATP 21-114 (BCT) | | |
| Geneva-Hague Conventions | | |
| Military Justice | 710903 | |
| Benefits of Honorable Discharge | | |
| Honor & Ret | 761212 | |

### 20 BASIC ENLISTED SERVICE

DATE (BESD)

### 21 TIME LOST (See 972, Time 10, USC)

| FROM | THRU | DAYS | REASON | CONT |
|---|---|---|---|---|

## SECTION IV – PERSONAL AND FAMILY DATA

### 22. PHYSICAL STATUS

| HEIGHT | WEIGHT | GLASSES |
|---|---|---|
| 71 | 175 | ☒ yes ☐ no |

DATE OF EXAM 82.0116

### 23. PLACE OF BIRTH AND CITIZENSHIP

SELF: New York NY
SPOUSE: CITIZENSHIP OF SPOUSE

### 24. NUMBER OF DEPENDENTS

| ADULT | CHILDREN |
|---|---|
| 1 | 0 |

### 25. HOME OF RECORD/ADDRESS

HOR: Kintersville PA

### 26. CIVILIAN OCCUPATION

| JOB TITLE: | CRITICAL OCCUPATION | NO. MONTHS EMPLOYED | MOSC |
|---|---|---|---|
| DOT CODE: | ☐ YES  ☐ NO | | |

DUTIES PERFORMED

EMPLOYER

– Fold Here –

630606

SECTION V — MISCELLANEOUS

**27 REMARKS**

TOTAL OFF FED SVC  12  YRS  //  MO  04  DAS  920510

FEED: 690606

| ITEM CONTINUATION | |
|---|---|
| 28 | |
| ITEM NO. | DATA |

REPORT OF CHANGES

DATE DA FORM 20B PREPARED:

DATE DUPLICATE DA FORM 2-1 SUBMITTED:

**SECTION IX — RESERVE COMPONENT DATA**

32a. READY RESERVE OBLIGATION EXPIRATION DATE:  920730

b. DA FORM 3725 OR 3726-1 AGREEMENT EXPIRATION DATE:

c. SERVICE OBLIGATION EXPIRATION DATE:  970730

d. MANDATORY REMOVAL FROM ACTIVE STATUS:

e. RETIREMENT YEAR ENDING DATE:  0603

| 33. | DATE | 14. SIGNATURE |
|---|---|---|
| PREPARED | 820510 | |
| REVIEWED | | |

**Personnel—General**

# Army Command Policy

**Headquarters**
**Department of the Army**
**Washington, DC**
**30 March 1988**

Headquarters
Department of the Army
Washington, DC
30 March 1988

***Army Regulation 600–20**

**Effective 29 April 1988**

Personnel—General

# Army Command Policy

This UPDATE printing publishes a revision that is effective 29 April 1988. Because the structure of the entire revised text has been reorganized, no attempt has been made to highlight changes from the earlier regulation dated 20 August 1986.

By Order of the Secretary of the Army:

CARL E. VUONO
*General, United States Army*
*Chief of Staff*

Official:

R. L. DILWORTH
*Brigadier General, United States Army*
*The Adjutant General*

**Summary.** This regulation is a consolidation of several regulations that prescribe policy on basic responsibilities of command, military discipline and conduct, and enlisted aspects of command. It defines the responsibilities of noncommissioned officers and provides guidance on other inherent responsibilities of command. It provides guidance on and responsibilities for the Army Equal Opportunity (EO) Program to include minimum EO staffing and training requirements. It implements DOD Directives 1000.7, 1300.17, 1354.1, and 1325.6.

**Applicability.** This regulation applies to the Active Army, the Army National Guard (ARNG), and the U.S. Army Reserve (USAR) as modified by National Guard Regulations 600–4 and 600–21.

**Impact on New Manning System.** This regulation does not contain information that affects the New Manning System.

**Internal control systems.** This regulation is not subject to the requirements of AR 11–2. It does not contain internal control provisions.

**Committee establishment approval.** The DA Committee Management Officer concurs in the establishment of the Committee for Review of Accommodation of Religious Practices within the U.S. Army.

**Supplementation.** Supplementation of this regulation (except chap 6) and establishment of command and local forms are prohibited without prior approval from HQDA (DAPE–MPH), WASH DC 20310–0300. Supplementation of chapter 6 is permitted at major Army command level. A draft copy of each supplement must be provided to HQDA (DAPE–MPH), WASH DC 20310–0300, for approval before publication.

**Interim changes.** Interim changes to this regulation are not official unless they are authenticated by The Adjutant General. Users will destroy interim changes on their expiration dates unless sooner superseded or rescinded.

**Suggested improvements.** The proponent agency of this regulation is the Office of the Deputy Chief of Staff for Personnel. Users are invited to send comments and suggested improvements on DA Form 2028 (Recommended Changes to Publications and Blank Forms) directly to HQDA (DAPE–MPH), WASH DC 20310–0300.

**Distribution.** Distribution of this publication is made in accordance with DA Form 12–9A–R requirements for 600 series publications. The number of copies distributed to a given subscriber is the number of copies requested in Blocks 382, 383, 384, 385, and 386 of the subscriber's DA Form 12–9A–R. AR 600–20 distribution is A, B, C, D, and E for the Active Army, the ARNG, and the USAR. Existing account quantities will be adjusted and new account quantities will be established upon receipt of a signed DA Form 12–9U–R (Subscription for Army UPDATE Publications Requirements) from the publications account holder.

## Contents (Listed by paragraph number)

**Chapter 1**
**Introduction**
Purpose • 1–1
References • 1–2
Explanation of abbreviations and terms • 1–3
Responsibilities • 1–4
Command • 1–5
Military rank • 1–6
Precedence between members of the Army and other Services serving with the Army • 1–7
Precedence between foreign service officers of the Department of State and officers of the Army • 1–8

Precedence between members of the Army and members of foreign military services serving with the Army • 1–9

**Chapter 2**
**Command Policies**
Chain of command • 2–1
Staff or technical channels • 2–2
Command of installations, activities, and units • 2–3
Specialty immaterial commands • 2–4
Designation of junior in the same grade to command • 2–5
Death, disability, retirement, reassignment, or absence of the commander • 2–6
Absence or disability of all officers of a unit • 2–7
Emergency command • 2–8

Functions of an individual in temporary command • 2–9
Responsibility of successor • 2–10
Separate commands of the U.S. Army serving together • 2–11
Separate commands of the several military services of the United States serving together • 2–12
Ineligibility for command of post or activity • 2–13
Restrictions • 2–14
Relief for cause • 2–15

**Chapter 3**
**Enlisted Aspects of Command**
Delegation of authority • 3–1
Noncommissioned officer support channel • 3–2

*This regulation supersedes AR 600–20, 20 August 1986; AR 600–21, 30 April 1985; AR 600–80, 3 January 1978; and HQDA LTR 600–87–1, 30 October 1987.

Contents—Continued

Precedence of relative rank • 3–3
Date of rank (DOR), enlisted
soldiers • 3–4

**Chapter 4**
**Military Discipline and Conduct**
Military discipline • 4–1
Obedience to orders • 4–2
Military courtesy • 4–3
Soldier conduct • 4–4
Maintenance of order • 4–5
Exercising military authority • 4–6
Disciplinary powers of the commanding
officer • 4–7
Settlement of local accounts on change of
station • 4–8
Civil status of members of the Reserve
Components • 4–9
Participation in support of civilian law
enforcement agencies • 4–10
Membership campaigns • 4–11
Extremist organizations • 4–12
Army language policy • 4–13
Relationships between soldiers of different
rank • 4–14
Trainee and soldier relationships • 4–15
Fraternization • 4–16
Standards of conduct • 4–17

**Chapter 5**
**Other Responsibilities of Command**
General • 5–1
Congressional activities • 5–2
Political activities • 5–3
Command aspects of medical care • 5–4
Pregnancy and family care
counseling • 5–5
Accommodating religious practices • 5–6
Prohibition of military labor unions • 5–7
Complaints or accusations against military
personnel • 5–8
On-post distribution of non-Government
printed materials • 5–9

**Chapter 6**
**Equal Opportunity Program in the
Army**
Concept • 6–1
Responsibilities • 6–2
Equal opportunity policy • 6–3
Sexual harassment • 6–4
Chain of command responsibilities • 6–5
Staffing • 6–6
Off-post activities, on-post activities, and
off-limits actions • 6–7
Procedures for processing
complaints • 6–8
Housing complaints • 6–9
Evaluation report entries • 6–10
Civilian schooling • 6–11
Legal assistance • 6–12
Affirmative Action Plans • 6–13
Training • 6–14
Authority to collect and maintain
data • 6–15
Narrative and statistical report on equal
opportunity progress (RCS
CSGPA–1471) • 6–16

Attendance at the Defense Equal
Opportunity Management Institute for
soldiers • 6–17
Selection requirements for soldiers • 6–18
Training for civilian duty positions in the
Military Equal Opportunity Program at
the Defense Equal Opportunity
Management Institute • 6–19
Equal opportunity special/ethnic
observances • 6–20

**Appendixes**

**A.** References

**B.** Examples of Types of Political Activity
Permitted or Prohibited

**C.** Statutory Prohibitions Pertaining to
Political Activity by Members of the
Armed Forces

**Glossary**

# Chapter 1
## Introduction

### 1-1. Purpose
This regulation prescribes the policies and responsibilities of command. It provides guidance covering military discipline and conduct, precedence of rank, and the military Equal Opportunity (EO) Program.

### 1-2. References
Required and related publications and prescribed and referenced forms are listed in appendix A.

### 1-3. Explanation of abbreviations and terms
Abbreviations and special terms used in this regulation are listed in the glossary.

### 1-4. Responsibilities
*a.* The Deputy Chief of Staff for Personnel (DCSPER) has Army General Staff responsibilities for the formulation, management, and evaluation of command policies, plans, and programs that relate to the following:

(1) Personnel distribution, to include grade and specialties.

(2) Assessment of human readiness.

(3) Discipline, law enforcement, correction, and apprehension.

(4) Leadership development.

(5) Professional military ethics.

(6) Accommodation of religious practices.

(7) Military equal opportunity.

(8) Military labor unions.

*b.* Commanders at all levels are responsible for implementing and enforcing the policies addressed by this regulation.

### 1-5. Command
*a. Right to command.* Command is exercised by virtue of office and the special assignment of members of the Armed Forces holding military rank who are eligible to exercise command. The right to command is not limited solely by branch of Service except as set forth in chapter 2. A civilian, other than the President as Commander-in-Chief, may not exercise command. However, a civilian may be designated to exercise general supervision over an Army installation or activity under the command of a military superior.

*b. Elements of command.* The key elements of command are authority and responsibility. Formal authority for command is derived from the policies, procedures, and precedents presented in chapters 1 through 3 of this regulation. The specified and inherent responsibilities of command are discussed in chapters 4 through 6.

*c. Assignment and command.* Soldiers are assigned to stations where their services are required. The commanding officer then assigns appropriate duties. Without orders from proper authority, a soldier may only assume command when eligible according to chapter 2 of this regulation.

### 1-6. Military rank
*a.* Military rank is the relative position or degree of precedence granted military persons marking their station in military life. It confers eligibility to exercise command or authority in the military within limits prescribed by law. Rank in the military is divided into the classes and grades shown in tables 1-1 and 1-2.

*b.* Table 1-1 shows the grades of rank in the Army in order of their precedence or rank. It indicates the grouping of grades into classes, pay grades, titles of address, and abbreviations.

*c.* The pay grade is an abbreviated numerical device with useful applications in pay management, personnel accounting, automated data organization, and other administrative fields. However, the pay grade alone is not to be used as a form of address or title in place of the proper title of address or grade of rank. When military personnel (chaplains excepted) are addressed or referred to, orally or in writing, the grade of rank or title of address will normally be used. (See table 1-1.) All chaplains are addressed as "Chaplain," regardless of military grade or professional title. When a chaplain is addressed in writing, grade is indicated in parentheses; for example, Chaplain (Major) John F. Doe.

*d.* Rank is generally held by virtue of office or grade in the Army.

*e.* Conferring honorary titles of military rank upon civilians is prohibited. However, honorary titles already conferred will not be withdrawn.

**Table 1-1**
**Grades of rank, U.S. Army**

| General Officer | | |
|---|---|---|

**Grade of rank:** General of the Army
**Pay grade:** Special
**Title of address:** General
**Abbreviation:** GA [1]

**Grade of rank:** General
**Pay grade:** O-10
**Title of address:** General
**Abbreviation:** GEN

**Grade of rank:** Lieutenant General
**Pay grade:** O-9
**Title of address:** General
**Abbreviation:** LTG

**Grade of rank:** Major General
**Pay grade:** O-8
**Title of address:** General
**Abbreviation:** MG

**Grade of rank:** Brigadier General
**Pay grade:** O-7
**Title of address:** General
**Abbreviation:** BG

| Field Officers | | |
|---|---|---|

**Grade of rank:** Colonel
**Pay grade:** O-6
**Title of address:** Colonel
**Abbreviation:** COL

**Grade of rank:** Lieutenant Colonel
**Pay grade:** O-5

**Title of address:** Colonel
**Abbreviation:** LTC

**Grade of rank:** Major
**Pay grade:** O-4
**Title of address:** Major
**Abbreviation:** MAJ

| Company Officers | | |
|---|---|---|

**Grade of rank:** Captain
**Pay grade:** O-3
**Title of address:** Captain
**Abbreviation:** CPT

**Grade of rank:** First Lieutenant
**Pay grade:** O-2
**Title of address:** Lieutenant
**Abbreviation:** 1LT

**Grade of rank:** Second Lieutenant
**Pay grade:** O-1
**Title of address:** Lieutenant
**Abbreviation:** 2LT

| Warrant Officers | | |
|---|---|---|

**Grade of rank:** Chief Warrant Officer, Four
**Pay grade:** W-4
**Title of address:** Mister (Mrs./Miss/Ms.)
**Abbreviation:** CW4

**Grade of rank:** Chief Warrant Officer, Three
**Pay grade:** W-3
**Title of address:** Mister (Mrs./Miss/Ms.)
**Abbreviation:** CW3

**Grade of rank:** Chief Warrant Officer, Two
**Pay grade:** W-2
**Title of address:** Mister (Mrs./Miss/Ms.)
**Abbreviation:** CW2

**Grade of rank:** Warrant Officer, One
**Pay grade:** W-1
**Title of address:** Mister (Mrs./Miss/Ms.)
**Abbreviation:** WO1

| Cadets | | |
|---|---|---|

**Grade of rank:** Cadet, U.S. Military Academy
**Pay grade:** Special
**Title of address:** Mister/Miss/Ms./Cadet
**Abbreviation:** CDT

**Grade of rank:** Cadet, Senior Advanced ROTC
**Pay grade:** Special
**Title of address:** Mister/Miss/Ms./Cadet
**Abbreviation:** CDT

| Candidates | | |
|---|---|---|

**Grade of rank:** Officer Candidate
**Pay grade:** Special
**Title of address:** Candidate
**Abbreviation:** OC

**Grade of rank:** Warrant Officer Candidate
**Pay grade:** Special
**Title of address:** Candidate
**Abbreviation:** WOC

| Senior Noncommissioned Officers | | |
|---|---|---|

**Grade of rank:** Sergeant Major of the Army
**Pay grade:** E9
**Title of address:** Sergeant Major
**Abbreviation:** SMA

**Grade of rank:** Command Sergeant Major [2]
**Pay grade:** E9
**Title of address:** Sergeant Major
**Abbreviation:** CSM

**Grade of rank:** Sergeant Major [3]
**Pay grade:** E9
**Title of address:** Sergeant Major
**Abbreviation:** SGM

**Grade of rank:** First Sergeant
**Pay grade:** E8
**Title of address:** First Sergeant
**Abbreviation:** 1SG

**Grade of rank:** Master Sergeant
**Pay grade:** E8
**Title of address:** Sergeant
**Abbreviation:** MSG

**Grade of rank:** Sergeant First Class
**Pay grade:** E7
**Title of address:** Sergeant
**Abbreviation:** SFC

### Junior Noncommissioned Officers and Specialist [4]

**Grade of rank:** Staff Sergeant
**Pay grade:** E6
**Title of address:** Sergeant
**Abbreviation:** SSG

**Grade of rank:** Sergeant
**Pay grade:** E5
**Title of address:** Sergeant
**Abbreviation:** SGT

**Grade of rank:** Corporal
**Pay grade:** E4
**Title of address:** Corporal
**Abbreviation:** CPL

**Grade of rank:** Specialist
**Pay grade:** E4
**Title of address:** Specialist
**Abbreviation:** SP4 [5]

### Privates

**Grade of rank:** Private First Class
**Pay grade:** E3
**Title of address:** Private
**Abbreviation:** PFC

**Grade of rank:** Private
**Pay grade:** E2
**Title of address:** Private
**Abbreviation:** PV2

**Grade of rank:** Private
**Pay grade:** E1
**Title of address:** Private
**Abbreviation:** PV1

Notes:
1. Other abbreviations authorized for use in correspondence with the general public and agencies outside Department of Defense (DOD), on identification (ID) cards, and in personal correspondence are listed in AR 310–50.
2. Personnel formally selected by Department of the Army (DA) for participation in the Command Sergeants Major Program.
3. All E9s not formally selected for the Command Sergeants Major Program.
4. Specialist will rank immediately below Corporal. This does not require or justify change to table of organization (TOE) or table of distribution and allowances (TDA).
5. Abbreviation SP4 will change to SPC effective with the implementation of Standard Installation Division Personnel System-3 (SIDPERS-3) Version I scheduled for fiscal year (FY) 1988.

### 1–7. Precedence between members of the Army and other Services serving with the Army

Members of other Services serving with the Army have equal status with Army members of equivalent grade of rank. (Comparable ranks among the Services are shown in table 1–2.)

### 1–8. Precedence between foreign service officers of the Department of State and officers of the Army

Precedence between officers of the Foreign Service and other officers of the U.S. Government is set forth by Executive Order 9998, 14 September 1948.

### 1–9. Precedence between members of the Army and members of foreign military services serving with the Army

Members of foreign military services serving with the U.S. Army have equal status with Army members of equivalent grade of rank.

## Chapter 2
## Command Policies

### 2–1. Chain of command

*a.* The chain of command assists commanders at all levels to achieve their primary responsibility of accomplishing the unit's assigned mission while caring for personnel and property in their charge. A simple and direct chain of command facilitates the transmittal of orders from the highest to the lowest levels in a minimum of time and with the least chance of misinterpretation. The command channel extends upward in the same manner for matters requiring official communication from subordinate to senior.

*b.* Commanders are responsible for everything their command does or fails to do. However, commanders subdivide responsibility and authority and assign portions of both to various subordinate commanders and staff members. In this way, a proper degree of responsibility becomes inherent in each command echelon. Commanders delegate sufficient authority to each soldier in the chain of command to accomplish their assigned duties and hold them accountable for their actions. The need for a commander or staff officer to observe proper channels in issuing instructions or orders to subordinates must be recognized.

*c.* Proper use of the chain of command is vital to the overall effectiveness of the Army. Commanders must acquaint all their soldiers with its existence and proper function. Effective communication between senior and subordinate soldiers within the chain of command is crucial to the proper functioning of all units. Therefore, soldiers are also expected to use the chain of command when communicating issues and problems to their leaders and commanders.

*d.* Soldiers have a responsibility to ensure their unit commander is made aware of problems which affect the discipline, morale, and effectiveness of the unit. Unit commanders will establish an open door policy within their commands. This allows unit members to present facts, concerns, problems of a personal or professional nature, or other issues which the soldier has been unable to resolve. The timing, conduct, and specific procedures of the unit open door policy are determined by the unit commander.

*e.* Commanders will ensure that all members of their command receive timely performance counseling. Effective performance counseling of officer, noncommissioned officer (NCO), and enlisted soldiers helps to ensure they are prepared to efficiently carry out their duties and accomplish the mission. AR 623–105 and AR 623–205 contain counseling requirements in conjunction with the evaluation reporting systems. Unit commanders will determine the timing and specific methods used to provide guidance and direction through counseling. FM 22–101 provides advice and makes suggestions concerning effective counseling. Providing regular and effective performance counseling to all soldiers, not just those whose performance fails to meet unit standards, is a command responsibility. All commanders will ensure that their subordinate commanders have implemented and are maintaining an effective performance counseling program.

### 2–2. Staff or technical channels

Staff or technical channels may be used for sending reports, information, or instructions not involving variations from command policy and directives.

### 2–3. Command of installations, activities, and units

*a. Responsibility.* The senior regularly assigned officer present for duty normally has responsibility for the command of units, platoon level and above, except as shown in paragraphs 2–6a, 2–13, and 2–14.

(1) An installation will be assigned to the subordinate command best equipped to perform installation management. The subordinate command will be selected using the following criteria:

*(a)* Capability to perform installation management most efficiently and economically in terms of staff and other overhead costs.

*(b)* Capability to administer base operations functions most efficiently and economically.

*(c)* Employment and/or command of the largest number of military and civilian personnel performing mission activities.

*(d)* Use of the greatest amount of building square footage and/or acreage in performing mission activities.

*(e)* Traditional association with the installation.

*(f)* Commander senior in grade.

(2) Army commanders or general officers in the rank of lieutenant general or above

4

may not assume command of Army installations, except where the installation serves as the location for an Army Corps continental United States Army (CONUSA), or higher headquarters. When a specific situation appears to warrant an exception to this policy, prior approval is needed from HQDA (DAGOM), WASH DC 20310-0300.

(3) Command of installations and units under the Army Medical Department (AMEDD) are set forth in AR 40–1 and AR 10–6.

*b. Announcement of assumption of command.* Assumption of command will be announced in a memorandum or disposition form (DF) and contains the information shown in figure 2–1.

(1) *Oral assumption of command.* Oral assumption of command may be used by units not using orders or other documentation to announce assumption of command or when other circumstances necessitate.

(2) *Distribution.* Distribution will be limited to one copy each to the person concerned, subordinate commands or elements, interested commands, or agencies, and the next higher headquarters. A copy will be placed in the files of the issuing command and/or the affected command. When a general officer, or general officer designee, assumes permanent command, one copy will be furnished to HQDA (DAGOM), WASH DC 20310-0300.

(3) *Filing.* Organizations and units governed by AR 25–400–2 and DA Pam 25–400–2, will file one copy of the assumption document under Organizational History file. Disposition is shown in those documents.

(4) *Correction and amendments.* Assumption of command documents will be amended, rescinded, or revoked by publishing the correct information in another assumption of command document. The document containing the correction will properly identify (by date) the document being corrected, and state to whom it pertains. The amended document will be distributed and filed, as appropriate.

*c. Installation responsibilities.* Major Army commanders may relieve tactical commanders of installation responsibilities by designating a junior officer of the permanent station as installation commander.

*d. Optimum length of command tours.* The optimum length of command tours will be based on the needs of the Army, stability within units, the need for officers with command experience, and availability of personnel. Normal optimum command tours are as follows:

(1) For company grade, 18 months with a minimum of 12 months.

(2) For field grade, a minimum of 24 months. In overseas areas where the tour length precludes such tenure of command, the command tour will coincide with the overseas tour. Commanders (MG or above) may extend command tours up to 6 months. Requests for exceptions to this policy will

be submitted through the MACOM commander to CDR, USTAPA (DAPC–ZA), 200 Stovall Street, Alexandria, VA 22332–0400.

(3) In overseas areas where the tour length precludes such tenure of command, the command tour will coincide with the overseas tour.

*e. Command by general officers.* Except as indicated in paragraph 2–6, a general officer will not be assigned without the prior approval of HQDA (DAGOM), WASH DC 20310-0300.

*f. Command of medical units.* The senior Medical Corps officer, assigned or attached to a medical TOE unit deployed to receive and treat patients, will assume command of that unit until properly relieved.

*g. Command of dental units.* The senior Dental Corps officer, assigned or attached to a dental TOE unit deployed to receive and treat patients, will assume command of that unit until properly relieved.

*h. Command of veterinary units.* The senior veterinary officer, assigned or attached to a veterinary unit deployed to care for Government-owned animals, for food inspection responsibilities, and/or for civic action programs, will assume command of that unit until properly relieved.

*i. Command of Active Component (AC) training units.* Reserve Component (RC) officers may be assigned as acting commanders of AC training units during annual training. This includes authority under the Uniform Code of Military Justice (UCMJ), unless withheld by competent authority. Installation commanders implementing the authority granted by this paragraph will ensure that—

(1) Provisions in paragraphs 3–3 and 3–4 of this regulation are complied with.

(2) RC organizations have adequately trained their commanders in accordance with the Manual for Courts-Martial (MCM) and AR 27–10 provisions.

(3) RC commanders receive orientation regarding measures normally taken against offenders at the installation and within the units concerned.

(4) Necessary attachment orders, direction of the President (DP) authority, assumption of acting command letter, administrative measures, and appeal channels are accomplished.

(5) Cases are monitored to ensure fairness and consistency, and/or procedural difficulties are identified.

## 2–4. Specialty immaterial commands

The senior officer regularly assigned and present for duty with logistical commands (or communications zone headquarters, sections, and areas) and similar specialty immaterial commands will assume command of the organization. (This provision applies unless the senior officer is ineligible under paras 2–13 or 2–14.)

## 2–5. Designation of junior in the same grade to command

*a.* When two or more commissioned officers of the same grade, both of whom are eligible to command, are assigned to duty in the same command or organization, the President may assign the command of forces without regard to seniority of rank.

*b.* General officers are authorized to announce by direction of the President, the designation of one of several officers of the same grade within a command under their jurisdiction as a commander thereof.

(1) This refers to general officers commanding major Army commands (MACOMs), armies, corps, installations, divisions, separate brigades, U.S. Army Reserve (USAR) general officer commands, and heads of DA Staff agencies. This may be done without regard to relative seniority. (See paras 2–3 and 2–6 for policy on general officers.) When an officer who is junior in grade is designated to command, a memorandum will be used to announce the appointment and will contain the information shown in figure 2–2.

(2) This appointment is used only if the duties of the position require exercising command. It is not used to assign a junior officer to a staff position that requires supervising and controlling activities of an officer senior in rank. In staff supervisory positions, commanders make such appointments merely by designation in a memorandum.

*c.* Commanders will not use the Presidential authority cited in this paragraph to appoint a junior member as their own successor, either temporarily or permanently. In some cases, a commander having authority under this paragraph may find it necessary to temporarily place a junior member in his or her position as acting commander. If so, a request stating the circumstances and asking for the appointment to be made will be sent to the next higher commander having authority under this paragraph. The next higher commander will review the request and make appointments deemed necessary. Commanders will not issue a blanket

SUBJECT: Assumption of Command By Authority of (appropriate subparagraph).

The undersigned assumes command of (complete unit designation and unit identification code (UIC)), effective (date).

*(Signature block)*

Note: Authentication/signature block will include: Name, grade, branch, and the word "Commanding."

**Figure 2–1. Assumption of command**



SUBJECT: Appointment of Commander.

By direction of the President, (grade, name, SSAN, and branch) is appointed commanding officer or commanding general of (complete unit designation and UIC), effective (date).

*(Signature block)*

Note: Authentication/signature block will include name, grade, and title.

**Figure 2–2. Appointment of commander**

designation without prior approval from the MACOM commander, and, in cases involving general officers, HQDA, (DAGOM), WASH DC 20310–0300. Each designation of a junior to a command position requires a separate action by the appropriate authority except when prior approval of a blanket designation has been authorized.

*d.* The authority in this paragraph will not be used to assign command functions to chaplains or, unless authorized by the Secretary of the Army or his appointee, to officers of the AMEDD when such assignment involves troops other than those of the AMEDD except as in paragraph 2–14.

**2–6. Death, disability, retirement, reassignment, or absence of the commander**

*a. Commander of Army element.*

(1) If a commander of an Army element, other than a commander of a headquarters and headquarters element, dies, becomes disabled, retires, is reassigned, or is temporarily absent, the senior regularly assigned Army member will assume command.

(2) If the commander of a headquarters and headquarters element dies, becomes disabled, retires, is reassigned, or is temporarily absent, the senior regularly assigned Army member of the particular headquarters and headquarters element who performs duties within the element will assume command. For example, if a division headquarters and headquarters company commander is temporarily absent, the executive officer as the senior regularly assigned Army member who performs duties within the headquarters company would assume command and not the division commander.

(3) Senior regularly assigned Army members refers (in order of priority) to officers, warrant officers (WOs), cadets, NCOs, specialists, or privates present for duty unless they are ineligible under paragraphs 2–13 or 2–14. He or she assumes command until relieved by proper authority except as provided in *c* below. Assumption of command under these conditions is announced per paragraph 2–3. However, the announcement will indicate assumption as acting commander unless designated as permanent by the proper authority. It is not necessary to rescind the announcement designating an acting commander to assume duties of the

commander "during the temporary absence of the regularly assigned commander" if the announcement gives the time element involved. A rescinding announcement is required if the temporary assumption of command is for an indefinite period.

*b. Head of DA Staff agency.* On the death, disability, or temporary absence of a head of a DA Staff agency, the next senior officer on duty in the office will become head until relieved by proper authority. (Exceptions may be ordered or required.) This does not apply to The Surgeon General and the Chief, National Guard Bureau. Functions of The Surgeon General are assumed by the next senior officer of the Medical Corps present and on duty in the office. Functions of the National Guard Bureau (NGB) are assumed by the senior officer of the Army National Guard of the United States (ARNGUS) on duty in the Bureau. (See section 3040, title 10, United States Code.)

*c. Commanders of MACOMs.* A commander of a MACOM may continue to discharge the functions of command while absent from the limits thereof, if—

(1) Such absence is for a short period only.

(2) The commander has reasonable communication with the MACOM headquarters.

(3) The absence is not caused by physical disability.

*d. General officers.*

(1) During the temporary absence of the regularly assigned commander, MACOMs are authorized to assign general officers under their command to positions of command.

(2) Where more than one MACOM is represented on an installation, the line of succession of command may pass from one MACOM to another. The major Army commanders concerned should agree to the terms of such an arrangement by a memorandum of understanding and should publish necessary documentation. HQDA (DAGOM) will be notified of the action taken.

**2–7. Absence or disability of all officers of a unit**

Upon death, disability, or absence of all officers of a unit normally commanded by an

officer, the appropriate commander permanently assigns an officer to command, preferably of the branch to which the unit belongs. Pending assignment and arrival of the new commander, the senior warrant officer, cadet, NCO, specialist, or private regularly assigned to the unit will exercise temporary command. Restrictions on assuming command set forth in paragraphs 2–13 and 2–14 apply. Assumption of command will be as noted in paragraph 2–6.

**2–8. Emergency command**

The senior officer, warrant officer, cadet, NCO, specialist, or private among troops at the scene of an emergency will assume temporary command and control of the military personnel present. These provisions also apply to troops separated from their parent units under battlefield conditions. The senior person eligible for command, whether officer or enlisted, within a prisoner of war camp or among a group of prisoners of war, will assume command according to rank without regard to Service. Restrictions on assuming command set forth in paragraphs 2–13 and 2–14 apply.

**2–9. Functions of an individual in temporary command**

A commander in temporary command will not, except in urgent cases, alter or annul the standing orders of the permanent commander without authority from the next higher command. Temporary command is defined to include command assumed under conditions outlined in paragraphs 2–6, 2–7, and 2–8. Such commanders will be considered temporary until designated as permanent, or until replaced by the proper senior commander.

**2–10. Responsibility of successor**

A commander who succeeds to any command or duty assumes the duties of his or her predecessor. The successor will assume responsibility for all orders in force and all the public property and funds pertaining to the command.

**2–11. Separate commands of the U.S. Army serving together**

*a.* When separate commands of the U.S. Army join (or perform duty) together, the senior regularly assigned officer present for duty with the commands concerned will command the forces unless otherwise directed by the President. He or she must not be ineligible under paragraph 2–14 or 2–15.

*b.* Section 317, title 32, United States Code states: "When any part of the National Guard that is not in Federal service participates in an encampment, maneuver, or other exercise for instruction, together with troops in Federal services, the command of the post, airbase, or other place where it is held, and of the troops in Federal service on duty there, remains with the officers in Federal service who command that place and the Federal troops on duty there, without regard to the rank of the officers of the National Guard not in Federal service."

c. When USAR units take part in active duty for training or annual training at a post, the command of that post remains with the officer normally in command. This provision applies regardless of the grade of the officers of the USAR unit who are temporarily taking part in training there.

## 2–12. Separate commands of the several military services of the United States serving together

a. When separate commands of the several military services join (or perform duty) together, or personnel of another Service serve with the Army, operational control by an officer of one Service over the units or members of the other Services may be given by agreement between the Services concerned, or by assignment to command a unified command established by the Joint Chiefs of Staff. When the different commands of the Army and the Marine Corps join or serve together, the highest ranking officer in the Army or Marine Corps on duty, who is otherwise eligible to command, will command all those forces unless otherwise directed by the President. (See section 747, title 10, United States Code.)

b. The commander of the joined forces exercises operational control of the forces of each Service. This will be done through the responsible commander of each component who will retain responsibility for such intraservice matters as administration, discipline, internal organization, and unit training. In general, court-martial jurisdiction by a member of one Armed Force over members of another should be exercised only when the accused cannot be delivered to the Armed Force of which the individual is a member without injury to the Service. Commanders of joint commands or joint task forces who have authority to convene general courts-martial may convene a court-martial for the trial of members of another Armed Force when specifically empowered by the President or Secretary of Defense to refer such cases for trial by courts-martial. (See MCM, Rules for Courts-Martial.)

## 2–13. Ineligibility for command of post or activity

A person will be considered ineligible for command of a post or activity when—

a. Quartered there, but has a headquarters or office elsewhere.

b. A student at a Service school or civilian institution or is undergoing individual training, instruction, or in transit processing at a post where he or she is not a part of the command.

c. Not permanently assigned, and/or the unit involved is not permanently assigned to the post.

d. Assigned primarily as a permanent member of a board.

e. Prohibited from assuming command by statute (AR 600–31) or by paragraph 2–14.

f. Assigned specific duty aboard a military vessel or aircraft where the officer's particular duty, specialty, or MOS does not technically qualify him or her to assume the duty of ship's master or aircraft commander.

g. In arrest. (A person in arrest is ineligible to exercise command of any kind.)

## 2–14. Restrictions

a. General Staff officers. An officer assigned or detailed to the Army General Staff will not command troops other than personnel on duty with the Army General Staff unless directed to do so by an authority named in paragraph 2–5. A General Staff officer with troops may assume command when he or she is the senior regularly assigned officer of the command present for duty. The officer must not be ineligible under the provisions of this paragraph or paragraph 2–13.

b. Officers on duty in DA Staff agencies. Officers on duty or detailed to any of the Services or Staff agencies and bureaus of DA (including heads thereof) will not normally assume command of troops other than those of the Service, staff, or bureaus where they are on duty. Exceptions must be directed by proper authority.

c. Officers of the AMEDD.

(1) Officers of the AMEDD may exercise command only within the AMEDD in accordance with AR 10–6 and AR 40–1.

(2) As an exception, officers of the Medical Service Corps may command troops not part of the AMEDD when authorized by the Secretary of the Army; commanders of MACOMs, Army groups, armies, corps, divisions, or comparable units; chiefs of the military Services; or heads of other DA Staff agencies.

d. Chaplains. A chaplain has rank without command. (See section 3581, title 10, United States Code.) Although chaplains may not exercise command, they have authority to exercise functions of operational supervision and control.

e. Commanding officer of troops on transports. Military personnel embarking on Military Sealift Command vessels are available for command duty unless otherwise indicated in their travel orders, or by reason of their branch of Service. General officers will be excluded from this requirement. Designation of colonels will be at the discretion of the terminal commander.

f. USAR unit commanders. The authority delegated under paragraph 2–5 will apply in the following cases when it is not practical to assign the senior officer to command:

(1) When the USAR officer selected to command a USAR unit, while in Reserve duty training status, is junior in date of rank (AR 624–100) to other officers of the same grade assigned to that unit.

(2) When a USAR unit is ordered to active duty, and the assigned unit commander is junior in date of rank (AR 624–100) to other assigned officers of the same grade.

g. Warrant officers. When assigned duties as station, unit, or detachment commander, warrant officers are vested with all powers usually exercised by other commissioned officers. (See AR 611–112, para 1–7, for exceptions.)

h. Partially disabled officers. Partially disabled officers continued on active duty under AR 635–40, chapter 6, will be assigned to positions in which their special qualifications make them of particular value to the Service. Such officers will not be assigned to command positions unless the assigning authority determines that the person—

(1) Has the medical (physical) career potential to serve in combat situations.

(2) Is able to serve until the age for mandatory retirement.

i. Inspectors general. An officer detailed to duty as an inspector general will not assume command of troops while so detailed. However, an inspector general is not precluded from assuming temporary command of an organization if he or she—

(1) Is the next regularly assigned senior officer of the organization.

(2) Is not otherwise ineligible.

(3) Has been relieved from detail as an inspector general during the period of temporary command.

j. Program executive officers (PEOs). With the exception of the Commander, U.S. Army Corps of Engineers, and the Commander, U.S. Army Strategic Defense Command, an officer assigned as a program executive officer will not assume command of troops, installations, or activities while so assigned. Requests for exceptions for general officers, other than those specified above, will be submitted to HQDA (DAGOM), WASH DC 20310–0300 for approval.

## 2–15. Relief for cause

a. The relief of an individual for cause is one of the most serious steps taken. It is preceded with formal counseling by the commander or supervisor unless such action is not deemed appropriate under the circumstances. Action to relieve an officer from any command position will not be taken until after written approval by the first general officer in the chain of command of the officer being relieved is obtained. If a general officer is the relieving official, no further approval of the relief action is required; however, the provisions of AR 623–105 and AR 623–205 concerning administrative review of relief reports remain applicable. USAR Active Guard/Reserve (AGR) personnel are governed by AR 135–18.

b. If a relief from cause action is contemplated on the basis of an informal investigation under AR 15–6, the referral and comment procedures of that regulation must be followed prior to the act of initiating or directing the relief. This does not preclude a temporary suspension from assigned duties pending completion of the procedural safeguards contained in AR 15–6.



Case 1:07-cv-00688-RMU     Document 6-8     Filed 06/29/2007     Page 1 of 11

Headquarters
Department of the Army
Washington, DC
15 November 1981

**Army Regulation 623–105**

Effective 15 November 1981

**Personnel Evaluation Reports**

# Officer Evaluation Reporting System

The original form of this regulation was first published on 15 November 1981. Since that time, changes have been issued to amend the original. As of 7 December 1987 pentagon Changes 1 through 6 remain in effect. This UPDATE printing incorporates all of those changes directly into the body of text.

This UPDATE publishes a new change IV which is effective 1 March 1988. The portions of the text that are revised by change IV are highlighted in this printing.

By Order of the Secretary of the Army:

CARL E. VUONO, JR.
General, United States Army
Chief of Staff

Official:
R. L. DILWORTH
Brigadier General, United States Army
The Adjutant General

**Summary.** This regulation establishes the policies and procedures for the Officer Evaluation Reporting System (OERS). It provides instructions for preparing, processing, and using DA Form 67-8 (US Army Officer Evaluation Report) DA Form 67-8-1 (US Army Officer Evaluation Support Form) and DA Form 67-8-2 (Senior Rater Profile Report).

**Applicability.** This regulation applies to all officer personnel in the Active Army, Army National Guard (ARNG), and the US Army Reserve (USAR). Those provisions which apply only to a particular component are so indicated.

**Impact on New Manning System.** This regulation does not contain information that affects the New Manning System.

**Internal Control Systems.** This regulation is subject to the requirements of AR 11–2. It contains internal control provisions but does not contain checklists for conducting internal control reviews. These checklists are being developed and will be published at a later date.

**Supplementation.** Supplementation of this regulation and establishment of forms other than DA Forms are prohibited without approval from HQDA (DAPC-MSE) ALEX, VA 22332-0400 2332-0443.

**Interim changes.** Interim changes to this regulation will not implement interim changes unless the change proponent has been authorized by The Adjutant General. Interim

changes expire 1 year after the publication date. If a formal printed change is not received by the time the interim change expires, users will destroy the interim change.

**Suggested improvements.** The proponent agency of this regulation is the Office of the Deputy Chief of Staff for Personnel. Users are invited to send comments and suggested improvements on DA Form 2028 (Recommended Changes to Publications and Blank Forms) direct to HQDA(DAPC-MSE) ALEX, VA 22332-0400 2332-0342.

**Distribution.** Active Army, ARNG, and USAR.

# Contents (Listed by paragraph number)

Chapter 1
General
Purpose • 1–1
References • 1–2
U.S. Army Officer Evaluation System (OES) • 1–3
Officer Evaluation Reporting System (OERS) • 1–4
Responsibilities of commanders • 1–5
Responsibilities of CG, MILPERCEN TAPA • 1–6

Chapter 2
The evaluation reporting process
General • 2–1
The beginning of the rating period • 2–2
During the rating period • 2–3
The end of the rating period • 2–4
Actions at HQDA • 2–5

Chapter 3
rating chain
General • 3–1

Section I
Members of the Rating Chain
The rated officer • 3–2
Responsibilities of the rated officer • 3–3
The rater • 3–4
Rules for designating the rater • 3–5
Responsibilities of the rater • 3–6
The intermediate rater • 3–7
Rules for designating the intermediate rater • 3–8
Responsibilities of the intermediate rater • 3–9
The senior rater • 3–10
Rules for designating the senior rater • 3–11
Responsibilities of the senior rater • 3–12
Senior rater restrict • 3–13

Section II
Evaluation Reviews and Commander's Inquiries
Required Reviews • 3–14
Review responsibilities • 3–15
Commander inquiry • 3–16

Section III
Special Evaluation Requirements
Loss of a rating chain member • 3–16
Supervisor serving as both rater and senior rater • 3–17
Dual supervision • 3–18
Professors of military science • 3–19
Special requirements for JAGC officers • 3–20
Special requirements for AMEDD officers • 3–21
Special requirements for chaplains • 3–22

Chapter 4
Evaluation Principles, Forms, and Procedures
General • 4–1

Section I
Evaluation Principles
Role of the rating official • 4–2
Performance and potential evaluations • 4–3

Section II
DA Form 67-8-1 (OER Support

**Chapter 1**
**General**

**1–1. Purpose**

*a.* This regulation sets policies and procedures for the Officer Evaluation Reporting System (OERS). It gives instructions for preparing, processing, and using DA Forms 67–8 (U.S. Army Officer Evaluation Report (OER), DA Form 67–8–1, (U.S. Army Officer Evaluation Support Form) and 67–8–2 (Senior Rater Profile Report). DA Forms 67–8 and 67–8–1 are available through normal publication channels. DA Form 67–8–2 is mechanically printed/reproduced and used by MILPERCEN, TAPA, ARPERCEN, and ARNG Personnel Center. It also provides guidance on appealing evaluations, including appeals of Officer Academic Evaluation Reports (AR 623–1).

*b.* Requests for clarifications or exceptions to policy should be sent to HQDA (DAPC–MSE), Alexandria, VA 22332–040022332–0442.

*c.* Correspondence course training covering administrative processing of the OER is available. Additional information is available in DA Pam 351–20.

**1–2. References**

See appendix A for required and related publications.

**1–3. US Army Officer Evaluation System (OES)**

*a.* The OES identifies officers who are qualified for promotion and assignment to positions of higher responsibility. It also identifies officers who should be kept on active duty, those who should be retained in grade, and those who should be eliminated.

*b.* Under the OES, an officer is evaluated on his or her performance and potential. In this system, three kinds of evaluations are given—

(1) *Duty evaluations.* The OER is used for these evaluations.

(2) *School evaluations.* The Academic Evaluation System is used for these evaluations (AR 623–1).

(3) *DA evaluations.* Selection boards and personnel management systems are used for these evaluations. Duty and school evaluations are single time-and-place evaluations and are used to make DA evaluations. DA evaluations cover an officer's entire career.

*c.* DA evaluations focus on an officer's potential. They are judgments on the officer's ability to perform at higher grades, and they are also made to judge whether an officer should be retained and given greater responsibility in his or her present grade. In making DA evaluations, three factors are considered—

(1) *Army requirements for officers.* The needs of the Army for officers frequently change. At times, the Army has a need for officers with certain backgrounds, experience and expertise. The size of the Army corps is also determined by law in terms of strength by grade. Army needs limit the number of selections and assignments

that can be made. Thus, an officer's potential is partially determined by how he or she compares with his or her peers.

(2) *Duty performance.* Performance of duty is an extremely important factor in determining an officer's potential. Duty performance is judged by how well an officer performs his or her tasks and how well he or she meets officer corps professional values.

(3) *Officer qualifications.* This is the third factor in determining an officer's potential. It must be considered in order to meet Army needs for outstanding leaders of troop and technical units, supporting staff managers, and technical specialists. One consideration in determining qualifications is the different skills and backgrounds required by different specialties. Another consideration is an officer's progress through specialist fields to positions of greater responsibility. In addition, his or her length of service and civil and military schooling are considered.

**1–4. Officer Evaluation Reporting System (OERS)**

*a.* The OERS is an important subsystem of the OES. It largely determines the quality of the officer corps, the selection of future Army leaders, and the course of each officer's career. It also supports many current Army personnel management programs.

(1) The OER insures that an officer's specialties are considered along with the specialty requirements of his or her duty position when he or she is evaluated.

(2) The emphasis on senior/subordinate communication supports the Army's "people-oriented programs." It is intended to focus attention on constructive problem solving and the importance of sound working relationships.

*b.* Although the OERS is a multifunctional system, its basic structure—

(1) Allows the rater to give shape and direction to the rated officer's performance.

(2) Provides a chain-of-command evaluation of an officer's performance and potential.

(3) Allows the entire evaluation reporting process to be reviewed.

*c.* The primary function of the OERS is to provide information to DA for use in making personnel management decisions. This information is supplied to DA by a rating chain in the officer's assigned organization.

(1) The information provided on the OER, combined with the Army's needs and individual officer qualifications, is used as a basis for personnel actions. Included are promotion, elimination, retention in grade, command selection, school selection, assignment, specialty designation, and RA integration.

(2) To insure that sound personnel management decisions can be made and that an officer's potential can be fully developed, evaluation reports must be as accurate and complete as the situation allows. Each report must be a comprehensive appraisal of

an officer's abilities, weaknesses, and potential. Reports that are either incomplete or fail to provide a realistic and objective evaluation make it difficult to determine an officer's true potential.

*d.* The secondary functions of the OERS are to encourage officer professional development and enhance mission accomplishment.

(1) The OERS stresses the importance of sound senior/subordinate relationships. It also stresses the importance of setting standards and giving direction to the performance of subordinate officers. Properly used, the OERS can be a powerful leadership and management tool for the rating chain.

(2) The key to the system's secondary functions is effective communication. The OERS encourages continual two-way communication between senior and subordinate officers. On the one hand, such communication makes the rated officer aware of what his or her duties are and allows the officer to take part in the organization's planning. On the other hand, such communication lets the rater guide and develop his or her subordinates, keeps the rater constantly aware of what the organization is achieving, and enables the rater to plan for mission accomplishment.

(3) Senior/subordinate communication also makes career development information, advice, and guidance more available to the rated officer. This enables the rated officer to take advantage of his or her superior's experience when making decisions that affect his or her career.

**1–5. Responsibilities of commanders**

*a.* Commanders will insure that—

(1) A copy of this regulation is available to the rated officer and rating officials.

(2) Each rating official is fully qualified to meet his or her responsibilities. (See chap. 3)

(3) Reports are prepared by the individuals named in the published rating chain.

(4) Rating chains are drawn up by name, given effective dates, published, and distributed to each rated officer and each member of the chain. Any changes to rating chains will also be published and distributed. No changes may be retroactive.

(5) Rating officials give timely counseling to subordinates on professionalism and job performance, encouraging self-improvement when needed.

(6) Each rating official knows how the subordinates he or she evaluates have performed.

(7) Each senior rater (and supplementary reviewer, if any) understands that he or she must examine the entries on the evaluation reports to insure that objectivity and fairness have been maintained. When doing so, he or she must keep in mind the interests of both the Army and the rated officer. The senior rater must also understand that if he or she notes discrepancies, the senior rater will be sure that corrections are made. (See para 3–13 and 3–14.)

(8) Each rated officer is provided a copy of his or her completed OER (para 5–36b(1)).

(9) Referred reports (para 4–27) are provided to the rated officer for acknowledgement or comment before being sent to HQDA (para 5–28). This also applies to an OER addendum containing unfavorable information and submitted under the provisions of paragraph 5–34. In such instances, commanders will insure that the rated officer understands that his or her comments do not constitute an OER appeal or request for Commander's Inquiry (para 5–30). Appeal procedures are described in chapter 9.

(10) Military personnel officers meet the requirements in appendix B.

(11) Completed reports arrive at HQDA not later than 60 calendar days after the "Thru" date of the report. The importance of the OER to many personnel actions, especially those involving DA selection boards, demands that this 60-day suspense be met.

b. In addition to the above, commanders will perform the duties described in paragraph 3–15 when a report rendered by one of their subordinates appears illegal, unjust, or otherwise in violation of this regulation.

c. Commanders will request from CG, MILPERCENTAPA, clarifications of policies, exceptions to policies, or new policies, and bring to his or her attention situations that—

(1) Are not clearly and adequately covered by this regulation.

(2) Would result in an injustice to an individual or a disservice to the Army if a new policy is not made or an exception not granted.

## 1–6. Responsibilities of CG, MILPERCENTAPA

Acting as executive agent for the Secretary of the Army, CG, MILPERCENTAPA, is responsible for the effective operation of the OERS.

a. He or she will exercise final review authority on all evaluation reports received at DA. This includes—

(1) Determining that a report is correct as submitted and needs no further action.

(2) Correcting or returning to rating officials for their correction reports that may be in error or may violate provisions of this regulation.

(3) Directing rating officials to submit addenda to reports needing clarification.

(4) Collecting information to be attached as addenda to reports when such action is necessary.

(5) Directing commanders to investigate apparent errors or violations of this regulation and to submit their findings or recommendations. These will be attached to the OER or otherwise disposed of as the CG, MILPERCENTAPA, deems appropriate.

b. He or she will direct the rendering of reports when circumstances warrant and other provisions of this regulation do not apply (para 5–19).

c. He or she will clarify policies, grant exceptions to policies, or formulate new policies, as the need arises.

d. He or she will dispose of Commander's inquiries which are conducted in accordance with paragraph 5–30, and the subject evaluation, as deemed appropriate.

## Chapter 2
## The Evaluation Reporting Process

### 2–1. General
a. The OERS process is designed to—

(1) Set objectives for the rated officer that support the organization's mission.

(2) Review the rated officer's objectives and update them to meet current needs.

(3) Promote performance-related discussions or counseling to develop subordinates and better accomplish the organization's mission.

(4) Evaluate the rated officer's performance.

(5) Assess the rated officer's potential.

(6) Insure a review of the entire process.

b. In the evaluation process, DA Form 67–8 (OER) and DA Form 67–8–1 (Support Form) are used by the organizational rating chain. In addition, DA Form 67–8–2 (Senior Rater Profile Report) is used by DA to track the rating history of the senior rater (chap. 4). See figure 2–1 for a diagram of the flow of information through the system.

### 2–2. The beginning of the rating period
a. The evaluation process starts at the beginning of the rating period. At that time, the rated officer and rater have a face-to-face discussion of duties and objectives. A DA Form 67–8–1 will be used as a worksheet to record this discussion. (See sec II, chap 4.)

b. The first face-to-face discussion will be held within 30 days after the beginning of the rating period. Its purpose is to develop a duty description for the rated officer and major performance objectives for him or her to accomplish during the rating period. It should also be used to guide the rated officer's performance during the early part of the rating period.

### 2–3. During the rating period
a. Throughout the rating period, both rater and rated officer should continually assess whether the duty description and performance objectives are adequate. If not, they will be revised and the support form should be updated by the rated officer.

b. During these discussions about the rated officer's duties and objectives, the rater should coach the rated officer on his or her personal and professional development.

### 2–4. The end of the rating period
a. At the end of the rating period, the rated officer receives a DA Form 67–8 (see III, chap. 4) from the PSC or administrative office. Referring to his or her performance, experience, and discussions with the rater, the rated officer completes his or her portion of the Support Form. The rated officer then verifies the administrative data on the OER, enters his or her Army Physical Fitness Test and height/weight data, signs, and forwards both forms through the rater and intermediate rater (if any) to the senior rater.

b. The PSC or administrative office will notify the rater that the OER has been initiated. The rater will also be told the date the DA Form 67–8 was sent to the rated officer and the suspense date for returning the completed report to the PSC or administrative office.

c. The rater and intermediate rater (if any) complete, in turn, their portions of the DA Form 67–8–1. They also evaluate the performance and potential of the rated officer on DA Form 67–8.

d. The senior rater (para 3–10) provides an independent evaluation of the rated officer's potential on the DA Form 67–8. In most cases, the senior rater also provides the final chain-of-command review. To meet these responsibilities, the senior rater uses the information provided on the OER and Support Form, as well as any information he or she gets through direct or indirect contact with the rated officer and other members of the rating chain.

e. When the senior rater has completed his or her evaluation and review, the DA Form 67–8–1 is returned to the rated officer. The DA Form 67–8 is forwarded to the PSC or administrative office for dispatch to HQDA.

f. If there is a supplementary reviewer (para 3–13), the DA Form 67–8–1 will accompany the OER to the reviewing official. When the supplementary reviewer has completed his or her review, he or she will return the Support Form to the rated officer. The DA Form 67–8–1 will not accompany the OER when the review will be performed by HQDA.

### 2–5. Actions at HQDA
a. On arrival at DA, the DA Form 67–8 is reviewed. The senior rater's potential evaluation is entered into his or her automated personnel record, and his or her rating history for that particular grade or grade grouping is computed (para 4–16). This profile is put on the DA Form 67–8 next to the senior rater's potential evaluation of the rated officer. The report is then placed in the rated officer's Official Military Personnel File (OMPF).

b. The total cumulative rating profile of each senior rater is printed annually on DA Form 67–8–2 and included in the senior rater's OMPF. (See sec V, chap 4.)

# Chapter 3
# The Rating Chain

## 3–1. General

a. Rating chains must correspond as nearly as practical to the chain of command and supervision within an organization, regardless of component.

(1) A rating chain is established to provide the best evaluation of an officer's performance and potential. A rating chain also ties the rated officer's performance to a specific senior/subordinate relationship. This allows for the proper counseling to develop the rated officer and accomplish the mission. These purposes are best achieved within an organization's chain of command.

(2) The evaluation of officers by persons not involved with their supervision is inappropriate.

b. Rating chains will normally consist of the rated officer, the rater, and the senior rater. When a chain is established, the rater and senior rater are the first officials designated. (See para 3–5 and 3–11.) Some rating chains, however, will also include an intermediate rater (para 3–8). An intermediate rater is designated only when a rated officer has a supervisor who is between the rater and senior rater in his chain of command. (See fig 3–1.)

c. In view of the fact that the rated officer verifies the correctness of the rating scheme in block IId of DA Form 67–8, the PSC or administrative office need not maintain copies of superseded rating schemes.

Special rules for designating rating officials have been made to cover the death, relief, or incapacitation of a rating official. There are also special rules governing the rating officials for military judges, military magistrates, aides to general officers, inspectors general, officers under dual supervision, chaplains, JAGC officers, AMEDD officers, and professors of military science. These special rules are in section III of this chapter.

## Section I
## Members of the Rating Chain

## 3–2. The rated officer

a. The rated officer is the subject of the evaluation. He or she has considerable responsibility in the evaluation process. (See para 3–3.)

b. Normally, to be eligible for an evaluation report, a rated officer must complete 90 calendar days in the same position under the same rater. Nonrated periods as described in paragraph 4–10c(2) are not included in this 90-day period. Exceptions to the 90-day requirement are in sections II and III of chapter 5.

c. If a rated officer has been selected for promotion and is in a position authorized his new grade, he or she is considered serving in that grade when determining the rating chain. The designation "P" will be entered next to his or her current grade on DA Form 67–8 (para 4–10d(2) and 4–16d(5)).

d. If a rated officer has been selected for promotion but is not in a position authorized his or her new grade, the officer is considered to be serving in his or her current grade when determining his or her rating chain. The designation "P" will not be used next to the officer's current grade on DA Form 67–8 (para 4–10d(2) and 4–16d(5)).

## 3–3. Responsibilities of the rated officer

The rated officer will—

a. Perform each assigned or implied duty to the best of his or her ability, trying always to improve on the accomplishment of the organization's mission. To do this, the rated officer must periodically evaluate his or her own performance and, when in doubt, seek the advice of his or her superiors in the rating chain.

b. Begin a discussion of his or her duty description and performance objectives with his or her rater. This must be done within 30 days after the beginning of each rating period (para 2–2b).

c. Assess throughout the rating period the validity of his or her objectives. This may result in having to revise and update both objectives and duty description as the situation changes. The rated officer may also have to develop new objectives with the rater.

d. Describe accurately his or her duties, objectives, and significant contributions on DA Form 67–8–1 at the end of the rating period. When doing this, the rated officer may express his or her own views; the rated officer may not be forced to alter those views. This does not prevent the rated officer and rater from discussing the entries to insure that they are clear, concise, and accurate. Nor does it prohibit changes of the entries when the rated officer agrees with the changes.

## 3–4. The rater

a. The rater is the person in the rating chain who—

(1) Is most familiar with the day-to-day performance of the rated officer.

(2) Most directly guides the rated officer's participation in the organization's mission.

b. Normally, to evaluate an officer, the rater must be designated and serve in that capacity for at least 90 calendar days. Exceptions to this policy are given in sections II and III of chapter 5.

## 3–5. Rules for designating the rater

a. A rater must be an officer of the US or Allied Armed Forces or an employee of a US Government agency (including nonappropriated fund employees). (See para 4–9c for restrictions on non-DOD rating officials.)

b. The rater will normally be the immediate supervisor of the rated officer. The immediate supervisor is the individual who directs and is most responsible for the rated officer's performance.

c. The rater must be senior to the rated officer in grade or date of rank. Exceptions to this rule are as follows:

(1) A rater in a command position may rate an officer who is of the same grade but senior in date of rank if the rater has been assigned to command by direction of the President (AR 600–20) and has command authority over the rated officer. In such cases, the rater will attach a copy of his or her assignment-to-command order as an enclosure to the rated officer's report.

(2) An officer in a command position may rate an officer over whom he or she has command authority and who is senior in date of rank but ineligible by law or regulation to command troops other than those of his or her own branch, service, or department. In such cases, the rater will attach a copy of the written assumption of command as an enclosure to the rated officer's report.

(3) An officer who is selected for promotion and who is in an authorized position for his or her new grade may rate any officer he or she supervises if after the rater's promotion he or she will be senior to the rated officer.

(4) A civilian rater has no minimum grade requirement. However, he or she must be the officially designated supervisor of the rated officer.

(5) An officer in a joint headquarters or activity may rate an officer who is senior in date of rank provided that—

(a) The rater is not a US Army officer.

(b) The senior rater is at least one grade senior to the rated officer.

(c) Each instance will be approved in writing by the next senior Army member of the command or activity. A copy of the approval will be sent to HQDA as an enclosure to the OER.

d. Commanders will normally be rated by the next higher commander. An exception to this rule is allowed when a staff officer or higher level commander is the logical choice as the commander's immediate supervisor because of functional, geographical, or technical supervision requirements.

## 3–6. Responsibilities of the rater

The rater will—

a. Discuss the scope of the rated officer's duties with him or her within 30 days after the beginning of the rating period. (See para 4–7a.) This discussion will include, as a minimum, the rated officer's duty description and the performance objectives he or she should attain. The discussion may also include the relationship of the duty description and objectives with the organization's mission, problems, priorities, and similar matters.

(1) If the rated officer has been recently assigned to the organization, the rater may use the discussion to outline a duty description and performance objectives. This discussion gives the rated officer a guide for performance while he or she learns new duties and responsibilities.

(2) If the rater has been recently assigned, he or she might use this first discussion to ask the rated officer what he or she thinks the duty description and objectives should be. By doing this, the rater is given a quick assessment of the rated officer and the work situation. It will also help the rater develop the best duty description and performance objectives for that officer.

b. Counsel the rated officer throughout the rating period. DA Form 67–8–1 assists in this communication.

c. Advise the rated officer as to changes in his or her duty description and performance objectives, when needed, during the rating period.

d. Assess the performance of the rated officer, using all reasonable means. These include—

(1) Personal contact.

(2) Records and reports.

(3) The information provided by the rated officer on DA Form 67–8–1.

e. Review the DA Form 67–8–1 at the end of the rating period and, if appropriate, use it to provide more information about the job description or performance objectives to the intermediate rater and senior rater. The DA Form 67–8–1 is not the place for a performance evaluation.

f. Verify rated officer's APFT (Part IV a(3)) and height and weight (Part IV a(12)) data.

g. Provide an objective and comprehensive evaluation of the rated officer's performance and potential on DA Form 67–8. (See para 4–3 for definitions of performance and potential.)

## 3–7. The intermediate rater

a. The intermediate rater is a supervisor between the rater and senior rater in the rated officer's rating chain. The use of the intermediate rater is intended to maintain the link between the rater and senior rater in situations where there is a level of supervision between them. Rating chains having no supervisor between the rater and senior rater will not have an intermediate rater.

b. Normally, an intermediate rater must serve in that capacity for a minimum of 60 days in order to evaluate the rated officer. He or she may evaluate the rated officer with less than 60 days as an intermediate rater if he or she has also served as the rated officer's senior rater in a previously published rating chain, and the combined total of time served in the rating chain equals 60 days or more. For example, an officer serves in the rated officer's rating chain as the senior rater for 32 days. Then, because of organizational shifts, he or she becomes the intermediate rater, a new rating chain is published, and a new senior rater is designated. If a report is due 30 days from the time he or she became the intermediate rater, and the combined total time as a member of the rating chain is 62 days, he or she may evaluate as the intermediate rater. Other exceptions to this policy are given in sections II and III of chapter 5.

## 3–8. Rules for designating the intermediate rater

a. The intermediate rater must be an officer of the US or Allied Forces or an employee of a US Government agency (including nonappropriated fund employees). (See para 4–9c for restrictions on non-DOD rating officials.)

b. A military intermediate rater must be senior in grade or date of rank to the rated officer. A civilian intermediate rater has no minimum grade requirement; however, he or she must be an officially designated supervisor of the rated officer.

c. The intermediate rater will usually be the rater's immediate supervisor; however, he or she may be any supervisor between the rater and senior rater in the rated officer's chain of command. This rule is waived when the provisions of paragraphs 3–18 or paragraph C–4, appendix C apply.

## 3–9. Responsibilities of the intermediate rater

The intermediate rater will—

a. Assess the performance of the rated officer, using all reasonable means. These include—

(1) Personal contact.

(2) Records and reports.

(3) The rater's evaluation of the rated officer given on DA Form 67–8.

(4) The information provided by both the rated officer and the rater on DA Form 67–8–1.

b. If appropriate, provide information on DA Form 67–8–1 to assist the senior rater in his or her evaluation.

c. Render an objective evaluation of the rated officer's performance and potential on DA Form 67–8. (See para 4–3 for definitions of performance and potential.)

## 3–10. The senior rater

a. The senior rater is the senior rating official in the rating chain. The senior rater uses his or her position and experience to evaluate the rated officer from a broad organizational perspective. His or her evaluation is the link between the day-to-day observation of the rated officer's performance by the rater and intermediate rater and the longer term evaluation of the rated officer's potential by DA selection boards.

b. In addition to evaluating the rated officer, the senior rater normally performs the final rating-chain review (para 3–13 and 3–14).

(1) To evaluate the rated officer, the senior rater must normally serve in that capacity for a minimum of 60 calendar days. He or she may evaluate the rated officer with less than 60 days as a senior rater if he or she also served as the rated officer's intermediate rater in a previously published rating chain, and the combined total of time served in the rating chain equals 60 days or more. For example, an officer serves in the rated officer's rating chain as the intermediate rater for 32 days. Then, because of organizational shifts, he or she becomes the senior rater, a new rating chain is published,

and a new intermediate rater (if any) is designated. If a report is due 30 days from the time he or she became the senior rater, and the combined total of time as a member of the rating chain is 62 days, he or she may evaluate as the senior rater. Other exceptions to this policy are given in sections II and III of chapter 5.

(2) There is no minimum time-in-position requirement governing the senior rater's review function. He or she will perform that function regardless of the amount of time he or she has been in the position.

## 3–11. Rules for designating the senior rater

a. Basic rules are—

(1) The senior rater must be an officer of the US Armed Forces or an employee of DOD (including nonappropriated fund employees).

(2) Normally, the senior rater must be a supervisor above the rater and intermediate rater in the rated officer's chain of command or supervisory chain. Exceptions to this provision are given in paragraph 3–18.

(3) The minimum grade for a military senior rater is 04 (or a promotable 03 in a position authorized an 04 or higher). The minimum grade for a civilian senior rater is GS–14 or any member of the Senior Executive Service (SES). However, a civilian senior rater must be an officially designated supervisor of the rated officer serving at an appropriate level above the rater. Other rules on the required grades of senior raters are summarized in figure 3–1.

(4) In determining the eligibility of a senior rater the following should be considered:

(a) A senior rater who has been selected for promotion and who is in an authorized position for the new grade will be considered to be serving in the new grade. The symbol "P" will be put next to his or her current grade on DA Form 67–8 (para 4–11c(1)).

(b) A senior rater who has been selected for a promotion but is not in a position authorized his or her new grade will be considered to be serving in his or her current grade. The symbol "P" will not be put next to his or her current grade on DA Form 67–8 (para 4–11c(1)).

(5) The senior rater must be senior in grade or date of rank to the rated officer, the rater, and the intermediate rater. Exceptions to this rule are—

(a) A senior rater need not be senior in date of rank to the other members of the rating chain (rater and/or intermediate rater) if he or she is authorized by paragraph 3–5c (1), (2), or (3) to rate those other members of the rating chain.

(b) A senior rater need not be senior in grade or date of rank to a supervisor who is writing a letter report authorized by paragraph 3–18b(2) when a dual supervision situation exists.

b. Specific rules for senior raters are:

(1) To rate officers in the grades of warrant officer through major—

*(a)* Military senior raters must be at least two grades higher than the rated officer.

*(b)* Civilian senior raters must be at least GS–14 (or UA equivalent) to rate officers in the grades of warrant officer through captain.

*(c)* Civilian senior raters must be at least GS–15 (or UA equivalent) to rate officers in e grade of major.

(2) To rate officers in the grades of lieutenant colonel and colonel—

*(a)* Military senior raters must be at least one grade higher than the rated officer.

*(b)* Civilian senior raters must be at least GS–16 (or UA equivalent) to rate officers in the grade of lieutenant colonel.

*(c)* Civilian senior raters must be at least GS–17 (or UA equivalent) to rate officers in the grade of colonel.

(3) To senior rate officers in the grades of brigadier general and major general, the senior rater must be senior in grade or date of rank to the other members of the rating chain.

## 3–12. Responsibilities of the senior rater

The senior rater will—

*a.* Use all reasonable means to become familiar with the rated officer's performance. When practical, the following means should be used:

(1) Personal contact.

(2) Records and reports.

(3) The rater's and intermediate rater's evaluations of the rated officer given on DA Form 67–8.

(4) The information given by the rater and the rater and intermediate rater on DA Form 67–8–1.

*b.* Assess the ability of the rated officer. This involves placing his or her performance in perspective by considering—

(1) The rated officer's experience.

(2) The relative risk associated with the performance.

(3) The difficulty of the organization's mission.

(4) The adequacy of resources.

(5) The overall efficiency of the organization.

*c.* Insure that rating officials counsel the rated officer throughout the rating period on meeting his or her objectives and complying with the professional standards of the officer corps.

*d.* Consider the information on the DA Form 67–8–1 when evaluating the rated officer.

*e.* Evaluate the rated officer's potential relative to his or her contemporaries, as described in paragraph 4–16.

*f.* Insure that all the reports both the senior rater and his or her subordinates write are complete and provide a realistic evaluation.

## 3–12.1. Senior rater restart

A senior rater may restart an entire e, a single grade or any portion of his er profile by personally contacting the Evaluation Systems Office of MILPERCEN

TAPA (Appendix E). No restart will be made until the senior rater and the Evaluation Systems Office agree to the effective date and grades to be effected.

*b.* Senior raters are cautioned that a shift in rating philosophy without benefit of a restart may not convey the intended potential evaluation to selection boards and personnel managers.

## Section II
## Evaluation Reviews and Commander Inquiries

## 3–13. Required reviews

*a.* In most instances, the senior rater will accomplish the final rating-chain review. (Exceptions to this provision are in *b* below.) The reviewing official's responsibilities are listed in paragraph 3–14.

*b.* In addition to the senior rater's review, supplementary reviews will be conducted in certain situations—

(1) If the senior rater is a US Army officer (other than a general officer) also performing as the rater and there is no other US Army officer in the chain of supervision, an additional review by HQDA will be performed.

(2) If the senior rater is not a US Army officer, an additional review will be conducted by the first US Army officer above the senior rater in the chain of command. This officer will be designated by the commander establishing the rating chain and identified in the published rating chain. When such a review is conducted, the enclosure shown in appendix D must be used. If no US Army officer is available above the senior rater in the chain of command, an additional review by HQDA will be requested. (See also para 5–31 for procedures and app E for address.)

(3) All relief reports (para 4–28, 5–18) will be reviewed by the first US Army officer in the chain of command who is senior to the individual directing the relief. If the relief is directed by the rater or intermediate rater, the senior rater, provided he or she is a US Army officer, will perform the review. The actions to be taken in this review are in paragraphs 3–14*a* and *b.*

## 3–14. Review responsibilities

*a.* All reviewing officials will insure that—

(1) The rating chains are correct.

(2) The evaluations rendered by rating officials are examined and discrepancies are clarified or resolved.

(3) All members of the rating chain have complied with this regulation.

(4) All evaluation reports are submitted on time to HQDA.

(5) The communication process between the rater and rated officer has taken place as described in this regulation.

(6) DA Form 67–8–1 has been properly executed.

(7) Any comments by the rater and intermediate rater on DA Form 67–8–1 are consistent with the evaluations they rendered on DA Form 67–8.

(8) The DA Form 67–8–1 is returned to the rated officer after the senior rater has completed his or her evaluation except for reports where final review is provided by other than the senior rater. (See para 2–4*f.*)

*b.* In addition to the above, reviewers of relief reports will—

(1) Insure that the narrative portions of the OER contain factual information that fully explains and justifies the reason for the relief.

(2) Verify that any derogatory information on the OER is correct.

(3) Insure that the OER is prepared as prescribed by this regulation.

(4) Insure that the OER has been returned to the rated officer for comment (para 4–27).

(5) Review relieved officer's referral comments if submitted.

*c.* The procedures for reviewing reports are described in paragraphs 5–29*c* and 5–31.

## 3–15. Commander inquiry

When it is brought to the attention of a commander that a report rendered by one of his or her subordinates or by a member of one of his or her subordinate commands may be illegal, unjust, or otherwise in violation of this regulation, he or she will look into the matter. The commander will confine his or her inquiry to matters relating to the clarity of the report, the facts contained in the report, the compliance of the report with this regulation, and the conduct of the rated officer and members of the rating chain. The commander does not have authority to direct that an evaluation be changed; he or she may not use command influence to alter the honest evaluation of an officer by a rating official. The procedures used by the commander to process an inquiry are described in paragraph 5–30.

## Section III
## Special Evaluation Requirements

## 3–16. Loss of a rating chain member

Special rules apply when a rating chain member is unable to render an evaluation of the rated officer. These situations occur when a rating official dies, is declared missing, is relieved, or becomes mentally or physically incapacitated to such an extent that he or she is unable to submit an accurate evaluation. When a rating official is relieved or incapacitated, he or she will not be permitted to evaluate his or her subordinate. The following rules apply to these situations:

*a.* The removal of the intermediate rater or senior rater from the rating chain is treated as a routine change. A new rating official is designated, and may participate in the evaluation after completing the required minimum time in position.

*b.* When the rater is removed from the rating chain, it must be determined whether the minimum requirements for an evaluation report have been met (para 3–2*b* and 4–10*c*).

(1) If the minimum requirements have not been met, the period is nonrated and a new rater is designated.

(2) If the minimum requirements have been met, the intermediate rater will perform the rater's functions. However, the intermediate rater will do so only if he or she feels qualified to rate and has served in the rated officer's rating chain for a period of 90 or more calendar days. If there is no intermediate rater or if the intermediate rater does not feel qualified or has not met the 90-day requirement, the senior rater will perform the rater's function; but the senior rater will do so only if he or she feels qualified to rate and has served in the rating chain for 90 or more calendar days. If the senior rater does not feel qualified or has not met the 90-day requirement, the period will be nonrated. If a senior rater assumes the role of rater, he or she will serve as both rater and senior rater. (See para 4–16d(4).)

(3) When the intermediate rater or the senior rater performs the functions of the rater, the number of months in the rating period block (part I–m) is computed using the period the substitute rating official has been in the chain.

### 3–17. Supervisor serving as both rater and senior rater

a. In the following situations, a supervisor or commander who would normally act only as rater may also act as senior rater, providing he or she meets the minimum grade requirement necessary to be a senior rater, and providing the authority to do so has not been restricted by the next higher commander. These include reports made by—

(1) A general officer on his or her Aide-de-Camp.

(2) A commander on his or her Inspector General.

(3) A major general (includes a brigadier general in a major general's position) or higher.

(4) A brigadier general who is a commander.

(5) A rater who, under the normal rating chain rules, would cause the senior rating to be performed by one of the following senior officials, provided the senior official does not desire to serve as senior rater:

(a) The Secretary, Deputy Secretary, or the Under Secretaries of Defense.

(b) Assistant Secretaries of Defense.

(c) The Secretary or Under Secretary of the Army.

(d) Assistant Secretaries of the Army.

(e) Chairman, Joint Chiefs of Staff.

(f) The Chief of Staff, Army.

(g) The Vice Chief of Staff, Army.

(h) The Supreme Allied Commander, Europe.

(i) Commanders-in-Chief, Specified or Unified Commands.

b. It should be noted that the authority to act as both rater and senior rater does not extend to the rater of a general officer or

a promotable colonel in a general officer position, unless there is no senior official who could logically serve as senior rater.

### 3–18. Dual supervision

a. An officer is considered to be serving under dual supervision when he or she is supervised by, and assigned different duties by two separate chains of command or supervision throughout the entire rating period. (For example, a unit commander responsible to the unit chain of command for unit matters and to the installation commander for installation matters.) Support unit commanders whose primary mission is to support another unit are generally not serving under dual supervision since they are assigned the support mission and supervised in its execution by their parent units.

b. Both supervising chains of command will be represented in the rating chain. This can be accomplished by dividing the rating chain positions between the two supervisory chains of command or by using a letter report from a nonparent-unit supervisor.

(1) The preferred method is to divide the rating chain positions between the two supervisory chains of command. For example, the rater might be selected from the nonparent unit and the senior rater from the parent unit. As another alternative, the rater and senior rater might be selected from the parent unit and the intermediate rater selected from the nonparent unit. Important considerations in establishing the rating chain are the significance of the duties supervised by each chain of command and the seniority of the respective supervisors.

(2) When it is not practical to designate a nonparent-unit supervisor as rater, intermediate rater, or senior rater, this supervisor will submit written comments concerning the rated officer's duty performance to the designated rater. These comments will address that portion of the rated officer's duties directed by this supervisor. They will be prepared as described in appendix F and attached as an enclosure to the evaluation report. The nonparent-unit supervisor will evaluate only if he or she has been a designated member of the published rating chain for a minimum of 60 calendar days prior to the "Thru" date of the report. If the dual supervisor has not been in the position for the required 60 day period to evaluate, the senior rater in his or her review capacity will so indicate in Part VIIb.

c. The published rating chain will contain the notation "dual supervision" next to the rated officer's name. If the nonparent-unit supervisor is to render the evaluation on a letter-report enclosure to the DA Form 67–8, the notation "Letter" will be placed next to his or her name on the published rating chain.

d. When preparing an OER on an officer under dual supervision, the fact that an officer is performing under dual supervision must appear in the duty description. (See para 4–12e.)

### 3–19. Professors of military science

Professors of military science (PMS) are responsible to both a DOD chain of command and a non-DOD supervisory chain (the academic institution). In these cases, the rater, intermediate rater, and senior rater will be selected from the DOD chain of command. However, the academic institution may, at its option, submit a letter evaluation (app G). This letter is to be attached to the OER as an enclosure. The optional provision of this paragraph applies only to the officer designated as the PMS at an academic institution. It does not apply to officers designated as assistant or deputy PMS.

### 3–20. Special requirements for JAGC officers

Special evaluation requirements for JAGC officers are in appendix H.

### 3–21. Special requirements for AMEDD officers

Special evaluation requirements for Army Medical Department officers are in appendix I.

### 3–22. Special requirements for chaplains

Special evaluation requirements for chaplains are in appendix C.

## Chapter 4
## Evaluation Principles, Forms, and Procedures

### 4–1. General

a. This chapter discusses the principles and procedures used in evaluating an officer and the forms used to record the evaluation.

b. There are three forms used in the evaluation process: DA Forms 67–8, 67–8–1, and 67–8–2. DA Form 67–8 is used by the rating chain to evaluate the rated officer. DA Form 67–8–1 is used to assist in this evaluation, to assist in the professional development of the rated officer, and to support the accomplishment of the organization's mission. DA Form 67–8–2 is used by HQDA to track the senior rater's rating history. (See app J for samples of the forms.)

### Section I
### Evaluation Principles

### 4–2. Role of the rating official

The specific responsibilities of rating officials are described in chapter 3, and detailed instructions for completing evaluations are set forth in sections II through V of this chapter. Outlined below are the general principles that apply to the role of rating officials in the evaluation process.

a. Rating officials greatly affect a rated officer's performance and professional development. Thus, these officials must insure that the rated officer thoroughly understands the organization, its mission, his or

her role in support of the mission, and all of the standards by which his or her performance will be judged.

b. To render an objective evaluation, rating officials must use all opportunities to observe and gather information on the rated ____'s performance (chap 3).

____ating officials must prepare reports w____ are accurate and as complete as possible within the space limitations of the form. This responsibility is vital to the long-range success of the Army's missions. With due regard for the officer's current grade, experience, and military schooling, evaluations should cover failures as well as achievements. However, evaluations will normally not be based on a few isolated minor incidents.

d. Rating officials have a responsibility to balance their obligations to the rated officer with their obligations to the Army. Rating officials must make honest and fair evaluations of the officers under their supervision. On the one hand, this evaluation must give full credit to the rated officer for his or her achievements and potential. On the other hand, rating officials are obligated to the Army to be discriminating in their evaluations so that DA selection boards and career managers can make intelligent decisions.

## 4–3. Performance and potential evaluations.

Procedures for completing evaluations of performance and potential are set forth in se____ II through V of this chapter. Outli____ ___ow are the general principles to be use____ ___hen making evaluations.

a. Performance evaluations are judgments on how well the rated officer met his or her duty requirements and adhered to the professional standards of the officer corps. That is, performance is evaluated by considering the results achieved, how they were achieved, and how well the officer complied with professional values.

(1) "Results achieved" consists of the degree to which the rated officer fulfills the duties and objectives that are assigned to him or her or implied by the duty position. Due regard is given to—

(a) The efforts made by the rated officer.

(b) The results that could reasonably be expected given the time and resources available.

(2) "How results were achieved" consists of—

(a) The means used by the rated officer to reach his or her objectives.

(b) His or her use of available resources (e.g., personnel, equipment, money, and time).

(3) How well the rated officer complied with professional values is assessed by comparing his or her professional ethics and competence with the standards that apply to all o____ers. (See part IV, DA Form 67–8.)

____luations of potential are assessm____ ____ the rated officer's ability, compared with that of his or her contemporaries, to perform in positions of greater responsibility in higher grades. Note that this assessment of potential applies to all officers, regardless of their opportunity to be selected for higher positions or grades, and ignores such factors as impending retirement or release from active duty; this assessment is continually changing and is reserved for HQDA.

## Section II
## DA Form 67–8–1 (OER Support Form)

## 4–4. Purpose and use

a. The DA Form 67–8–1 (OER Support Form) is used by the rated officer and rating chain. The purpose of this form is to encourage the communication process between rater and rated officer and to permit the rated officer to describe his or her principal duties, objectives, and significant contributions. It may also include comments by the rater and intermediate rater. It is not the place to evaluate the rated officer. The DA Form 67–8–1 will be used by all rating officials, including those submitting letter reports. When an officer is serving under dual supervision, a DA Form 67–8–1 will be prepared for each chain of supervision.

b. At the beginning of the evaluation period the rater and rated officer will have a face-to-face discussion to develop a working copy of the rated officer's Support Form. The discussion will cover the rated officer's duties, responsibilities, and objectives and will result in an initial working copy of the Support Form. The working copy will contain the initials of both the rated officer and rater indicating the date of the initial discussion as well as the duty description and performance objectives. The significant duties and performance objectives may be prepared either by the rated officer or rater. This choice should depend on which of the two officers is more familiar with the local situation and specific mission requirements.

c. Throughout the evaluation period, the rated officer will maintain the working copy of the Support Form. The working copy will contain the initials of both rated officer and rater indicating the date of the initial discussion as well as the latest duty description and performance objectives. The rated officer will update the working copy to reflect the changes in duties and objectives as they occur.

d. At the end of the evaluation period, the rated officer will use the working copy to prepare a final DA Form 67–8–1 for use by the rating officials in making their evaluations. The rated officer should look back over the entire evaluation period to determine the most significant objectives and contributions in the preparation of the final Support Form.

## 4–5. The communication process

a. The face-to-face communication process between the rater and rated officer assists in developing the elements of the rated officer's duty description, responsibilities, and performance objectives. This process is used to achieve the purposes of the DA Form 67–8–1.

b. Through the communication process, the rated officer is made aware of the specific nature of his or her duty and may influence the decisions on what should be accomplished. The rater is better able to—

(1) Direct his or her subordinates.

(2) Plan for attaining the mission.

(3) Gain valuable information about the organization.

(4) Find better ways to accomplish the mission.

c. Using performance objectives enables the rater and rated officer to identify the rated officer's most important tasks, priorities, and major areas of concern and responsibility. There are many categories of objectives to be used. The following examples are to suggest some of the alternatives to be considered.

(1). Routine. Objectives that deal with repetitive duties. These duties do not ordinarily produce visible results; but if they are not properly done, there could be serious consequences. (Examples: Process administrative discharges within a 45-day period; carry out a program that ensures on time responses to suspense items.)

(2) Problem solving. Objectives that deal with problem situations. These objectives should allow time for dealing with problems without disrupting other objectives. (Examples: Prepare for logistical support for activating a battalion; reduce the sudden rise in the AWOL rate.)

(3) Innovative. Objectives that create new or improved methods of operation. These may involve a degree of risk because they are untried ideas. (Examples: Create and carry out a new property accountability system; develop and test a new maintenance program.)

(4) Personal development. Objectives that further the professional growth of the rated officer or his or her subordinates. These objectives should be oriented toward skills that will help either the rated officer or his or her subordinates in their careers or their job performance. These may be in any assigned specialty. (Examples: Complete a correspondence course or additional civilian education; improve a subordinate's knowledge in his or her area of responsibility by developing a study program of Army publications.)

(5) Special interest items. Several items have been identified as Armywide areas of special interest. In accordance with applicable regulations, officers tasked with responsibilities in these areas should include this information in the development of their DA Form 67–8–1. When applicable, rating officials should include rated officer performance associated with these special interest items in their overall assessment of performance on the OER. Areas identified for Armywide emphasis are listed below. This list is not all inclusive; commanders may establish their own special interest items and performance objectives.

(a) Civilian Position Management: AR 690–500.

(b) Internal Control Systems: AR 11–2.

(c) Audits: DOD Directive 7650.3.

(d) Safety: AR 385–10.

(e) Quality of Life: DA Pam 600-19.

(f) Contracting and Acquisition: DOD Directive 4245.9.

(g) Information Security Program: AR 380–5. The rating officials will consider and may evaluate the rated officer's discharge of any assigned security responsibilities. Rating officials are to comment on any action, behavior or condition that would constitute a reportable matter under Army security regulations and indicate if an appropriate report has been made.

(h) Natural Resources Management: AR 420–74 (Officers assigned to Civil Works activities will refer to ER 1130–2–400).

(i) Property Accountability: Unit Supply Update.

(j) Command Inspections, AR 1–201.

(k) Personnel Management Responsibilities for Army Civilian Employees, AR 10–20 and AR 600–200.

d. The fact that the rated officer and rater will initiate a Support Form at the beginning of the rating period provides impetus for the communication process. Natural encouragement is given to both rater and rated officer to discuss the rated officer's input during the rating period because the rated officer is required to maintain a working copy of the DA Form 67–8–1 during the period. This will ensure that entries will fall within command guidance and fit reality. The ultimate objective is to improve duty performance by providing the rated officer with a better understanding of his or her duties and requirements. The process seeks to resolve, early in the rating period, any misunderstanding or ambiguity.

e. If the communication process has been properly executed, the DA Form 67–8–1 can assist the rating chain in completing the OER. Since the Support Form accompanies the OER to the senior rater, it provides significant information from the rated officer's point of view to the entire rating chain. To emphasize the importance of this form in the evaluation process the rated officer and rater will verify their initial face-to-face discussion. The rater and intermediate rater must also review and sign the form before completing an OER.

f. The communication process should be adjusted to the local situation. The process is determined by the nature of the mission, the style and personality of the rater, and the experience of the rated officer. If the rated officer is the more recently assigned to the organization, the rater may, after discussing the organization's mission, problem areas, tasks, priorities and similar matters, outline a preliminary duty description and major performance objectives for future performance. If the rater is the more recently assigned, he or she might use the initial discussion to request suggestions from the rated officer on the appropriate duty description and objectives. If the rater and

rated officer arrive in the organization at the same time, the duties and objectives may be jointly developed. The process, as described in this regulation, does not attempt to force any specific type of leadership style on the rating chain. It is meant only to encourage and take advantage of increased mission-related communications.

g. The DA Form 67–8–1 provides an opportunity for the rated officer, rater, and intermediate rater to communicate with the senior rater. Although it is an official document covered by regulation, it will not be part of an official file used by selection boards or career managers. The senior rater will ensure that the completed DA Form 67–8–1 is returned to the rated officer when the OER is forwarded to HQDA.

### 4–6. Rated officer's responsibilities

a. Within the first 30 days of the evaluation period, the rated officer will have a face-to-face discussion with the rater concerning duties, responsibilities, and performance objectives. As a result of this discussion the rated officer will maintain a working copy of the Support Form with principal duties and objectives. Correspondence and telephone conversations may be used as alternatives because of geographic separation; followed by a face-to-face discussion at the earliest opportunity. Submitting written performance objectives for approval at the beginning of the rating period without a follow-up face-to-face discussion is an unacceptable shortcut. Rated officers serving under dual supervision will have face-to-face discussion with both supervisors. The rated officer will verify the face-to-face discussion by dating and initialing Part III of the working copy of the Support Form.

b. The rated officer will maintain a working copy of the Support Form with duties and objectives throughout the rating period. The rated officer will make additions or deletions to his or her duties and objectives on the working copy as changes occur. Rated officers serving under dual supervision will develop and maintain separate working copies of their Support Form.

c. The rated officer will prepare the final Support Form at the end of the rating period. The rated officer will enter the date of the original face-to-face discussion and reenter his or her initials. The final DA Form 67–8–1 will be considered by the rating officials in preparing the DA Form 67–8. Rated officers serving under dual supervision will prepare a final Support Form for both supervisors.

(1) The rated officer will enter the duty title and position code in Part IVa that most accurately describe the principal duty performed. The description of the duty must be clear and concise. The rated officer should describe the normal requirements of the duty position rather than the changing tasks associated with the position. The rated officer should be specific and emphasize the required functions, conditions peculiar to

the assignment and the scope of responsibility to include, where applicable, dollars, facilities, people and types and amount of equipment.

(2) The rated officer may enter all or only the most significant of the assigned objectives for the evaluation period at Part IVb.

(3) The rated officer may enter all, or only the most significant, of his or her contributions for the evaluation period at Part IVc.

d. When the rated officer refuses to complete part IV, DA Form 67–8–1, on the grounds that the entry is voluntary under the Privacy Act, he or she will enter this statement instead: "I do not desire to submit the information requested in this section. I realize that I am willingly surrendering my opportunity to have this information considered in my evaluation and that my OER will be prepared without benefit of this information."

### 4–7. Rater's responsibilities

a. The rater will have a face-to-face discussion with the rated officer concerning duties, responsibilities and performance objectives. This discussion will be held within the first 30 days of the rating period. This is a shared responsibility with the rated officer. Correspondence and telephone conversations may be used as an alternative because of geographic separation, followed by a face-to-face discussion at the earliest opportunity. Simply requiring the rated officer to submit written performance objectives at the beginning of the rating period and approving them without follow-up discussion is an unacceptable shortcut of this provision. This discussion will enable the rated officer to identify his or her principal duties and objectives. The rater will verify the face-to-face discussion by initialing part III of the working copy of the Support Form. The rater will forward a copy of the draft DA Form 67–8–1 to the senior rater.

b. The rater will identify the rated officer's complete rating chain at the beginning of the rating period. The rater will notify the rated officer of changes to the rating chain. The rater will use the rating chain described at paragraph 1–5a(3) as the primary reference.

c. The rater will ensure that a rated officer serving under dual supervision (para 3–18) is notified of the additional chain of supervision. An officer acting as the additional rating official in a dual supervision situation will also assume the appropriate responsibilities of rater in developing the separate Support Form.

d. Throughout the rating period, the rater will discuss new or altered duties and objectives with the rated officer. This should be accomplished during periodic coaching and counseling.

e. The rater will review the final DA Form 67–8–1 when he or she is preparing the DA Form 67–8. The duty description a Part III and the performance narrative a Part V of the DA Form 67–8 may includ information from the rated officer's fin[...]

12

DA Form 67–8–1. However, the choice of what to enter on the OER is the rater's.

f. The rater will reenter his or her initials at Part III of the final Support Form to verify the date of the original face-to-face discussion. The rater will sign and date Part of the final Support Form acknowledging he or she has reviewed it. Comments are optional, except to explain the delay or absence of the initial face-to-face discussion. (See para 4–7a.) This is not the place to evaluate the rated officer but is an appropriate place to address the accuracy of the rated officer's duty description, performance objectives and contributions for the intermediate or senior rater.

## 4–8. Intermediate rater responsibilities

The intermediate rater will review the final DA Form 67–8–1 when he or she is preparing the DA Form 67–8. The narrative at Part VI of the DA Form 67–8 may be based on the rated officer's final DA Form 67–8–1. The intermediate rater will sign and date section Vb of the final Support Form acknowledging he or she has reviewed it. Comments are optional. This is not the place to evaluate the rated officer but is an appropriate place to evaluate the rated officer's performance objectives and contributions or to provide comments to the senior rater.

## 4–8.1. Senior rater responsibilities

e senior rater will review the draft DA rm 67–8–1 to be familiar with the rated officer's responsibilities and objectives. The senior rater will review the completed DA Form 67–8–1 at the time he or she is preparing the OER. The narrative at Part VIIb of the DA Form 67–8 may be based in part on the rated officer's final DA Form 67–8–1. The senior rater will ensure that the DA Form 67–8–1 is returned to the rated officer when the completed DA Form 67–8 is forwarded to HQDA.

## Section III
## DA Form 67–8 (OER)

## 4–9. Purpose and use

a. DA Form 67–8 (OER) is used by rating chain members to provide DA with performance and potential assessments of each rated officer.

b. DA Form 67–8 also provides evaluation information for use by successive members of the rating chain, emphasizes and reinforces professionalism, and supports the speciality focus of OPMS.

c. Only military and civilian employees of DOD, including nonappropriated fund employees, may use the DA Form 67–8 for their evaluations. All non-DOD employees serving as rating officials will submit their valuations in a letter report, as set forth in endix G.

## 4–10. Part I, Administrative Data

a. Part I is for administrative data and for identifying the rated officer, the period

of the report, and the reason for submitting the report.

b. Part I is completed by the servicing PSC or administrative office.

c. The following is an explanation for use in computing the evaluation period, nonrated periods, and the number of rated months.

(1) The "Period Covered" (item 1 on DA Form 67–8) is the period extending from the day after the "Thru" date of the last report to the date of the event causing the report to be written. The rating period is that period within the "Period Covered" during which the rated officer serves in the same position under the same rater who is writing the report. The "Period Covered" and the rating period always end on the same date (the "Thru" date). However, the beginning date of the rating period may not be the same as that of the "Period Covered" (the "From" date). For example, an officer departs on PCS on 1 July and is given a change-of-duty report with a "Thru" date of 30 June. After 5 days in travel and 20 days on leave, he or she reports for duty in his or her new unit on 26 July. Then on 1 November he or she changes duty and is given a change-of-duty report. The "Period Covered" on this report would be 1 July ("From") to 31 Oct ("Thru"); however, the rating period would be from 26 July to 31 October. (The entry for item q for this example would be "25 days PCS leave & travel" or "25 days Casual.")

(2) Nonrated periods are determined by the status of the rated officer. There are three distinct types of nonrated periods. They are described below and in figure 4–1.

(a) Periods, regardless of the number of days, between the date an officer departs one duty position and begins performance in a new duty position. In the example in (1) above, 1 July to 25 July would be a nonrated period.

(b) Periods, regardless of the number of days, spent performing in a duty position during which the rated officer or the rater does not meet the minimum time requirement for a report to be rendered. This includes periods spent at school for which an academic evaluation report is not required. In the example in (1) above, had the rated officer changed duty on 1 October rather than 1 November, the period 26 July to 30 September would also be nonrated. (The entry for item q for this example would be 25 days PCS leave and travel; 67 days change of duty.")

(c) Periods totaling 30 or more consecutive days that occur during the rating period and that are spent in one or more of the following ways:

(1) On leave.

(2) AWOL.

(3) In the hospital.

(4) In confinement.

(5) Under arrest.

(6) On permissive TDY.

(7) On temporary duty (TDY) or special duty (SD) serving as a member of a DA selection board or a court-martial.

(8) On TDY or SD attending a course of instructions scheduled for less than 60 calendar days.

(9) Attendance at Combined Arms Service and Staff School (CAS3)

Note: With the exception of CAS[3] attendance at a career progression course of any length and at other courses more than 60 days in length is rated on an academic evaluation report in accordance with AR 623–1.

(d) All periods of TDY or SD other than those mentioned in 7 and 8 above are rated periods. (See table 5–1.)

(3) To determine if the rated officer has the number of days needed for a report, determine the rating period. That is, count the number of calendar days the rated officer has served under his or her present rater in his or her present duty position since the beginning of the rating period. Deduct from this total all nonrated periods of the type described in (2)(c) above. Do not count nonrated periods that occurred prior to the rating period. If the resulting number of days is equal to or greater than the minimum number of days needed for a report, a report may be submitted.

(4) The number of rated months (item m, part I, DA Form 67–8) is computed by dividing the basic rating period ((3) above) by 30. Do not use the "Period Covered" by the report. If 15 or more days are left after dividing by 30, they will be counted as a whole month. (For example, 130 days is 4 months and 10 days and is entered as 4 months; 140 days is 4 months and 20 days and is entered as 5 months.)

d. With the exception of items o and p, all of the following items must be completed before sending the report to the rated officer for authentication.

(1) Items a and b. Self-explanatory. Name will be capitalized.

(2) Item c. Enter authorized abbreviation (e.g., CPT, LTC). If the rated officer has been selected for promotion and is serving in an authorized position for the grade to which he or she is to be promoted, enter a "P" next to his or her current grade (e.g., CPTP, LTCP). If the rated officer is not assigned to a position authorized the higher grade, do not use the "P". (para 3–2 c and d and 4–16d). If the rated officer has been frocked to a higher grade and is serving in an authorized position for the grade to which he or she has been frocked, enter the frocked grade. If the rated officer has been frocked to a higher grade and is not yet serving in an authorized position requiring the higher grade enter the lower grade.

(3) Item d. Enter the date of rank for grade in which serving as of the "Thru" date of the report. If the rated officer has been frocked to a higher grade and is serving in an authorized position for the grade to which he or she has been frocked, enter the effective date of the frocking. If the rated officer has been frocked to a higher grade and is not yet serving in an authorized position requiring the higher grade enter the date of rank of the lower grade.

(4) *Item e.* Enter basic branch abbreviation. For general officers enter GO. For warrant officers enter the HQDA Management group, e.g., "MM", "GA", etc.

(5) *Item f.* Enter the codes which identify the commissioned officer's designated branch, functional area or skills. For special branch officers, enter the officer's primary specialty skill identifier. For general officers, enter OOB.

(6) *Item g.* Enter PMOS for warrant officers.

(7) *Item h.* Enter code for the rated officer's station.

(8) *Item i.* Self-explanatory.

(9) *Item j.* Enter the code and reason for which the report is being submitted. These codes are in appendix K.

(10) *Item k.* Enter code for rated officer's MACOM (app K).

(11) *Item l.* "From" date is the day following the last day ("Thru") in the preceding report. The "Thru" date is the date of the event that is the reason for the report except for change of duty and change of rater reports. The "Thru" date on change of duty and change of rater reports will be the day before the change. For rated officers signing out on terminal leave, the "THRU" date will be the date prior to the day that terminal leave begins.

(12) *Item m.* Enter the number of rated months. (See *c*(4) above.)

(13) *Item n.* Enter four-character alphanumeric PSC code of the rated officer's servicing PSC.

(14) *Item o.* Check box indicating disposition of rated officer's copy of the report.

(15) *Item p.* Enter the forwarding address provided by the rated officer if he or she left before getting a copy of the completed OER.

(16) *Item q.* List and explain all nonrated periods. (See *c*(2) above.)

## 4–11. Part II, Authentication

*a.* Part II is for authentication by the rated officer and rating officials after each has completed his or her parts of the form at the end of the rating period.

*b.* Part II is completed by the PSC or administrative office by entering the names, ranks, positions, and SSN of the rating officials. Authentication data will not be entered for a nonparent-unit supervisor who is submitting a letter-report enclosure in accordance with paragraph 3–18*b*(2).

*c.* Detailed instructions for this part are as follows:

(1) When the report is initiated, the PSC will insure that data identifying the rating officials are accurately entered on the report. It will also insure that duty assignment entries show position titles. All grade entries will be the current (as of the "THRU" date) grades with a "P" added, if appropriate. The senior rater's grade will have a "P" added only if he or she is in an authorized position for the grade to which he or she is to be promoted. Rating officials who have been frocked to a higher grade and are serving in an authorized position for which he or she has been frocked will enter the frocked grade.

(2) For rating officials who are not US Army officers, in addition to their rank, enter their pay grades. For example, a US Navy Captain would be entered as CAPT, 0–6, USN. A civil service senior rater would be entered as GS–(14–18). For members of the Senior Executive Service, "SES" will be entered in lieu of a grade.

(3) The rated officer enters his or her most recent Army Physical Fitness Test (APFT) performance and height and weight data in part IV. (See para 4–13*b*(2), (4) for instructions.) The rated officer then signs and dates the report before sending it to the rater. The rated officer's signature verifies the accuracy of the administrative data in part I (except item *o*), the rating officials in part II, and the APFT and height and weight data in part IV. This action increases administrative accuracy of the OER since the rated officer is most familiar with and interested in this information. Confirmation of the administrative data also will normally preclude an appeal by the rated officer based on inaccurate administrative data, which by the exercise of due diligence by the rated officer would have been corrected. The rated officer may sign the report before the "Thru" date of the report.

(4) If the rated officer is unable or fails to sign the DA Form 67–8 because of administrative inaccuracy, the senior rater will resolve the problem. If it cannot be resolved satisfactorily, the senior rater will explain why in DA Form 67–8, part VIIb. If the rated officer signs the report after any of the rating officials, the reasons for this must also be explained by the senior rater in part VIIb. The report will not be delayed because it lacks the rated officer's signature.

(5) Each rating offical signs and dates the report before sending it to the next rating official or HQDA. Their signatures verify all entries on the form at the time of their respective signatures. The date entered will not be prior to the "Thru" date or the date of the rated officer's or any preceding rating offical's signature.

(6) Rating officials who will be signing the form but not giving a rating or who will be submitting their evaluation on a letter report will place an "X" in the small box on the left side of their respective signature blocks. Otherwise this block will be left blank. This box controls the computer editing of the OER at HQDA and has nothing to do with the rating.

(7) Additional PSC responsibilities in part II are as follows:

(a) After the report has been completed, the PSC will insure that rating officials have signed the report; and it will advise the appropriate rating officials of any discrepancies noted before further processing.

(b) Leave item *c* blank.

(c) Enter in item *f* initials of rated officer's military personnel officer before forwarding the OER to HQDA. This entry attests that the report has been administratively reviewed.

(d) If the senior rater's PSC is not the rated officer's PSC, enter in item *g* initials of senior rater's military personnel officer before forwarding the OER to HQDA or returning the completed OER to the initiating PSC. This entry attests that the report has been administratively reviewed. (See para B–2c in app B.)

(e) Indicate in item *h* total number of enclosures. If there are no enclosures enter "O".

## 4–12. Part III, Duty Description

*a.* The duty description—

(1) Is entered in part III by the rater and is based on the rated officer's entries on the DA Form 67–8–1, if appropriate.

(2) Is an outline of the normal requirements of a specific duty position.

(3) Should show type of work required rather than frequently changing tasks.

*b.* Enter in item *a* the principal duty title.

*c.* Enter in item *b* the position requirement code which identifies the officer's duty position. This entry will contain, as a minimum, the first five characters of the position requirements code; seven characters if an additonal skill identifier (ASI) is needed; or nine characters if a language identification is required.

*d.* In item *c* the rater will describe in detail the rated officer's duties and responsibilities. Descriptions must be clear and concise and must emphasize specific functions required of the rated officer. The rater should also note conditions peculiar to the assignment. For example, active component officers who are assigned to full-time support duties with reserve component units or reserve component officers assigned to active units often perform functions which are peculiar to that duty. In order to insure that due consideration is given to these factors, the duty description should note these conditions. As a minimum, the description will include, principal duties and significant additional duties: When a warrant officer is serving in a commissioned officer position, cite in Part IIIc the approval authority from HQDA, (AR 611–112, para 1–7e). Part IVa of DA Form 67–8–1 should be helpful in completing this section.

*e.* When an officer is serving under dual supervision, the statement "Officer serving under dual supervision" will be entered as the first line of the duty description. If the nonparent-unit supervisor is to give his or her evaluation in a letter report, the first line of the duty description will state: "Officer serving under dual supervision, enclosure attached." If the nonparent-unit supervisor is not providing an enclosure, the duty description will be jointly developed by the supervisors in each chain of command.

## 4–13. Part IV, Performance Evaluation—Professionalism

*a.* Part IV of DA Form 67–8 is completed by the rater, except for the Army Physical Fitness Test (APFT) performance entry in part IVa, item 3, and the height and weight entry in part IVa, item 12, which ar

entered (typed) by the rated officer. Part IV lists those attributes that define professionalism for the Army officer. These attributes apply across all grades, positions, branches, d specialties. They are the professional .hics needed to maintain public trust and confidence and the qualities of leadership and management needed to maintain an effective officer corps. These attributes are on the DA Form 67–8 to emphasize and reinforce professionalism. They will be considered in the evaluation of the performance of all officers.

b. Detailed instructions for completing part IVa–Professional Competence are as follows:

(1) *Block a–Professional Competence.* Indicate on a scale of 1 to 5, 1 being high, how well each statement describes the rated officer. Any comments on strengths or weaknesses will be placed in the comments part of block b. Comments, if provided, will refer to a specific attribute. Sample reference: "(a.5) This officer's calm, confident manner sets the example for his soldiers." Exceptional performance or unsatisfactory performance will be noted in the comments part of block b. Rater comments are mandatory in part IVb to explain or clarify ratings of 4 or 5 in part IVa. Rater comments are also required for certain entries related to APFT or height/weight entries (para 4–13.1).

(2) *Block a, items 4 and 6.* When the rat- officer has no subordinates, "NA" (not licable) may be placed in these blocks. .ese are the only items which may reflect "NA."

(3) *Block a, item 13, Support EO/EEO.* Rating officials will consider the extent and effectiveness of an officer's involvement in and support for equal opportunity (EO). When the rated officer has equal employment opportunity responsibilities (able to influence personnel actions affecting Army civilian employees), the extent and effectiveness of the involvement in EEO will also be considered. Actions to consider in EO and EEO, when applicable) include—

(a) Commitment to affirmative action goals.

(b) Procedures for selection, assignment, and training.

(c) Procedures for recognition and discipline.

(d) Procedures for grievance handling.

c. Detailed instructions for completing part IVb—Professional Ethics are as follows:

(1) Comment on any of these eight professional ethics in which the rated officer is outstanding or needs improvement.

(a) *Dedication.*—Commitment to the goals and missions of the Army and the country.

*b)* Responsibility—Acceptance of com- responsibility for the mission and wel- of the organization.

(c) Loyalty—Faithful and willing support of subordinates, peers and superiors.

(d) Discipline—Willing and intelligent obedience to regulations and lawful orders

and the initiation of appropriate actions in the absence of orders.

(e) Integrity—Honest in word and deed.

(f) Moral courage—Willingness to candidly state and resolutely support one's convictions; not a "yes-man."

(g) Selflessness—Willingness to subordinate self and career for the mission and organization.

(h) Moral standards—Maintains high standards of personal conduct on and off duty.

(2) Comment if provided, will refer to a specific ethic. Sample reference: "(b.2) This officer's acceptance of responsibility for his unit's welfare reflects his maturity as a leader."

## 4–13.1. Part IV, Height Weight/APFT

a. The rated officer will enter (typed) Army Physical Fitness Test (APFT) results in part IVa, item 3, and the height and weight data in part IVa, item 12. These entries will be verified by the rater when he or she completes part IVa. If any of these entries are missing, regardless of the reason, the rater will explain the absence in part IVb.

b. Detailed instructions for completing APFT entries at part IVa, item 3 are as follows:

(1) In the space after the phrase "Maintains appropriate level of physical fitness," the rated officer will enter (typed) "PASS" or "FAIL" and the year and month of that APFT result; or "PROFILE" and the year and month the profile was awarded. These entries will reflect the officer's status on the date of the most recent APFT administered by the unit as of the thru date of the report. Sample entries are: "PASS 8601," "FAIL 8602," or "PROFILE 8603". APFT numerical scores will not be entered.

(2) The rater uses the scale of 1 to 5 to evaluate the rated officer's physical fitness. The rater will explain an APFT entry of "FAIL" or "PROFILE". Comments on "FAIL" entries will address reasons for failure and note any progress toward meeting physical fitness standards. (AR 350–15). Comments on "PROFILE" entries will describe the rated officer's ability to perform assigned duties.

(3) If the APFT has not been taken within 12 months of the thru date of the report the APFT data entry will be left blank. The rater will explain the absence of an APFT entry in part IVb.

(4) An APFT entry is not required for pregnant officers who are exempt from the APFT in accordance with AR 40–501. For officers who have not taken the APFT within the last 12 months due to pregnancy, convalescent leave and temporary profile, the rater will enter (a.3) "Exempt from APFT requirement IAW AR 40–501." at part IVb.

(5) An APFT entry is not required for officers age 40 and over who have not taken the APFT within the last 12 months due to the requirements of the cardiovascular screening program. The rater will explain

the reasons for the absence of the APFT entry at part IVb. The most common explanations are (a.3) "Cardiovascular screen not completed", (a.3) "Cardiovascular screen completed, but no medical clearance to take the APFT.", or (a.3) "Cardiovascular screen completed, medical clearance granted and officer waiting next APFT."

c. Detailed instructions for completing height and weight entries are as follows:

(1) In the space after the phrase "Possesses military bearing and appearance" the rated officer will enter (typed) his or her height and weight as of the rated officer's signature date on the report and an entry of "YES" or "NO" to indicate compliance or noncompliance with AR 600–9. Sample entries are: "72/180 YES" "71/225 NO", or "73/215 YES".

(2) The "YES" or "NO" entry is not required for officers who exceed the weight for their height indicated by the screening table of AR 600–9, but have not completed the body fat examination. However, the rater will explain the reason for the absence of the entry. A sample entry is (a.12) "Officer is awaiting appointment to determine percent of body fat. An officer who exceeds the screening table weight may enter "YES" only after a body fat measurement has been completed and he or she is found to be within the body fat standard.

(3) The rater will comment on a "NO" entry, indicating noncompliance with the standards of AR 600–9. These comments should indicate the reason for noncompliance; medical waivers to weight control standards should be noted and the progress or lack of progress in weight control program should be indicated.

(4) The rater will comment on an entry of "YES" when an officer exceeds the weight for height screening table limit but through a body fat examination is determined to be in compliance with the body fat standards of AR 600–9. The rater will enter the following statement at part IVb: (a.12) "Meets body fat standard of AR 600–9."

(5) For pregnant officers, the entire entry is left blank. The rater will enter the following statement at part IVb: (a.12) "Exempt from weight control standards of AR 600–9."

## 4–14. Part V, Performance and Potential Evaluation (Rater)

a. Part V of the form provides for the rater's evaluation of the rated officer's performance and potential. (These evaluations are further defined in para 4–3.)

b. In part V, the PSC indicates with a block check whether this assignment is in one of the rated officer's specialties/MOSs. This is done to remind rating officials of this information when they are making their evaluations. DA selection boards and career managers will also be aware of the specialty information when the reports are reviewed at HQDA.

c. Detailed instructions for this part are as follows:

(1) *Block a.* PSC or administrative office enters rated officer's name and SSN and indicates whether the branch, functional area, skill or MOS for the assigned duty is one of the rated officer's branch, functional area, skill or MOS.

(2) *Block b.* Rater compares the rated officer's performance with the duty requirements. The focus is on results and how they were achieved. Rater places an X in the appropriate box.

(3) *Block c.* Rater comments on specific aspects of performance only. These comments are mandatory. Comments on the rated officer's potential or what should happen to him in the future are not permitted in this block. As a minimum, the comments should address—

(a) Key items mentioned in the duty description in part III.

(b) The duty description, objectives, and contributions mentioned on the OER Support Form, if appropriate.

(4) *Block d.* Completed by rater. By placing an X in the appropriate box, the rater compares the rated officer's potential for promotion with that of his or her contemporaries (para 4–3). The "Other" box in block d is for cases that do not fit the promotion recommendations that are given. For example, this box may be used for warrant officers in grade CW4. The rater may also use the "Other" box for colonels (0–6) if he or she wishes to recommend retention on active duty without advocating promotion to brigadier general. When this block is used, a potential evaluation must be included in Part V e. The "Other" block may also be used for those reports made according to paragraph 5–11, if the rater decides it is appropriate. This block may not be used with entries in block e as a gimmick to highlight promotion recommendations. These recommendations are more appropriately described by other blocks.

(5) *Block e.* Completed by rater. The rater amplifies his or her potential evaluation (para 4–3); his or her comments are mandatory. Comments need not be limited to discussion of promotion potential; they may focus on any aspect of what ought to happen to the rated officer in the future, such as assignments and education. If the rated officer is retiring, or is being released to the USAR after 20 or more years of active duty, the rater will indicate the grade and assignment for which the officer should be recalled to active duty in the event of mobilization (e.g., grade of colonel, installation DPCA). This applies only if the report is the rated officer's last active duty report.

### 4–15. Part VI, Intermediate Rater (if applicable)

a. This section is for the intermediate rater's evaluation of performance and potential, if applicable. This is the only part of the report that is completed by the intermediate rater.

b. Comments by the intermediate rater are mandatory. If the intermediate rater has

not been in the position the minimum number of days necessary to evaluate the rated officer, he or she will enter the following statement: "I am unable to evaluate the rated officer because I have not been (his or her) intermediate rater for the required number of days."

c. If the intermediate rater performs the functions of the rater, as authorized in paragraph 3–16b(2), he or she will complete the rater's parts of the form. In this case, part VI will only cite the authority and reasons for assuming the rater's responsibilities.

### 4–16. Part VII, Senior Rater

a. Part VII of the DA Form 67–8 provides for an evaluation of potential by the senior rating official. To insure that the senior rater is a senior official with a broad organizational perspective, minimum grade requirements are set forth in paragraph 3–11.

b. The senior rater's evaluation is made by comparing the rated officer's potential with all other officers of the same grade, or grade groupings, in the case of lieutenant. His or her evaluation is based on the premise that in a representative sample of 100 officers of the same grade grouping (Army-wide), the relative potential of such a sample will approximate a bell-shaped normal distribution pattern.

c. This distribution pattern is shown in the senior rater's portion of the OER. The pattern means that in a representative sample of 100 officers of the same grade, or grade grouping, (Army-wide) only one officer can reasonably be expected to be placed in the top block. The probability of having an officer of such potential is 1 in 100.

d. Detailed instructions for this part are as follows:

(1) *Block a.* The potential evaluation is made as described above. The rating is completed by placing an X in the appropriate box of the "SR" column. Additionally, the senior rater will indicate receipt and review of the rated officer's DA Form 67–8–1 by placing an X in the "Yes" or "No" block.

(2) *Block b.* The senior rater enters comments in this block. In most cases, these will address the potential evaluation. However, they may address performance, the administrative review, or the evaluations by the rater and intermediate rater. Anything unusual about the report will also be noted here (e.g., APFT and height and weight data or explanatory comments if not included; the inability or refusal of the rated officer to complete a DA Form 67–8–1; rated officer's signature out of sequence; changes in an evaluation resulting from rated officer's comments; multiple referrals to the rated officer; and similar events). If the senior rater's evaluation is based on infrequent observation of the rated officer, he or she may note this fact in his or her comments.

(3) *Comments mandatory.* Comments by the senior rater are always mandatory. When the senior rater has not been in the position the minimum number of days necessary to

render a report, he or she will enter the following statement: "I am unable to evaluate the rated officer because I have not been (his or her) senior rater for the required number of days."

(4) *Senior rater serving as rater.* In those cases where the senior rater is also serving as the rater, he or she will complete the rater's portion of the report and the senior rater's potential evaluation in part VIIa. Part VIIb, senior rater's comments, need not be used to evaluate the rated officer but must be used to cite authority for his or her acting as both rater and senior rater. This part will also describe any exceptional circumstances as described in (2) above. (See also para 3–16b(2), and 3–17.) The senior rater will sign the report in both the senior rater's and the rater's signature blocks.

(5) *"DA use only" column.*

(a) This column is used by DA to record the senior rater's rating history (profile). The profile will contain all OERs rendered by the senior rater for the rated officer's grade or grade grouping and accepted as correct by DA. The purpose of the profile is to place the rated officer's OER in perspective by revealing the senior rater's general rating tendency. The grade in which a promotable rated officer is considered to be serving is determined by the manner in which his or her grade is entered in part Ic, DA Form 67–8. (See para 3–2c and d.) For example, a MAJ selected for promotion and in a position authorized his or her new grade will be profiled as a LTC. A MAJ selected for promotion but not serving in a position authorized his or her new grade will be profiled as a MAJ.

(b) The senior rater's profile is computed at HQDA showing only those officers who are listed on the Officer Master File maintained at MILPERCENTAPA. The profiling of U.S. Army Reserve and Army National Guard officers is discussed in chapters 7 and 8.

## Section IV
## Restrictions Applying to DA Form 67–8

### 4–17. Each report must stand alone

a. Each report will be an independent evaluation of the rated officer for a specific rating period. It will not refer to prior or subsequent reports. It will not remark on performance or incidents occurring before or after the rating period. The determination of whether an incident occurred during the rating period must be based on the date of the actual incident or performance; it will not be based on the date of any subsequent acts, such as the date of its discovery, a confession, or finding of guilt, or the completion of an investigation. Guidance concerning modification of previously submitted reports is in chapter 5, section V.

b. Exceptions to this policy are granted only in the following situations:

(1) Relief for cause reports based on information pertaining to a previous reporting

period. (Example: a rating official may relieve an officer found to be involved in some illegal activity during a previous reporting period; he or she may refer to the prior rat-~g period to explain the reasons for relief ra 5–18d).)

l) A marked change in performance occurs since the previous report in the same duty position. Such a change is the basis for submitting a complete-the-record report (para 5–21a).

(3) A senior rater evaluates an officer previously rated after restarting his or her senior rater profile. (Restart can only be effected through coordination with the Evaluation Systems Office, HQDA (DAPC-MSE).) This exception allows the senior rater to clarify an evaluation which might appear to result from a change in rated officer potential when the evaluation actually results from a change in his or her senior rating philosophy.

(4) The most recent APFT performance or profile data occurred prior to the beginning date of the report. This exception is allowed only to permit the rated officer to comply with the requirements of para 4–11c(3).

(5) The rated officer's entry of the height/weight as of the date he or she authenticates the report as Part IId. This exception is allowed only to permit the rated officer to comply with the requirements of paragraph 4–13b(4).

**3. Comments limited to the form**
Except for reports written on general officers, comments will not exceed the space provided on DA Form 67–8. In preparing these comments, rating officials must write a precise but detailed evaluation to convey a meaningful description of an officer's performance and potential. In this manner, both the selection board and the career manager are given the needed information on which to base a decision. When a DA Form 67–8 is prepared on a general officer, it may include an expanded narrative as an enclosure to the report.

**4–19. Narrative gimmicks prohibited**
A thorough evaluation of the officer is required. The following techniques will, therefore, not be used:

a. Brief, unqualified superlatives, or phrases, particularly if they may be considered trite.

b. Too brief comments. They frequently need to be interpreted by the selection board and the career manager. If not correctly interpreted, the best interests of the Army and the rated officer are not served.

c. Any technique aimed at making specific words, phrases, or sentences stand out from the rest of the narrative, including, but limited to, the following:

(1) Underlining.

(2) Excessive use of capital letters.

(3) Unnecessary quotation marks.

(4) Wide spacing between selected words, phrases, or sentences of the narrative, to include double spacing within a paragraph or between paragraphs.

(5) Italics and similar techniques.

(6) Hand written comments.

(7) Exaggerated margins.

**4–20. Changes to an OER**
Except to comply with this regulation, no person may require changes be made to an OER. However, members of the rating chain and the PSC will point out obvious inconsistencies or errors to the appropriate rating officials. After needed corrections are made, the record copy will be sent to HQDA. (See also paras 1–6, 3–13, 3–14, and 3–15.)

**4–21. No references made to unproven derogatory information**
a. No reference will be made to an incomplete investigation (formal or informal) concerning an officer.

b. References will be made only to actions or investigations that have been processed to completion, adjudicated, and had final action taken before submitting the OER to HQDA. If the rated officer is absolved, comments about the incident will not be included in the OER.

c. This restriction is intended to prevent unverified derogatory information from being included in evaluation reports. It will also prevent information that would be unjustly prejudicial from being permanently included in an officer's OMPF, such as—

(1) Charges that are later dropped.

(2) Charges or incidents of which the rated officer may later be absolved.

d. Any verified derogatory information may be entered on an OER. This is true whether the officer is under investigation, flagged, or awaiting trial. While the fact that an officer is under investigation or trial may not be mentioned in an OER until the investigation or trial is completed, this does not preclude the rating chain's use of verified derogatory information. For example, when an interim report with verified information is made available to a commander, the verified information may be included in an OER. When previously unverified derogatory information is later verified, an addendum will be prepared according to paragraph 5–35, and forwarded to HQDA. Likewise, should previously reported information later prove to be incorrect or erroneous the officer will be notified and advised of his or her right to appeal the report in accordance with chapter 9.

e. Reports may not be delayed to await the outcome of a trial or investigation. Reports must be done when due and contain what information is verified at the time of preparation.

f. Rating officials will initiate an addendum to an OER to report verified misdeeds or professional or character deficiencies that were unknown or unverified when the OER was submitted. The addendum will insure

that the verified information will be recorded in the officer's offical records. However, it must not be submitted until completion of the investigation, imposition of punishment, or verification of the information. (See para 5–35 and app L.)

**4–21.1 Prohibited comments**
a. The use of inappropriate or arbitrary remarks related to race, color, religion, sex, or national origin (as outlined in AR 600–21, chap 2) is prohibited. Subjective evaluation must not reflect a rating official's personal bias or prejudice.

b. When an Article 15 is imposed, regardless of the filing decision, rating officials may not comment on the fact that an Article 15 was given to the rated officer. This does not preclude mentioning the rated officer's underlying misconduct which served as the basis for the Article 15.

**4–22. Performance as a member of a court-martial**
Duty as a member of a court-martial will not be considered in preparing an OER.

**4–23. Performance as counsel**
No rating official will give an unfavorable rating or comment regarding a rated officer because he or she zealously represented (as a counsel) any accused or respondent before courts-martial or administrative board processings.

**4–24. Performance as EEO officer**
A officer, serving as an Equal Employment Opportunity Officer, either as a principal or additional duty, will not be given an unfavorable rating—

a. Because of his or her enthusiasm and zeal for implementing the Army's Equal Opportunity Program.

b. In retaliation for criticism of command policies and practices related to that program (para 4–13b(5)4–13b(3)).

**4–25. Classified reports**
Normally, reports will not contain classified information as defined in AR 380–5. Exceptional cases requiring classification will contain downgrading instructions under AR 380–5. In addition, each section, part, paragraph, subparagraph, or similar portion will be marked to show the level of classification of the information in it. Unclassified sections will be marked unclassified (para 4–202, DOD 5200.1–R). The OER must be marked so that doubt is eliminated as to which parts contain or reveal classified information.

**4–26. Participation in the alcohol and drug abuse prevention and control program (ADAPCP)**
An officer who voluntarily enters the ADAPCP for an alcohol or drug abuse problem which has not been detected by his or her chain of command should not be penalized by mention of the ADAPCP in his or her OER. To do so would discourage voluntary entry in the ADAPCP upon self

recognition of the need for help. However, in those cases where alcohol or drug abuse has resulted in substandard performance and/or disciplinary problems, subsequent voluntary entry in ADAPCP does not preclude rating officials from recording substandard performance or disciplinary problems on the OER. However, rating officials cannot use information derived from ADAPCP records in their evaluations. Once an officer has been identified in an OER as having an alcohol or drug abuse problem based on information obtained independently of the ADAPCP:

*a.* His or her voluntary entry into the ADAPCP or successful rehabilitation should be mentioned as a factor to the rated officer's credit.

*b.* The rating chain should note status of rehabilitation progress or outcome in the OER or in later reports.

### 4–27. Referred reports
The following types of reports will be referred to the rated officer by the senior rater for acknowledgement and comment before it is sent to HQDA. Detailed instructions for handling referred reports are in paragraph 5–28.

*a.* A relief for cause report submitted under the provisions of paragraph 5–18.

*b. (Rescinded.)*

*c.* Any report with negative remarks about the rated officer's professional, ethics in part IVb, and/or in the rater's and/or senior rater's narrative evaluation(s).

*d.* Any report with a rating of 4 or 5 in any of the 14 attributes in part IVa.

*e.* Any report resulting in a performance evaluation of "Often failed requirements" or "Usually failed requirements" in part Vb.

*f.* Any report with a potential evaluation in part Vd of "Do not promote" or narrative comments to that effect from any rating official.

*g.* Any report with a potential evaluation in part Vd of "Other," where the required explanation has derogatory information.

*h.* Any report with a senior rater potential evaluation in one of the bottom three blocks in part VIIa.

*i.* Any report with ratings or comments that, in the opinion of the senior rater, are so derogatory that the report may have an adverse impact on the rated officer's career.

*j.* Any report with an entry of "FAIL" in part IVa, item 3, indicating noncompliance with AR 350–15; or an entry of "NO" in part IVa, item 12, indicating noncompliance with AR 600–9.

### 4–28. Review of relief reports
Relief reports (para 5–18) will be reviewed by the first US Army officer in the chain of command above the person directing the relief. If the relief is directed by the rater or intermediate rater, the senior rater will perform the review provided he or she is a US Army officer. The responsibilities of this reviewer are in paragraph 3–14. The processing procedures are in paragraph 5–29.

### 4–29. Commander inquiry
When it is brought to the attention of a commander that a report made by a subordinate or a member of a subordinate command may have been illegal or unjust, or violated the provisions of this regulation, that commander will look into the allegation. The commander will confine his or her inquiry to the facts in the report, compliance of the report with this regulation, and the conduct of the rated officer and the members of the rating chain. The commander may not direct that a report be changed nor use command influence to alter an honest evaluation. The procedures the commander will use are described in paragraph 5–30.

### 4–30. Relief or incapacitation of rating official
A rating official relieved for cause or mentally or physically incapacitated will not complete reports on officers formerly under his or her command or supervision. This restriction also applies to reports with "Thru" dates prior to the relief or incapacitation of the rating official but not yet completed.

## Section V
## DA Form 67–8–2

### 4–31. Purpose and use
The DA Form 67–8–2—

*a.* Tracks the rating history of each senior rater and makes this information available to both the senior rater and DA (para 3–2c and *d*, 4–10d(2), and 4–16d(5)).

*b.* Emphasizes the importance of the senior rater's responsibilities to provide credible rating information to DA. This is one of the senior rater's most important responsibilities. It affects the Army's future leadership and has great impact on how the Army accomplishes its missions.

*c.* Is prepared annually on each senior rater who has served as senior rater for at least five different officers.

(1) One copy of the DA Form 67–8–2 will be made available to each US Army military senior rater to make him or her aware of his or her performance as an evaluator.

(2) A second copy will be filed in the senior rater's OMPF.

(3) Senior raters who are not US Army officers must request a copy of their DA Form 67–8–2 from HQDA. The request must be in writing to HQDA (DAPC–MSE) and contain his or her SSN and a current return address.

### 4–32. Part I
This part of the report has basic identifying data and the date of the report.

### 4–33. Part II
*a.* This part shows the senior rater's cumulative rating history by number of reports made and number of officers rated.

*b.* Reports written on Army National Guard and USAR officers not on extended active duty, including members in the Active Guard/Reserve (AGR) Program, are not included. These officers are contained on separate profiles maintained by the National Guard Bureau and the US Army Reserve Component Personnel and Administration Center (ARPERCEN).

## Chapter 5
## Report Preparation, Submission, and Access

### 5–1. Introduction
*a.* This chapter describes the policies and procedures for submitting evaluation reports. Reports are submitted on all officers through the grade of major general, except for the Dean of the Academic Board, the Registrar, and permanent professors of the US Military Academy who have completed 30 years commissioned service. Reports are either mandatory or optional. They are further divided into those with a 90-calendar-day minimum rating period and those with other than the 90-day requirement.

*b.* To determine if a rated officer meets the minimum calendar-day requirements set by this chapter, nonrated periods occurring during the rating period (para 4–10c(2) must be deducted from the total number of days he or she has served in the same position under the same rater during the same rating period.

*c.* Reports will not be submitted unless authorized by this regulation or directed by HQDA.

*d.* A newly commissioned officer programed for attendance at an officer basic course will not be rated under the provisions of paragraphs 5–3, 5–4, 5–6, 5–7, 5–8, 5–14, or 5–23 prior to attendance at the officer basic course. Unless a report is required by another paragraph, the period prior to attending the basic course will be nonrated. This nonrated time will be accounted for in the initial academic evaluation report. The provisions of this paragraph do not apply to warrant officers.

## Section I
## Mandatory Report—90-Day Minimum

### 5–2. Basic rule
Reports listed in this section are required if the rated officer has completed at least 90 calendar days in the same position under the same rater during the same rating period. On these reports the rater must complete his or her evaluation; however the intermediate rater and senior rater will evaluate only if they have the required 60 calendar days in the rating chain.

### 5–3. Change of rater
A report is mandatory when the rated officer ceases to serve under the immediate supervision of the rater.

### 5–4. Change of duty

a. A report is mandatory when the rated officer has a change of principal duty, even though the rater remains the same. This paragraph is used for all reassignments, including permanent change of station (PCS).

A report is submitted when there are organizational changes that merely alter the officer's principal duty title but do not change the type of work he or she performs (e.g., Personnel Management Staff Officer to Assistant G1). However, a report must be submitted when organizational changes result in a change of rater. (See para 5–3.)

b. A report is mandatory when the rated officer is separated from active duty. This applies without regard to the reason for separation. (See also para 4–14c(5).)

### 5–5. Annual evaluation report

An annual evaluation report is mandatory on completion of 1 calendar year of duty following the "THRU" date of the last report submitted under this regulation or under AR 623–1. If 1 year has elapsed and the rated officer has not performed the same duty under the same rater for 90 calendar days, a report will not be submitted until the 90-day requirement is met. An annual report will not be submitted if the rated officer is in a patient detachment, in a transient status, or in confinement as of the "Thru" date; the report will be prepared after the officer returns to duty and completes the 90-day requirement.

### 5–6. Departure on temporary duty (TDY) or special duty (SD)

When an officer departs on TDY or SD under one of the following conditions, a report will be submitted by the officer's rating officials in the organization from which he or she departs.

a. To perform duties not related to his or her primary functions in his or her unit; and while on TDY or SD, he or she serves under a different immediate supervisor for a period of 90 or more calendar days. In cases where it cannot be determined if the TDY or SD will last for 90 days, a report will be submitted. A report is not authorized when the officer on TDY or SD is still responsible to receiving guidance or instruction from the chain of command of his or her organization.

b. To attend a resident course of instruction or training scheduled for 60 calendar days or more at a service school. This includes courses sponsored by other services (Except CAS3, see g. below).

c. To attend a career progression or professional development course (AR 623–1) regardless of length. This includes officer advanced courses and Command and General Staff College level courses. It also includes warrant officer career progression and professional development courses. This does not include attendance at the resident use of correspondence courses (Except CAS3, see g. below).

d. To attend a commissioned officer resident branch officer basic course, regardless

of length. This provision does not apply to newly commissioned officers programed for attendance at an officer basic course. (See para 5–1d.)

e. To attend the US Army War College or one of the senior service college courses sponsored by the other services. This does not include attendance at the resident phases of the US Army War College Correspondence Studies Course.

f. To attend a civilian academic or training institution on a full-time basis for a period of 60 or more calendar days.

g. An officer departing a unit on TDY to attend CAS3 and returning to the same duty position will not receive a depart TDY report. The period of TDY will be considered nonrated and annotated in part 1Q, DA Form 67–8 of the next mandatory or optional evaluation. An officer who was not evaluated upon departure for CAS3 will receive all mandatory evaluations with thru dates occurring during the period of TDY and is eligible for optional evaluations with thru dates occurring during the period of TDY.

h. An officer departing a unit on TDY to attend Advanced Management Training for Senior Officers Program will not receive a depart TDY report.

### 5–7. TDY and SD supervisors' evaluations

Officers on TDY or SD who are not responsible to their parent organization will be rated by their TDY or SD supervisors according to table 5–1. In these cases, the TDY or SD supervisor is responsible for insuring that a rating chain is published and a DA Form 67–8–1 is initiated for the rated officer.

### 5–8. Relief or incapacitation of rater

When the rater dies, is declared missing, is relieved, or becomes incapacitated to such an extent that the commander, with the advice of medical authorities when necessary, believes the rater is unable to submit an accurate evaluation, a report will be submitted on the rater's subordinates as of the date of the incident or determination of incapacity. (See para 3–16 for rating chain rules and para 4–30 for restrictions.)

### 5–9. Following civilian schooling (Rescinded.)

### 5–10. Officer recommended for involuntary separation

A report is mandatory when an officer has been recommended for involuntary separation by—

a. A board of inquiry that met under AR 635–100. This applies only if the officer has not received a report during the 180 days immediately preceding the date the major commander's recommendation is forwarded to HQDA (chap 5, AR 635–100). The reason for submission of the report will be shown as "INVOLUNTARY SEPARATION." The OER "thru" date should be

the date the recommendation was forwarded to HQDA. However, the OER should be forwarded separately to HQDA (DAPC-MSE-R), ALEX VA 22332-0400 22332-0442.

b. A selection board. This applies only if the officer has less than 3 years' service and a report has not been submitted during the 180-day period immediately preceding the date of the officer's letter of rebuttal to HQDA (para 5–30d, AR 635–100).

### 5–11. Officer failing selection for promotion

An officer who failed to be selected for promotion by an active-duty promotion board (Regular Army (RA), Army of the United States (AUS), or Active Duty List (ADL)) will receive a report prior to the next promotion board of the same type that will consider his or her records. However, the following conditions must be satisfied:

a. The rated officer has not received a report (OER or resident Academic Evaluation Report (AER)) since the convene date of the board that did not select the officer for promotion.

b. The rating period must cover 90 or more calendar days as of the date in a DA message announcing the zone of consideration for the next board that will consider the rated officer. This date will be the same as the date used for a complete-the-record report (para 5–21).

c. The minimum time requirements for the rater are satisfied.

d. This requirement does not apply to officers who are not in a regular duty environment with an established rating chain. For example, officers attending school are not eligible for an OER. This requirement does not apply to officers being considered by a DA Selection Board for promotion to the grades of Brigadier General and Major General.

### 5–12. Separation (Rescinded.)

## Section II
## Mandatory Reports—Other than 90-Day Minimum

### 5–13. Basic rule

Reports must be prepared on the following occasions. Specific time requirements, if any, are listed with each condition causing a report to be written.

### 5–14. Initial tour of extended active duty

a. This report will be prepared only for Chaplain, Army Medical Department (to include Warrant Officer Physician Assistants) and Judge Advocate General Corps commissioned officers who are—

(1) Serving an initial tour of extended active duty in the Army (other than active duty for training or Reserve Component officers serving on statutory tours under Sections 175, 265, 3019, 3033(d), and 3496 of Title 10 USC).

Table 5–1
Temporary Duty and Special Duty not Related to Principal Duty (other than TDY or SD to attend school)

| Period of TDY or SD | Required Evaluations | Optional Evaluations | Dispositions |
|---|---|---|---|
| 0 to 59 days | None | Letter input to Rater | Note No.1 |
| 60 to 89 Days | Letter input to Rater | None. | Note No.1 |
| 90 days or more | 67–8 | None. | Note No.2 |

Notes:
1. Letter input is prepared by the TDY or SD Supervisor and sent to the rated officer's PSC. The PSC distributes copies to the rated officer and normal rater. The normal rater will consider this information when he or she prepares the rated officer's next OER. The letter input will not be inclosed with the OER when it is forwarded to HQDA.

2. A complete report is prepared as a change-of-duty report by TDY or SD supervisor and forwarded to DA through rated officer's PSC. The PSC will annotate the rated officer's records, give him or her a copy of the report, and send the report to HQDA.

3. Periods of TDY or SD to attend school are exempt from the above requirements: Attendance at courses of instruction is either nonrated, as described in paragraph 4–10c(2), or it is rated on an academic evaluation report as described in paragraph 1–6, AR 623–1.

4. TDY/SD supervisors are not authorized to render any type of OER for periods of less than 90 calendar days.

(2) Reentering active duty after a break in service of at least 1 year.

(3) Completing law school under The Judge Advocate General's Funded Legal Education Program (AR 351–22) (See app H.).

(4) Army Medical Specialist Corps (AMSC) officers serving on an initial tour of extended active duty in the Army following completion of the Dietetic Internship, OT Affiliation Program, or US Army-Baylor University Program in Physical Therapy.

b. NoThis report will not be prepared for—

(1) Any officer not included in a above.

(2) Any officer included in a above who has already received a reportan OER under some other provision of this regulation.

(3) Army Medical Department interns, to include AMSC interns or affiliate students.

(4) MSC clinical psychology interns.

(5) Those first-year residents who entered residency training immediately on entry to active duty.

c. The period covered by an initial report will begin with the date of entry on current active duty or the date following the last academic report or a report submitted according to paragraph I–3, appendix I. The report period will end upon completion of 120 calendar days (excluding nonrated days) in the same principal duty assignment under the same rater. Other rating chain time minimums apply.

## 5–15. Rated officer declared missing
When the rated officer is declared missing, a report is required as of the date of the incident. Rating chain time minimums do not apply.

## 5–16. Application for Regular Army appointment
A report is required when an active duty officer (commissioned or warrant) applies for appointment in the Regular Army. This applies only if the applicant has completed less than 5 years Active Army commissioned or

warrant officer service and has not been rated during the 30 days immediately preceding the date of application (para 2–25b, AR 601–100). Rating officials must meet the minimum time requirements.

## 5–17. JAGC officers participating in on-the-job training
A report is required when an officer taking part in The Judge Advocate General's Funded Legal Education Program (AR 351–22) completes on-the-job training (OJT) in excess of 30 calendar days. Commanders, in coordination with JAGC officials at the OJT sites, will establish rating chains that insure rating officials are present and available during OJT to insure at least one report per year. Rating chain time minimums do not apply (See app H.).

## 5–18. Relief for cause
a. A report is required when an officer is relieved for cause regardless of the rating period involved. Relief for cause is defined as an early release of an officer from a specific duty or assignment directed by superior authority and based on a decision that the officer has failed in his or her performance of duty. In this regard, duty performance consists of the completion of assigned tasks in a competent manner and compliance at all times with the accepted professional officer standards shown in part IV, DA Form 67–8. These standards apply to conduct both on and off duty. If, for whatever reasons, the relief does not occur on the date the officer is removed from his or her duty position responsibilities, the period of time between the removal and the relief will be nonrated time included in the period of the relief report. The report will be rendered by the published rating chain at the time of the relief; no other report will be due during this nonrated period.

a.1. If relief for cause is contemplated on the basis of an informal AR 15–6 investigation, the referral procedures contained in that regulation must be complied with

before the act of initiating or directing the relief. This is irrespective of the fact that the resultant relief for cause report must also be referred to the rated officer as described in paragraph 5–28. This does not preclude a temporary suspension from assigned duties pending application of the procedural safeguards contained in AR 15–6.

b. The following specific instructions apply to completing a relief report:

(1) The potential evaluation in part Vd, DA Form 67–8, must reflect "Do not promote" or "Other". A "Do not promote" recommendation is consistent with relief action and does not need further explanation. However, raters who want to make some other recommendation will check "Other" and will explain their recommendation and reasons in view of the action to relieve.

(2) The report will identify the rating official who directed the relief. This official will clearly explain the reason for relief in his or her narrative portion of the DA Form 67–8. He or she will also state that the rated officer has been notified of the reason for the relief.

(3) If the relief is directed by someone not in the designated rating chain, the official directing the relief will describe the reasons for the relief in an enclosure to the report.

(4) The rating restriction in (1) above does not apply to a rater who has not directed the relief and does not agree with the relief. However, he or she must state his or her nonconcurrence in the proper narrative portions of the OER.

c. If, after a relief report has been submitted, additional significant information becomes available, the provisions of section V of this chapter will apply.

d. A rating official may relieve an officer because of information received about a previous reporting period. For example, a rating official receives information from a completed investigation into a past incident and must relieve the officer to remove him or her from his or her present position or to process him or her for elimination. When this occurs, the following provisions apply:

(1) A relief report will be prepared.

(2) The rated officer will be evaluated on his or her performance during the current rating period only.

(3) The rating restriction described in b(1) above does not apply.

(4) The reason for the relief will be cited in the report but will not be the basis of the evaluation.

(5) If necessary, the new information will be referred to the previous rating chain when submitting an addendum, as described in paragraph 5–35.

e. The minimum time requirements for rating officials do not apply. All rating officials must evaluate, however, any rating official who has not directed the relief, and does not agree with the relief, may state his or her nonconcurrence in the proper narrative portion of the report.

**5–19. MILPERCENTAPA directed**
When MILPERCENTAPA decides there is a need for a report (para 1–6) and other provisions of this chapter do not apply, MILPERCENTAPA may direct that a report be submitted. The basis for the report will be indicated in part Ij of DA Form –8 (e.g., Ltr, DAPC–MSE 8 Dec 83). In .are instances, commanders may request that MILPERCENTAPA direct a report under the provisions of this paragraph. (See also para 1–6b). Requests will be sent to HQDA (DAPC–MSE), Alexandria, VA 22332–0442.

**Section III**
**Optional Reports**

**5–20. Basic rule**
These reports are submitted at the option of rating officials.

**5–21. Complete-the-record report**
At the option of the rater, a report may be submitted on a rated officer who is about to be considered by a DA board for: promotion (in or above the zone): project manager; school (CGSC or SSC); or command (battalion or brigade level). However, the following conditions must be met:

a. The rated officer has not received a report for performance in the same duty assignment for which this report is to be submitted. This requirement is waived if an officer's performance shows a marked inge since the previous report in the same .y position. The senior rater, in this case, must attest to the change. If the rater also serves as the senior rater, he or she will attest to the change and insure that the report clearly describes a marked change in performance. The Senior Rater may disapprove a complete-the-record report based on marked change in performance. When this occurs, he or she will state the basis for his or her disapproval; then return the report through the rating chain to the rater. The rater will inform the rated officer that the report has been disapproved and destroy the report.

b. The rated officer must have served for a minimum of 180 calendar days (excluding nonrated periods) in the same position under the same rater as of the date announced in the DA message announcing the zones of consideration. All other rating chain time minimums apply.

**5–22. Senior rater option**
a. When a change in senior rater occurs, the senior rater may direct that a report be made on any officer for whom he or she is the senior rater. This applies only if the following conditions are met:

(1) The senior rater has served in that ition for at least 60 calendar days.

(2) The rater meets the minimum requirement to give a report.

(3) The rated officer has not received a report in the preceding 90 calendar days.

b. When an evaluation report is due within 60 calendar days of the change in senior rater, the senior rater is encouraged to submit a senior rater option report to prevent the OER being submitted without a senior rater evaluation.

**5–23. Rater option**
When one of the conditions described in paragraphs 5–3 through 5–11 occurs but there are fewer than 90 calendar days (excluding nonrated periods) in the rating period, a report may be submitted at the option of the rater. However, the rated officer must have served continuously under the same rater in the same position for 90 or more calendar days in the previous rating period. For example: An officer received an annual OER on 31 March. The rated officer departs PCS on 22 May. The rating period is 51 days. If those 51 days were spent in the same duty position under the same rater as shown on the report ending 31 March, the rater may, at his or her option, render a report for the period 1 April–21 May. All other rating chain minimums apply.

**5–24. Outstanding performance report** (Rescinded.)

**5–25. Deficient performance report** (Rescinded.)

**5–26. Combat**
a. See appendix M, Mobilization. Definitions of the categories of mobilization are found at JCS Pub. 1 Department of Defense Dictionary of Military and Associated Terms.

b. Evaluation reports will not be rendered on officers for periods during which they are prisoners of war. The effect, if any, of an individual's status as a prisoner of war on other personnel actions, favorable or unfavorable (such as letters of commendation or reprimand), and on actions under the Uniform Code of Military Justice shall be governed by the laws and regulations pertaining to the particular action.

**5–27. Sixty-day option**
When one of the conditions described in paragraphs 5–2 through 5–11 occurs, and there are fewer than 90 calendar days but more than 59 calendar days (excluding nonrated periods) in the rating period, a report may be initiated at the option of the rater. However, the following conditions must be met:

a. The rated officer must be serving an oversea short tour for a period of 14 months or less. (See app B, AR 614–30 for "all others" tour identification by area.)

b. The senior rater must meet the minimum time-in-position requirements to evaluate (60 days) and must approve or disapprove submission of the report. When the Senior Rater disapproves the submission of the report, he or she will state the basis for the disapproval, return the report through the rating chain to the rater. The rater will inform the rated officer that the

report has been disapproved and destroy the report.

**Section IV**
**Exceptional Processing Procedures**

**5–28. Referred reports**
a. If referral is required (para 4–27), the senior rater will refer the completed report to the rated officer for acknowledgment and comment before sending it to HQDA.

b. The rated officer will acknowledge receipt and may comment if he or she believes that the rating or remarks are incorrect. The comments must be factual, concise, and limited to matters directly related to the evaluation on the OER; rating officials may not rebut rated officer's referral comments. Extraneous or voluminous material, material already contained in the officer's file, and enclosures or attachments are not normally in the rated officer's best interest; and they, therefore, should be avoided. Any enclosures or attachments will be withdrawn and returned to the rated officer when the OER is forwarded to DA.

c. The rated officer's comments do not constitute an appeal. Appeals are processed separately as outlined in chapter 9. Likewise, the rated officer's comments do not constitute a request for a commander's inquiry. Such a request must be submitted separately.

d. If the senior rater decides that the comments provide significant new facts about the rated officer's performance and that they could affect the rated officer's evaluation, he or she may refer them to the other rating officials. They, in turn, may reconsider their evaluations. The senior rater will not pressure or influence them. Any rating official who elects to raise his or her evaluation of the rated officer as a result of this action may do so. However, the evaluation may not be lowered because of the rated officer's comments. If the evaluation report is changed but still requires referral, the report must again be referred to the rated officer for acknowledgment and new comments. Only the latest acknowledgment and comments (if submitted) will be forwarded to HQDA.

e. The processing requirements for referred reports are as follows:

(1) The senior rater will refer, in writing, a copy of the completed report to the rated officer for acknowledgment and comment. This will be done even if the rated officer has departed due to permanent change of station, retirement, or relief from active duty. A reasonable suspense date should be given for the rated officer to complete this action. In this referral, the rated officer will be advised that his or her comment does not constitute an appeal or a request for a commander's inquiry.

(2) On receipt of the rated officer's acknowledgment, the senior rater will attach it to the original report and forward it to—

(a) The reviewer (if appropriate).

(b) The PSC or the administrative office (as appropriate).

*(c)* The other rating officials if *d* above applies.

(3) If the rated officer fails to respond within the suspense period, the senior rater will attach a copy of his or her referral to the original report and indicate that the rated officer failed to complete his or her acknowledgment. The senior rater will then send it to the reviewer, PSC, or administrative office, as appropriate.

(4) Senior raters will try to refer reports to the rated officer prior to his or her departure.

**5–29. Relief reports**

*a.* Relief reports (para 5–18) require referral to the rated officer as described in paragraph 5–28. This referral must be completed before taking any of the actions in the following subparagraphs.

*b.* If the relief is directed by the rater or intermediate rater, the senior rater will do the review provided he or she is a US Army officer (para 3–13 and 3–14). Otherwise, the first US Army officer in the chain of command or supervision above the individual directing the relief will review the reports.

*c.* The procedures for reviewing relief reports are as follows:

(1) If the senior rater is qualified to serve as the reviewer and is satisfied that the report is clear, accurate, complete, and fully in accord with the provisions of this regulation, he or she will indicate in the narrative or separate enclosure that the report complies with this regulation.

(2) If the senior rater (reviewer) finds that the report is unclear, contains errors of fact, or is otherwise in violation of this regulation, he or she will return the report to the rater or intermediate rater, indicating what is wrong. The senior rater will avoid all statements and actions that may influence or alter an honest evaluation by the rater or intermediate rater. When the report has been corrected, it will be returned to the senior rater.

(3) If the corrected report is satisfactory to the senior rater (reviewer), he or she will indicate in his or her narrative or separate enclosure that the report complies with this regulation.

(4) If the corrected report is not satisfactory to the senior rater (reviewer) or if the other rating officials disagree with him or her concerning the need for changes in the report, he or she will indicate objections to the report by adding an enclosure to the OER (app D). When indicating objections, the senior rater (reviewer) is restricted to the issues listed in paragraph 3–14b.

(5) If the senior rater is not a US Army officer, or if the relief was directed by the senior rater or someone above the senior rater in the chain of command or supervision, the report will be reviewed by the first US Army officer in the chain of command above the individual directing the relief. This officer will perform the functions described in (1) through (4) above. His or her comments will be prepared as an enclosure to the OER (app D). If there is not a US

Army officer in the chain of command above the person directing the relief, the report will be forwarded for review to HQDA. (See app E for address.)

**5–30. Commander Inquiry**

Commanders are required to look into alleged errors, injustices, and illegalities in officer evaluation reports (para 3–15). These matters may be brought to the commander's attention by the rated officer or anyone authorized access to the report (para 5–38). The inquiry will be made by a commander in the chain of command above the designated rating officials involved in the allegations. The procedures for these inquiries may be as formal or informal as the commander thinks appropriate, to include telephone and personal discussions. ~~The commander may also appoint an officer, senior to the designated rating officials, to make the inquiry.~~ The provisions of AR 15–6 do not normally apply to inquiries of this nature. However, the commander may determine that the provisions of AR 15–6 apply in specific instances.

*a.* The primary purpose of the commander's inquiry is to provide a greater degree of command involvement in preventing obvious injustices to the rated officer and correcting errors before they become a matter of permanent record. A secondary purpose is to obtain command involvement in clarifying errors or injustice after the OER is accepted at HQDA. However, in these after-the-fact cases this paragraph is not intended to be a substitute for the appeals process, which is the primary means of addressing errors and injustices after they have become a matter of permanent record. (See also para 5–32 for restrictions on modifications to already accepted reports.)

*b.* The following restrictions apply:

(1) The commander inquiry procedures will not be used to document differences of opinion between members of the rating chain (or between the commander and members) about an officer's performance and potential. Basically, the evaluation system establishes rating chains and normally relies on the opinions of the rating officials. Rating officials should evaluate, and have their opinions constitute the organization's view of the rated officer; however the commander may determine through his or her inquiry that the report has serious irregularities or errors. Examples include (but are not limited to):

*(a)* Improperly designated or unqualified rating officials. (For example, rating officials who have had substantiated findings against them from an official investigation.)

*(b)* Inaccurate or untrue statements.

*(c)* Lack of objectivity or fairness by rating officials.

(2) The commander will not pressure or force rating officials to change their evaluations (para 3–15).

(3) The commander may not evaluate the rated officer, either as a substitute for, or in addition to, the designated rating officials' evaluations.

(4) The commander will not use the commander inquiry provisions to forward information derogatory to the rated officer. If the inquiry reveals matters that might result in a lower evaluation, the information must be processed as an addendum in accordance with paragraph 5–35.

(5) To insure the availability of pertinent data, and timely completion of an inquiry done after the OER in question has been accepted at HQDA, the inquiry must be conducted by either the commander at the time the OER was rendered who is still in the command position, or by a subsequent commander in the position. However, the inquiry must be forwarded to HQDA not later than 120 days after the "Thru" date of the OER.

*c.* The procedures for processing commander inquiries are as follows:

(1) If, after looking into the allegations, the commander finds that no error, violation of the regulation, or wrongdoing has occurred, he or she will advise the individual requesting the inquiry and take no further action other than ensuring that the OER is forwarded to HQDA as expeditiously as possible. If the commander wishes, he or she may retain a written record of the inquiry, e.g., a memorandum for record.

(2) If the commander finds that an error, violation of the regulation, or wrongdoing has occurred, and the OER has not been forwarded to HQDA, he or she will return the OER with the inquiry results to the senior rater. The commander will ask that the report be corrected to account for matters revealed in the inquiry; however, rating officials cannot lower their evaluation as a result of the inquiry. This will be done with regard for the restrictions on command authority and influence (para 3–15 and b(2) above). When the report has been corrected, it will be sent to HQDA with no reference to the action taken by the commander.

(3) If the report has not yet been forwarded to HQDA and the commander and the rating chain members cannot agree on the need for change in the report, the commander will forward the OER and the results of his or her inquiry to HQDA (DAPC–MSE), Alexandria, VA ~~22332–040~~022332–0442.

(4) If the commander finds that a report already forwarded to HQDA contains errors or is in violation of this regulation, he or she will forward the results of his or her inquiry to HQDA(DAPC–MSE) Alexandria, VA ~~22332–040~~022332–0442.

*d.* The results of the commander's Inquiry that are forwarded to HQDA will include findings, conclusions and recommendations in a format that could be filed with the OER in the officer's Official Military Personnel File for clarification purposes. The results, therefore, will include the commander's signature, should stand alone without reference to other documentation, and preferably be limited to one page. Sufficient documentation, such as reports and statements, will be attached to justify the conclusions.

22

## 5-31. Supplementary reviews

When the senior rater is not a US Army officer, the commander setting up the rating chain will assign a supplementary reviewer (para 3-13). (If there is no officer to perform this review, the report will be sent to DA for review. (See app E for address.)) The supplementary reviewer will fulfill the responsibilities listed in paragraph 3-14a. He or she will also prepare an enclosure, as described in appendix D.

a. If necessary, the enclosure will contain comments on the accuracy or clarity of the completed OER.

b. The comments will not include—

(1) Evaluative statements about the rated officer.

(2) Statements that amplify, paraphrase, or endorse the ratings of the other members of the rating chain.

c. If there are no comments, indicate in the enclosure that no added comment is necessary.

## Section V
## Modifications to Previously Submitted Reports

## 5-32. Basic rule

a. An evaluation report accepted by HQDA and included in the official record of an officer is presumed to—

(1) Be administratively correct.

(2) Have been prepared by the properly designated rating officials.

(3) Represent the considered opinions and objective judgment of the rating officials at the time of preparation.

b. Requests that an accepted report be altered, withdrawn, or replaced with another report will not be honored. The following will not be used to alter or withdraw a report; neither will they be included in the OMPF:

(1) Statements from rating officials that they underestimated the rated officer.

(2) Statements from rating officials that they did not intend to rate him or her as they did.

(3) Requests that ratings be revised.

(4) Statements from rating officials claiming administrative oversight or typographical error in recording numerical values or block selections indicating professional competence, performance, or potential. Therefore, it is imperative that rating officials insure that these evaluations are accurately recorded on the OER prior to signing the report.

c. An exception to b above is granted only when—

(1) Information which was unknown or unverified when the report was prepared is brought to light or verified.

(2) This new information is so significant it would have resulted in a higher or lower evaluation had it been known or verified when the report was prepared.

(3) See paragraphs 5-33 and 5-34 for procedures.

## 5-33. Newly received favorable information

If rating officials become aware of information that would have resulted in a higher evaluation of the rated officer, they will take action to alter or remove the report in accordance with the appeal procedures stated in chapter 9. Ratings officials should precisely specify the new information, how it was obtained, whether it was factually confirmed, and how it would change the evaluation had it been considered in writing the original report. Addenda will not be used to report this type of information. The rated officer may be provided with a statement by the rating official who discovered the new favorable information. The statement could be used in the rated officer's appeal.

## 5-34. Newly received derogatory information

If rating officials become aware of information that would have resulted in a lower evaluation of the rated officer, they will submit an addendum to the previous report. (See also para 5-28.)

## 5-35. Procedures for submitting an addendum to a previously submitted report

a. The commander receiving the new information will insure that all members of the original rating chain are aware of it and allowed to comment. If none of the original rating officials want to change or add to the original OER, no addendum will be prepared.

b. The addendum will be prepared as shown in appendix L. It will contain the rated officer's name, grade, SSN, and the period of the OER to which it applies. It will also state that all members of the rating chain have been allowed to add comments; and it will list those who did not want to comment.

c. On completion of this action, the commander will refer a copy of the addendum to the rated officer for acknowledgment and comment before sending it to HQDA. If any of the rating officials has been released from active duty, incapacitated, or is otherwise unable to complete his or her part of an addendum, the commander will so indicate.

d. The commander's responsibility is only to coordinate the submission of the addendum. He or she may not add comments to the addendum unless he or she was a member of the original rating chain.

## Section VI
## Administrative Instructions

## 5-36. Preparation and forwarding

a. Preparation. DA Form 67-8 will be typed, or printed, using a laser or dot matrix printer, in either pica (10 pitch) or elite (12 pitch) type face. Compressed type face or spacing will not be used. A clear original is required so that legible copies of the report can be given to both the rated officer

and the microfiche files at HQDA. Authorized abbreviations may be used; however, avoid acronyms. Facsimile signatures are not authorized. Signatures will be in black or blue ink only.

b. Copies.

(1) Each rated officer will be given a copy of each OER by the PSC once it has been completed and processed locally. This copy may be either a carbon or machine-reproduced copy of the original OER.

(2) Rated officers who fail to receive a copy of their OER within 60 days after the close of the reporting period should request a copy from the appropriate PSC or administrative office.

c. Forwarding. The responsible PSC or administrative office will provide the rated officer a copy of the report when it is completed. The commander may have one of the rating officials give the rated officer the completed copy. If so, the PSC or administrative office will forward the report to the official so that he or she may present the complete copy. Confidentiality will be insured. If the rated officer departs the organization before receiving a copy of the completed report, the PSC or administrative office will send a copy to his or her forwarding address. The PSC or administrative office will retain an additional copy in suspense for 120 days for use if the rated officer does not receive the mailed copy. The PSC or administrative office will insure that—

(1) Reports are complete and administratively correct.

(2) The original report is placed unfolded in an envelope and forwarded via first-class mail to HQDA(DAPC-MSE-R), 200 Stovall Street, Alexandria, VA 22332-0400 22332-0442. (This report is exempt from reports control under para 7-2h, AR 335-15.) Registered or certified mail will only be used when reports contain classified information.

(3) Reports must be forwarded as quickly as possible in view of their impact on personnel actions that may be under consideration at HQDA. In any event, reports must be forwarded to reach HQDA not later than 60 days after the ending day of the report.

## 5-37. Enclosures

a. No enclosures, other than those listed below, will be attached to the original DA Form 67-8 when forwarded to HQDA.

(1) Supplementary reviewer's statement, as authorized by paragraph 5-31. (See app D.)

(2) Comments pertaining to rated officers under dual supervision, as authorized by paragraph 3-18. (See app F.)

(3) Letter evaluations provided by non-DOD rating officials. (See para 4-9c and app G.)

(4) Orders substantiating rating official's authority to evaluate.

(5) Evaluations of JAGC officers detailed as judges or magistrates (app H).

(6) Senior rater's letter of referral and the rated officer's acknowledgment and comments regarding a referred report (para 5–28).

(7) Statement from person who directed relief for cause if other than rating official (para 5–18b(3)).

(8) Expanded narrative enclosure to general officer reports (para 4–18).

(9) Commander's statement, as authorized by paragraph 5–30.

(10) Statement from reviewer of relief report (para 5–29c and app D).

(11) Other statements or documents directed by HQDA. These will be referred to the rated officer for comment prior to being filed.

(12) Senior Army member's approval of rater in joint headquarters/activities (para 3–5c(5)(c)).

b. Favorable or unfavorable communications pertaining to the rated officer (other than those listed in a above) will not accompany the report. AR 672–5–1 and AR 600–37 outline procedures for processing these communications.

c. Medical examinations, consultation sheets, or other documents containing official medical opinions or diagnoses will not be attached as enclosures to a report. These will be processed under established medical procedures.

d. When an enclosure is used in the above cases, it will be prepared on 8½ by 11-inch bond paper and attached to the report. The enclosure will contain—

(1) The rated officer's full name, SSN, and grade.

(2) The period of report.

(3) Authentication by the originator.

## 5–38. Access to reports

Access to reports at HQDA is limited to individuals responsible for maintaining the file or authorized to use it for personnel management purposes. Access to reports at the local level is limited to those persons having command, administrative, or rating official responsibility for the report.

## 5–39. Review

a. Officers who want to review their OERs may request a microfiche copy of their file from HQDA. A request must be in writing from the officer concerned and contain his or her signature and SSN. Active Army officers should address requests to HQDA (DAPC–MSR–S) 200 Stovall St., Alexandria, VA 22332–0400. Those not on active duty should address requests to the CDR, U.S. Army Reserve Components Personnel and Administration Center, ATTN: DAPC–PSE–VO, 9700 Page Boulevard, St. Louis, MO 63132–520022332–0442.

b. An officer on active duty may deputize a person to review his or her file at the authorized location. Officers assigned to MILPERCENTAPA or the U.S. Army Reserve Components Personnel and Administration Center (ARPERCEN) may not be deputized for this purpose. A letter from the

officer whose OMPF is to be reviewed or released must be presented by the deputy. The letter must—

(1) State the name and SSN of the deputy.

(2) Indicate exactly which documents the deputy is authorized to receive or review.

(3) Be signed by the officer authorizing the release and contain his or her grade and SSN.

## Chapter 6
## Warrant Officer Evaluations

### 6–1. General

a. Warrant Officer definition—an officer appointed by warrant by the Secretary of the Army, based on a sound level of technical and tactical competence. The warrant officer is the highly specialized expert and trainer who, by gaining progressive levels of expertise and leadership, operates, maintains, administers, and manages the Army's equipment, support activities, or technical systems for an entire career.

b. Since the warrant officer is a distinct category of officer personnel, the rating chain must recognize the basic differences between warrant and commissioned officers when evaluating performance and potential. This chapter will discuss these differences and describe those policies and instructions unique to the warrant officer.

### 6–2. Evaluation considerations

a. Warrant officer status. Both commissioned and warrant officers are authorized to perform similar functions (i.e., command a station, unit, or detachment; certify vouchers; administer oaths; disburse funds; and impose discipline). Both categories of officer personnel must be technically and tactically competent. Despite their mutual functions, the professional development, use, and evaluation of warrant officers differ from those of commissioned officers. These differences must be considered when evaluating warrant officers.

(1) Warrant officers are appointed to serve in technical military occupational specialties (MOS). Thus, their professional development is aimed at increasing competence in their specialties.

(2) Because of their technical orientation, warrant officers are qualified to supervise only those people in technical occupations similar to their own.

(3) Warrant officers are technical operators, managers, administrators, or maintainers throughout their careers. Because of these differences, warrant officers should be evaluated on their potential for continued service in the technical positions for which they are trained and qualified. They should not be evaluated on their potential to fill positions of responsibility outside their specialties.

(4) For evaluation Military Physician's Assistants, see appendix I, paragraph I–4.

b. Career patterns. Career patterns must be considered when evaluating warrant officers. Rating officials should refer to chapter 6 and table 3–2 of DA Pamphlet 600–11 for career pattern information. Although these are general models, they help in evaluating a warrant officer's professional preparation and in estimating his or her potential.

(1) MOS. Warrant officers are skilled technicians whose career patterns are focused on MOS qualifications. They must be assigned principal duties in only their primary or additional MOS. HQDA must approve any exception (para 1–7, AR 611–112); exceptions will be explained in part IIIc, DA Form 67–8.

(2) Special Emphasis Areas. In addition to the requirement to maintain technical and tactical competence in their MOS, warrant officers must demonstrate performance and potential as Army officers. They must display leadership qualities, managerial talents, and technical and tactical competence in both their principal duty and in special emphasis areas involving other missions, tasks and objectives that support the primary organizational mission. That is, in addition to MOS qualifications, warrant officers are expected to—

(a) Communicate (brief their supervisors and counsel their subordinates).

(b) Deal sensitively with people.

(c) Mix a variety of tasks efficiently (special emphasis areas as well as principal duties).

(d) Make plans, execute, and supervise them. When evaluating the warrant officer's performance of special emphasis areas, his or her training and experience must be considered; it must not be assumed that he or she is able to do all types of technical work. If a warrant officer performs duty in special emphasis areas outside his or her technical specialty, he or she should be evaluated on willingness to assume responsibility, innovation, organizational ability, supervisory talents, thoroughness, etc.

(3) Career progression. When evaluating a warrant officer's potential for selection actions (i.e., promotion, retention, professional development, significant assignments), rating officials must understand the progression pattern in the warrant's career field. Like commissioned officers, warrant officers progress in their careers to positions of increased responsibility. However, unlike commissioned officer positions, the skill hierarchy in warrant officer positions of responsibility are not always parallel to organizational echelons. For example, in some MOS, company level technical and tactical skill requirements may be greater than that required in the same MOS at battalion level. Progression within an MOS is therefore aimed at preparing the individual to assume positions of increased responsibility within his or her career field and is not always associated with progression in the Army's organizational structure. Developmental opportunities to be considered when evaluating potential in each career field are found in DA Pamphlet 600–11. The highest

chain of command above the individual directing the relief will review relief reports.

(3) The procedures for reviewing relief reports are as follows:

(a) If the senior rater is satisfied that the report is clear, accurate, complete, and fully in accord with the provisions of this regulation, he or she will indicate in the narrative that the report complies with this regulation.

(b) If the senior rater finds that the report is unclear, contains errors of fact, or is otherwise in violation of this regulation, he or she will return the report to the rater or intermediate rater indicating what is wrong. The senior rater will avoid all statements and actions that may influence or alter an honest evaluation by the rater or intermediate rater. When the report has been corrected, it will be returned to the senior rater.

(c) If the corrected report is satisfactory to the senior rater, he or she will indicate in the narrative that the report complies with this regulation.

(d) If the corrected report is not satisfactory to the senior rater or if the other rating officials disagree with him or her concerning the need for changes in the report, he or she will indicate objections to the report in the narrative and forward the report. When indicating objections, the senior rater is restricted to the issues listed in paragraph 3–14b.

(e) If the relief was directed by the senior rater or someone above the senior rater in the chain of command, the report will be reviewed by the first Army National Guard officer in the chain of command above the individual directing the relief. This officer will perform the functions described in (a) through (d) above using an enclosure to the OER, as described in appendix D.

c. Commander inquiry. Commanders are required to look into alleged errors, injustices, and illegalities in the OERS (para 3–15 and 4–29). The procedures for processing these inquiries are as described in paragraph 5–30, however, inquiries will be forwarded as necessary to the ARNG Personnel Center through the State military personnel officer.

## 8–26. Modifications to previously submitted reports

a. An evaluation report accepted by the ARNG Personnel Center and included in the official record of an officer is presumed to—

(1) Be administratively correct.

(2) Have been prepared by the properly designated rating officials.

(3) Represent the considered opinions and objective judgment of the rating officials at the time of preparation.

b. Requests that an accepted rport be altered, withdrawn, or replaced with another report will not be honored.

c. The policies in paragraphs 5–32, 5–33, and 5–34 apply except that any addendum necessary will be sent through the State military officer to the ARNG Personnel Center.

34

## 8–27. Administrative instructions

a. Preparation and forwarding.

(1) Preparation. DA Form 67–8 will be typed. Distinct, clear impressions are required so that legible copies of the report can be provided to both the rated officer, State headquarters, and the files at the ARNG Personnel Center. Authorized abbreviations may be used; however, avoid acronyms. Facsimile signatures are not authorized.

(2) Copies.

(a) Reports must consist of an original and one copy (carbon or machine-reproduced copy). After the report is completed by the rating officials, the State military personnel officer will provide a copy to the rated officer; the original is sent by the State military personnel officer to the ARNG Personnel Center.

(b) Rated officials who fail to receive a copy of their OER within 90 days after the close the reporting period should request a copy from the appropriate State military personnel officer.

(c) Upon request, the ARNG Personnel Center will reproduce and provide an officer with a copy of one or more of his or her official OERs when the officer or a deputized representative appears in person at the ARNG Personnel Center. A prescribed fee will be charged for the copy (AR 37–30). However, an officer does not have to appear in person if no deputy is available. In this case, officers should address requests to the ARNG Personnel Center. (See para 8–7a for address.) Further, no fee will be charged if a copy of an OER is needed in connection with an official personnel action (e.g., OER appeal).

(3) Forwarding. The responsible State military personnel officer will provide the rated officer a copy of the report when it is completed. The State adjutant general may have one of the rating officials give the rated officer the completed copy. If so, the State military personnel officer will forward the report to the official so that he or she may present the completed copy. Confidentiality will be insured. If the rated officer departs before receiving a copy of the completed report, the State military personnel officer will send the rated officer's copy to the forwarding address provided by the rated officer. The State military personnel officer will retain an additional copy in suspense for 120 days in case the rated officer does not receive the mailed copy. The State military personnel officer will insure that—

(a) Reports are complete and administratively correct.

(b) The original report is placed unfolded in an envelope and forwarded via first-class mail without letter of transmittal to the ARNG Center. (See para 8–7a for address.) Registered or certified mail will only be used when reports contain derogatory or classified information. (This report is exempt under para 7–2h, AR 335–15.)

(c) Reports are forwarded to reach the ARNG Personnel Center not later than 90

days after the ending day of the report. Reports must be sent quickly in view of their impact on personnel actions that may be under consideration by NGB and DA. Since personnel actions are based on available records, late submission of an evaluation report may result in inequity to either the individual or the Army National Guard.

(d) Submission of completed OER for ARNG officers and warrant officers on specified tours of duty.

1. Completed original reports for officers on tours in the positions of Chief, NGB, Director and Deputy Director, ARNG, will be forwarded directly to HQDA (DAPC–MSE–R), 200 Stovall St., Alexandria VA 22332–0400.

2. Completed original reports for Army National Guard/Reserve tours under the provision of Title 10 U.S.C. and not on the Active Duty List (ADL) will be forwarded directly to Chief, National Guard Bureau, ATTN: NGB–ARP–CM, 5600 Columbia Pike, Falls Church, VA 22041–5125.

b. Enclosures. See paragraph 5–37 for policy on enclosures.

c. Access to reports. Access to reports in the National Guard Bureau and State headquarters is limited to individuals responsible for maintaining the file or authorized to use it for personnel management purposes. Access to reports at the local level is limited to those persons having command, administrative, or rating official responsibility for the report.

## 8–28. Warrant officer evaluations

Rating chains must recognize the basic differences between warrant and commissioned officers when evaluating performance and potential. Chapter 6 describes these differences and gives the policies and instructions unique to warrant officer evaluations. Rating officials should also review NGB Pamphlet 600–2.

## Section V
## Appeals

## 8–29. Processing appeals

Policy and procedures for processing OER appeals are in chapter 9. The Chief, National Guard Bureau, is responsible for screening and acting on all appeals submitted by ARNG officers.

## 8–30. Submission of appeals

Appeals will be submitted as discussed in chapter 9. They will be forwarded to Chief, National Guard Bureau, ATTN: NGB–ARP–CM, 5600 Columbia Pike, Falls Church, VA 22041–5125.

## Chapter 9
## Appeals

## 9–1. General

a. Officer evaluation reports (DA Form 67 series) and academic evaluation reports

(DA Forms 1059 series) may have administrative errors or may not accurately record the officer's potential or the manner in which he or she performed his or her duties. The appeals system protects the Army's interests and insures fairness to the officer. At the same time, it avoids impugning the integrity or judgment of the rating officials without sufficient cause. This chapter sets forth policies and procedures for the appeals system. Although the Commander's Inquiry is not part of the appeals system, rated officers may seek an initial means of redress through the Commander's Inquiry provisions of paragraph 5–30. However, a Commander's Inquiry is not a prerequisite for submission of an appeal in accordance with this chapter.

b. Appendix N amplifies and clarifies the policies and procedures outlined in this chapter by providing detailed guidance on the preparation of an adequate appeal. Officers considering submission of an appeal are strongly encouraged to read this chapter and appendix N in their entirety prior to preparing and submitting an appeal. A thorough understanding of the appeals system can save considerable time and effort, and reduce the anxiety associated with having an appeal returned without consideration.

## 9–2. Policies and standards

a. An evaluation report accepted for inclusion in the official record of an officer is presumed to—

(1) Be administratively correct,

(2) Have been prepared by the proper rating officials, and

(3) Represent the considered opinion and objective judgment of rating officials at the time of preparation. (See para 5–32.)

b. Appeals based solely on statements from rating officials claiming administrative oversight or typographical error in recording numerical values in part IVa or block selections in parts Vb, Vd, or VIIa of DA Form 67–8 will normally be returned without action unless accompanied by additional substantiating evidence (para f below) and 5–32b(4).

c. The rated officer or another interested party who knows the circumstances of a rating may appeal any report that he or she believes is incorrect, inaccurate, or in violation of the intent of this regulation.

(1) Other interested parties are limited to representatives of the—

(a) Office of the Deputy Chief of Staff for Personnel (ODCSPER).

(b) US Army Military Personnel Center (MILPERCEN)Total Army Personnel Agency (TAPA).

(c) Office of The Surgeon General (OTSG).

(d) Office, The Judge Advocate General (OTJAG).

(e) Office of the Chief of Chaplains. Army Reserve Personnel Center.

(f) National Guard Bureau.

(2) Other individuals knowing of an alleged rating injustice should contact one of the above agencies or the rated officer.

d. An appeal begun by any party on behalf of an appellant will be referred to the appellant for concurrence and comment before it is submitted.

e. The results of a commander's inquiry under paragraph 3–15 do not constitute an appeal. They may be used, however, in support of an appeal.

f. An appeal must be supported by substantiating evidence. (See para 9–7.) An appeal that alleges a report is incorrect or inaccurate or unjust without usable supporting evidence will not be considered. The determination regarding adequacy of evidence may be made by MILPERCENTAPA (DAPC–MSE–A), ARPERCEN (DARC–RSP–E), or NGB (NGB–ARP–O) in coordination with ODCSPER (DAPE–MPC–S).

g. The office that has custody of an officer's MPRJ may request minor administrative changes to an accepted report in parts I, II, IIIb, and Va, (DA Form 67–8). However, the request must be accompanied by substantiating evidence. Such evidence will include a certified copy of the DA Form 2–1, orders, duty appointment documents, personnel data card, etc. These requests are not appeals; however, HQDA (DAPC–MSE–A), Alexandria, VA 22332–0400, will process them.

h. Appeals based on administrative error only will be adjudicated by Appeals and Corrections Branch, MILPERCEN (active component), the National Guard Bureau (ARNG), or the CDR, ARPERCEN (USAR). Determination of administrative error is based on careful scrutiny of the evidence submitted with the appeal or available in the officer's OMPF. Claims of administrative error pertain to parts I, II, IIIb, and Va of DA Form 67–8, and similar items in other evaluation forms. These include such claims as deviation from the established rating chain, insufficient period of observation by the rating officials, and errors in the report period.

(1) It should be noted that the rated officer's authentication in part II of DA Form 67–8 verifies the information in part I. It also confirms that the rating officials named in part II are those established as the rating chain and authenticates the accuracy of the Army Physical Fitness Test (APFT) performance and height and weight data entries made by the rated officer in part IVa. Appeals based on alleged administrative errors in those portions of a report previously authenticated by the rated officer (parts I, II, IIIa, and IVa) will be accepted only under the most unusual and compelling circumstances.

(2) Correction of minor administrative errors seldom serves as a basis to invalidate an evaluation report. Removal of a report for administrative reasons will be allowed only when circumstances preclude correction of errors, and then only when retention of the report would clearly result in an injustice to the officer.

i. Appeals alleging bias, prejudice, inaccurate or unjust ratings or any matter other than administrative error are substantive in nature and will be adjudicated by the DCSPER Officer Special Review Board (OSRB) (para 9–8). Claims of inaccuracy of a substantive type pertain to parts IIIa and c, IV, Vb, c, d, e, VI, and VII of DA Form 67–8; parts IIc, III, IV, V, VI, or VII of DA Form 67–7; and similar items in other evaluation forms, report enclosures, and OER addenda. These are generally claims of an inaccurate or an unjust evaluation of performance or potential or claims of bias on the part of the rating officials.

j. After resolution of the appeal, the reviewing agency amends the officer's official records, if appropriate. Determination of promotion reconsideration eligibility will be made by the OSRB.

## 9–3. Timeliness

a. Because evaluation reports are used for personnel management decisions, it is important to the Army and the individual officer that an erroneous report be corrected as soon as possible. As time passes, people forget and documents and key personnel are less available; consequently, preparation of a successful appeal becomes more difficult. Normally, appeals will be considered regardless of the period of the report and a decision will be made in view of the regulation in effect at the time the report was rendered. However, the likelihood of successfully appealing a report diminishes as a rule, with the passage of time. Substantive appeals on reports rendered 5 or more years prior are particularly difficult to substantiate with credible evidence. Prompt submission is, therefore, recommended.

b. Substantive appeals must be submitted within 5 years of the OER's completion date. Failure to submit an appeal within this time may be excused only if the appellant provides exceptional justification to warrant this exemption, e.g., extended hospitalization.

c. Administrative appeals will be considered regardless of the period of the report and a decision will be made in view of the regulation in effect at the time the report was rendered. However, the likelihood of successfully appealing a report diminishes as a rule, with the passage of time. Prompt submission is, therefore, recommended.

## 9–4. Preparation

a. Detailed guidance on the preparation of an evaluation report appeal is contained at appendix N.

b. Prepare an appeal in military letter format; clearly identify it as an OER or Academic Evaluation Report appeal; and submit it in duplicate to HQDA (DAPC–MSE–A) (for USAR and ARNG, see chaps 7 and 8). Sample formats are shown at appendix N. Appeals of other Service evaluation reports may be submitted to HQDA for consideration.

c. The appeal will identify the full name, SSN, rank, and branch of the rated officer, period of contested report, return mailing address, and the processing priority. (See para 9–6.)

d. The appeal will state in the first paragraph that it is being submitted under the provisions of chapter 9, AR 623–105. The appeal will also—

(1) Indicate the period of the report being appealed.

(2) State the basis for the appeal (administrative error, inaccuracy of a substantive type, or both).

(3) Cite the processing priority (para 9–6).

(4) Reference supporting evidence.

e. Each appeal must be complete when received. An appeal will not be forwarded nor considered until all supporting documentation is enclosed. Officials wishing to provide statements in support of an appeal must provide them to the officer concerned and not to the reviewing authority. No action will be taken on miscellaneous, unaccompanied statements or documents received at HQDA.

f. Statements provided in support of appeals must be originals. Other documents must be certified true copies, if the original document is not provided. The original appeal correspondence will be returned upon request.

g. A copy of the OER in question should be provided by the appellant.

**9–5. Processing and resolution**

a. Receipt of appeals will be acknowledged directly to the originator. The time required to process an appeal varies greatly, depending on the complexity of the issues involved, the age of the OER being appealed, etc. Appeals are processed in priority (see para 9–6) by date of receipt.

b. Appeals are screened by the reviewing officials to separate claims of administrative error from claims of inaccuracy or injustice of a substantive nature. MILPERCEN, ARPERCEN, or the NGB resolve claims of administrative error. Claims of substantive inaccuracy or injustice are sent through the officer's career management division for adjudication by the OSRB.

c. An appeal may be approved in whole or in part, or may be denied, depending upon the merits of the case. The result of a partially approved appeal may not be that requested by the appellant. For example, the board may decide that the evidence justifies removal of the rater's evaluation, but that the senior rater's evaluation should remain as it was not proven inaccurate or unjust. However, the board will not usually take action that might unintentionally worsen an appealed evaluation report.

d. When the board grants an appeal, in whole or in part, and this results in the removal or substantive alteration of an evaluation report that was seen by one or more promotion boards that previously failed to select the appellant, the OSRB will make a determination as to whether promotion reconsideration by one or more special boards is justified.

e. The reviewing agency notifies each appellant by letter of the decision on his or her appeal and promotion reconsideration eligibility, if applicable. When an appeal is denied, a copy of the letter of notification is filed in the Performance Data Section of the OMPF performance fiche. The appeal correspondence that resulted in a denied or a partially approved appeal will be placed on the OMPF restricted fiche. Documents that apply to appeals that are returned without action because of a lack of usable evidence are not filed in the OMPF. In the case of an invalidated or amended report a memorandum is placed in the Performance Data Section of the OMPF performance fiche to explain the correction. No other documents are filed in the OMPF.

f. If the appeal is denied, an appellant may seek new, additional evidence and submit a new appeal, or may submit an appeal to the next agency in the Army's redress system, the Army Board for Correction of Military Records (ABCMR). The ABCMR is governed by AR 15–185. If the case was initially decided by the OSRB, a case summary of the board's consideration is available under the Freedom of Information Act/Privacy Act (FOIA/PA). A request per AR 340–17 and AR 340–21 for a case summary under the FOIA/PA should be sent to: US Army MILPERCEN, ATTN: DAPC–ALS, 200 Stovall Street, Alexandria, Virginia 22332–0400.

**9–6. Priorities**

a. Appeals are processed in the following priority:

(1) First priority. Appeals pertaining to officers who have been—

(a) Twice not selected for AUS, RA, or USAR promotion and given a directed discharge, release, or mandatory retirement date within 6 months.

(b) Selected for release within 6 months by a DA Active Duty Board.

(c) Identified for referral within 6 months to a DA Active Duty Board.

(d) Recommended for elimination within 6 months. This also applies to officers who have applied for and been denied Voluntary Indefinite category.

(2) Second priority.

(a) Appeals pertaining to officers who have been not selected for AUS, RA, or USAR promotion at least once, but who do not have a mandatory release date within 6 months as a result.

(b) Appeals of officers pending promotion list removal as stated in AR 624–100, chapters 2 and 4.

(3) Third priority. Appeals not eligible for higher priority but if favorably considered might result in a material change in an officer's records.

b. Appellants must identify the priority of their appeals and notify the reviewing agency of any change in their status that would affect the priority.

**9–7. Burden of proof and type of evidence**

a. The burden of proof rests with the appellant. Accordingly, to justify deletion or amendment of a report, the appellant must produce evidence that establishes clearly and convincingly that—

(1) The presumption of regularity referred to in paragraphs 5–32 and 9–2 should not be applied to the report under consideration.

(2) Action is warranted to correct a material error, inaccuracy, or injustice.

b. Clear and convincing evidence must be of a strong and compelling nature, not merely proof of the possibility of administrative error or factual inaccuracy. Simply put, if the adjudication authority is convinced that an appellant is correct in some or all of his/her assertions, the clear and convincing standard has been met with regard to those assertions.

c. For a claim of administrative error, appropriate evidence may include—

(1) The published rating chain used by the organization during the period of the report being appealed.

(2) Assignment, travel, or temporary duty orders.

(3) Extracts of unit morning reports or personnel data card (PDC).

(4) Leave records.

(5) Organization manning documents.

(6) Hospital admission and disposition sheets.

(7) Statements of military personnel officers or other persons who know the situation.

(8) The results of a Commander's Inquiry (para 5–30).

(9) Other documents bearing on the point of question.

d. For a claim of inaccuracy or injustice of a substantive type, evidence must include statements from third parties, rating officials, or other documents from official sources (See app N). Third parties are persons other than the rated officer or rating officials who have knowledge of the appellant's performance during the rating period. Such statements are afforded more weight if they are from persons who served in positions affording them good opportunity to observe, firsthand, the appellant's performance as well as interactions with rating officials. Statements from rating officials are also acceptable if they relate to allegations of factual errors, erroneous perceptions, or claims of bias. To the extent practical, such statements should include specific details of events or circumstances leading to inaccuracies, misrepresentations, or injustice at the time the report was rendered. The results of a Commander's Inquiry may provide support for an appeal request.

e. To be acceptable, evidence must be competent, material, and relevant to the appellant's claim. In this regard, note that DA Form 67–8–1 may be used to facilitate the writing of an OER. However, it is not a controlling document in terms of what is entered on DA Form 67–8. Therefore, no appeal may be filed solely because the information on DA Form 67–8–1 is not repeated on the OER, or because the comments of rating officials on the DA Form 67–8 are

not identical to those in the DA Form 67–8–1. While there should be consistency between a rating official's comments on both forms, there may be factors other than those listed on DA Form 67–8–1 to be considered when evaluating an officer.

*f.* Appeals that claim an error in the senior rater profile will not be accepted unless supported by detailed documentary evidence. This evidence must show that the senior rater profile posted to the report in question is in error. The profile is meant to be an indicator of the senior rater's tendency to inflate or deflate ratings; it is not meant to be an hour-to-hour measurement. The profile reflects the total of all reports in a single grade or grade grouping written by that senior rater and received and accepted at HQDA as of the day the new report is accepted. Reports may be delayed in mail handling and administrative processing. Hence, the official profile maintained at HQDA on a given day may be different from that in any personal record. Appeals based on differences between privately kept records and the DA-maintained profile will not usually be honored.

## 9–8. Officer Special Review Board composition and procedures

*a.* The DCSPER Officer Special Review Board is established under the provisions of DA Memorandum 600–1 and operates within the guidelines established in this regulation. It is composed of senior officers on duty at HQDA. At least three members of board constitute a quorum for voting on each case. Board recommendations are based on a majority vote. When practical, cases will be considered by at least one board member whose background is similar to that of the appellant. No member will vote on a case in which he or she was personally involved, or knowingly has any bias for or against the parties involved. To the extent possible, voting members will be senior to the appellant.

*b.* Board proceedings are administrative and nonadversary; the provisions of AR 15–6 do not apply. Although not bound by the rules of evidence for trials by court-martial or other court proceedings, the board does keep within the reasonable bounds of evidence that is competent, material, and relevant. The appellant or his or her agent are not authorized to appear before the board. However, the board may obtain more information from the appellant, the rating officials, persons in the chain of command, or anyone thought to have firsthand knowledge of the case. The appellant will generally be contacted by official correspondence if deemed necessary. Normally, the board will not contact those who provided a third party statement of support unless there is a need for clarification.

## Guidelines for appeals based on substantive inaccuracy

*a.* A decision to appeal an evaluation should not be made lightly. (See app N). Before deciding whether or not to appeal,

the prospective appellant must analyze his or her own case dispassionately. This is difficult. However, unless it is done, the chances of a successful appeal are further reduced. The prospective appellant should take note of the following:

(1) Pleas for relief citing past or subsequent performance or assumed future value to the Army are rarely successful.

(2) The following will provide limited support at best:

*(a)* Statements from people who observed the appellant's performance before or after the period in question (unless performing the same duty in the same unit under similar circumstances).

*(b)* Letters of commendation or appreciation for specific but unrelated instances of outstanding performance.

*(c)* Citations for awards, inclusive of the same period.

*b.* Once the decision has been made to appeal an evaluation, the appellant should state succinctly what he or she is appealing and the basis for the appeal. For example, he or she should state—

(1) Whether the entire report is contested or only a specific part or comment.

(2) The basis for his or her belief that the rating officials were not objective or had an erroneous perception of his or her performance. Note that a personality conflict between the appellant and a rating official does not constitute grounds for relief; it must be shown conclusively that the conflict resulted in an inaccurate or unjust evaluation.

*c.* Most appellants will never be completely satisfied with the evidence they have obtained. A point is reached, however, when the appellant must decide whether to submit with the available evidence or to forgo the appeal entirely. Some of the factors he or she needs to consider are as follows:

(1) The evidence must support the allegation. Remember the case will be reviewed by a board of impartial officers who will be influenced only by the available evidence. Their decision will be based on their best judgment.

(2) Correcting minor administrative errors or deleting one official's rating does not invalidate the report.

## 9–10. Summary checklist for the appellant

*a. Cover Letter.*

(1) Prepare the appeal cover letter in a typed, military letter on letterhead or white bond paper.

(2) Identify in the first paragraph name, rank, branch, SSN, period of report and priority of appeal.

(3) Include an AUTOVON or commercial phone number and correct mailing address. Identify any pending personnel actions.

(4) Concisely explain the nature of your disagreement and what corrective action is requested.

(5) List and identify all enclosures.

(6) Sign and date letter.

*b. Evidence.*

(1) Administrative appeals must be proven by original or certified true copies of appropriate documents.

(2) Substantive appeals must be supported by originals of typed statements from knowledgeable observers or rating officials during the report period.

(3) Statements from rating officials will not be the sole basis of the appeal.

(4) Documents such as ARTEP, AGI, Command Inspection results, etc., may also be useful in supporting a substantive appeal.

*c. Copies.* Original and one duplicate copy.

*d. Dispatch.*

(1) Before mailing, review to be sure all enclosures are included, all signatures and dates are on all documents and address and phone numbers are included.

(2) Use correct office symbol in address (see app N) and enclose in secure container, mailing envelope or heavy wrapping, as required.

*e. Follow up.*

(1) Notify the appropriate agency promptly if address or priority changes.

(2) Appellants will be notified promptly, in writing, of the decision.

(3) If not totally approved, appellants may request a copy of the OSRB Case Summary, if appropriate, then submit a second appeal strengthened by additional evidence.

(4) As an alternative to reconsideration, appellants may apply to the Army Board for Correction of Military Records (ABCMR) under the provisions of AR 15–185.