## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **LAWRENCE S. EPSTEIN** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| v. | ) | **Case Number: 1:07CV00688 (RMU)** |
| | ) | |
| **PETE GEREN,** | ) | |
| **Acting Secretary of the Army,** | ) | |
| | ) | |
| **Defendant.** | ) | |
| | ) | |

### DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Defendant hereby moves for summary judgment pursuant to Fed. R. Civ. P. 56.  In support of this motion, defendant respectfully submits the attached memorandum of points and authorities, a statement of material facts to which there is no genuine dispute, the Administrative Record filed contemporaneously, and a proposed order.

Respectfully submitted,


/s_____
JEFFREY A. TAYLOR, D.C. Bar # 498610
United States Attorney


/s_____
RUDOLPH CONTRERAS, D.C. Bar # 434122
Assistant United States Attorney


/s_____
STEVEN M. RANIERI
Special Assistant United States Attorney
Civil Division
555 Fourth St., N.W.

Washington, D.C. 20530
202-353-9895
Attorneys for Defendant

Of Counsel:
CAPTAIN KEVIN MCCART
U.S. Army Legal Services Agency
901 North Stuart Street
Arlington, Virginia  22203-1837
(703) 696-2515

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **LAWRENCE S. EPSTEIN** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case Number: 1:07CV00688 (RMU)** |
| | ) | |
| **PETE GEREN,** | ) | |
| **Acting Secretary of the Army,** | ) | |
| | ) | |
| **Defendant.** | ) | |
| _____ | ) | |

**MEMORANDUM IN SUPPORT OF DEFENDANT'S**
**MOTION FOR SUMMARY JUDGMENT**

Plaintiff, a retired United States Army Reserve officer, brings suit under the

Administrative Procedure Act ("APA"), 5 U.S.C. 702, et. seq.  He alleges that the Army Board

for Correction of Military Records[1] ("ABCMR") "violated the Administrative Procedure Act as

arbitrary and capricious agency action, unsupported by substantial evidence, and otherwise not in

accordance with Army regulations."  Complaint ("Compl."), p. 16, Cause of Action.

Specifically, plaintiff requests that this Court remove an Officer Evaluation Report ("OER")[2]

from his personnel file or, in the alternative, remand the case to the ABCMR for appropriate

relief.  Compl., p. 17, Prayer for Relief.

Defendant files this Memorandum in support of its Motion for Summary Judgment.

_____

[1]  The Army Board for Correction of Military Records is composed of civilians appointed by
the Secretary of the Army, and has statutory authority to "correct any [Army] record" in order to
"remove error or injustice."  10 U.S.C. § 1552(a).

[2]  The OER serves as a performance and potential appraisal of the rated individual.  The Army
also uses this report to determine promotions, schooling and assignments.  Army Regulation 623-
105, ¶¶ 1-3, 1-4, 2-1.

Defendant is entitled to judgment as a matter of law on plaintiff's claims pursuant to Fed. R. Civ. P. 56, because there is no genuine issue as to any material fact.  Plaintiff has failed to demonstrate that the decision of ABCMR denying his request to set aside his OER was arbitrary, capricious, unsupported by substantial evidence or contrary to law.  Defendant's statement of material facts not in genuine dispute and the Administrative Record ("AR") support this memorandum.

## I.  STATEMENT OF FACTS

Defendant respectfully refers the Court to Defendant's Statement of Material Facts to Which There is No Genuine Dispute filed simultaneously herewith.

## II.  LEGAL STANDARD

### A.    Summary Judgment

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986); Diamond v. Atwood, 43 F.3d 1538, 1540 (D.C. Cir. 1995).  Where no genuine dispute exists as to any material fact, summary judgment is required.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247 (1986).

A genuine issue of material fact is one that could change the outcome of the litigation.  Id. at 247.  The party moving for summary judgment need not prove the absence of an essential element of the non-moving party's case.  Celotex, 477 U.S. at 325.  "[T]he burden on the moving party may be discharged by 'showing' – that is, pointing out to the district court – that there is an absence of evidence to support the non-moving party's case."  Id.  Once the moving party has

met its burden, the non-movant may not rest on mere allegations, but must proffer specific facts showing that a genuine issue exists for trial or present some objective evidence that would enable the court to find an entitlement to relief.  Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986); Banks v. C & P Tel. Co., 802 F.2d 1416 (D.C. Cir. 1986).

The mere existence of some factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact.  See Anderson, 477 U.S. at 247-248.  The "purpose of summary judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'" Matsushita, 475 U.S. at 587 (citation omitted).  It is well-settled that "there is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party."  Anderson, 477 U.S. at 249-250.  If the evidence is merely colorable, or is not significantly probative, or the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, summary judgment is proper.  See id. at 249-50; Matsushita, 475 U.S. at 587.  In Celotex, the Supreme Court further instructed that the "[s]ummary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy and inexpensive determination of every action.'" Celotex, 477 U.S. at 327 (quoting Fed. R. Civ. P. 1).

**B.    APA Standard**

Congress has entrusted the primary duty of correcting military records with the military correction boards.  Harris v. United States, 14 Cl. Ct. 84, 89 (1987), 10 U.S.C. § 1552.  When a military member seeks to overturn the final decision of a military correction board, the court has

a very limited scope of review.  Under the Administrative Procedures Act ("APA"), the Court

will overturn an agency decision only if it is "arbitrary, capricious, an abuse of discretion or

otherwise not in accordance with law."  5 U.S.C. § 706(2)(A); Wolfe v. Marsh, 835 F.2d 354,

358 (D.C. Cir. 1987).  "This deferential standard is calculated to ensure that the courts do not

become a forum for appeals by every soldier dissatisfied with his or her ratings, a result that

would destabilize military command and take the judiciary far afield of its area of competence."

Cone v. Caldera, 223 F.3d 789, 793 (D.C. Cir. 2000) (citing Orloff v. Willoughby, 345 U.S. 83,

94 (1953)).

    An agency action is arbitrary and capricious if the agency has failed to follow procedure

as required by law (5 U.S.C. §706(2)(D)), or has entirely failed to consider an important aspect of

the problem.  See Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co., 463 U.S. 29

(1983).  Review of the agency's decision is not de novo, it is limited to the administrative record

that was before the agency.  See McDougall v. Widnall, 20 F. Supp.2d 78, 82 (D.D.C. 1998)

(citations omitted).

    To prevail in this Court, the plaintiff must "overcome the 'strong, but rebuttable,

presumption that administrators of the military, like other public officers, discharge their duties

correctly, lawfully, and in good faith.'"  Frizelle v. Slater, 111 F.3d 172, 177 (D.C. Cir. 1997)

(citation omitted).  It is well-settled that to rebut this presumption, a plaintiff must establish

through "cogent and clearly convincing evidence" that the Agency's findings were arbitrary,

capricious, unsupported by substantial evidence, or contrary to law or regulations.  Wronke v.

Marsh, 787 F.2d 1569, 1576 (Fed. Cir. 1986) (citation omitted); McDougall, 20 F. Supp.2d at 82;

Walker v. Shannon, 848 F. Supp. 250, 254 (D.D.C. 1994).  Only the most egregious agency

4

decisions do not satisfy this very deferential standard of review.  Kreis v. Sec'y of the Air Force, 866 F.2d 1508, 1515 (D.C. Cir. 1989).

"[T]he function of this Court is not to serve as a super correction board that reweighs the evidence."  Charette v. Walker, 996 F. Supp 43, 50 (D.D.C. 1998).  In reviewing agency action under the APA's arbitrary and capricious standard, a court "will not disturb the decision of an agency that has 'examined the relevant data and articulated a satisfactory explanation for its action including a rational connection between the facts found and the choice made.'"  MD Pharm., Inc. v. Drug Enforcement Admin., 133 F.3d 8, 16 (D.C. Cir. 1998) (quoting Motor Vehicle Mfrs. Ass'n., 463 U.S. at 43).  The requirement that an agency provide a rational explanation for its action "does not mean that an agency's decision must be a model of analytic precision to survive a challenge.  A reviewing court will 'uphold a decision of less than ideal clarity if the agency's path may reasonably be discerned.'"  Dickson v. Sec'y of Defense, 68 F.3d 1396, 1404 (D.C. Cir. 1995) (citation omitted).

### III.  ARGUMENT

The ABCMR acted reasonably and lawfully in denying plaintiff's request to set aside his OER.  The ABCMR thoroughly reviewed plaintiff's application and its decision was not arbitrary or capricious, an abuse of discretion or contrary to law or regulation.  Moreover, the administrative record fully supports the ABCMR decision.  The ABCMR carefully considered plaintiff's application, reviewed the evidence he submitted, his military personnel file, and the applicable regulatory requirements, and reached the reasoned decision that plaintiff had not

established the existence of a material error or injustice.  AR 001-011.[3]

### A.    Plaintiff Challenges Only the ABCMR's Denial of His Request to Remove the Challenged OER from His Official Military Personnel File

As a preliminary matter, it is important to highlight the limited nature of the Plaintiff's claims.  In his administrative application, plaintiff requested that the ABCMR:

> (A) set aside his Officer Evaluation Report (period 22 OCT 1990 to 5 MAR 1991); (B) set aside applicant's non-selections for promotion to Colonel (O-6), USAR; and order a special selection board to reconsider his promotion to O-6 without the adverse OER (1990-91); (C) in the alternative to setting aside his promotion in (B) above, order a special selection board to reconsider his promotion to O-6 without the adverse OER (1990-91); (D) in the event the SSB recommends applicant for promotion to O-6, retroactively promote applicant with retirement as an O-6 on his original date of mandatory retirement of 27 OCT 1997, with credit towards retirement pay at age 60.

AR 015.  While plaintiff spends approximately eleven pages of his complaint detailing the alleged malfeasance of his chain of command, including the processing of his OER (Compl., pp. 3-14), his judicial complaint challenges only the ABCMR's denial of his request to remove the questioned OER from his Official Military Personnel File ("OMPF").  Compl, p 17, Prayer for Relief.  Thus, the scope of this Court's review is limited to whether the ABCMR acted arbitrarily, capriciously, abused its discretion or acted contrary to law or regulation in denying plaintiff's request to set aside his OER.

### B.    The ABCMR Thoroughly Reviewed Plaintiff's Application

The crux of plaintiff's argument is that his rater and senior rater violated Army regulations and deprived him of procedural safeguards by issuing him a "change of rater" OER instead of a "relief-for-cause" OER, i.e., plaintiff contends that his OER was a *de facto* relief-for-

---

[3]  "AR" refers to the Administrative Record, followed by a page number truncated to three digits for ease of reference; e.g., Administrative Record page 00001 is cited as "AR 001."

cause OER given to him without the procedural safeguards that would therefore be due. AR 023. Plaintiff alleges that the ABCMR's decision was arbitrary and capricious because the decision did not consider this argument. Compl ¶ 36. Plaintiff's allegation, however, is meritless.

The ABCMR set out plaintiff's argument that he had been improperly relieved in the introductory section of its opinion. AR 004. The ABCMR determined that:

> [t]he bottom line issue in this case is whether or not the contested report properly reflects his performance and potential during the period in question and **whether or not it was rendered in accordance with the applicable regulations in effect at the time**. After reviewing all of the documents submitted by the applicant and his counsel as well as the evidence of record, the evidence suggests that it is.

AR 010 (emphasis added). The ABCMR exhaustively examined the plaintiff's application and set out in detail the facts as alleged by the plaintiff. AR 004-009. Only after reviewing the plaintiff's submission and his military personnel files did the ABCMR reach the conclusion that the plaintiff did not establish that the complained of OER had not been processed in accordance with Army regulations.[4]  AR 010.

### C.    The ABCMR's Reliance upon Army Regulation Was Proper.

This Circuit has historically respected the ABCMR's interpretation and application of Army regulations that govern evaluations. In Musengo v. White, 286 F.3d 535 (D.C. Cir. 2002), Mr. Musengo, a major in the United States Army Reserves, challenged the ABCMR's refusal to alter the senior rater's portion of his OER. Id. at 539. Mr. Musengo, like plaintiff, argued that

---

[4]  The plaintiff also alleged that the disputed OER was *per se* inaccurate because it supposedly differed greatly from a previous OER from the same rater and senior rater. See AR 010. The ABCMR addressed this allegation and found it to be without merit. Id. The ABCMR ruled, "[t]he period of the two reports, as well as the scope of his duties were drastically different, as was the degree of daily contact during the period of the report. . . . The evidence suggests that the rating officials were open-minded and fair in their evaluations based on the circumstances of each rating period." Id.

the ABCMR acted arbitrarily and capriciously by denying his application for relief.  Unlike the case at bar where plaintiff's rater stands by his evaluation, Mr. Musengo's senior rater wrote a letter and gave a deposition stating that he had made a mistake in issuing Mr. Musengo's rating, and that he had intended to place him "center of mass."  Id.  The appellate court concluded that the ABCMR's citation to Army Regulation 623-105, was a "reasonable basis for the Correction Board's decision to reject [the senior rater's] statements as insufficient to overcome the presumption of regularity."  Musengo, 286 F.3d at 540.  Because the appellate court concluded that the regulation was a reasonable basis for the ABCMR's decision, it refused to overturn the ABCMR's findings.  Id. at 540-41; See also Cone, 223 F.3d at 794-95.

As discussed in detail, *infra*, the ABCMR in the instant case properly considered and interpreted, *inter alia*, Army Regulation 623-105, establishing the policies and procedures for the OER system.  AR 009.  Thus, like Musengo, the ABCMR's reliance upon Army Regulation provides a reasonable basis for its decision and this Court should refuse to overturn the ABCMR's findings.

### C.    Plaintiff Was Afforded Extensive and Appropriate Due Process for Challenged OER

The plaintiff's theory of the case is fundamentally flawed.  His theory is that his reassignment that coincided with his OER was in reality a relief-for-cause and, therefore, his OER should have stated as much.  His theory further posits that if his move were considered a relief-for-cause, there are additional procedural safeguards or due process that he should have received, but did not.  This theory, at least in its application to the facts of this case, misconstrues the process afforded to officers who are relieved-for-cause.  Plaintiff claims that he was entitled

to formal counseling, prior approval of the relief by a general officer, a review of the OER by the next superior above the relieving official, and an opportunity to comment on the OER. Compl., ¶ 16. As established below, general officer approval would not have been necessary to relieve the plaintiff, and the plaintiff received all of the other procedural safeguards to which a relieved officer is entitled. If plaintiff's OER had been processed as a relief-for-cause OER, the only thing that would have changed is that the OER would have stated it was a relief-for-cause OER - a result more adverse to plaintiff.

The plaintiff's commander had the authority to relieve the plaintiff for cause at any time. Army Reg. 623-105, ¶ 5-18a, e. Although Army Regulation 600-20 requires formal counseling under most circumstances prior to a relief-for-cause, the requirement is waivable. Army Reg. 600-20, ¶ 2-15. Regardless, it is undisputed that the plaintiff was counseled by his rater prior to being moved from his position and receiving the contested OER. Compl., ¶ 13; AR 010. More importantly, there is nothing that the plaintiff could have done to stop a relief-for-cause. No mechanism exists by which a relieved officer can appeal or otherwise stop a relief-for-cause. See Army Reg. 623-105, ¶ 5-18. The plaintiff would have had the right to comment on the OER before it was finalized if this were a relief-for-cause OER. Army Reg. 623-105, ¶ 5-29. In this case, since the OER was considered adverse, the plaintiff was provided the same opportunity to comment on the OER that he would have had if it were a relief-for-cause OER. Compl., ¶ 14; see Army Reg. 623-105, ¶ 5-29. The plaintiff submitted rebuttal comments regarding the OER to his senior rater. AR 007. The plaintiff correctly points out that if the contested OER had been a relief-for-cause report, the immediate supervisor to the relieving officer would have to review the report before it was finalized. Army Reg. 623-105, ¶ 5-29. In this case, the senior rater was the

immediate supervisor of the official who directed the change in duty, and the senior rater was already charged with reviewing the OER to ensure compliance with the regulation in the same manner he would have been if this had been a relief-for-cause OER. Compare Army Reg. 623-105, ¶ 3-10b with Army Reg. 623-105, ¶ 4-28. Again, the only thing that would have changed for the plaintiff if he had been relieved-for-cause, which the government does not concede occurred, is that the OER would have demonstratively stated that it was relief-for-cause OER. Such a statement would have made the contested OER even more adverse to the plaintiff.

The plaintiff's contention that his rater could not relieve him for cause without prior general officer approval, Compl., ¶ 15, is incorrect. The plaintiff correctly cites Army Regulation 600-20 as requiring prior general officer approval before relieving an officer in a command position. Compl., ¶ 15; Army Reg. 600-20, ¶ 2-15. The plaintiff misunderstands, however, the significance of this provision. The plaintiff's rater was the commander of the unit and thus general officer approval would have been required to relieve plaintiff's rater. The plaintiff, however, was the deputy commander of the unit and so was not in a command position. See Army Reg. 600-20, ¶ 2-3. It is a bedrock tenet of military organization and discipline that only one person can be in command of an organization at any given time. The fact that the plaintiff apparently believed that he was better suited to command than his rater, AR 005, does not change or elevate the procedural due process to which he was otherwise entitled.

The plaintiff attempts to cast doubt on the ABCMR opinion and the actions of his chain of command by downplaying the amount of due process he received and by mischaracterizing the nature of the administrative actions taken. The plaintiff was afforded all of the due process to which he was entitled during the processing of his OER. As set out above, the plaintiff even

received all of the due process to which a relieved officer is entitled.  The plaintiff's rater, who also was the plaintiff's commander, moved the plaintiff to a new position and properly processed the "change of rater" OER.  See Compl., ¶ 13.  Since the plaintiff had requested an Equal Opportunity ("EO") investigation involving his rater, the senior rater delayed preparing his portion of the OER until the EO investigation had been completed.  AR 009.  Both the informal and formal EO investigations found no evidence of personal or institutional discrimination practices.  AR 005- 006.[5]  As the OER was considered adverse to the plaintiff, his senior rater referred the OER to him for his comments prior to its submission.  Compl., ¶ 14; Army Reg. 623-105, ¶ 4-27.  The plaintiff submitted comments to the senior rater regarding the OER.  AR 007.  The plaintiff requested that a Commander's Inquiry[6] be conducted "to look into the

_____

[5] The informal EO investigation concluded:

the [plaintiff] was not experienced in higher level staff work, that several of his actions were inappropriate and did reflect negatively on the chain of command, that he became defensive and attributed his rater's counseling as being motivated by professional jealousy and ethnic/racial prejudice, that the rater was correct in questioning the [plaintiff's] competence and in not trusting him with important actions, that there was no evidence that the rater's counseling of the applicant's performance was based on anything other than professional experience and judgment, that the rater had made inappropriate remarks about the [plaintiff's] religious dietary habits; however, they had first been initiated by the applicant and not the rater and were stopped when the applicant brought it to the rater's attention, that the applicant was not loyal to his commander (rater) and his actions were disruptive to the command. . . . The applicant also suggested that he was better suited to command than was the rater.

AR 005.  The investigating officer recommended that the plaintiff be reassigned or released from active duty.  Id.

[6] A Commander's Inquiry is performed by a senior officer who investigates the clarity of the report, the facts contained in the report, the conduct of the rated officer and rating officers, alleged errors, injustices, lack of objectivity or fairness of a rater or senior rater who prepared an OER.  Army Regulation 623-105, ¶ 5-30.

negative OER comments." Compl., ¶ 11.  The plaintiff's chain of command honored his request

for a Commander's Inquiry.  Id.  The Commander's Inquiry found that the plaintiff's allegations

were not substantiated and that the OER was administratively correct.  AR 007.  The

Commander's Inquiry was conducted in full compliance with the provisions of Army Reg. 623-

105.  See Army Reg. 623-105, ¶ 5-30.  In his complaint, the plaintiff does not establish any

impropriety in the conduct of the Commander's Inquiry, he merely attacks the Commander's

Inquiry as not accomplishing the same things that general officer approval of a relief-for-cause

would.  Compl., ¶ 28.  This argument is a red herring as the plaintiff was not in a position

requiring prior general officer approval for relief, and the Commander's Inquiry was designed to

perform a different function than general officer approval, a function that was properly carried

out in this case.  Following the Commander's Inquiry, the plaintiff appealed the OER to the

Officer Special Review Board ("OSRB").[7]  Compl., ¶ 33; AR 007.  Prior to reaching its decision,

the OSRB contacted witnesses including the plaintiff's rater for the challenged OER.  AR 007-

008.  The OSRB determined that the plaintiff did not provide clear and convincing evidence that

the OER was inaccurate, unjust, or violated regulations.  AR 008.

The plaintiff received all of the due process to which he was entitled for his adverse,

referred OER.  Even if the plaintiff's OER were to be construed as a relief-for-cause OER, which

the government does not concede, the plaintiff still received all of the required due process.  As

---

[7] The Department of the Army Officer Special Review Board is composed of senior Army
officers and hears appeals of OERs.  Army Regulation 623-105, ¶ 9-8a.  Its function is to review
OER appeals alleging bias, prejudice, and inaccurate or unjust ratings.  The OSRB proceedings
are administrative and nonadversarial in nature.  The OSRB reviews all relevant evidence and
may obtain more information from the appellant, rating officials, persons in the chain of
command and the Army.  Id., ¶ 9-8b.

such, there is no way for the plaintiff to establish material legal error or injustice in the processing of his OER.

## IV. CONCLUSION

The plaintiff did not carry his burden to provide clear and convincing evidence to the ABCMR that the contested OER amounts to error or injustice. Further, the plaintiff cannot establish that the decision by the ABCMR was arbitrary or capricious. The ABCMR's determination is well reasoned and supported by the evidence. Plaintiff could not and did not overcome the "strong, but rebuttable, presumption that administrators of the military, like other public officers, discharge their duties correctly, lawfully, and in good faith. . . . This presumption 'includes those officers who are charged with rating the performance of other officers.'" Calloway v. Brownlee, 366 F. Supp. 2d 43, 54 (D.D.C. 2005) (citation omitted). The role of this Court is to "ensure that the agency 'examined the relevant data and articulated a satisfactory explanation for its action.'" Id. The ABCMR examined the relevant data and provided the requisite explanation for its decision.

Wherefore, defendant respectfully requests that the Court grant defendant's motion for summary judgment.

Respectfully submitted,


/s_____
JEFFREY A. TAYLOR, D.C. Bar # 498610
United States Attorney


/s_____
RUDOLPH CONTRERAS, D.C. Bar # 434122
Assistant United States Attorney

13

/s_____
STEVEN M. RANIERI
Special Assistant United States Attorney
Civil Division
555 Fourth St., N.W.
Washington, D.C. 20530
202-353-9895
Attorneys for Defendant

Of Counsel:
CAPTAIN KEVIN MCCART
U.S. Army Legal Services Agency
901 North Stuart Street
Arlington, Virginia  22203-1837
(703) 696-2515

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

LAWRENCE S. EPSTEIN        )
                                    )
      Plaintiff,            )
                                    )
      v.                     )     Case Number: 1:07CV00688 (RMU)
                                    )
PETE GEREN,              )
Acting Secretary of the Army,    )
                                    )
      Defendant.        )
_____)

## STATEMENT OF MATERIAL FACTS
## TO WHICH THERE IS NO GENUINE DISPUTE

1. Plaintiff was commissioned in the U.S. Army Reserve on June 6, 1969.  AR 004.[1]

2. The plaintiff was released from active duty and joined the Army Reserves on April 16, 1973.  AR 004.

3. In July 1990, plaintiff was activated and served 16 days of active duty.  Compl., ¶ 2.

4. The plaintiff was issued an Officer Evaluation Report ("OER")[2] for the 16 days of active duty in which his senior rater gave him the highest possible evaluation for potential. Compl., ¶ 3; AR 055.

5. On October 22, 1990, the plaintiff was activated for a 6-month active duty tour. Compl., ¶ 5.

6. On January 18, 1991, the plaintiff's rater counseled the plaintiff in writing that his

---

[1] "AR" refers to the Administrative Record, followed by a page number truncated to three digits for ease of reference; *i.e.*, Administrative Record page 00004 is cited as "AR 004."

[2] The OER serves as a performance and potential appraisal of the rated individual.  The Army also uses this report to determine promotions, schooling, and assignments. Army Regulation 623-105, ¶¶ 1-3, 1-4, 2-1.

conduct was not in the best interests of order, sound judgment, and good discipline.  The

plaintiff's rater ordered the applicant to cease and desist his behavior immediately.  The rater

informed the plaintiff that if his behavior continued, the rater would have no choice but to

terminate his active duty, deny him access to special intelligence, and relieve him for cause.  AR

004-005; Compl., ¶ 7.

7.  In January 2001, the plaintiff initiated an Equal Opportunity ("EO") complaint against

his rater.  Compl., ¶ 6.

8.  In response to the plaintiff's EO complaint, the plaintiff's senior rater ordered an

informal EO investigation.  AR 005.

9.  On February 16, 1991, the plaintiff's active duty orders were extended for an

additional six months.  Compl., ¶ 8.

10.  The informal EO investigation was completed on March 4, 1991.  AR 005.

11.  The informal EO complaint concluded:

the [plaintiff] was not experienced in higher level staff work, that several of his
actions were inappropriate and did reflect negatively on the chain of command,
that he became defensive and attributed his rater's counseling as being motivated
by professional jealousy and ethnic/racial prejudice, that the rater was correct in
questioning the [plaintiff's] competence and in not trusting him with important
actions, that there was no evidence that the rater's counseling of the applicant's
performance was based on anything other than professional experience and
judgment, that the rater had made inappropriate remarks about the [plaintiff's]
religious dietary habits; however, they had first been initiated by the applicant and
not the rater and were stopped when the applicant brought it to the rater's
attention, that the applicant was not loyal to his commander (rater) and his actions
were disruptive to the command. . . . The applicant also suggested that he was
better suited to command than was the rater.

AR 005.

12.  The EO investigating officer, a Lieutenant Colonel, recommended that the plaintiff

2

be reassigned or released from active duty.  AR 005.

13.  On March 5, 1991, the plaintiff's rater transferred the plaintiff to a new duty position outside of the rater's command.  Compl., ¶ 12.

14.  The plaintiff was issued a change-of-rater OER for the time period October 22, 1990 through March 5, 1991.  AR 057.

15.  On April 1, 1991, the plaintiff's senior rater issued the plaintiff's rater a letter of admonishment stating that although the informal EO investigation did not confirm the existence of discriminatory practices, he cautioned the rater to avoid future remarks of an insensitive and inappropriate nature.  AR 006.

16.  On August 25-26, 1991, a formal EO investigation was conducted.  The investigating officer, a Master Sergeant, found no evidence of personal or institutional discrimination practices.  AR 006.

17.  The formal EO investigation substantiated the allegations that the rater had commented on the plaintiff's dietary habits and was insensitive in his verbal communication. AR 006.

18.  After receiving the results of both the informal and formal EO investigations, the plaintiff's senior rater completed his portion of the plaintiff's OER.  AR 006-007.

19.  Because the plaintiff's OER was adverse, the plaintiff's senior rater referred the OER to the plaintiff for comment before it was submitted.  AR 007.

20.  The plaintiff submitted rebuttal comments regarding the OER to the senior rater.  AR 007.

21. The plaintiff requested that the senior rater conduct a commander's inquiry[3] to look into the alleged impropriety of the OER, namely that it was reprisal for his EO complaint. AR 007.

22. The plaintiff's senior rater appointed a Colonel to conduct the commander's inquiry into the plaintiff's allegations. AR 007.

23. The commander's inquiry investigating officer found that the applicant's allegations could not be substantiated and that the OER was administratively correct. AR 007.

24. On March 16, 1992, the plaintiff was informed that the commander's inquiry revealed no error, violation of regulation or wrongdoing regarding the contested OER. AR 007.

25. In June 1993, the plaintiff appealed his OER to the Officer Special Review Board ("OSRB").[4] AR 007.

26. The OSRB considered the plaintiff's submission and his records and interviewed witnesses, to include the plaintiff's rater, before reaching the conclusion that the plaintiff had failed to provide clear and convincing evidence to show that the OER was inaccurate or unjust or that it violated regulations. AR 008.

27. The plaintiff applied to the Army Board for Correction of Military Records

---

[3] A Commander's Inquiry is performed by a senior officer who investigates the clarity of the report, the facts contained in the report, the conduct of the rated officer and rating officers, alleged errors, injustices, lack of objectivity or fairness of a rater or senior rater who prepared an OER. Army Regulation 623-105, ¶ 5-30.

[4] The Department of the Army Officer Special Review Board is composed of senior Army officers and hears appeals of OERs. Army Regulation 623-105, ¶ 9-8a. Its function is to review OER appeals alleging bias, prejudice, and inaccurate or unjust ratings. The OSRB proceedings are administrative and nonadversarial in nature. The OSRB reviews all relevant evidence and may obtain more information from the appellant, rating officials, persons in the chain of command and the Army. Id., ¶ 9-8b.

("ABCMR")[5] on April 24, 2003.  AR 014.

28.  On November 18, 2003, the ABCMR denied the plaintiff's application for relief in a ten page opinion.  AR 002-011.

29.  On April 16, 2007, plaintiff filed the subject complaint in this Court under the Administrative Procedure Act, 5 U.S.C. §701, *et. seq.,* challenging the ABCMR's denial of his application for relief.

Respectfully submitted,

/s_____
JEFFREY A. TAYLOR, D.C. Bar # 498610
United States Attorney

/s_____
RUDOLPH CONTRERAS, D.C. Bar # 434122
Assistant United States Attorney

/s_____
STEVEN M. RANIERI
Special Assistant United States Attorney
Civil Division
555 Fourth St., N.W.
Washington, D.C. 20530
202-353-9895
Attorneys for Defendant

---

[5] The Secretary of the Army established the ABCMR pursuant to 10 U.S.C. § 1552. Under the statute, the Secretary of the Army, acting through the ABCMR, may amend any record when he considers it necessary to correct an error or remove an injustice.  The policies, procedures, and governing rules of the ABCMR are set forth in 32 C.F.R. § 581.3.

Of Counsel:
CAPTAIN KEVIN MCCART
U.S. Army Legal Services Agency
901 North Stuart Street
Arlington, Virginia  22203-1837
(703) 696-2515

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **LAWRENCE S. EPSTEIN** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case Number: 1:07CV00688 (RMU)** |
| | ) | |
| **PETE GEREN,** | ) | |
| **Acting Secretary of the Army,** | ) | |
| | ) | |
| **Defendant.** | ) | |
| ————————————————————— | ) | |

## ORDER

This matter comes before the Court on Defendant's Motion for Summary Judgment.

Based upon the motion, the opposition thereto, and the entire record herein, it is this _____ day of

_____, 20___ hereby

**ORDERED** that Defendant's motion is **GRANTED**, and it is further

**ORDERED** that judgment shall be entered for Defendant, and that this matter is

hereby **DISMISSED WITH PREJUDICE**.

This is a final, appealable order.

**SO ORDERED**.


_____
Ricardo M. Urbina
United States District Judge


Copies to:
Parties via ECF