## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **LAWRENCE S. EPSTEIN** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Civil Action No. 07-0688 (RMU)** |
| | ) | |
| **PETE GEREN,** | ) | |
| **Secretary of the Army,** | ) | |
| | ) | |
| **Defendant.** | ) | |
| _____ | ) | |

### DEFENDANT'S REPLY TO PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, AND DEFENDANT'S OPPOSITION TO PLAINTIFF'S CROSS-MOTION FOR SUMMARY JUDGMENT

### I.  INTRODUCTION

Defendant's initial Motion (Def. Br.), demonstrates that the Army Board for Correction of Military Records ("ABCMR") correctly determined that Plaintiff had not submitted sufficient evidence to establish that he is entitled to removal of an Officer Evaluation Report ("OER") from his military records.  The ABCMR's determination is supported by substantial evidence consisting of two investigations of discrimination; an inquiry into the circumstances and content of the OER; and an appeal of the OER.

Plaintiff's Cross-Motion and Opposition ("Pl. Br."), asserts the ABCMR ignored evidence of anti-Semitism and failed to recognize Plaintiff's entitlement to the procedural protections of a commander. (Pl. Br. 14-27.)  Plaintiff's Brief fails to demonstrate that the ABCMR's denial of Plaintiff's request to set aside his OER was arbitrary, capricious, or contrary to law or regulation.  This Reply demonstrates that Plaintiff's claim of anti-Semitism was

carefully considered and rejected by the ABCMR.[1] It also demonstrates that, notwithstanding

Plaintiff's assertions to the contrary, Plaintiff was not in fact a commander in the U.S. Army, and

was not entitled to any additional procedural protections. Finally, Amicus Curiae has filed a

separate Motion in support of Plaintiff's Cross-Motion for Summary Judgment (Am. Br.).

Amicus seeks to introduce new arguments that Plaintiff chose not to pursue with the ABCMR.

This Court should decline to consider those new arguments.

## II.  ARGUMENT

### A.    Plaintiff's Challenge Of The ABCMR's Decision Is Unsupported.

Plaintiff avers that the ABCMR[2] "violated the Administrative Procedure Act as arbitrary

and capricious agency action, unsupported by substantial evidence, and otherwise not in

accordance with Army regulations."  (Compl. at 16.)  Plaintiff alleges the ABCMR applied "the

wrong administrative standard of review for the relief [for cause] issue." (Pl. Br. at 17.)

However, the determination by the ABCMR is consistent with the record.  In considering the

evidence in the record, the ABCMR stated "[t]he evidence suggests that the rating officials were

open-minded and fair in their evaluations based on the circumstances of each rating period."

(AR 10.)  Plaintiff challenges that claim by pointing to his self-serving allegation, made years

after the fact, that a finding of anti-Semitism was removed from the final Equal Opportunity

("EO") investigation report as evidence ignored by the ABCMR. (Pl. Br. at 24.)  While the

---

[1]  Defendant's response to Plaintiff's counter-statement of  facts is filed contemporaneously
with this brief.  In support of this submission, we rely upon the Complaint, the Administrative
Record ("AR"), our previously filed motion, Plaintiff's cross-motion, and the following brief.

[2]  The Army Board for Correction of Military Records is composed of civilians appointed by
the Secretary of the Army, and has statutory authority to "correct any [Army] record" in order to
"remove error or injustice."  10 U.S.C. § 1552(a).

ABCMR obviously considered plaintiff's statement to the Board as some evidence, in fact the only evidence, supporting his claim of anti-Semitism; it by no means demonstrates the ABCMR erred in determining that Plaintiff's OER "properly reflects his performance and potential during the period in question and . . . it was rendered in accordance with the applicable regulations in effect at the time."  (AR 10.)  The ABCMR thoroughly reviewed Plaintiff's lengthy allegations of institutional discrimination which were raised at every step in the review process and in the corresponding EO investigations  and OER appeals.  After reviewing that information the ABCMR made a reasoned decision. Plaintiff is dissatisfied with the ABCMR's decison and therefore attempts to disparage every individual involved in the process as either incompetent, anti-Semitic, or a co-conspirator.

Plaintiff also argues the ABCMR erred because its "decision is barren of detail on the issue of relief reports and their procedure."  (Pl. Br. at 15.)  Plaintiff, however, ignores the crux of the ABCMR's determination and overemphasizes his own use of the word "relief OER."  (Pl. Br. at 18.)  He also continues to claim, without support, that he was the actual commander of his Army unit. Army regulations direct that there may be only one commander of a unit.  Plaintiff's rater was the one and only commander of the unit as evidenced by the wording of Plaintiff's challenged OER.  As the commander, the rater had the authority to relieve Plaintiff for cause at any time.  Plaintiff was the "deputy commander" of the unit and was not in a command position. (AR 57, at Part IIIa).  This fundamental distinction escapes Plaintiff who continues to delude himself that he was the man in charge as opposed to the right-hand man of the commander.

Plaintiff's rater, the commander of the Special Security Command ("SSC"), was named to the office of commander and had overall responsibility for the SSC.  (AR 57, at Part IIa).

"'Commander' means a commissioned officer in command . . . ." Manual for Courts-Martial ("MCM"), Rules for Courts-Martial 103(5) (2005). The phrase "in command" refers to a "commissioned or warrant officer who, by virtue of rank and assignment, exercises primary command authority over a military organization or prescribed territorial area, which under pertinent official directives is recognized as a 'command.'" MCM, pt. V-2, ¶ 2a. Assignment of the unit commander is formalized when the assumption of command is announced in a memorandum signed by the commissioned officer assuming command. The memorandum details the authority to assume command, the unit designation and identification code, and the effective date command is assumed. Army Reg. 600-20, ¶ 2-3b.

Plaintiff, as "deputy commander," was not the commander of the SSC and did not exercise command authority or responsibility. (AR 57, at Part IIIa). Army Command Policy clearly delineates between "assignment and command," and states that "Soldiers are assigned to stations where their services are required. The commanding officer then assigns appropriate duties. Without orders from proper authority, a soldier may only assume command when eligible according to chapter 2 of this regulation." Army Reg. 600-20, ¶ 1-5c. Plaintiff's duties were assigned by Plaintiff's rater, the SSC commander, and appear on the challenged OER. (AR 57, at Part IIIc). Furthermore, the OER repeatedly notes the distinction between Plaintiff and the actual commander: "Advise the Commander;" the "[Plaintiff] caused this command extreme embarrassment;" the "[Plaintiff] seriously degrad[ed] morale and espirit de corps of . . . the command;" the "[Plaintiff] clashed with the commander;" the "Commander and LTC Epstein were unable to resolve their differences." (AR 57-58).

The key elements of command are authority and responsibility. Army Reg. 600-20, ¶ 1-

5b.  Formal authority for command is a right that "is exercised by virtue of office and the special assignment of members of the Armed Forces holding military rank" and is "derived from policies, procedures, and precedents."  Id. at ¶¶ 1-5a-b.  There will only be one commander of an element, and "[w]hen two of more commissioned officers of the same grade, both of whom are eligible to command, are assigned to duty in the same command or organization, the President may assign the command of forces without regard to seniority of rank."  See 10 U.S.C. 749(a); Army Reg. 600-20, ¶ 2-5.  Command includes responsibility for unit readiness, health, welfare, morale, and discipline of assigned personnel.  Thus, "[t]he senior regularly assigned officer present for duty normally has responsibility for the command of units, platoon level and above . . . ."  See Army Reg. 600-20, ¶ 2-3a.  In the event that "a commander of an Army element . . . dies, becomes disabled, retires, is reassigned, or is temporarily absent, the senior regularly assigned Army member will assume command."  Id. at ¶ 2-6a(1).  Just as when a commander initially assumes command of a unit, "[a]ssumption of command under these conditions is announced per paragraph 2-3.  However, the announcement will indicate assumption as acting commander unless designated as permanent by the proper authority."  Id. at ¶ 2-6a(3).  Thus, there is only one commander of a unit, at any time, and any such commander would have assumption of command orders.  Plaintiff has no assumption of command orders for the SSC because he was "assigned as Deputy Commander, Special Security Command."  (AR 57, at Part IIIc).

      Plaintiff's responsibilities, while significant, do not equate to the command responsibilities noted above and instead require Plaintiff to "[a]dvise the SSC Commander."  (AR 57, at Part IIIc).  "Commanders are responsible for everything their command does or fails

to do." Army Reg. 600-20, ¶ 2-1b. Plaintiff's responsibilities are much narrower within the

unit but include: planning, directing, and supervising operations of the SSC; directing daily

operations of the security of information; administering access programs; coordinating training;

and overseeing inspection programs. (AR 57, at Part IIIc). Furthermore, Plaintiff's unstated but

inherent duty is the foundation upon which the personnel actions adverse to Plaintiff are based.

"Soldiers have a responsibility to ensure their unit commander is made aware of problems which

affect the discipline, morale, and effectiveness of the unit." Army Reg. 600-20, ¶ 2-1d.

As clearly detailed in the contested OER, Plaintiff's disregard for this fundamental

obligation towards his commander was the essential basis for Plaintiff's reassignment. In the

rater portions of the OER, the following comments relate to Plaintiff's fundamental obligation to

his commander: From Part IV "[Plaintiff] displayed poor judgment which resulted in

embarrassment of this command;" "I questioned his loyalty and integrity;" (AR 57); From Part V

"His tactless conversation with the executive officer to the chief of staff caused this command

extreme embarrassment. At least three times he disclosed privileged information to soldiers,

seriously degrading morale, and espirit de corps of the soldiers and the command." (AR 58).

The senior rater portions of the OER reflect the same observation that Plaintiff could not control

himself: From Part VII "LTC Epstein clashed with the commander over operational procedures,

management of assigned personnel and basic command philosophy. The Commander and

[Plaintiff] were unable to resolve their differences." (AR 58). The inescapable fact is that

Plaintiff's actions and unwillingness to work with his actual commander - not an agency wide

conspiracy - necessitated Plaintiff's reassignment. This determination by both the rater and the

senior rater on Plaintiff's OER that Plaintiff's actions were the basis for his reassignment was

subsequently validated by informal and formal EO investigations, a commander's inquiry, the Army Officer Special Review Board, and the ABCMR itself. (AR 005-007, Def. Br. at 11-12)

Plaintiff's other argument rests on this false assumption that he was a commander, coupled with the fiction that he was "relieved for cause." In making this argument Plaintiff attempts to elevate his duty status and avail himself of the provisions of Army Command Policy, under Army Reg. 600-20, ¶ 2-15, which states "[a]ction to relieve an officer from any command position will not be taken until after written approval by the first general officer in the chain of command of the officer being relieved is obtained." Plaintiff's arguments fail because he was not relieved for cause and, as demonstrated above, he is not a commander.

Under Army regulations, certain evaluation reports "will be referred to the rated officer by the senior rater for acknowledgment and comment" before final processing. Army Reg. 623-105, ¶ 4-28. These "referred" reports consist of two basic categories: "relief for cause" OERs and "adverse impact" OERs. Relief for cause reports are "required when an officer is relieved for cause . . . defined as an early release of an officer from a specific duty or assignment directed by superior authority and based on a decision that the officer has failed in his or her performance of duty." Army Reg. 623-105, ¶ 5-18. Adverse impact reports are broader in nature and include "[a]ny report with negative remarks about the rated officer's professional ethics," id. at ¶ 4-27c; "[a]ny report with a potential evaluation . . . of "Do not promote" or narrative comments to that effect;" id. at ¶ 4-27f; "[a]ny report with ratings or comments that, in the opinion of the senior rater, are so derogatory that the report may have an adverse impact on the rated officer's career;" id. at ¶ 4-27i. The due process applicable to either type of report is specifically enumerated.

Plaintiff's report is not a "relief for cause" OER based on the regulatory definition above

and on the facts in the record below.  Plaintiff's evaluation does not state Plaintiff "failed" in his performance of duty.  Plaintiff's rater specifically states Plaintiff "has excellent potential for higher level staff and promotion," albeit with supervision.  (AR 58.)  The best evidence that Plaintiff did not receive a "relief for cause" OER is that Plaintiff's OER Block Vd is marked "Promote with contemporaries." (AR 58.)  However, according to Army Reg.620-105, ¶ 5-18b if an officer is given a "relief for cause" OER, Block Vd  "must reflect 'Do not Promote' or 'Other.'"

While Plaintiff's OER is not a "relief for cause" OER, Plaintiff's contested OER does reflect "negative remarks about the rated officer's professional ethics" and other comments that "may have an adverse impact" on Plaintiff's career.  (AR 57-58.)  Consequently, this is an adverse OER and not a relief for cause OER.  <u>See</u> Army Reg. 623-105, ¶ 4-27.  The requisite due process consists of (1) the normal final review by the senior rater; <u>id</u>. at ¶ 3-14a; and (2) "Exceptional Processing Procedures" for "Referred reports;" <u>id</u>. at ¶ 5-28.  These two steps were completed, and Plaintiff made a subsequent request for a commander's inquiry of the OER. <u>Id</u>. at ¶ 3-15.  Plaintiff received additional due process as outlined in the OER regulation, but the inquiry did not find any serious irregularities or errors.  <u>Id</u>. at ¶ 5-30.[3]

---

[3]  Even if Plaintiff's reassignment was a "relief for cause" OER, which the government rejects, Army Reg. 600-20 ¶ 2-15 does not apply to Plaintiff because he was not a commander. Instead, it is clear that Plaintiff's rater, as commander, had the authority to relieve the Plaintiff for cause at any time.  Army Reg. 623-105, ¶ 5-18a.  Moreover, because his senior rater met the requirements of ¶ 5-29b, the procedural process Plaintiff received for his "adverse" OER is essentially identical to the process that Plaintiff would have received had his OER been labeled a "relief for cause" OER from his rater. Compare the review requirements for an adverse OER at ¶ 3-14, ¶ 5-28, and ¶ 5-30, with the review requirements of a "relief for cause" OER at ¶ 5 -29.

Finally, Plaintiff argues that the ABCMR failed to address "relief procedures." This argument is without merit.  The ABCMR exhaustively examined Plaintiff's application and military personnel files, then set out in detail the facts as alleged by Plaintiff.  (AR 004-009.) The ABCMR's determination is well reasoned and supported by the evidence.  Plaintiff could not and did not overcome the "strong, but rebuttable, presumption that administrators of the military, like other public officers, discharge their duties correctly, lawfully, and in good faith. . . . This presumption 'includes those officers who are charged with rating the performance of other officers.'"  Calloway v. Brownlee, 366 F. Supp. 2d 43, 54 (D.D.C. 2005) (citation omitted). Plaintiff received all of the substantive and procedural due process to which he was entitled for his adverse, referred OER.  Therefore, the decision of the ABCMR to deny him relief was not arbitrary and capricious.

### B.    Amicus Curiae Response

Plaintiff has not incorporated or adopted amicus' arguments.  Even if the Court were to consider amicus' arguments on the merits, they should be rejected as a baseless and confusing "attempt to inject interest group politics into the federal [civil] process."  Voices for Choices v. Illinois Bell Telephone Co., 339 F.3d 542, 544 (7th Cir. 2003) (J. Posner).  This Court previously advised amicus that any filing should convey "if the amicus has a unique interest in the case or some unique perspective or information that would help the court resolve the issues. See Cobell v. Norton, 246 F.Supp.2d 59, 62 (D.D.C. 2003)."  Docket Entry 11/20/2007, MINUTE ORDER.  While amicus may have a political interest in the case, the brief provides no unique perspective to this litigation.  Moreover, both arguments by amicus provide no information that would be of assistance to the Court to resolve the issue of disparate treatment of

the Plaintiff because amicus embarks on an institutional discrimination argument.[4]  From the

outset, amicus intends to demonstrate that "[plaintiff's] case demonstrates that anti-Semitism

lingers beneath the surface."  (Am. Br. at 3).  Plaintiff's claim relates only to the actions of the

ABCMR in upholding his adverse OER and not to any alleged institutional discrimination,

making amicus' brief an extraneous addition.

        Under the rubric of institutional discrimination, amicus argues that the numerous

investigating officers, reviewing boards, and the ABCMR examined Plaintiff's Complaint under

Title VII of the Civil Rights Act of 1964 for "employment discrimination."  (Am. Br. at 4.)  As a

threshold matter, although this Circuit "has not squarely ruled on the question . . . every circuit to

address the issue has held Title VII inapplicable to uniformed members of the armed services."

Veitch v. England, 471 F.3d 124, 128 (D.C. Cir. 2006) (citations omitted).  Furthermore, the

District of Columbia Circuit noted that "[t]he Equal Employment Opportunity Commission

agrees with the circuits that have decided this issue."  Id. at note 3 (See 29 C.F.R. §

1614.103(d)(1)(2006)(excluding uniformed members of the military departments from Title

VII's anti-discrimination provisions).  More importantly, although amicus implies that Army

investigating officers and the ABCMR applied Title VII standards, other than amicus, no where

---

    [4]  The EO policy within the Army encompasses both disparate treatment of an individual and
institutional discrimination.  All soldiers are entitled to an equal opportunity which is defined as
"[c]onsideration and treatment based upon merit, fitness, and capability irrespective of race,
color, religion, gender, or national origin."  Army Reg. 600-20, section II, Terms, at 32.
Additionally, all soldiers are entitled to an equal opportunity free from institutional
discrimination which is defined as:
            Different treatment of individuals in an organization which-
            a. Occurs based on race, color, religion, gender, or national origin.
            b. Results from the normal functioning of the organization.
            c. Operates to the consistent disadvantage of a particular group.

in the record does it appear that anyone in the military relied on Title VII in any way.[5]  Instead, multiple, independent investigations were conducted under the fair and reasonable procedures established by the military regulations, which provide similar,  arguably greater, protection from discrimination than the civilian counterpart under Title VII.

Amicus' second argument attempts to analogize the continuing efforts by the military departments to eliminate discrimination as evidence that "these changes suggest past discriminatory behaviors may now qualify as criminal offenses."  (Am. Br. at 8.)  In a series of illogical leaps, amicus inflates the level of administrative action taken against Plaintiff's rater; points to various statutes concerning criminal punishments under the Uniform Code of Military Justice; and attempts to explain how current EO policies prove that Plaintiff's rater was disqualified from evaluating Plaintiff.  However, neither the criminal statutes nor current EO policies are implicated in this case.  Presumably amicus would propose this Court establish new requirements to remove any individual from the rating chain of a subordinate without regard to the distinction between intentional or unintentional conduct that may lead to actual and apparent discrimination.  This argument finds no support in the regulations, statutory text, or in any case law.

---

[5]  The closest amicus comes to presenting evidence on this argument is to state that "officials here appeared to borrow from or adopt the narrow civilian doctrine of employment discrimination under Title VII that requires tangible changes in military status or economic benefits."  (Am. Br. at 3.)

### III.   CONCLUSION

For the foregoing reasons, Defendant respectfully requests that the Court grant

Defendant's Motion for Summary Judgment.

Respectfully submitted,

_____/s/_____
JEFFREY A. TAYLOR, D.C.  Bar # 498610
United States Attorney

_____/s/_____
RUDOLPH CONTRERAS D.C. Bar # 434122
Assistant United States Attorney

_____/s/_____
BRIAN C. BALDRATE
Special Assistant U.S.  Attorney
555 Fourth Street, N.W., 10th Floor
Washington, D.C.  20530
(202) 353-9895
Attorneys for Defendants

Of Counsel:
MAJOR JOSHUA M. TOMAN
U.S. Army Legal Services Agency
901 North Stuart Street
Arlington, Virginia  22203-1837

12

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **LAWRENCE S. EPSTEIN** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Civil Action No. 07-0688 (RMU)** |
| | ) | |
| **PETE GEREN,** | ) | |
| **Secretary of the Army,** | ) | |
| | ) | |
| **Defendant.** | ) | |
| _____ | ) | |

**DEFENDANT'S RESPONSE TO PLAINTIFF'S
STATEMENT OF OPPOSING MATERIAL FACTS**

Pursuant to LCvR 7(h), the Defendant respectfully submits the following response to the opposing statement of material facts submitted by Plaintiff in support of his Cross-Motion for Summary Judgment.  Plaintiff's statement begins with paragraph 2.1 and is not numbered consecutively.

2.1.    There is no disagreement between the parties regarding these facts.

3.1.    There is no disagreement between the parties regarding these facts

4.1.    There is no disagreement between the parties regarding these facts.

4.2    This supposed "fact" is not material as it was not raised to the ABCMR and does not constitute new evidence justifying reconsideration.

4.3.    This supposed "fact" is not material as the events occurred during a prior period of active duty and are not relevant to the allegations of Plaintiff's claim.

5.1.    There is no disagreement between the parties regarding these facts.

5.2.    There is no disagreement between the parties regarding these facts; except that the citation does not focus on Plaintiff's most recent duty as Deputy Commander but refers to

Plaintiff's entire period of service for the award.

5.3.    There is no disagreement between the parties regarding the facts in the first two sentences.  The third sentence misquotes the informal EO investigation findings which stated: "He [the Deputy J2] did not indicate to me that the letter had been an issue with the chief of staff." (AR 66.)

5.4.    There is no indication in the record when Plaintiff's rater began making jokes about Plaintiff's heritage and dietary habits.  There is no indication in the record that anyone provided Plaintiff with statements alleging racial discrimination.

5.5    There is no disagreement between the parties regarding the facts in the first two sentences.  The remaining two sentences are not statements of fact but a characterization of the regulatory process.

6.    There is no indication in the record when the informal EO complaint was initiated.

6.1    There is no indication in the record when the informal EO complaint was initiated.

9.1.    There is no disagreement between the parties regarding these facts.

9.2.    This supposed "fact" is not material.

11.    This paragraph contain argument, not fact.  There is no indication in the record of the complete contents of the informal EO investigation.

12.1.    This paragraph contains argument, not fact.  There is no indication in the record to support Plaintiff's contention and the complete contents of the informal EO investigation were not presented.  At no time prior to the ABMCR application, did Plaintiff claim that the informal EO investigating officer was anti-Semitic.

12.2.    This paragraph contains argument, not fact.  There is no indication in the record that

anyone redacted or order the redaction of a finding of "anti-Semitism" from the formal EO investigation.

13.1.    There is no disagreement between the parties regarding these facts.

13.2.    This paragraph contains argument, not fact.  There is no disagreement between the
         parties

regarding the remaining facts in this paragraph that appear in the OER referenced. (AR 83.)

14.       There is no disagreement between the parties regarding these facts, as the OER reflects a

Plaintiff's rater completed the OER on May 14, 1991.

14.1.    This paragraph contains argument, not fact.  The OER reflects that the rater completed

 the OER on October 8, 1991.  (AR 57.)

14.2.    This paragraph contains argument, not fact.

15.1     This paragraph contains argument, not fact.  The remaining "facts" are not material.

15.2     This "fact" is not material.

15.3     This paragraph contains argument, not fact.  The formal EO investigation stated: "Mr.

Coburn, in my opinion did use the impending clearance validation of LTC Epstein as an

opportunity to damage his career by implying he could be a spy for the Israeli government." (AR

67.)

15.4     This paragraph contains argument, not fact.

15.5.    This paragraph is not a statement of fact but a characterization of a regulation.

15.6     There is no indication in the record that Plaintiff was separately investigated for alleged

military treason.  No evidence in the record indicates that Plaintiff's periodic reinvestigation,

which concluded on May 24, 1991, was anything other a routine inquiry or took longer than the

3

average periodic investigations for a top secret clearance. (AR 144.)

16.     This paragraph contains argument, not fact.

16.1    There is no indication in the record that anyone redacted or ordered the redaction of a finding of "anti-Semitism" from the formal EO investigation.

18, 20.  The senior rated completed his portion of Plaintiff's OER after receiving the results of the informal EO investigation.  (AR 57.)  The senior rater did not revise his portion of Plaintiff's OER after receiving the results of the formal EO investigation. (AR 62-67.)  There is no disagreement between the parties regarding these facts.

Respectfully submitted,


_____/s_____
JEFFREY A. TAYLOR, D.C. Bar # 498610
United States Attorney


_____/s_____
RUDOLPH CONTRERAS, D.C. Bar # 434122
Assistant United States Attorney


_____/s_____
BRIAN C. BALDRATE
Special Assistant United States Attorney
Civil Division
555 Fourth St., N.W.
Washington, D.C. 20530
202-353-9895


Of Counsel:
MAJOR JOSHUA M. TOMAN
U.S. Army Litigation Division
Arlington, Virginia 22203-1837