# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

LAWRENCE S. EPSTEIN,                  :
                                      :
                   Plaintiff,         :        Civil Action No.: 07-0688 (RMU)
                                      :
                   v.                 :        Document Nos.:  7, 18
                                      :
PETE GEREN,                           :
In his Official Capacity of Acting    :
Secretary of the U.S. Army,           :
                                      :
                   Defendant.         :

## MEMORANDUM OPINION

### GRANTING IN PART AND DENYING IN PART THE PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT; GRANTING IN PART AND DENYING IN PART THE DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

## I. INTRODUCTION

This matter comes before the court on the parties' cross-motions for summary judgment.

The plaintiff, a retired United States Army Reserve Lieutenant Colonel ("LTC"), brings suit

under the Administrative Procedure Act ("APA"), 5 U.S.C. §§ 702 *et seq.*, alleging that the Army

Board for Correction of Military Records ("ABCMR" or "the board") acted arbitrarily and

capriciously and unsupported by substantial evidence when it declined to strike an adverse

Officer Evaluation Report ("OER") for the period October 22, 1990 to March 5, 1991 from his

personnel file.  The plaintiff apparently brings the action on a point of honor, for he requests no

monetary relief, backpay or retroactive promotion, but merely the removal of the OER from his

record, alleging that his rating officer evaluated him negatively based on anti-semitic prejudice.[1]

The defendant, Acting Secretary of the Army Pete Geren, maintains that the ABCMR thoroughly

reviewed the plaintiff's application and acted reasonably and lawfully in denying his request.

Both parties agree that no genuine issue of material fact impedes the court from resolving the

plaintiff's claims as a matter of law.

The court cannot review the procedural regularity or evidentiary sufficiency of an opinion

that does not opine on dispositive legal questions.  Having reviewed the administrative record,

the court concludes that the ABCMR failed to address two key arguments raised in the plaintiff's

petition – namely, whether the Army mischaracterized the plaintiff's OER as a change-of-duty

rather than a relief-for-cause report and whether, consequently, the Army denied the plaintiff due

process protections.  However, on the question of whether the plaintiff's rater was qualified to

evaluate him, the court concludes that the ABCMR fully considered the issue and reached a

decision based on substantial evidence and not arbitrary, capricious or contrary to law.  Thus, the

court grants in part summary judgment for the plaintiff on the due process arguments raised but

not considered or discussed by the ABCMR.  Correlatively, the court grants in part summary

judgment for the defendant on the question of the eligibility of LTC Hudson to rate the plaintiff.

Accordingly, the court orders that this case be remanded to the ABCMR with instructions that

the board clearly articulate its reasoning and conclusions on the limited issues referred.

---

[1]     In his administrative appeal, the plaintiff did request that, in addition to the removal of
his OER, he be reconsidered for promotion to the rank of colonel and, if selected, be placed in
the retired reserve at that rank.  Admin. Record ("AR") at 2.  His complaint before the court,
however, makes no such prayer for relief.

## II.  BACKGROUND

The following facts are undisputed.  The plaintiff was commissioned into the Army

Reserve on June 6, 1969.  Def.'s Mot. for Summ. J., Def.'s Statement of Material Facts ("Def.'s

Statement") ¶ 1.  On July 1990, he was activated and served for 16 days in the Special Security

Command as a detachment commander of a Sensitive Compartmented Information Facility under

LTC Hudson and Colonel ("COL") Cromartie.  *Id.* ¶ 3; Pl.'s Mot. for Summ. J., Pl.'s Statement

of Opposing Material Facts ("Pl.'s Statement") ¶ 3.1.  Serving as the plaintiff's OER[2] raters

appraising his performance, Hudson and Cromartie gave him the highest possible evaluation for

promotion potential.  Def.'s Statement ¶ 4; Pl.'s Statement ¶ 4.1.  Indeed, during his entire career

in the Army, the plaintiff received 16 OERs, 10 of which deemed his performance as above

average, 5 as average, and only 1 (the subject of the instant complaint) as below average.  Pl.'s

Statement ¶ 4.2.  On October 22, 1990, the Army activated the plaintiff for a 6-month tour of

duty, assigned to the same group but now acting as a deputy commander.  *Id.* ¶ 5.1.

Shortly after the 1990 holiday season, the plaintiff wrote a letter to the "Deputy J2"[3]

stating that the command's annual Christmas party was "centered totally on Christian values"

and recommending that other faith traditions be recognized.  *Id.* ¶ 5.3.  Around this time, LTC

Hudson, the plaintiff's commander, began making derogatory jokes about the plaintiff's Jewish

heritage, ethnicity and dietary habits.  Pl.'s Statement ¶¶ 5.4.  On January 18, 1991, Hudson, who

also served as the plaintiff's rater, counseled him in writing that his conduct was not in the

---

[2]     The OER serves as a performance and potential appraisal of the rated individual.  The Army
also uses this report to determine promotions, schooling and assignments.  Army Reg. 623-
105, ¶¶ 1-3, 1-4, 2-1.

[3]     The parties do not clearly identify this individual in their briefings.

interests of "order, sound judgment, and good discipline," ordering him to cease and desist his behavior immediately and threatening to terminate his active duty and relieve him for cause should he fail to obey. Def.'s Statement ¶ 6. Sometime in January 1991[4], the plaintiff initiated an Equal Opportunity ("EO") complaint against Hudson, alleging ethnic and religious insensitivity and racially discriminatory practices. *Id.* ¶ 7. As a consequence, the Army performed an informal inquiry to determine whether the allegations were merited. Def.'s Statement ¶ 8. On February 16, 1991, the plaintiff's active duty was extended for an additional six months. *Id.* ¶ 9. On March 4, 1991, the informal EO investigation concluded. *Id.* ¶ 10. The investigating officer reported that:

> the [plaintiff] was not experienced in higher level staff work, that several of his actions were inappropriate and did reflect negatively on the chain of command, that he became defensive and attributed his rater's counseling as being motivated by professional jealousy and ethnic racial/prejudice, that the rater was correct in questioning the [plaintiff's] competence and in not trusting him with important actions, that there was no evidence that the rater's counseling of the applicant's performance was based on anything other than professional experience and judgment, that the rater had made inappropriate remarks about the [plaintiff's] religious dietary habits; however, they had first been initiated by the applicant and not the rater and were stopped when the applicant brought it to the rater's attention, that the applicant was not loyal to his commander (rater) and his actions were disruptive to the command . . . . The applicant also suggested that he was better suited to command than was the rater.

Def.'s Statement ¶ 11; Admin. Record ("AR") at 5. The investigator recommended that Hudson be counseled concerning his remarks and that the plaintiff be reassigned or released from active duty. AR at 5.

---

[4] The plaintiff insists that Hudson issued his written counseling statement before the plaintiff filed his Equal Opportunity ("EO") complaint but after Hudson had started making derogatory racial jokes. Pl.'s Statement ¶¶ 5.4, 6. The defendant maintains that the record does not disclose when Hudson began making racial jokes or when the plaintiff filed his EO complaint. Def.'s Response to Pl.'s Statement ¶¶ 5.4, 6.

On March 5, 1991, Hudson transferred the plaintiff to a new position outside of his command. Def.'s Statement ¶ 13. On April 1, 1991, Hudson was issued a letter of admonishment, cautioning him to avoid future remarks of an insensitive and inappropriate nature. *Id.* ¶ 15. On May 14, 1991, Hudson initiated a change-of-duty OER (the subject of this suit) for the plaintiff, covering the 5-month period from October 22, 1990 to March 5, 1991, evaluating the plaintiff's performance as a deputy commander. AR at 6. The OER stated that the plaintiff had displayed very poor judgment on three occasions, which resulted in embarrassment to command. *Id.* at 5. Specifically, the rater claimed that the plaintiff's lack of military experience, tact and people skills resulted in the disclosure of privileged information to soldiers, seriously degrading morale and diminishing the rater's impression of his loyalty. *Id.* at 6. Moreover, the rater claimed that the plaintiff had failed to heed his prior counseling regarding these issues. *Id.* Under the category of performance evaluation, however, the rater declared that the plaintiff usually exceeded requirements and recommended that he be promoted, citing the plaintiff's volunteering for active duty during Operation Desert Shield/Storm, his superb knowledge of computers, and his enthusiasm and aggressive work demeanor. *Id.* at 5-6. As a result of the OER, the plaintiff was transferred to a staff position at the U.S. Forces Command. Compl. ¶ 12.

On August 25-26, 1991, a formal EO investigation took place on the plaintiff's allegation that he was the object of systematic racial and religious discrimination by his rater, Hudson. Def.'s Statement ¶ 16. The investigator substantiated the plaintiff's allegations concerning Hudson's negative comments regarding the plaintiff's dietary habits but also discerned a strong personality conflict. AR at 5. The plaintiff's senior rater, COL Cromartie, completed his portion

of the OER after receiving the results of both EO investigations.  *Id.* at 6-7.  Because the OER

was considered adverse, the senior rater referred it to the plaintiff for comment.  *Id.* at 7.  The

plaintiff responded on January 28, 1992, challenging the OER.  *Id.*  He stated that he had

previously been rated by the same officer and found to be outstanding; that the sole intervening

variable between his last rating and the current one was his unwillingness to tolerate his

commander's anti-semitic remarks; and that his commander had been admonished for making

racial jokes and was, therefore, unqualified to rate him.  *Id.*  The plaintiff characterized the

current OER as reprisal for his EO complaint and requested that a commander's inquiry[5] be

conducted.  *Id.*

On March 5, 1992, a commander's inquiry was completed.  *Id.*  The investigating officer

found the plaintiff's allegations unsubstantiated and concluded that the OER contained no error

or violation of regulations.  *Id.*  In June 1993, the plaintiff appealed the OER to the Officer

Special Review Board ("OSRB").  *Id.*  The OSRB discussed the matter with Hudson and a

personnel advisor to Hudson and reviewed the available evidence, then concluded that the

plaintiff failed to provide clear and convincing evidence to show that the OER was inaccurate,

unjust, or in violation of regulations.  *Id.* at 8.  From 1994 through 1997, the plaintiff was non-

selected for promotion to colonel.  Compl. ¶ 34.  In October 1997, the plaintiff was retired from

the reserves for having attained the maximum years of service.  *Id.* ¶ 35.  The plaintiff appealed

---

[5]     When anyone with authorized access to an OER alleges "errors, injustices, [or] illegalities" in an
OER, the commanding officer is required to look into the matter.  Army Reg. 623-105 ¶ 5-30.
The commander may choose procedures for these inquiries "as formal or informal as [he] thinks
appropriate."  *Id.*  The primary purpose of an inquiry is to "provide a greater degree of command
involvement in preventing obvious injustices . . . and correcting errors before they become a
matter of permanent record."  *Id.*  The inquiry is "not intended to be a substitute for the appeal
process," however, "which is the primary means of addressing errors and injustices."  *Id.*

the contested OER and, derivatively, his nonselections for promotion to the ABCMR[6] on April

24, 2003, which denied his application for relief in a ten-page opinion released on November 18,

2003.  AR at 2-11.  The plaintiff filed the instant complaint on April 16, 2007, challenging the

ABCMR's denial of his application for relief under the APA.  With these facts before it, the

court proceeds to its analysis of the parties' motions for summary judgment.


### III.  ANALYSIS

#### A.  Legal Standard for Summary Judgment

Summary judgment is appropriate when "the pleadings, depositions, answers to

interrogatories, and admissions on file, together with the affidavits, if any, show that there is no

genuine issue as to any material fact and that the moving party is entitled to a judgment as a

matter of law."  Fed. R. Civ. P. 56©; *see also Celotex Corp v. Catrett*, 477 U.S. 317, 322 (1986);

*Diamond v. Atwood*, 43 F.3d 1538, 1540 (D.C. Cir. 1995).  To determine which facts are

"material," a court must look to the substantive law on which each claim rests.  *Anderson v.*

*Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A "genuine issue" is one whose resolution could

establish an element of a claim or defense and, therefore, affect the outcome of the action.

*Celotex*, 477 U.S. at 322; *Anderson*, 477 U.S. at 248.

In ruling on a motion for summary judgment, the court must draw all justifiable

inferences in the nonmoving party's favor and accept the nonmoving party's evidence as true.

*Anderson,* 477 U.S. at 255.  A nonmoving party, however, must establish more than "the mere

---

[6]      The ABCMR has statutory authority to "correct any [Army] record" in order to "remove error or injustice."  10 U.S.C. § 1552(a).

existence of a scintilla of evidence" in support of its position. *Id*. at 252.  To prevail on a motion

for summary judgment, the moving party must show that the nonmoving party "fail[ed] to make

a showing sufficient to establish the existence of an element essential to that party's case, and on

which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322.  By pointing to

the absence of evidence proffered by the nonmoving party, a moving party may succeed on

summary judgment. *Id*.

In addition, the nonmoving party may not rely solely on allegations or conclusory

statements. *Greene v. Dalton*, 164 F.3d 671, 675 (D.C. Cir. 1999); *Harding v. Gray*, 9 F.3d 150,

154 (D.C. Cir. 1993).  Rather, the nonmoving party must present specific facts that would enable

a reasonable jury to find in its favor. *Greene*, 164 F.3d at 675.  If the evidence "is merely

colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477

U.S. at 249-50 (internal citations omitted).

### B.  Legal Standard for Judicial Review of Agency Actions

The APA entitles "a person suffering legal wrong because of agency action, or adversely

affected or aggrieved by agency action . . . to judicial review thereof." 5 U.S.C. § 702.  Under

the APA, a reviewing court must set aside an agency action that is "arbitrary, capricious, an

abuse of discretion, or otherwise not in accordance with law." *Id.* § 706; *Tourus Records, Inc. v.

Drug Enforcement Admin.*, 259 F.3d 731, 736 (D.C. Cir. 2001).  In making this inquiry, the

reviewing court "must consider whether the [agency's] decision was based on a consideration of

the relevant factors and whether there has been a clear error of judgment." *Marsh v. Oregon

Natural Res. Council*, 490 U.S. 360, 378 (1989) (internal quotations omitted).  At a minimum,

the agency must have considered relevant data and articulated an explanation establishing a

"rational connection between the facts found and the choice made." *Bowen v. Am. Hosp. Ass'n*, 476 U.S. 610, 626 (1986); *Tourus Records*, 259 F.3d at 736. An agency action usually is arbitrary or capricious if

> the agency has relied on factors which Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise.

*Motor Veh. Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983); *see also County of L.A. v. Shalala*, 192 F.3d 1005, 1021 (D.C. Cir. 1999) ("Where the agency has failed to provide a reasoned explanation, or where the record belies the agency's conclusion, [the court] must undo its action").

As the Supreme Court has explained, however, "the scope of review under the 'arbitrary and capricious' standard is narrow and a court is not to substitute its judgment for that of the agency." *Motor Veh. Mfrs. Ass'n*, 463 U.S. at 43. Rather, the agency action under review is "entitled to a presumption of regularity." *Citizens to Pres. Overton Park, Inc. v. Volpe*, 401 U.S. 402, 415 (1971), *abrogated on other grounds by Califano v. Sanders*, 430 U.S. 99 (1977).

"The requirement that agency action not be arbitrary or capricious includes a requirement that the agency adequately explain its result." *Pub. Citizen, Inc. v. Fed. Aviation Admin.*, 988 F.2d 186, 197 (D.C. Cir. 1993). This requirement is not particularly demanding, however. *Id.* Nothing more than a "brief statement" is necessary, as long as the agency explains "why it chose to do what it did." *Tourus Records*, 259 F.3d at 737. If the court can "reasonably discern[]" the agency's path, it will uphold the agency's decision. *Pub. Citizen*, 988 F.2d at 197 (citing *Bowman Transp., Inc. v. Arkansas-Best Freight Sys., Inc.*, 419 U.S. 281, 286 (1974)).

9

**C.  Legal Standard for Judicial Review of Military Correction Board Decisions**

"Congress has entrusted the primary duty of correcting military records with the [military] correction boards." *Harris v. United States*, 14 Cl. Ct. 84, 89 (1987); 10 U.S.C. § 1552.  When a military member seeks to overturn the final decision of a military correction board, the court has a very limited scope of review.  "[T]he function of [the court] is not to serve as a super correction board that reweighs the evidence." *Charette v. Walker*, 996 F. Supp. 43, 50 (D.D.C. 1998). Thus, when a military correction board relies not on clear, delineated, objective criteria, but on a broad delegation from Congress of discretion to use its inherent judgment to assess the merits of an application, the court will apply an especially deferential standard of review.  *See Cone v. Caldera*, 223 F.3d 789, 793 (D.C. Cir. 2000) (justifying deferential standard as "calculated to ensure that the courts do not become a forum for appeals by every soldier dissatisfied with his or her ratings, a result that would destabilize military command and take the judiciary far afield of its area of competence") (citing *Orloff v. Willoughby*, 345 U.S. 83, 94 (1953)); *Kreis v. Sec'y of the Air Force*, 866 F.2d 1508, 1514 (D.C. Cir. 1989).  Alternatively, when a plaintiff alleges that a correction board has committed an error of law, violated procedural regulations or otherwise acted contrary to recognizable, substantive and readily recognizable justiciable standards, the court will apply the traditional APA standard of review: overturning a decision only if it is "arbitrary, capricious, an abuse of discretion or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A); *Wolfe v. Marsh*, 835 F.2d 354, 358 (D.C. Cir. 1987).

To prevail, a plaintiff must "overcome the 'strong, but rebuttable, presumption that administrators of the military, like other public officers, discharge their duties correctly, lawfully, and in good faith.'" *Frizelle v. Slater*, 111 F.3d 172, 177 (D.C. Cir. 1997) (quoting *Collins v.*

*United States*, 24 Cl. Ct. 32, 38 (1991)). It is well-settled that to rebut this presumption, a plaintiff must establish through "cogent and clearly convincing evidence" that the agency's findings were arbitrary, capricious, unsupported by substantial evidence, or contrary to law or regulations. *Eg.*, *Wronke v. Marsh*, 787 F.2d 1569, 1576 (Fed. Cir. 1986) (quoting *Dorl v. United States*, 200 Ct. Cl. 626, 633 (1973)); *McDougall v. Widnall*, 20 F. Supp. 2d 78, 82 (D.D.C. 1998); *Walker v. Shannon*, 848 F. Supp. 250, 254 (D.D.C. 1994).

### D. The ABCMR Acted Arbitrarily and Capriciously by Failing to Address the Plaintiff's Arguments and Provide a Reasoned Conclusion

### 1. The ABCMR Was Presented But Did Not Address the Question of Whether the OER Was Merely Adverse or a Relief-for-Cause Report

The plaintiff argues that his 1990-1991 change-of-duty OER constituted a *de facto* relief-for-cause (or termination) OER, in which case the Army should have afforded him additional procedural protections that he was denied before the report was finalized. Pl.'s Mot. for Summ. J. at 18. Relief-for-cause reports are required when an officer is relieved for cause, defined as "an early release of an officer from a specific duty or assignment directed by a superior and based upon a decision that the officer has failed in his performance of duty." Army Reg. 623-105 ¶ 5-18. In contradistinction, adverse impact reports refer to "[a]ny report with negative remarks about the rated officer's professional ethics." *Id.* ¶ 4-27©. This includes "[a]ny report with a potential evaluation . . . of 'Do not promote' or narrative comments to that effect," *id.* ¶ 4-27(f), as well as "[a]ny report with ratings or comments that, in the opinion of the senior rater, are so derogatory that the report may have an adverse impact on the rated officer's career," *id.* ¶ 4-27(I). Because both types of reports are prejudicial to an officer's career, both must be referred to the rated officer by the senior rater for acknowledgment and comment before finalization. *Id.* ¶ 4-28.

11

The plaintiff argues that the his OER was a covert termination report because (1) it contained a "derogatory narrative, alleging performance failures after counseling was ignored"; (2) it was released the day after the informal EO investigated said the plaintiff should be "reassigned, and if not possible removed from active duty"; (3) he was not "given a second chance to . . . rehabilitate the alleged failed performance"; (4) he was reassigned as a result of his alleged failures; (5) the report attacked his "fitness as an officer"; and (6) Hudson "conspired" with his unit's senior security officer ("SSO") to damage the plaintiff's career by "suggest[ing] he was an Israeli government spy, homosexual, sexual pervert, and psychologically unstable," thereby delaying the renewal of the plaintiff's Top Secret security clearance and prompting a criminal Defense Investigative Service ("DIS") investigation.  Pl.'s Mot. for Summ. J. at 19.  The plaintiff further alleges that Hudson lied to the formal EO investigator by asserting that he had made no "derogatory statement" about Epstein to DIS.  *Id.*

The defendant maintains that the OER was a mere adverse-impact report.  Def.'s Reply to Pl.'s Opp'n to Def.'s Mot. for Summ. J. ("Def.'s Reply") at 8.  Unlike a relief-for-cause OER, the report here never states that the plaintiff "failed" in his "performance of duty"; it states that he "has excellent potential for higher level staff and promotion," albeit with supervision; accordingly, Hudson marked him for "promot[ion] with contemporaries."  Def.'s Reply at 8 (citing AR at 43).  Because the OER was merely adverse, the plaintiff was only entitled to normal final review by his senior rater and the notice-and-comment procedures for referred reports.  *Id.* (citing Army Reg. 623-105 ¶¶ 3-14a, 5-28).  Moreover, the plaintiff enjoyed an additional level of protection when he requested and the Army granted a commander's inquiry, which ultimately uncovered no serious irregularities or errors.  *Id.*

12

The plaintiff characterizes the defendant's response as overly formalistic. He argues that the narrative portion of the OER effectuates Hudson's January 18, 1991 written counseling warning the plaintiff to "cease and desist, and make amends" or be relieved for cause. Pl.'s Reply to Def.'s Opp'n to Pl.'s Mot. for Summ. J. ("Pl.'s Reply") at 1. The court should not, he warns, be misled into believing the plaintiff was reassigned because of a personality conflict with his commander. *Id.* at 5. He was reassigned because he, according to Hudson, failed to perform his duties. *Id.* He also insists that the court focus on the most adverse parts of the narrative portion rather than the positive markings made in the promotion and potential evaluation sections. *Id.* To the extent that they are incompatible, the court should invalidate the entire OER. *Id.* at 3 (citing *Muse v. United States*, 21 Cl. Ct. 592, 608 n.27 (1990)).

The ABCMR did not address this issue in its decision, even though the plaintiff vigorously sounded it in his petition before it. *See* AR at 23 (stating that Hudson "summarily relieved applicant without any due process under the dubious guise of a referred 'change-of-duty' OER[,] . . . . a *de facto* relief-for-cause"). The only place it appears in the ABCMR's decision is in the paragraph entitled "Counsel Contends." AR at 4. The ABCMR makes no mention of the question in its discussion section, which itself runs scarcely over one full page. AR at 8-9. The board does conclude that because of the plaintiff's persistent "efforts to undermine the commander's (rater's) authority . . . . the rater sought to have him removed from the unit as his deputy commander." *Id.* at 10. But the board's ambiguous phraseology renders it impossible for an objective reader to discern its meaning – was Epstein's removal a relief for cause or merely a change of duty?

The defendant directs the court to paragraph 8 of the discussion section of the ABMCR's

decision:

> The bottom-line issue in this case is whether or not the contested report properly reflects his performance and potential during the period in question or whether or not it was rendered in accordance with the applicable regulations in effect at the time. After reviewing all of the documents submitted by the applicant and his counsel as well as the evidence of the record, the evidence suggests that it is.

AR at 10. This statement, the defendant argues, indicates that the ABCMR "properly considered and interpreted, *inter alia*, Army Regulation 623-105, establishing the policies and procedures for the OER system." Def.'s Mot. for Summ. J. at 7-8. The court should, therefore, the defendant reasons, recognize that the ABCMR reasonably relied on applicable regulations and defer to its decision. *Id.*

To construe the above excerpt as anything more than catch-all boilerplate, much less a keen distillation and application of the law, offends reason. Indeed, the court racks its mind to conceive of a species of administrative review that would not, reduced to the "bottom-line issue," ask whether or not an adverse decision was (1) accurate and (2) procedurally regular. Such a blunderbuss approach is not the type of agency legal analysis to which a court defers. *Cf. Musengo v. White*, 286 F.3d 535, 539-40 (D.C. Cir. 2002) (holding that correction board's invocation of regulation prohibiting alteration of OER based solely on rater's statement that he erred was reasonable basis for denying petition). The D.C. Circuit has concluded that the failure of a corrections board to respond to arguments raised by a plaintiff, which do not appear frivolous on their face and could affect the board's ultimate disposition, is arbitrary. *Frizelle v. Slater*, 111 F.3d 172, 177 (D.C. Cir. 1997); *Calloway v. Brownlee*, 366 F. Supp. 2d 43, 55 (D.D.C. 2005); *Mudd v. Caldera*, 26 F. Supp. 2d 113, 123 (D.D.C.1998). As demonstrated by the court's exposition of the plaintiff's argument in the preceding paragraphs, the argument that

the OER should have been characterized as a relief-for-cause report does not appear frivolous. Nor does the defendant argue that the plaintiff failed to raise the point before the board. *Cf. Calloway*, 366 F. Supp. 2d at 55 (remanding even though defendant claimed plaintiff did not raise argument before the board because evidence showed plaintiff had made argument, even if in a different manner). Because the ABCMR failed to respond to this argument, the court concludes that its decision is arbitrary.

### 2. The ABCMR Was Presented But Did Not Address the Question of Whether the Procedural Protections Afforded the Plaintiff Were Adequate

Assuming, *arguendo*, that the OER should have been styled as relief for cause, the defendant maintains that the court should excuse the twin failures of the Army to characterize it as such and the board to consider the question because the error was harmless. The defendant insists that because the army did recognize the OER as adverse it afforded the plaintiff the same protections – formal counseling, review by a superior officer, and opportunity to comment – he would have received had it recognized the OER as relief for cause. Def.'s Mot. for Summ. J. at 9. The plaintiff claims that he was denied the protection of prior approval of the relief by a general officer, however. Pl.'s Mot. for Summ. J. at 27. In their briefs, the parties volley back and forth on the propriety of this decision, but the defendant does not deny that (a) the plaintiff raised this specific challenge before the board, AR at 25, and (b) the board did not address it, *id.* at 9-10. Moreover, in his petition, the plaintiff further alleges that the OER was deficient by not providing for temporary suspension of duties, the identity of the official directing relief, and concurrence or non-concurrence by the senior rater. AR at 25. The board's failure to address the consequences of the characterization of the OER, thus, renders its decision arbitrary. *Frizelle*, 111 F.3d at 177.

15

**3. The ABCMR'S Decision that Hudson Was Qualified to Serve as the Plaintiff's Rater Was Supported by Substantial Evidence and Was not Contrary to Law**

In his petition before the ABCMR, the plaintiff stridently argues that "LTC Hudson's verbal abuse of applicant, followed by substantiated EO complaint and Command letter of admonition, would presumptively disqualified [sic] the rater from rendering a fair and objective evaluation." AR at 23. In its decision, the board acknowledges that Hudson made "inappropriate remarks regarding the applicant's dietary habits" but concluded that the remarks did not reveal discrimination because "the applicant started those remarks" and the rater ceased making them once the applicant notified him of his displeasure. *Id.* at 10. Moreover, the board noted that Hudson initiated the contested OER "well before the applicant requested an official [EO] investigation and the [Senior Rater] delayed preparing his portion of the OER until . . . it had been concluded." *Id.* at 9. Furthermore, the petitioner had not, the board decided, produced sufficient evidence to contradict the unanimous conclusions of two EO investigations and a commander's inquiry uncovering no discrimination on the part of Hudson. *Id.* Finally, the board determined that Hudson's written counseling to the plaintiff issued months before the OER confirmed that the latter had "continued in his efforts to undermine the commander's (rater's) authority." *Id.* at 10.

The plaintiff argues that the court should overturn the board's decision not to declare Hudson ineligible to rate the plaintiff by positing that the events the board considered (the informal EO investigation, the formal EO investigation, and the commander's inquiry) were all a "whitewash," designed to ignore "disparaging anti-Semitic remarks by a commander who [wa]s allowed then to fire [the plaintiff]." Pl.'s Mot. for Summ. J. at 24. Army Regulation 623-105 ¶ 4-24 prohibits a rater from unfavorably evaluating an officer in retaliation for the officer's EO

16

criticism of command policies.  Army Reg. 623-105 ¶ 4-24.  Moreover, OERs may not be drafted by "[i]mproperly designated or unqualified rating officials . . . ([f]or example, rating officials who have had substantiated findings against them from an official investigation)."  *Id.* ¶ 5-30(b)(1)(a).  All of the inquiries substantiated the plaintiff's allegation that Hudson had made derogatory jokes.  AR at 5.  This, the plaintiff concludes, constituted substantial evidence of discrimination; by not recognizing it as such, disqualifying Hudson and removing the OER, the board acted contrary to law.

The defendant maintains that the board acted with sufficient evidentiary and legal justification.  The plaintiff's position, the defendant suggests, requires that the court "establish new requirements to remove any individual from the rating chain of a subordinate without regard to the distinction between intentional or unintentional conduct that may lead to actual and apparent discrimination."  Def.'s Reply at 11.  Succinctly put, the only question before the court is whether by dint of Army rules, regulations and policy extant in 1991-1992, it was legal or evidentiary clear error for the ABCMR to conclude that Hudson's prejudiced, possibly even racist jokes by themselves disqualified him from serving as Epstein's rater.  *Id.*

The defendant has correctly formulated the precise question before the court.  The plaintiff has cited persuasive sources for his proposition that Hudson's jokes per se disqualified him as a rater, but they do not give rise to cogent arguments establishing that the ABCMR's alternative reading was contrary to law.  The generality of the cited materials leaves simply too much open to interpretive discretion, in which event it is the judiciary's obligation to defer to a military board's appraisal of a case.  *Cone*, 223 F.3d at 793; *Kreis*, 866 F.2d at 1514; *see also Roberts v. Geren*, 530 F. Supp. 2d 24, 36 (D.D.C. 2007) (upholding correction board's decision

17

acknowledging but not giving weight to racial discrimination claim "in view of plaintiff's failure to offer any instance of disparate treatment"); *Sanders v. United States*, 594 F.2d 804, 813 (Ct. Cl. 1979) (holding that challenge to OER on objectivity grounds must overcome the strong, but rebuttable, presumption that administrators of the military discharge their duties "correctly, lawfully, and in good faith").

Army Regulation 623-105 ¶ 4-24's prohibition of retaliation against officers EO criticism of command policies does not define retaliation, nor reference another standard to serve as a guidepost thereof. Army Reg. 623-105 ¶4-24. And while the court recognizes that ¶ 5-30 identifies "rating officials who have had substantiated findings against them from an official investigation" as disqualified from serving as raters, it does not apprise the court of what sort of discriminatory practice is sufficient to demonstrate "lack of objectivity or fairness." *Id.* ¶ 5-30(b)(1)(a), (c).

The plaintiff would have the court fill the void by resort to the broad mandate of Executive Order No. 9981 (July 26, 1948), issued by President Truman to declare the policy "that there shall be equality of treatment and opportunity for all persons in the armed services without regard to race, color, religion or national origin." Pl.'s Reply at 6 (incorporating amicus curiae's arguments); Amicus Curiae Brief of the Jewish War Veterans of the U.S. ("Amicus Brief") at 4 (citing Exec. Order No. 9981 (July 26, 1948)). This, the plaintiff contends, is reflected in Army Regulation 600-20 ¶ 4-1, which affirms that military discipline is demonstrated "by fairness, justice, [and] equity for all soldiers, regardless of race, ethnic origin, gender, or religion." *Id.* at 7 (citing Army Reg. 600-20 ¶ 4-1(b)). It is also embodied in Article 117 of the Uniform Code of Military Justice, which bans "provoking or reproachful" words, and Article 93, which proscribes

abusive speech.  *Id.* at 8.

None of these are relevant to the court's purpose here, however.[7]  Every court that has considered the question of "objectivity" and "fairness" in military evaluation reports has looked for specific instances of discriminatory practice in the drafting of the OER itself.  *See, e.g.*, *Paskert v. United States*, 20 Cl. Ct. 65, 71 (1990) (refusing to overturn board decision unless forbidden factors were present in ratings process and adversely affected ratings).  Here, the plaintiff's OER was, on balance, neither entirely negative nor positive.  In his professional evaluation section, he received perfect scores in all categories except one ("Displays sound judgment") in which he received an average rating.  AR at 42.  Hudson alleged that the plaintiff "displayed very poor judgment which resulted in embarrassment" to command on three occasions and led him to "question[] his loyalty and integrity."  *Id.*  But he also lauds the plaintiff's knowledge of computers and ADP equipment as "superb," describes him as "enthusiastic and aggressive," and notes his readiness to volunteer for duty.  *Id.* at 43.  Thus, viewed as a whole, one cannot fairly describe the OER as entirely negative, in willful disregard of any positive aspects of an officer.  *See Germano v. United States*, 26 Cl. Ct. 1446, 1464 (1992) (holding that report that was "entirely negative" and failed to discuss plaintiff's strengths lacked objectivity).

Nor has the plaintiff demonstrated that a reasonable person could not find, as the ABCMR did, that Hudson's inappropriate jokes did not taint the OER.  *See Paskert*, 20 Cl. Ct. at

---

[7]    The plaintiff also cites policy declarations from other military services and from years far beyond the time line of events in this case in support of his definition of discrimination.  *See* Amicus Curiae Brief of the Jewish War Veterans of the U.S. ("Amicus Brief") at 7, 10 (describing policy of Air Force in 1986 and Army in 1999).  For the same reasons articulated above, these sources cannot guide the court's review of the ABCMR's decision.

75 (holding that ABCMR's decision should be affirmed "[a]s long as reasonable minds could reach differing conclusions from the evidence presented"). The unanimous conclusion of two EO investigations and a commander's inquiry was that the discriminatory animus did not corrupt the OER. The plaintiffs' insistence of a whitewash is not so convincing as to prevent a reasonable person from reaching a different conclusion, especially given the uniform reports of a personality conflict based on disparate command philosophies. AR at 5. The court is well prepared to follow the plaintiff's argument to the extent that he maintains that the substantiation of racially derogatory jokes rebuts the presumption of good faith accorded to a rater. *Hary v. United States*, 223 Ct. Cl. 10, 17 (1980). But mere jokes alone will not also entitle an officer to the reversal of a military correction board's decision to refrain from altering an OER that it finds, with an eye alert to possible rater bias, objective and justified by the record. *Cohn v. United States*, 15 Cl. Ct. 778, 789 (1988) (holding that plaintiff must demonstrate his evaluation was "tainted unlawfully with subjective comments"); *Fescina v. United States*, 12 Cl. Ct. 254, 261 (1987) (holding that evidence supported finding of no bias when other rater and senior officer agreed on "a number of independently verifiable incidents").[8] Because the court cannot conclude that the plaintiff has produced "cogent and clearly convincing evidence" that the ABCMR's

---

[8]    The plaintiff's most convincing argument is that disparaging racial or religious jokes should per se disqualify a rater because in 1986 the army defined sexual harassment as "a type of sexual discrimination," an instance of the Army attempting to enforce the broader principle of equality for all. *Id.* at 8 (citing Army Reg. 600-21 ¶ 2-2). This may be so – although the court notes this argument was not brought before the ABCMR – but it does not bring the plaintiff one step closer to elucidating the meaning of discrimination in the first instance. Insofar as the regulation does illuminate the contours of the concept, it does so in a way hardly inimical to the board's interpretation of the law, prohibiting only "deliberate or repeated verbal comments . . . of a sexual nature that are offensive to the person to whom addressed." *Id.* ¶ 2-2(b). As the court previously noted, the board concluded that the disparaging remarks began with the plaintiff and ended immediately when the fact of their offensiveness was brought to Hudson's attention.

findings were arbitrary, capricious, unsupported by substantial evidence, or contrary to law or regulations, it must grant summary judgment for the defendant on this point. *Wronke*, 787 F.2d at 1576. Under the limited scope of review afforded the court in this matter, it cannot declare the ABCMR's decision contrary to law.

## IV.  CONCLUSION

For the foregoing reasons, the court grants in part and denies in part the defendant's motion for summary judgment and grants in part and denies in part the plaintiff's cross-motion for the same. An order consistent with this Memorandum Opinion is separately and contemporaneously issued this 25th day of March, 2008.

RICARDO M. URBINA
United States District Judge
